**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL MONTESANO, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>EROS INTERNATIONAL PLC, KISHORE LULLA, PREM PARAMESWARAN, and JYOTI DESHPANDE,<br><br>      Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Paul Montesano ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the

1

Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Eros International PLC ("Eros" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Eros securities between July 28, 2017 and June 5, 2019, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) because the

Company's principal executive offices are located in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Eros securities during the Class Period and was damaged thereby. Plaintiff is a resident of Summit County, Ohio.

7.      Defendant Eros purports to be a leading company in the Indian film entertainment industry and to co-produce, acquire and distribute Indian language films in multiple formats worldwide. The Company is incorporated in the Isle of Man and has its principal executive offices at 550 County Avenue, Secaucus, New Jersey 07094. The Company's securities are traded on the New York Stock Exchange ("NYSE") under the ticker symbol "EROS."

8.      Defendant Kishmore Lulla ("Lulla") has served as Executive Chairman of Eros at all relevant times and has served as Group Chief Executive Officer ("CEO") and Managing Director of the Company since April 1, 2018.

9.      Defendant Prem Parameswaran ("Parameswaran") has served as Group Chief Financial Officer and President of North America of the Company

since June 2015.

10.     Defendant Jyoti Deshpande served as Group CEO and Managing Director of the Company from June 22, 2012 until April 1, 2018.

11.     Defendants Kishmore, Lulla, and Deshpande are collectively referred to herein as the "Individual Defendants."

12.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

13.    Eros is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Eros under *respondeat superior* and agency principles.

15.    Defendant Eros and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

16.    On July 28, 2017, the Company issued a press release containing its financial results for the fiscal year 2017, ended March 31, 2017 (the "July 28, 2017 Press Release"). Concerning trade receivables, that press release stated:

> As of March 31, 2017, Trade Receivables increased to $226.8 million from $169.43 million as of March 31, 2016 mainly due to significantly higher catalogue sales in fiscal 2017 compared to fiscal 2016 where Eros had held back at least $40 million of catalogue sales in the last two quarters. Catalogue sales have payment terms that sometimes extend up to a year. We have collected over $25 million of fiscal 2017 trade receivables post balance sheet.

17.     On August 1, 2017, the Company issued another press release announcing that it had filed its Annual Report on Form 20-F for the 2017 fiscal year, ended March 31, 2017 ("2017 20-F") with the SEC. The 2017 20-F confirmed the financial results from the July 28, 2017 Press Release and was signed by Defendant Deshpande. Additionally, the 2017 20-F contained certifications signed by Defendants Deshpande and Parameswaran pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attesting to the accuracy of the Company's financial reporting.

18.     Concerning trade receivables, the 2017 20-F stated:

> Our trade accounts receivables were $226.8 million as at March 31, 2017, $169.3 million as of March 31, 2016 and $197.8 million as at March 31, 2015. If the cash flow, working capital, financial condition or results of operations of our customers deteriorate, they may be unable, or they may otherwise be unwilling, to pay trade account receivables owed to us promptly or at all. In addition, from time to time, we have significant concentrations of credit risk in relation to our trade account receivables as a result of individual theatrical releases, television syndication deals or music licenses. Although we use contractual terms to stagger receipts and/or the release or airing of content, as of March 31, 2017, 25.1% of our trade account receivables were represented by our top five debtors, compared to 54.2% as of March 31, 2016. Any substantial defaults or delays by our customers could materially and adversely affect our cash flow, and we could be required to terminate our relationships with customers, which could adversely affect our business, prospects, financial condition, results of operations.

19.     The 2017 20-F further stated:

> In fiscal year 2017, trade receivables increased to $226.8 million from $169.3 million as of March 31, 2016 mainly due to resumption of

catalogue sales from April 2016 compared to muted catalogue sales in fiscal year 2016 primarily due to sales held back during last two quarters of fiscal 2016 to achieve working capital efficiencies. Catalogue sales have payment terms extended up to a year. We have collected approximately $ 35 million of fiscal year 2017 trade receivables subsequent to reporting date.

20.     Concerning uncollectable receivables, the 2017 20-F stated that "[u]ncollectible accounts receivable are written off when a settlement is reached for an amount less than the outstanding balance or when the Group determines that the balance will not be collected" and "[t]he allowance for doubtful accounts as of March 31, 2017 and March 31, 2016, was $2,430 and $1,315 respectively." (amount stated in thousands).

