**LEVI & KORSINSKY, LLP**
Eduard Korsinsky (EK-8989)
55 Broadway, 10th Floor
New York, New York 10006
Tel.:  (212) 363-7500
Fax:  (212) 363-7171
Email: ek@zlk.com

*[Additional counsel on signature block]*

*Counsel for Movant Vijay Singh*
*and [Proposed] Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL MONTESANO, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:19-cv-14125-JMV-JAD |
| Plaintiff, | **VIJAY SINGH'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS THE LEAD PLAINTIFF** |
| v. | |
| EROS INTERNATIONAL PLC, KISHORE LULLA, PREM PARAMESWARAN, and JYOTI DESHPANDE, | **MOTION DATE: September 16, 2019** |
| Defendants. | |

*[caption continued on next page]*

| | |
|---|---|
| JOHN SCHRAUFNAGEL, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:19-cv-14445-KM-JBC |
| Plaintiff, | |
| v. | |
| EROS INTERNATIONAL PLC, KISHORE LULLA, PREM PARAMESWARAN, and JYOTI DESHPANDE, | |
| Defendants. | |

ii

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

ARGUMENT ...............................................................................................2

   I.  SINGH IS THE ONLY MOVANT REMAINING WHO TIMELY FILED A MOTION FOR LEAD PLAINTIFF.............................................................2

   II. THE COURT SHOULD DENY THE OPUS GROUP'S MOTION AS UNTIMELY. ...........................................................................................4

   III. EVEN IF THE COURT IS WILLING TO OVERLOOK THE STATUTORY DEADLINE AND CONSIDER THE OPUS GROUP'S MOTION, SINGH IS STILL THE ONLY MOVANT WHO MEETS THE ADEQUACY REQUIREMENTS OF RULE 23...................................................................6

   IV.  THE OPUS GROUP FACES ADDITIONAL UNIQUE DEFENSES RELATING TO WHETHER OR NOT IT POSSESSES STANDING TO PURSUE THIS ACTION. ........................................................................9

   V. ALTERNATIVELY, LIMITED DISCOVERY IS WARRANTED TO EVALUATE THE OPUS GROUP'S ADEQUACY AND TYPICALITY..11

CONCLUSION ...........................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*In re Able Labs. Sec. Litig.*,
  425 F. Supp. 2d 562 (D.N.J. 2006) ................................................... 4

*Andrade v. Am. Apparel, Inc.*,
  No. CV1006352MMMRCX, 2011 WL 13131110 (C.D. Cal. Jan. 21,
  2011) ..................................................................................... 12

*Beck v. Maximus*, *Inc.*,
  457 F.3d 291 (3d Cir.2006) .............................................................. 9

*Broadfoot v. Barrick Gold Corp.*,
  No. 17 CIV. 3507 (NRB), 2017 WL 3738444 (S.D.N.Y. Aug. 9, 2017)11, 12

*Chao Sun v. Han*,
  No. CIV.A. 15-703, 2015 WL 2364937 (D.N.J. May 14, 2015) ................... 7

*Eichenholtz v. Verifone Holdings, Inc.*,
  No. 07-06140, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ...................... 7

*Ferrari v. Gisch*,
  225 F.R.D. 599 (C.D. Cal. 2004) ..................................................... 4

*Fischler v. AmSouth Bancorporation*,
  No. 95-1567-Civ-T-17A, 1997 WL 118429 (M.D. Fla. Feb. 6, 1997) ........ 11

*Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.*,
  No. 15-CV-3599 KMW, 2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015) ....... 7

*Nakamura v. BRF S.A.*,
  No. 18-CV-2213 (PKC), 2018 WL 3217412 (S.D.N.Y. July 2, 2018) .......... 7

*Nasin v. Hongli Clean Energy Techs. Corp.*,
  No. CV 2:17-3244 (WJM), 2017 WL 5598214 (D.N.J. Nov. 21, 2017) ....... 4

*In re Netflix, Inc., Sec. Litig.*,
  No. 12-0225 SC, 2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) .................. 9

