James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

*Liaison Counsel for Movants and Proposed
Liaison Counsel for the Class*

Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201 – 9150

*Counsel for Movants and Proposed Lead
Counsel for the Class*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PAUL MONTESANO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EROS INTERNATIONAL PLC, KISHORE LULLA, PREM PARAMESWARAN, and JYOTI DESHPANDE,<br><br>Defendants. | Case No. 2:19-cv-14125-JMV-JAD |
| JOHN SCHRAUFNAGEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EROS INTERNATIONAL PLC, KISHORE LULLA, PREM PARAMESWARAN, and JYOTI DESHPANDE,<br><br>Defendants. | Case No. 2:19-cv-14445-KM-JBC |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF OPUS CHARTERED ISSUANCES S.A., COMPARTMENT 127 AND AI UNDERTAKING IV'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, <u>AND APPROVAL OF COUNSEL</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.    ARGUMENT ......................................................................................................... 3

    A.    Opus and AI's Lead Plaintiff Motion Is Entitled to Consideration .................................... 3

    B.    Opus and AI Are the Presumptively Most Adequate Plaintiff ........................................... 5

    C.    The Presumption that Opus and AI Are the Most Adequate
    Plaintiff Has Not Been Rebutted....................................................................... 6

        1.    Opus and AI Are an Adequate Group............................................................. 6

        2.    Opus Has Standing to Pursue the Claims in this Action.................................... 8

    D.    Mr. Singh Should Not Be Granted the Ability to Harass
    Opus and AI with Unnecessary Discovery .......................................................... 10

    E.    The Court Should Approve Opus and AI's Selection of Counsel ................................... 11

III.    CONCLUSION..................................................................................................... 11

## TABLE OF AUTHORITIES

### CASES

*Aguilar v. Vitamin Shoppe, Inc.*,
No. 17-cv-6454-KM-MAH, 2018 WL 1960444 (D.N.J. Apr. 25, 2018) .............................. 7, 8

*Barnet v. Elan Corp.*,
236 F.R.D. 158 (S.D.N.Y. 2005) ...................................................................................... 7

*Bowers v. Tesaro Inc.*,
No. 18-cv-10086-ADB, 2018 WL 2089358 (D. Mass. May 4, 2018)...................................... 10

*Canson v. WebMD Health Corp.*,
No. 11-cv-5382-JFK, 2011 WL 5331712 (S.D.N.Y. Nov. 7, 2011).......................................... 7

*Emerson v. Genocea Biosciences, Inc.*,
No. 17-cv-12137-PBS, 2018 WL 839382 (D. Mass. Feb. 12, 2018).......................................... 5

*Freudenberg v. E\*Trade Fin. Corp.*,
No. 07-cv-10400, 2008 WL 2876373 (S.D.N.Y. July 16, 2008)................................................. 7

*GGCC, LLC v. Dynamic Ledger Sols., Inc.*,
No. 17-cv-06779-RS, 2018 WL 1388488 (N.D. Cal. Mar. 16, 2018) ................................... 4, 5

*Goldstein v. Puda Coal, Inc.*,
827 F. Supp. 2d 348 (S.D.N.Y. 2011)...................................................................................... 7

*Hansen v. Ferrellgas Partners, L.P.*,
No. 16-cv-7840-RJS, 2017 WL 281742 (S.D.N.Y. Jan. 19, 2017) .......................................... 6

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)................................................................................... 6, 9, 10

*In re CTI Biopharma Corp. Sec. Litig.*,
No. 16-cv-216-RSL, 2016 WL 7805876 (W.D. Wash. Sept. 2, 2016)...................................... 7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................................ 2

*In re Reserve Fund Sec. & Derivative Litig.*,
No. 08-cv-8060-PGG, 2009 WL 10467937 (S.D.N.Y. Aug. 26, 2009) .................................... 9

*Lewis v. Lipocine Inc.*,
No. 16-cv-4009-BRM-LHG, 2016 WL 7042075 (D.N.J. Dec. 2, 2016)................................... 7

*Peters v. Jinkosolar Holding Co.*,
  No. 11-cv-7133-JPO, 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ......................................... 6

*Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*,
  275 F.R.D. 187 (S.D.N.Y. 2011) ............................................................................................... 8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................................................... 2

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
  68 F. Supp. 3d 390 (S.D.N.Y. 2014) ......................................................................................... 5

