**<u>Not for Publication</u>**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PAUL MONTESANO, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>  v.<br><br>EROS INTERNATIONAL PLC, et al.,<br><br>   *Defendants*. | Civil Action No. 19-14125<br>(JMV)(JAD) |
| JOHN SCHRAUFNAGEL, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>  v.<br><br>EROS INTERNATIONAL PLC, et al.,<br><br>   *Defendants*. | Civil Action No. 19-14445<br>(KM)(JBC) |
| OPUS CHARTERED ISSUANCES S.A., COMPARTMENT 127 and AI UNDERTAKING IV, individually and on behalf of all others similarly situated,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>EROS INTERNATIONAL PLC, et al.,<br><br>   *Defendants*. | Civil Action No. 19-18547<br>(ES)(SCM)<br><br><br><br><br><br>**<u>OPINION</u>** |

This matter comes before the Court by way of multiple motions to consolidate, appoint lead plaintiff, and appoint class counsel pursuant to the Private Securities Litigation Reform Act ("PSLRA").  D.E. 5, 6, 7, 8.[1]  The Court reviewed the submissions made in support and in opposition, and considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).  For the reasons stated below, the parties' motions to consolidate, D.E. 5, 6, 7, 8, are **GRANTED**.  The motion filed by Movant Opus Chartered Issuances S.A., Compartment 127 ("Opus Chartered") and AI Undertaking IV ("AI") (collectively, "Opus") for appointment of lead plaintiff and class counsel, D.E. 8, is **GRANTED**.  The motion filed by Movant Vijay Singh ("Singh") for appointment of lead plaintiff and class counsel, D.E. 5, is **DENIED**.  The remaining motions for appointment of lead plaintiff and class counsel, D.E. 6, 7, are **DENIED** as moot.

## I.      BACKGROUND

This matter involves three putative class actions filed pursuant to the Securities Exchange Act of 1934 (the "1934 Act").  All three allege that Defendants Eros International PLC ("Eros") and certain Eros officers (collectively, "Defendants") made false statements that concealed adverse information and misled investors about Eros's financial health.  All three also bring suit on behalf of all persons or entities who purchased or otherwise acquired publicly traded Eros securities between July 28, 2017, and June 5, 2019.

On June 21, 2019, Plaintiff Paul Montesano ("Montesano") filed his class action complaint pursuant to the 1934 Act.  D.E.1.  On June 28, 2019, Plaintiff John Schraufnagel ("Schraufnagel") filed his class action complaint.  D.E. 1, No. 19-14445.  On August 20, 2019, Plaintiff Opus filed

---

[1] All docket entries refer to Civ. No. 19-14125, unless otherwise indicated.

its class action complaint.  D.E. 1, No. 19-18547.  Opus originally filed its complaint in the Central District of California, which was subsequently transferred to the District of New Jersey.  D.E. 19.

The PSLRA requires that notice be published in the first-filed action informing putative class members of, *inter alia*, their right to seek appointment as lead plaintiff within 60 days of such notice.  Notice was timely published in the *Montesano* case on June 21, 2019, which indicated that any class member seeking appointment as lead plaintiff must move the Court no later than August 20, 2019.  *See* D.E. 5-6, Ex. C.  On August 20, 2019, three movants filed motions in the *Montesano* case to serve as lead plaintiff, to consolidate the *Schraufnagel* case into the *Montesano* case, and to appoint class counsel: (1) Singh; (2) Sunil Chirania ("Chirania") and Martin Mayer ("Mayer"); and (3) Janine Ellenberger ("Ellenberger").  D.E. 5, 6, 7.  One day later on August 21, 2019, Opus filed its motion to serve as lead plaintiff, to consolidate the *Schraufnagel* case into the *Montesano* case, and to appoint class counsel.  D.E. 8.  Opus also submitted a letter requesting that the Court additionally consolidate the *Opus* case, No. 19-18547, into the *Montesano* case.  D.E. 19.  On September 3, 2019, Chirania, Mayer, and Ellenberger filed notices of non-opposition to Opus's motion.  D.E. 10, 11.  Accordingly, only Singh contests Opus's motion.  D.E. 5.

## II.    ANALYSIS

### A.  Motion to Consolidate

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," a court must decide the motion to consolidate before appointing a lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(ii).  Pursuant to Federal Rule of Civil Procedure 42(a), cases may be consolidated if they involve "a common question of law or fact."  Here, the three suits at issue rely on the same or similar public statements and reports regarding Eros's financial health, name the same defendants, and assert

claims arising out of § 10(b) (and the corresponding Rule 10b-5) and § 20(a) of the 1934 Act.  The three matters involve common questions of law and fact, and consolidation will promote efficiency and avoid unnecessary costs or delay.  *See, e.g.*, *Garcia v. Intelligroup, Inc.*, No. 04-4980, 2005 WL 6074922, at *2 (D.N.J. Aug. 10, 2005) (consolidating securities class actions because the cases arose from the same set of facts, and "[e]ach of the Related Actions [was] filed pursuant to various provisions of the federal securities laws, and name[d] the same or similar defendants").  As a result, the parties' motions to consolidate are **GRANTED**.[2]

