**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| IN RE EROS INTERNATIONAL PLC SECURITIES LITIGATION | Civil Action No. 19-cv-14125 (JMV)(JAD)<br><br>ECF Case<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Motion Return Date:  December 7, 2020 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS EROS INTERNATIONAL PLC, KISHORE LULLA, AND PREM PARAMESWARAN'S <u>MOTION TO DISMISS THE CONSOLIDATED COMPLAINT</u>**

LEVINE LEE LLP

Kenneth E. Lee
Christos G. Papapetrou
Chad P. Albert
650 Fifth Avenue, 13th Floor
New York, New York 10019
Telephone: (212) 223-4400
Facsimile:  (212) 223-4425
klee@levinelee.com
cpapapetrou@levinelee.com
calbert@levinelee.com

*Attorneys for Defendants Eros International Plc, Kishore Lulla, and Prem Parameswaran*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ............................................................................................................2

I.    THE COMPLAINT FAILS TO PLEAD THAT DEFENDANTS MADE ANY
      MATERIAL MISREPRESENTATIONS OR OMISSIONS ............................................2

      A.    Allegations Concerning Eros's "Well-Being" ...........................................2

      B.    Allegations Concerning Eros's Intangible Assets......................................5

      C.    Allegations Concerning Eros's Interactions with the Rating Agencies...................8

      D.    Allegations Concerning Internal Controls and SOX Certifications.......................11

II.   THE COMPLAINT FAILS TO PLEAD SCIENTER ........................................................11

      A.    Plaintiffs' Confidential Witness Allegations Are Insufficient to Plead
            Scienter ..............................................................................................11

      B.    Plaintiffs' Other Scienter Allegations Likewise Fail ...........................................12

III.  THE COMPLAINT FAILS TO PLEAD LOSS CAUSATION ........................................14

CONCLUSION........................................................................................................15

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004)........................................................................................ 2

*Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
836 F.2d 173 (3d Cir. 1988)........................................................................................ 8

*Cortec Indus. Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991).......................................................................................... 9

*Fan v. StoneMor Partners LP*,
927 F.3d 710 (3d Cir. 2019)........................................................................................ 4

*Fresno Cty. Employees' Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017)..................................................................... 6, 7

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)...................................................................................... 9

*In re Celgene Corp. Sec. Litig.*,
No. CV 18-4772, 2019 WL 6909463 (D.N.J. Dec. 19, 2019) ...................................... 5

*In re EVCI Colleges Holding Corp. Sec. Litig.*,
469 F. Supp. 2d 88 (S.D.N.Y. 2006)......................................................................... 12

*In re Hertz Global Holdings Inc.*,
905 F.3d 106 (3d Cir. 2018)...................................................................................... 14

*In re Hertz Global Holdings, Inc. Sec. Litig.*,
2017 WL 1536223 (D.N.J. Apr. 27, 2017) .............................................................. 4, 7

*In re Intelligroup Sec. Litig.*,
527 F. Supp. 2d 262 (D.N.J. 2007) ........................................................................... 12

*In re Leapfrog Enter., Inc. Sec. Litig.*,
237 F. Supp. 3d 943 (N.D. Cal. 2017) ...................................................................... 13

*In re Levi Strauss & Co. Sec. Litig.*,
527 F. Supp. 2d 965 (N.D. Cal. 2007) ........................................................................ 3

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002)...................................................................................... 5

ii

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
988 F. Supp. 2d 406 (S.D.N.Y. 2013) ................................................................ 3

*In re U.S. Interactive, Inc.*,
2002 WL 1971252 (E.D. Pa. Aug. 23, 2002) ..................................................... 4

*In re Urban Outfitters, Inc. Sec. Litig.*,
103 F. Supp. 3d 635 (E.D. Pa. 2015) ............................................................... 12

*Jannarone v. Sunpower Corp.*,
2018 WL 5849468 (D.N.J. Nov. 7, 2018) ......................................................... 8

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ........................................................................................... 13

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
720 F. Supp. 2d 517 (D.N.J. 2010) .................................................................. 11

