**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE EROS INTERNATIONAL PLC SECURITIES LITIGATION, | 1:19-cv-14125 (JMV) (JAD)<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT PREM PARAMESWARAN'S MOTION TO DISMISS**

KASOWITZ BENSON TORRES LLP

Stephen W. Tountas
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel.: (973) 645-9462
Fax: (973) 643-2030

*Attorneys for Defendant Prem Parameswaran*

[Additional Counsel on Signature Page]

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 3

PROCEDURAL HISTORY ................................................................................................ 5

ARGUMENT ...................................................................................................................... 6

    I.     Plaintiffs Fail to Allege that Parameswaran Acted with Scienter ........................... 7

         A.     Plaintiffs Do Not Plead Any Facts Demonstrating that Parameswaran Had a Motive and Opportunity to Commit Securities Fraud ............................. 7

         B.     Plaintiffs Fail to Plead Any Particularized Facts that Raise a Strong Inference of Parameswaran's Knowledge or Recklessness ........................ 9

              1.    Plaintiffs' Confidential Witnesses are Unreliable ............................... 9

              2.    Statements Regarding Eros's Financial Health ................................. 11

              3.    Statements Regarding Eros's Revenues and Receivables .................. 13

              4.    Parameswaran's Sarbanes-Oxley Certifications ............................... 14

              5.    Statements Concerning the EIML Ratings Downgrade ..................... 15

              6.    Statements Regarding Eros's Intangible Asset Values ...................... 16

         C.     Parameswaran's Position as CFO Does Not Add to the Scienter Analysis ................................................................................... 17

         D.     Plaintiffs' Scienter Allegations Are Not Rescued by Plaintiffs' False Suggestion that Parameswaran Was Terminated by ErosSTX ................. 18

    II.     Plaintiffs Fail to Allege Any Actionable Material Misstatements by Parameswaran ........................................................................................ 18

         A.     Statements About Eros's Financial Condition .......................................... 19

          B.     Eros's Valuation of Assets and Financial Statements.............................. 21

          C.     Certifications Pursuant to the Sarbanes-Oxley Act ................................. 22

D.    Statements Relating to the EIML Rating Downgrade .............................. 23

III.    Plaintiffs' Section 20(a) Claim Against Parameswaran Should Be Dismissed ................................................................................................... 24

CONCLUSION .................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aceto Corp. Sec. Litig.*,
    2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019)..................................................................................21

*In re Aetna, Inc. Sec. Litig.*,
    617 F.3d 272 (3d Cir. 2010)..................................................................................19, 20

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)..................................................................................19

*In re Celegene Corp. Sec. Litig.*,
    2019 WL 6909463 (D.N.J. 2019) ..................................................................................8

*Christian v. BT Group Plc*,
    2020 WL 1969941 (D.N.J. Apr. 24, 2020),
    *aff'd sub nom. Pamcah-UA Loc. 65 Pension Fund v. BT Grp. Plc*,
    2021 WL 3415060 (3d Cir. Aug. 5, 2021)..................................................................................12, 14

*City of Edinburgh Council v. Pfizer, Inc.*,
    754 F.3d 159 (3d Cir. 2014)..................................................................................15, 19, 21

*City of Monroe Emps' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
    2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011)..................................................................................20

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
    686 F. Supp. 2d 404 (D. Del. 2009)..................................................................................14, 22

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
    2018 WL 3772675 (D.N.J. Aug. 8, 2018) ..................................................................................20, 24

*In re Eros Int'l Plc Sec. Litig.*,
    2021 WL 1560728 (D.N.J. Apr. 20, 2021) .................................................................................. *passim*

*In re Exxon Mobil Corp. Sec. Litig.*,
    387 F. Supp. 2d 407 (D.N.J. 2005)..................................................................................17

*Fain v. USA Techs., Inc.*,
    707 F. App'x 91 (3d Cir. 2017) ..................................................................................17

*In re Fannie Mae 2008 Sec. Litig.*,
    742 F. Supp. 2d 382 (S.D.N.Y. 2010)..................................................................................24

*Finger v. Pearson PLC,*
    2019 WL 10632904 (S.D.N.Y. Sept. 16, 2019)......................................................16

*In re Galena Biopharma Inc. Sec. Litig.,*
    2019 WL 5957859 (D.N.J. 2019) ............................................................................8

*GSC Partners CDO Fund v. Washington,*
    368 F.3d 228 (3d Cir. 2004)....................................................................................8

*In re Henry Schein, Inc. Sec. Litig.,*
    2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019) ......................................................24

*In re Hertz Glob. Holdings Inc,*
    905 F.3d 106 (3d Cir. 2018)............................................................................18, 24

*In re Hertz Global Holdings, Inc.,*
    2017 WL 1536223 (D.N.J. Apr. 27, 2017),
    *aff'd,* 905 F.3d 106 (3d Cir. 2018) ..................................................................20, 21

*In re Ikon Off. Sols., Inc.,*
    277 F.3d 658 (3d Cir. 2002)..................................................................................16

*Institutional Investors Grp. v. Avaya, Inc.,*
    564 F.3d 242 (3d Cir. 2009)....................................................................6, 7, 8, 21

*In re Intelligroup Sec. Litig.,*
    527 F. Supp. 2d 262 (D.N.J. 2007) .........................................................................9

*Life Bliss Found. v. Sun TV Network Ltd.,*
    2013 WL 12132068 (C.D. Cal. Dec. 13, 2013) ......................................................4

*In re NAHC, Inc. Sec. Litig.,*
    306 F.3d 1314 (3d Cir. 2002)................................................................................18

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.,*
    720 F. Supp. 2d 517 (D.N.J. 2010) .......................................................................16

*In re Omega Healthcare Invs., Inc. Sec. Litig.,*
    2021 WL 4443562 (S.D.N.Y. Sept. 28, 2021)......................................................20

*Omnicare v. Laborers District Council Construction Industry Pension Fund,*
    575 U.S. 175 (2015).............................................................................................22

*Ortiz v. Canopy Growth Corp.,*
    537 F. Supp. 3d 621 (D.N.J. 2021) .........................................................................9

*In re Par Pharm. Sec. Litig.,*
    2008 WL 2559362 (D.N.J. June 24, 2008) .............................................................7

iv

*In re Radian Sec. Litig.*,
     612 F. Supp. 2d 594 (E.D. Pa. 2009) ......................................................................16

*Se. Pennsylvania Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
     2015 WL 3833849 (M.D. Pa. June 22, 2015) .........................................................20

*In re Suprema Specialties, Inc. Sec. Litig.*,
     438 F.3d 256 (3d Cir. 2006) .....................................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
     551 U.S. 308 (2007) .......................................................................................6, 7, 19

*Wilson v. Bernstock*,
     195 F. Supp. 2d 619 (D.N.J. 2002) ...........................................................................8