21.     The 2017 20-F also attested to the effectiveness of the Company's internal controls over financial reporting:

> Management assessed the effectiveness of internal control over financial reporting as at March 31, 2017, based on the criteria established in 2013 Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based on the above criteria, and as a result of this assessment, management concluded that, as at March 31, 2017, our internal control over financial reporting was effective in providing reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles.

22.     On June 27, 2018, the Company issued a press release containing its financial results for the fiscal year 2018, ended March 31, 2018 (the "June 27, 2018 Press Release"). Concerning trade receivables, that press release stated: "[a]s of March 31, 2018, Trade Receivables decreased to $225.0 million from $226.8

million as of March 31, 2017."

23.     On July 31, 2018, the Company filed its Annual Report on Form 20-F for the fiscal year 2018, ended March 31, 2018 ("2018 20-F") with the SEC, which confirmed the financial results from the June 27, 2018 Press Release. The 2018 20-F was signed by Defendant Parameswaran. Additionally, the 2018 20-F contained certifications signed by Defendants Lulla and Parameswaran pursuant to SOX attesting to the accuracy of the Company's financial reporting.

24.     Concerning trade receivables, the 2018 20-F made the same statement as the June 27, 2018 Press Release and further stated:

> Our trade accounts receivables were $225.0 million as at March 31, 2018, $226.8 million as of March 31, 2017 and $169.3 million as at March 31, 2016. If the cash flow, working capital, financial condition or results of operations of our customers deteriorate, they may be unable, or they may otherwise be unwilling, to pay trade account receivables owed to us promptly or at all. In addition, from time to time, we have significant concentrations of credit risk in relation to our trade account receivables as a result of individual theatrical releases, television syndication deals or music licenses. Although we use contractual terms to stagger receipts, de-recognition of financial assets and/or the release or airing of content, as of March 31, 2018, 20.5% of our trade account receivables were represented by our top five debtors, compared to 25.1% as of March 31, 2017. Any substantial defaults or delays by our customers could materially and adversely affect our cash flows, and we could be required to terminate our relationships with customers, which could adversely affect our business, prospects, financial condition, results of operations.

25.     Concerning uncollectable receivables, the 2018 20-F stated that "[u]ncollectible accounts receivables are written off when a settlement is reached for an amount less than the outstanding balance or when the Group determines that

the balance will not be collected" and "[t]he allowance for doubtful accounts/bad debt for the year ended March 31, 2018 and March 31, 2017, was $4,740 and $2,430 respectively." (amount stated in thousands).

26.    The 2018 20-F also attested to the effectiveness of the Company's internal controls over financial reporting:

> Management assessed the effectiveness of internal control over financial reporting as at March 31, 2018, based on the criteria established in 2013 Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based on the above criteria, and as a result of this assessment, management concluded that, as at March 31, 2018, our internal control over financial reporting was effective in providing reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles.

27.    On November 15, 2018, the Company issued a press release containing its financial results for the second quarter of fiscal year 2019, ended September 30, 2018 ("November 15, 2018 Press Release"). In the November 15, 2018 Press Release, Defendant Parameswaran stated "our trade accounts receivable balance has reduced by $26.9 million and now stands at $198.0 million. Our strong operating performance coupled with our conservative balance sheet has us poised for growth in the coming fiscal years."

28.    The November 15, 2018 Press Release further stated: "[a]s of September 30, 2018, Trade Receivables decreased to $198.0 million from $225.0 million as of March 31, 2018 after considering expected credit loss reserve

upon adoption of new accounting standards during the period."

29.     On November 16, 2018, the Company filed its quarterly report on Form 6-K for second quarter of fiscal year 2019, ended September 30, 2018 ("2Q 2019 6-K") with the SEC, which confirmed the financial results from the November 15 Press Release. The 2Q 2019 6-K was signed by Defendant Parameswaran.

30.     The 2Q 2019 6-K contained a statement concerning trade receivable identical to the one from the November 15, 2018 Press Release quoted in Paragraph 28.

31.     Concerning "Item 1A. Risk Factors," the 2Q 2019 6-K's only statement was a reference to the factors listed in the 2018 20-F.