*In re Network Assocs. Inc., Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) ............................................... 11

*Pena v. iBio, Inc.*,
  2015 U.S. Dist. LEXIS 10686 (D. Del. Jan. 30, 2015) ................................ 11

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ..................................................... 3

*Ratz v. PhotoMedex, Inc.*,
  No. CV 13-6808, 2014 WL 12611308 (E.D. Pa. Feb. 12, 2014)...................... 6

*Reitan v. China Mobile Games & Entertainment Group, Ltd.*,
  68 F. Supp. 3d 390 (S.D.N.Y. 2014) ........................................... 4, 5

*Sklar v. Amarin Corp. PLC*,
  Civil Action No. 13-cv-06663 (FLW)(TJB), 2014 WL 3748248 (D.N.J. July
  29, 2014)................................................................... 6

*Smith v. Antares Pharma, Inc.*,
  No. CV178945MASDEA, 2018 WL 3611067 (D.N.J. July 27, 2018).......... 3

*Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*,
  No. CIV.A. 11-6247 JBS, 2012 WL 3638629 (D.N.J. Aug. 22, 2012),
  *motion for relief from judgment granted sub nom. In re Cent. European*
  *Distribution Corp. Sec. Litig.*, No. CIV.A. 11-6247 JBS-K, 2012 WL
  5465799 (D.N.J. Nov. 8, 2012) ......................................... 9, 10, 11

*Stires v. Eco Sci. Sols., Inc.*,
  No. CV 17-3707(RMB/KMW), 2018 WL 5784817 (D.N.J. Feb. 14, 2018) 8

*In re Stitch Fix, Inc. Secs. Litig.*,
  No. 18-cv-06208-JD, 2019 U.S. Dist. LEXIS 134592 (N.D. Cal. Aug. 9,
  2019) ..................................................................... 8

*Takata v. Riot Blockchain, Inc.*,
  No. CV182293FLWTJB, 2018 WL 5801379 (D.N.J. Nov. 6, 2018),
  *reconsideration denied*, No. CV182293FLWTJB, 2019 WL 2710273
  (D.N.J. June 26, 2019) ................................................... 7

*In re Telxon Corp. Sec. Litig.*,
  67 F.Supp.2d 803 (N.D. Ohio 1999) ...................................... 4

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008) ..................................... 7

*W.R. Huff Asset Mgmt. Co. LLC v. Deloitte & Touche LLP* ("*Huff*"),
  549 F.3d 100 (2d Cir. 2008) ........................................................................ 10

*Wong v. Arlo Techs., Inc.*,
  No. 19-CV-00372-BLF, 2019 WL 2010706 (N.D. Cal. May 6, 2019).......... 3

**Statutes**

15 U.S.C. § 78u-4(a)(3) ................................................................. passim

**Other Authorities**

Electronic Case Filing Policies and Procedures, 1(k) (Apr. 3, 2014).................. 5

# INTRODUCTION[1]

The court must appoint a lead plaintiff in every class action case under the Securities Exchange Act of 1934. The process for making that appointment is set by statute. It begins with a notice informing all members of the purported class that they have 60 days to file a motion requesting appointment as the lead plaintiff. 15 U.S.C. §78u-4(a)(3). This is a strict deadline and, once that deadline has passed, the Court must consider each movant's suitability to serve as the lead plaintiff. Movant Vijay Singh ("Singh") is the only shareholder who timely moved for lead plaintiff and that still seeks to serve as lead plaintiff. For that reason, the Court should grant Singh's motion.