*Simmons v. Spencer*,
  No. 13-cv-8216-RWS, 2014 WL 1678987 (S.D.N.Y. Apr. 25, 2014) ....................................... 7

*Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*,
  No. 11-cv-6247-JBS, 2012 WL 3638629 (D.N.J. Aug. 22, 2012) ............................................. 8

*Stires v. Eco Sci. Sols., Inc.*,
  No. 17-cv-3707-RMB-KMW, 2018 WL 5817256 (D.N.J. Nov. 7, 2018) ............................... 11

*Sun v. Han*,
  No. 15-cv-703, 2015 WL 2364937 (D.N.J. May 14, 2015) ..................................................... 11

*Vandevelde v. China Nat. Gas, Inc.*,
  277 F.R.D. 126 (D. Del. 2011) .................................................................................................. 6

*Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  No. 2672-CRB-JSC, 2016 WL 5930844 (N.D. Cal. Oct. 11, 2016)........................................ 10

*Waterford Twp. Police v. Mattel, Inc.*,
  No. 17-cv-04732-VAP-KSX, 2017 WL 10667732 (C.D. Cal. Sept. 29, 2017) ......................... 4

*W.R. Huff Asset Mgmt. Co. LLC v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008) ...................................................................................................... 8

## STATUTES

15 U.S.C. § 78u-4 ........................................................................................................... *passim*

## RULES

Fed. R. Civ. P. 23 ...................................................................................................................... 1, 2, 6

Lead Plaintiff Movants Opus Chartered Issuances S.A., Compartment 127 and AI Undertaking IV ("Movants" or "Opus and AI") submit this reply memorandum of law in further support of their motion for consolidation, appointment as lead plaintiff, and approval of lead counsel (Dkt. No. 8), and in reply to Vijay Singh's opposition to Opus and AI's motion (Dkt. No. 13, the "Singh Opp.").

## I.      INTRODUCTION

Four lead plaintiff motions were filed in this action by Opus and AI (Dkt. No. 8), Sunil Chirania and Martin Mayer ("Chirania and Mayer") (Dkt. No. 6), Vijay Singh (Dkt. No. 5), and Janine Ellenberger (Dkt. No. 7). Chirania and Mayer and Janine Ellenberger do not oppose Opus and AI's lead plaintiff motion. *See* Dkt. Nos. 10, 11. Only Mr. Singh opposes Opus and AI's motion.

The Private Securities Litigation Reform Act of 1995 ("PSLRA") directs courts to appoint the "most adequate plaintiff" as lead plaintiff and provides a rebuttable presumption that the most adequate plaintiff is the plaintiff or movant that has the "largest financial interest in the relief sought by the class" and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B). The presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, no movant contests the fact that Opus and AI have the largest financial interest in the relief sought by the class with a net loss of $586,097.91. *See* Dkt. No. 12 at 6.[1] Moreover, as demonstrated in their opening brief, Opus and AI have made the required preliminary showing

---

[1] By contrast, Chirania and Mayer suffered a net loss of $226,144.61, and Mr. Singh suffered a much smaller net loss of $131,214.11. *Id.*

that they satisfy the requirements of Rule 23. *See* Dkt. No. 8-1 at 8-9. Accordingly, Opus and AI are the presumptively most adequate plaintiff.

Mr. Singh and his counsel, however, have launched a series of spurious attacks against Opus and AI in an attempt to leapfrog over Opus and AI, as well as Chirania and Mayer, who are far more qualified class representatives than Mr. Singh. In so doing, Mr. Singh and his counsel are putting their own interests above those of the class and are displaying precisely the type of "lawyer-driven litigation" that the PSLRA was designed to prevent. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 402 (S.D.N.Y. 2004) ("The PSLRA was intended to prevent lawyer-driven litigation, and to ensure that parties with significant financial interests in the litigation will participate.") (internal quotation marks omitted); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998) ("In enacting the PSLRA, Congress intended to increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs counsel.") (internal quotation marks omitted).

Mr. Singh erroneously argues (1) that Opus and AI should be disqualified from consideration because their lead plaintiff application was purportedly untimely even though they filed a complaint and filed a lead plaintiff motion prior to the deadline, (2) that Opus and AI, which have a pre-litigation relationship, are not a proper lead plaintiff group, and (3) that Opus lacks Article III standing to pursue the claims alleged in this action based on an erroneous notion that Opus does not own the securities at issue. None of these arguments are meritorious. In fact, Singh and his counsel concede as much by requesting that the Court permit them to use

discovery to go on a harassing fishing expedition in the hope they uncover evidence that Opus and AI are inadequate.