### B.  Motion to Appoint Lead Plaintiff

#### 1.  Class Notice

"Before a district court may rule on a motion to appoint lead plaintiff, it 'has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation.'" *Lewis v. Lipocine Inc.*, No. 16-4009, 2016 WL 7042075, at *3 (D.N.J. Dec. 2, 2016) (quoting *Lifestyle Investments, LLC v. Amicus Therapeutics, Inc.*, No. 15-7448, 2016 WL 3032684, at *11-12 (D.N.J. May 26, 2016)).  The PSLRA requires that, "[n]o more than 20 days after the complaint is filed, notice must be published in a national business publication or wire service; it must describe the members of the purported class, pendency of the action, claims asserted, and class period." *Biondolillo v. Roche Holding AG*, No. 17-04056, 2017 WL 4220332, at *2 (D.N.J. Sept. 22, 2017) (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)).  "Notice should also 'inform putative class members that

---

[2] The Court also grants Opus's letter request to additionally consolidate the *Opus* case, No. 19-18547, into the *Montesano* case, No. 19-14125.  D.E. 19.

they have the right to move the district court to serve as lead plaintiff in the class action.'" *Id.* (quoting *Lewis*, 2016 WL 7042075, at *3).

Here, notice was published in the first-filed action on June 21, 2019, the same day that the *Montesano* complaint was filed. *See* D.E. 5-6, Ex. C. The notice informed putative class members of the pendency of the action, the claims asserted therein, the time period of the action, and their right to move the Court to serve as lead plaintiff no later than August 20, 2019. No party contests the sufficiency of the notice. Accordingly, the Court finds that the published notice satisfies the notice requirements of the PSLRA.

### 2. Presumption of Lead Plaintiff

The PSLRA requires the Court to "appoint as lead plaintiff the member or members of the purported class that the Court determines to be the most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Under the PSLRA,

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### a. Largest Financial Interest

The Third Circuit is clear that "[i]n appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status. The process begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (quoting 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I)(bb)).  In doing so, "[c]ourts have discretion to appoint an investor with the largest

stake in the litigation."  *Roby v. Ocean Power Techs., Inc.*, No. 14-3799, 2015 WL 1334320, at *5

(D.N.J. Mar. 17, 2015) (citing *In re Cendant Corp. Litig.*, 264 F.3d at 262).  As explained by the

Third Circuit,

> [i]n many cases . . . this determination will be relatively easy, but in
> others it may prove difficult.  The [PSLRA] provides no formula for
> courts to follow in making this assessment, but we agree with the
> many district courts that have held that courts should consider,
> among other things: (1) the number of shares that the movant
> purchased during the putative class period; (2) the total net funds
> expended by the plaintiffs during the class period; and (3) the
> approximate losses suffered by the plaintiffs.

*In re Cendant Corp. Litig.*, 264 F.3d at 262.  "The Third Circuit has concluded that 'largest

financial interest' means the largest loss."  *Roby*, 2015 WL 1334320, at *5 (citing *In re Cendant

Corp. Litig.*, 264 F.3d at 223); *see also In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d. 562, 567

(D.N.J. 2006) (same).  To that end, district courts within the Third Circuit "have accorded the third

element, the largest financial loss, the greatest weight."  *Roby*, 2015 WL 1334320, at *5 (collecting

cases).

Here, Opus claims to have lost more than $586,000 as a result of Defendants' alleged

unlawful conduct.  D.E. 8-5, Ex. C.  No other party that filed a motion asserted that it lost a

comparable or larger amount.  Singh claims that he lost approximately $131,391.46.  D.E. 5-2, at

9.  Ellenberger claims that she lost approximately $39,340.  D.E. 7-1, at 4.  Chirania and Mayer

assert that they lost $226,144.61.  D.E. 6-1, at 5.  In fact, Ellenberger, Chirania, and Mayer filed

notices of non-opposition, acknowledging that they do not have the largest financial interest.  D.E.

10, 11.  Accordingly, the Court finds that Opus has the largest financial interest of the potential lead plaintiffs.[3]

### b. Typicality and Adequacy

"Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether that movant 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure[.]'"  *In re Cendant Corp. Litig.*, 264 F.3d at 262 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)).   The Third Circuit explained the process as follows:

> The overall structure and legislative history of the [PSLRA] suggest that in appointing a lead plaintiff a district court should engage in the following analysis. The initial inquiry (i.e., the determination of whether the movant with the largest interest in the case "otherwise satisfies" Rule 23) should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy. The initial clause of the statute, which governs triggering the presumption, refers to determinations made by "the court," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), but the second [clause], which deals with rebutting it, speaks of "proof by a member of the purported plaintiff class," *id.* § 78u-4(a)(3)(B)(iii)(II).  This phrasing suggests that the threshold determination of whether the movant with the largest financial losses satisfies the typicality and adequacy requirements should be a product of the court's independent judgment, and that arguments by members of the purported plaintiff class as to why it does not should be considered *only* in the context of assessing whether the presumption has been rebutted.