*Oregon Laborers Employers Pension Tr. Fund v. Maxar Techs. Inc.*,
No. 19-CV-0124-WJM-SKC, 2020 WL 5500458 (D. Colo. Sept. 11, 2020) ............ 5, 6, 13, 14

*Roofer's Pension Fund v. Papa*,
No. CV 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018) ............................ 12

*Shapiro v. UJB Financial Corporation*,
964 F.2d 272 (3d Cir. 1992) .............................................................................. 4

*Winer Family Trust v. Queen*,
503 F.3d 319 (3d Cir. 2007) .............................................................................. 5

**STATUTES**

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 .............................. *passim*

Private Securities Litigation Reform Act Safe Harbor Provision, 15 U.S.C. § 78u-5 ................... 5

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................................ *passim*

Fed. R. Civ. P. 12(b) ............................................................................................... 1

Defendants respectfully submit this reply memorandum of law in support of their Motion to Dismiss (ECF No. 37-1) ("Motion") pursuant to Rules 9(b) and 12(b).[1]

## PRELIMINARY STATEMENT

Plaintiffs' Opposition fails to rebut Defendants' arguments requiring dismissal. Instead, Plaintiffs fall back on the same insufficient allegations from the Complaint—non-particularized allegations from a handful of anonymous sources and negative short-seller articles attacking the Company's previously disclosed business decisions. The Opposition affirms that Plaintiffs' allegations are, at best, allegations of corporate mismanagement insufficient to establish securities fraud under Rule 9(b) or the PSLRA.

The Complaint fails to establish that any specific statement or omission was both material and false when made. Instead, Plaintiffs impermissibly plead "fraud by hindsight," using subsequent events to speculate that prior statements were false. The Third Circuit has resoundingly rejected that pleading tactic for securities fraud—which the Opposition does not address. The Opposition's scienter arguments also fall short: Plaintiffs focus on the Complaint's vague and insufficient confidential witness allegations—none of which are particularized, let alone tethered to any identified alleged false statement or omission. At bottom, Plaintiffs' scienter allegations are not sufficiently particularized to give rise to a strong inference of conscious wrongdoing or extreme recklessness.

As to loss causation, Plaintiffs allege generally, without citing any facts, that misstatements since 2017 contributed to Eros's stock drop—yet, the only specific event identified is the Company's downgrade by CARE on June 5, 2019, which caused the Company's stock decline. As explained in the Motion, nothing related to that CARE downgrade, which addressed missed

---

[1] Capitalized terms not otherwise defined have the same meaning as in the Motion. Defendants maintain all positions set forth in the Motion, which are not all addressed in reply.

loan interest payments by EIML, evidences a prior false or misleading statement.  Like their other allegations, Plaintiffs' claims are typical allegations of corporate mismanagement—not securities fraud.  For these reasons, and those in the opening brief, the Complaint should be dismissed with prejudice.

## ARGUMENT

### I.   THE COMPLAINT FAILS TO PLEAD THAT DEFENDANTS MADE ANY MATERIAL MISREPRESENTATIONS OR OMISSIONS

The Complaint falls short of pleading a plausible claim for securities fraud, as it fails to plead facts showing that any statement by any Defendant was both false or misleading and material at the time it was made.  As set forth in the Motion (*see* Mot. at 12-13), the Complaint instead rests on the impermissible strategy of pleading "fraud by hindsight," which the Third Circuit has "long rejected."  *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 158 (3d Cir. 2004).  The Opposition does not even address the Complaint's "fraud by hindsight" deficiencies.

### A.   Allegations Concerning Eros's "Well-Being"

The primary category of Plaintiffs' alleged misrepresentations concerns statements about "Eros's Financial Well-Being." (*See* Opp'n at 12-14.)  For example, Plaintiffs point to statements that Eros has a "strong" or "solid" balance sheet. (*Id.*)  But Plaintiffs have failed to plead with sufficient particularity that each of these statements was false or misleading when made. (*See id.*)  In their Opposition, Plaintiffs assert that Defendants' earlier statements about Eros's financial well-being must have been misleading because of three later events:  (1) CARE, an Indian rating agency, downgraded EIML; (2) Eros announced a 2019 impairment loss to its intangible assets; and (3) Eros entered into a financing deal that Plaintiffs describe as "toxic."  (*Id.* at 12-13.)  According to Plaintiffs, it is "highly unlikely" that these events, all of which were publicly

2

disclosed, occurred for any reason other than securities fraud. Plaintiffs' conjecture fails to meet the PSLRA's or Rule 9(b)'s high pleading burden.