*Zucco Partners, LLC v. Digimarc Corp.*,
     552 F.3d 981 (9th Cir. 2009) ...................................................................................18

**Statutes**

15 U.S.C. § 78u–4(b)(2) ................................................................................................7

Defendant Prem Parameswaran ("Parameswaran"), the former Group Chief Financial Officer ("CFO") of Eros International Plc ("Eros" or the "Company") and current Head of Corporate Strategy of ErosSTX Global ("ErosSTX"), respectfully submits this memorandum of law in support of his motion to dismiss Plaintiffs' Third Amended Class Action Complaint, ECF No. 59 ("TAC"), pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).[1]

## **PRELIMINARY STATEMENT**

The TAC is Plaintiffs' third attempt to plead actionable securities fraud claims against Parameswaran and focuses largely on business challenges and financial problems at subsidiaries of Eros, including Eros International Media Limited ("EIML"). The Court previously dismissed all of Plaintiffs' securities fraud claims against Parameswaran except for *one* alleged misstatement in Eros's June 9, 2019 press release, wherein Parameswaran assured investors that, notwithstanding an Indian credit rating agency's unexpected downgrade of EIML, "Eros has a strong liquidity profile and healthy balance sheet."  ¶¶ 285-86.  Despite having ample time to bolster their allegations, Plaintiffs fail to cure any of the deficiencies that the Court identified in its dismissal and, in fact, further embed themselves in a narrative that highlights why Parameswaran should be dismissed from this litigation entirely.

At the outset of the TAC, Plaintiffs claim that, Eros—and its subsidiaries—are "tightly run and controlled" by the Lulla family. *See, e.g.*, ¶¶ 4, 66-69.  Practically absent from the TAC's allegations, however, is any meaningful discussion of Parameswaran's day-to-day management, financial oversight, or knowledge of financial issues at *any* Eros subsidiary, including EIML.  Plaintiffs' silence on these critical issues is unsurprising given that

---

[1] Capitalized terms not otherwise defined have the meaning set out in the TAC.  Citations to "¶¶ __" refer to the corresponding paragraph numbers of Plaintiffs' TAC.

Parameswaran has *never* been employed by EIML, a publicly-traded Indian company that maintains a separate corporate governance structure and financial reporting team—including a different CFO—and files its own audited financial statements in *India*. While Plaintiffs try to blur the lines between Eros and EIML by focusing on the Lulla family's overlapping roles at both companies, they tellingly fail to plead *any* material facts that Parameswaran knew or recklessly disregarded about EIML (or any other Eros subsidiary) that contradicted his public representations about *Eros*.

At best, Plaintiffs' only allegation regarding Parameswaran's supposed knowledge of EIML's financial issues is a non-specific statement attributed to Confidential Witness 7 ("CW 7"), a purported credit manager of Bank of Baroda, which extended a loan to EIML in 2016. According to CW 7, "Parameswaran and the Lullas were notified at EIML" about certain payment issues and penalties, none of which Plaintiffs identify or describe with particularity. ¶¶ 170-71. As this Court previously recognized, however, Plaintiffs' confidential witness allegations must be discounted "steeply" because they provide no indicia of reliability, plausibility, or other corroborative facts. *See In re Eros Int'l Plc Sec. Litig.*, 2021 WL 1560728, at *12-13 (D.N.J. Apr. 20, 2021). Rather than curing these defects, the TAC still fails to allege that CW 7 was the credit manager at Bank of Baroda who supposedly interacted with EIML or Parameswaran, let alone that he sent or received the reports that were purportedly distributed to Parameswaran. Nor do Plaintiffs attempt to explain how Parameswaran could have been "notified at EIML" when he was never an employee there.

Beyond Plaintiffs' failure to plead a strong inference of Parameswaran's scienter, they also fail to plead that he made any actionable misstatements. Indeed, Plaintiffs rehash many of the alleged misstatements that the Court already dismissed as non-actionable opinions and

2

hindsight, including virtually all of Parameswaran's alleged misrepresentations about Eros's financial profile, internal controls, and SOX certifications. And, with respect to the other new misstatements that Plaintiffs attribute to Parameswaran, Plaintiffs continue to rely upon the same impermissible pleading strategies, and lean heavily on non-descript allegations that do not come close to meeting the Third Circuit's stringent pleading standards.

For these reasons, and as set forth in detail below, the Court should dismiss all of Plaintiffs' claims against Parameswaran with prejudice.

## FACTUAL BACKGROUND[2]

Parameswaran served as the CFO of Eros from 2015 until Eros merged with STX Entertainment in 2020 to form ErosSTX. Following the merger, Parameswaran became the Head of Corporate Strategy for ErosSTX, a position in which he remains today.

While he was CFO of Eros, Parameswaran signed the financial statements issued by the Company, including its yearly financial statements filed on Forms 20-F. *See, e.g.*, Ex. 1 (FY 2020 Form 20-F) at 144; Ex. 2 (FY 2019 Form 20-F) at 127; Ex. 3 (FY 2018 Form 20-F) at 120.[3] Eros is the parent company to various separately audited Indian subsidiaries, including EIML, which is responsible for acquiring and holding film rights that other Eros subsidiaries distribute globally. Ex. 1 (2020 Form 20-F) at 30-31, 70. Notably, EIML is a publicly-traded company on both the Bombay Stock Exchange and the National Stock Exchange of India with its own corporate governance structure, executive team, and CFO, and files its own audited financial

---

[2] Parameswaran incorporates by reference the summary of allegations presented in the Memorandum of Law in Support of the Motion to Dismiss filed by Eros and the other defendants (the "Company Brief"). Additional facts are discussed herein only to the extent they are relevant to Parameswaran.

[3] "Ex. __" refers to the corresponding exhibits attached to the Declaration of Stephen W. Tountas in support of Parameswaran's Motion to Dismiss, filed herewith.

3

statements in India.[4]  EIML's financial statements, following their finalization and audit, are consolidated into those of Eros.  *Id.* at ii, F-56.  Plaintiffs do not (and cannot) allege any facts suggesting that Parameswaran: (i) was ever employed by EIML; (ii) had any responsibility over EIML's financial reporting or day-to-day management; (iii) had any involvement in preparing EIML's financial statements; or (iv) had any role in the independent audits of EIML.  The same facts are true with regard to all of Eros's other subsidiaries.