32.     On February 21, 2019, the Company issued a press release containing its financial results for the third quarter of fiscal year 2019, ended December 31, 2018 ("February 21, 2019 Press Release"). Concerning trade receivables, that press release stated: "As of December 31, 2018, Trade Receivables decreased to $210.0 million from $225.0 million as of March 31, 2018 after considering expected credit loss reserve upon adoption of new accounting standards during the period."

33.     On February 26, 2019, the Company filed its quarterly report on Form 6-K for third quarter of fiscal year 2019, ended December 31, 2018 ("3Q 2019 6-K") with the SEC, which confirmed the financial results from the

November 15 Press Release. The 3Q 2019 6-K was signed by Defendant Parameswaran.

34.    The 3Q 2019 6-K contained a statement concerning trade receivable identical to the one from the November 15, 2018 Press Release quoted in Paragraph 33.

35.    Concerning "Item 1A. Risk Factors," the 3Q 2019 6-K's only statement was a reference to the factors listed in the 2018 20-F.

36.    The statements contained in Paragraphs 16-35 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Eros and its executives engaged in a scheme to use related-party transactions to fabricate receivables that they reported in Eros's public financial disclosures; (2) because of this scheme, Eros's financial position was weaker than what the Company disclosed; (3) consequently, the Company's Indian subsidiary, Eros International Media Ltd ("EIML"), missed loan payments and had its credit downgraded; and (4) due to the foregoing, Defendants' statements about Eros's receivables, business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## **THE TRUTH EMERGES**

37.    On June 5, 2019, CARE Ratings, India's second largest credit ratings agency, downgraded EIML's credit rating to "Default" because of "ongoing delays/default in debt servicing due to slowdown in collection from debtors."

38.    On June 6, 2019, Eros issued a press release admitting that EIML was late on two loan interest payments for April and May 2019.

39.    On this news, shares of Eros fell $3.59 or over 49% to close at $3.71 per share on June 6, 2019, damaging investors.

40.    The next day, before the market opened, Hindenburg Research published an article entitled "Eros International: On-The-Ground Research, Employee Interviews, and Private Company Documents Expose Egregious Accounting Irregularities," explaining the reason for the downgrade of EIML. The article stated, among other things, that "a significant portion of Eros's receivables don't exist" and that they have documented "multiple undisclosed related-party transactions that appear designed to hide receivables."

41.    On this news, shares of Eros fell another $.41 or over 11% to close at $3.30 per share on June 7, 2019, damaging investors

42.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

12

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who acquired Eros securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Eros, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Eros securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

45.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class

and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Eros;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Eros to issue false and misleading public filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false public filings;

- whether the prices of Eros's securities during the Class Period were artificially inflated because of the Defendants' conduct

complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

48.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

49.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Eros shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

- As a public issuer, Eros filed periodic public reports;

- Eros regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as

15

communications with the financial press and other similar reporting services; and

- Eros was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

50.   Based on the foregoing, the market for Eros securities promptly digested current information regarding Eros from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

51.   Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## <u>COUNT I</u>
### **For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder**
### <u>Against All Defendants</u>

52.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.   This Count is asserted against Defendants is based upon Section

16

10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

54.    During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Eros securities during the Class Period.

56.    Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Eros were

materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Eros, their control over, and/or receipt and/or modification of Eros's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Eros, participated in the fraudulent scheme alleged herein.

57.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Eros personnel to members of the investing public, including Plaintiff and the Class.

58.     As a result of the foregoing, the market price of Eros securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Eros

securities during the Class Period in purchasing Eros securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

59.     Had Plaintiff and the other members of the Class been aware that the market price of Eros securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Eros securities at the artificially inflated prices that they did, or at all.

60.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

61.      By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Eros securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

62.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63.     During the Class Period, the Individual Defendants participated in the operation and management of Eros, and conducted and participated, directly and indirectly, in the conduct of Eros's business affairs. Because of their senior

positions, they knew the adverse non-public information about Eros's misstatement of revenue and profit and false financial statements.

64.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Eros's financial condition and results of operations, and to correct promptly any public statements issued by Eros which had become materially false or misleading.

65.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Eros disseminated in the marketplace during the Class Period concerning Eros's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Eros to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Eros within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Eros securities.

66.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Eros.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)     awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: June 21, 2019                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By:/s/Laurence M. Rosen
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

21

Counsel for Plaintiff