By way of background, shareholder Paul Montesano commenced this class action on June 21, 2019. That same day, Mr. Montesano's counsel filed the statutorily required notice alerting other Eros shareholders of the class action and their respective rights to move for lead plaintiff within 60 days. Dkt. No. 5-6. The 60-day deadline expired on August 20, 2019. Three movants filed motions for lead plaintiff on that day pursuant to the statutory deadline—Singh, the "Chirania Group" (consisting of shareholders Sunil Chirania and Martin Mayer), and Janine Ellenberger. The Chirania Group and Ms. Ellenberger have since withdrawn their motions (or, strictly speaking, filed notices of non-opposition). Dkt. Nos. 10, 11. Singh has not withdrawn his motion. In fact, he is the only remaining movant who filed a motion in accordance with the statutory deadline that still remains interested in serving as the lead plaintiff in this action. For that reason, and that reason alone, Singh's motion should be granted.

---

[1] All capitalized terms shall have the meaning ascribed in Vijay Singh's Motion for Consolidation of the Actions, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel (ECF No. 5) unless otherwise defined herein.

1

On August 21, 2019, one day after the 60-day deadline expired, a fourth motion for lead plaintiff was filed. This motion was filed by two foreign entities (referred to as the "Opus Group") claiming that they intended to file their motion within the 60-day deadline but were unable to do so due to "issues beyond [their counsel's] control" relating to "Mimecast spam filters." Dkt. No. 9 at 1. Counsel's technical issues are of no concern to Singh and the thousands of unnamed class members he seeks to represent. When it comes to statutory deadlines, they must be met.

As explained in further detail below, the Court should grant Singh's motion and appoint him and his counsel as lead plaintiff and lead counsel, respectively.

## ARGUMENT

### I.    SINGH IS THE ONLY MOVANT REMAINING WHO TIMELY FILED A MOTION FOR LEAD PLAINTIFF.

The Exchange Act, as modified by the PSLRA, sets forth the process and procedure for appointing the lead plaintiff in a securities fraud class action lawsuit. 15 U.S.C. §78u-4(a)(3). In every class action, the plaintiff or plaintiffs commencing the action must file a notice alerting other members of the purported class of the action and their right to serve as the lead plaintiff. The statute reads, in pertinent part, as follows:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class— (I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. §78u-4(a)(3)(A)(i). Critically, all shareholders interested in filing a motion for lead plaintiff *must* do so not later than 60 days after the notice.

This action was commenced on June 21, 2019. Dkt. No. 1. That same day, the shareholder plaintiff who filed the motion (Mr. Montesano) issued a notice advising other members of the purported class that they had 60 days to file a motion for lead plaintiff (or until August 21, 2019). Dkt. No. 5-6.

Three movants filed motions in response to the notice on August 21, 2019—Singh, the Chirania Group, and Ms. Ellenberger. As of today, Singh is the only movant remaining who timely filed a motion for lead plaintiff that is still interested in serving as the plaintiff. The Chirania Group and Ms. Ellenberger both filed notices of non-opposition and, in so doing, effectively withdrew their motions for lead plaintiff. *See Smith v. Antares Pharma, Inc.*, No. CV178945MASDEA, 2018 WL 3611067, at *1 (D.N.J. July 27, 2018) (considering only the two competing motions for appointment as lead plaintiff because the other movants have filed non-oppositions); *see also Wong v. Arlo Techs., Inc.*, No. 19-CV-00372-BLF, 2019 WL 2010706, at *2 (N.D. Cal. May 6, 2019) (finding that the filing of a non-opposition by a movant to a competing motion results in the movant's motion as being "effectively withdrawn."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 401 n.9 (S.D.N.Y. 2004) (finding by "by announcing its support for [a competing] motion . . . its own candidacy is effectively withdrawn.").[2]

---

[2] To the extent that either the Chirania Group or Ms. Ellenberger attempts to reverse course and pursue their motion, Singh reserves the right to respond in full to whatever arguments are raised (including that any potential arguments have been waived by the filing of the non-opposition).