In actuality, Opus and AI's lead plaintiff application was not late, and even if it were (which it is not), that is not a sufficient basis to deny their motion. Moreover, Opus and AI are a proper lead plaintiff group since they are a small, cohesive group composed of entities with a pre-litigation relationship. Additionally, contrary to Singh's rank speculation, Opus purchased and held the securities at issue in this action, and therefore has standing to pursue the claims in this action. Regardless, Mr. Singh concedes that AI, an entity that has a far larger financial interest than Mr. Singh, has standing.

As such, Mr. Singh has failed to demonstrate that either Opus or AI are inadequate or atypical in any way, and has failed to rebut the presumption that Opus and AI are the most adequate plaintiff. Accordingly, Opus and AI's lead plaintiff motion should be granted and their selection of counsel should be approved.

## II.    ARGUMENT

### A.    Opus and AI's Lead Plaintiff Motion Is Entitled to Consideration

Opus and AI filed a timely complaint and a timely motion, which are entitled to consideration. The notice informing class members of this action and their right to seek appointment as lead plaintiff stated that investors had until "August 20, 2019" to request appointment as lead plaintiff. *See* Dkt. No. 8-3. On August 20, 2019, Opus and AI filed a related action against the Defendants herein and filed a motion requesting appointment as lead plaintiff in that action. *See Opus Chartered Issuances S.A., Compartment 127 v. Eros International PLC et al*, No. 2:19-cv-07242-CAS-SS (C.D. Cal., Aug. 20, 2019) (the "*Opus* Action"); Dkt. No. 8-8. Accordingly, Opus and AI filed both a complaint and a lead plaintiff motion on the day provided in the notice to the class. This is more than what is required by statute. *See* 15 U.S.C. § 78u-

3

4(a)(3)(B)(iii)(I)(aa) (movants must either file a complaint *or* make a motion). Accordingly, Opus and AI's lead plaintiff motion is entitled to consideration.

Moreover, Opus and AI filed a nearly identical motion in this action on August 21, 2019, explaining that the late filing in this Court was due to technical issues. *See* Dkt. Nos. 8, 9. Courts faced with a similar issue have found no problem with the timeliness of the filing. *See GGCC, LLC v. Dynamic Ledger Sols., Inc.*, No. 17-cv-06779-RS, 2018 WL 1388488, at *4 (N.D. Cal. Mar. 16, 2018) (appointing a movant as lead plaintiff that filed a motion "one day late," but "file[d] an identical motion in the related [] action by the [] deadline").

Mr. Singh argues that the Court should disregard Opus and AI's lead plaintiff application, however, because "the motion was not filed timely." Singh Opp. at 5. As explained above, this is not correct as the statute only requires the filing of a complaint *or* the filing of a motion, and Opus and AI did both before the deadline.[2] Acknowledging that Opus and AI filed a timely motion, Mr. Singh argues that this Court should not credit Opus and AI's filings in California because the filings occurred before midnight in California but after midnight in New Jersey due to time zone differences. *Id.* Mr. Singh, however, offers no authority for the position that this is relevant or that it should be determinative.[3]

In fact, counsel for Mr. Singh (Levi & Korsinsky, LLP, or "Levi") must be aware that its arguments are baseless since Levi has been approved as lead counsel after submitting inarguably late lead plaintiff motions on at least two occasions. *See Waterford Twp. Police v. Mattel, Inc.*,

---

[2] Mr. Singh also argues that the "technical issue[s]" which prevented Opus and AI from filing a lead plaintiff motion in this action on August 20, 2019 "do[] not allow for an extension of the statutory deadline." *Id.* Opus and AI, however, did not argue for an extension since they filed both a complaint and a lead plaintiff motion by the deadline.

[3] Mr. Singh also argues that there is no venue in California. *See* Singh Opp. at 5. This is both irrelevant and incorrect. Eros International Plc ("Eros") securities purchasers are scattered throughout the United States, and venue is proper in any judicial district in which "a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).

4

17-cv-04732-VAP-KSX, 2017 WL 10667732, at *8 (C.D. Cal. Sept. 29, 2017) (Levi approved as lead counsel after submitting a lead plaintiff motion 1 hour late); *see also Emerson v. Genocea Biosciences, Inc.*, No. 17-cv-12137-PBS, 2018 WL 839382, at *3 (D. Mass. Feb. 12, 2018) (Levi approved as lead counsel after submitting a lead plaintiff motion 4 minutes late).