*Id.* at 263-65 (emphasis in original).  Accordingly, a potential lead plaintiff need only make a *prima facie* showing of typicality and adequacy, as determined by the Court's independent judgment.  *Id.*

---

[3] The Court notes that regardless of the timeliness of Opus's motion – discussed below – Singh would still not be entitled to the presumption of lead plaintiff because he does not have "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  Rather, Chirania and Mayer would have the next largest financial interest and have indicated that they remain willing to serve as lead plaintiff should Opus be deemed ineligible.  *See* D.E. 10, 14.

at 264 (explaining that "both the statutory structure and the legislative history [of the PSLRA] suggest that the court's initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements need not be extensive").

"The typicality requirement is satisfied if the plaintiff, as a result of the same course of conduct, suffered the same injuries as the other class members, and their claims are based on the same legal issues." *Lifestyle Investments, LLC*, 2016 WL 3032684, at *7; *see also In re Cendant Corp. Litig.*, 264 F.3d at 264-65 ("[I]n inquiring whether the movant has preliminarily satisfied the typicality requirement, [courts] should consider whether the circumstances of the movant with the largest losses 'are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based.'") (quoting *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988)).  The adequacy requirement is satisfied if "both the class representative and its attorneys are capable of satisfying their obligations, and neither has interests conflicting with those of other class members." *Lifestyle Investments, LLC*, 2016 WL 3032684, at *7 (internal quotations omitted) (quoting *Smith v. Suprema Specialties*, 206 F. Supp. 2d 627, 633 (D.N.J. 2002)); *see also In re Cendant Corp. Litig.*, 264 F.3d at 264 ("In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether [the movant] 'has the ability and incentive to represent the claims of the class vigorously, [whether the movant] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.'") (quoting *Hassine*, 846 F.2d at 179)).

Moreover, in conducting the initial adequacy assessment, a court must consider two additional factors. *In re Cendant Corp. Litig.*, 264 F.3d at 265.  First, a court should consider whether the movant with the largest loss "lack[s] legal experience or sophistication, intend[s] to

select as lead counsel a firm that [is] plainly incapable of undertaking the representation, or ha[s] negotiated a clearly unreasonable fee agreement with its chosen counsel." *Id*.  Importantly, however, the Third Circuit has stressed that

> the question at this stage is not whether the court would "approve" [the] movant's choice of counsel or the terms of its retainer agreement or whether another movant may have chosen better lawyers or negotiated a better fee agreement; rather, the question is whether the choices made by the movant with the largest losses are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff at all.

*Id*. at 266.

Second, where "the movant with the largest interest in the relief sought by the class is a group rather than an individual person or entity," a court must also consider whether "the way in which [the] group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff[.]"  *Id.*  To this end, the Third Circuit has observed the following:

> The [PSLRA] contains no requirement mandating that the members of a proper group be "related" in some manner; it requires only that any such group "fairly and adequately protect the interests of the class." We do not intimate that the extent of the prior relationships and/or connection between the members of a movant group should not properly enter into the calculus of whether that group would "fairly and adequately protect the interests of the class," but it is this test, not one of relatedness, with which courts should be concerned.

*Id*. at 266-67.  The Circuit noted, as an example, that if "a court were to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner."  *Id*. In determining whether a group will adequately represent the putative class, the following factors

are instructive: "(i) whether the [members of the group] had a pre-existing relationship, (ii) the extent of that relationship, (iii) whether the group was created by the efforts of lawyers for the purpose of obtaining lead plaintiff status, and (iv) whether the group is too large to adequately represent the [c]lass." *Chao Sun v. Han*, No. 15-703, 2015 WL 2364937, at *4 (D.N.J. May 14, 2015).

Here, Opus – like the other members of the proposed class – seeks to recover the losses it incurred as a result of Defendants' alleged unlawful conduct.  Additionally, given its substantial financial losses, Opus appears interested in vigorously pursuing the asserted claims and has retained competent and experienced counsel to that end.  It also appears that two of the individuals who signed PSLRA certifications – Daniel Maier (on behalf of Opus) and Herbert Hakala (on behalf of AI) – have a pre-litigation relationship dating back to 2018.  D.E. 15-1, Hakala Decl. ¶ 5.  Further, there is no evidence to suggest that Opus's movant group "was created by the efforts of lawyers for the purpose of obtaining lead plaintiff status,"[4] nor that Opus – a group of two entities –  "is too large to adequately represent the [c]lass." *Chao Sun*, 2015 WL 2364937, at *4 (movant group of two weighed in favor of a finding of adequacy); *see also In re Cendant Corp. Litig.*, 264 F.3d at 267 ("[W]e do not establish a hard-and-fast rule; instead, we note only that a kind of 'rule of reason prevails.'  We do, however, agree with the Securities and Exchange Commission that courts should generally presume that groups with more than five members are too large to work effectively.") (citation omitted).  Lastly, it does not appear to the Court that any conflicts exist between Opus and the other putative class members. *See* D.E. 8-1, at 8.

---

[4] This finding is further strengthened by the fact that both Opus Chartered and AI each separately possess a larger individual financial interest than Singh. *See* D.E. 8-5, Ex. C.

Consequently, the Court finds that Opus has made a *prima facie* showing of typicality and adequacy.

### c.  Timeliness of Opus's Motion

In determining whether a potential lead plaintiff has "either filed the complaint or made a motion in response to a notice," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa), the PSLRA explains that

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—
>
> > (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
> > (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.
>
> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published[.]