The Opposition gives lip service to Eros's robust disclosures and the statements of its auditors. (*See* Mot. at 14; Opp'n at 13.) As Defendants identified, each of the statements Plaintiffs challenge included accompanying financial information that was disclosed to investors and audited by a reputable, third-party accounting firm. (Mot. at 14.) Plaintiffs do not plead facts that challenge the accuracy of this information at the time it was disclosed, which dooms their allegations. Instead, Plaintiffs conclusorily assert that Defendants' statements must have been false and that "an audit opinion adds nothing." (*See* Opp'n at 13.)

Of course, neither of Plaintiffs' cited cases (from outside this circuit) supports disregarding audited financial disclosures in the face of conclusory or hindsight allegations—at most, they stand for the proposition that an auditor's opinion is not dispositive in the face of an otherwise well-pleaded complaint. *See In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 987 (N.D. Cal. 2007) (holding that "the lack of restatement or an unqualified independent auditor's opinion" would not automatically serve to absolve a defendant of liability); *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 988 F. Supp. 2d 406, 426 (S.D.N.Y. 2013) (holding that "reliance on an independent accountant cannot ***completely*** absolve the defendants of their obligation to ensure the sufficiency of contracts upon which [defendant's] financial viability is contingent" (emphasis added)). Indeed, in *Levi Strauss*, the Court went on to hold that "plaintiffs have failed to plead facts suggesting improper accounting other than the views expressed by two former employees" and "***[i]n light of the unqualified opinions***," among other disclosures, the complaint failed to raise a plausible inference that the financial statements were misstated. 527 F. Supp. 2d at 987–88 (emphasis added). Therefore, *Levi Strauss* supports Defendants' position.

3

Plaintiffs' Opposition does not specifically challenge the accuracy of any of these financial statements or the sufficiency of the independent audit, and it continues to rely on the Complaint's generalized suspicion that the Company's financial position was "weaker than it had disclosed." (*See, e.g.*, Compl. ¶ 144.)  Because "Defendants sufficiently disclosed facts and information that would render the alleged misrepresentations not misleading," the allegations fail to set forth a plausible claim that these statements were inaccurate.  *See Fan v. StoneMor Partners LP*, 927 F.3d 710, 716 (3d Cir. 2019).

The alleged misrepresentations also constitute nonactionable puffery.  Courts dismiss securities actions exactly like Plaintiffs' when premised on a company's characterization of financial results as "strong" or "healthy" because these types of subjective opinions and statements of optimism are considered immaterial as a matter of law.  *See, e.g.*, *In re Hertz Global Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017); *see also* Mot. at 24-27 (citing cases).  Resisting this authority (Opp'n at 13-14), Plaintiffs cite cases where courts found actionable statements concerning, for example, "particular management practice[s]," *Shapiro v. UJB Financial Corporation*, 964 F.2d 272 (3d Cir. 1992), or the demand for a company's services, *In re U.S. Interactive, Inc.*, 2002 WL 1971252, at *18 (E.D. Pa. Aug. 23, 2002).  Unlike those cases, however, Defendants here were not describing privately held information, but instead were describing their optimistic view of publicly disclosed financial information.  Defendants' statements are immaterial puffery precisely because a reasonable investor would rely on the disclosed financial information itself—which Plaintiffs have not challenged—and not Defendants' puffing characterizations of such information.  For this reason, the cases cited by Plaintiffs are inapposite.