Yet, the TAC focuses nearly exclusively on events that occurred at or stem from EIML and other unnamed Eros subsidiaries.  The primary focus of Plaintiffs' allegations is Eros's purchase, valuation, and later impairment of film rights assets, which, as noted above, originated through EIML.  ¶¶ 73-81, 114-122.  Plaintiffs also point to a series of EIML-related events which they claim "revealed" a "truth" about financial problems at Eros.  First, Plaintiffs point to a downgrade by Indian ratings agency CARE of EIML's credit rating, which led, several days later, to a small downgrade of Eros's own credit rating by Moody's.  ¶¶ 91-92, 107.  Second, Plaintiffs note two impairments of intangible assets which, as noted above, largely are acquired and held by EIML.  ¶¶ 114-16, 126-28.  Finally, Plaintiffs point to two recent SEC filings by ErosSTX which anticipate another intangible asset impairment and states that ErosSTX's "Audit

---

[4] EIML's annual reports are signed by its executive leadership, including its Managing Director, CEO, and CFO.  *See* Exs. 4-7 (EIML's annual reports for fiscal 2017-2020, respectively).  The Court may take judicial notice of these filings as corporate disclosure documents that are publicly available.  *See Life Bliss Found. v. Sun TV Network Ltd.*, 2013 WL 12132068, at *2 (C.D. Cal. Dec. 13, 2013) (taking judicial notice of an annual report filed with the Indian National Stock Exchange).  As those filings reflect, during the Class Period, EIML was led by Sunil Lulla as Managing Director and by Dinesh Modi (until March 8, 2018) and Farokh Ghandi as CFO.  Ex. 4 (EIML 2020 Annual Report) at 9.  EIML's financial statements were reviewed and audited by M/s. Walker Chandiok & Co LLP (in 2017) and M/s Chaturvedi & Shah (2018-2020).  *Id.* at 10; Ex. 7 (2017 Annual Report) at 27.

4

Committee is currently conducting a formal review of certain accounting practices and internal controls *related to its Eros subsidiaries*." ¶¶ 367-68 (emphasis added).

## PROCEDURAL HISTORY[5]

As the Court is aware, Plaintiffs have attempted to plead actionable securities fraud claims against Parameswaran twice before. Their first attempt (the "Original Complaint") resulted in an opinion and order largely dismissing allegations against Parameswaran, finding that Plaintiffs only adequately alleged scienter as to one alleged misstatement made by Parameswaran. *See In re Eros*, 2021 WL 1560728, at *16. The second attempt was amended by the TAC before motion briefing.

In the TAC, the alleged misstatements by Parameswaran fit into largely the same categories as those the Court used in connection with its prior opinion:

i)    Statements generically describing Eros's financial profile as, among other things, "conservative," "strong," and "healthy";[6]

ii)   Statements contained in Eros's financial filings stating the value of its intangible assets (largely film and content rights) and its revenues and trade receivables;[7]

iii)  Statements attesting to Eros's internal controls and certifications of those controls and the accuracy of the Company's financial statements under the Sarbanes-Oxley Act of 2002 ("SOX"), which Parameswaran signed;[8] and

iv)   Statements describing Eros's response to the downgrade of EIML's credit rating by CARE Ratings in 2019.[9]

---

[5] Parameswaran incorporates by reference the Procedural History set forth in the Company Brief and submits the following facts that pertain to Parameswaran.

[6] *See, e.g.*, ¶¶ 218, 222, 229, 232, 235, 237, 240, 243, 245, 251, 259, 264, 270, 274, 277, 285, 324.

[7] *See, e.g.*, ¶¶ 233, 238, 246, 253, 261, 268, 275, 296, 297, 307, 314, 316, 323, 330, 331-32.

[8] *See, e.g.*, ¶¶ 226, 227, 256, 257, 302, 303, 337, 339.

[9] *See, e.g.*, ¶¶ 308, 315.

The Court previously held that Plaintiffs did not adequately allege that Parameswaran acted with scienter, except with respect to one statement about Eros's financial profile following CARE's downgrade of EIML's credit rating. *See id.* at *5-14. In particular, the Court denied Defendants' motions to dismiss with respect to falsity of the first and second categories but ultimately dismissed claims based on all but one of those statements because Plaintiffs failed to adequately allege scienter. *Id.* at *5-9, 12-14. The Court further held that Parameswaran's alleged misstatements in the third category were non-actionable opinions and attempted to plead fraud by hindsight.[10] *Id*. at *9-10.

The Court permitted Plaintiffs to replead to "cure[] the deficiencies" in the Original Complaint. *Id*. at *16. As set forth in detail below, the TAC does not plead any additional facts to cure any of the deficiencies identified by the Court regarding the alleged misstatements that were already dismissed. And, with the benefit of additional briefing—and briefing specific to Parameswaran's non-existent involvement in EIML's financial reporting practices and day-to-day management—Parameswaran respectfully requests the dismissal of the one alleged misstatement that the Court sustained against him.

## ARGUMENT

In recognition of the risk of "substantial costs" that securities class actions can impose even on "companies and individuals whose conduct conforms to the law," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), the PSLRA requires plaintiffs to "specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity." *Institutional*

---

[10] The Original Complaint alleged no statements by Parameswaran relating to the downgrade of EIML's credit rating.

6

*Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 252-53 (3d Cir. 2009) (citation omitted).  Plaintiffs'

claims under Section 10(b) must also satisfy the heightened pleading requirements of Rule 9(b)

and the PSLRA.  Thus, with respect to each alleged misrepresentation or omission, Plaintiffs

must "state with particularity facts giving rise to a strong inference that the defendant acted with

the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A).

## I.    PLAINTIFFS FAIL TO ALLEGE THAT PARAMESWARAN ACTED WITH SCIENTER

In a securities fraud case, a misstatement is not actionable unless a plaintiff can allege

scienter.  Each individual speaker's "participation and scienter must be pled separately and with

particularity."  *In re Par Pharm. Sec. Litig.*, 2008 WL 2559362, at *10 (D.N.J. June 24, 2008).

The Third Circuit recognizes two forms of scienter allegations: (1) those relating to motive and

opportunity to commit fraud; and (2) those which plead circumstantial evidence of "reckless or

conscious misbehavior."  *Avaya*, 564 F.3d at 276.  Any such circumstantial evidence must be

based on particularized facts giving rise to a "strong inference" of scienter.  *Id.* at 253 (quoting

15 U.S.C. § 78u–4(b)(2)).  Plaintiffs' theory of scienter must be "cogent and at least as

compelling as any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 314.

Previously, the Court held that Plaintiffs failed to allege scienter as to Parameswaran at

all, except with respect to a single alleged misstatement concerning Eros's financial health

following CARE's downgrade of EIML's credit rating.  *In re Eros*, 2021 WL 1560728, at *14.

As set forth below, the Court should find that the TAC fails to allege any compelling theory of

scienter as to any of the alleged misstatements that Plaintiffs attribute to Parameswaran.

### A.    Plaintiffs Do Not Plead Any Facts Demonstrating that Parameswaran Had a Motive and Opportunity to Commit Securities Fraud

In order to raise a strong inference of scienter based on motive or opportunity, Plaintiffs

must allege particularized facts showing "that the ***individual*** corporate defendant[] stood to gain

7

in a concrete and personal way" from the alleged fraud. *Wilson v. Bernstock*, 195 F. Supp. 2d 619, 633 (D.N.J. 2002) (emphasis added). Allegations of an executive's goals or motives are insufficient as a matter of law if they pertain to motivations "generally possessed by most corporate directors and officers." *Avaya*, 564 F.3d at 278.