## II.    THE COURT SHOULD DENY THE OPUS GROUP'S MOTION AS UNTIMELY.

The Opus Group consists of two foreign entities: "Opus Chartered Issuances S.A., Compartment 127" and "AI Undertaking IV". The Court should not overlook the disqualifying fact that they filed their motion after the statutory 60-day deadline. *First*, the lead plaintiff deadline is not discretionary, as evidenced by courts around the country. *See*, *e.g.*, *Nasin v. Hongli Clean Energy Techs. Corp.*, No. CV 2:17-3244 (WJM), 2017 WL 5598214, at *3 (D.N.J. Nov. 21, 2017) ("Absent the required language in its initial certification and the amended certifications being filed after the 60-day deadline, the [movants'] deficient certifications will subject it to a unique defense that renders them 'incapable of adequately representing the class' and, as a result, they are not the presumptively most adequate lead plaintiff."); *In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 565 (D.N.J. 2006) (denying to consider certification filed after the PSLRA deadline as the "[t]he sixty-day limit is mandatory."); *Ferrari v. Gisch*, 225 F.R.D. 599, 603–04 (C.D. Cal. 2004) (same); *In re Telxon Corp. Sec. Litig.*, 67 F.Supp.2d 803, 818 (N.D. Ohio 1999) ("The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed after the sixty (60) day window has closed.").

To be sure, even the authority cited by the Opus Group in their belated motion makes this point clear. In its motion papers the Opus Group cites only one authority, *Reitan v. China Mobile Games & Entertainment Group, Ltd.*, 68 F. Supp. 3d 390 (S.D.N.Y. 2014), for the proposition that a motion filed after the 60-day deadline can be considered. Dkt. No. 8-1 at 6. *Reitan* is clearly distinguishable from the facts here. In *Reitan*, the question was whether an untimely motion for appointment as the lead plaintiff would be permitted "after withdrawing a previous, timely motion[.]"68 F. Supp. 3d at 396-97. The Court permitted the motion because it was "simply

4

making the same lead plaintiff motion it filed initially" in accordance with the 60-day deadline. *Id.* at 399. That is not what occurred here. Despite the fact that the Opus Group's counsel "was actively monitoring email and responding to work matters after 11:00 pm" (Dkt. No. 9 at 2), the motion was still not filed timely.

**Second**, the PSLRA provides interested class members 60 days to file their motions for lead plaintiff. There is no requirement that any movant wait until the last possible minute to file their motion. Having decided to do so, the Opus Group assumed the risk that ultimately caused them to miss the statutory deadline. The technical failure they encountered does not provide for an exception; indeed, this District's Electronic Case Filing Policies and Procedures clearly defines a "Technical Failure" as one of the Court's own equipment and software and explicitly states that it does not include "malfunction of an ECF Filing User's equipment." ECF Policy Manual, 1(k). Thus, under the Court's own policies, the Opus Group's technical issue does not allow for an extension of the statutory deadline.

**Third**, the Opus Group's belated attempt to protect themselves from being disqualified are to no avail. Specifically, the Opus Group's decision to file a complaint after the 60-day deadline in the U.S. District Court for the Central District of California provides no protection because (*i*) the complaint was filed ***after*** the 60-day deadline and (*ii*) there was no connection to the venue in which they filed. The Court should not reward the Opus Group for its attempt to circumvent the statutory deadline by filing a similar action in a jurisdiction with a beneficial time zone but no venue.

**III.    EVEN IF THE COURT IS WILLING TO OVERLOOK THE STATUTORY DEADLINE AND CONSIDER THE OPUS GROUP'S MOTION, SINGH IS STILL THE ONLY MOVANT WHO MEETS THE ADEQUACY REQUIREMENTS OF RULE 23.**

Singh is not faced with any of the issues that plague the Opus Group. With over $131,000 in losses, Singh has a significant interest in this litigation. Dkt. No. 5-5. He demonstrated in his opening motion papers that he is typical of the other unnamed class members and holds no adverse interests to the class at large. Dkt. No. 5-2 at 11-13. Moreover, as confirmed by his sworn certification, he is willing to serve as a class representative by providing testimony at trial or by deposition. Dkt. No. 5-4. Singh is therefore entitled to the presumption of being the most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see Sklar v. Amarin Corp. PLC*, Civil Action No. 13-cv-06663 (FLW)(TJB), 2014 WL 3748248, at *6-7 (D.N.J. July 29, 2014). This presumption can only be rebutted with proof the he will not fairly and adequately protect the interests of the Class, or is subject to unique defenses that render such him incapable of adequately representing the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof has been proffered or exists. Singh, therefore, is entitled to be appointed as the lead plaintiff. *See Ratz v. PhotoMedex, Inc.*, No. CV 13-6808, 2014 WL 12611308, at *1 (E.D. Pa. Feb. 12, 2014) (appointing movant where "no proof to overcome the presumption" was submitted by a class member).