Accordingly, even if this Court determines that Opus and AI filed an untimely motion in this District, Opus and AI should not be disqualified. *See Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 397 (S.D.N.Y. 2014) ("[C]ourts in this District have not adhered strictly to the PSLRA's timing requirements in every instance."). Courts commonly except cases from the 60-day deadline if "a timely motion was filed previously, [] the new motion is not made to manipulate the size of the movant's losses, and [] granting the motion would not undermine any of the policies that underlie the PSLRA." *Id.* Here, Opus and AI experienced a technical difficulty, filed a complaint and filed a timely motion in the related California action, and are not manipulating the size of their loss. Accordingly, Opus and AI's lead plaintiff motion should be considered. *See GGCC*, 2018 WL 1388488, at *4 ("refusing to consider [a] motion [filed one day late] would be an unnecessarily stringent application of the statutory deadlines that would undercut the PSLRA's preference for appointing the plaintiff with the greatest financial stake in the outcome").

## B.   Opus and AI Are the Presumptively Most Adequate Plaintiff

As explained in Opus and AI's opening and opposition briefing (Dkt. Nos. 8, 12), Opus and AI satisfy all three requirements to be the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). First, Opus and AI filed a complaint and a lead plaintiff motion in the Central District of California, and a lead plaintiff motion in this action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). Second, Opus and AI have the largest financial interest in the relief sought

5

by the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). And third, Opus and AI satisfy the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

### C.   The Presumption that Opus and AI Are the Most Adequate Plaintiff Has Not Been Rebutted

To rebut the most adequate plaintiff presumption, the competing movants must present "proof" that Opus and AI are inadequate or subject to unique defenses. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Such proof demands "specific support" and "actual evidence," not mere "[c]onclusory assertions of inadequacy." *Vandevelde v. China Nat. Gas, Inc.*, 277 F.R.D. 126, 134 (D. Del. 2011); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 269 (3d Cir. 2001) (upholding a district court's lead plaintiff appointment when the objecting movant failed to "provide[] evidence" supporting their claim of inadequacy).

Mr. Singh attempts to rebut the presumption that Opus and AI are the most adequate plaintiff in two ways. First, Mr. Singh argues that Opus and AI are "inadequate because [they] have simply not established they can cohesively work as a group and oversee the litigation apart from [their] counsel." Singh opp. at 8. Second, Mr. Singh argues that Opus "does not have Article III standing to pursue the claims of the Class." Singh Opp. at 9. Both attacks fail.

### 1.   Opus and AI Are an Adequate Group

"The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff" so long as the group will "fairly and adequately protect the interests of the class." *See Cendant*, 264 F.3d at 266. "In assessing a group's adequacy, courts ask whether the proposed group will be able to function cohesively and to effectively manage the litigation apart from its lawyers." *Hansen v. Ferrellgas Partners, L.P.*, No. 16-cv-7840-RJS, 2017 WL 281742, at *4 (S.D.N.Y. Jan. 19, 2017) (internal quotation marks and brackets omitted). "[C]ourts appear to generally agree that a group comprising five or fewer members is appropriate." *Peters v. Jinkosolar Holding Co.*, No.

6

11-cv-7133-JPO, 2012 WL 946875, at *7 (S.D.N.Y. Mar. 19, 2012).

Groups "with only five members" are "presumptively cohesive," even when the members "have no pre-litigation relationship." *Simmons v. Spencer*, No. 13-cv-8216-RWS, 2014 WL 1678987, at *5 (S.D.N.Y. Apr. 25, 2014). Such groups are routinely appointed as lead plaintiff. *See e.g.*, *Lewis v. Lipocine Inc.*, No. 16-cv-4009-BRM-LHG, 2016 WL 7042075, at *6 (D.N.J. Dec. 2, 2016) (appointing a group of three as lead plaintiff); *Aguilar v. Vitamin Shoppe, Inc.*, No. 17-cv-6454-KM-MAH, 2018 WL 1960444, at *12 (D.N.J. Apr. 25, 2018) (same). Accordingly, small groups *with* pre-existing relationships are certainly cohesive. *See In re CTI Biopharma Corp. Sec. Litig.*, No. 16-cv-216-RSL, 2016 WL 7805876, at *2 (W.D. Wash. Sept. 2, 2016) (appointing two entities that "have a relationship that predates this litigation" as lead plaintiff); *Canson v. WebMD Health Corp.*, No. 11-cv-5382-JFK, 2011 WL 5331712, at *3 (S.D.N.Y. Nov. 7, 2011) (appointing "two parties [that] have a pre-existing relationship").