15 U.S.C. § 78u-4(a)(3)(A)(i)-(ii).  Accordingly, a movant must have either (1) "filed the complaint" or (2) made a motion in response to the notice associated with the first-filed complaint "not later than 60 days after the date on which the notice is published." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

Here, Opus did not file "the complaint." Although Opus argues that "the complaint" should be interpreted to mean *any* of the complaints that are eventually consolidated, the Court disagrees. As explained in a persuasive ruling:

> The PSLRA does not say that lead plaintiff status can be obtained by filing either a timely motion or 'a complaint'; it says that lead plaintiff status can be obtained either by filing a timely motion or '*the* complaint.' The choice of article makes a huge difference. As a simple matter of English syntax, only one complaint can qualify as 'the complaint' – the article 'the' specifies one particular thing

> when followed by a singular noun. . . . As used in the PSLRA, 'the complaint' is the first complaint filed in a federal court – the one that starts the clock running on the 20[-]day period for filing notice to the putative class members.

*Gutman v. Sillerman*, No. 15-7192, 2015 WL 13791788, at *2 (S.D.N.Y. Dec. 8, 2015) (emphasis in original). Here, the first complaint filed, *i.e.* "the complaint," was filed in the *Montesano* case on June 21, 2019. D.E. 1. Therefore, Opus was required to file a motion within 60 days after the date on which notice was published in the *Montesano* case. Notice was published on June 21, 2019. *See, e.g.*, D.E. 5-6, Ex. C. Opus filed its motion in this Court on August 21, 2019. D.E. 8. As such, Opus's motion was late by one day. And it is this procedural misstep that Singh argues should outright bar Opus from consideration as lead plaintiff.

At the outset, the Court notes that it is dismayed with the argument of Singh's counsel because this particular counsel – Levi & Korsinsky LLP – not once, but twice has been excused, and even approved as lead counsel, after submitting irrefutably late motions in other cases. *See Waterford Township Police v. Mattel, Inc.*, 2017 WL 10667732, at *4 (C.D. Cal. Sept. 29, 2017) (where Levi & Korsinsky LLP submitted untimely motion by one hour, court excused delay and ultimately appointed firm's client as lead plaintiff); *see also Emerson v. Genocea Biosciences, Inc.*, No. 17-12137, 2018 WL 839382, at *3 (D. Mass. Feb. 12, 2018) (where Levi & Korsinsky LLP submitted untimely motion by four minutes, court excused delay and ultimately appointed firm's client as lead plaintiff). However, the Court recognizes that the mistakes of Singh's counsel in other cases should not prejudice Singh himself in this case, and therefore the Court will not estop Singh from arguing the untimeliness of Opus's motion. The issue, then, turns on whether the PSLRA's 60-day window is mandatory. On this point, courts have differing views.

It appears that the general view is that the 60-day window is a strict deadline. For example, in *Skwortz v. Crayfish Co., Ltd.*, 2001 WL 1160745, at *5 (S.D.N.Y. Sept. 28, 2001), the court

interpreted the 60-day deadline as mandatory, and in doing so, refused to consider a motion that was filed one day late.  The *Skwortz* court reasoned that the mandatory nature of the 60-day deadline flowed from the PSLRA itself, because "an untimely motion has the effect of preventing the proposed [g]roup from satisfying the first requirement of the most adequate plaintiff presumption."  *Id.*  The *Skwortz* court, however, reversed course after the excluded movant filed a motion for reconsideration, because the 60-day deadline fell on a state holiday – and pursuant to Fed. R. Civ. Pro. 6(a), that holiday was to be excluded from the 60-day window, thus extending the 60-day window one extra day and making the movant's motion timely.  *See also Carson v. Clarent Corp.*, 2001 WL 1782712, at *2 (N.D. Cal. Dec. 14, 2001) ("The [movant] filed their motion [] more than two weeks too late.  At least three courts have held that such a late filing, without a reasonable explanation, makes the class member ineligible to serve as lead plaintiff.  At oral argument the [movant] did not try to justify their late filing; rather, they argued that given their large financial stake [] the Court should nonetheless appoint them lead plaintiff.  The Court declines the [movant's] invitation to ignore the PSLRA's time requirements.  The PSLRA does not have different filing deadlines based on the financial interest of the movant.") (internal citation omitted)).

Moreover, in *In re Microstrategy Inc., Sec. Litig.*, the court explained that "[a] motion filed after the sixty-day period by a person who has not filed a complaint [] is untimely, and may not, except perhaps in rare circumstances, be considered by a court."  110 F. Supp. 2d 427, 433 (E.D. Va. 2000).  The *Microstrategy* court refused to consider a group who filed its motion after the 60-day deadline.  *Id.* at 439.  The court reasoned as follows:

> [E]ven assuming a district court may extend the relevant statutory deadline in certain circumstances, [the movant] has shown no good cause for doing so in this case: it has failed to provide a satisfactory explanation for why it did not file a timely motion to be named lead

> plaintiff.  Other class members satisfied the statute's requirements, and [] convincing authority and Congress's intent suggest that the statute's time limits should be strictly enforced.