In addition, the PSLRA safe harbor for forward-looking statements precludes liability for many of the relevant statements. (*See* Mot. at 26-27.) Plaintiffs acknowledge that certain statements do speak about the future (*see* Opp'n at 16),[2] but argue that the Court should ignore the forward-looking language and accompanying disclosures because certain statements partially address past performance. However, the very case Plaintiff cites makes clear that "when the present-tense statement cannot 'meaningfully be distinguished from the future projection of which they are a part,' ***the statement as a whole can be considered forward looking***." *In re Celgene Corp. Sec. Litig.*, No. CV 18-4772, 2019 WL 6909463, at \*14 (D.N.J. Dec. 19, 2019) (emphasis added). Plaintiffs make no attempt to, and cannot, distinguish the present-tense statement from the forward-looking projection—and thus the statement is covered by the safe-harbor.

In any event, pleading "fraud by hindsight" is not permitted: "[t]o be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events." *Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007) (quoting *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002)). Plaintiffs fail to allege why Eros's statements about its finances were false or misleading when made. This Court's rejection of "fraud by hindsight" pleading applies forcefully here and requires dismissal.

### B.      Allegations Concerning Eros's Intangible Assets

Plaintiffs assert that the calculation of intangible asset balances is a matter of "fact, not opinions," rendering Eros's cautionary disclosures irrelevant and allowing Plaintiffs to dodge the rigid requirements to plead falsity with respect to statements of opinion. (Opp'n at 17.) That is not correct. Nor do Plaintiffs' cases support their position. Plaintiffs cite *Oregon Laborers Employers Pension Tr. Fund v. Maxar Techs. Inc.*, No. 19-CV-0124-WJM-SKC, 2020 WL

---

[2] Plaintiffs also concede that the Complaint omits the Company's disclosures pertaining to these statements. (*Id.* at 16 n.12.)

5

5500458, at *12 (D. Colo. Sept. 11, 2020) for the proposition that the court "analyz[ed] falsity of alleged overstatement of intangible assets as statement of fact" (Opp'n at 17)—but Plaintiffs mischaracterize that case.  There, defendants failed to test for impairment, despite the fact that specific, reliable indicators showed that the value of those assets had decreased.  Contrary to Plaintiffs' arguments, *Maxar Techs* does not hold that all statements regarding intangible assets are "fact" statements devoid of subjective opinion.

Moreover, unlike in *Maxar Techs*, Plaintiffs do not allege any specific facts demonstrating that Defendants' prior impairment tests, validated by their independent auditor, were knowingly false at the time made.  To the contrary, Plaintiffs allege in conclusory fashion that Eros should have taken an impairment in March 2018 based on Eros's market capitalization at that time.  (*See* Opp'n at 19.)  They do not allege that those numbers were false—to the contrary, they acknowledge that Eros undergoes an annual impairment review.  (*See id.* (citing Mot. Ex. 1 at F-13).)  And in undertaking those reviews in 2016-2018, Eros did indeed take impairment charges. (*See* Supp. Decl. of Christos Papapetrou ("Papapetrou Supp. Decl.") Ex A.)  Moreover, the decline in market capitalization that occurred following the CARE downgrade in June 2019 was precipitous and drastically different in scale—and, as a result, Eros initiated an impairment test in mid-2019, confronting the issue head on.  (*See* Mot. at 18.)  Rejecting the argument Plaintiffs make here, the *Maxar Techs* court emphasized that the "[d]efendants' decision to take an impairment in the third quarter of 2018 does not automatically render its earlier financial statements false."  *Id.* at *12.

Plaintiffs' reliance on *Fresno Cty. Employees' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 546-47 (S.D.N.Y. 2017) is likewise misplaced.  In *Fresno County*, the defendant conceded deliberate misconduct in bypassing accounting methodologies (including withholding information

6

from auditors and internal accountants) to inflate revenues falsely. *Id.* The court noted that these allegations are distinguishable from cases like *Hertz* (*see* Mot. at 16 (discussing *Hertz*, 2017 WL 1536223)), which "raised issues of subjective opinion" because plaintiffs alleged that a defendant applied accounting methodologies incorrectly. 268 F. Supp. 3d at 546. The *Fresno County* court remarked that "[t]his case is not about complex accounting judgments over which reasonable minds can differ"—which is exactly what the Complaint is about here. *Id.*