The bulk of the TAC's motive and opportunity allegations pertain to the alleged control that defendant Lulla and his family held over Eros and their so-called enrichment from certain related party transactions. *E.g.*, ¶¶ 4-5, 66-72, 76-79, 372-81. Putting aside that these related-party transactions were at all times fully disclosed in the Company's SEC filings, Parameswaran is not a member of the Lulla family and Plaintiffs fail to explain how he could have been motivated as an unrelated third party. Indeed, the TAC does not allege once that Parameswaran had any interest in the related-party transactions or that any of his compensation was tied to them. *See, e.g.*, *In re Celegene Corp. Sec. Litig.*, 2019 WL 6909463, at *21 (D.N.J. 2019) (finding scienter was alleged as to corporate officers who had "a personal financial motivation," bonuses or performance awards, but not as to others without similar allegations).

At most, Plaintiffs allege that Parameswaran was motivated to meet Eros's revenue guidance. *See, e.g.*, ¶¶ 308, 311, 382-92. But the desire to meet financial targets is a motive "possessed by most corporate directors and officers" and is insufficient to establish any individualized motive to commit fraud. *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004); *see also In re Galena Biopharma Inc. Sec. Litig.*, 2019 WL 5957859, at *13 (D.N.J. 2019) ("Corporate officers always have an incentive to improve the lot of their companies, but this is not, absent unusual circumstances, a motive to commit fraud.") (quoting *Avaya*, 564 F.3d at 278-79)). In fact, Plaintiffs do not even allege that Parameswaran received a bonus during the Class Period that hinged upon Eros meeting or exceeding its financial targets.

Accordingly, the TAC fails to plead any particularized facts that raise a strong inference of scienter based on motive and opportunity to commit securities fraud.

**B.     Plaintiffs Fail to Plead Any Particularized Facts that Raise a Strong Inference of Parameswaran's Knowledge or Recklessness**

Plaintiffs also fail to establish a strong inference that Parameswaran knew of, or was reckless in not knowing, information that made his statements false.  To plead that he acted recklessly, Plaintiffs must show "an extreme departure from the standards of ordinary care[.]"  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 267 n.42 (3d Cir. 2006) (citations omitted).  Any scienter allegations must explain "with particularity, 'the who, what, when, where and how' of the events at issue."  *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 673 (D.N.J. 2021) (quoting *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 285 (D.N.J. 2007)).

**1.     Plaintiffs' Confidential Witnesses are Unreliable**

Parameswaran incorporates by reference the arguments set forth in the Company Brief regarding the inadequacies of Plaintiffs' confidential witnesses, and submits the following to address the plainly deficient statements that Plaintiffs attribute to CW 7, the only confidential witness who mentions Parameswaran.

The Court previously held that "[n]one of [Plaintiffs'] witnesses . . . provide sufficient details to support their allegations" and that "none of [the] confidential witnesses' allegations (standing alone or in combination) are sufficient to establish that any of the Individual Defendants had knowledge that contradicted the[ir] statements . . . ."  *In re Eros*, 2021 WL 1560728, at *12-13.  With respect to CW 7, the Court found his or her allegations to be unreliable, finding that he or she "provides no information about Defendants' involvement in, or knowledge of, the 'inconsistencies' in the [EIML] loan repayment."  *Id.* at *13.

9

The TAC claims that CW 7 was a credit manager at third party Bank of Baroda, which made a loan to EIML in 2016.  ¶ 170.  In the TAC, Plaintiffs attribute the following two statements to CW 7 that specifically mention Parameswaran:

- "CW 7 [] said that in 2017, after EIML began incurring penalties for inconsistent payments, that *Parameswaran and the Lullas were notified at EIML*"; and

- "Each quarter an account statement [concerning Bank of Baroda's loan to EIML] was generated and *sent to the EIML office, and Parameswaran and the Lullas were notified at EIML*[.]"

¶¶ 170-72 (emphasis added).  These two allegations about Parameswaran are implausible and lack any credibility, and Plaintiffs provide no corroborative facts to cure these defects.

As an initial matter, CW 7's statement that "Parameswaran and the Lullas were notified at EIML" is implausible on its face, as Parameswaran was never employed by EIML and could not have been "notified" there.  Plaintiffs also fail to provide any clarity regarding how CW 7 supposedly came to learn this information.  Notably, the TAC does not allege that CW 7 had any involvement in Bank of Baroda's loan to EIML, or that CW 7 had any direct contact with Parameswaran.  ¶¶ 12, 170-72.  Nor do Plaintiffs allege that CW 7 was the sender or recipient of any quarterly report that was purportedly distributed to Parameswaran, or even that CW 7 saw such reports firsthand.  Instead, Plaintiffs ask the Court to fill in these pleading deficiencies itself and to assume that CW 7 learned this information from some *other* unnamed individual at Bank of Baroda, or from some even more distant source.

Remarkably, Plaintiffs attribute a statement to CW 6—supposedly an accountant who worked on EIML's statutory audits in 2017 and 2018—that completely undermines CW 7's assertions about Parameswaran and confirms the reality that he had no role in EIML's financial operations.  CW 6 does not even mention Parameswaran when he addresses EIML's purported management and financial team, and instead claims that only defendant Lulla (EIML's Executive

10

Director), Sunil Lulla (EIML's Vice Chair and Managing Director), and Farokh Gandhi (EIML's CFO) would have been notified about certain so-called "financial concerns" and "bank penalty notifications" relating to EIML. ¶ 167-68. While CW 6's allegations are deficient and implausible for other reasons (as set forth in the Company Brief), it is telling that even he does not attempt to draw a threadbare connection between Parameswaran and EIML.

Accordingly, the Court should find that CW 7's statements about Parameswaran fail to raise a strong inference of scienter.

### 2.    Statements Regarding Eros's Financial Health

Plaintiffs also fail to plead any specific facts that raise a strong inference of scienter with respect to Parameswaran's representations that Eros had a "conservative" balance sheet and that its outlook was "strong" during the Class Period. *See, e.g.*, ¶¶ 229, 280. Instead, Plaintiffs rely upon confidential witness statements and the later impairments of Eros's intangible assets, the loan default by EIML, and risks resulting from each of those disclosures.

The Court previously rejected Plaintiffs' scienter allegations as to nearly all of these alleged misstatements, noting that they did not "establish that any of the Individual Defendants had knowledge that contradicted the statements that Eros' financial profile was strong before the CARE credit rating downgrade." *In re Eros*, 2021 WL 1560728, at *13. The TAC does not cure these issues with respect to Parameswaran. Critically, as discussed above, all of the events to which Plaintiffs point arose from the financial reporting of EIML and other Eros subsidiaries, and Plaintiffs do not allege that Parameswaran had specific knowledge or responsibilities for these subsidiaries' issues at the time he made the alleged misstatements about Eros.