Conversely, the Opus Group faces a litany of issues that seriously call into quesiton its ability to serve as an adequate class representative (in addition to the fact that they filed an untimely motion). The Third Circuit has held that a "group is not entitled to presumptive lead plaintiff status unless it 'otherwise satisfies' Rule 23, which in turn requires that it be able to 'fairly and adequately protect the interests of the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001). "The overarching concern is whether the related members of the group can function

6

cohesively and effectively manage the litigation apart from their lawyers." *Nakamura v. BRF S.A.*, No. 18-CV-2213 (PKC), 2018 WL 3217412, at *3 (S.D.N.Y. July 2, 2018) (quoting *Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.*, No. 15-CV-3599 KMW, 2015 WL 7018024, at *2 (S.D.N.Y. Nov. 12, 2015). "Thus, when evaluating group plaintiffs, movants must show their cohesiveness and independence from proposed counsel, including 'how and when they were joined together, how they intend to conduct discovery or how they will coordinate litigation efforts and strategy.'" *Takata v. Riot Blockchain, Inc.*, No. CV182293FLWTJB, 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018), *reconsideration denied*, No. CV182293FLWTJB, 2019 WL 2710273 (D.N.J. June 26, 2019) (quoting *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-06140, 2008 WL 3925289, at *9 (N.D. Cal. Aug. 22, 2008)). "[F]ail[ure] to include any facts in [a group's] moving brief detailing the relationship between the plaintiffs that comprise the group . . . could, by itself, be a basis for denying lead plaintiff status." *Takata*, 2018 WL 5801379, at *5.

"Among the factors to consider in determining whether [a group] will 'fairly and adequately' represent the interests of the class are: (i) whether the individuals in question had a pre-existing relationship, (ii) the extent of that relationship, (iii) whether the group was created the efforts of lawyers for the purpose of obtaining lead plaintiff status, and (iv) whether the group is too large to adequately represent the Class." *Chao Sun v. Han,* No. CIV.A. 15-703, 2015 WL 2364937, at *4 (D.N.J. May 14, 2015) (citing *Cendant*, 264 F.3d at 266-67). Courts also evaluate a group's adequacy based on their plans for cooperation, the group members' sophistication, and the group members' involvement in the litigation to date. *See Int'l Union,* 2015 WL 7018024, at *3; *Varghese v. China Shenghuo Pharm. Holdings, Inc.,* 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). Here, the Opus Group and its members have not even attempted to evidence, let alone satisfy, these requirements.

Nowhere in the opening papers do the members of the Opus Group discuss the formation of the group, its plans on how to coordinate the litigation or oversee counsel, how they intend to communicate amongst each other and stay abreast of developments in the Actions, and ultimately how they will make decisions concerning the Actions. These concerns are further exacerbated by the fact that the members of the Opus Group appear to be based in separate countries outside the United States.[3] *See Stires v. Eco Sci. Sols., Inc.,* No. CV 17-3707(RMB/KMW), 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018) (finding group inadequate when the group members were geographically dispersed and having no pre-existing relationship).