Here, Opus and AI are cohesive because they are a group of two and share a pre-litigation relationship. As demonstrated in the Declaration of Herbert Hakala in Support of Opus Chartered Issuances S.A., Compartment 127 and AI Undertaking IV's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Counsel, filed herewith ("Hakala Decl."), Opus and AI share the same asset manager, PP-Asset Management GmbH, and the individuals that signed certifications on behalf of Opus and AI have a pre-litigation relationship. *See* Hakala Decl. ¶¶2-5.[4]

---

[4] Moreover, the fact that Opus and AI each, individually, possess a larger financial interest than Mr. Singh further supports their appointment as lead plaintiff because it demonstrates that the group was not cobbled together by their attorneys, which is what the PSLRA sought to eliminate. *See Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 357 (S.D.N.Y. 2011); *Freudenberg v. E*Trade Fin. Corp.*, No. 07-cv-10400, 2008 WL 2876373, at *5 (S.D.N.Y. July 16, 2008); *Barnet v. Elan Corp.*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005).

7

As such, Opus and AI are cohesive and would be adequate class representatives, and Mr. Singh has failed to rebut the most adequate plaintiff presumption on this basis.[5]

### 2.      Opus Has Standing to Pursue the Claims in this Action

Mr. Singh claims that Opus lacks Article III standing to pursue the claims in this action. *See* Singh Opp. at 9.

As an initial matter, Mr. Singh does not allege that AI lacks standing. As such, even if the Court finds that Opus lacks standing, AI should still be appointed lead plaintiff since it individually has a far greater loss than Mr. Singh. *See* n.5, *supra*.

Regardless, Mr. Singh's argument is wholly without merit since Opus held legal title to the securities at issue in this action at all relevant times. *See* Dkt. No. 8-4 (Opus' certification setting forth Opus' transactions in Eros securities). Mr. Singh, however, ignores Opus' certification and speculates that Opus' structure is like that in cases involving "investment advisors" that did not own legal title to the securities at issue. *See* Singh Opp. at 10 (citing *W.R. Huff Asset Mgmt. Co. LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), and *Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*, No. 11-cv-6247-JBS, 2012 WL 3638629 (D.N.J. Aug. 22, 2012)).[6] These "investment advisor" cases, however, are inapplicable because Opus "actually purchased shares . . . and allegedly suffered an injury in

---

[5] While not ideal or requested by Opus and AI, the Court has the authority to appoint either Opus or AI individually as lead plaintiff if the Court determines that Opus and AI have made an unsatisfactory demonstration of group adequacy. *See Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) ("Courts routinely select individual members of a proposed lead plaintiff group to serve as lead plaintiff.").

[6] The *Huff* court held that "an investment advisor, who has authority to make investment decisions and a power of attorney, does not have standing to bring securities lawsuits *when he or she does not own the underlying securities*." *Aguilar v. Vitamin Shoppe, Inc.*, No. 2:17-CV-6454-KM-MAH, 2018 WL 1960444, at *6 (D.N.J. Apr. 25, 2018) (citing *Huff*, 549 F.3d at 103) (emphasis added)

8

fact from those purchases." *In re Reserve Fund Sec. & Derivative Litig.*, No. 08-cv-8060-PGG, 2009 WL 10467937, at *4 (S.D.N.Y. Aug. 26, 2009) (distinguishing *Huff*).

Mr. Singh spills nearly a full page worth of ink selectively quoting snippets of text from the website of Chartered Investment Germany GmbH, who is not a movant or party to this action, in order to sow confusion regarding Opus. *See* Singh Opp. at 9-10 n.4. The confusion is unnecessary, however, because the legal structure according to the website Mr. Singh references is clear. Opus (or "Opus - Chartered Issuances S.A." to be precise) owns shares of Eros and placed them in a subdivision or "sub-fund" on its balance sheet called "Compartment 127" and sells shares of Compartment 127 as a product.[7] Accordingly, Opus owns the Eros securities at issue, and the Court should reject Mr. Singh's efforts to generate a purported standing issue through convolution. As such, Mr. Singh has failed to rebut the presumption that Opus and AI are the most adequate plaintiff on this basis.