*Id.* at 439-40.[5]

Other courts agree that the 60-day window is mandatory. *See In re Able Laboratories Securities Litig.*, 425 F. Supp. 2d 562, 565-66 (D.N.J. 2006) (refusing to consider a movant's revised certification alleging a larger financial loss after the 60-day deadline had passed); *Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214, at *3 (D.N.J. Nov. 21, 2017) (finding where movant failed to include a required certification with its initial timely motion, movant was not the "presumptively most adequate lead plaintiff"); *Switzenbaum v. Orbital Sciences Corp.*, 187 F.R.D. 246, 249-50 (E.D. Va. 1999) (ruling that a plaintiff, who movant attempted to add after sixty-day period, could neither be considered individually nor as part of the movant group that had filed a timely motion); *Oklahoma Law Enforcement Retirement System v. Adeptus Health Inc.*, 2017 WL 3780164, (E.D. Tex. 2017) ("[C]ompliance with the procedural requirements of the PSLRA is mandatory and should be strictly enforced."); *In re Regions Morgan Keegan Open-End Mut. Fund Litig.*, 2009 WL 10665043, at *4 (W.D. Tenn. Sept. 30, 2009) ("As other courts interpreting the language of the PSLRA have found, the language of the statue [sic] is plain: the sixty-day deadline is mandatory.").

Some courts, however, have excused the 60-day deadline.  For example, in *GGCC, LLC v. Dynamic Ledger Sols., Inc.*, 2018 WL 1388488, at *3 (N.D. Cal. Mar. 16, 2018), the court considered a motion that was timely, but filed in the wrong action.  Four movants filed timely

---

[5] The court in *Microstrategy* included a note explaining that "[d]istrict courts applying the PSLRA note that the sixty-day time period is a significant element of the statute, [which] reflects Congress's sensible intent that the lead plaintiff be appointed as early in the litigation as possible." 110 F. Supp. 2d 427, 433 n.12.

motions in the case pending before the court.  A fifth movant also filed a timely motion; however, that fifth movant filed its motion in one of the related cases seeking to be consolidated – not in the case before the court.  One day after the 60-day window had expired, the fifth movant "refiled an identical version of his motion in [the case presently before the court]." *Id*. at *3.  The court noted that "[t]he timing of [the fifth movant's] motion [was] critical because he undisputedly assert[ed] the largest financial interest." *Id*.  The *GGCC* court decided that the motion could be considered because the movant filed its motion in response to a notice issued in the related case, which contained information pertaining to the related case but made no reference to the case actually pending before the court.  The court in *GGCC* found the movant's mistake to be "best understood as a mistake made in good faith rather than an act of legal gamesmanship of the sort the PSLRA was designed to prevent." *Id*. at *4.  The court explained that "refusing to consider [the movant's] motion would be an unnecessarily stringent application of the statutory deadlines that would undercut the PSLRA's preference for appointing the plaintiff with the greatest financial stake in the outcome." *Id*.

A similar result was reached in *Reitan v. China Mobile Games & Ent. Group, Ltd.*, 68 F. Supp. 3d 390, 397 (S.D.N.Y. 2014), where the movant originally filed a timely motion, but subsequently withdrew its motion because it appeared that another group had the largest financial interest.  However, when that group with the purported largest interest also withdrew, the movant then filed a "withdrawal of withdrawal" motion.  This motion, however, was past the 60-day window.  Therefore, the question presented before the *Reitan* court was whether the movant should "be permitted to file an untimely motion for appointment as lead plaintiff after withdrawing a

previous, timely motion[.]"  *Id.* at 397.  The court cited to several cases[6] which had permitted filings after the 60-day window, explaining that "these decisions plainly demonstrate that courts . . . have not adhered strictly to the PSLRA's timing requirements in every instance" and that "[t]he reasons for excepting cases from the 60-day deadline commonly are that a timely motion was filed previously, that the new motion is not made to manipulate the size of the movant's losses, and that granting the motion would not undermine any of the policies that underlie the PSLRA."  *Id.* at 397. Ultimately, the *Reitan* court decided to consider the movant's second, untimely motion because (1) its first motion was timely; (2) the movant was not attempting to manipulate/aggregate the size of its loss; and (3) excepting the movant from the 60-day deadline would not "undermine any of the policies behind the PSLRA."  *Id.* at 397-98.  Importantly, the *Reitan* court also found that

> allowing [the movant] to make a new lead plaintiff motion will not offend the policy goals Congress hoped to achieve in passing the PSLRA.  [The movant] is an institutional investor and alleges greater financial losses than [the opposing individual-investor movant]; [The movant] is precisely the type of plaintiff Congress hoped would become lead plaintiff.

*Id.* at 399 (citing David H. Webber, *Is "Pay-to-Play" Driving Public Pension Fund Activism in Securities Class Actions? An Empirical Study,* 90 B.U. L. Rev. 2031, 2034 (2010) ("Congress believed that institutional investors, sophisticated investors with significant losses at stake, would carefully select and monitor plaintiffs' lawyers to the benefit of the class of aggrieved shareholders,

---

[6] *Fort Worth Emples. Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 328 (S.D.N.Y. 2012) (accepting untimely filings after the originally selected lead plaintiff withdrew); *Peters v. Jinkosolar Holding Co., Ltd.*, 2012 WL 946875, at *10 (S.D.N.Y. Mar. 19, 2012) (permitting a movant to amend its lead plaintiff motion after the 60-day deadline when multiple plaintiffs moved for appointment within the deadline, but joined together as a single group after the deadline and subsequently moved for joint lead plaintiff status); *Malasky v. IAC/Interactivecorp*, 2004 WL 2980085, at *3 (S.D.N.Y. Dec. 21, 2004) (allowing a movant who filed a timely lead plaintiff motion to amend that motion after the 60-day deadline to increase its financial loss).

in contrast to individual lead plaintiffs with meager shareholdings and little leverage over their counsel.")).