At bottom, Plaintiffs' allegations pertaining to Eros's intangible assets rely on the same insufficient and ambiguous sources pervading the Complaint. Plaintiffs assert that they "base their allegations on an independent review of Eros's financials" and "Hindenburg Research's detailed analysis and extensive review of Eros's financials," which Plaintiffs allege are confirmed by two alleged confidential witnesses. (Opp'n at 17.) But nothing in those allegations is particularized or specific enough to overcome Plaintiffs' burden under Rule 9(b) or the PSLRA. *First*, Plaintiffs provide no details regarding their "independent review" of the financials other than their generalized speculation that Eros inflated its intangible assets. While Plaintiffs may disagree with the Company's "complex accounting judgments," *Fresno Cty.*, 268 F. Supp. 3d at 546, that does not meet the threshold for securities fraud. *Second*, Plaintiffs assert that this Court must take the factual allegations from the Hindenburg Report as "sufficiently reliable" at the motion to dismiss stage. (Opp'n at 18.) Whether the report has indicia of reliability (which it does not, *see* Mot. at 19) is beside the point:  the Hindenburg article does not save Plaintiffs' claims because it does not identify any "particular and material facts" whose omission rendered the intangible asset balances misleading. (Mot. at 19.)

It is telling that Plaintiffs rest their pleading burden on the shoulders of a biased short-seller report that negatively spins public information previously disclosed to the market (Opp'n at 17-

7

18) while simultaneously arguing that the Court should reject the disclosures and opinions of the Company's independent, external auditor, which evaluated and certified the complex, subjective valuations Plaintiffs now allege were false or misleading (*id.* at 13). And while Plaintiffs argue that "[d]ifferent CWs confirm the allegations in the Hindenburg Report" (Opp'n at 17), these conclusory allegations offer no specific facts regarding the Company's alleged misrepresentations and should be rejected for the reasons set forth in the Motion. (*See* Mot. at 17, 22, 30-33.)

## C.      Allegations Concerning Eros's Interactions with the Rating Agencies

In an attempt to shore up insufficient allegations concerning Defendants' statements regarding CARE and Moody's, Plaintiffs' Opposition includes new allegations and a new exhibit that were not included in the Amended Complaint. Specifically, Plaintiffs state that "as recently as three weeks before this filing, CARE provided an update to its default rating, adding the notation 'Issuer Not Cooperating,' and explaining that CARE has requested information from EIML to monitor the rating, but '[t]he company has not provided requisite information[.]'" (Opp'n at 22 (attaching a September 25, 2020 CARE press release as Exhibit A).) Plaintiffs rely on this new exhibit throughout their Opposition in connection with several arguments. (*See* Opp'n at 3, 13, 22, 30, 33, 36.)

As a threshold matter, Plaintiffs' improper attempt to expand the pleadings should be rejected. *See Jannarone v. Sunpower Corp.*, 2018 WL 5849468, at *3 n.3 (D.N.J. Nov. 7, 2018) ("The Court is not required to consider the exhibits Plaintiff attached to his Opposition Brief because Plaintiffs cannot amend their complaint through a brief in opposition to a motion to dismiss." (citation omitted)); *see also, e.g.*, *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (alteration and citation omitted)).

8

Regardless, Plaintiffs selectively attached the exhibit while omitting key information regarding its context.  Specifically, Plaintiffs argue that the September 25, 2020 CARE press release reaffirmed that Defendants are not cooperating in connection with the CARE downgrade that occurred on June 6, 2019, more than a year earlier.  (*E.g.*, Opp'n at 3, 13, 33.)  But Plaintiffs fail to note that EIML withdrew its mandate to CARE to provide ratings, and another accredited rating agency, Acuité Ratings & Research, now covers EIML.  (*See* Papapetrou Supp. Decl. Ex B.)  On September 21, 2020, several days before the CARE press release that Plaintiffs submitted, Acuité Ratings & Research issued a press release assigning EIML a "B" rating with a "Stable" outlook.  (*See id* Ex. C.)  Subsequently, on October 7, 2020, CARE issued a follow-up press release withdrawing the previous rating and noting that EIML had withdrawn its request to be covered by CARE.  (*See id.* Ex D.)  All these public events took place prior to Plaintiffs filing their Opposition—yet Plaintiffs provided the Court with only the single press release noting that EIML was "not cooperating," without explaining that it was "not cooperating" because CARE no longer covered EIML and responsibility for EIML was assigned to another agency.[3]