Apparently, the best "evidence" Plaintiffs could find to establish such a link were a series of articles on Bollywood-focused gossip rags which describe payroll problems at EIML in 2021.

11

*See* ¶¶ 156-62.[11]  These have no bearing on Parameswaran's scienter since they were published almost *a year after* Parameswaran's last alleged misstatement and Eros's merger with STX, at which point Parameswaran no longer was CFO.  *See* ¶¶ 53, 331-32, 337, 339.  In any event, to the extent Plaintiffs claim the articles' discussion of past problems at EIML somehow could be construed to impute knowledge to Parameswaran, none of these articles mention him, nor do Plaintiffs allege that he ever saw a single one of these articles.

The Third Circuit recently confirmed that these facts alone are enough to discount scienter allegations related to the articles entirely.  For example, in *Christian v. BT Group Plc*, Judge McNulty held that news articles from *Reuters*, "a reputable newsgathering organization," did not impute knowledge of their contents onto company executives, absent allegations that they "ever accessed or reviewed the *Reuters* article or the information cited in it."  2020 WL 1969941, at *6 (D.N.J. Apr. 24, 2020), *aff'd sub nom. Pamcah-UA Loc. 675 Pension Fund v. BT Grp. Plc*, 2021 WL 3415060, at *2 (3d Cir. Aug. 5, 2021) (similar).  Thus, Plaintiffs' selected articles from Indian publications—which are far less credible than *Reuters*—do not raise a strong inference that Parameswaran knew about the alleged financial difficulties at EIML.

Parameswaran's generic statements post-dating the downgrade of EIML are also not actionable as there is no suggestion that he subjectively disbelieved those statements.  In particular, days after the downgrade, Parameswaran again described Eros's "strong liquidity profile and healthy balance sheet," ¶ 285, and later described Eros's "conservative balance sheet."  ¶ 324.  But the EIML downgrade does not demonstrate why those opinions were false, nor speak to Parameswaran's view of Eros as a going concern.  In fact, Plaintiffs' allegations are

---

[11] *See* Exs. 8-11.

contradicted by the TAC's recognition that Eros resolved the outstanding debt payments that gave rise to the downgrade just a few weeks later.  ¶¶ 289, 308, 315.

In short, Plaintiffs have failed to allege any information Parameswaran ignored regarding Eros's financial condition and do not contend with the information that contradicts any inference of recklessness following EIML's credit downgrade.  Thus, Plaintiffs have failed to allege scienter for Parameswaran's generic statements about Eros's financial profile.

### 3.    Statements Regarding Eros's Revenues and Receivables

The TAC alleges for the first time that Parameswaran is also liable for signing Eros's year-end financials for fiscal 2020 because they allegedly misrepresented the value of Eros's revenue and trade receivables.  Plaintiffs' scienter allegations against Parameswaran on these issues are threadbare, and rely principally on a Form 12b-25 and Form 6-K filed with the SEC in August 2021, which state that Eros's "Audit Committee is conducting a formal internal review of certain accounting practices and internal controls *related to its Eros subsidiaries*."  ¶¶ 34, 140-42, 147.[12]  Other than speculating about the import of these disclosures, Plaintiffs do not allege any contemporaneous facts suggesting Parameswaran knew that Eros's Form 20-F for fiscal 2020 contained any alleged misstatements at the time it was filed with the SEC.

Parameswaran incorporates by reference the arguments set forth in the Company Brief regarding the preliminary nature of the internal review referenced in these SEC filings and the lack of any conclusive evidence therein that raises a strong inference of scienter.

Moreover, the plain text of these disclosures confirms that the Audit Committee's review pertains to "certain accounting practices and internal controls *related to its Eros subsidiaries*." As set forth at length above, Parameswaran was never employed by EIML (nor any other Eros

---

[12] Ex. 12 (Form 12b-25, filed August 3, 2021); Ex. 14 (Form 6-K, filed August 25, 2021).

13

subsidiary), had no responsibility over their financial reporting or day-to-day management, and had no involvement in their annual audits. Accordingly, these disclosures do not raise a strong inference of scienter with respect to Parameswaran.

*BT Group* is an apt comparison for this case. There, the plaintiffs asserted securities fraud claims against a British parent company's executives based on alleged accounting improprieties stemming from the company's large Italian subsidiary. *BT Group*, 2020 WL 1969941, at *2. Plaintiffs claimed that the parent company's executives must have been aware of the wrongdoing because certain transactions were "verified and authorized" by the parent company, because of articles written about the subsidiary's issues, and because of criminal and civil investigations of the Italian subsidiary. *Id.* at *5-8. The *BT Group* court held that none of these allegations, even together, established scienter. *Id.* at *4. The Court should reach the same conclusion here, as Plaintiffs do not plead that Parameswaran was responsible for the financial statements of EIML or any other Eros subsidiary or that he was knowledgeable about specific items in those companies' separately prepared and audited financial statements.

### 4.       Parameswaran's Sarbanes-Oxley Certifications

The Court found that Parameswaran's SOX certifications failed to raise a strong inference of scienter. *In re Eros*, 2021 WL 1560728, at *9. As the Court previously noted, Parameswaran's signing of SOX certifications could be actionable only if Plaintiffs alleged that he "knew or consciously avoided any meaningful exposure to the information that was rendering their Sarbanes-Oxley certification erroneous." *In re Eros*, 2021 WL 1560728, at *9 (quoting *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 417-18 (D. Del. 2009)). Plaintiffs have failed to do so in all their pleading attempts. In the Original Complaint, Plaintiffs included only Parameswaran's SOX certifications from 2017 and 2018, but pointed to information from 2019 and later to show Parameswaran's alleged recklessness. *Id.* at *9-10.

14

The Court held that was insufficient, and Plaintiffs have not added a single new allegation reflecting information that Parameswaran should have reviewed at the time he signed those SOX certifications. Thus, the Court should again decline to draw a strong inference of scienter from Parameswaran's 2017 and 2018 SOX certifications.

The TAC also tries to allege Parameswaran's scienter as to newly-pleaded SOX certifications from 2019 and 2020, claiming that he recklessly disregarded: (i) a statement by Moody's following the EIML credit downgrade calling the Company's internal controls "poor" in connection with EIML's debt issues; and (ii) a statement defendant Lulla made during an investor call stating that the Company was "just observing" its internal controls to prevent financial issues. ¶¶ 108, 119. Plaintiffs' suggestion that Parameswaran recklessly disregarded these purported issues is entirely speculative. In fact, the TAC's discussion of these two items entirely ignores that Eros's Form 20-Fs for fiscal 2019 and 2020 proactively disclosed certain weaknesses in Eros's internal controls. Ex. 1 (2020 Form 20-F) at 138-39; Ex. 2 (2019 Form 20-F) at 120-21. Plaintiffs do not and cannot explain how these statements somehow should put Parameswaran on notice to disclose additional weaknesses, or how investors were not otherwise on notice of the alleged insufficiencies. *See, e.g.*, *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 168-169 (3d Cir. 2014) (noting that statements must be misleading "in the full context of the documents of which they are part" and not in isolation or based on a "selective reading.").