The Opus Group is inadequate because its members have simply not established they can cohesively work as a group and oversee the litigation apart from its counsel. Indeed, the fact that the Opus Group failed to even file its motion for lead plaintiff timely under the 60-day statutory deadline heavily undermines any suggestion to the contrary in its favor. With these questions still unanswered, the Opus Group has not established its adequacy to serve as the lead plaintiff and its motion must be denied. *See In re Stitch Fix, Inc. Secs. Litig.*, No. 18-cv-06208-JD, 2019 U.S. Dist. LEXIS 134592, at *5-7 (N.D. Cal. Aug. 9, 2019) (denying to appoint the group or any of its members as the lead plaintiff despite one group member having the largest losses of any movant because the group was lawyer-driven).

---

[3] *See* Declaration of Eduard Korsinsky dated September 3, 2019, Exhibit 1 (showing Luxemborg registration for Opus – Chartered Issuances S.A.) & Exhibit 2 (showing Saint Vincent and the Grenadines location for AI Undertaking IV Inc.).

8

**IV.    THE OPUS GROUP FACES ADDITIONAL UNIQUE DEFENSES RELATING TO WHETHER OR NOT IT POSSESSES STANDING TO PURSUE THIS ACTION.**

In addition to the obstacles discussed above, the Opus Group faces an additional "unique defense" that disqualifies it from serving as lead plaintiff. "A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir.2006). "There is no requirement at this early stage to 'prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial. . . . The point . . . . is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole.'" *Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*, No. CIV.A. 11-6247 JBS, 2012 WL 3638629, at *9 (D.N.J. Aug. 22, 2012), *motion for relief from judgment granted sub nom. In re Cent. European Distribution Corp. Sec. Litig.*, No. CIV.A. 11-6247 JBS-K, 2012 WL 5465799 (D.N.J. Nov. 8, 2012) (quoting *In re Netflix, Inc., Sec. Litig.*, No. 12-0225 SC, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012).

The Opus Group (specifically, "Opus Chartered Issuances S.A., Compartment 127") does not have Article III standing to pursue the claims of the Class. Compartment 127 is a sub-fund of Opus – Chartered Issuances S.A., which is also a sub-entity of Chartered Opus.[4] As explained on Chartered Opus's website, Luxembourg law allows for an entity to "subdivide the balance sheet of an issuer

---

[4] Chartered Issuances S.A. is a sub-entity of Chartered Opus that privately places sub-funds on behalf of Chartered Opus's clients. *See* Korsinsky Decl., Exhibit 3 (CHARTERED OPUS, *Company*, https://chartered-opus.com/en/company/ (last visited Sept. 3, 2019)).

into individual sub-funds (each a 'compartment')" and that "this legal option of securitisation transforms selected assets into a balance sheet-accounted sub-fund that is exclusively *available to the respective owners*." *Id.* (emphasis added). The website further states that "Chartered Opus offers *professional market participants (clients such as asset managers)* the opportunity to realise 'securitised' concepts/products *for their own investment or for their customers.*" *Id.* (emphasis added). Notably, Chartered Opus's website reinforces these facts by stating that "Chartered Opus combines the client's specified assets in a new product and 'securitises' them" and "[a]ll products securitized by Chartered Opus are generally distributed *by the initiator/client of the product* or a distribution partner appointed by him." *Id.* (emphasis added). Thus, Chartered Opus's own disclosures support that Compartment 127 is a sub-fund securitized by Chartered Opus that was privately placed by Opus-Chartered Issuances S.A. at the behest of a professional market participant client for this client's own account.

"There is no greater impediment to a Plaintiff's ability to prosecute a case than a lack of standing." *Steamfitters*, 2012 WL 3638629, at *10 (D.N.J. Aug. 22, 2012). To establish Article III standing, an entity, such as investment manager, must demonstrate that it: (a) has a valid assignment of claims from its clients; (b) has exclusive control and discretion over the security; and (c) is the beneficial owner and hold legal title to the securities at issue that were bought and sold. *See W.R. Huff Asset Mgmt. Co. LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008). None of these showings has been made by Compartment 127. Compartment 127 has not shown that it and not this unknown client incurred the injury-in-fact. Furthermore, Compartment 127 has not shown that it and not the unknown client, Chartered Opus, or Chartered Issuances S.A. is the entity with the authority to bring the lawsuit. As evidenced by Chartered Opus's website, the questions of Compartment 127's Article III standing and authority to bring the lawsuit will

10

undoubtedly "prejudice the class members by subjecting them to the time and expense of litigating these unique defenses." *Steamfitters*, 2012 WL 3638629, at *11. Therefore, the Opus Group's motion should be denied. *See id.* at *9-11 (discussing Article III standing and finding presumption rebutted as a unique defense existed for the movant failing to have "authority to bring lawsuits nor title to the claims").