Since Mr. Singh has failed to rebut the presumption that Opus and AI are the most adequate plaintiff, Opus and AI should be appointed as lead plaintiff, and Mr. Singh is not entitled to any further consideration of his motion. *See Cendant*, 264 F.3d at 268 ("If no class member succeeds in rebutting the presumption, then the district court should appoint the presumptive lead plaintiff as the lead plaintiff.").

---

[7] *See* https://chartered-opus.com/en/company/ (cited in Singh Opp. at 9 n.4) (last visited September 9, 2019) ("The Luxembourg Securitisation Act makes it possible to subdivide the balance sheet of an issuer into individual sub-funds (each a 'compartment')."); https://chartered-opus.com/en/current-products/product/962284684/ (last visited September 9, 2019) (product webpage for Compartment 127, stating "[t]his Product is issued by Opus - Chartered Issuances S.A.").

**D.      Mr. Singh Should Not Be Granted the Ability to Harass Opus and AI with Unnecessary Discovery**

Having failed to proffer the required "proof" that Opus and AI would be an inadequate lead plaintiff or subject to unique defenses, Mr. Singh requests that this Court permit him to go on a fishing expedition to find such proof. *See* Singh Opp. at 11-12. Discovery against a competing lead plaintiff is permitted, however, only when "the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv). Moreover, the Third Circuit has instructed courts to "take care to prevent the use of discovery to harass presumptive lead plaintiffs" which is "something that the Reform Act was meant to guard against." *Cendant*, 264 F.3d at 270.

Here, Mr. Singh has provided no reasonable basis for discovery. As explained above, Opus and AI are an adequate and cohesive group with standing to pursue the claims in this action. *See Bowers v. Tesaro Inc.*, No. 18-cv-10086-ADB, 2018 WL 2089358, at *3 (D. Mass. May 4, 2018) ("for the same reasons that [movant A] failed to rebut the presumption that [movant B] is the most adequate plaintiff, there is no basis for conducting limited discovery").

Moreover, Mr. Singh identifies no particular document he would like to review, and no particular question he would like to ask that would illuminate the purported "adequacy issues and potential unique defenses" he has in mind. Singh Opp. at 12. Instead, Mr. Singh broadly asserts that Opus and AI's "statements and actions warrant further investigation." *Id.* The PSLRA does not permit such reaching discovery. *See In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672-CRB-JSC, 2016 WL 5930844, at *5 (N.D. Cal. Oct. 11, 2016) (holding movant "has not demonstrated a reasonable basis to permit limited discovery"

10

where movant's "allegations are speculative"). Accordingly, the Court should deny Mr. Singh's request to go on this potentially costly, harassing, and time-consuming fishing expedition.

### E. The Court Should Approve Opus and AI's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Opus and AI have selected Glancy Prongay & Murray LLP ("GPM") as lead counsel and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. ("Carella") as liaison counsel for the class. GPM and Carella have been approved as counsel numerous times in the District of New Jersey. *See, e.g.*, *Stires v. Eco Sci. Sols., Inc.*, 17-cv-3707-RMB-KMW, 2018 WL 5817256, at *2 (D.N.J. Nov. 7, 2018) ("both firms have considerable experience and expertise in securities litigation"); *Sun v. Han*, 15-cv-703, 2015 WL 2364937, at *5 (D.N.J. May 14, 2015) (GPM and Carella have "extensive experience and substantial expertise in securities litigation"). Accordingly, Opus and AI's selection of counsel for the class should be approved. *See Cendant*, 264 F.3d at 274 ("The court should generally employ a deferential standard in reviewing the lead plaintiff's choices.").

### III. CONCLUSION

For the foregoing reasons, Opus and AI respectfully request that the Court enter an Order: (1) consolidating the related actions; (2) appointing Opus and AI as lead plaintiff; (3) approving Opus and AI's' selection of GPM as lead counsel and Carella as liaison counsel for the class; and (4) granting such other relief as the Court may deem just and proper.

Dated: September 9, 2019

Respectfully submitted,

**CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.**

By:   *s/ Donald A. Ecklund*
James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994 -1700

*Liaison Counsel for Movants and Proposed Liaison
Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150

*Counsel for Movants and Proposed Lead Counsel
for the Class*

12