Another example of a court excusing the 60-day deadline is *Peters v. Jinkosolar Holding Co., Ltd.*, 2012 WL 946875, at *9 (S.D.N.Y. Mar. 19, 2012).  In *Peters*, the moving deadline was December 12, 2011.  Several movants – both individuals and groups – filed timely motions to be lead plaintiff.  On January 5, 2012, however, a new group filed a motion; this new group consisted of individual members that broke off from the original groups that had initially filed timely motions.  *Id*. at *2.  Acknowledging that other courts have strictly construed the 60-day deadline, the *Peters* court nonetheless allowed the new group to file its late motion because the new group "plainly did not join up in order to 'manipulate the size of their financial loss.'"  *Id*. at *10.  The court noted that three out of the four members of the new group "already ha[d] far and away the largest financial losses of any other potential lead plaintiff."  *Id*.    The court in *Peters* continued that "each member of the [new] [g]roup was part of a group that [originally] filed a timely motion to be appointed lead plaintiff."  As a result, the court did not bar consideration of the new group's motion.

Finally, in *Waterford Township Police*, 2017 WL 10667732, at *3, the court permitted a motion that was filed late.[7]  The court acknowledged that district courts "generally emphasize the strict nature of the PSLRA's 60[-]day deadline" and "agree[d] with the two main concerns that underlie [those] opinions: (1) unscrupulous litigants should not be permitted to manipulate their financial loss calculation after reviewing timely-filed motions and (2) late filings should not cause significant delays in the litigation."  *Id*. at *4.  The *Waterford* court found that those two concerns

---

[7] As noted above, the movant's counsel who filed the untimely motion in *Waterford Township Police* is the same counsel in the instant case – Levi & Korsinsky LLP – who is now arguing that Opus's untimely motion should be barred.  D.E. 15, at 4-5.

were not present in the case, and therefore accepted the movant's motion as timely "in the interest of justice." *Id*.  The court also noted in a footnote that there existed "non-binding authority indicat[ing] that while the PSLRA's deadline is strict, it does not rob the district court of the discretion to consider untimely motions in all circumstances." *Id*. at *4, n.1.

Here, the Court agrees that while the PSLRA's 60-day window generally appears to be a strict deadline, "it does not rob [] district court[s] of the discretion to consider untimely motions in all circumstances." *Id*.  Accordingly, the Court will not bar consideration of Opus's motion for the following reasons.

As in *GGCC*, the Court acknowledges that "refusing to consider [Opus's] motion would be an unnecessarily stringent application of the statutory deadline that would undercut the PSLRA's preference for appointing the plaintiff with the greatest financial stake in the outcome." 2018 WL 1388488, at *4.  The court in *GGCC* elaborated on this ruling:

> Ideally, [the movant's] lawyers would have avoided this mistake. There is no indication, however, that the [movant's untimely motion] caused any prejudice to the other movants . . . .  There is similarly little reason to believe that considering [the movant's] motion would foil the overall goals of the PSLRA's time provisions "to ensure that the lead plaintiff is appointed at the earliest possible time and to expedite the lead plaintiff process."

*Id*.  The Court also finds that considering Opus's motion will not "foil the overall goals of the PSLRA's time provisions 'to ensure that the lead plaintiff is appointed at the earliest possible time and to expedite the lead plaintiff process.'"  *Id.*; *see also Reitan*, 68 F. Supp. 3d at 399 ("[E]xcepting [the movant] from the PSLRA's timeliness requirement will not create significant delays in the [c]ourt's ability to decide this case.").  Here, Opus's motion was filed less than a day after the 60-day period.

In addition, there is no indication that Opus filed its motion in an attempt to manipulate the size of its losses.  *See, e.g.*, *Reitan*, 68 F. Supp. 3d at 397.  Opus filed a motion in the Central District of California the same day that the other movants filed in this Court, and the motion in the Central District stated loss amounts consistent with the filing in this Court.  The Court also finds that "allowing [Opus] to make [its] lead plaintiff motion will not offend the policy goals Congress hoped to achieve in passing the PSLRA" because Opus has clearly "suffered the greatest financial losses over [the] other [movants]."  *Id*. at 399.  Put simply, Opus "is precisely the type of plaintiff Congress hoped would become lead plaintiff."  *Id*.  The *Reitan* court aptly summarized as follows:

> The goal of the PSLRA was not to select individuals for lead plaintiff who make no mistakes – rather it was to promote a client-driven rather than lawyer-driven process – and the statute seeks to do so by favoring institutional investors who suffered the greatest financial losses over other parties. [The movant's] decision . . . may have been a procedural miscalculation, but overlooking that misstep is more in keeping with the policy intentions of the PSLRA than punishing [the movant] by enforcing a procedural bar.