In any event, Plaintiffs' allegations concerning CARE fail.  The allegations are based on a single confidential witness, CW5, who is a "ratings analyst/manager at CARE."  (Compl. ¶ 99; Opp'n at 21-23.)  As explained in the opening brief, CW5's allegations fall far short of the standard for confidential witnesses.  (*See* Mot. at 22 (citing cases).)  Contrary to the Opposition, the Complaint (1) does not allege that CW5 was the manager that covered Eros's account, (2) makes

---

[3] To the extent the Court deems it necessary, it may take judicial notice of these public documents. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion.").

no allegations about CW5's personal interactions with Defendants, if any, and (3) does not provide any details about how CW5 obtained any of its information. Moreover, CW5's allegation contradicts Plaintiffs' allegation that "management was not in fact working with CARE ratings," as CW5 alleges that "Eros entered into discussions with CARE in an attempt to convince the ratings agency to revise its downgrade, but that when CARE asked for additional details, Eros refused to provide them." (Compl. ¶ 101.) These allegations fail to allege the existence of a material misrepresentation.

Further, nothing in the Opposition salvages Plaintiffs' insufficient allegation that Defendants' statements concerning the reasons for Moody's withdrawal of its credit rating were materially misleading. According to Plaintiffs, Defendants' statement that it requested that Moody's withdraw its credit rating given that it does not have any outstanding public institutional bonds is contradicted by Moody's stating that it withdrew coverage for its "own business reasons." (Opp'n at 23.) But even Plaintiffs acknowledge Defendants may have been telling the truth when they stated that they requested that Moody's withdraw its credit rating; however, Plaintiffs speculate that Moody's ultimately may have done it for other purposes. (*See* Opp'n at 23 ("Even if Eros did reach out to Moody's to request a ratings withdrawal, according to Moody's, that is not why it withdrew its credit rating.").) But an allegation that there may have been a "difference of opinion" about the reasons for withdrawal does not amount to an allegation of a false statement. (*See* Mot. at 23.) Moreover, Moody's policy itself is ambiguous, as set forth in Defendants' opening brief.[4] While Plaintiffs point the Court to a previous version of the policy, it does not

---

[4] While Plaintiffs repeatedly cite Moody's policy for withdrawal of credit ratings in the Complaint (*see, e.g.*, Compl. ¶¶ 17, 83, 183, 186), they did not attach any version of the policy to the pleading. In moving to dismiss, Defendants attached Moody's current policy. (*See* ECF No. 37-19 (Papapetrou Decl. Ex. 17).) Contemporaneously with their Opposition, Plaintiffs moved to strike Moody's policy from Defendants' motion. (*See* ECF No. 39.) Defendants responded to that

provide any further detail that would support any allegation of falsity. In short, Plaintiffs have failed to allege any actionable misstatements in connection with Eros's interaction with Moody's.

### D.    Allegations Concerning Internal Controls and SOX Certifications

Plaintiffs' allegations concerning the Company's internal controls and related SOX Certifications are also insufficient because they are not alleged with any particularity.  They fail to adequately plead that the June 2019 events (or any other specific allegations) demonstrate that Defendants' statements about its internal controls, as of March 2017 and March 2018, were false or misleading.  (*See* Mot. at 21.)  Plaintiffs raise three facts: (1) that Eros had delays in paying "payroll, bills, and debt servicing"; (2) that Eros entered into related-party transactions; and (3) that Mr. Lulla's family had a controlling interest in the company.  (Opp'n at 25.)  None of those facts support Plaintiffs' allegations that Eros's SOX certifications at the time made were false.  Indeed, the "facts" related to related-party transactions and Mr. Lulla's ownership at Eros were disclosed in Eros' public filings—a fact that Plaintiffs do not counter.  (Mot. at 4-5, 17, 19.)  Moreover, for all these allegations, Plaintiffs rely on vague, ambiguous statements (not tied to any specific dates or individuals) from their anonymous sources.