### 5.    Statements Concerning the EIML Ratings Downgrade

Plaintiffs newly claim that Parameswaran willfully made two false statements related to Eros's response to CARE's downgrade of EIML's credit rating. *See* ¶¶ 308, 315. Plaintiffs allege in an entirely conclusory fashion that Parameswaran actually lied to the market when he stated that Eros was working with CARE to reverse the downgrade since the Company was not in fact working with CARE. *See* ¶¶ 311, 319. Not so. As discussed below in Section II.D,

15

Plaintiffs' supposition that these statements were false is not supported by the allegations in the TAC, which draw only on an unreliable confidential witness, and a statement from CARE, *nearly a year after the statements were made*. *See* ¶¶ 131, 164.  Because Plaintiffs cannot establish the falsity of these statements, they certainly cannot allege that Parameswaran was somehow recklessly unaware of their falsity when he made them.

### 6.    Statements Regarding Eros's Intangible Asset Values

The Court previously held that Plaintiffs failed to raise a strong inference of scienter with respect to Parameswaran's statements about Eros's intangible asset valuations because they did not "adequately allege that the Eros' impairment should have been taken earlier, that the need for the impairment was obvious, or that Eros only took the impairment due to outside pressure." *In re Eros*, 2021 WL 1560728, at *13.  The TAC does not come close to curing these defects.[13]

Courts have consistently rejected similar scienter arguments, finding that, absent specific information, an allegation that a company failed to take an impairment charge during a prior reporting period constitutes nothing more than non-actionable fraud-by-hindsight, even if the impairment charge was extremely large.  *See, e.g.*, *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 558 (D.N.J. 2010) (over $240 million combined impairment charges); *Finger v. Pearson PLC*, 2019 WL 10632904, at *13 (S.D.N.Y. Sept. 16, 2019) (£2.5 billion impairment charge); *In re Radian Sec. Litig.*, 612 F. Supp. 2d 594, 615 (E.D. Pa. 2009) (up to $500 million in impairment charges).

---

[13] Additionally, as noted above, the intangible assets that became impaired in 2019 and 2020 were nearly entirely held by Eros subsidiaries that had separately prepared and audited financial statements for which Parameswaran was not responsible, most notably EIML. Ex. 1 (2020 Form 20-F) at F-28; Ex. 2 (2019 Form 20-F) at F-24.  Plaintiffs make no effort to explain why reliance on those statements is unreasonable or rises to the level of scienter. *Cf. In re Ikon Off. Sols., Inc.*, 277 F.3d 658, 669 (3d Cir. 2002) (finding a firm's ignoring "red flags" insufficient to allege scienter where the decision was endorsed by a separate auditing firm).

Here, Plaintiffs allege that certain purported "indicators" of impairment may have existed as early as the beginning of the Class Period and that Parameswaran ignored them in refusing to take an impairment charge earlier.   ¶¶ 189-92.  But they do not allege that all of the relevant "indicators" existed earlier.  Plaintiffs only point to Eros's market capitalization and carrying value of its net assets, just two of the metrics Parameswaran stated that he considered in connection with the decision to conduct an impairment analysis.[14]  *See* ¶¶ 189-92.  But Plaintiffs ignore that the decisions to undergo an impairment analysis in 2019 and 2020—which resulted from the Company's regular annual processes—were based on numerous additional variables, including "market conditions."  ¶¶ 116-17.  Plaintiffs do not allege that these other "indicators" existed at the beginning of the Class Period, and, as a result, cannot argue that Parameswaran knew or recklessly disregarded them.

### C.    Parameswaran's Position as CFO Does Not Add to the Scienter Analysis

To the extent that Plaintiffs suggest that Parameswaran acted with scienter because he must have known about the issues by virtue of his position as CFO, they are wrong.  Courts routinely rule that these kind of conclusory allegations are insufficient to support a finding of scienter.  *Advanta*, 180 F.3d at 539 ("It is well established that a pleading of scienter may not rest on a bare inference that a defendant 'must have had' knowledge of the facts." (citations and quotation marks omitted)); *Fain v. USA Techs., Inc.*, 707 F. App'x 91, 96 (3d Cir. 2017) (noting "the difficulty of establishing a 'they-must-have-known' type inference" and that allegations that "Defendants were in top positions at [the company], alone, is not enough"); *In re Exxon Mobil*

---

[14] As Plaintiffs acknowledge, Eros clearly disclosed in its financial statements that an impairment analysis could be triggered by "a significant planned restructuring, a major change in market conditions or technology, reduction in market capitalization, expectations of future operating losses, or negative cash flows."  ¶ 116.

*Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 430 (D.N.J. 2005) ("[A]llegations that a defendant, by virtue of his position within a company, must have known about the alleged fraud have been deemed conclusory and inadequate to withstand Rule 9(b) scrutiny and the heightened pleading requirements of the PSLRA.").

> **D.    Plaintiffs' Scienter Allegations Are Not Rescued by Plaintiffs' False Suggestion that Parameswaran Was Terminated by ErosSTX**

As a last ditch effort to raise a strong inference of Parameswaran's scienter, Plaintiffs lodge a baseless attack that Parameswaran's absence from ErosSTX's website suggests that he was "terminated or otherwise placed on leave in connection with the ErosSTX investigation into Eros's accounting." ¶¶ 393-97.  This conjecture is false.  Parameswaran has never been terminated or placed on leave and, as of this date, has been employed continuously by the Company since 2015.  This allegation also glosses over the fact that this accounting review relates to Eros subsidiaries.  *See* Ex. 12 (Form 12b-25); Ex. 13 (Form 6-K); Ex. 14 (Form 6-K). These spurious allegations, which, even if true, would post-date every alleged misstatement in the TAC by a year, do nothing to aid Plaintiffs' scienter allegations against Parameswaran.[15]

## II.    PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE MATERIAL MISSTATEMENTS BY PARAMESWARAN

Even if the Court finds Plaintiffs' theories of scienter sufficient, Plaintiffs' claims also fail because they do not plead the requisite "false representation[s] of material fact or omission[s]" to state a claim under Section 10(b).  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314,

---

[15] Nevertheless, "for a resignation to add to an inference of scienter, a pleading must set forth allegations suggesting a compelling inference that the resignation was the result of something other than 'the reasonable assumption that the resignation occurred as a result of' the release of bad news." *In re Hertz Glob. Holdings Inc*, 905 F.3d 106, 118 (3d Cir. 2018) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009)).  No such allegations are present here, nor could there be given Parameswaran's ongoing employment.