## V.    ALTERNATIVELY, LIMITED DISCOVERY IS WARRANTED TO EVALUATE THE OPUS GROUP'S ADEQUACY AND TYPICALITY.

The PSLRA explicitly provides that a class member may conduct discovery into the adequacy of a plaintiff upon the showing of a reasonable basis for a finding that he or she is incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iv). Numerous courts have ordered a proposed lead plaintiff to submit to discovery in similar circumstances. *See In re Network Assocs. Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1024 (N.D. Cal. 1999) (authorizing a four-hour deposition of two lead plaintiff movants and finding the discovery "illuminating" as to why they were inadequate to represent the class); *Broadfoot v. Barrick Gold Corp.*, No. 17 CIV. 3507 (NRB), 2017 WL 3738444, at *1 (S.D.N.Y. Aug. 9, 2017) (granting competing movant's request for discovery based on evidence contained in the certification regarding potential unique defenses); *Pena v. iBio, Inc.*, 2015 U.S. Dist. LEXIS 10686, at *2-3 (D. Del. Jan. 30, 2015) (requiring proposed lead plaintiff to attend hearing for cross-examination); *Fischler v. AmSouth Bancorporation*, No. 95-1567-Civ-T-17A, 1997 WL 118429, at *3 (M.D. Fla. Feb. 6, 1997) ("uncertainty" or "unanswered questions" about a putative lead plaintiff's ability to properly represent the class are sufficient to trigger the PSLRA's lead plaintiff discovery provision).

If the Court is not inclined to appoint Singh as the lead plaintiff, a reasonable basis exists to justify limited discovery concerning the adequacy of the Opus Group. As set forth above, the Opus Group has provided no evidence of its ability to

11

cohesively function as a group to oversee this litigation apart from its counsel and the members of these groups have no apparent relationship to each other beyond their names being jointly listed on their filings with the courts. Moreover, the Opus Group's and its members' own statements and actions warrant further investigation as to their adequacy based on the raised potential unique defenses. Given these issues, "[a]s a matter of case management, it would be preferable to engage now in a fuller examination of this question." *Barrick Gold Corp.,* 2017 WL 3738444, at *1. Accordingly, the Court should first allow Singh to undertake limited discovery to investigate the adequacy issues and potential unique defenses raised herein. *See id.*; *Andrade v. Am. Apparel, Inc.,* No. CV1006352MMMRCX, 2011 WL 13131110, at *3 (C.D. Cal. Jan. 21, 2011) ("Because [Movant A] has presented a reasonable basis for a finding that [Movant B] is not an adequate plaintiff, early discovery regarding [Movant B]'s ability to serve as a fiduciary for the proposed class is properly authorized.").

## CONCLUSION

For the reasons stated above, Singh respectfully requests that his motion be granted in its entirety.

Dated: September 3, 2019          Respectfully submitted

**LEVI & KORSINSKY, LLP**

/s/ Eduard Korsinsky
Eduard Korsinsky
55 Broadway, 10th Floor
New York, New York 10006
Tel.:  (212) 363-7500
Fax:  (212) 363-7171
Email: ek@zlk.com

-and-

12

Nicholas I. Porritt
Adam M. Apton
Alexander A. Krot III
LEVI & KORSINSKY, LLP
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
Email: nporritt@zlk.com
Email: aapton@zlk.com
Email: akrot@zlk.com
(*pro hac vices to be submitted)

*Counsel for Movant Vijay Singh and
Proposed Counsel for the Class*

13