*Id*.  Here, that same rationale holds true.  While Opus did make a procedural mistake, "overlooking that misstep is more in keeping with the policy intentions of the PSLRA than punishing [Opus] by enforcing a procedural bar."  *Id*.

Lastly, even if the Court disregarded Opus's motion as untimely, Singh would still not be entitled to the presumption of lead plaintiff because he did not suffer losses greater than the movant group of Chirania and Mayer.  And Chirania and Mayer do not contest the timeliness of Opus's motion, nor do they contest that Opus has the largest financial interest.

For the foregoing reasons, the Court will not bar consideration of Opus's motion and finds that Opus is entitled to the presumption of lead plaintiff.

### 3. Rebuttal of Presumption

"Once a presumptive lead plaintiff is located, the court should then turn to the question [of] whether the presumption has been rebutted." *Lewis*, 2016 WL 7042075, at *3 (internal quotations omitted) (citing *In re Cendant Corp. Litig.*, 264 F.3d at 268).   Importantly, once the presumption is met, "the question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can *prove* that the presumptive lead plaintiff will not do a 'fair[] and adequate []' job." *In re Cendant Corp. Litig.*, 264 F.3d at 268 (second emphasis added) (internal citation omitted).   Pursuant to the PSLRA, the presumption "may be rebutted only upon *proof* by a member of the purported plaintiff class that the presumptively most adequate plaintiff [(1)] will not fairly and adequately protect the interests of the class; or [(2)] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).

Here, Singh – the only opposing movant – has provided no proof demonstrating that Opus "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render [it] incapable of adequately representing the class."   In his opposition, Singh argues that Opus is not fit to represent the class for two reasons: (1) Opus has not "established that [it] can cohesively work as a group and oversee the litigation apart from its counsel"; and (2) Opus does not have standing to pursue the claims of the putative class.   D.E. 13, at 8-9.   The Court disagrees with both arguments.

First, Singh has put forth no "proof" from which the Court can infer that Opus would not be able to "fairly and adequately protect the interests of the class."   *See In re Cendant Corp. Litig.*, 264 F.3d at 268.   Singh argues instead that Opus has not indicated how its group was formed, how its group intends to communicate plans to coordinate the litigation, or how its group will make

decisions concerning the case.  D.E. 13, at 8.  Singh also argues that Opus "provides no explanation as to [the] relationship between [Opus Chartered and AI] that predates the litigation[.]"  D.E. 16, at 6.  In support of his argument, Singh cites to *Takata v. Riot Blockchain, Inc.*, for the proposition that "when evaluating group plaintiffs, movants must show their cohesiveness and independence from proposed counsel, including 'how and when they were joined together, how they intend to conduct discovery or how they will coordinate litigation efforts and strategy.'"  No. 18-2293, 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018), *reconsideration denied*, 2019 WL 2710273 (D.N.J. June 26, 2019) (quoting *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-06140, 2008 WL 3925289, at *9 (N.D. Cal. Aug. 22, 2008)).  Singh's argument, however, misses the mark.

The concern of the *Takata* court was the potential appointment of "three seemingly unconnected strangers from across the country" with no "information regarding how [those] apparent strangers from different states found each other."  2018 WL 5801379, at *5 (finding that "the members of the group had never communicated before their counsel submitted the joint motion on their behalf, merely stating that the members 'were aware of each other' prior to the motion[,]" which did not assuage the court's concern of "appointing a loose, attorney-driven group of investors as lead plaintiff").  Here, the Court is not aware of similar allegations that raise concerns as to Opus Chartered and AI; Sing has not presented plausible information that Opus Chartered and AI's relationship was due to attorney manipulation.  *See In re Cendant Corp. Litig.*, 264 F.3d at 266-67; *see also Eichenholtz*, 2008 WL 3925289, at *9 ("There is widespread disagreement amongst district courts regarding [whether group movants must be related]. . . . [C]ourts in the Third [] [C]ircuit[] do not seem to inquire about the relationship between the parties that comprise a group.") (citing *In re Cendant Corp. Litig.*, 264 F.3d at 266)).

As such, the focus is on whether the presumptive lead plaintiff can "fair and adequately" protect the class's interests.  Of course, the "relatedness" of the members of a movant group may be instructive in determining the adequacy of that group, but relatedness is not a necessary condition to a finding of adequacy.  *In re Cendant Corp. Litig.*, 264 F.3d at 266-67.  In other words, should a court be concerned about "appointing a loose, attorney-driven group of investors as lead plaintiff" or a movant group's ability to monitor counsel, then the court may very well determine that the movant group would not adequately represent the interests of the class.  *See In re Cendant Corp. Litig.*, 264 F.3d at 267.  But those concerns are not present here, or at least have not been sufficiently articulated by Singh, and the Third Circuit is clear that "[t]he [PSLRA] contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'" *Id.* at 267.