## II.    THE COMPLAINT FAILS TO PLEAD SCIENTER

### A.    Plaintiffs' Confidential Witness Allegations Are Insufficient to Plead Scienter

This Court's requirements for relying on confidential witnesses in a putative securities class action are exacting:  "allegations attributed to the information obtained from a confidential source must contain specific details regarding the basis for the source's personal knowledge and describe supporting events in detail."  (*See* Mot. at 30 (quoting *Nat'l Junior Baseball League v.*

---

motion (*see* ECF No. 40), which has no merit.  In considering this motion, the Court may consider Moody's current policy, as well as any previous policies, which are publicly available documents that have also been incorporated into the Complaint by Plaintiffs' reference to the policy.

11

*Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 538-39 (D.N.J. 2010) and *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 290 (D.N.J. 2007)).)   Plaintiffs fail to meet those standards for the reasons set forth in the Motion.  (*See* Mot. at 30-33.)

Plaintiffs' Opposition only further demonstrates the insufficient particularity of the Complaint's CW allegations.  Plaintiffs, for example, cite *In re Urban Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 649 (E.D. Pa. 2015), where the court accepted the CW allegations as sufficiently particularized.  (Opp'n at 33.)  There, unlike here, the witnesses (all of whom were former employees) alleged details regarding the period of their employment (month and year); description of their job responsibilities and direct supervisors; and detailed information about how they had access to specific sales data tied to the alleged misrepresentations.  *Id.*  Here, only four of eight proffered anonymous sources even worked at the Company—and they do not provide any of the specific details surrounding their employment relied on by *Urban Outfitters*.  Plaintiffs do not allege the specific month and year of their employment, they do not allege their responsibilities or supervisors, they do not allege details about how they learned any information, and do not allege that any of them even interacted with the individual Defendants.  Under Plaintiffs' own legal authorities, their allegations would fail as insufficiently particularized.[5]

### B.     Plaintiffs' Other Scienter Allegations Likewise Fail

Plaintiffs' other scienter allegations also fail because they do not meet the high burden set forth in the PSLRA or Rule 9(b).  *First*, Plaintiffs allege that Eros's statements concerning the

---

[5] Plaintiffs' other cases are distinguishable for the same reason.  *See, e.g.*, *Roofer's Pension Fund v. Papa*, No. CV 16-2805, 2018 WL 3601229, at *23 (D.N.J. July 27, 2018) (accepting confidential witness allegations that included month and date time frames for when witnesses learned knowledge, details about job responsibilities and direct supervisors, and specific details about how the witnesses learned the information); *In re EVCI Colleges Holding Corp. Sec. Litig.*, 469 F. Supp. 2d 88, 97 (S.D.N.Y. 2006) (concluding that the confidential sources detailed their access to the specific information underlying the allegations).

CARE downgrade and its interactions with Moody's support an inference of scienter.  (Opp'n at 29-30.)  Plaintiffs cite to *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 49 (2011), to argue that the Company's June 6, 2019 press release supports a strong inference of scienter.  But in *Matrixx*, the company intentionally concealed reports of adverse events—the opposite of here, where Eros issued a clarifying press release within hours explaining that EIML's lapse in paying interest payments was being remedied.  Nothing in those allegations support an inference of fraud—to the contrary, the Company's immediate clarification letter is inconsistent with intentional or reckless deception.  The same is true for the allegations pertaining to Moody's withdrawal of their coverage—even Plaintiffs acknowledge that Defendants likely spoke truthfully about their communication with Moody's.  While Moody's might have a different opinion regarding why it ceased coverage—which is not clear from Moody's policy on withdrawing credit ratings—that is a far cry from alleging a material misstatement or omission.  (*See supra* at 10-11.)