1330 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1419 (3d Cir. 1997)).  A misstatement is actionable only if it is material—*i.e.*, if it "significantly altered the 'total mix' of information made available" to the market.  *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 283 (3d Cir. 2010).  In order to survive a motion to dismiss, a plaintiff must show that the statements were materially false and misleading "in the full context of the documents of which they are part" and not in isolation or based on a "selective reading."  *Pfizer, Inc.*, 754 F.3d at 168-69 (citations omitted).

### A.    Statements About Eros's Financial Condition

The Court previously found that Plaintiffs alleged viable misstatements (albeit without adequately alleging scienter) relating to Parameswaran's generic assertions regarding Eros's financial profile.  *In re Eros*, 2021 WL 1560728, at *7.  In so holding, the Court stated that "questions of materiality have traditionally been viewed as particularly appropriate for the trier of fact."  *Id*. (quoting *In re Aetna*, 617 F.3d at 283).  Parameswaran, however, respectfully requests that the Court revisit that conclusion here if the Court finds that Plaintiffs have alleged scienter with respect to these statements.

As noted below, these types of generic statements about a company's financial condition are quintessential examples of inactionable puffery that courts around the country routinely deem immaterial in connection with a motion to dismiss.  A ruling on that now will allow Parameswaran to avoid the burdensome costs and obligations of discovery—and the Court to avoid wasting future judicial resources.  *See Tellabs, Inc.*, 551 U.S. at 313 (noting that the PSLRA was aimed at the "goal of curbing securities litigation that "impose[s] substantial costs on companies and individuals whose conduct conforms to the law.").

"[S]tatements of subjective analysis or extrapolations, such as opinions, motives and intentions, and general statements of optimism . . . constitute no more than 'puffery' and are

understood by reasonable investors as such." *In re Aetna,* 617 F.3d at 283 (cleaned up).  These generalized statements, "even if arguably misleading . . . are not material[.]"  *Advanta*, 180 F.3d at 538-39.  The TAC alleges numerous statements between 2017 and 2019, before CARE's downgrade of EIML, where Parameswaran shared his view with investors that Eros had a "conservative," "healthy," and "strong" balance sheet, that the Company was "well-capitalized" for future growth, and that the Company had a "strong liquidity position."  *See, e.g.*, ¶¶ 222, 229, 240, 285.  Courts in this Circuit agree that descriptions using words like "strong" or "conservative," absent accompanying specific information that is false, are immaterial and subject to dismissal because they cannot be proven false, and because those words do not put into play any other information about a company.  *See, e.g.*, *In re Hertz Global Holdings, Inc.*, 2017 WL 1536223, at *10 (D.N.J. Apr. 27, 2017) ("The Court agrees that statements about 'strong' and 'record' financial results, as well as the generally optimistic statements, constitute puffery."), *aff'd,* 905 F.3d 106 (3d Cir. 2018); *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2018 WL 3772675, at *21 (D.N.J. Aug. 8, 2018) ("strong presence," "sustained strength," and "solid performance," among others, are inactionable statements of puffery).[16]

Even when Parameswaran used a specific accounting phrase like "well-capitalized," it is still not actionable under Section 10(b) without specific allegations about what figures were calculated incorrectly.  *See, e.g.*, *City of Monroe Emps' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 2011 WL 4357368, at *15 (S.D.N.Y. Sept. 19, 2011) ("well-capitalized" not materially misleading absent specific allegations of the company's capitalization rate and what was

---

[16] *See also Se. Pennsylvania Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at *39 (M.D. Pa. June 22, 2015) ("strong financial performance mixed with conservative lending practices" is non-actionable puffery and collecting cases); *In re Omega Healthcare Invs., Inc. Sec. Litig.*, 2021 WL 4443562, at *9 (S.D.N.Y. Sept. 28, 2021) ("conservative balance sheet" not materially misleading because it does not put "in play" any other information to be disclosed).

improperly calculated). Because the statements in the TAC are non-actionable under this weight of precedent, the Court should hold at this stage that Parameswaran's generic statements about Eros's financial profile are non-actionable.[17]

### B. Eros's Valuation of Assets and Financial Statements

If the Court determines that Plaintiffs adequately alleged scienter, it should also revisit its finding that Parameswaran's signing of Eros's financial statements, which contained valuations of its intangible assets, are actionable. *In re Eros*, 2021 WL 1560728, at \*7-9. As this Court recognized, intangible assets like Eros's valuation of its film rights, are inherently subjective opinions based on the Company's interpretation of complex accounting rules. *Id*. at \*8 (citing *In re Hertz*, 2017 WL 1536223, at \*11). To adequately plead a securities fraud claim based on opinions, a plaintiff must show that the speaker did "not honestly believe[]" them. *See Pfizer, Inc.*, 754 F.3d at 170. In other words, Plaintiffs must plead facts demonstrating that Parameswaran subjectively believed that the valuations were incorrect. *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at \*7 (E.D.N.Y. Aug. 6, 2019).

The TAC's allegations against Parameswaran do not come close to meeting this exacting standard.[18] In particular, Plaintiffs do not and cannot plead that Parameswaran harbored any

---

[17] One of the new statements Plaintiffs added in the TAC also must be dismissed as forward-looking. Specifically, Plaintiffs allege that on March 10, 2020 at an industry conference, Parameswaran stated, "we [Eros] have declining leverage, and *we'll continue* to delever the balance sheet and *have a very conservative balance sheet*." ¶ 324 (emphasis in original). Plaintiffs allege this statement was false only because Parameswaran should have been aware of facts that later lead to an impairment of Eros's assets and because the Company's financial position was materially weaker than represented. *See* ¶ 325. In other words, Plaintiffs do not explain why the "declining leverage" portion is false. What Plaintiffs instead focus on is a forward-looking statement of future financial performance that is non-actionable as a matter of law because it was accompanied by "meaningful cautionary language." *See Avaya*, 564 F.3d at 254-55; Ex. 15 (March 10 Presentation Slides) at 35.

[18] In its previous opinion, the Court analyzed these opinion statements under both the *Pfizer* standard announced by the Third Circuit and the standard set out by the Supreme Court for

21

doubts about the related-party transactions that Plaintiffs suggest inflated Eros's assets.  In fact, the economics of these related-party transactions were fully disclosed to the market in the Company's financial statements, including the exact amount spent on the transactions.  Ex. 1 (2020 Form 20-F) at F-54; Ex. 2 (2019 Form 20-F) at F-52; Ex. 3 (2018 Form 20-F) at F-48.