Here, Singh has not presented any "proof" demonstrating that Opus will not "fairly and adequately protect the interests of the class."  Instead, Singh appears to argue that Opus has not provided evidence as to "the formation of [its] group, its plans on how to coordinate the litigation process or oversee counsel, how [it] intends to communicate [between Opus Chartered and AI] and stay abreast of developments in the [case, or] how [it] will make decisions concerning the [case]."  D.E. 13, at 8.  However, the Court has already found that Opus made a *prima facie* showing of typicality and adequacy, which, *inter alia*, entitled Opus to the presumption of lead plaintiff.  Consequently, the burden shifts to Singh to rebut that presumption with "proof" that Opus will not fairly and adequately represent the interests of the putative class.  *In re Cendant Corp. Litig.*, 264 F.3d at 268.  Here, Singh has not proved that Opus's group was "created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel[,]" *id.* at 266-67, much less that Opus cannot fairly and adequately represent the interests of the putative class.

Accordingly, Singh's first argument fails to rebut Opus's presumption of lead plaintiff.

Singh next argues that Opus[8] "does not have Article III standing to pursue the claims of the [c]lass." D.E. 13, at 10. Article III standing consists of three "irreducible" elements:

> (1) injury-in-fact, which is a "concrete and particularized" harm to a "legally protected interest"; (2) causation in the form of a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.

*Aguilar v. Vitamin Shoppe, Inc.*, No. 17-6454, 2018 WL 1960444, at *6 (D.N.J. Apr. 25, 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Specifically, Singh appears to claim that Opus has not suffered an injury-in-fact because Opus allegedly does not hold legal title to the securities at issue. D.E. 13, at 10. In support of his argument, Singh cites to *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 103 (2d Cir. 2008), a case in which "the Second Circuit decided whether an investment advisor, who ha[d] authority to make investment decisions and a power of attorney, ha[d] standing to bring securities lawsuits when it [did] not own the underlying securities." *Steamfitters Loc. 449 Pension Fund v. C. European Distrib. Corp.*, No. 11-6247, 2012 WL 3638629, at *10 (D.N.J. Aug. 22, 2012), *motion for relief from judgment granted sub nom*, *In re C. European Distrib. Corp. Securities Litig.*, No. 11-6247, 2012 WL 5465799 (D.N.J. Nov. 8, 2012).

The *Huff* court held that an investment advisor who *did not own* the underlying securities did not have standing to sue. *See W.R. Huff Asset Mgmt. Co., LLC*, 549 F.3d at 108; *cf. In re Reserve Fund Securities and Derivative Litig.*, No. 08-8060, 2009 WL 10467937, at *4 (S.D.N.Y.

---

[8] Singh does not dispute that AI has standing. Rather, Singh only challenges whether Opus Chartered has standing. D.E. 13, at 9 ("The Opus Group (specifically, 'Opus Chartered Issuances S.A., Compartment 127') does not have Article III standing to pursue the claims of the [c]lass.").

Aug. 26, 2009) (distinguishing *Huff* where "[movant's] action was brought not in the name of an investment advisor, however, but rather in the name of [the movant, itself], which actually purchased shares [at issue] and allegedly suffered an injury in fact from those purchases."). By comparison, "an assignee has legal standing because it possesses legal title to the claim, and therefore has legal title to, and has suffered, the injury-in-fact that occurred." *Aguilar*, 2018 WL 1960444, at *6 (citing *Sprint Commc'ns Co., L.P. v. APCC Serus., Inc.*, 554 U.S. 269 (2008)); *see also W.R. Huff Asset Mgmt. Co., LLC*, 549 F.3d at 108 ("*Sprint* makes clear that the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim.").

Here, Opus maintains that it has "held legal title to the securities at issue in this action at all relevant times" and that it "owns the Eros securities at issue." D.E. 15, at 8-9; *see also* D.E. 8-4. Singh presents no evidence to the contrary. As such, because Opus has legal title to the securities at issue, it has suffered an injury-in-fact as a result of Defendants' alleged unlawful conduct. Accordingly, Singh's second argument fails to rebut Opus's presumption of lead plaintiff.

Because Singh has not rebutted the presumption, Opus's motion to be appointed lead plaintiff is **GRANTED**.

### C.  Motion to Appoint Lead Counsel

The PSLRA also states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Here, Opus has selected and retained Glancy Prongay & Murray LLP to serve as lead counsel, and Carella Byrne Cecchi Olstein Brody & Agnello, PC to serve as liaison counsel for the class. D.E. 8-1, at 9. After reviewing the firms' resumes, D.E. 8-6, 8-7, the Court finds that both firms have

substantial experience litigating securities fraud class actions and are thus "competent to fulfill the duties of lead counsel and liaison counsel." *Lewis*, 2016 WL 7042075, at *5.  As a result, Opus's motion to appoint lead counsel is **GRANTED**.

## III.   CONCLUSION

For the foregoing reasons, the parties' motions to consolidate, D.E. 5, 6, 7, 8, are **GRANTED**.  Opus's motion for appointment of lead plaintiff and class counsel, D.E. 8, is **GRANTED**.  Singh's motion for appointment of lead plaintiff and class counsel, D.E. 5, is **DENIED**.  The remaining motions for appointment of lead plaintiff and class counsel, D.E. 6, 7, are **DENIED** as moot.  An appropriate Order accompanies this Opinion.


Dated: April  14, 2020

John Michael Vazquez, U.S.D.J.