*Second*, Eros's 2019 impairment loss reported by Defendants does not raise a strong inference of scienter.  Defendants initiated the impairment review themselves due to the significant loss of market value subsequent to the CARE downgrade.  (*See* Mot at 36.)  Eros explained, in detail, how that loss was consistent with the circumstances.  (*Id.*)  Plaintiffs do not contest those details—instead, they argue that the size of the impairment should raise an inference of scienter.  (Opp'n at 31.)  While Plaintiffs cite to case law where courts considered the size of an impairment in their analysis, size was not the driving factor.  *See, e.g., In re Leapfrog Enter., Inc. Sec. Litig.*, 237 F. Supp. 3d 943, 954 (N.D. Cal. 2017) (considering the size and timing of the impairment combined with plaintiffs' "obviousness allegations" because the "stock decline" happened months prior to the claimed impairment).  Likewise, as discussed above (*see supra* at 5-6), Plaintiffs' reliance on *Maxar Techs*, where not only did the defendant company ***not*** initiate their own

13

impairment analysis, but there was demonstrable evidence that the prior impairment analyses had been false, is misplaced. *See Maxar Techs*, 2020 WL 5500458, at \*15. Unlike in the Opposition's cases, Plaintiffs' allegations here fail because the only conclusory allegation they have put forward is the size of the impairment.

*Third*, Plaintiffs' allegations concerning Eros's internal controls, SOX certifications, and "core operations" doctrine all fail for the same reason: they do not point to any misstatements or omissions that they allege Defendants knew were false at the time made. (Mot. at 2, 12.) Instead, Plaintiffs generally plead that scienter should be inferred because of the individual Defendants' roles at the company—but untethered to any concrete allegations of any knowingly false statement or omission, that pleading fails to meet the PSLRA's or Rule 9(b)'s heavy pleading burdens.

*Finally*, Plaintiffs have done nothing to rebut the Third Circuit's long-standing rule that allegations of corporate mismanagement will not support a securities fraud claim. (*See* Mot. at 34 (citing cases).) All of Plaintiffs' generalized allegations attack Defendants' management—for example, allegations of overpayment for film rights; participating in transactions with disclosed related-parties; Eros supplementing a press release to clarify that it was remediating missed interest payments; allegations that salaries may have been delayed at unspecified times for unspecified individuals; and that Eros agreed to "toxic" financing. (Opp'n at 2, 6, 9.) None of Plaintiffs' allegations set forth particularized misstatements or omissions—rather, Plaintiffs attack Defendants' business decisions. The Opposition affirms that the Complaint's alleged fraud allegations are dressed-up allegations of mismanagement, which are insufficient to support a securities fraud claim. *See In re Hertz Global Holdings Inc.*, 905 F.3d 106, 117 (3d Cir. 2018).

## III.   THE COMPLAINT FAILS TO PLEAD LOSS CAUSATION

Plaintiffs have also not adequately pleaded loss causation. They have not pleaded that a revelation of a false or misleading statement substantially contributed to any drop in Eros stock—

rather, it was caused by the CARE downgrade and corresponding market events. While Plaintiffs attempt to argue that the Company made earlier fraudulent statements that were not revealed until the CARE downgrade in June 2019, they fail to plead any specific misstatements—instead, Plaintiffs assert generic allegations of corporate mismanagement. While Plaintiffs mischaracterize the Company's first June 6, 2019 statement as false (*see* Opp'n at 38), it was supplemented with additional information within six hours, and none of the statements acknowledged any wrongdoing, falsity, or fraudulent practices. (*See* Mot. at 41.) At bottom, the alleged statements that Plaintiffs rely on are insufficient to demonstrate loss causation—and their subjective opinion that Eros's stock dropped because the Company allegedly failed to manage its liquidity correctly is insufficient to allege securities fraud or accompanying loss causation.

## CONCLUSION

For the reasons stated above and in Defendants' opening brief, the Complaint should be dismissed with prejudice.

Dated: New York, New York
       November 13, 2020

LEVINE LEE LLP

By:   /s/ Christos G. Papapetrou
      Kenneth E. Lee (*pro hac vice*)
      Christos G. Papapetrou
      Chad P. Albert (*pro hac vice*)
      650 Fifth Avenue, 13th Floor
      New York, New York 10019
      Telephone:  (212) 223-4400
      Facsimile:  (212) 223-4425
      klee@levinelee.com
      cpapapetrou@levinelee.com

      *Attorneys for Defendants Eros*
      *International Plc, Kishore Lulla,*
      *and Prem Parameswaran*

15