Accordingly, based on these disclosures and Parameswaran's demonstrated lack of anything resembling fraudulent intent, the Court should find that he is not subject to liability under Section 10(b) for opinion statements of the Company's intangible asset balances.[19]

### C.      Certifications Pursuant to the Sarbanes-Oxley Act

Previously, the Court dismissed all of the SOX certification statements that Plaintiffs alleged as non-actionable because Plaintiffs could not show that Parameswaran "knew or consciously avoided any meaningful exposure to the information that was rendering their Sarbanes-Oxley certification erroneous."  *In re Eros*, 2021 WL 1560728, at *9 (quoting *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 417-18 (D. Del. 2009)).

As discussed in Section I.B.4, above, Plaintiffs still cannot make that showing, as they have added no facts to disprove Parameswaran's SOX certifications and because the facts alleged do not establish that he "knew or consciously avoided . . . exposure to the information . . . rendering [his] certification erroneous."  *Id*. at *9.  For the same reasons, as the Court previously held, Parameswaran's SOX certifications are not actionable.

---

Securities Act claims in *Omnicare v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015), which the Third Circuit has not yet applied to Exchange Act claims. *See In re Eros*, 2021 WL 1560728, at *8.  Cognizant of that conclusion, Parameswaran utilizes the *Pfizer* standard here, but incorporates the arguments made by Eros and the other defendants regarding *Omnicare*.  *See* Company Brief Section I.A.2.

[19] As discussed in the Company Brief, the Company's revenue and receivables balances also are not actionable because the Forms 12b-25 and 6-K on which Plaintiffs rely upon to infer their falsity only describe preliminary and non-final results of the Audit Committee review.  *See* Company Brief Section I.B.1.

### D.    Statements Relating to the EIML Rating Downgrade

Plaintiffs' newly-alleged statements related to the CARE downgrade are not actionable because Plaintiffs cannot establish their falsity. As discussed, each of these statements include that Eros was working with CARE to reverse the downgrade and that the Company was in compliance with all debt commitments and creditors. *See* ¶¶ 308, 315.

First, Plaintiffs claim that Parameswaran's statements about CARE were false because they purportedly failed to disclose that the Company was not, in fact, working with CARE. *See* ¶¶ 311, 319. However, Plaintiffs premise this conclusory assertion on CW 5, who the Court previously found was unreliable. *In re Eros*, 2021 WL 1560728, at *10. As set forth in the Company Brief, Plaintiffs do not cure these defects, and the Court once again should "question[] CW 5's reliability and basis of knowledge, and discount[] CW 5's allegations." *Id.* at *10.

Second, Plaintiffs allege that CARE itself contradicted Parameswaran's statements by saying, a year after the alleged misstatements were made, that EIML was "not cooperating" with their questions. *See* ¶¶ 131, 164. Notably, however, the CARE press release in question was issued on September 25, 2020, almost a year *after* Parameswaran's alleged misstatements were made. *Compare* ¶¶ 308, 315 *with* ¶ 131. Consistent with the Court's prior reasoning, "statements and events that occurred a year later fail to demonstrate that earlier statements were false when made." *In re Eros*, 2021 WL 1560728, at *10.[20]

*        *        *

For all of the reasons set forth above, Plaintiffs fail to raise a strong inference that Parameswaran knowingly or recklessly made any actionable false statements during the Class

---

[20] As noted in the Company Brief, there is also an innocent explanation for EIML's non-cooperation with CARE in 2020, namely that EIML had withdrawn CARE's mandate to rate EIML's creditworthiness. *See* Company Brief Section I.A.1.

23

Period.[21]  Accordingly, Plaintiffs' claims against Parameswaran under Section 10(b) should be dismissed, with prejudice, in their entirety. [22]

### III.    PLAINTIFFS' SECTION 20(A) CLAIM AGAINST PARAMESWARAN SHOULD BE DISMISSED

Plaintiffs also assert a claim under Section 20(a) for control person liability claim against Parameswaran.[23]  The Court should dismiss this claim because the TAC alleges repeatedly that Eros and its subsidiaries are "tightly controlled" by the Lulla family and does not provide any particularized facts to show that Parameswaran exercised actual control over Eros or "culpably participated" in the alleged fraud.  *See Cognizant*, 2018 WL 3772675, at *35 (dismissing Section 20(a) claim on the ground that individual defendants were not "culpable participants"); *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 415 (S.D.N.Y. 2010) ("[T]he plaintiff must assert that the defendant exercised actual control over the matters at issue.").

Even if the Court does not dismiss the Section 10(b) claim against Eros, Plaintiffs "must assert that [Parameswaran] exercised actual control over the matters at issue" in order to sustain their Section 20(a) claim.  *See Fannie Mae 2008*, 742 F. Supp. 2d at 415 (dismissing the Section 20(a) claim against CFOs for failure to plead culpable participation in the transaction).

Indeed, executive status alone, including that of a CFO, is not sufficient.  *See In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *29 (E.D.N.Y. Sept. 27, 2019).  Here, the only paragraph alleging Parameswaran's control over Eros is a boilerplate recitation which Plaintiffs

---

[21] Even if the Court finds that Plaintiffs have alleged false statements, claims related to two of them (¶¶ 296, 308) must be dismissed because these statements are misattributed to Parameswaran.

[22] Parameswaran also adopts the arguments in the Company Brief regarding loss causation.

[23] To the extent the Court dismisses the Section 10(b) claim against the Company, this claim against Parameswaran also must be dismissed.  *In re Hertz*, 905 F.3d at 121 n.6 (Section 20(a) claim "is dependent on a Section 10(b) violation.").

repeat for each individual defendant. *See* ¶ 54 ("Parameswaran possessed the power and authority to control the contents of the Company's public filings with the SEC."). Tellingly, the TAC is entirely silent on how Parameswaran exercised control over EIML or any other Eros subsidiary, or culpably participated in any alleged misconduct.

Absent any allegations that Parameswaran exercised actual control over Eros, or culpably participated in the alleged fraud, the Section 20(a) claim against him must be dismissed.

<u>**CONCLUSION**</u>

For the foregoing reasons, Parameswaran respectfully requests that the Court dismiss, with prejudice, each of the claims asserted against him.

Dated:   New York, New York          Respectfully submitted,
        March 4, 2022

                                   */s/Stephen W. Tountas*
                                 Stephen W. Tountas
                                 **KASOWITZ BENSON TORRES LLP**
                                 One Gateway Center, Suite 2600
                                 Newark, NJ 07102
                                 Tel.: (973) 645-9462
                                 Fax: (973) 643-2030
                                 stountas@kasowitz.com

                                 -and-

                                 Andrew L. Schwartz
                                 Claiborne R. Hane
                                 Andrew W. Breland
                                 1633 Broadway
                                 New York, New York 10019
                                 Tel.: (212) 506-1969
                                 Fax: (212) 500-3469
                                 aschwartz@kasowitz.com
                                 chane@kasowitz.com
                                 abreland@kasowitz.com

                                 *Counsel for Defendant Prem Parameswaran*