# EXHIBIT 4



November 23, 2020

The Secretary
BSE Limited
Pheeroze Jeejeebhoy Towers,
Dalal Street, Fort,
Mumbai – 400 001
**Scrip Code: 533261**

The Secretary
National Stock Exchange of India Limited
Exchange Plaza, 5th Floor
Plot No- 'C' Block, G Block
Bandra-Kurla Complex, Bandra (E)
Mumbai-400051
**Scrip Code: EROSMEDIA**

**SUB: <u>Submission of Annual Report for the financial year 2019-20</u>**

Dear Sir/Madam,

Pursuant to Regulation 34 of SEBI (Listing Obligations and Disclosure Requirements) Regulations 2015, we are submitting herewith the Annual Report of the Company for the financial year 2019-20 along with the Notice of 26th Annual General Meeting of the Company to be held on Tuesday, December 15, 2020 at 3:00 p.m. through Video Conferencing ("VC")/ Other Audio Video Means ("OAVM").

The Annual Report and the Notice of 26th Annual General Meeting are also available on the website of the Company at <u>www.erosstx.com.</u>

Kindly take the same on records.

Thanking you,

Yours faithfully,
**For Eros International Media Limited**

**Vijay Thaker**
**Vice President - Company Secretary & Compliance Officer**

*Encl: As above*

**EROS INTERNATIONAL MEDIA LIMITED**
Corporate Office: 9th Floor, Supreme Chambers, Off Veera Desai Road, Andheri (W), Mumbai - 400 053.
Tel.: +91-22-6602 1500   Fax: +91-22-6602 1540   E-mail: eros@erosintl.com   •   www.erosplc.com
Regd. Office: 201, 2nd Floor, Kailash Plaza, Plot No. A-12, Off New Link Road, Andheri (W), Mumbai - 400053.
CIN No. L99999MH1994PLC080502



# EROS INTERNATIONAL MEDIA LIMITED

ANNUAL REPORT 2019-20

# Contents

## Corporate Overview

Board of Directors                                                                                02

## Management Reports

Management Discussion and Analysis                                                               04

Directors' Report                                                                                07

Corporate Governance Report                                                                       34

## Financial Statements

Standalone Financial Statements                                                                   47

Consolidated Financial Statements                                                                 97

## Notice

Notice to the AGM                                                                                144

FORWARD-LOOKING STATEMENTS

Certain statements in this report concerning the future growth prospects are forward-looking statements, which involve a number of risks and uncertainties that could cause actual results to differ materially from those in such forward-looking statements. In some cases, these forward-looking statements can be identified by the use of forward-looking terminology, including the terms "believes", "estimates", "forecasts", "plans", "prepares", "projects", "anticipates", "expects", "intends", "may", "will" or "should" or, in each case, their negative or other variations or comparable terminology, or by discussions of strategy, plans, objectives, goals, future events or intentions. These forward-looking statements include all matters that are not historical facts. They appear in a number of places throughout this report and include, but are not limited to, statements regarding the Company's intentions, beliefs or current expectations concerning, among other things, the Company's results of operations, financial condition, liquidity, prospects, growth, strategies, business development, the markets in which the Company operates, expected changes in the Company's margins, certain cost or expense items as a percentage of the Company's revenues, the Company's relationships with theater operators and industry participants, the Company's ability to source film content, the completion or release of the Company's films and the popularity thereof, the Company's ability to maintain and acquire rights to film content, the Company's dependence on the Indian box office success of its films, the Company's ability to recoup box office revenues, the Company's ability to compete in the Indian film industry, the Company's ability to protect its intellectual property rights and its ability to respond to technological changes, the Company's contingent liabilities, general economic and political conditions in India, including fiscal policy and regulatory changes in the Indian film industry. By their nature, forward-looking statements involve known and unknown risk and uncertainty because they relate to future events and circumstances. The forward-looking statements speak only as of the date they are made and are not guarantees of future performance and the actual results of the Company's operations, financial condition and liquidity, and the development of the markets and the industry in which the Company operates may differ materially from those described in, or suggested by, the forward-looking statements contained in these materials. The forward-looking statements in this report are made only as of the date hereof and the Company undertakes no obligation to update or revise any forward-looking statement, whether as a result of current or future events or otherwise, except as required by law or applicable rules.

# CORPORATE INFORMATION

## Board of Directors

**Mr. Dhirendra Swarup**
Non-Executive Chairman & Independent Director
DIN: 02878434

**Mr. Sunil Arjan Lulla**
Executive Vice Chairman & Managing Director
DIN: 00243191

**Mr. Kishore Arjan Lulla**
Executive Director
DIN: 02303295

**Ms. Bindu Saxena**[1]
Non-Executive Independent Director
DIN: 00167802

**Mr. Sunil Srivastav**
Non-Executive Independent Director
DIN: 00237561

**Mr. S. Lakshminarayanan**[2]
Non-Executive Independent Director
DIN: 07972480

**Mr. Rakesh Sood**[3]
Non-Executive Independent Director
DIN: 07170411

**Mr. Farokh P. Gandhi**[4]
Executive Director & Group Chief Financial Officer (India)
DIN: 03112612

## Chief Executive Officer (India)
Mr. Pradeep Dwivedi[5]

## Vice President – Company Secretary & Compliance Officer
Mr. Vijay Thaker[6]

## Statutory Auditors
Chaturvedi and Shah LLP
Chartered Accountants
(Firm Registration No. 101720W/W100355)

## Corporate Identification Number (CIN)
L99999MH1994PLC080502

## Bankers
IDBI Bank Limited (Lead Bank)
Bank of Baroda
Punjab National Bank
Oriental Bank of Commerce*
Indian Overseas Bank
Union Bank of India
State Bank of India
*Oriental Bank of Commerce was merged with Punjab National Bank w.e.f. 1 April 2020*

## Corporate Office
901/902, Supreme Chambers,
Off. Veera Desai Road,
Andheri West,
Mumbai - 400 053
Maharashtra (India)
Tel: +91 22 66021500; Fax: +91 22 66021540
Email: compliance.officer@erosintl.com
Website: www.erosstx.com

## Registered Office
201, Kailash Plaza,
Opp Laxmi Industrial Estate,
Off Andheri Link Road,
Andheri West, Mumbai 400053
Maharashtra (India)

## Registrar and Share Transfer Agent
Link Intime India Private Limited
Unit: Eros International Media Limited
C 101, 247 Park,
LBS Marg, Vikhroli West,
Mumbai 400 083
Maharashtra (India)
CIN: U67190MH1999PTC118368
Tel: +91 22 4918 6270; Fax: +91 22 4918 6060
E-mail: rnt.helpdesk@linkintime.co.in,
mumbai@linkintime.co.in
Website: www.linkintime.co.in

---

[1]  *Ms. Bindu Saxena was appointed as Non-Executive Independent Director of the Company w.e.f. 26 September 2019.*

[2]  *Mr. S. Lakshminarayanan ceased to be a Director of the Company w.e.f. 20 June 2020.*

[3]  *Mr. Rakesh Sood ceased to be a Director on completion of his first term of five years from the Board and its Committees w.e.f. 6 October 2020*

[4]  *Mr. Farokh P. Gandhi Company's Chief Financial Officer was appointed as Executive Director of the Company  w.e.f. 9  November 2020*

[5]  *Mr. Pradeep Dwivedi was appointed as Chief Executive Officer (India) w.e.f. 10 February 2020.*

[6]  *Mr. Vijay Thaker was appointed as Vice President – Company Secretary & Compliance Officer w.e.f. 13 August 2019 in place of Mr. Abhishekh Kanoi who has tendered his resignation w.e.f. close of business hours of 12 August 2019.*

# Board of Directors



**Mr. Dhirendra Swarup**
*Non-Executive Chairman, Independent*

A government-certified accountant and a member of the Institute of Public Auditors of India, Mr. Swarup holds a post-graduate degree in humanities. A career bureaucrat, he retired as Secretary of Ministry of Finance, Government of India in 2005. He possesses a vast experience of 45 years in the finance sector and has also worked in the UK, Turkey and Georgia. He was the Chairman of Financial Sector Redress Agency and is also on the Board of several listed companies besides acting as a member and the Chairman of several committees. In the past, he has held many key positions and responsibilities like being a member of the Board of the SEBI, a member of the Permanent High-level Committee on Financial Markets, Chairman of the Pension Funds Regulatory Authority, Chief of the Budget Bureau of the Government of India, a member secretary of the Financial Sector Reforms Commission, Chairman of Public Debt Management Authority Task Force, Vice-Chairman of the International Network on Financial Education of OECD.



**Mr. Sunil Arjan Lulla**
*Executive Vice Chairman & Managing Director*

Mr. Lulla holds a commerce degree from the University of Mumbai. Possessing an expansive 26 year long experience in the Media & Entertainment industry, he has been associated with Eros since its inception. He led the Company's growth within India for many years before being appointed Executive Vice Chairman & Managing Director of Eros India on 28 September 2009. Mr. Lulla was reappointed to the same position on 3 September 2015 for another period of five years. During his stint, he has contributed tremendously in developing and expanding the Company's business in India. Under his able leadership, the Company continued to achieve milestones. He has been instrumental in developing the Company's distribution business along with its home entertainment and music segments.



**Mr. Kishore Arjan Lulla**
*Executive Director*

The Executive Chairman and Group Chief Executive Officer of our parent Company, Eros International Plc., Mr. Lulla holds a bachelor's degree in Arts from Mumbai University. Possessing a rich experience of over 36 years in the filmed entertainment and media industry, he is a member of the British Academy of Film and Television Arts and Young Presidents' Organization besides serving on the board of the School of Film at the University of California, Los Angeles. Mr. Kishore Arjan Lulla has been instrumental in expanding the Company's presence in the United Kingdom, the U.S., Dubai, Australia, Fiji and other international markets. He is responsible for taking the Indian film industry to the global arena. A recipient of the 'Asian Business Awards' 2007, the 'Indian Film Academy Awards' 2007, and 'Entrepreneur of the Year' 2010, 'Global Citizenship Award' 2014, 'Entertainment Visionary Award' 2015, he has also featured on the 'Best under a Billion' 2014 list of Forbes Asia and got invited to attend the "billionaires' summer camp" in the Sun Valley.



**Mr. S. Lakshminarayanan**
*Non-Executive, Independent\**

Mr. Lakshminarayanan joined the Indian Audit and Accounts service in 1965. After holding various positions in the Audit and Accounts Department, he retired as the Deputy Comptroller and Auditor General in 2002. During the period, he served in the Ministry of Personnel and Pensions as Additional Secretary and earlier in the Railways and Ministry of Defense, Government of India. Several successful stints have helped Mr. Lakshminarayanan gain experience in cadre management, staff welfare, purchases and contracts, financial advice and accounting. With a commendable knowledge on the relevant rules and regulations, he has led offices comprising as many as 1,500 employees. He has also provided direction, guidance and created administrative framework for the companies. Mr. Lakshminarayanan also has an international exposure.

*\*Ceased to be Non-Executive Independent Director w.e.f. 20 June 2020.*



**Mr. Rakesh Sood**
*Non-Executive, Independent\**



**Ms. Bindu Saxena**
*Non-Executive, Independent*

Mr. Sood holds a master's degree in Physics from St. Stephen's College, Delhi University and a post-graduate in Economics and Defence Studies. He joined the Indian Foreign Service (IFS) in 1976 after briefly working at DCM and SBI. In his 37 years long diplomatic career, Mr. Sood served India's diplomatic missions in Brussels, Dakar, Geneva and Islamabad in varied capacities and as the Deputy Chief of Mission in Washington. Having set up the Disarmament and International Security Affairs Division at Delhi and heading it for eight years, he was responsible for multilateral disarmament negotiations relating to chemical and biological weapons, nuclear tests, etc., and establishing bilateral dialogues with the USA, Pakistan, France and the ASEAN Regional Forum. He has also served as an Ambassador on the Conference of Disarmament in Geneva, Afghanistan, Nepal and France, and been appointed as a Special Envoy of the Prime Minister (SEPM) for disarmament and non-proliferation issues. As a commentator, panelist and speaker on the foreign policy and international security issues, he keeps on addressing various forums, newspapers and television channels in India and abroad.

Ms. Bindu Saxena, is a practicing Advocate and is a partner of the law firm Swarup & Company, New Delhi, India and has over 33 years of experience as corporate attorney with clients in India and overseas including large multinational corporations. Her experience as corporate attorney includes experience of commercial transactions and projects in India and overseas. Her experience includes Indian and transborder transactions, acquisitions, joint ventures, private equity transactions, investments and participation in both new and existing companies and ventures in diverse sectors and industry. She has been advising clients (both Indian and foreign and in private sector and public sector) in diverse corporate and commercial matters and transactions and projects including foreign collaboration, foreign investment, funding, acquisitions, mergers, amalgamations and takeovers and in all aspects of structuring, negotiating and drafting of diverse business and project related for diverse sectors including infrastructure, fertilizer, mining, refineries, steel, chemicals, engineering goods etc. She also handles court matters including litigation pertaining to corporate matters, contractual disputes, enforcement of foreign awards, domestic and international commercial arbitration and matters before various tribunals etc.



**Mr. Sunil Srivastav**
*Non-Executive, Independent*



**Mr. Farokh P. Gandhi**
*Chief Financial Officer and Executive Director\**

Mr. Srivastav retired as the Dy. Managing Director, Corporate Accounts Group, from the State Bank of India (SBI). He was responsible for a large corporate credit exposure, including project and infrastructure financing for the bank. In an illustrious career spanning over three decades with the SBI, he rose from the ranks holding several leadership positions, including DMD – CSNB, CGM – Kolkata and GM – Delhi, accomplishing several achievements like initiating the Bank's foray into digital delivery of financial products and services, entry into the new lines of businesses, including identification and negotiation with global JV partners, managing and growing operations of a network of 1,450 offices in Bengal, Sikkim and Andaman & Nicobar, and growing the bank's business in the mountainous terrain in the State of Uttarakhand.

Mr. Farokh Gandhi is an experienced Chartered Accountant and Corporate Finance Strategist who has been associated with Eros Group for over 17 years, out of his 27 years of experience in the finance sector. During his association, he has been key in executing the various IPOs and listing of the Group in India as well as overseas as well as setting of financial systems and processes to support the Company's growth.

---

*\*Ceased to be Non-Executive Independent Director w.e.f. 6 October 2020.*

*\* Appointed as Executive Director w.e.f. 9 November 2020*

**EROS INTERNATIONAL MEDIA LIMITED    3**

# MANAGEMENT DISCUSSION AND ANALYSIS

### Macroeconomic Environment in India

India entered the fiscal year 2019-20, while the economy was still recovering from the prolonged after effects of demonetization and an evolving GST regime. The GDP growth was slowing down, quarter over quarter.

The newly formed government undertook a slew of tactical as well as strategic measures, besides accelerating the policy reforms, as the year progressed. With inflation remaining contained to a comfortable level, growth-oriented lowering of interest rate was pursued by the Reserve Bank of India (RBI). In four successive reductions of policy rates, the RBI reduced the repo rate by a record 160 basis point, bringing it down from 6% in April 2019 to 4.4% by March 2020.

The result of these measures along with many others was expected to be seen on the ground with a lag effect. However, the outbreak of COVID-19 pandemic in the last fortnight of the fiscal year 2019-20 stalled the revival of economic growth, albeit temporarily. Provisional estimates from the National Statistical Office suggest India's GDP growth to have slowed to a 11-year low of 4.2%, in the fiscal year 2019-20. With growth rate for Q1, Q2, Q3 and Q4 estimated at 5.2%, 4.4%, 4.1% and 3.1% respectively, the steady decline in the growth rate was the sharpest in the last quarter.

### Indian Media and Entertainment Industry*

With a population of over 1.35 billion, India speaks as many as 23 languages. Indian appetite for entertainment is huge and growing, while the demand for engaging content across languages, formats and genres continues to swell. With a median age of 28.7 years and a whopping 59% of the population aged between 15-54 years, the country is making rapid strides towards digitization. Improving connectivity framework including high speed internet, feature rich smartphones, lower data cost etc. coupled with increasing purchasing power and exposure to global culture creates the right tailwinds for the Indian Media and Entertainment Industry.

The digital evolution of Indian Media and Entertainment (M&E) industry continued at an accelerated pace through the calendar year 2019. The FICCI-EY report on Indian M&E sector pegged the industry to have grown by an impressive 9% to reach ₹ 182,000 crores (1.82 trillion), in 2019 while also predicting the industry to reach ₹ 242,000 (₹ 2,42 trillion) by 2022 with a CAGR growth rate of 10%.

The growth was largely driven by direct-to-customer segments. On the back of an impressive 31% increase in online gamers, online gaming emerged as the fastest growing segment, in 2019. Digital media replaced filmed entertainment as the third largest segment and is now pegged to overtake print segment by 2021. Digital subscriptions grew by more than 100% while two of its key growth drivers, quality video and sports content, went behind a paywall, making Telcos pay more for content that they bundle with their data packs.

The report estimated screen count (television and smartphones) to grow from the current 550 million to a billion screens by 2025, the split between television-sized and smartphones to be at 250 million and 750 million respectively. This rapid explosion in screen count is expected to fuel continued growth in demand for content – both long form, episodic and short form – and provide significant opportunities for content creators and UGC platforms.

Consumption of regional (non-Hindi) content grew across media and platforms. Nearly 50% of television viewership, 44% of theatrical release of films and about 30% of OTT consumption were in regional languages. The report estimated the growth of regional content, particularly on digital media, to continue with steady pace over the next five years, aptly aided by the growth in internet and data consumption among non-metro audiences.

### Theatrical

In terms of the total number of films released theatrically, the Indian film entertainment industry is the largest in the world. With an average of 35 films per week, about 1,833 films were released in 2019, translating to a 3.3% increase over 1,776 films released in 2018. With 265 and 263 releases respectively, Hindi and Telugu languages occupied the top two positions. While Hindi, Telugu, Malayalam, English, Gujarati and Oriya languages recorded a year on year increase in the number of films released, a combined reduction of over 10% was witnessed across Punjabi and Tamil films.

In FY20, the Indian box office saw a decline in performance compared to performance in FY19; the box office collection of Hindi films remained stable while regional cinema underperformed as compared to previous years. The box office performance in FY20 was largely driven by a mix of star power, compelling storylines and themes. Hollywood and foreign films contributed the balance. Strong focus from top studios towards regional cinema coupled with increased consumption of dubbed films continues to be driving the growing popularity of regional films. In a multi-lingual country like India, regional cinema continues to thrive. In FY20, South movies and other regional cinema contributed 36 per cent and nine per cent, respectively, to domestic theatrical collection. Regional cinema has time and again proved that stories with universal appeal will draw audiences.

India theatrical exhibition business with 9,440 screens, of which 3,150 are multiplex screens, is one of the most under-penetrated markets and although Indian economy is opening up in a phased manner, cinema halls are expected to re-open only in the end of the FY 21. Going forward post-pendemic, industry players will have to find newer ways to draw audience to cinema halls and monetise their content.

Despite a rare decrease in overseas collections in 2019, Indian film's appeal continues to grow outside the country. The main overseas markets for Indian films are USA, UK, Middle East, Canada and Australia. Outside of these traditional markets, the following of Indian films continues to grow with cross over audiences across many countries in Asia Pacific and Western Europe.

### OTT platforms

2019 proved to be a watershed year for Indian OTT platforms. Having started to gain pace in the recent two-three years, the platform gained both maturity and scale while the ecosystem continued to evolve with the platforms, content creators, telecom service providers (Telcos), and OTT subscribers upping their respective play, all at the same time . With paying subscribers contributing less than 5% and 1% for video and audio respectively in the overall OTT subscription (including subscribers of trial/free version), the opportunity landscape for OTT platforms remains largely under-explored.

OTT players are increasingly upping their investments in acquiring or developing new content, intensifying brand promotion and customer acquisition/conversion activities, enhancing user experience and expanding their reach through symbiotic partnerships with Telcos. Thanks to large consumption of data (video) over high speed internet, Telcos have been firming up their symbiotic alliances with various OTT service providers. Often bundled with data packs, Telcos provide live streaming of content across sports, news, movies, music, television and digital originals to consumers at highly affordable prices. In 2019, Telcos spent around ₹ 1,000 crores for video content. Upto 80% of viewership volumes of certain OTT platforms were generated by Telcos while M&E content accounted for over 65% of data consumed by telco customers. Over 260 million consumers consumed video content through data bundles.

Not surprising, OTT emerged as the second highest contributor to digital subscription revenues, next only to the nascent online gaming segment.

---

***Source for industry data and trends:*** *'Indian Media & Entertainment Sector' report by FICCI and EY, March 2020*

OTT, the big entertainment game changer, strengthened its consumer value proposition, just in time, before Covid-19 pandemic brought the physical entertainment universe to a grinding halt, all through the year 2020. Early trends of the first half of 2020 indicate a massive explosion in subscription and consumption of OTT content at a time when theatres, malls and all other forms of outdoor entertainment became out of bounds for a forced-home audience.

Several film makers released small and low budget films directly on OTT platforms in 2019 and estimates suggest this number to be well over 50 such films. Severely adverse impact of prevalent lockdown and social distancing norms on theatrical releases would help OTT platforms take this count much higher in 2020. The demand and prices of digital rights shall both increase. Geography agnostic nature of the platform shall incubate a cult of globally appealing content creators. It shall also maximize the reach of regional films to their native-language diaspora in other states and countries, leading to increased rates for regional titles in domestic as well as international markets.

### Television

As a content hungry country with 1.35 billion people with accentuated inequality across education and prosperity, television continues to be a binding factor bridging the divide. Thanks to the unique nature of engaging even the illiterates, unlike many of its media counterparts, television has continued to be the mainstay of Indian M&E industry all these years. The diverse ecosystem of free to air and paid content across all thinkable genres, distributed through cable, DTH and now also HITS, continues to make it the medium of masses.

2019 was a year of added regulations, increasing competition within OTT platforms and alternate viewing screens, and accelerating adoption of connected (smart) TV for the television industry. Television segment grew by 6.4% to reach ₹ 788 billion in 2019, aided by subscription revenue growth of 7.5% and advertising revenue (320) growth of 5%. Adding 33 new channels in 2019 (27 non-new and 6 news), the channel count crossed the 900 mark to reach 918 channels. 42% of these channels were in the news genre while 63% were free to air channels.

Implementation of the new tariff order (NTO) was the most significant development of 2019 for the television segment. The overarching effect of the order was seen across the entire television ecosystem – consumer cost and subscription revenues went up, active paid subscription fell (despite overall increase in total paid subscription), registered MSO numbers recorded a sharp increase of 11%. The increasing cost of niche English content on television made paid OTT platforms more competitive, leading to some audience migration towards the latter.

### Music

Music segment continued to grow on the back of increasing digital revenues and performance rights to reach ₹ 15.3 billion in 2019, clocking a year on year growth of 8.3%. The segment is pegged to cross ₹ 20 billion by 2022. With digital revenues contributing a dominating 80%, music labels recorded a handsome annual growth of 20%. YouTube accounted for 45% of labels' digital revenues.

With growing awareness, surveillance, implementation and collection of copyright fee, revenue from performance rights grew by over 35% in 2019. With physical medium witnessing a fast depletion of its relevance in music segment, it recoded a further decline of about 40%.

### Company Performance

Eros has aggregated rights to over 2,000 films in our library, including recent and classic titles that span different genres, budgets and languages. We have co-produced/ acquired a portfolio of over 130+ new films over the last three completed fiscal years. Film distribution across theatrical, overseas and television and others channels along with library monetization provide us with diversified revenue streams. In addition, Eros International produces and acquires content for Eros Now, parent Eros International Plc's OTT entertainment service. Launched in 2012, Eros Now has digital rights to over 12,000 films, out of which approximately 5,000 films are owned in perpetuity, across Hindi and regional languages from Eros's internal library as well as third party

aggregated content. Eros also has television programmes, music videos and audio tracks, which are above industry benchmark in quantity and quality. Eros Now has strong original digital series scheduled for release in coming quarters. This shall enable us to generate business. The upcoming strategy is focusing on the direct to consumer user base. Our goal is for Eros Now to be the only choice for patrons looking for high-quality Indian entertainment around the globe. Eros is currently assessing strategic alternatives to maximize shareholder value.

Our major Eros Now original series this quarter was a biopic on Narendra Modi, the Indian Prime Minister : "Modi – The Journey of a Common Man". It was released in 4 regional languages (Gujarati, Tamil, Telugu, Kannada) targeting regional audiences. The series was also released in Hindi. The series generated strong viewership in Gujarat, Tamil Nadu and Andhra Pradesh. Ahmedabad had the largest viewership of any city in India for the said series.

### Films Slate - Released by EROS during the FY 20

| Name of the film | Language | Name of the film | Language |
|---|---|---|---|
| Kidi | Kannada | Boxer | Bengali |
| Jojo | Bengali | Suryansh | Gujarati |
| Chandragiri | Malayalam | Barof | Bengali |
| Kintu Galpo Noy | Bengali | Tritio Andhyay | Bengali |
| Mithun | Marathi | Kattu Kathe | Kannada |
| Aa Eradu Varshagalu | Kannada | Gotya | Marathi |
| Vantas | Marathi | Bhuban Majhi | Bengali |
| Haanduk | Assamese | Modi Kaka Ka Gaon | Hindi |
| Trunk | Kannada | Laal Kaptan | Hindi |
| Pagalpanthi | Gujarati | Arjun Suravaram | Telugu |
| Wedding Cha Shinema | Marathi | Marjaavaan | Hindi |
| Romeo Akbar Walter | Hindi | Pagalpanti | Hindi |
| Kuasha Jakhon | Bengali | Pati Patni Aur Woh | Hindi |
| One Mali | Kannada | The Body | Hindi |
| | | Brahma Janen Gopon Kommoti | Bengali |

We plan to release our upcoming film projects and web-series after shooting schedules starts. The projects are mentioned as under:

1. Haathi Mere Saathi (Hindi, Tamil & Telugu)

2. Roam Rome Mein (Hindi)

3. Shokuner Lobh (Bengali)

4. Sannata (Hindi)

5. 8 Kadam (Hindi)

6. Haseena Dilruba (Hindi)

### Financial Review

In FY 20, the Company's total consolidated income stood at ₹ 93,386 lakhs as against ₹ 113,969 lakhs in FY 19. The Company registered an EBITDA of ₹ (161,546) lakhs during the year as compared to ₹31,763 lakhs in the previous year. The consolidated profit/ (loss) for the year stood at ₹ (140,121) lakhs as compared to ₹ 26,648 lakhs in FY 19.

### Risk Management

The Risk Management framework includes Risk Management Policy and identification of risks at Company Level, Strategic Level and Operational level. The risk mitigation procedures associated with the business and prioritization of risks include scanning the business environment and having periodic risk review.

**MANAGEMENT DISCUSSION & ANALYSIS**

The risks associated with the Company's businesses are broadly classified in following categories:

- Environmental Risk: Due to the adverse impact of COVID-19, the Company may suffer losses.

- Economic Risk: Due to adverse political situations or downturn, which may negatively impact the Company's organizational objectives.

- Regulatory Risk: Due to government regulations or any other statutory violations and amendments, which may lead to litigations and loss of reputation.

- Operational Risk: Ability to attract and retain clients.

### Internal Control Systems

The Company has adequate internal controls required in the nature of its business and operations. The company can safeguard its assets and financial transactions with adequate checks and balances, while adhering to accounting policies. Systems are reviewed and improved regularly. With the Company's budgetary control system, it monitors revenue and expenditure with actual vs. approved budget. The Company has its own corporate internal audit function which monitors and assesses the adequacy and effectiveness of the Internal Controls and Systems. Deviations from standard operating procedures are periodically reviewed and compliance is ensured.

### Human Capital

The Company believes that it has an excellent talent pool. This talent pool is the key to excellence. The Company has a diverse employee base with technical knowledge and functional expertise. This helps to deliver the stipulated target. Performance is valued as an essential tool to accomplish vision, mission and objectives. The Company's 'Human Capital' headcount stands at 277 as on March 31, 2020.

### Outlook

COVID-19 pandemic has changed the social lives of people. There is an increase in demand for content due to restriction in movement of people. Pattern of content consumption has also changed. Due to Pandemic cinema halls are closed. However, the good news is that the OTT platforms (digital platforms) have gained more popularity besides television channels.

COVID-19 has made us re-strategize operational and legal aspects of the business, such as project timelines, production costs and schedules. We have a large content on our group OTT platform Eros Now. With the rise in new content consumption patterns, our existing content is more valuable.

### Cautionary Statements

Statements in the Management Discussion and Analysis describing the Company's objectives, projections, estimates and expectations may be 'forward-looking statements' within the meaning of applicable securities, laws and regulations. Actual results could differ materially from those expressed or implied. Important factors that could influence the Company's operations include economic developments in India or globally, demand and supply conditions in the industry, changes in Government regulations, tax laws, litigations, employee relations and others.

# DIRECTORS' REPORT

To,
The Members
Eros International Media Limited

Your Board of Directors are pleased to present 26th Annual Report of Eros International Media Limited (hereinafter referred to as **"the Company"**) covering the business, operations and Audited Financial Statements of the Company for the financial year ended 31 March 2020.

## 1.    FINANCIAL RESULTS

The Financial Performance of your Company for the year ended 31 March 2020 is summarized below                     (₹ in lakhs)

| Particulars | Standalone Year Ended | | Consolidated Year Ended | |
|---|---|---|---|---|
| | 2019-20 | 2018-19 | 2019-20 | 2018-19 |
| Sales and other Income | 72,447 | 86,980 | 93,386 | 1,13,969 |
| **Profit / (Loss) before exceptional items & tax** | **(9,934)** | **13,677** | **(6,194)** | **31,763** |
| Exceptional (loss)/ gain | (1,27,850) | - | (1,55,352) | - |
| **Profit / (Loss) Before Tax** | **(1,37,784)** | **13,677** | **(1,61,546)** | **31,763** |
| Less: Tax Expenses / (Credit) | (21,711) | 4,941 | (21,425) | 5,115 |
| **Net Profit / (Loss) from the year from continuing operation** | **(1,16,073)** | **8,736** | **(1,40,121)** | **26,648** |
| **Profit / (Loss) for the year attributable to:** | | | | |
| Equity shareholders of the Company | - | - | (1,40,521) | 26,908 |
| Non-controlling Interests | - | - | 400 | (260) |
| **Other comprehensive income (net of taxes)** | **95** | **40** | **7,811** | **5,134** |
| **Total comprehensive income/ (loss) for the year** | **(1,15,978)** | **8,776** | **(1,32,310)** | **31,782** |
| **Attributable to:** | | | | |
| Equity shareholders of the Company | - | - | (1,32,310) | 32,042 |
| Non-controlling Interests | - | - | 400 | (260) |
| **EPS (Diluted) in ₹** | **(121.48)** | **9.10** | **(147.06)** | **28.02** |

## 2.    FINANCIAL PERFORMANCE

On a consolidated basis, the Company has recorded the revenues of ₹ 93,386 lakhs as compared to previous year of ₹ 113,969 lakhs. The loss before tax amounted to ₹ 1,61,546 lakhs as against previous year profit of ₹ 31,763 lakhs. The loss after tax attributable to equity shareholders was ₹ 1,40,521 lakhs as compared to previous year profit of ₹ 26,908 lakhs. Diluted EPS decreased to ₹ (147.06) as compared to previous year of ₹ 28.02. The reported net loss in current financial year was on account of Impairment of Assets amounting to ₹ 1,55,352 lakhs as per Ind AS 36 and write off of aged overdue receivables amounting to ₹ 46,494 lakhs on account of COVID-19 pandemic uncertainty.

On standalone basis, the Company has recorded revenues of ₹ 72,447 lakhs as compared to previous year of ₹ 86,980 lakhs. The loss before tax amounted to ₹ 9,934 lakhs as against previous year profit of ₹ 13,677 lakhs. The loss after tax stood at ₹ 1,16,073 lakhs as compared to previous year profit of ₹ 8,736 lakhs. Diluted EPS decreased to ₹ (121.48) as compared to previous year of ₹ 9.10. The reported net loss in current financial year was on account of Impairment of Assets amounting to ₹ 1,27,850 lakhs as per Ind AS 36 and write off of aged overdue receivables amounting to ₹ 44,966 lakhs on account of COVID-19 pandemic uncertainty.

As explained in the financial statements, the COVID-19 outbreak and resulting measures taken by the Government of India to contain the virus have already significantly affected our business in the first quarter of fiscal 2020. Further, in fiscal 2019-2020, the Company has witnessed a significant decline in market capitalization as compared with the previous year.

Because of the unexpected decline in the market capitalization and disruptions in the business caused by the outbreak of COVID-19, the Company has performed the annual impairment assessment and has recorded the impairment charge of ₹ 1,27,850 lakhs as exceptional item in the Statement of Profit and Loss account and the book values of goodwill, content advance, film rights and other advances were reduced.

The impairment test was performed at an individual asset level and where the recoverable amount cannot be determined for an individual asset, the test was done at the level of the cash-generating unit which represented the entire business of the Company. The management adopted the value in use methodology to determine the recoverable amount of cash-generating unit. The value in use represented the future cash flows expected to be generated by the film over its useful life discounted to present value.

## 3.    OPERATIONAL PERFORMANCE

We continue as a global company in the Indian film entertainment industry that co-produces, acquires and distributes Indian language films in multiple formats worldwide. We have a multi-platform business model and derive revenues from multiple distribution channels.

Our content strategy leverages on multi-verse unique IP development, high concept, new talent films, franchises and multilanguage co-productions. The Indian audience's propensity to consume content in local language has been increasing, and in recent times regional films are breaking language barriers as they cross over with dubbed versions to other markets especially the Hindi market. The regional industry also has strong releases in the next year and the market is only expected to expand further.

Our Company's key asset is a film library of over 2,000 films. In an effort to reach a wide range of audiences, we maintain rights to a diverse portfolio of films spanning various genres, generations and languages. These include rights to films in Hindi and several regional languages, Tamil, Telugu, Kannada, Marathi, Bengali, Malayalam and Punjabi.

On 17 April 2020, our Ultimate Parent Company, Eros International Plc, entered into the Merger Agreement with STX Filmworks, Inc., a Delaware corporation ("STX"). Pursuant to closing of the merger, STX will merge with a newly formed subsidiary of Eros International Plc and will survive as its wholly owned subsidiary. STX Entertainment is a fully-integrated global media company specializing in the production, marketing, and distribution of talent-

driven motion picture, television and multimedia content. It is the first major entertainment and media company to be launched at this scale in Hollywood in more than twenty years.

**Impact of COVID-19 on the business of the company:**

As you are aware, due to the outbreak of novel coronavirus (COVID-19) in China and then eventually spreading rapidly to various countries across the Globe, including India, the said Coronavirus has been declared as pandemic by WHO and hence the entire global market scenario has been changed with respect to investments in various businesses. It has hit very badly, and various businesses are adversely affected leaving a greater effect on cashflows. These are significant unanticipated events impacting the entire global economy across industries, and our industry in particular, as it depends on theatrical revenues in a significant way. The closure of theatres in India and worldwide for an indefinite period has created an unprecedented uncertainty, and though we remain sanguine about the future, it is increasingly becoming difficult to predict cash flows in near term.

During the period from March 2020 to June 2020, we were having few of our film releases in India and overseas, namely 'Haathi Mere Saathi' in three languages (Hindi, Tamil and Telugu), 'Shokuner Lobh' (Bengali) etc. However, under the present circumstances of COVID-19 pandemic, we are left with no option but to defer the release of our above said films indefinitely till the situation is improved, so that revenues of our said film can be optimized and improve our cashflows to better serve our commitments to our stakeholders. Your good selves must also be aware that, recently various Cinema Halls, Educational Institutions, Malls or any mass gatherings are being shut down for few days in India and in many countries worldwide and the same will have an adverse impact on all the businesses.

**Post COVID-19 Scenario:**

The onslaught of the COVID-19 pandemic has changed the social lives of people across regions and economic sections. The lockdowns and restriction on movement of people has not only led to an increased demand for content but has also changed content consumption patterns. While traditional and outdoor mediums of distribution of content, such as cinema theatres, continue to be unavailable; the home consumption mediums, such as television channels and OTT platforms (digital platforms) have gained even more popularity and viewership. Going forward, we along with our industry have started re-thinking various operational and legal aspects of the business, such as project timelines, production costs and schedules, legal commitments etc., in order to adjust to the 'new normal' being presented to the world.

Our group OTT platform Eros Now, where a large chunk of the content library comprises of our own contents and acquired contents, we have also started thinking of innovative ways of updating our existing content libraries. Given a rise in demand for content and increasing viewership, and the halts in production of new content, existing content is likely to become more valuable.

Given the above, while the media and entertainment sector is currently grappling with various challenging issues, however, as people strive to return to normalcy, eventually our sector may be amongst the first few to recover, and continue to provide everyone across all mediums and segments, the much-needed entertainment and, we are ready for the same with our huge existing content library to grab the digital opportunities.

Further, once the theatres are open and production & shooting schedules achieve normalcy, we are in line to release or complete our upcoming film projects/web-series few of which are mentioned as under:

1.	Haathi Mere Saathi (Hindi, Tamil & Telugu)
2.	Roam Rome Mein (Hindi)
3.	Shokuner Lobh (Bengali)
4.	Sannata (Hindi)
5.	8 Kadam (Hindi)
6.	Haseena Dillruba (Hindi)

**4.	DIVIDEND**

In view of losses, your Directors do not recommend any dividend to its members for the financial year 2019-20.

The Dividend Distribution policy adopted by the Company in terms of SEBI (Listing Obligations & Disclosures Requirements) Regulations, 2015 (**"SEBI Listing Regulations"**). This Policy is uploaded on the website of the Company at www.erosstx.com.

**5.	RESERVES**

The Company has not transferred any amount to the general reserve during the current financial year.

**6.	EMPLOYEES' STOCK OPTION SCHEME & CHANGES IN SHARE CAPITAL**

During the year under review, the Nomination and Remuneration Committee of the Board had issued and allotted 44,213 Equity Shares of the Company to its employees against exercise of equal number of stock options pursuant to Eros Employee Stock Option Scheme 2009 ("EROS ESOP 2009") and 76,670 Equity Shares of the Company to its employees against exercise of equal number of stock options pursuant to Eros Employee Stock Option Scheme 2017 ("EROS ESOP 2017"). This resulted in increase in the Company's Paid up Share Capital to ₹ 95,62,90,230 as on 31 March 2020 as against ₹ 95,50,81,400 in the previous year.

The disclosures as required under Regulation 14 of SEBI (Share Based Employee Benefits) Regulations, 2014 read with SEBI Circular No. CIR/CFD/POLICY CELL/2/2015 dated 16 June 2015, is attached to this report as **Annexure A** hereto and is also available on website of the Company at www.erosstx.com. A certificate from the statutory auditors certifying that both the schemes viz. EROS ESOP 2009 and EROS ESOP 2017 has been implemented in accordance with SEBI (Share Based Employee Benefits) Regulations, 2014 and in accordance with the resolution(s) passed by the members would be available for inspection by the members.

**7.	SUBSIDIARIES, JOINT VENTURE AND ASSOCIATE COMPANIES**

As on 31 March 2020, the Company has 11 subsidiaries. There has been no material change in the nature of the business of the Company and its subsidiaries. Pursuant to the provisions of Section 129(3) of the Act read with Rule 5 of the Companies (Accounts) Rules, 2014, a statement containing salient features of the financial statements of the Company's subsidiaries and joint venture, its performance and financial position is provided in the prescribed Form AOC-1 attached to this Report as **Annexure B**.

None of the subsidiary companies except Copsale Limited (a British Virgin Island Company) are material subsidiary in terms of Regulation 16(c) of the SEBI Listing Regulations (as amended) and in accordance with Company's policy on "Determination of material subsidiaries", which is uploaded on the website of the Company at www.erosstx.com.

In accordance with Section 136 of the Act, the financial statements of the subsidiary companies are available for inspection by the members at the Corporate Office of the Company during business hours on all days except Saturdays, Sundays and public holidays between 11:00 A.M. to 1:00 P.M. up to the date of the Annual General Meeting of the Company. Any member desirous of obtaining a copy of the said financial statements may write to the Company Secretary at the Corporate Office of the Company. The financial statements including the consolidated financial statements, financial statements of subsidiaries and all other documents required to be attached to this report have been uploaded on the website of the Company at www.erosstx.com.

## 8. BOARD OF DIRECTORS AND KEY MANAGERIAL PERSONNEL

In accordance with the provisions of Section 152(6) of the Act and in terms of the Articles of Association of the Company, Mr. Kishore Lulla, Executive Director (DIN: 02303295) retires by rotation at the ensuing Annual General Meeting and being eligible, has offered himself for re-appointment.

During the year, Ms. Jyoti Deshpande, Non-Executive Non-Independent Director of the Company, had resigned from the Board of Directors with effect from 28 June 2019. The Board places its gratitude for her valuable contributions during her tenure as Director of the Company.

Mr. Subramaniam Lakshminarayanan, Independent Director has tendered his resignation due to relocation of his residence from the Board and its Committees with effect from 20 June 2020 and Mr. Rakesh Sood, Independent Director has resigned on completion of his first term of five years with effect from 6 October 2020. The Board places its gratitude for their valuable contributions during their tenure as Independent Directors of the Company.

The Board of Directors at their meeting held on 9 November 2020, re-appointed Mr. Sunil Lulla as Executive Vice Chairman & Managing Director for another period of five years commencing from the end of the present tenure i.e. from 28 September 2020 till 27 September 2025, and have recommended the proposed re-appointment for approval of the shareholders. Your Directors recommend his re-appointment for your approval.

Ms. Bindu Saxena was appointed as Non-Executive Additional Independent Director on the Board of the Company with effect from 26 September 2019 and Mr. Farokh P. Gandhi was appointed as Executive Additional Director on the Board of the Company with effect from 9 November 2020 to hold office up to the date of the ensuing Annual General Meeting of the Company. The proposed resolution for appointment of Ms. Bindu Saxena as Non-Executive Independent Director and Mr. Farokh P. Gandhi as Executive Director forms part of the Notice convening Annual General Meeting. Your Board recommends their appointment.

As per the provisions of the Act, Independent Directors have been appointed for a period of five years and shall not be liable to retire by rotation. All other Directors, except Managing Director, are liable to retire by rotation at the Annual General Meeting of the Company.

The brief details of the Directors proposed to be appointed/re-appointed as required under Secretarial Standard 2 issued by the Institute of Company Secretaries of India and Regulation 36 of the SEBI Listing Regulations is provided in the Notice convening Annual General Meeting of the Company.

All the Directors of the Company have confirmed that they are not disqualified to act as Director in terms of Section 164 of the Act.

In compliance with Section 203 of the Act, Mr. Vijay Thaker was appointed as Vice President - Company Secretary & Compliance Officer and Whole Time Key Managerial Personnel of the Company w.e.f. 13 August 2019 in place of Mr. Abhishekh Kanoi who had resigned at the close of business hours on 12 August 2019.

The Board places on record its appreciation for the valuable contribution made by Mr. Abhishekh Kanoi during his tenure with the Company.

Further, Mr. Pradeep Kumar Dwivedi was appointed as a Chief Executive Officer of the Company under Section 203 of the Act with effect from 10 February 2020.

As on the date of this Report, Mr. Sunil Arjan Lulla, Managing Director, Mr. Farokh P. Gandhi, Group Chief Financial Officer (India), Mr. Pradeep Dwivedi, Chief Executive Officer and Mr. Vijay Thaker, VP-Company Secretary & Compliance Officer are the Key Managerial Personnel of your Company in accordance with the provisions of Section 2(51) read with Section 203 of the Act.

### Declaration of Independence by Independent Directors & adherence to the Company's Code of Conduct for Independent Directors

All the Independent Directors of the Company have submitted their disclosure to the effect that they fulfill all the requirements/criteria of independence as per Section 149(6) of the Act and SEBI Listing Regulations and they have registered their names in the Independent Directors' Databank. Further, all the Independent Directors have affirmed that they have adhered and complied with the Company's Code of Conduct for Independent Directors which is framed in accordance with Schedule IV of the Act.

### Board Meetings conducted during the Year

The Board met four (4) times during the financial year under review, the details of which are given in the Corporate Governance Report that forms part of this Report. The intervening gap between any two meetings of the Board was not more than one hundred and twenty (120) days as stipulated under the Act and SEBI Listing Regulations.

### Constitution of various Committees

The Board of Directors of the Company has constituted following Committees:

a.    Audit Committee

b.    Nomination and Remuneration Committee

c.    Stakeholders Relationship Committee

d.    Corporate Social Responsibility Committee

e.    Management Committee

Details of each of the Committees stating their respective composition, terms of reference and others are uploaded on our website at www.erosstx.com and are stated in brief in the Corporate Governance Report attached to and forming part of this Report.

### Annual Evaluation of Board, its Committees and Individual Directors

The Company has devised a Policy for performance evaluation of the Board, its Committees and other individual Directors (including Independent Directors) which includes criteria for Performance Evaluation of the Non-Executive Directors and Executive Directors. The evaluation process inter alia considers attendance of Directors at Board and Committee Meetings, acquaintance with business, communicating inter se Board Members, effective participation, domain knowledge, compliance with code of conduct, vision and strategy, benchmarks established by global peers, etc., which is in compliance with applicable laws, regulations and guidelines.

The Board carried out annual evaluation of the performance of the Board, its Committees and Individual Directors and Chairman. The Chairman of the respective Board Committees shared the report on evaluation with the respective Committee Members. The performance of each Committee was evaluated by the Board, based on report on evaluation received from respective Board Committees. The reports on performance evaluation of the individual Directors were reviewed by the Chairman of the Board.

### Familiarization Programme for Independent Directors

Familiarization Programme for Independent Directors is mentioned at length in Corporate Governance Report attached to this Report and the details of the same have also been disclosed on the website of the Company at www.erosstx.com.

### Policy on appointment and remuneration and other details of directors

The remuneration paid to the Directors is in line with the Nomination and Remuneration Policy formulated in accordance with Section 178 of the Act and Regulation 19 of the SEBI Listing Regulations (including any statutory modification(s) or re-enactment(s) thereof for the time being in force).

DIRECTORS' REPORT

The Company's policy on directors' appointment and remuneration and other matters as provided in Section 178(3) of the Act has been disclosed in the Corporate Governance Report, which forms part of this Report.

A detailed statement of disclosure required to be made in accordance with the Nomination and Remuneration Policy of the Company, disclosures as per the Act and applicable Rules thereto is attached to this Report as **Annexure C** hereto and forms part of this Report.

### 9. AUDITORS & AUDITORS' REPORT

Chaturvedi & Shah LLP, (Firm Registration No. 101720W/W100355) were appointed as Statutory Auditors of the Company at the 23rd Annual General Meeting of the Company held on 28 September 2017 for the term of Five (5) years i.e. from the conclusion of 23rd Annual General Meeting until the conclusion of 28th Annual General Meeting, to be held in the year 2022. They have confirmed that they are not disqualified from continuing as Auditors of the Company.

**Auditors' Report**

There are no qualifications, adverse remarks, reservations or disclaimer made by Chaturvedi & Shah LLP, Statutory Auditors, in their report for the financial year ended 31 March 2020. The notes to the Accounts referred to in the Auditor's Report are self-explanatory and therefore do not call for any further explanation and comments.

Pursuant to provisions of Section 143(12) of the Act, the Statutory Auditors have not reported any incidence of fraud to the Audit Committee during the year under review.

### 10. SECRETARIAL AUDITORS' AND ITS REPORT

Pursuant to the provisions of Section 204 of the Act read with the Companies (Appointment and Remuneration of Managerial Personnel) Rules, 2014, the Board has appointed S.G & Associates, a firm of Company Secretaries in Practice to undertake the Secretarial Audit of the Company for the financial year 2019-20. The Secretarial Audit Report for the financial year ended 31 March 2020 in the prescribed Form MR - 3 is attached to this Report as **Annexure D**, which is self-explanatory.

**The Secretarial Audit Report contain following observation:**

The Company had submitted Voting results of the Annual General Meeting with a delay of three (3) hours than the Statutory Period of 48 hours from the Conclusion of the meeting.

**Management Reply:**

Due to some technical issues the Voting results of the Annual General Meeting could be not uploaded within the Statutory Period of 48 hours from the Conclusion of the meeting.

### 11. PARTICULARS OF EMPLOYEES

The requisite disclosures in terms of the provisions of Section 197 of the Act read with Rule 5 of the Companies (Appointment and Remuneration of Managerial Personnel) Rules, 2014 along with statement showing names and other particulars of employees drawing remuneration in excess of the limits prescribed under the said Rules is attached to this Report as **Annexure E**.

### 12. LOANS, GUARANTEES OR INVESTMENTS

Particulars of loans given, investments made or guarantees given or security provided by the Company as required under Section 186(4) of the Act and the SEBI Listing Regulations are contained in Notes to the Standalone Financial Statements of the Company forming part of this Annual Report.

### 13. RELATED PARTY TRANSACTIONS

In line with the requirements of the Act and SEBI Listing Regulations, your Company has formulated policy on Related Party Transactions duly approved by the Board, which is also available on the Company's website at www.erosstx.com. The Policy intends to ensure that proper reporting, approval and disclosure processes are in place for all transactions between the Company and Related Parties.

All contracts/arrangements/transactions entered by the Company during the financial year with related parties were on an arm's length basis, in the ordinary course of business and in compliance with the applicable provisions of the Act and SEBI Listing Regulations. Prior omnibus approval had been obtained for the transaction which are foreseeable and repetitive in nature and such transactions are reported on a quarterly basis for review by the Audit Committee as well as the Board.

Pursuant to Section 134 of the Act read with Rule 8(2) of the Companies (Accounts) Rules, 2014, the particulars of contracts/arrangements/transactions entered into with related parties during the financial year 2019-20 in terms of Section 188(1) of the Act and applicable Rules made thereunder, in the prescribed Form AOC-2 is attached to this Report as **Annexure F**.

All other contracts/arrangements/transactions with related parties, are in the usual course of business and at arm's length basis and stated in Notes to Accounts to the Financial Statements of the Company forming part of this Annual Report.

### 14. WHISTLE BLOWER / VIGIL MECHANISM

Your Company promotes ethical behavior in all its business activities and your Company has adopted a Policy on Vigil Mechanism and Whistle Blower in terms of Section 177(9) and Section 177(10) of the Act and Regulation 22 of the SEBI Listing Regulations for receiving and redressing complaints from employees, directors and other stakeholders to report concerns about unethical behaviour, actual or suspected fraud.

The Policy is appropriately communicated within the Company across all levels and has been displayed on the Company's intranet for its employees and website at www.erosstx.com for stakeholders.

Protected disclosures are made by a whistle blower in writing to the Ombudsman on Email ID at whistleblower@erosintl.com and under the said mechanism, no person has been denied direct access to the Chairperson of the Audit Committee. The Audit Committee and Stakeholders Relationship Committee periodically reviews the functioning of this Mechanism.

### 15. PREVENTION, PROHIBITION AND REDRESSAL OF SEXUAL HARASSMENT AT WORKPLACE

The Company has formulated a Policy on Prevention of Sexual Harassment at Workplace in accordance with the Sexual Harassment of Women at Workplace (Prevention, Prohibition and Redressal) Act 2013 and the Rules thereunder. All employees (permanent, contractual, temporary, trainees) are covered under the Policy. Further, the Company has constituted an Internal Complaints Committee, where employees can register their complaints against sexual harassment.

### 16. EXTRACT OF THE ANNUAL RETURN

The extract of Annual Return in the prescribed Form MGT-9 as required under Section 92(3) of the Act read with Companies (Management & Administration) Rules, 2014 is placed on the website of the Company at www.erosstx.com and is set out in **Annexure G** to this Report.

### 17. INSURANCE

All the insurable interests of your Company including properties, equipment, stocks etc. are adequately insured.

### 18. DEPOSITS

Your Company has not accepted any deposit from public under Chapter V of the Act.

### 19. DIRECTORS' RESPONSIBILITY STATEMENT

To the best of their knowledge and belief and according to the information and explanations obtained, in terms of Section 134 of the Act, your Directors confirms that:

a.   in the preparation of the annual accounts for the financial year ended 31 March, 2020, the applicable Accounting Standards

read with the requirements set out under Schedule III to the Act, have been followed and there are no material departures from the same;

b.    such accounting policies have been selected and applied consistently and judgments and estimates made that are reasonable and prudent so as to give a true and fair view of the state of affairs of the Company as at 31 March 2020 and of the loss of the Company for the year ended on that date;

c.    proper and sufficient care has been taken for the maintenance of adequate accounting records in accordance with the provisions of the Act, for safeguarding the assets of the Company and for preventing and detecting fraud and other irregularities;

d.    the annual accounts have been prepared on a 'going concern' basis;

e.    internal financial controls were followed by the Company and such internal financial controls are adequate and are operating effectively; and

f.    proper systems have been devised to ensure compliance with the provisions of all applicable laws and such systems are adequate and operating effectively

### 20.    CONSERVATION OF ENERGY, TECHNOLOGY ABSORPTION, FOREIGN EXCHANGE

Your Company is into the business of production, acquisitions, marketing and distributions of cinematograph films. Since this business does not involve any manufacturing activity, the Information required to be provided under Section 134(3)(m) of the Act read with the Companies (Accounts) Rules, 2014, are not applicable to the Company. However, the Company has been continuously and extensively using technology in its business operations.

The particulars of foreign currency earnings and outgo are as under:

₹ in lakhs

| Particulars | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| Expenditure in foreign currency | 216 | 520 |
| Earnings in foreign currency | 55,673 | 16,526 |

### 21.    INTERNAL FINANCIAL CONTROLS

Your Company maintains adequate and effective internal control systems which commensurate with the nature, size and complexity of its business and ensure orderly and efficient conduct of the business. The internal control systems of the Company are routinely tested and verified by Internal Auditors and significant audit observations and follow-up actions are reported to the Audit Committee. The Audit Committee reviews the adequacy and effectiveness of the Company's internal control requirement and monitors the implementation of audit recommendations.

### 22.    CORPORATE GOVERNANCE

Your Company has been practicing the principles of good Corporate Governance over the years and it is a continuous and ongoing process. A detailed Report on Corporate Governance practices followed by your Company, in terms of the SEBI Listing Regulations together with a Certificate from the Secretarial Auditor confirming compliance with the conditions of Corporate Governance are provided separately in this Annual Report.

### 23.    MANAGEMENT DISCUSSION AND ANALYSIS REPORT

In terms of Regulation 34 and Schedule V of the SEBI Listing Regulations, Management Discussion and Analysis Report is presented in separate sections forming part of this Annual Report.

### 25.    CORPORATE SOCIAL RESPONSIBILTY

The disclosures on Corporate Social Responsibility activities, as required under Rule 9 of the Companies (Corporate Social Responsibility Policy) Rules, 2014, are reported in **Annexure H** forming part of this Report and is also available on the website of the Company at www.erosstx.com.

### 24.    RISK MANAGEMENT

The Audit Committee of the Board has been vested with powers and functions relating to Risk Management, which inter alia includes (a) review of risk management policies and business processes to ensure that the business processes adopted and transactions entered into by the Company are designed to identify and mitigate potential risk; (b) laying down procedures relating to Risk assessment and minimization.

The objective of the risk management framework is to enable and support achievement of business objectives through risk intelligent assessment while also placing significant focus on constantly identifying and mitigating risks within the business. Further details on the Company's risk management framework is provided in the Management Discussion and Analysis report.

### 25.    MATERIAL CHANGES AND COMMITMENTS AFFECTING THE FINANCIAL POSITION OF THE COMPANY

There have been no material changes and commitments, affecting the financial position of the Company which have occurred between the end of the financial year of the Company to which the financial statements relate and till the date of this Report.

### 26.    DETAILS OF SIGNIFICANT/MATERIAL ORDERS PASSED BY THE REGULATORS / COURTS

There have been no significant and material orders passed by the Regulators or Courts or Tribunals impacting the going concern status and Company's operations in future.

### 27.    OTHER DISCLOSURES

•    During the year under review, the Company has not accepted any deposit within the meaning of Sections 73 and 74 of the Act read with the Companies (Acceptance of Deposits) Rules, 2014 (including any statutory modification(s) or re-enactment(s) thereof for the time being in force);

•    Your Company has complied with the provisions of all applicable Secretarial Standards issued by the Institute of Company Secretaries of India on Meeting of Board of Directors [SS-1] and General Meetings [SS-2];

•    The Company has not issued equity shares with differential rights as to dividend, voting or otherwise.

### 28.    ACKNOWLEDGEMENTS

The Board of Directors take this opportunity to express their sincere appreciation for support and co-operation from the Banks, Financial Institutions, Members, Vendors, Customers and all other business associates.

Your Directors sincerely appreciate the high degree of professionalism, commitment and dedication displayed by the employees at all levels. Your Directors also wish to place on record their gratitude to all the stakeholders for their continued support and confidence.

**For and on behalf of the Board of Directors**

**Sunil Arjan Lulla**
**Executive Vice Chairman**
**& Managing Director**
DIN: 00243191

**Sunil Srivastav**
**Non-Executive**
**Independent Director**
DIN: 00237561

Place: Mumbai
Date: 9 November 2020

**EROS INTERNATIONAL MEDIA LIMITED    11**

# Annexure A

**DISCLOSURE PURSUANT TO REGULATION 14 OF THE SEBI (SHARE BASED EMPLOYEE BENEFITS) REGULATIONS, 2014 FOR THE FINANCIAL YEAR 2019-20**

|  |  | Eros Employee Stock Option Scheme 2009 | | | | | | | | Eros Employee Stock Option Scheme 2017 | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  | (A) | (B) | (C) | (D) | (E) | (F) | (G) | (H) | (I) | (J) |  |
|  | Date of Shareholders Approval | 4 December 2009 | | | | | | | | 27 September 2017 | |  |
|  | Total number of options approved under the Scheme | 5% of the issued paid up share capital as on grant Date | | | | | | | | 5% of the issued paid up share capital as on grant Date | |  |
|  | Grant dates | 17-Dec-09 | 12-Aug-10 | 1-Jul-12 | 14-Oct-13 | 12-Nov-14 | 12-Feb-15 | 9-Feb-16 | 10-Feb-17 | 14-Nov-17 | 8-Feb-18 |  |
| (a) | Eros Employee Stock Option Scheme 2009 Options Granted during the year 2009-2010 (refer to Column A), Options Granted during the year 2010-2011 (refer Column B), Options Granted during the year 2012-2013 (refer Column C), Options Granted during the year 2013-2014 (refer column D), Options Granted during the year 2014-2015 (refer column E), Options Granted during the year 2014-2015 (refer column F), Options Granted during the year 2015-2016 (refer column G), Options Granted during the year 2016-2017 (refer column H), Eros Employee Stock Option Scheme 2017 Options Granted during the year 2017-2018 (refer column I & J), | 1,729,512 | 83,628 | 571,160 | 300,000 | 552,961 | 139,000 | 966,009 | 282,227 | 822,190 | 41,824 | 5,488,511 |
| (b) | Pricing Formula Discount to Fair Value | At a Discount ranging from Nil to 50% to Fair value (₹ 175/-) | At a Discount ranging from 20% to 50% to Fair value (₹ 175/-) | At a Discount of 57.15% to Fair Value (₹ 175/-) | At Nil Discount to Fair Value | At a Discount of approx 94 % to Fair Value (₹ 284/-) | At a Discount of approx 98% to Fair Value (₹ 376/-) | At a Discount of approx 95% to Fair Value (₹ 190/-) | At a Discount of approx 95% to Fair Value (₹ 188/-) | At a Discount of approx 95% to Fair Value (₹ 200.60/-) | At a Discount of approx 95% to Fair Value (₹ 190.45/-) |  |
| (c) | Options vested | 1,046,552 | 79,128 | 571,160 | 180,000 | 509,384 | 93,000 | 945,693 | 247,115 | 545,707 | 27,884 | 4,245,623 |
| (d) | Options exercised | 1,019,791 | 76,128 | 360,000 | 60,000 | 485,036 | 93,000 | 764,453 | 160,348 | 290,354 | 11,943 | 3,321,053 |
| (e) | Total number of shares arising as a result of exercise of options | 1,019,791 | 76,128 | 360,000 | 60,000 | 485,036 | 93,000 | 764,453 | 160,348 | 290,354 | 11,943 | 3,321,053 |
| (f) | Options lapsed (as at 31 March 2020) | 709,721 | 7,500 | 211,160 | 120,000 | 52,991 | 46,000 | 152,401 | 97,014 | 290,444 | - | 1,687,231 |

| | | Eros Employee Stock Option Scheme 2009 | | | | | | | | Eros Employee Stock Option Scheme 2017 | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | (A) | (B) | (C) | (D) | (E) | (F) | (G) | (H) | (I) | (J) | Total |
| | Date of Shareholders Approval | 4 December 2009 | | | | | | | | 27 September 2017 | | |
| | Total number of options approved under the Scheme | 5% of the issued paid up share capital as on grant Date | | | | | | | | 5% of the issued paid up share capital as on grant Date | | |
| | Grant dates | 17-Dec-09 | 12-Aug-10 | 1-Jul-12 | 14-Oct-13 | 12-Nov-14 | 12-Feb-15 | 9-Feb-16 | 10-Feb-17 | 14-Nov-17 | 8-Feb-18 | |
| (g) | Variation of terms options | Fair Market value of ESOP 2009 scheme is revised from ₹ 200 to ₹ 175 wide Postal Ballot dt 21 December 2010 | Fair Market value of ESOP 2009 scheme is revised from ₹ 200 to ₹ 175 wide Postal Ballot dt 21 December 2010 | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | |
| (h) | Money realized by exercise of options (upto 31 March 2020) | 139,542,885 | 6,609,600 | 27,000,000 | 9,000,000 | 4,850,360 | 930,000 | 7,644,530 | 1,603,480 | 2,903,537 | 119,430 | 200,203,822 |
| (I) | Total number of options in force (as at 31 March 2020) | - | - | - | 120,000 | 14,934 | - | 49,155 | 24,865 | 241,392 | 29,881 | 480,227 |
| (j) 1 | Employee wise details of options granted to Senior Management | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below |
| 2 | Employees to whom more than 5% options granted during the year | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below |
| 3 | Employees to whom options more than 1% of issued capital granted during the year | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable |
| (k) | Diluted EPS,pursuant to issue of shares on exercise of options | The diluted EPS will be ₹ (121.48) 10 per share, lower by ie ₹ NIL. There is no dilution. | | | | | | | | | | |
| (l) 1 | Method of calculation of employee compensation cost | Calculation is based on intrinsic value method | | | | | | | | | | |
| 2 | Instrinsic Value per share (in ₹) | 28.09 | 88.18 | 100.00 | - | 282.35 | 376.20 | 189.95 | 188.00 | 200.60 | 190.45 | |
| 3 | Difference between the above and employee compensation cost that shall have been recognized if it had used the fair value of the options | Cost has been recongnized using fair value. | | | | | | | | | | |
| 4 | Impact of this difference on Profits and on EPS of the Company | Not Applicable. | | | | | | | | | | |
| (m) 1 | Weighted average exercise price (in ₹) | 118.42 | 91.14 | 75.00 | 150.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | |

| | | Eros Employee Stock Option Scheme 2009 | | | | | | | | Eros Employee Stock Option Scheme 2017 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | (A) | (B) | (C) | (D) | (E) | (F) | (G) | (H) | (I) | (J) | Total |
| | Date of Shareholders Approval | 4 December 2009 | | | | | | | | 27 September 2017 | | |
| | Total number of options approved under the Scheme | 5% of the issued paid up share capital as on grant Date | | | | | | | | 5% of the issued paid up share capital as on grant Date | | |
| | Grant dates | 17-Dec-09 | 12-Aug-10 | 1-Jul-12 | 14-Oct-13 | 12-Nov-14 | 12-Feb-15 | 9-Feb-16 | 10-Feb-17 | 14-Nov-17 | 8-Feb-18 | |
| 2 | Weighted average fair value of options based on Black Scholes methodology (in ₹) | 114.64 | 95.25 | 122.19 | 55.49 | 284.07 | 379.69 | 189.19 | 179.37 | 193.28 | 183.28 | |
| (n) | Sigificant assumptions used to estimate fair value of options including weighted average | | | | | | | | | | | |
| 1 | Risk free interest rate | 6.30% | 6.50% | 8.36% | 8.57% | 8.50% | 7.74% | 7.59% | 6.51% | 6.90% | 7.38% | |
| 2 | Expected life | 5.25 years | 5.25 years | 5.5 years | 4.5 years | 3.5- 6.5 years | 3.0- 4.5 years | 3.5- 5.5 years | 3.5 years | 4.5 years | 4.5 years | |
| 3 | Expected volatility (based in competitor companies volatility) | 75% | 60% | 44% | 35% | 37.84% | 40.11% | 46.46% | 48.66% | 56.53% | 53.15% | |
| 4 | Expected dividends | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil | |
| 5 | Closing market price of share on a date prior to date of grant (Fair market value in absence of listing) (in ₹) | 175 | 175 | 168.65 | 144.75 | 291.45 | 386.3 | 199.95 | 199.85 | 200.75 | 190.5 | |

| Options granted to Senior Management Personnel (including more than 5%) during the year | Options Granted | Option Excercised | Options Lapsed | Options in force |
|---|---|---|---|---|
| Kumar Ahuja | NIL | NIL | NIL | 37,460 |
| Nandu Ahuja | NIL | NIL | NIL | 1,69,157 |

# Annexure B

## Form AOC-I

**(Pursuant to first proviso to sub-section (3) of Section 129 of Companies Act, 2013 read with Rule 5 of Companies (Accounts) Rules, 2014)**
**Statement containing salient features of the financial statement of subsidiaries/associate companies/joint ventures**

**Part "A": Subsidiaries**

₹ in lakhs

| Sr No | Name of Subsidiary | Date since Subsidiary was acquired | Reporting period for the subsidiary concerned, if different from the holding Company's reporting period | Reporting currency and Exchange rate as on the last date of the relevant Financial year in the case of foreign Subsidiaries | | Share Capital | Reserves & Surplus | Other Liabilities | Total Liabilities | Invest-ments | Total Assets | Turnover | Profit before Taxation | Provision for Taxation | Profit after Taxation | Proposed Dividend | % of Share-holding |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Currency | Rate of Exchange to INR | | | | | | | | | | | | |
| 1 | Eros International Films Private Limited | 31 March 1997 | 31 March 2020 | INR | 1.00 | 2,000 | (178) | 7,948 | 9,770 | 0 | 9,770 | 1,538 | (292) | (65) | (227) | Nil | 100.00% |
| 2 | Copsale Limited | 11 February 1999 | 31 March 2020 | USD | 75.37 | 45 | 90,542 | 544 | 91,132 | - | 91,132 | 10,886 | (17,129) | - | (17,129) | Nil | 100.00% |
| 3 | Bigscreen Entertainment Private Limited | 17 January 2007 | 31 March 2020 | INR | 1.00 | 1 | 76 | 120 | 197 | - | 197 | 0 | (1) | - | (1) | Nil | 64.00% |
| 4 | Eyeqube Studios Private Limited | 31 October 2007 | 31 March 2020 | INR | 1.00 | 1 | 45 | 1 | 47 | - | 47 | 23 | 11 | 5 | 6 | Nil | 100.00% |
| 5 | EM Publishing Private Limited | 25 March 2009 | 31 March 2020 | INR | 1.00 | 1 | (20) | 24 | 5 | - | 5 | 3 | (1) | 0 | (1) | Nil | 100.00% |
| 6 | Eros Animation Private Limited | 02 January 2009 | 31 March 2020 | INR | 1.00 | 1 | (3) | 2 | 0 | - | 0 | 0 | (0) | - | (0) | Nil | 100.00% |
| 7 | Digicine Pte Ltd | 30 March 2012 | 31 March 2020 | USD | 75.37 | 0.04 | 237 | 3,078 | 3,315 | - | 3,315 | 633 | (377) | | (377) | Nil | 100.00% |
| 8 | Colour Yellow Productions Private Limited | 23 May 2014 | 31 March 2020 | INR | 1.00 | 1 | 2,672 | 6,178 | 8,851 | - | 8,851 | 11,717 | 1,035 | 232 | 803 | Nil | 50.00% |
| 9 | ErosNow Private Limited (formerly known as Universal Power Systems Private Limited) | 01 August 2015 | 31 March 2020 | INR | 1.00 | 1 | (62) | 3,118 | 3,057 | - | 3,057 | 1,194 | (82) | 191 | (273) | Nil | 100.00% |

Note: 1) Eros International Disctribution LLP, subsidiary of the Company incorporated on 11 December 2015 has not yet commenced the operations.

2) Reliance Eros Productions LLP, subsidiary of the Company has filed an application for striking off the name of said LLP on 1 August 2020.

**Part "B": Associates and Joint Ventures**

Not Applicable

CORPORATE OVERVIEW | MANAGEMENT REPORT | FINANCIAL MANAGEMENT

# Annexure C

Information required under Section 197 of the Companies Act, 2013, read with The Companies (Appointment and Remuneration of Managerial Personnel) Rules, 2014

**A.** **Ratio of remuneration of each Directors/KMP to the median remuneration of the employees of the Company for the financial year 2019-20 is as follows:**

| Name of Director/KMP | Total remuneration (Amount in ₹) | Ratio of remuneration of director to the Median remuneration |
|---|---|---|
| Mr. Sunil Arjan Lulla | 52,685,724 | 79.60 |
| Mr. Dhirendra Swarup | 720,000 | 1.09 |
| Mr. Rakesh Sood | 720,000 | 1.09 |
| Mr. S. Lakshminarayanan | 400,000 | 0.60 |
| Mr. Sunil Srivastav | 360,000 | 0.54 |
| Ms. Bindu Saxena^ | 80,000 | 0.12 |
| Mr. Pradeep Dwivedi# | 3,718,068 | 5.62 |
| Mr. Farokh Gandhi | 7,918,560 | 11.96 |
| Mr. Vijay Thaker* | 2,160,542 | 3.26 |
| Mr. Abhishekh Kanoi* | 1,031,331 | 1.56 |

**Notes:**

1. The above information is on standalone basis
2. The aforesaid details are calculated on the basis of remuneration for the financial year 2019-20.
3. The remuneration to Directors includes sitting fees paid to them for the financial year 2019-20.
4^. Ms. Bindu Saxena was appointed as Additional Independent Director w.e.f. 26 September 2019
5#. Mr. Pradeep Dwivedi was appointed as Chief Executive Officer (India) w.e.f. 10 February 2020
6*. Mr. Abhishekh Kanoi ceased to be a VP - Company Secretary & Compliance Officer w.e.f. 12 August 2019 and in his place Mr. Vijay Thaker was appointed as VP - Company Secretary & Compliance Officer w.e.f. 13 August 2019.

**B.** **Percentage increase/(decrease) in remuneration of each Director, Chief Financial Officer and Company Secretary in the financial year 2019-20 are as follows:**

| Name of Director | Designation | Remuneration (in ₹) | | Increase/ (Decrease) in % |
|---|---|---|---|---|
| | | **2019-20** | **2018-19** | |
| Mr. Dhirendra Swarup | Non Executive Independent Director | 720,000 | 5,655,000 | (87.27) |
| Mr. Rakesh Sood | Non Executive Independent Director | 720,000 | 3,207,500 | (77.55) |
| Mr. Sunil Arjan Lulla | Executive Vice Chairman & Managing Director | 52,685,724 | 48,008,808 | 9.74 |
| Mr. Kishore Arjan Lulla | Executive Director | - | 14,070,372 | Refer Note No. 2 |
| Mr. S. Lakshminarayanan | Non Executive Independent Director | 400,000 | 3,007,500 | (86.70) |
| Mr. Sunil Srivastav | Non Executive Independent Director | 360,000 | 2,453,120 | (85.32) |
| Ms. Bindu Saxena | Non Executive Independent Director | 80,000 | - | Refer Note No. 3 |
| Mr. Pradeep Dwivedi | Chief Executive Officer | 3,718,068 | - | Refer Note No. 4 |
| Mr. Farokh P Gandhi | Chief Financial Officer | 7,918,560 | 7,918,560 | - |
| Mr. Vijay Thaker | Vice President - Company Secretary & Compliance Officer | 2,160,542 | - | Refer Note No. 5 |
| Mr. Abhishekh Kanoi | Vice President - Company Secretary & Compliance Officer | 1,031,331 | 3,367,956 | Refer Note No. 5 |

**Note:**

1. No Commission was paid to Non-Executive Independent Directors for the financial year 2019-20 due to loss.
2. Mr. Kishore Lulla, Executive Director has not taken any remuneration w.e.f. 1 April 2019.
3. Ms. Bindu Saxena was appointed as Non-Executive Additional Independent Director on 26 September 2019.
4. Mr. Pradeep Dwivedi was appointed as Chief Executive Officer (India) on 10 February 2020.
5. Mr. Abhishekh Kanoi ceased to be a VP - Company Secretary & Compliance Officer w.e.f. 12 August 2019 and in his place Mr. Vijay Thaker was appointed as VP - Company Secretary & Compliance Officer w.e.f. 13 August 2019.

**C.    Percentage decrease in the median remuneration of employees in the financial year 2019-20:**

| Particulars | 2019-20<br>Amt in ₹ | 2018-19<br>Amt in ₹ | % Change |
|---|---|---|---|
| Median Remuneration of all employees per annum | 661,896 | 671,700 | (1.48) |

**D.    Number of permanent employees on the rolls of the Company as on 31 March 2020 :**

As on 31 March 2020, the Company has 277 permanent employees on its payroll, as compared to 307 employees as at 31 March 2019.

**E.    Comparison of average percentile increase in salary of employees other than the key managerial personnel and the percentage increase in the key managerial remuneration:**

| Particulars | 2019-20<br>Amt in ₹ | 2018-19<br>Amt in ₹ | % Change |
|---|---|---|---|
| Average salary of all employees (other than Key Managerial Personnel) | 1,445,060 | 1,485,690 | (2.73) |

**F.**    The key parameters for any variable component of Remuneration availed by the Directors are considered by the Board of Directors based on the recommendation of the Nomination and Remuneration Committee as per the Remuneration Policy of the Company.

**G.    Affirmation:**

Pursuant to Rule 5(1)(xii) of the Companies (Appointment and Remuneration of Managerial Personnel) Rules, 2014, the Company hereby affirms that the remuneration paid is as per the Remuneration Policy for Directors, Key Managerial Personnel and other Employees.

DIRECTORS' REPORT

# Annexure D

**FORM NO. MR-3**
**SECRETARIAL AUDIT REPORT**
For the Financial Year Ended 31 March 2020
[Pursuant to Section 204(1) of the Companies Act, 2013 and Rule 9 of the Companies
(Appointment and Remuneration of Managerial Personnel) Rules, 2014]

To,
The Members,
**Eros International Media Limited**
901/902, Supreme Chambers,
Off Veera Desai Road, Andheri West,
Mumbai - 400053
Maharashtra (India).

I have conducted the Secretarial Audit of the compliance of applicable statutory provisions and the adherence to good corporate practices by **Eros International Media Limited** (hereinafter called the "**Company**").

Secretarial Audit was conducted in a manner that provided me a reasonable basis for evaluating the corporate conducts/ statutory compliances and expressing our opinion thereon.

Based on our verification of the Company's books, papers, minute books, forms and returns filed and other records maintained by the Company and also the information provided by the Company, its officers, agents and authorized representatives during the conduct of secretarial audit, I hereby report that in my opinion, the Company has, during the audit period covering the financial year ended on 31 March 2020 has complied with the statutory provisions listed hereunder and also that the Company has proper Board processes and compliance mechanism in place to the extent, in the manner and subject to the reporting made hereinafter:

I have examined the books, papers, minute books, forms and returns filed and other records maintained by the Company for the financial year ended on 31 March 2020 according to the provisions of:

(1)    The Companies Act, 2013 (the Act) and the rules made thereunder;

(2)    The Securities Contracts (Regulation) Act, 1956 ('SCRA') and the rules made thereunder;

(3)    The Depositories Act, 1996 and the Regulations and Bye-laws framed thereunder;

(4)    Foreign Exchange Management Act, 1999 and the rules and regulations made thereunder to the extent of Foreign Direct Investment, Overseas Direct Investment and External Commercial Borrowings (External Commercial Borrowing not applicable during the audit period);

(5)    The following Regulations and Guidelines prescribed under the Securities and Exchange Board of India Act, 1992 ('SEBI Act'):

    a.    The Securities and Exchange Board of India (Substantial Acquisition of Shares and Takeovers) Regulations, 2011;

    b.    The Securities and Exchange Board of India (Prohibition of Insider Trading) Regulations, 2015;

    c.    The Securities and Exchange Board of India (Issue of Capital and Disclosure Requirements) Regulations, 2009 and Securities and Exchange Board of India (Issue of Capital and Disclosure Requirements) Regulations, 2018 (Not Applicable to Company during the Audit period);

    d.    The Securities and Exchange Board of India (Share Based Employee Benefits) Regulations, 2014;

    e.    The Securities and Exchange Board of India (Registrars to an Issue and Share Transfer Agents) Regulations, 1993 regarding the Companies Act and dealing with client;

    f.    The Securities and Exchange Board of India (Employee Stock Option Scheme and Employee Stock Purchase Scheme) Guidelines, 1999.

I have examined all the other applicable laws to the Company on the basis of the representations made by the Management.

I have also examined compliance with the applicable clauses of the following:

a)    Secretarial Standards issued by The Institute of Company Secretaries of India.

b)    The Securities and Exchange Board of India (Listing Obligations and Disclosure Requirements) Regulations, 2015

During the period under review the Company has complied with the provisions of the Act, Rules, Regulations, Guidelines, Standards, etc.

**I further report that**

The Board of Directors of the Company is duly constituted with proper balance of Executive Directors, Non-Executive Directors and Independent Directors. The changes in the composition of the Board of Directors that took place during the period under review were carried out in compliance with the provisions of the Act.

Adequate notice is given to all directors to schedule the Board Meetings, agenda and detailed notes on agenda were sent at least seven days in advance, and a system exists for seeking and obtaining further information and clarifications on the agenda items before the meeting and for meaningful participation at the meeting.

All the decisions were carried out unanimously by the members of the Board and Committees and the same were duly recorded in the minutes of the meeting of the Board of Directors and Committees of the Company.

**I further report that** there are adequate systems and processes in the company to commensurate with the size and operations of the company to monitor and ensure compliance with applicable laws, rules, regulations and guidelines.

**I further report that** during the period under review the Company had submitted Voting results of the Annual General Meeting with a delay of three (3) hours than the Statutory Period of 48 hours from the Conclusion of the meeting.

**I further report that** there were no instances of:

i.     Public / Rights / Preferential issue of shares / debentures / sweat equity.
ii.    Buy-Back of securities.
iii.   Merger / amalgamation / reconstruction etc.
iv.    Foreign technical collaborations

For SG and Associates,
Practising Company Secretaries

**Suhas Ganpule**
**Proprietor**
Membership No: 12122
C. P No: 5722
UDIN: A012122B000473209

Place: Mumbai
Date: 18 July 2020

## Annexure A

To,
The Members,
**Eros International Media Limited**
901/902, Supreme Chambers,
Off Veera Desai Road, Andheri West,
Mumbai - 400053
Maharashtra (India).

 Our report of even date is to be read along with this letter.

1.   Maintenance of secretarial record is the responsibility of the management of the Company. Our responsibility is to express an opinion on these secretarial records based on our audit.

2.   We have followed the audit practices and processes as were appropriate to obtain reasonable assurance about the correctness of the contents of the secretarial record. The verification was done on test basis to ensure that the correct facts are reflected in secretarial records. We believe that the practices and processes, we followed provide a reasonable basis for our opinion.

3.   We have not verified the correctness and appropriateness of financial records and Books of Accounts of the company.

4.   Where ever required, we have obtained management representation about the compliance of laws, rules, regulations, norms and standards and happening of events.

5.   The compliance of the provisions of Corporate and other applicable laws, rules, regulations, norms and standards is the responsibility of management. Our examination was limited to the verification of procedure on test basis.

6.   The secretarial audit report is neither an assurance as to the future viability of the Company nor of the efficacy or effectiveness with which the management has conducted the affairs of the Company.

7.   In view of the restrictions impoed by the Government of India on movement of people acress India to contain the spread of COVID-19 pandemic, which led to the complete lockdown across the nation, we have relied on electronic data verification of certain records as the physical verification was not possible.

For SG and Associates

**Suhas S Ganpule**
**Proprietor**
Practicing Company Secretaries
Membership No: 12122
C. P No: 5722
UDIN: A012122B000473209

Place: Mumbai
Date: 18 July 2020

# Annexure E

**Particulars of Employees as per Rule 5 of Companies (Appointment and Remuneration) Rules, 2014 for the financial year ended 31 March 2020**

| Sr. No. | Name of Employee | Designation | Remuneration (in ₹) | Qualification | Experience | Date of commencement of employment with the Company | Age of Employee | Last employment held by such employee before joining the Company | No. of Equity Shares | % of Equity Shares | Relation of employee with Directors of the Company |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Mr. Sunil Arjan Lulla | Executive Vice Chairman & Managing Director | 5,26,85,724 | Bachelor of Commerce | 27 yrs + | 19-Aug-94 | 56 Years | - | 1,400 | 0.00% | Brother of Mr. Kishore Arjan Lulla |
| 2 | Mr. Ali Hussein | Chief Executive Officer - ErosNow | 18,800,004 | B.Sc (Eletrical Engg.) | 16 yrs + | 11-Jan-18 | 40 Years | Google, Viacom | 0 | 0.00% | - |
| 3 | Mr. Kumar Ahuja | Chief Operating Officer | 11,512,560 | SYJC Commerce | 20 yrs + | 22-Apr-99 | 41 Years | - | 59,937 | 0.06% | - |
| 4 | Mr. Ram Mirchandani | President - Motion Pictures | 10,631,214 | B.Sc Chemistry | 31 yrs+ | 08-Oct-18 | 53 Years | Sony Pictures Entertainment | 0 | 0.00% | - |
| 5 | Mr. Manav Sethi | Chief Marketing Officer | 9,399,049 | MBA in Marketing, LLB | 19 yrs + | 28-Jan-19 | 42 Years | ALT Digital Media Entertainment Limited | 2,200 | 0.00% | - |
| 6 | Mr. Nandu Ahuja | Senior Vice President - India Theatrical | 8,739,840 | Bachelor of Commerce | 36 yrs + | 27-Jan-09 | 56 Years | Balaji Motion Pictures Limited | 14,683 | 0.02% | - |
| 7 | Mr. Aamod Gupte [4] | Head - Legal | 8,157,539 | PGLM (Media Laws) | 28 yrs | 15-Apr-15 | 52 Years | Media Law Office | 0 | 0.00% | - |
| 8 | Ms. Krishika Lulla | Creative Producer | 8,065,200 | Bachelor of Arts | 8 yrs | 1-Jan-15 | 48 Years | - | 1,400 | 0.00% | Wife of Mr. Sunil Arjan Lulla |
| 9 | Mr. Farokh Gandhi | Chief Financial Officer | 7,918,560 | Chartered Accountant | 27 yrs | 9-Mar-18 | 51 Years | - | 43 | 0.00% | - |
| 10 | Mr. Pradeep Dwivedi [4] | Chief Executive Officer – India | 3,718,068 | B.Sc., MBA | 26 yrs | 27-Jan-20 | 49 Years | Sakal Media Group | 0 | 0.00% | - |

Notes:

[1] Gross remuneration comprises of Salary Allowances, monetary value of perquisites valued as per the rules under the Income Tax Act, 1961, Commission, Statutory Contribution to Provident Fund & Family Pension Fund and Superannuation Fund, but excludes contributions to Gratuity Fund.

[2] All the above employees are on pay roll of the Company and their service can be terminated by notice on either side.

[3] None of the employees mentioned above hold more than 2% of the shares of your Company, alongwith their spouse and dependent children.

[4] Employed for part of a year and in receipt of Remuneration aggregating to ₹ 8,50,000/- or more per month.

# Annexure F

**Form No. AOC-2**

Form for disclosure of particulars of contracts/arrangements entered into by the company with related parties referred to in sub-section (1) of section 188 of the Companies Act, 2013 including certain arms length transactions under third proviso thereto

1.    **Details of contracts or arrangements or transactions not at arm's length basis :**

| | | |
|---|---|---|
| (a) | Name(s) of the related party and nature of relationship | Nil |
| (b) | Nature of contracts/arrangements/transactions | Nil |
| (c) | Duration of the contracts/arrangements/transactions | Nil |
| (d) | Salient terms of the contracts or arrangements or transactions including the value, if any | Nil |
| (e) | Justification for entering into such contracts or arrangements or transactions | Nil |
| (f) | Date(s) of approval by the Board | Nil |
| (g) | Amount paid as advances, if any | Nil |
| (h) | Date on which the special resolution was passed in general meeting as required under first proviso to Section 188 | Nil |

2.    **Details of material contracts or arrangement or transactions at arm's length basis exceeding 10% of Annual Consolidated turnover.**

| | | Eros World Wide FZ LLC | Eros Digital FZ LLC |
|---|---|---|---|
| (a) | Name(s) of the related party | **Eros World Wide FZ LLC** | **Eros Digital FZ LLC** |
| (b) | Nature of relationship | Holding Company | Fellow Subsidiary |
| (c) | Nature of contracts/arrangements/transactions | Sale of film right, DVD/VCD, Reimbursement of expense | Revenue Attributable and Reimbursement of expense |
| (d) | Duration of the contracts /arrangements/transactions | Not Applicable | Not Applicable |
| (e) | Salient terms of the contracts or arrangements or transactions including the value, if any: | Not Applicable | Not Applicable |
| (f) | Date(s) of approval by the Board, if any: | 23 May 2019 | 23 May 2019 |
| (g) | Amount ₹ lakhs | 48,231 | 12,949 |

DIRECTORS' REPORT

# Annexure G

**Form No. MGT-9**
**EXTRACT OF ANNUAL RETURN**
**as on the financial year ended on 31 March 2020**
[Pursuant to Section 92(3) of the Companies Act, 2013 and Rule 12(1) of the Companies
(Management and Administration) Rules, 2014]

## I.   REGISTRATION AND OTHER DETAILS:

| | | |
|---|---|---|
| i. | CIN No. | L99999MH1994PLC080502 |
| ii. | Registration Date | 19 August 1994 |
| iii. | Name of the Company | Eros International Media Limited |
| iv. | Category/Sub-Category of the Company | Public Company Limited by Shares |
| v. | Address of the Registered office and contact Details | 201, Kailash Plaza, Opp. Laxmi Industrial Estate, Off. Andheri Link Road, Andheri West, Mumbai - 400053, Maharashtra (India).<br><br>Tel No: +91 22 6602 1500 \| Fax: +91 22 6602 1540<br>Email : compliance.officer@erosintl.com |
| vi. | Whether listed company Yes/ No | Yes |
| vii. | Name, Address and Contact details of Registrar and Transfer Agent, if any | Link Intime India Private Limited<br><br>CIN: U67190MH1999PTC118368<br><br>C 101, 247 Park, LBS Marg, Vikhroli West, Mumbai 400 083, Maharashtra (India).<br><br>Tel: +91 22 4918 6270 \| Fax: +91 22 4918 6060;<br><br>E-mail: rnt.helpdesk@linkintime.co.in & mumbai@linkintime.co.in<br><br>Website: www.linkintime.co.in |

## II.   PRINCIPAL BUSINESS ACTIVITIES OF THE COMPANY:

All the business activities contributing 10 % or more of the total turnover of the Company are as under:-

| Sr. No. | Name and Description of main products/services | NIC Code of the Product/ service | % to total turnover of the company |
|---|---|---|---|
| 1 | Media and Entertainment Industry | 59131 | 100 |

* As per National Industrial Classification, 2008 issued by Central Statistical Organisation, Ministry of Statistics and Programme Implementation.

## III.   PARTICULARS OF HOLDING, SUBSIDIARY AND ASSOCIATE COMPANIES:

| Sr. No. | NAME AND ADDRESS OF THE COMPANY | CIN/GLN/LLPIN | Holding/ Subsidiary/ Associate | % of shares held* | Applicable Section |
|---|---|---|---|---|---|
| 1 | Eros International Plc, Isle of Man<br>Address: First Names House, Victoria Road, Douglas, Isle of Man IM2 4DF British Isles | 007466V | Ultimate Holding | 100.00 | 2(46) |
| 2 | Eros Worldwide FZ LLC<br>Address: 3902 Tower A, Business Central Towers, Dubai Media City, Sheikh Zayed Road, PO 502121, Dubai, United Arab Emirates | 30295 | Holding | 39.61 | 2(46) |
| 3 | Eros International Films Private Limited<br>Address: 201, Kailash Plaza, 2nd Floor, Plot No. A-12, Off New Link Road, Andheri West, Mumbai- 400 053, Maharashtra (India) | U92113MH1994PTC080423 | Subsidiary | 100.00 | 2(87) |
| 4 | Copsale Limited (Isle of Man)<br>Address: Offices of Ansbacher (BVI) Limited, P.O Box 659, Road Town, Tortola, British Virgin Islands | 269307 | Subsidiary | 100.00 | 2(87) |
| 5 | Big Screen Entertainment Private Limited<br>Address: B-301-302, Brook Hill Tower, 3rd Cross Lane, Lokhandwala Complex, Andheri West, Mumbai - 400 053, Maharashtra (India) | U92110MH2005PTC156504 | Subsidiary | 64.00 | 2(87) |

| Sr. No. | NAME AND ADDRESS OF THE COMPANY | CIN/GLN/LLPIN | Holding/ Subsidiary/ Associate | % of shares held* | Applicable Section |
|---|---|---|---|---|---|
| 6 | EyeQube Studios Private Limited Address: 201, Kailash Plaza, 2nd Floor, Plot No. 12, Off New Link Road, Andheri West, Mumbai- 400 053, Maharashtra (India) | U92120MH2007PTC175027 | Subsidiary | 100.00 | 2(87) |
| 7 | EM Publishing Private Limited Address: 201, Kailash Plaza, 2nd Floor, Plot No. 12, Off New Link Road, Andheri West, Mumbai- 400 053, Maharashtra (India) | U92140MH2008PTC178628 | Subsidiary | 100.00 | 2(87) |
| 8 | Eros Animation Private Limited Address: 201, Kailash Plaza, 2nd Floor, Plot No. 12, Off New Link Road, Andheri West, Mumbai- 400 053, Maharashtra (India) | U92100MH2008PTC186402 | Subsidiary | 100.00 | 2(87) |
| 9 | Digicine Pte. Limited Address: 9 Raffles Place, #27-00, Repubic Plaza, Singapore - 048619 | 201207959W | Subsidiary | 100.00 | 2(87) |
| 10 | Colour Yellow Productions Private Limited Address: G-001, Plot No B-53, Indus House, V P Road, Off. New Link Road, Near Monginis Cake Factory, Andheri (West) Mumbai – 400053, Maharashtra (India) | U92412MH2013PTC248167 | Subsidiary | 50.00 | 2(87) |
| 11 | ErosNow Private Limited (formerly known as Universal Power Systems Private Limited) Address: Gee Gee Plaza, Flat No. 20, 3rd Floor, No.1, Wheatcrofts Road, Nungambakkam-600034, Tamil Nadu (India). | U33111TN1984PTC010826 | Subsidiary | 100.00 | 2(87) |
| 12 | Eros International Distribution LLP Address: 201, Kailash Plaza, Plot No. A-12, Opp Laxmi Industrial Estate, Andheri West, Mumbai – 400 053, Maharashtra (India) | AAF-3133 | Subsidiary | 99.80 | 2(87) |
| 13 | Reliance Eros Productions LLP Address: 9th Floor, Maker Chamber IV, 222 Nariman Point, Mumbai- 400021, Maharashtra (India) | AAM-7521 | Subsidiary | 50.00 | 2(87) |

*Representing aggregate % of shares held by the Company and / or its subsidiaries.

**IV.  SHARE HOLDING PATTERN (Equity Share Capital Breakup as percentage of Total Equity)**

**(i)    Category-wise Share Holding**

| Sr. No. | Category of Shareholders | No. of Shares held at the beginning of the year i.e. 1 April 2019 | | | | No. of Shares held at the end of the year i.e. 31 March 2020 | | | | % Change during the year |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Demat | Physical | Total | % of Total Shares | Demat | Physical | Total | % of Total Shares | |
| **(A)** | **PROMOTER AND PROMOTER GROUP** | | | | | | | | | |
| **(1)** | **INDIAN** | | | | | | | | | |
| (a) | Individual /HUF | 7,000 | 0 | 7,000 | 0.01 | 7,000 | 0 | 7,000 | 0.01 | 0.00 |
| (b) | Central Government/ State Government(s) | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (c) | Bodies Corporate | 21,700,000 | 0 | 21,700,000 | 22.72 | 21,700,000 | 0 | 21,700,000 | 22.69 | (0.03) |
| (d) | Financial Institutions / Banks | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (e) | Others | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | **Sub-Total A (1)** | **21,707,000** | **0** | **21,707,000** | **22.73** | **21,707,000** | **0** | **21,707,000** | **22.70** | **(0.03)** |

**DIRECTORS' REPORT**

| Sr. No. | Category of Shareholders | No. of Shares held at the beginning of the year i.e. 1 April 2019 | | | | No. of Shares held at the end of the year i.e. 31 March 2020 | | | | % Change during the year |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Demat | Physical | Total | % of Total Shares | Demat | Physical | Total | % of Total Shares | |
| (2) | **FOREIGN** | | | | | | | | | |
| (a) | Individuals (NRIs/Foreign Individuals) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 |
| (b) | Bodies Corporate | 37,877,302 | 0 | 37,877,302 | 39.66 | 37,877,302 | 0 | 37,877,302 | 39.61 | (0.05) |
| (c) | Institutions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 |
| (d) | Qualified Foreign Investor | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 |
| (e) | Others | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 |
| | **Sub-Total A (2)** | **37,877,302** | **0** | **37,877,302** | **39.66** | **37,877,302** | **0** | **37,877,302** | **39.61** | **(0.05)** |
| | **Total A=A(1)+A(2)** | **59,584,302** | **0** | **59,584,302** | **62.39** | **59,584,302** | **0** | **59,584,302** | **62.31** | **(0.08)** |
| (B) | **PUBLIC SHAREHOLDING** | | | | | | | | | |
| (1) | **INSTITUTIONS** | | | | | | | | | |
| (a) | Mutual Funds /UTI | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (b) | Financial Institutions / Banks | 1,000 | 0 | 1,000 | 0.00 | 2,000 | 0 | 2,000 | 0.00 | 0.00 |
| (c) | Central Government / State Government(s) | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (d) | Venture Capital Funds | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (e) | Insurance Companies | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (f) | Foreign Portfolio Investors | 5,859,792 | 0 | 5,859,792 | 6.14 | 400,020 | 0 | 400,020 | 0.42 | (5.72) |
| (g) | Foreign Venture Capital Investors | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (h) | Qualified Foreign Investor | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (i) | Others (NBFC) | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | **Sub-Total B (1)** | **5,860,792** | **0** | **5,860,792** | **6.14** | **402,020** | **0** | **402,020** | **0.42** | **(5.72)** |
| (2) | **NON-INSTITUTIONS** | | | | | | | | | |
| (a) | Bodies Corporate | 6,545,923 | 0 | 6,545,923 | 6.85 | 4,721,570 | 0 | 4,721,570 | 4.94 | (1.91) |
| (b) | Individuals | | | | | | | | | |
| (i) | Individuals holding nominal share capital upto ₹ 1 lakh | 11,766,925 | 123 | 11,767,048 | 12.32 | 25,748,609 | 123 | 25,748,732 | 26.93 | 14.61 |
| (ii) | Individuals holding nominal share capital in excess of ₹ 1 lakh | 7,774,017 | 0 | 7,774,017 | 8.14 | 1,338,275 | 0 | 1,338,275 | 1.40 | (6.74) |
| (c) | NBFCs registered with RBI | 148,185 | 0 | 148,185 | 0.16 | 10,839 | 0 | 10,839 | 0.01 | (0.15) |
| (d) | Others | | | | | | | | | |
| | Clearing Members | 2,019,350 | 0 | 2,019,350 | 2.11 | 332,273 | 0 | 332,273 | 0.35 | (1.76) |
| | Foreign Nationals | 119 | 0 | 119 | 0.00 | 119 | 0 | 119 | 0.00 | 0.00 |
| | Hindu Undivided Family | 1,067,463 | 0 | 1,067,463 | 1.12 | 2,221,662 | 0 | 2,221,662 | 2.32 | 1.20 |
| | Non Resident Indians | 560,107 | 0 | 560,107 | 0.59 | 869,539 | 0 | 869,539 | 0.91 | 0.32 |
| | NRI Non-Repatriation | 180,499 | 0 | 180,499 | 0.19 | 390,692 | 0 | 390,692 | 0.41 | 0.22 |
| | Trusts | 335 | 0 | 335 | 0.00 | 9,000 | 0 | 9,000 | 0.01 | 0.01 |
| | **Sub-Total B(2)** | **30,062,923** | **123** | **30,063,046** | **31.48** | **35,642,578** | **123** | **35,642,701** | **37.27** | **(5.79)** |
| | **Total B=B(1) + B(2)** | **35,923,715** | **123** | **35,923,838** | **37.61** | **36,044,598** | **123** | **36,044,721** | **37.69** | **0.08** |
| | **Total (A+B)** | **95,508,017** | **123** | **95,508,140** | **100.00** | **95,628,900** | **123** | **95,629,023** | **100.00** | **0.00** |
| (c) | Shares held by custodians for GDRs and ADRs | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | **GRAND TOTAL (A+B+C)** | **95,508,017** | **123** | **95,508,140** | **100.00** | **95,628,900** | **123** | **95,629,023** | **100.00** | **0.00** |

**(ii)    Shareholding of Promoters:**

| Sr. No. | Shareholder's Name | Shareholding at the beginning of the year | | | Shareholding at the end of the year | | | % change in share holding during the year |
|---|---|---|---|---|---|---|---|---|
| | | No. of Shares | % of total Shares of the company | % of Shares Pledged/ encumbered to total shares | No. of Shares | % of total Shares of the Company | % of Shares Pledged/ encumbered to total shares | |
| 1 | Legal Heirs of Arjan Lulla | 1,400 | 0.00 | 0.00 | 1,400 | 0.00 | 0.00 | 0.00 |
| 2 | Krishika Sunil Lulla | 1,400 | 0.00 | 0.00 | 1,400 | 0.00 | 0.00 | 0.00 |
| 3 | Meena Arjan Lulla | 2,800 | 0.00 | 0.00 | 2,800 | 0.00 | 0.00 | 0.00 |
| 4 | Sunil Arjan Lulla | 1,400 | 0.00 | 0.00 | 1,400 | 0.00 | 0.00 | 0.00 |
| 5 | Eros Worldwide FZ LLC | 37,877,302 | 39.66 | 29.78 | 37,877,302 | 39.61 | 38.40 | (0.05) |
| 6 | Eros Digital Private Limited | 21,700,000 | 22.72 | 0.00 | 21,700,000 | 22.69 | 0.00 | (0.03) |
| | Total | 59,584,302 | 62.38 | 29.78 | 59,584,302 | 62.30 | 38.40 | (0.08) |

Note: Eros Worldwide FZ LLC pledged 36,721,169 equity shares as on March 31, 2020. Out of total shares pledged, 20,293,303 equity shares are transferred by way of pledge to pool account of the Lender, who hold the shares on behalf of Eros Worldwide FZ LLC.

**(iii)    Change in Promoters' Shareholding:**

| Sr. No. | Name of Promoter | Shareholding at the beginning of the year | | Cumulative Shareholding during the year | | Reason |
|---|---|---|---|---|---|---|
| | | No. of Shares | % of total Shares of the Company | No. of Shares | % of total Shares of the Company | |
| 1 | **Legal Heirs of Arjan Gobindram Lulla** | | | | | |
| | At the beginning of the year | 1,400 | 0.00 | 1,400 | 0.00 | |
| | Date wise Increase / Decrease in Promoters Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc) | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 1,400 | 0.00 | |
| 2 | **Krishika Sunil Lulla** | | | | | |
| | At the beginning of the year | 1,400 | 0.00 | 1,400 | 0.00 | |
| | Date wise Increase / Decrease in Promoters Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 1,400 | 0.00 | |
| 3 | **Meena Arjan Lulla** | | | | | |
| | At the beginning of the year | 2,800 | 0.00 | 2,800 | 0.00 | |
| | Date wise Increase / Decrease in Promoters Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc) | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 2,800 | 0.00 | |
| 4 | **Sunil Arjan Lulla** | | | | | |
| | At the beginning of the year | 1,400 | 0.00 | 1,400 | 0.00 | |
| | Date wise Increase / Decrease in Promoters Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc) | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 1,400 | 0.00 | |
| 5 | **Eros Worldwide FZ LLC** | | | | | |
| | At the beginning of the year | 37,877,302 | 39.66 | 37,877,302 | 39.66 | |
| | Date wise Increase / Decrease in Promoters Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc) | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 37,877,302 | 39.61 | |

DIRECTORS' REPORT

| Sr. No. | Name of Promoter | Shareholding at the beginning of the year | | Cumulative Shareholding during the year | | Reason |
|---|---|---|---|---|---|---|
| | | No. of Shares | % of total Shares of the Company | No. of Shares | % of total Shares of the Company | |
| 6 | **Eros Digital Private Limited** | | | | | |
| | At the beginning of the year | 21,700,000 | 22.72 | 21,700,000 | 22.72 | |
| | Date wise Increase / Decrease in Promoters Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc) | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 21,700,000 | 22.69 | |

(iv)   **Shareholding Pattern of top ten Shareholders (other than Directors, Promoters and Holders of GDRs and ADRs):**

| Sr. No. | Shareholder's Name | Shareholding at the beginning of the year | | Cumulative Shareholding during the year | | Reason |
|---|---|---|---|---|---|---|
| | | No. of shares | % of total shares of the Company | No. of shares | % of total shares of the Company | |
| 1 | **Government Pension Fund Global** | | | | | |
| | At the beginning of the year | 1,520,000 | 1.59 | 1,520,000 | 1.59 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc.): | | | | | |
| | 19.04.2019 | 49,834 | 0.05 | 1,569,834 | 1.64 | Purchase |
| | 10.05.2019 | 352,957 | 0.37 | 1,922,791 | 2.01 | Purchase |
| | 17.05.2019 | 23,500 | 0.02 | 1,946,291 | 2.04 | Purchase |
| | 31.05.2019 | 53,709 | 0.06 | 2,000,000 | 2.09 | Purchase |
| | 27.09.2019 | 53,984 | 0.06 | 2,053,984 | 2.15 | Purchase |
| | 30.09.2019 | 26,376 | 0.03 | 2,080,360 | 2.18 | Purchase |
| | 11.10.2019 | 30,640 | 0.03 | 2,111,000 | 2.21 | Purchase |
| | 18.10.2019 | 61,957 | 0.06 | 2,172,957 | 2.27 | Purchase |
| | 22.11.2019 | 227,043 | 0.24 | 2,400,000 | 2.51 | Purchase |
| | 31.12.2019 | 100,000 | 0.10 | 2,500,000 | 2.61 | Purchase |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 2,500,000 | 2.61 | |
| 2 | **Puran Associates Private Limited** | | | | | |
| | At the beginning of the year | 1,080,000 | 1.13 | 1,080,000 | 1.13 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc.): | - | - | - | - | |
| | 12.07.2019 | 210,000 | 0.22 | 1,290,000 | 1.35 | Purchase |
| | 26.07.2019 | 40,000 | 0.04 | 1,330,000 | 1.39 | Purchase |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 1,330,000 | 1.39 | |

| Sr. No. | Shareholder's Name | Shareholding at the beginning of the year | | Cumulative Shareholding during the year | | Reason |
|---|---|---|---|---|---|---|
| | | No. of shares | % of total shares of the Company | No. of shares | % of total shares of the Company | |
| 3 | **M B Finmart Private Limited** | | | | | |
| | At the beginning of the year | 1,109,352 | 1.16 | 1,109,352 | 1,16 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | | | | | |
| | 12.07.2019 | 300,000 | 0.31 | 1,409,352 | 1.47 | Purchase |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 1,409,352 | 1.47 | |
| 4 | **Trishakti Power Holding Private Limited** | | | | | |
| | At the beginning of the year | 650,000 | 0.68 | 650,000 | 0.68 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | | | | | |
| | 10.05.2019 | (100,000) | (0.10) | 550,000 | 0.58 | Sale |
| | 24.05.2019 | (118,000) | (0.13) | 432,000 | 0.45 | Sale |
| | 05.07.2019 | 600,000 | 0.63 | 1,032,000 | 1.08 | Purchase |
| | 30.09.2019 | 218,000 | 0.23 | 1,250,000 | 1.31 | Purchase |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 1,250,000 | 1.31 | |
| 5 | **VIC Enterprises Private Limited** | | | | | |
| | At the beginning of the year | 780,000 | 0.82 | 780,000 | 0.82 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc) | | | | | |
| | 12.07.2019 | 210,000 | 0.22 | 990,000 | 1.04 | Purchase |
| | 26.07.2019 | 40,000 | 0.04 | 1,030,000 | 1.08 | Purchase |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 1,030,000 | 1.08 | |
| 6 | **Polus Global Fund** | | | | | |
| | At the beginning of the year | 929,172 | 0.97 | 929,172 | 0.97 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc) | | | | | No Change |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 929172 | 0.97 | |
| 7 | **Jaideep Sampat** | | | | | |
| | At the beginning of the year | 96,502 | 0.10 | 96,502 | 0.10 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | | | | | |
| | 10.05.2019 | (46,502) | (0.05) | 50,000 | 0.05 | Sale |
| | 05.07.2019 | 709,574 | 0.74 | 759,574 | 0.79 | Purchase |
| | 12.07.2019 | 240,426 | 0.25 | 10,00,000 | 1.05 | Purchase |
| | 13.03.2020 | (129,636) | (0.14) | 870,364 | 0.91 | Sale |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 870,364 | 0.91 | |

**DIRECTORS' REPORT**

| Sr. No. | Shareholder's Name | Shareholding at the beginning of the year | | Cumulative Shareholding during the year | | Reason |
|---|---|---|---|---|---|---|
| | | No. of shares | % of total shares of the Company | No. of shares | % of total shares of the Company | |
| 8 | **Clarity Roadlink Private Limited** | | | | | |
| | At the beginning of the year | 19,000 | 0.02 | 19,000 | 0.02 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | | | | | |
| | 19.04.2019 | 10,000 | 0.01 | 29,000 | 0.03 | Purchase |
| | 14.06.2019 | 20,000 | 0.02 | 49,000 | 0.05 | Purchase |
| | 21.06.2019 | 72,000 | 0.08 | 121,000 | 0.13 | Purchase |
| | 29.06.2019 | 85,000 | 0.09 | 206,000 | 0.22 | Purchase |
| | 05.07.2019 | 50,000 | 0.05 | 256,000 | 0.27 | Purchase |
| | 12.07.2019 | 150,000 | 0.16 | 406,000 | 0.42 | Purchase |
| | 26.07.2019 | 82,000 | 0.09 | 488,000 | 0.51 | Purchase |
| | 02.08.2019 | 130,000 | 0.14 | 618,000 | 0.65 | Purchase |
| | 23.08.2019 | 100,000 | 0.10 | 718,000 | 0.75 | Purchase |
| | 30.08.2019 | 50,000 | 0.05 | 768,000 | 0.80 | Purchase |
| | 06.09.2019 | (30,000) | (0.03) | 738,000 | 0.77 | Sale |
| | 20.09.2019 | (10,000) | (0.01) | 728,000 | 0.76 | Sale |
| | 14.02.2020 | (78,000) | (0.08) | 650,000 | 0.68 | Sale |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 650,000 | 0.68 | |
| 9 | **Harshit Baheti** | | | | | |
| | At the beginning of the year | 100,000 | 0.10 | 100,000 | 0.10 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | | | | | |
| | 30.09.2019 | 400,000 | 0.42 | 500,000 | 0.52 | Purchase |
| | 18.10.2019 | 68,311 | 0.07 | 568,311 | 0.59 | Purchase |
| | 25.10.2019 | 31,689 | 0.03 | 600,000 | 0.63 | Purchase |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 600,000 | 0.63 | |
| 10 | **Rohit Rajgopal Dhoot** | | | | | |
| | At the beginning of the year | 0 | 0.00 | 0 | 0.00 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | | | | | |
| | 09.08.2019 | 254,594 | 0.27 | 254,594 | 0.27 | Purchase |
| | 30.09.2019 | 305,456 | 0.32 | 560,050 | 0.59 | Purchase |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 560,050 | 0.59 | |

(v)    **Shareholding of Directors and Key Managerial Personnel:**

| Sr. No. | For each of the Directors and KMP | Shareholding at the beginning of the year | | Cumulative Shareholding during the year | | Reason |
|---|---|---|---|---|---|---|
| | | No. of Shares | % of total Shares of the Company | No. of Shares | % of total Shares of the Company | |
| 1 | **Sunil Arjan Lulla** | | | | | |
| | At the beginning of the year | 1,400 | 0.00 | 1,400 | 0.00 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 1,400 | 0.00 | |
| 2 | **Farokh P. Gandhi** | | | | | |
| | At the beginning of the year | 43 | 0.00 | 43 | 0.00 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 43 | 0.00 | |

Note: None of the Directors and Key Managerial Personnel hold any shares in the Company except mentioned above.

## V.    INDEBTEDNESS

**Indebtedness of the Company including interest outstanding/accrued but not due for payment**                    (₹ in lakhs)

| | Secured Loans excluding deposits | Unsecured Loans | Deposits | Total Indebtedness |
|---|---|---|---|---|
| **Indebtedness at the beginning of the financial year** | | | | |
| i) Principal Amount | 54,463 | 12,077 | - | 66,540 |
| ii) Interest due but not paid | 161 | - | - | 161 |
| iii) Interest accrued but not due | 135 | 27 | - | 162 |
| **Total (i+ii+iii)** | **54,759** | **12,104** | **-** | **66,863** |
| **Change in Indebtedness during the financial year** | | | | |
| * Addition | 33,151 | 6,515 | - | 39,666 |
| * Reduction | (41,352) | (6,171) | - | (47,523) |
| **Net Change** | **(8,201)** | **344** | **-** | **(7,857)** |
| **Indebtedness at the end of the financial year** | | | | |
| i) Principal Amount | 47,110 | 12,420 | - | 59,531 |
| ii) Interest due but not paid | 23 | - | - | 23 |
| iii) Interest accrued but not due | 452 | 99 | - | 550 |
| **Total (i+ii+iii)** | **47,584** | **12,519** | **-** | **60,104** |

**DIRECTORS' REPORT**

## VI. REMUNERATION OF DIRECTORS AND KEY MANAGERIAL PERSONNEL

### A. Remuneration to Managing Director, Whole-Time Directors and/or Manager:

(Amount in ₹)

| Sr. No. | Particulars of Remuneration | Sunil Arjan Lulla (Managing Director) | Total |
|---|---|---|---|
| 1 | Gross salary | | |
| | (a) Salary as per provisions contained in section 17(1) of the Income-tax Act, 1961 | 51,446,124 | 51,446,124 |
| | (b) Value of perquisites u/s 17(2) Income-tax Act, 1961 | 1,239,600 | 1,239,600 |
| | (c) Profits in lieu of salary under section 17(3) Income-tax Act, 1961 | Nil | Nil |
| 2 | Stock Option | Nil | Nil |
| 3 | Sweat Equity | Nil | Nil |
| 4 | Commission | Nil | Nil |
| | - as % of profit | Nil | Nil |
| | - others, specify | Nil | Nil |
| 5 | Others | Nil | Nil |
| | **Total (A)** | **52,685,724** | **52,685,724** |
| | **Ceiling as per the Act** | | **-** |

### B. Remuneration to other directors:

| Sr. No. | Particulars of Remuneration | Name of Directors | Amount in (₹) |
|---|---|---|---|
| **1.** | **Independent Directors** | | |
| | Fees for attending Board/Committee Meetings | Dhirendra Swarup | 720,000 |
| | | Rakesh Sood | 720,000 |
| | | S. Lakshminarayanan | 400,000 |
| | | Sunil Srivastav | 360,000 |
| | | Bindu Saxena | 80,000 |
| | Commission payable for FY 2019-20 | | 0 |
| | Others [Reimbursement of maintenance of Chairman's office and expenses incurred towards performance of duties as Chairman] | Dhirendra Swarup | 559,759 |
| | **Total (1)** | | **2,839,759** |
| **2.** | **Other Non-Executive Non Independent Directors** | | |
| | Fees for attending Board/Committee Meetings | | 0 |
| | Commission | | 0 |
| | Others, please specify | | 0 |
| | **Total (2)** | | **0** |
| | **Total (B) = (1+2)** | | **2,839,759** |
| | **Total Managerial Remuneration (A+B)** | | **55,525,483** |
| | **Overall Ceiling as per the Act** | Sitting Fees paid is within the limits specified under the Companies Act, 2013 | |

**C.**   **Remuneration to Key Managerial Personnel other than Managing Director, Whole-time Directors and/or Manager:**

(Amount in ₹)

| Sr. No. | Particulars of Remuneration | Key Managerial Personnel | | | | Total |
|---|---|---|---|---|---|---|
| | | Farokh P. Gandhi Chief Financial Officer | *Abhishekh Kanoi VP-Company Secretary & Compliance Officer | *Vijay Thaker VP- Company Secretary & Compliance Officer | #Pradeep Dwivedi Chief Executive Officer | |
| 1 | Gross Salary | | | | | |
| (a) | Salary as per provisions contained in section 17(1) of the Income-tax Act, 1961 | 7,918,560 | 1,031,331 | 2,160,542 | 3,718,068 | 14,828,501 |
| (b) | Value of perquisites u/s 17(2) Income-tax Act, 1961 | 0 | 0 | 0 | 0 | 0 |
| (c) | Profits in lieu of salary under section 17(3) Income-tax Act, 1961 | 0 | 0 | 0 | 0 | 0 |
| 2 | Stock Option | 0 | 0 | 0 | 0 | 0 |
| 3 | Sweat Equity | 0 | 0 | 0 | 0 | 0 |
| 4 | Commission | 0 | 0 | 0 | 0 | 0 |
| | - as % of profit | 0 | 0 | 0 | 0 | 0 |
| | - others, specify | 0 | 0 | 0 | 0 | 0 |
| 5 | Others | 0 | 0 | 0 | 0 | 0 |
| | **Total** | **7,918,560** | **1,031,331** | **2,160,542** | **3,718,068** | **14,828,501** |
| | Ceiling as per the Act | | | Not Applicable | | |

*\* Mr. Vijay Thaker was appointed as Vice President - Company Secretary & Compliance Officer of the Company w.e.f. 13 August 2019 in place of Mr. Abhishekh Kanoi who has resigned at the close of business hours on 12 August 2019.*

*# Mr. Pradeep Dwivedi was appointed as Chief Executive Officer w.e.f. 10 February 2020.*

**VII.   PENALTIES / PUNISHMENT/ COMPOUNDING OF OFFENCES:**

| Type | Section of the Companies Act | Brief Description | Details of Penalty/ Punishment/ Compounding fees imposed | Authority [RD/NCLT/ COURT] | Appeal made, if any (give Details) |
|---|---|---|---|---|---|
| **A. COMPANY** | | | | | |
| Penalty | | | | | |
| Punishment | | | NIL | | |
| Compounding | | | | | |
| **B. DIRECTORS** | | | | | |
| Penalty | | | | | |
| Punishment | | | NIL | | |
| Compounding | | | | | |
| **C. OTHER OFFICERS IN DEFAULT** | | | | | |
| Penalty | | | | | |
| Punishment | | | NIL | | |
| Compounding | | | | | |

DIRECTORS' REPORT

# Annexure H

## Corporate Social Responsibility

| 1. | Brief outline of the Company's CSR policy | The Company's CSR vision is to make concerted efforts towards promotion of education amongst the underprivileged and women empowerment. Besides this, the Company may also undertake other CSR activities listed in Schedule VII of the Companies Act, 2013. |
|---|---|---|
| 2. | Overview of projects or programs undertaken/ proposed to be undertaken | In accordance with the Company's CSR Policy and its vision, the Company is proposed to participate in CSR activities with "Arpan" the registered NGO which is engaged in Personal Safety Education programme for dealing with child sexual abuse. It also focuses on creating awareness and skill enhancement of adults like parents, teachers and institutional care takers who are primary stakeholders and care givers in child's life. |
| 3. | Reference to the web-link to the CSR policy and projects or programs | The details of CSR Policy are available on the website of the Company viz. www.erosstx.com. |
| 4. | Composition of the CSR Committee | Members of the Committee:<br>• Mr. Dhirendra Swarup [Non-Executive Independent Director] (Chairman)<br>• Mr. Rakesh Sood [Non-Executive Independent Director]<br>• Mr. Kishore Lulla [Executive Director]<br>• Mr. Sunil Lulla [Executive Director] |

| 5. | Average Net Profit of the Company for last three Financial Years | Net Profit before Tax (NPBT) | |
|---|---|---|---|

| Particulars | ₹ in Crores |
|---|---|
| 2018-19 | 292.55 |
| 2017-18 | 197.43 |
| 2016-17 | 236.94 |
| **Average NPBT** | **242.30** |
| **2% of Average NPBT** | **4.84** |

| 6. | Prescribed CSR Expenditure (two percent of the amount as in Item No. 5 above) | ₹ 4.84 Crores |
|---|---|---|
| 7. | Details of CSR spent during the financial year | |
| | a. Total amount spent in FY 2019-20 | ₹ 3,00,000 (Rupees Three Lakhs Only) |
| | b. Amount unspent, if any | Unspent CSR amount is ₹ 4,81,00,000 /- (Rupees Four Crores Eighty One Lakhs Only) in FY 2019-20. |

c. **Manner in which the amount spent during the financial year is detailed below:**

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|
| Sr. No. | CSR Project or activity identified | Sector in which the project is covered | Projects or programs<br><br>(1) Local area or other<br>(2) Specify the state and district where projects or programs was undertaken | Amount outlay (budget) project or programs wise | Amount spent on the projects or programs<br><br>Sub-heads;<br><br>(1) Direct expenditure on projects or programs<br>(2) Overheads | Cumulative expenditure upto the reporting period | Amount spent<br><br>Direct or through implementing agency |
| 1 | Personal Safety Education Programme in Schools | Education (Covered under clause no. (ii) of Schedule VII of the Companies Act, 2013) | Mumbai, Thane in Maharashtra | ₹ 3,00,000 | Direct expenditure on program. Minimal overheads (>10% of overall budget) | ₹ 3,00,000 | Directly – Vardhaman Sanskar Dham, NGO Registered under Section 8 of the Indian Companies Act. |

**Reason for not spending the amount of 2% of the average net profits of the last three financial years:** The Company was required to spend a sum of ₹ 4.84 Crores in the financial year 2019-20, being 2% of the average net profits of last 3 (three) years. However, the Company during the financial year 2019-20 has spent ₹ 3 lakhs towards its CSR Expenses by way of contribution to Vardhaman Sanskar Dham, Mumbai for the project "Tapovan Vidyalay – Education for children".

The Company is in the process of identifying appropriate institutions and will make up for the short spend in the current year.

8.    **Statement by CSR Committee is stated below:**

The Corporate Social Responsibility Committee hereby confirm that the implementation and monitoring of CSR Policy is in compliance with CSR objectives and Policy of the Company.

**Sunil Arjan Lulla**
**Executive Vice Chairman & Managing Director**
DIN: 00243191

**Dhirendra Swarup**
**Chairman of CSR Committee**
DIN: 02878434

Place: Mumbai
Date: 9 November 2020

# CORPORATE GOVERNANCE REPORT

**THE COMPANY'S PHILOSOPHY ON CORPORATE GOVERNANCE**

The Company considers fair and transparent corporate governance as one of its core management tenets. Corporate Governance may be defined as a set of systems, policies, processes and principles which ensures that a company is governed in the best interest of all the stakeholders. It is the system by which companies are directed, administered, controlled and managed. Good governance is about promoting corporate fairness, transparency and accountability.

We strongly believe in the practice of conducting our business activities in a fair, direct and completely transparent manner that will not only benefit the Company but more importantly will ensure the highest level of accountability and trust for all our stakeholders such as shareholders, our employees and our partners. The timely disclosures, transparent accounting policies and a strong and independent Board go a long way in maintaining good corporate governance, preserving shareholders' trust and maximizing long-term corporate value.

We, at Eros International, continuously strive at improving and adhering to the good governance practice. The Company has adopted best practices mandated in SEBI (Listing Obligations and Disclosure Requirements) Regulation, 2015, as amended (hereinafter referred to as the **"SEBI Listing Regulations"**).

A report on compliance with the principles of Corporate Governance as prescribed by SEBI in Chapter IV read with Schedule V of the SEBI Listing Regulations is given below:

**BOARD OF DIRECTORS**

**a.     Composition and Category of Directors:**

The Board of Directors along with its Committees provide leadership and guidance to the Company's management as also direct, supervise and control the performance of the Company. The Company has a balanced Board with combination of Executive and Non-Executive Directors to ensure independent functioning. As at 31 March 2020, the Board of Directors of the Company consists of Seven (7) Directors, out of which Five (5) are Non-Executive Independent Directors including an Independent Woman Director and Two (2) are Executive Directors, comprising of experts from various fields/professions. The Chairman of the Board, Mr. Dhirendra Swarup, is a Non-Executive and Independent Director and is not related to promoters of the Company or any person occupying the position one level below the Board. The present composition of the Board of Directors of the Company is in accordance with the SEBI Listing Regulations and the Companies Act, 2013 (the "Act") read with applicable Rules made thereunder.

| Name of the Director | Directors Identification No. (DIN) | Category | Designation |
|---|---|---|---|
| Mr. Dhirendra Swarup | 02878434 | Non-Executive & Independent Director | Chairman |
| Mr. Sunil Arjan Lulla | 00243191 | Promoter & Executive Director | Executive Vice Chairman & Managing Director |
| Mr. Kishore Arjan Lulla | 02303295 | Promoter & Executive Director | Director |
| Ms. Bindu Saxena[1] | 00167802 | Non-Executive & Independent Director | Director |
| Mr. Sunil Srivastav | 00237561 | Non-Executive & Independent Director | Director |
| Mr. Subramaniam Lakshminarayanan[2] | 07972480 | Non-Executive & Independent Director | Director |
| Mr. Rakesh Sood[3] | 07170411 | Non-Executive & Independent Director | Director |

Note: Ms. Jyoti Deshpande ceased to be a Non-Executive Non-Independent Director of the Company w.e.f. 28 June 2019.

There are no Institutional Nominee Directors on the Board. The Company has in place the Succession Policy for appointments at the Board and Senior Management level.

**Independent Directors**

The Independent Directors of the Company are Non-Executive Directors as defined under Section 149(6) of the Act read with Regulation 16(1)(b) of the SEBI Listing Regulations. Independent Directors of the Company provide appropriate annual certifications to the Board confirming satisfaction of the conditions of their being independent as laid down in Section 149(6) of the Act and Regulation 16(1)(b) of the SEBI Listing Regulations. They possess rich and varied experience with skills in critical areas like governance, finance, entrepreneurship, general management etc.

As required by Regulation 46 of the SEBI Listing Regulations, the terms and conditions of appointment of Independent Directors are listed down in the draft letter of appointment, available on the Company's website at www.erosstx.com. Each Independent Director has been issued formal letter of appointment.

**Independent Directors Meeting**

During the year under review, a separate meeting of the Independent Directors was held on 25 September 2019, without the attendance of Non-Independent Directors and Management Personnel.

Various matters were discussed by the Independent Directors at the said meeting, including, *inter alia*, matters as prescribed in the Schedule IV of the Act and SEBI Listing Regulations, *viz.* review of

the performance of Non-Independent Directors and the Board as whole, review of the performance of the Chairman, assessed the quality, quantity and timeliness of flow of information between the Company's management and the Board, that is necessary for the Board to effectively and reasonably perform their duties.

**Appointment/Re-appointment of Directors**

Mr. Kishore Arjan Lulla, being eligible for re-appointment, has offered himself for re-appointment, as his office being longest is liable to retire by rotation at the 26th Annual General Meeting of the Company, as per Section 152(6) of the Act and applicable Rules thereto.

The Board of Directors at their meeting held on 9 November 2020, re-appointed Mr. Sunil Lulla as Executive Vice Chairman & Managing Director for another period of five years commencing from the end of the present tenure i.e. from 28 September 2020 till 27 September 2025, and have recommended the proposed re-appointment for approval of the shareholders. Your Directors recommend his re-appointment for your approval.

Ms. Bindu Saxena was appointed as Non-Executive Additional Independent Director on the Board of the Company with effect from 26 September 2019 and Mr. Farokh P. Gandhi Chief Financial Officer was appointed as Executive Additional Director on the Board of the Company with effect from 9 November 2020 to hold office up to the date of the ensuing Annual General Meeting of the Company. The said proposal has been recommended for approval of the shareholders. Your Directors recommend their appointment for your approval.

---

[1] Ms. Bindu Saxena appointed as a Non-Executive Additional Independent Director of the Company with effect from 26 September 2019.
[2] Mr. Subramaniam Lakshminarayanan ceased to be Non-Executive Independent Director of the Company with effect from 20 June 2020.
[3] Mr. Rakesh Sood ceased to be Non-Executive Independent Director of the Company with effect from 6 October 2020.

b.  **Attendance of Directors and Number of other Directorship:**

Details of Membership and Attendance of each Director at the Meeting of Board of Directors held during the financial year under review and the last Annual General Meeting and the number of other Directorships and Chairmanship/Membership of Board Committees as on 31 March 2020 are as follows:

| Name of Director | Directors Identification No. (DIN) | Attendance | | Position on the Board of other companies as on 31 March 2020 | | |
|---|---|---|---|---|---|---|
| | | **Board Meeting** | **Last Annual General Meeting** | **Directorship*** | **Committee Membership**** | **Committee Chairmanship**** |
| Mr. Dhirendra Swarup | 02878434 | 4 | Yes | 2 | 2 | 1 |
| Mr. Rakesh Sood | 07170411 | 4 | Yes | 2 | 2 | 1 |
| Mr. Sunil Arjan Lulla | 00243191 | 4 | Yes | 7 | 1 | 0 |
| Mr. Kishore Arjan Lulla | 02303295 | 1 | No | 0 | 0 | 0 |
| Ms. Bindu Saxena[4] | 00167802 | 2 | NA | 2 | 1 | 0 |
| Mr.  Subramaniam Lakshminarayanan | 07972480 | 3 | Yes | 0 | 0 | 0 |
| Mr. Sunil Srivastav | 00237561 | 3 | No | 4 | 1 | 1 |
| Ms. Jyoti Deshpande[5] | 02303283 | 1 | NA | - | - | - |

**Note:**

*   Only Public limited companies, (both listed and unlisted) are included in other directorships. Directorships in all other companies including private limited companies (which are not the subsidiary of Public Company), foreign companies and companies under Section 8 of the Act are excluded.

**  Chairmanship/Membership of the Audit Committee and the Stakeholders' Relationship Committee are considered for the purpose of committee positions in all public companies, whether listed or not as per SEBI Listing Regulations and it also includes the committees in which a Director holds position as a Chairman.

c.  **Number of Directorship(s)/ Chairmanship(s)/ Membership(s):**

None of the Director of the Company holds directorships in more than Ten (10) public companies. Further, none of them is a member of more than Ten (10) committees or chairman of more than Five (5) committees across all the public companies in which he/she is a director.

Further, none of the Independent Director of the Company is acting as an Independent Director in more than Seven (7) listed companies or acting as whole-time director in more than Three (3) listed companies.

Necessary disclosures regarding directorships and committee positions in other public companies as on 31 March 2020 have been made by all the Directors of the Company.

d.  **Number of Board Meetings:**

The Board met Four (4) times during the financial year ended 31 March 2020, i.e. on 23 May 2019; 12 August 2019; 11 November 2019 and 10 February 2020. The maximum time gap between Two (2) meetings of the Board did not exceed One Hundred and Twenty (120) days as stipulated under the Regulation 17(2) of the SEBI Listing Regulations. The necessary quorum was present for all the meetings.

The Board meets at regular intervals to discuss and decide on business policy of the Company and strategy apart from other Board business. The Board/Committee Meetings are pre-scheduled and tentative dates of the Board and Committee Meetings are informed well in advance to facilitate Directors to plan their schedule. The agenda is circulated well in advance to the Board Members, along with comprehensive background information on the agenda items to enable the Board to take an informed decision. The agenda and related information are circulated to the Board/Committee by uploading the same on e-meeting application, which is accessible to all the Members of the Board and its Committee on their respective i-pads. Notice, Agendas and Minutes of the meeting are all circulated through electronic means. Detailed presentations and notes are laid before each meeting, by the management and senior executives of the Company, to apprise the Board on overall performance on quarterly basis. Additional items of the agenda are permitted with the permission of the Chairman and with the consent of all the Directors present at the meeting. Senior Executives/Management of the Company are invited to attend the Meetings of the Board and Committees, to make presentations and provide clarifications as and when required.

In accordance with the Act read with the Companies (Meetings of Board and its Powers) Rules, 2014 and in accordance with Secretarial Standard 1 issued by the Institute of Company Secretaries of India, the Company provides an option to its Directors to participate at each of the Board Meetings/ Committee Meetings through video conference except in respect of those agenda items wherein transactions are not permitted to be carried out by way of video conference. As per Secretarial Standards, draft minutes and signed minutes of the Meeting are circulated within the prescribed time.

The Board of Directors has complete access to the information within the Company.

e.  **Details of Other Directorships:**

Details of the directorships of the Company's Directors in other listed companies as on 31 March 2020 were as under:

| Name of Directors | Name of the Listed Company | Category of Directorship |
|---|---|---|
| Mr. Sunil Srivastav | Star Paper Mills Limited | Non-Executive - Independent Director |
| | Paisalo Digital Limited | Non-Executive - Independent Director |
| | Solar Industries India Limited | Non-Executive - Independent Director |
| | Security and Intelligence Services (India) Limited | Non-Executive - Independent Director |
| Ms. Bindu Saxena | Inox Wind Limited | Non-Executive - Independent Director |
| | Indag Rubber Limited | Non-Executive - Independent Director |

None of the Directors except above are directors in listed entities.

---

[4] Ms. Bindu Saxena was appointed as a Non-Executive Additional Independent Director on the Board w.e.f. 26 September 2019.
[5] Ms. Jyoti Deshpande ceased to be Non Executive Non-Independent Director of the Company w.e.f 28 June 2019.

**CORPORATE GOVERNANCE REPORT**

f. **Disclosure of Relationship between directors:**

Mr. Kishore Arjan Lulla, Executive Director and Mr. Sunil Arjan Lulla, Executive Vice Chairman & Managing Director of the Company, are brothers.

Other than the aforesaid, there are no *inter-se* relationships amongst the Directors.

g. **Number of Shares held by Non-Executive Directors:**

As on 31 March 2020, None of the Non-Executive Directors holds any equity shares in the Company.

h. **Familiarisation Programme for Independent Directors:**

Familiarisation Programme for Independent Directors is designed with an aim to make the Independent Directors aware about their roles, responsibilities and liabilities as per the Act, SEBI Listing Regulations and other applicable laws and to get better understanding about the Company, nature of industry in which it operates and environment in which it functions, business model, long term/short term/strategic plans etc. As a part of familiarisation programme, the Company makes presentations to the Board Members, *inter alia*, covering business environment, business strategies, operations review, quarterly and annual results, review of Internal Audit Report and action taken, statutory compliance, risk management, operations of subsidiaries, etc.

The relevant policies of the Company including the Code of Conduct for Board Members and Senior Management Personnel and the Code of Conduct to regulate, monitor and report trading by Insiders etc. are circulated to the Directors and uploaded on e-meeting application on i-pads for easy access.

The familiarisation programme and necessary disclosures to be made in accordance with SEBI Listing Regulations are made on the website of the Company at www.erosstx.com.

i. **Skills/Expertise/Competence Identified by the Board of Directors:**

The Board comprises of the qualified members who bring in the required skills, competence and expertise to enable them to effectively contribute in deliberations at Board and Committee Meetings. The following is the list of core skills / competencies identified by the Board of Directors as required in the context of the Company's business and that the said skills are available within the Board Members.

| Business Leadership | Leadership experience including in areas of business development, strategic planning, succession planning, and long-term growth and guiding the Company and its senior management towards its vision and values. |
| --- | --- |
| Financial Expertise | Knowledge and skills in accounting, finance, treasury management, tax and financial management of large corporations with understanding of capital allocation, funding and financial reporting processes |
| Risk Management | Ability to understand and asses the key risks to the organization, legal compliances and ensure that appropriate policies and procedures are in place to effectively manage risk |
| Corporate Governance | Experience in implementing good corporate governance practices, reviewing compliance and governance practices for a sustainable growth of the company and protecting stakeholders interest. |

In the table below, the specific areas of focus or expertise of individual board members have been highlighted.

| Name of the Directors | Areas of Skills/ Expertise | | | |
| --- | --- | --- | --- | --- |
| | Business Leadership | Financial Expertise | Risk Management | Corporate Governance |
| Mr. Dhirendra Swarup | ✓ | ✓ | ✓ | ✓ |
| Mr. Rakesh Sood | ✓ | ✓ | ✓ | ✓ |
| Mr. Sunil Arjan Lulla | ✓ | ✓ | ✓ | ✓ |
| Mr. Kishore Arjan Lulla | ✓ | ✓ | ✓ | ✓ |
| Ms. Bindu Saxena | | ✓ | ✓ | ✓ |
| Mr. S Lakshmi-narayanan | ✓ | ✓ | ✓ | ✓ |
| Mr. Sunil Srivastav | ✓ | ✓ | ✓ | ✓ |

Note:- Each Director may possess varied combinations of skills/ expertise within the described set of parameters and it is not necessary that all Directors possess all skills/ expertise listed therein.

## COMMITTEES OF THE BOARD

The Board of Directors, at its various meetings, has constituted / re-constituted various committees to discuss upon the delegated work as per their respective charters. The Board supervises the execution of its responsibilities by the Committees and is responsible for their action. Minutes of all the Committee Meetings are placed before the Board for noting.

Following Committee(s) are constituted for better and focused attention on various affairs of the Company:

• Audit Committee

• Nomination and Remuneration Committee

• Stakeholders Relationship Committee

• Corporate Social Responsibility Committee

• Management Committee

## AUDIT COMMITTEE

An Audit Committee, duly constituted by the Board of Directors has a well-defined composition of members, terms of reference, powers, role and responsibilities in accordance with Section 177 of the Act and applicable Rules thereto and in accordance with Regulation 18 of SEBI Listing Regulations.

As on 31 March 2020, the Audit Committee comprised of Five (5) Members of whom Four (4) are Non-Executive Independent Directors, all of whom are financially literate and possesses accounting and related financial management expertise. The Chairman of the Audit Committee is a Non- Executive Independent Director and he had attended last year's Annual General Meeting.

The detailed terms of reference of Audit Committee along with working procedure, charter and constitution are uploaded on website of the Company at www.erosstx.com.

**Meeting Details:**

During the year under review, Audit Committee met Four (4) times in a year viz. on 23 May 2019; 12 August 2019; 11 November 2019 and 10 February 2020. The maximum time gap between Two (2) Committee Meetings did not exceed One Hundred and Twenty (120) days as stipulated under the Regulation 18(2) of SEBI Listing Regulations. The necessary quorum was present for all the Meetings.

Composition of the Audit Committee and the attendance of each Member at the said Committee Meetings are set out in following table:

| Name of Committee Member | Directors Identification No. (DIN) | Designation in the Committee | Category | Number of Meetings attended |
|---|---|---|---|---|
| Mr. Subramaniam Lakshminarayanan | 07972480 | Chairman | Non-Executive Independent Director | 3 |
| Mr. Dhirendra Swarup | 02878434 | Member | Non-Executive Independent Director | 4 |
| Mr. Rakesh Sood | 07170411 | Member | Non-Executive Independent Director | 4 |
| Mr. Sunil Arjan Lulla | 00243191 | Member | Executive Vice Chairman & Managing Director | 4 |
| Mr. Sunil Srivastav | 00237561 | Member | Non-Executive Independent Director | 3 |

The Company Secretary and Compliance Officer acts as the Secretary to the Committee. The Chief Financial Officer of the Company is the permanent invitee to the Committee meetings. The Audit Committee also invites senior executives/management including the representatives of the statutory auditors and internal auditors at its meetings.

### NOMINATION AND REMUNERATION COMMITTEE

The Nomination and Remuneration Committee is constituted in accordance with Section 178 of the Act and applicable Rules thereto and in accordance with Regulation 19 of SEBI Listing Regulations. As on 31 March 2020, the Nomination and Remuneration Committee comprised of Three (3) Members, all of whom are Non-Executive Independent Directors. The Chairman of the Nomination and Remuneration Committee is a Non-Executive Independent Director

and he was present at last year's Annual General Meeting to address the queries of the shareholders.

The detailed terms of reference of Nomination and Remuneration Committee along with working procedure, charter and constitution are uploaded on website of the Company at www.erosstx.com.

**Meeting Details:**

During the year under review, Nomination and Remuneration Committee met Four (4) times in a year viz. on 23 May 2019; 12 August 2019; 11 November 2019 and 10 February 2020. The necessary quorum was present at all the meetings.

Composition of the Nomination and Remuneration Committee and the attendance of each member at the said Committee Meetings are set out in following table:

| Name of Committee Member | Directors Identification No. (DIN) | Designation in the Committee | Category | Number of Meetings attended |
|---|---|---|---|---|
| Mr. Rakesh Sood | 07170411 | Chairman | Non-Executive Independent Director | 4 |
| Mr. Dhirendra Swarup | 02878434 | Member | Non-Executive Independent Director | 4 |
| Mr. Subramaniam Lakshminarayanan | 07972480 | Member | Non-Executive Independent Director | 3 |

The Company Secretary and Compliance Officer acts as the Secretary to the Committee. The Chief Financial Officer of the Company is the permanent invitee to the Committee Meetings.

### Evaluation of Performance of the Board, its Committees and Directors:

The Company has formulated a Policy on Board Evaluation in accordance with the applicable provisions of SEBI Listing Regulations and the Act. An annual performance evaluation of the Board, its Committees and individual directors (including Independent Directors and Chairperson) in an independent and fair manner was carried out in accordance with the Company's Board Evaluation Policy for the financial year ended 31 March 2020.

The performance of the Board and individual directors was evaluated by the Board seeking inputs from all the Directors. The performance of the Committees was evaluated by the Board seeking inputs from the Committee Members. The Nomination and Remuneration Committee reviewed the performance of the individual directors. This was followed by a Board Meeting that discussed the performance of the Board, its Committees and individual directors. A separate meeting of Independent Directors was also held to review the performance of Non-Independent Directors, performance of the Board as a whole and performance of the Chairman of the Company.

The criteria for performance evaluation of the Board included aspects like Board composition, structure, effectiveness of Board processes, information and functioning etc. The criteria for performance evaluation of Committees of the Board included aspects like composition of committees, effectiveness of Committee Meetings etc. The criteria for performance evaluation of the individual directors included aspects on contribution to the Board and Committee Meetings like preparedness on the issues to be discussed, meaningful and constructive contribution and inputs in meetings etc. In addition, performance of the Chairman was also evaluated on the key aspects of his role and responsibilities.

The performance evaluation of an Independent Directors was based on the criteria viz. attendance at Board and Committee Meetings, skill, experience, ability to challenge views of others in a constructive manner, knowledge acquired with regard to the Company's business, understanding of industry and global trends etc.

### REMUNERATION OF DIRECTORS

**Non – Executive Directors Compensation and Disclosures:**

The Non-Executive Independent Directors are paid compensation in the following manner:

- Sitting Fees of ₹ 40,000/- for attending each Board and Committee Meeting.

- Commission, as decided by the Board, not exceeding 1% of the Net Profit of the Company is paid in accordance with the Act.

- None of the Non-Executive Independent Directors have any pecuniary relationship with the Company.

- None of the Non-Executive Independent Directors holds any equity shares of the Company.

- None of the Non-Executive Independent Directors hold any convertible instruments in the Company.

- Payment of reimbursement of expenses incurred by Non-Executive Independent Directors for participation in the Board and other meetings of the Company.

**Maintenance of Chairman's Office**

The Company maintains the office of Chairman, being Non-Executive Independent Director, and reimburses all the expenses incurred by him towards performance of his duties, up to the limit as decided by the Board of Directors.

**CORPORATE GOVERNANCE REPORT**

Details of remuneration paid to all the Directors for the financial year 2019-2020 are as follows:

(Amount in ₹)

| Sr. No. | Name of Director | Salary | Benefits / Perquisites | Bonus | Sitting Fees (paid) | Holding of Equity Shares / stock options of the Company as on 31 March 2020 |
|---|---|---|---|---|---|---|
| 1 | Mr. Dhirendra Swarup | - | - | - | 720,000 | Nil |
| 2 | Mr. Rakesh Sood | - | - | - | 720,000 | Nil |
| 3 | Mr. Subramaniam Lakshminarayanan | - | - | - | 400,000 | Nil |
| 4 | Mr. Sunil Arjan Lulla | 51,446,131 | 1,239,600 | - | - | 1,400 Equity Shares |
| 5 | Mr. Kishore Arjan Lulla | - | | | - | Nil |
| 6 | Ms. Bindu Saxena | - | - | - | 80,000 | Nil |
| 7 | Mr. Sunil Srivastav | - | - | - | 360,000 | Nil |

Note: 1) Commission will not be payable to Independent Directors for FY 2019-20 on account of inadequate profit as per Section 197 of the Act.

2) Salary payable shall be subject to the approval of Shareholders by Special Resolution.

## STAKEHOLDERS RELATIONSHIP COMMITTEE

The Stakeholders Relationship Committee is constituted in accordance with Section 178 of the Act and applicable Rules thereto and in accordance with Regulation 20 of SEBI Listing Regulations. As on 31 March 2020, the Stakeholders Relationship Committee comprised of Four (4) Members, majority of whom are Non-Executive Independent Directors. The Chairman of the Stakeholders Relationship Committee is a Non- Executive Independent Director and he was present at last year's Annual General Meeting to address the queries of the shareholders.

The detailed terms of reference of Stakeholders Relationship Committee along with working procedure, charter and constitution are uploaded on website of the Company at www.erosstx.com.

**Meeting Details:**

During the year under review, Stakeholders Relationship Committee met Four (4) times in a year viz. on 23 May 2019; 12 August 2019; 11 November 2019 and 10 February 2020. The necessary quorum was present at all the Meetings.

Composition of the Stakeholders Relationship Committee and the attendance of each member at the said Committee Meetings are set out in the following table:

| Name of Committee Member | Directors Identification No. (DIN) | Designation in the Committee | Category | Number of Meetings attended |
|---|---|---|---|---|
| Mr. Sunil Srivastav | 00237561 | Chairman | Non-Executive Independent Director | 3 |
| Mr. Dhirendra Swarup | 02878434 | Member | Non-Executive Independent Director | 4 |
| Mr. Rakesh Sood | 07170411 | Member | Non-Executive Independent Director | 4 |
| Mr. Sunil Arjan Lulla | 00243191 | Member | Executive Vice Chairman & Managing Director | 3 |

The Company Secretary and Compliance Officer of the Company acts as the Secretary to the Committee. The Chief Financial Officer of the Company is the permanent invitee to the Committee Meetings.

The functions and powers of the Stakeholders Relationship Committee includes resolving of investor's complaints pertaining to share transfers, non-receipt of annual reports, dividend payments, issue of duplicate share certificates, transmission of shares and other shareholder related queries, complaints, maintaining investor relations etc.

The main objective of Stakeholders Relationship Committee is to ensure effective implementation and monitoring of framework devised to avoid insider trading and abusive self-dealing, ensure effective implementation of whistle blower mechanism offered to all the stakeholders to report any concerns about illegal or unethical practices, consider and resolve the grievances of security holders of the Company, approval of transfer, transmission of shares, and other securities of the Company, issue of duplicate certificates on split, carrying out any other function contained in the SEBI Listing Regulations, as and when amended from time to time.

Status of Investor Grievances during the year 2019-2020:

| Description of Investors Grievances received during the year | No. of Grievances |
|---|---|
| Total Grievances Pending at the Beginning of Period as on 1 April 2019 | 0 |
| Letters directly received from Investors | 0 |
| N.S.E. | 0 |
| B.S.E. | 0 |
| SEBI (Securities Exchange Board of India) (SCORES) | 0 |
| Total Grievances attended | 0 |
| Total Grievances pending as on 31 March 2020 | 0 |

All the Complaints received were promptly resolved and there was no outstanding complaint as on 31 March 2020.

**Share Transfer System:**

SEBI has mandated that effective from 1 April 2019, no share can be transferred in physical mode. Hence, the Company has stopped accepting any fresh lodgement of transfer of shares in physical form. The Company had sent communication to the shareholders encouraging them to dematerialise their holding in the Company. Shareholders holding shares in physical form are advised to avail the facility of dematerialisation. Trading in equity shares of the Company is permitted only in dematerialised form.

During the year, the Company had obtained, on half-yearly basis, a certificate, from a Company Secretary in Practice, certifying that all certificates have been issued within thirty days of the date of lodgement of the transfer (for cases lodged prior to 1 April 2019), sub-division, consolidation and renewal as required under Regulation 40(9) of the SEBI Listing Regulations and filed a copy of the said certificate with the Stock Exchanges.

## CORPORATE SOCIAL RESPONSIBILITY COMMITTEE

The Corporate Social Responsibility (CSR) Committee is constituted in accordance with Section 135 of the Act and applicable Rules thereto.

As on 31 March 2020, the CSR Committee comprised of Four (4) Members. The Chairman of the CSR Committee is an Independent Director and he was present at last year's Annual General Meeting to address the queries of the shareholders, if any.

The objective of the CSR Committee is to implement the CSR activities as per the CSR policy of the Company as stated at length in Directors Report and to assess the various initiatives forming part of the Business Responsibility performance of the Company.

The detailed terms of reference of CSR Committee along with working procedure, charter and constitution are uploaded on website of the Company at www.erosstx.com.

**Meeting Details:**

During the year under review, Corporate Social Responsibility Committee met One (1) time in a year viz. on 23 May 2019. The necessary quorum was present at all the Meetings.

Composition of the CSR Committee and the attendance of each member at the said Committee Meetings are set out in following table:

| Name of Committee Member | Directors Identification No. (DIN) | Designation in the Committee | Category | Number of Meetings attended |
|---|---|---|---|---|
| Mr. Dhirendra Swarup | 02878434 | Chairman | Non-Executive Independent Director | 1 |
| Mr. Rakesh Sood | 07170411 | Member | Non-Executive Independent Director | 1 |
| Mr. Kishore Arjan Lulla | 02303295 | Member | Executive Director | 0 |
| Mr. Sunil Arjan Lulla | 00243191 | Member | Executive Vice Chairman & Managing Director | 1 |
| Ms. Jyoti Deshpande | 02303283 | Member | Non-Executive Non-Independent Director | 1 |

The Company Secretary and Compliance Officer acts as the Secretary to the Committee. The Chief Financial Officer of the Company is the permanent invitee to the Committee Meetings.

## MANAGEMENT COMMITTEE

The Board of Directors of the Company have constituted the Management Committee to look after day to day affairs and functioning of the Company. The Board have delegated certain powers to this Committee. As at 31 March 2020, the Management Committee comprised of directors and senior executives of the Company viz. Mr. Sunil Arjan Lulla Mr. Kishore Arjan Lulla and Mr. Farokh P. Gandhi.

The Committee met Eighteen (18) times during the financial year for operational matters.

## INVESTORS INFORMATION

**General Body Meeting**

**Details of location, date and time of last three Annual General Meetings and special resolution passed thereat:**

| Financial Year | Date and Time | Venue | Special Resolution Passed |
|---|---|---|---|
| 2016-17 | 28 September 2017 at 2.30 P.M. | The Club, 197, D. N. Nagar, Andheri West, Mumbai - 400 053 | • Payment of remuneration to Mr. Kishore Arjan Lulla (DIN 02303295) on his reappointment as Executive Director.<br>• Approval of Eros International Media Limited – Employee Stock Options Scheme 2017 and grant of stock options to the Employees to the Company under the said scheme.<br>• Grant of stock options to the eligible employees of the Company's subsidiaries and Holding Company under the Eros International Media Limited – Employee Stock Options Scheme 2017. |
| 2017-18 | 27 September 2018 at 2:00 P.M. | The Club, 197, D. N. Nagar, Andheri West, Mumbai - 400 053 | Appointment of Mr. Subramaniam Lakshminarayanan (DIN: 07972480) as an Independent Director of the Company. |
| 2018-19 | 25 September 2019 at 2:00 P.M. | The Classic Club", New Link Road, Behind Infinity Mall, Andheri West, Mumbai – 400 053 | Re-appointment of Mr. Dhirendra Swarup (DIN: 02878434) as an Independent Non-Executive Director to hold office for second term of five consecutive years. |

No Extra Ordinary General Meeting of the Shareholders of the Company was held during the financial year 2019-2020.

## RESOLUTIONS PASSED BY WAY OF CONDUCTING THE POSTAL BALLOT:

During the year under review, no ordinary/special resolutions were passed through Postal Ballot pursuant to the provisions of Section 110 of the Companies Act, 2013 read with the Rule 22 of the Companies (Management and Administration) Rules, 2014.

No ordinary/special resolution is proposed to be conducted through postal ballot as on the date of this report.

## MEANS OF COMMUNICATION

The Company has always promptly reported to both the stock exchanges where the securities of the Company are listed, all the material information including declaration of quarterly, half yearly and annual financial results in the prescribed formats and through press releases.

Financial results are published in "The Free Press Journal" and "Navshakti" as per the requirements of the SEBI Listing Regulations. The said results are also made available on Company's website at www.erosstx.com.

**CORPORATE GOVERNANCE REPORT**

**Presentation to Institutional Investors / Analysts**

The Corporate Presentations made to investors / analysts is displayed on the website of the Company.

**GENERAL SHAREHOLDERS INFORMATION:**

| Annual General Meeting | |
|---|---|
| **Day** | Tuesday |
| **Date** | 15 December 2020 |
| **Time** | 3:00 P.M. |
| **Venue** | Through Video Conferencing ("VC")/Other Audio Visual Means ("OAVM") |
| **Financial Calendar (Tentative)** | |
| Audited Annual Results of previous year ended 31 March 2020* | 30 July 2020 |
| 1st quarter results for quarter ending June 2020* | 11 September 2020 |
| 2nd quarter results for quarter ending September 2020* | 9 November 2020 |
| 3rd quarter results for quarter ending December 2020* | On or before 14 February 2021 |
| Last quarter results for quarter ending March 2021* | On or before 30 May 2021 |
| **Financial year** | **1 April to 31 March** |
| **Book Closure Dates** | **From Tuesday, 8 December 2020 to Tuesday, 15 December 2020** |
| **Listing of equity shares at Stock Exchanges** | **BSE Limited**<br>Pheroze Jeejeebhoy Towers, Dalal Street, Fort, Mumbai-400 001.<br>Tel No:- +91-22-22721233/1234<br>Fax No:- +91-22-22721919 |
| | **National Stock Exchange of India Limited**<br>Exchange Plaza, 5th Floor, Plot No- C Block, G Block,<br>Bandra Kurla Complex, Mumbai-400 051.<br>Tel No:- +91-22-26598100-8114<br>Fax No:- +91-22-26598120 |
| **Stock Codes** | **BSE** - 533261<br>**NSE** – EROSMEDIA |
| **ISIN Number** | INE416L01017 |
| **Corporate Identification Number (CIN)** | **L99999MH1994PLC080502** |

*or any extended date as may be permitted by SEBI due to COVID-19

The Annual Listing Fees for the financial year 2020-2021 to BSE Limited (BSE) and National Stock Exchange of India Limited (NSE) has been paid by the Company within prescribed time.

The Annual Custodian Fees for the financial year 2020-2021 to National Securities Depository Limited (NSDL) and Central Depository Services (India) Limited (CDSL) has been paid by the Company within prescribed time.

**MARKET PRICE DATA**

The equity shares of the Company are listed on the BSE Limited and the National Stock Exchange of India Limited. The monthly high and low share prices on both the exchanges for a period starting from April 2019 to March 2020 are as below:

| Month | BSE Limited (BSE) | | | National Stock Exchange of India Limited (NSE) | | |
|---|---|---|---|---|---|---|
| | High Price (₹) | Low Price (₹) | Volume | High Price (₹) | Low Price (₹) | Volume |
| April 2019 | 82.20 | 70.50 | 7,50,992 | 82.30 | 70.50 | 65,84,610 |
| May 2019 | 75.90 | 56.95 | 23,06,770 | 75.85 | 56.55 | 1,41,61,655 |
| June 2019 | 67.35 | 18.10 | 34,04,545 | 67.40 | 18.10 | 1,14,52,038 |
| July 2019 | 18.95 | 12.00 | 1,13,74,305 | 18.95 | 12.00 | 9,73,95,169 |
| August 2019 | 12.88 | 9.08 | 25,84,224 | 12.65 | 9.10 | 1,12,56,294 |
| September 2019 | 20.19 | 12.75 | 20,98,957 | 19.75 | 12.65 | 81,15,382 |
| October 2019 | 17.40 | 13.05 | 9,10,211 | 17.35 | 13.50 | 33,72,398 |
| November 2019 | 16.40 | 13.55 | 3,30,582 | 16.40 | 13.55 | 27,17,516 |
| December 2019 | 15.00 | 12.60 | 17,55,358 | 15.15 | 12.55 | 27,22,612 |
| January 2020 | 16.15 | 13.48 | 8,99,365 | 16.10 | 13.55 | 34,10,550 |
| February 2020 | 16.25 | 12.00 | 4,77,782 | 15.75 | 11.80 | 29,56,309 |
| March 2020 | 13.86 | 7.17 | 9,01,616 | 13.00 | 7.00 | 43,18,058 |

## PERFORMANCE IN COMPARISON TO BROAD BASED INDICES





## REGISTRAR AND SHARE TRANSFER AGENTS

### Address for Investor Correspondence

For any assistance regarding dematerialization of shares, re-materialization of shares, share transfers, transmissions, change of address, non-receipt of dividend or any other query relating to shares, please write to:

**LINK INTIME INDIA PRIVATE LIMITED**
Unit – Eros International Media Limited
C 101, 247 Park, LBS Marg, Vikhroli West,
Mumbai 400 083, Maharashtra (India).
Tel: +91 (22) 49186270
Fax: +91 (22) 49186060
Email: rnt.helpdesk@linkintime.co.in and mumbai@linkintime.co.in
Web: www.linkintime.co.in

## DISTRIBUTION OF SHAREHOLDING AS ON 31 MARCH 2020

| Shares Holding of Shares | No. of Shareholders | % to Total |
|---|---|---|
| 1-5000 | 46,058 | 84.50 |
| 5001-10000 | 3,614 | 6.63 |
| 10001-20000 | 2,111 | 3.87 |
| 20001-30000 | 803 | 1.47 |
| 30001-40000 | 369 | 0.68 |
| 40001-50000 | 347 | 0.64 |
| 50001-100000 | 568 | 1.04 |
| 100001 and above | 640 | 1.17 |
| **Total** | **54,510** | **100.00** |

## PLEDGE OF SHARES

3,67,21,169 Equity Shares have been pledged by Eros Worldwide FZ LLC, Holding Company as on 31 March 2020.

## DEMATERIALISATION OF SHARES AND LIQUIDITY AS ON 31 MARCH 2020

The securities of the Company are compulsory traded in dematerialised form and are available for trading on both the depositories in India viz.

National Securities Depository Limited (NSDL) and Central Depository Services (India) Limited (CDSL). Equity Shares of the Company representing 99.99% of the Company's Equity Share Capital are in dematerialised form as on 31 March 2020 and the entire promoters holding have been held in the dematerialised as on 31 March 2020.

**Break up of Shares in physical and demat form as on 31 March 2020 is as follows:**

| | Number of Shares | % of Total Number of Shares |
|---|---|---|
| **Physical Segment** | 123 | 0.00 |
| **Demat Segment** | | |
| • NSDL | 71,521,717 | 74.79 |
| • CDSL | 24,107,183 | 25.21 |
| **Total** | **95,629,023** | **100.00** |

The Company's Equity Shares are regularly traded on the BSE Limited and the National Stock Exchange of India Limited, in dematerialised form.

Under the Depository system, the International Security Identification Number (ISIN) allotted to the Company's shares is INE416L01017.

## OUTSTANDING ADRS/GDRS AND OTHER INSTRUMENTS

During the year under review, the Company did not issue any ADRs/ GDRs/ other instruments, which are convertible into equity shares of the Company.

The Company has outstanding stock options in force which carries entitlement of equity shares of the Company, as and when exercised.

## PAYMENT OF UNPAID DIVIDEND(S) OF PREVIOUS YEAR(S)

Pursuant to Sections 124 and 125 of the Act read with the Investor Education and Protection Fund Authority (Accounting, Audit, Transfer and Refund) Rules, 2016 ("IEPF Rules"), dividends, if not claimed for a consecutive period of 7 years from the date of transfer to Unpaid Dividend Account of the Company, are liable to be transferred to the Investor Education and Protection Fund ("IEPF").

Further, shares in respect of such dividends which have not been claimed for a period of 7 consecutive years are also liable to be transferred to the demat account of the IEPF Authority. The provisions relating to transfer of shares were made effective by the Ministry of Corporate Affairs, vide its Notification dated 13 October 2017 read with the circular dated 16 October 2017.

In the interest of the members, the Company sends periodical reminders to the members to claim their dividends in order to avoid transfer of dividends/shares to IEPF Authority. Notices in this regard are also published in the newspapers and the details of unclaimed dividends and members whose shares are liable to be transferred to the IEPF Authority, are uploaded on the Company's website i.e. www.erosstx.com

Pursuant to the provisions of Section 124 of the Act, the Company has credited unpaid / unclaimed dividend amounting to ₹ 1,25,658/- to the IEPF for the financial year 2012-2013 on 25 August 2020 and transferred 11,359 equity shares of 279 members to the demat account of the IEPF Authority on 19 October 2020. Accordingly, the voting rights on the shares lying with IEPF Authority shall remain frozen till the rightful owner of such shares claims the shares.

The Members who have a claim on above dividend and shares may claim the same from IEPF Authority by submitting an online application in the prescribed Form No. IEPF-5 available on the website www.iepf.gov.in and sending a physical copy of the same, duly signed to the Company, along with requisite documents enumerated in the Form No. IEPF-5. No claims shall lie against the Company in respect of the dividend/shares so transferred.

**CORPORATE GOVERNANCE REPORT**

### Address for General Correspondence

Company Secretary &
Compliance Officer
**Eros International Media Limited**
**Registered Office:**
201, Kailash Plaza,
Opp Laxmi industrial Estate,
Off. Andheri Link Road,
Andheri West,
Mumbai – 400 053,
Maharashtra (India).

**Corporate Office:**
901/902, Supreme Chambers,
Off. Veera Desai Road,
Andheri West,
Mumbai- 400 053,
Maharashtra (India).
Tel: + (91 22) 6602 1500
Fax: + (91 22) 6602 1540
Email: compliance.officer@erosintl.com
Web: www.erosstx.com

### CREDIT RATING

During the year under review, following ratings were reviewed by CARE Ratings Limited, a Credit Rating Agency on the Long-Term and Short-Term bank facility(ies) of the Company.

| Facilities Rated | Ratings as on 1 April 2019 | Rating as on 31 March 2020 |
|---|---|---|
| Long-Term Bank Facilities | CARE BBB-; Stable | CARE D |
| Short-Term Bank Facilities | CARE A3 | CARE D |

The company's credit rating was revised on account of delay in debt servicing for more than 30 days which has been regularized.

In September 2020, the Acuite Ratings & Research Limited ("Acuite Rating") has assigned its long-term rating of "ACUITE B" (read as ACUITE B) on the ₹ 465.00 crore bank facilities of the Company. The outlook is "Stable".

All other outstanding credit ratings are under process of being withdrawn and Acuite Ratings will be the primary credit rating for the company's bank facilities.

### OTHER DISCLOSURES:

#### Disclosure on Material Related Party Transactions

During the year, there were no transactions of materially significant nature with the Promoters or Directors or the Management or the subsidiaries or relatives etc. that had potential conflict with the interests of the Company at large. A statement of summary of related party transactions is duly disclosed in the Notes to Accounts.

#### Details of Non-Compliance

No penalties have been imposed on the Company by the Stock Exchanges, SEBI or any other statutory authorities on any matter related to capital markets during the last three years.

#### Whistle Blower Policy

The Whistle Blower Mechanism (Vigil Mechanism) in the Company enables all the directors, employees and its stakeholders, to report concerns about unethical behaviour, report for leakage of unpublished price sensitive information, actual or suspected fraud or violation of the Company's code of conduct or ethics policy. This mechanism has provided adequate safeguards against victimisation of directors/employees of the Company who avail the mechanism and also provide for direct access to the Chairman of the Audit Committee. No personnel are denied access to this mechanism.

The Vigil Mechanism and Whistle Blower Policy has been posted on the website of the Company at www.erosstx.com.

### SUBSIDIARIES

As on 31 March 2020, the Company has Eleven (11) direct subsidiaries. Out of Eleven (11) direct subsidiaries, Nine (9) are Indian and other Two (2) are foreign subsidiaries.

None of the subsidiary companies except Copsale Limited (a British Virgin Island Company) are material non-listed subsidiary in terms of Regulation 16(c) of the SEBI Listing Regulation. Mr. Dhirendra Swarup, the Company's Independent Director has been appointed as Independent Director on the Board of Copsale Limited, a material subsidiary company.

On 30 July 2020 Mr. Direndra Swarup has tendered his resignation from the Board of Directors of Copsale Ltd. and in his place, it was recommended to appoint Ms. Bindu Saxena, Independent Director of the Company.

The Board of Directors of the Company have also formulated a policy for determining 'material' subsidiaries and the same has been uploaded on the website of the Company at www.erosstx.com.

The Financial Statements including investments made by the unlisted subsidiaries and all significant transactions and arrangements entered into by the unlisted subsidiaries forming part of the financials are being reviewed by the Audit Committee of your Company on a quarterly basis.

### RELATED PARTY TRANSACTION

A policy on materiality of Related Parties and dealings with Related Party Transactions has been formulated by the Board of Directors and has also been uploaded on the website of the Company at www.erosstx.com.

The objective of the Policy is to ensure due and timely identification, approval, disclosure reporting and transparency of transactions between Company and any of its Related Parties in compliance with the applicable laws and regulations, as may be amended from time to time.

#### Insider Trading Regulations

The Company has instituted a comprehensive code of conduct for its Directors, Key Managerial Personnel, Senior Management Personnel, Designated Persons and third parties such as auditors, consultants, etc. who are expected to have access to unpublished price sensitive information relating to the Company in compliance with Securities and Exchange Board of India (Prohibition of Insider Trading) Regulations, 2015, as amended from time to time.

The objective of the Code is to prevent purchase and/or sale of securities of the Company by an insider on the basis of unpublished price sensitive information. Under this Code, Directors, Key Managerial Personnel and Senior Management Personnel, Designated Persons, their immediate relatives and such others connected person, are completely prohibited from dealing in the Company's shares during the closure of Trading Window. Further, the Code specifies the procedures to be followed and disclosures to be made by Directors, Key Managerial Personnel, Senior Management Personnel and such other Designated Persons, while dealing with the securities of the Company and enlists the consequences of any violations.

The Annual disclosures as required from Directors, Key Managerial Personnel, Senior Management Personnel and other Designated Employees for adherence to this Code during the financial year 2019-20 have been received by the Company and certificate to that effect from the Executive Vice Chairman & Managing Director is annexed hereto and forms part of this Report.

The Company Secretary has been appointed as the Compliance Officer for monitoring adherence to the Code.

The Code is uploaded on the Company's website at www.erosstx.com.

#### Secretarial Audit

S.G & Associates, firm of Company Secretaries, carried out various compliance and secretarial audits during the year:

- Quarterly Secretarial Audit

- Annual Secretarial Audit as required under Section 204 of the Act & applicable Rules thereto.

- Secretarial Compliance Report to Stock Exchanges pursuant to SEBI's Circular CIR/CFD/CMD1/27/2019 dated February 8, 2019

Report issued by S.G & Associates in Form No. MR-3 is attached and forms part of Directors Report

## GREEN INITIATIVE

As a responsible corporate citizen, the Company welcomes and supports the 'Green Initiative' undertaken by the Ministry of Corporate Affairs, Government of India, enabling electronic delivery of documents including the Annual Report, quarterly and half-yearly results, amongst others, to Shareholders at their e-mail address previously registered with the DPs and RTAs.

Shareholders who have not registered their e-mail addresses so far are requested to do the same. Those holding shares in demat form can register their e-mail address with their concerned DPs. Shareholders who hold shares in physical form are requested to register their e-mail addresses with the RTA, by sending a letter, duly signed by the first/ sole holder quoting details of Folio Number.

## CEO / CFO CERTIFICATION

Mr. Pradeep Dwivedi, Chief Executive Officer and Mr. Farokh P. Gandhi, Chief Financial Officer of the Company has provided certification on financial reporting and internal controls to the Board as required under Regulation 17(8) of the SEBI Listing Regulations, copy of which is attached to this Report. The Chief Executive Officer and the Chief Financial Officer also give quarterly certification on financial results while placing the financial results before the Board in terms of Regulation 33(2) of the SEBI Listing Regulations.

The Company has complied with all the mandatory requirements of Corporate Governance Report as stated under SEBI Listing Regulations.

## COMPLIANCE OF DISCRETIONARY REQUIREMENTS

The Company has adopted the following discretionary requirements stated under Part E of Schedule II of Regulation 27(1) of SEBI Listing Regulations: -

**A.    The Board**

The Chairman i.e. Mr. Dhirendra Swarup is a Non-Executive Independent Director and the Company maintains the Chairman's office at its expense and reimburses all expenses incurred in performance of duties by the Chairman.

**B.    Separate posts of Chairperson and Chief Executive Officer**

The Company has appointed separate persons for the post of Chairperson of the Company and Chief Executive Officer. Mr. Dhirendra Swarup act as the Chairperson of the Board whereas Mr. Pradeep Dwivedi is the Chief Executive Officer of the Company.

**C.    Reporting of Internal Auditor**

The internal control systems of the Company are routinely tested and verified by Internal Audit Department and significant audit observations and follow-up actions are reported to the Audit Committee.

## COMPLIANCE WITH CORPORATE GOVERNANCE MANDATORY REQUIREMENTS

The Company has complied with the all the required requirements specified under Regulation 17 to Regulation 27 and Clauses (b) to (i) of sub-regulation (2) of Regulation 46 of SEBI Listing Regulations and the disclosure of the compliance status forms part of this Report.

## OTHER DISCLOSURES

- No treatment different from the Indian Accounting Standards (Ind AS), prescribed by the Institute of Chartered Accountants of India, has been followed in the preparation of financial statements.

- The Company has in place the mechanism to inform Board members about the risk assessment and minimisation procedures and periodical reviews to ensure that risk is controlled by the Executive Management.

- During the year, the Company did not make any public issue, right issue, preferential issue, etc. and hence it did not receive any proceeds from any such issues. The proceeds received from public issue made in 2010, were appropriately utilized.

- During the last three years, there were no instances of non-compliance by the Company and no penalty or strictures were imposed on the Company by the Stock Exchanges or SEBI or any statutory authority, on any matter related to the capital markets.

- The Company is fully compliant with the applicable mandatory requirements under SEBI Listing Regulations, relating to Corporate Governance.

- The Company has laid down the Whistle Blower mechanism for employees and its stakeholders of the Company to report to the management about any instances of unethical behaviour, actual or suspected fraud, illegal or unethical practices in the Company.

- During the year under review, there was no audit qualification in the Company's Financial Statements. Your Company continues to adopt best practices to ensure a regime of unqualified Financial Statements.

- Certificate from a Company Secretary in Practice on confirming directors are not debarred or disqualified by SEBI/MCA or any statutory authority is published as an annexure to this Report.

- The total fees for all services paid by the Company and its subsidiaries, on a consolidated basis, to the statutory auditor is ₹ 147 lakhs.

- During the year, there were no complaints filed, disposed or pending relating to the Sexual Harassment of Women at Workplace (Prevention, Prohibition and Redressal) Act, 2013.

## Code of Conduct

The Board has laid down a Code of Business Conduct and Ethics for all the Directors, Key Managerial Personnel and Senior Managerial Personnel of the Company in accordance with the requirement under Regulation 17(5) of SEBI Listing Regulations. The Code has also been posted on the website of the Company at www.erosstx.com. All the Board Members, Key Managerial Personnel and Senior Management Personnel have affirmed their compliance with the said Code for the Financial Year ending 31 March 2020.

A declaration to this effect signed by the Executive Vice Chairman & Managing Director of the Company is provided below in this Report.

In accordance with Schedule IV of the Act, a separate Code of Conduct for the Independent Directors has been adopted by the Company. The said Code states, inter alia, the duties, roles and responsibilities of Independent Directors and it has also been posted on the website of the Company at www.erosstx.com.

All Independent Directors have confirmed to the Company that they have adhered to and complied with the said Code for the Financial Year ended 31 March 2020.

## DECLARATION AFFIRMING COMPLIANCE OF CODE OF CONDUCT

To the best of my knowledge and belief, I hereby affirm that all the Board Members and Senior Management Personnel of the Company have fully complied with the provisions of the code of conduct as laid down by the Company for Directors and Senior Management Personnel during the financial year ended on 31 March 2020.

For and on behalf of the Board
**Eros International Media Limited**

**Sunil Arjan Lulla**
**Executive Vice Chairman & Managing Director**
DIN: 00243191

Date: 9 November 2020
Place: Mumbai

**CORPORATE GOVERNANCE REPORT**

### EQUITY SHARES IN THE SUSPENSE ACCOUNT

In terms of Schedule V(F) of SEBI Listing Regulations, the Company reports the following details in respect of equity shares lying in the suspense accounts which were issued in demat form:

| Sr. No. | Particulars | No. of Shareholders | No. of Shares |
|---|---|---|---|
| 1 | Aggregate number of shareholders and the outstanding shares in the suspense account lying at the beginning of the year (1 April 2019); | 4 Shareholders | 169 Equity Shares |
| 2 | Number of shareholders who approached issuer for transfer of shares from suspense account during the year; | Nil | Nil |
| 3 | Number of shareholders to whom shares were transferred from suspense account during the year; | Nil | Nil |
| 4 | Aggregate number of shareholders and the outstanding shares in the suspense account lying at the end of the year (31 March 2020). | 4 Shareholders | 169 Equity Shares |

*Note: The above shares were transferred to the demat account of the IEPF Authority on 19 October 2020 as per Section 124 of the Act. Accordingly, the voting rights on the shares lying with IEPF Authority shall remain frozen till the rightful owners of such shares claim the shares.*

## CERTIFICATE OF NON-DISQUALIFICATION OF DIRECTORS

(Pursuant to Regulation 34(3) and Schedule V Para C clause (10) (i) of the SEBI (Listing Obligations and Disclosure Requirements) Regulations, 2015)

To,
**The Members**
**Eros International Media Limited**
201, Kailash Plaza Opp Laxmi Industrial Estate Off
Andheri Link Road, Andheri (W) Mumbai-400053, Maharashtra

We have examined the relevant registers, records, forms, returns and disclosures received from the Directors of Eros International Media Limited having CIN: L99999MH1994PLC080502 and having registered office at 201, Kailash Plaza Opp Laxmi Industrial Estate Off, Andheri Link Road, Andheri (W) Mumbai-400053, Maharashtra (hereinafter referred to as 'the Company'), produced before us by the Company for the purpose of issuing this Certificate, in accordance with Regulation 34(3) read with Schedule V Para-C Sub clause 10(i) of the Securities Exchange Board of India (Listing Obligations and Disclosure Requirements) Regulations, 2015.

In our opinion and to the best of our information and according to the verifications (including Directors Identification Number (DIN) status at the portal www.mca.gov.in) as considered necessary and explanations furnished to us by the Company and its officers, we hereby certify that none of the Directors on the Board of the Company as stated below for the Financial Year ending on 31st March, 2020 have been debarred or disqualified from being appointed or continuing as Directors of Companies by the Securities and Exchange Board of India, Ministry of Corporate Affairs, or any such other Statutory Authority.

| Sr. No. | Name of Director | DIN | Date of appointment in Company |
|---|---|---|---|
| 1. | Bindu Saxena | 00167802 | 26/09/2019 |
| 2. | Sunil Srivastav | 00237561 | 23/05/2018 |
| 3. | Sunil Arjan Lulla | 00243191 | 19/08/1994 |
| 4. | Kishore Arjan Lulla | 02303295 | 28/09/2009 |
| 5. | Dhirendra Swarup | 02878434 | 10/02/2010 |
| 6. | Rakesh Sood | 07170411 | 01/05/2015 |
| 7. | Subramaniam Lakshminarayanan* | 07972480 | 14/11/2017 |

* Mr. Subramaniam Lakshminarayanan ceased to be Director of the Company w.e.f. 20 June 2020.

Ensuring the eligibility of for the appointment / continuity of every Director on the Board is the responsibility of the management of the Company. Our responsibility is to express an opinion on these based on our verification. This certificate is neither an assurance as to the future viability of the Company nor of the efficiency or effectiveness with which the Management has conducted the affairs of the Company.

For MNK and Associates LLP
Company Secretaries
FRN: L2018DE004900

Mohd Nazim Khan
Designated Partner
FCS: 6529, CP: 8245
UDINNo.:F006529B000554505

Date: 5 August 2020
Place: New Delhi

# CEO/CFO CERTIFICATE

To,
The Audit Committee / Board of Directors
Eros International Media Limited
Mumbai

We hereby certify that in the preparation of the accounts for the year ended 31 March 2020,

(a)    We have reviewed Financial Statements and the Cash Flow Statement for the year and that to the best of our knowledge and belief:

    (i)    these statements do not contain any materially untrue statement or omit any material fact or contain statements that might be misleading;

    (ii)   these statements together present a true and fair view of the company's affairs and are in compliance with existing Indian Accounting Standards (Ind AS), applicable laws and regulations.

(b)    To the best of our knowledge and belief, there are no transactions entered into by the Company during the year, which are fraudulent, illegal or in violation of the Company's Code of Conduct.

(c)    We accept responsibility for establishing and maintaining internal controls for financial reporting and that we have evaluated the effectiveness of the internal control systems of the Company pertaining to financial reporting and we have disclosed to the auditors and the Audit Committee, and further state that there were no deficiencies in the design or operation of such internal controls.

(d)    We have indicated to the auditors and the Audit Committee.

    (i)    That there are no significant changes in internal controls over financial reporting during the year.

    (ii)   That there are no significant changes in accounting policies during the year.

    (iii)  There have been no instances of significant fraud of which we have become aware and the involvement therein, if any of the management or an employee having a significant role in the company's internal control system over financial reporting.

**Pradeep Dwivedi**
**Chief Executive Officer - India**

**Farokh P. Gandhi**
**Group Chief Financial Officer (India)**

Date: 30 July 2020
Place: Mumbai

CORPORATE GOVERNANCE REPORT

**CERTIFICATE OF COMPLIANCE WITH THE CONDITIONS OF CORPORATE GOVERNANCE UNDER SCHEDULE V OF THE SEBI (LISTING OBLIGATIONS AND DISCLOSURE REQUIREMENTS) REGULATIONS, 2015**

To,
The Members of
Eros International Media Limited

We have examined the compliance of conditions of corporate governance by Eros International Media Limited ("the Company"), for the year ended on 31 March 2020, as stipulated in Regulation 17 to 27, clauses (b) to (i) of sub-regulation (2) of Regulation 46 and Para C, D and E of Schedule V of SEBI (Listing Obligations and Disclosure Requirements) Regulations, 2015 of the said Company with stock exchange(s).

The compliance of conditions of corporate governance is responsibility of the management. Our examination was limited to procedures and implementation thereof, adopted by the Company for ensuring the compliance of the conditions of the Corporate Governance. It is neither an audit nor an expression of opinion on the financial statements of the Company.

In our opinion and to the best of our information and according to the explanations given to us and the representations made by the Directors and the management, we certify that the Company has complied with the conditions of Corporate Governance as stipulated in Regulation 17 to 27, clauses (b) to (i) of sub-regulation (2) of regulation 46 Para C, D and E of Schedule V and  SEBI (Listing Obligations and Disclosure Requirements) Regulations, 2015.

This report is neither an assurance as to the future viability of the Company nor the efficiency or effectiveness with which the management has conducted the affairs of the Company.

This report is addressed to and provided to the members of the Company solely for the purpose of enabling it to comply with its obligations under the Listing Regulations with reference to compliance with the relevant regulations of Corporate Governance and should not be used by any other person or for any other purpose. Accordingly, we do not accept or assume any liability or any duty of care or for any other purpose or to any other party to whom it is shown or into whose hands it may come without our prior consent in writing. We have no responsibility to update this report for events and circumstances occurring after the date of this report.

**For SG & Associates**
**Practicing Company Secretaries**

**Suhas S. Ganpule**
**Proprietor**
**ACS No: 12122**
**CP No.5722**
**UDIN: A012122B001189969**

Date: 9 November 2020
Place: Mumbai

# Standalone Financial Statements

STANDALONE FINANCIAL STATEMENTS

# INDEPENDENT AUDITOR'S REPORT

To the Members of

**Eros International Media Limited**

**Report on the Standalone financial statements**

**Opinion**

We have audited the accompanying standalone financial statements of **Eros International Media Limited** ("the Company"), which comprise the Balance Sheet as at March 31, 2020, the Statement of Profit and Loss, including Other Comprehensive Income, the Cash Flow Statement and the Statement of Changes in Equity for the year then ended, and a summary of significant accounting policies and other explanatory information.

In our opinion and to the best of our information and according to the explanations given to us, the aforesaid standalone financial statements give the information required by the Companies Act, 2013 ("the Act") in the manner so required and give a true and fair view in conformity with the Indian Accounting Standards ("Ind AS") specified under Section 133 of the Act and other accounting principles generally accepted in India, of the state of affairs of the Company as at March 31, 2020, its loss including other comprehensive income, its cash flows and the statement of changes in equity for the year ended on that date.

**Basis for Opinion**

We conducted our audit in accordance with the Standards on Auditing ("SAs") specified under Section 143(10) of the Act. Our responsibilities under those Standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements section of our report. We are independent of the Company in accordance with the Code of Ethics issued by the Institute of Chartered Accountants of India (ICAI) together with the ethical requirements that are relevant to our audit of the standalone financial statements under the provisions of the Act and the Rules made thereunder, and we have fulfilled our other ethical responsibilities in accordance with these requirements and the ICAI's Code of Ethics. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our opinion on the standalone financial statements.

**Material Uncertainty related to Going Concern**

As stated in Note No. 52 of the standalone financial statements, the economic uncertainty created by the novel coronavirus has resulted in significant business disruptions for film distributer and broadcasting companies. These conditions, along with other matter as set forth in the aforesaid note, indicate the existence of a material uncertainty that may cast significant doubt about the Company's ability to continue as a going concern.

Our opinion is not modified in respect of this above matter.

**Emphasis of Matter**

We draw attention to Note No. 51 of the standalone financial statements, which describes the Company's management evaluation of Covid 19 impact on the future business operations and future cash flows of the Company and it's consequential effects on the carrying value of assets as on March 31, 2020. In view of uncertain economic conditions, the Company's management's evaluation of impact on subsequent periods is highly dependent upon conditions as they evolve. Our opinion is not modified in respect of this matter.

**Key Audit Matters**

Key audit matters are those matters that, in our professional judgment, were of most significance in our audit of the standalone financial statements of the current period. These matters were addressed in the context of our audit of the standalone financial statements as a whole, and in forming our opinion thereon, and we do not provide a separate opinion on these matters. For each matter below, our description of how our audit addressed the matter is provided in that context.

We have determined the matters described below to be key audit matters to be communicated in our report. We have fulfilled the responsibilities described in the Auditors' responsibilities for the audit of the Standalone Financial Statements section of our report, including in relation to these matters. Accordingly, our audit included the performance of procedures designed to respond to our assessment of the risks of material misstatement of the Standalone Financial Statements. The results of our audit procedures, including the procedures performed to address the matters below, provide the basis for our audit opinion on the accompanying standalone financial statements:-

| Key Audit Matters | Response to Key Audit Matters |
|---|---|
| **Impairment of Non financial assets** | |
| *(Refer note 39 of standalone financial statement)* | |
| Annually management reviews whether there are any indicators of impairment of the non financial assets (Refer note 1 and para (d) of significant accounting policies by reference to the requirements under Ind AS 36 – "Impairment of Assets". Accordingly, management has identified impairment indicators (impact of Covid-19 pandemic of company's operations, significant reduction in market capitalisation as compared with the previous year and other factors) exist as at March 31.2020. As a result, an impairment assessment was required to be performed by the Company by comparing the carrying value of the cash generating unit (CGU) to their recoverable amount i.e. value in use to determine whether impairment was required to be recognised. For the purpose of impairment testing, management has determined the value in use of CGU based on the valuation report by external expert.<br><br>The assessment of the value in use (the present value of the future cash flows that are expected to be derived from the asset.) requires significant judgment, in particular relating to estimated cash flow projections and discount rates.<br><br>During the year ended March 31, 2020 the Company has recorded an impairment provision of ₹1,27,088 Lakhs to reduce the aggregate carrying value of CGU comprising of Content Advances and Film Rights, to their estimated recoverable values, as per the valuation report.<br><br>Due to the level of judgment, market environment and significance to the Company's financial position, this is considered to be a key audit matter. | Our audit procedures included and were not limited to the following:<br><br>• Obtaining an understanding, evaluating the design and testing, the operating effectiveness of controls that the Company has in relation to impairment review processes.<br><br>• Assessing the appropriateness of Company's valuation methodology applied in determining the recoverable amount. In making this assessment, we evaluated the objectivity and independence of Company's specialists involved in the process.<br><br>• Assessing the assumptions around the key drivers of the cash flow forecasts including discount rates, expected growth rates and terminal growth rates used.<br><br>• Assessing the recoverable value headroom by performing sensitivity testing of key assumptions used.<br><br>• Assess the methodology and appropriateness of allocation of impairment value derived for CGU to individual accounts as per Ind AS 36.<br><br>• Verifying the completeness of disclosure in the Standalone Financial Statements as per Ind AS 36. |
| **Revenue Recognition** | |
| *(Refer note 1 and para 'a' of the significant accounting policies)* | |
| The Company recognize theatrical income, license Fees and distribution revenue, net of sales related taxes, when control of the underlying products have been transferred along with satisfaction of performance obligation.<br><br>Recognition of revenue is driven by specific terms of related contracts.<br><br>The various streams of revenue, together with the level of judgement involved make its accounting treatment for revenue a significant matter for our audit. | Our audit procedures to assess the appropriateness of revenue recognised included and were not limited to following:<br><br>• Obtaining an understanding of an assessing the design, implementation and operating effectiveness of the Company's key internal controls over the revenue recognition process.<br><br>• Examination of significant contracts entered into close to year end to ensure revenue recognition is made in correct period.<br><br>• Testing a sample of contracts from various revenue streams by agreeing information back to contracts and proof of delivery or transmission as appropriate and ensure revenue recognition is in accordance with principles of Ind AS 115.<br><br>• Assessing the adequacy of Company's disclosure in accordance with requirements of Ind AS 115. |

**STANDALONE FINANCIAL STATEMENTS**

| Key Audit Matters | Response to Key Audit Matters |
|---|---|
| **Content Advances** | |
| Company enters into agreements with production houses to develop future film content. Advances are given as per terms of agreements. Such content advances are monitored by management of the Company for recoverability and appropriate write offs are taken when film production does not seem viable and refund of advance is not probable basis management evaluation.<br><br>The Content advances are transferred to film and rights at the point at which the content is first exploited. Provision is made as per provision policy in respect of content advances against which content has not been delivered by vendor within agreed timelines or where projects are at standstill/put on hold for substantial period of time.<br><br>Because of the significance of content advances to the balance sheet and of the significant degree of management judgment involved in evaluating the adequacy of the allowance for content advances, we identified this area as key audit matter. | Our audit procedures with respect to content advance, delivery of the content and it's impairment included and were not limited to following:<br><br>• Obtaining an understanding of and assessing the design, implementation and operating effectiveness of the Company's key controls over the processes of authorisation of content advances and tracking of receipt of related content as per agreement.<br><br>• Examination of contracts on sample basis entered by the Company and agreeing with the schedule of content advance.<br><br>• Examination of the approvals of write off where amounts are not recoverable.<br><br>• Testing of the amounts transferred to film and rights account on sample basis on delivery of content by vendor.<br><br>• Circulating and obtaining independent confirmations from parties on the outstanding balances on sample basis. Testing the reconciliation, if any between the balances confirmed by party and balance in the books.<br><br>• Conducting discussion with the management and reviewing, on sample basis, the project status prepared by management for determining the adequacy of impairment provisions where balances are still pending to be adjusted against the content to be delivered by the party. |
| **Amortisation of Film and Content Rights**<br>*(Refer note 1 and para 'c' of the significant accounting policies)* | |
| The cost incurred on acquisition of film and content rights are amortised over the period. Company carries out stepped up amortisation of film content, with higher amortisation in year of film release and lower amortisation in later periods as per the policy disclosed in significant accounting policy.<br><br>Such amortisation policy has been derived basis management's expectation of overall performance of films based on historical trends. The Company maintains detailed content wise information relating to historical trends and future benefits from content through theatrical sales, sale of satellite or television and other forms of monetisation of the content.<br><br>Determination of amortisation policy and assessing impairment of content asset involves significant judgement and estimates since it is dependent on various internal and external factors.<br><br>Because of the significance of the amortisation of content and film rights to balance sheet together with the level of judgement involved make its accounting treatment a significant matter for our audit. | Our audit procedures to test amortisation/ impairment of film content included and were not limited to following:<br><br>• Assessing the design, implementation and operating effectiveness of the Company's key internal controls over the processes of maintenance and updation of master files containing data on the film rights carrying value and the related amortisation computations thereof.<br><br>• Testing, on sample basis, the mathematical accuracy of the acquisition cost of film and content rights, associated amortisation charge and additions and disposals to third party supporting documents.<br><br>• Discussing the expectations of the selected films and shows with key personnel, including those outside of finance, to ensure its consistency of expected performance with key assumptions.<br><br>• Determining the overall assumptions used by management for amortisation policy is appropriate based on the expected utilisation of benefits of the underlying content.<br><br>• Assessing management's historical forecasting accuracy by comparing past assumptions to actual outcomes.<br><br>• The carrying value of the content and film cost were tested for impairment based on the valuation model. We tested the historical data used for valuation, challenged the terminal growth and discount rates used and considered the reasonableness of the sensitivity assessment applied. |

| Key Audit Matters | Response to Key Audit Matters |
|---|---|
| **Trade Receivables** | |
| *(Refer note 1 and para 'i' of the significant accounting policies)* | |
| The Company is required to regularly assess the recoverability of its trade receivables. Management assesses the level of allowance for expected credit loss required at each reporting date after taking into account the ageing analysis of trade receivables and other historical and current factors specific to individual accounts. <br><br> The recoverability of trade receivables was significant to our audit because of the significance of trade receivables to balance sheet and involvement of significant degree of management judgement involved in evaluating the adequacy of the allowance for expected credit loss. | Our audit procedures to assess the recoverability of trade receivables included and were not limited to following: <br><br> • Tested the accuracy of aging of trade receivables at year end on a sample basis. <br><br> • Assessed the recoverability of the unsettled receivables on a sample basis through our evaluation of management's assessment with reference to the credit profile of the customers, historical payment pattern of customers, publicly available information and latest correspondence with customers related to the recoverability of outstanding amount and to consider if any additional provision should be made. <br><br> • Tested subsequent settlement of trade receivables after the balance sheet date on a sample basis, if any. <br><br> • Examination of the approvals of write off where amounts are not recoverable. <br><br> • Circulating and obtaining independent customers confirmation on the outstanding balances on sample basis. Testing the reconciliation, if any between the balances confirmed by customer and balance in the books on sample basis. <br><br> • In assessing the appropriateness of the overall provision for expected credit loss we considered the management's application of policy for recognizing provisions which included assessing whether the calculation was in accordance with IND AS 109 and comparing the Company's provisioning rates against historical collection data. |

## Other Information

The Company's Board of Directors is responsible for the other information. The other information comprises the information included in the Annual Report, but does not include the standalone financial statements and our auditor's report thereon.

Our opinion on the standalone financial statements does not cover the other information and we do not express any form of assurance conclusion thereon.

In connection with our audit of the financial statements, our responsibility is to read the other information and, in doing so, consider whether the other information is materially inconsistent with the financial statements or our knowledge obtained in the audit or otherwise appears to be materially misstated. If, based on the work we have performed, we conclude that there is a material misstatement of this other information; we are required to report that fact. We have nothing to report in this regard.

## Management Responsibility for the Standalone Financial Statements

The Company's Board of Directors is responsible for the matters stated in Section 134(5) of the Act, with respect to the preparation of these Standalone Financial Statements that give a true and fair view of the financial position, financial performance including other comprehensive income, cash flows and the statement of changes in equity of the Company in accordance with the accounting principles generally accepted in India, including the Indian Accounting Standards ("Ind AS") specified under Section 133 of the Act, read with the Companies (Indian Accounting Standards) Rules, 2015, as amended.

This responsibility also includes maintenance of adequate accounting records in accordance with the provision of the Act for safeguarding the assets of the Company and for preventing and detecting frauds and other irregularities; selection and application of the appropriate accounting policies; making judgements and estimates that are reasonable and prudent; and design, implementation and maintenance of adequate internal financial controls, that were operating effectively for ensuring the accuracy and completeness of the accounting records, relevant to the preparation and fair presentation of the standalone financial statements that give a true and fair view and are free from material misstatement, whether due to fraud or error.

In preparing the standalone financial statements, management is responsible for assessing the Company's ability to continue as a going concern, disclosing, as applicable, matters related to going concern and using the going concern basis of accounting unless management either intends to liquidate the Company or to cease operations, or has no realistic alternative but to do so.

The Board of Directors are also responsible for overseeing the Company's financial reporting process.

## Auditor's Responsibility

Our objectives are to obtain reasonable assurance about whether the standalone financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance, but is not a guarantee that an audit conducted in accordance with SAs will always detect a material misstatement when it exists. Misstatements can arise from fraud or error and are considered material if, individually or in the aggregate, they could reasonably be expected to influence the economic decisions of users taken on the basis of these standalone financial statements.

As part of an audit in accordance with SAs, we exercise professional judgment and maintain professional scepticism throughout the audit. We also:

• Identify and assess the risks of material misstatement of the financial statements, whether due to fraud or error, design and perform audit procedures responsive to those risks, and obtain audit evidence that is sufficient and appropriate to provide a basis for our opinion. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control.

• Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances. Under Section 143(3)(i) of the Act, we are also responsible for expressing our opinion on whether the Company has adequate internal financial controls system in place and the operating effectiveness of such controls.

• Evaluate the appropriateness of accounting policies used and the reasonableness of accounting estimates and related disclosures made by management.

• Conclude on the appropriateness of management's use of the going concern basis of accounting and, based on the audit evidence obtained, whether a material uncertainty exists related to events or conditions that may cast significant doubt

**STANDALONE FINANCIAL STATEMENTS**

on the Company's ability to continue as a going concern. If we conclude that a material uncertainty exists, we are required to draw attention in our auditor's report to the related disclosures in the standalone financial statements or, if such disclosures are inadequate, to modify our opinion. Our conclusions are based on the audit evidence obtained up to the date of our auditor's report. However, future events or conditions may cause the Company to cease to continue as a going concern.

- Evaluate the overall presentation, structure and content of the standalone financial statements, including the disclosures, and whether the standalone financial statements represent the underlying transactions and events in a manner that achieves fair presentation.

Materiality is the magnitude of misstatements in the standalone financial statements that, individually or in aggregate, makes it probable that the economic decisions of a reasonably knowledgeable user of the standalone financial statements may be influenced. We consider quantitative materiality and qualitative factors in (i) planning the scope of our audit work and in evaluating the results of our work; and (ii) to evaluate the effect of any identified misstatements in the standalone financial statements.

We communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit and significant audit findings, including any significant deficiencies in internal control that we identify during our audit.

We also provide those charged with governance with a statement that we have complied with relevant ethical requirements regarding independence, and to communicate with them all relationships and other matters that may reasonably be thought to bear on our independence, and where applicable, related safeguards.

From the matters communicated with those charged with governance, we determine those matters that were of most significance in the audit of the standalone financial statements of the current period and are therefore the key audit matters. We describe these matters in our auditor's report unless law or regulation precludes public disclosure about the matter or when, in extremely rare circumstances, we determine that a matter should not be communicated in our report because the adverse consequences of doing so would reasonably be expected to outweigh the public interest benefits of such communication.

**Report on Other Legal and Regulatory Requirements**

1. As required by the Companies (Auditor's Report) Order, 2016 ("the Order"), issued by the Central Government of India in terms of sub-section (11) of Section 143 of the Act, we give in the "Annexure A" a statement on the matters specified in paragraphs 3 and 4 of the Order.

2. As required by Section 143(3) of the Act, we report that:

   a) We have sought and obtained all the information and explanations which to the best of our knowledge and belief were necessary for the purposes of our audit;

   b) In our opinion, proper books of account as required by law have been kept by the Company so far as appears from our examination of those books;

   c) The Balance Sheet, Statement of Profit and Loss including Other Comprehensive Income, the Cash Flow Statement and the Statement of Changes in Equity dealt with by this report are in agreement with the books of account;

   d) In our opinion, the aforesaid standalone financial statements comply with the Ind AS specified under Section 133 of the Act read with Companies (Indian Accounting Standards) Rules, 2015 as amended;

   e) The matter described under Material Uncertainty Related to Going Concern paragraph above, in our opinion, may have an adverse effect on the functioning of the Company.

   f) On the basis of written representations received from the directors as on March 31, 2020 taken on record by the Board of Directors, none of the directors is disqualified as on March 31, 2020, from being appointed as a director in terms of Section 164(2) of the Act;

   g) With respect to the adequacy of the internal financial controls over financial reporting of the Company and the operating effectiveness of such controls, refer to our separate Report in "Annexure B". Our report expresses an unmodified opinion on the adequacy and operating effectiveness of the Company's internal financial controls over financial reporting;

   h) With respect to the other matters to be included in the Auditor's Report in accordance with the requirements of section 197(16) of the Act, as amended,

   In our opinion and to the best of our information and according to the explanations given to us, the remuneration paid by the Company to its Executive Vice Chairman and Managing Director for the year ended March 31, 2020 is in excess by ₹ 398 Lakhs vis-à-vis the limits specified in Section 197 of Companies Act, 2013 ('the Act') read with Schedule V thereto as the Company does not have profits. The Company has represented to us that it is in the process of complying with the prescribed statutory requirements to regularize such excess payments, including seeking approval of shareholders, as necessary.

   i) With respect to the other matters to be included in the Auditor's Report in accordance with Rules 11 of the Companies (Audit and Auditors) Rules, 2014, as amended, in our opinion and to the best of our information and according to the explanations given to us:

   i. The Company has disclosed the impact of pending litigations on its financial position in its standalone financial statements - Refer Note 41 to the standalone financial statements;

   ii. The Company did not have any long-term contracts including derivative contracts for which there were any material foreseeable losses, and

   iii. There has been no delay in transferring amounts, required to be transferred, to the Investor Education and Protection Fund by the Company.

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No. 101720W/W100355

**Amit Chaturvedi**
Partner
Membership No. 103141

UDIN: 20103141AAAAP07576
Place: Mumbai
Date: 30 July, 2020

# ANNEXURE "A" TO THE INDEPENDENT AUDITOR'S REPORT ON THE STANDALONE FINANCIAL STATEMENTS OF EROS INTERNATIONAL MEDIA LIMITED

**(Referred to in Paragraph 1 under the heading of "Report on other legal and regulatory requirements" of our report of even date)**

i)      **In respect of its Fixed Assets :**

   a.    The Company has maintained proper records showing full particulars including quantitative details and situation of Fixed Assets on the basis of available information.

   b.    As explained to us, all the fixed assets have been physically verified by the management in a phased periodical manner, which in our opinion is reasonable, having regard to the size of the Company and nature of its assets. No material discrepancies were noticed on such physical verification.

   c.    According to the information and explanations given to us, the title deeds of all the immovable properties are held in the name of the Company.

ii)     In respect of its inventories:

   As the Company had no inventory during the year, clause (ii) of paragraph 3 of the Order is not applicable to the Company.

iii)    In respect of loans, secured or unsecured granted by the Company to companies, firms, limited liability partnerships or other parties covered in the register maintained under Section 189 of the Act:

   a.    In our opinion the terms and conditions of the grant of such loans are prima facie, not prejudicial to the company's interest.

   b.    The schedule of repayment of principal and interest has been stipulated wherein the principal and interest amounts are repayable on demand. Since the repayment of such loans has not been demanded, in our opinion, the repayment of the principal and interest amount is regular.

   c.    There is no overdue amount in respect of loans granted to such companies and firms.

iv)    In respect of loans, investments, guarantees and security, the Company has complied with the provisions of Section 185 and 186 of the Act.

v)     According to the information and explanations given to us, the Company has not accepted any deposits within the meaning of provisions of Sections 73 to 76 or any other relevant provisions of the Act and the rules framed thereunder. Therefore, the provisions of Clause (v) of paragraph 3 of the Order are not applicable to the Company.

vi)    To the best of our knowledge and explanations given to us, the Central Government has not prescribed the maintenance of cost records under sub section (1) of Section 148 of the Act in respect of the activities undertaken by the Company. Accordingly, the provision of clause 3(vi) of the order is not applicable.

vii)   In respect of Statutory dues :

   a.    According to the records of the Company, undisputed statutory dues including goods and service tax, employee's state insurance, provident fund, income-tax, sales-tax, service tax, duty of customs, value added tax, cess and any other statutory dues as applicable to it have not been regularly deposited to the appropriate authorities and there have been significant delays in a large number of cases. According to the information and explanations given to us, following are the undisputed amounts payable in respect of the aforesaid dues were outstanding as at March 31, 2020 for a period of more than six months from the date of becoming payable:-

| Sr. No. | Name of the statute | Nature of the dues | Amount ₹ in lakhs | Period to which the amount relates | Due Date | Date of Payment |
|---|---|---|---|---|---|---|
| 1 | Income Tax Act, 1961 | Interest on Income Tax | 1,263 | Assessment Year 2017-18 | 30.11.2017 | Unpaid |
| | | Interest on Income Tax | 243 | Assessment Year 2018-19 | 30.11.2018 | Unpaid |
| | | Income Tax | 5,446 | Assessment Year 2019-20 | 30.11.2019 | Unpaid |
| | | Interest on Income Tax | 1,255 | Assessment Year 2019-20 | 30.11.2019 | Unpaid |
| | | Interest on Tax Deducted at Source (TDS) | 18 | Financial Year 2018-19 | Various Dates | Paid as on 27th July 2020 |
| | | Tax Deducted at Source (TDS) | 716 | Financial Year 2019-20 | Various Dates | Paid as on 16th July 2020 |
| | | Interest on Tax Deducted at Source (TDS) | 102 | Financial Year 2019-20 | Various Dates | Paid as on 27th July 2020 |
| 2 | Goods and Services Tax Act | Interest on Goods and Service Tax | 69 | Financial Year 2017-18 | Various Dates | Unpaid |
| | | Goods and Service Tax | 453 | Financial Year 2018-19 | Various Dates | Unpaid |
| | | Interest on Goods and Service Tax | 91 | Financial Year 2018-19 | Various Dates | Unpaid |
| | | Goods and Service Tax | 2,497 | Financial Year 2019-20 | Various Dates | Paid 500 Lakhs on various dates |
| | | Interest on Goods and Service Tax | 332 | Financial Year 2019-20 | Various Dates | Unpaid |

   b.    On the basis of our examination of accounts and documents on records of the Company and information and explanations given to us upon enquires in this regard, the following are the disputed amounts payable in respect of goods and service tax, income tax, sales tax, service tax, duty and cess as applicable to it, which have not been deposited on account of disputed matters pending before the appropriate authorities:-

**STANDALONE FINANCIAL STATEMENTS**

| Sr. No | Name of the statute | Nature of the dues | Amount ₹ in lakhs | Amount Paid under protest (Amount ₹ in lakhs) | Period to which the amount relates | Forum where dispute is pending |
|---|---|---|---|---|---|---|
| 1 | Finance Act, 1994 | Service Tax, Penalties and Interest | 34,506 | 1,000 | Various Years From 2009-10 to 2016-2017 | Assistant commissioner of sales tax (Appeals) |
| 2 | Income Tax Act, 1961 | Income Tax | 68 | - | Various Assessment Years From 2003-04 to 2016-17 | Commissioner of Income Tax (Appeal) |
| | | | 37 | - | Assessment Year 2004-05 | High Court |
| | | | 1,653 | 775 | Assessment Year 2016-17 | Commissioner of Income Tax (Appeal) |
| 3 | Maharashtra Value Added Tax, 2002 | Sales Tax | 2,488 | 55 | Various Years From 2005-06 to 2013-14 | Joint Commissioner of sales tax (Appeals) |
| 4 | Central Sales Tax Act, 1956 | Sales Tax | 98 | 20 | Various Years From 2005-06 to 2013-14 | Joint Commissioner of sales tax (Appeals) |

viii) In our opinion and according to the information and explanations given to us, the Company has delayed in repayment of dues to financial institutions, banks and government during the year. The lender wise details of the default as on March 31, 2020 is tabulated as under:-

| Name of Bank/ Financial Institution | Amount in lakhs (₹) | |
|---|---|---|
| | Principal* | Interest* |
| **Bank of Baroda** | 92 | 13 |
| **Union Bank of India** | 33 | 3 |
| **Punjab National Bank** | 42 | 6 |
| **Total** | 167 | 22 |

*Since paid in July 2020

ix) The Company has not raised money by way of initial public offer or further public offer (including debt instruments). In our opinion, the term loans were applied for the purpose for which the loans were obtained.

x) Based on the audit procedures performed for the purpose of reporting the true and fair view of the financial statements and as per information and explanations given to us, no fraud by the Company or on the Company by its officers or employees has been noticed or reported during the year.

xi) In our opinion and to the best of our information and according to explanation given to us, the remuneration paid by the Company to its Executive Vice Chairman and Managing Director for the year ended March 31, 2020 is in excess by ₹ 398 Lakhs vis-à-vis the limits specified in Section 197 of Companies Act, 2013 ('the Act') read with Schedule V thereto as the Company does not have profits. The Company has represented to us that it is in the process of complying with the prescribed statutory requirements to regularize such excess payments, including seeking approval of shareholders, as necessary.

xii) In our opinion Company is not a nidhi Company. Therefore, the provisions of clause (xii) of paragraph 3 of the Order are not applicable to the Company.

xiii) In respect of transactions with related parties:

In our opinion and according to the information and explanations given to us, all transactions with related parties are in compliance with Sections 177 and 188 of the Act and their details have been disclosed in the financial statements etc., as required by the applicable Ind AS.

xiv) In our opinion and according to the information and explanations given to us, the Company has not made any preferential allotment or private placement of shares or of fully or partly convertible debentures during the year and hence clause (xiv) of paragraph 3 of the Order is not applicable to the Company.

xv) In our opinion and according to the information and explanations given to us, the Company has not entered into any non-cash transaction with the directors or persons connected with him and covered under Section 192 of the Act. Hence, clause (xv) of the paragraph 3 of the Order is not applicable to the Company.

xvi) Based on information and explanation given to us, the Company is not required to be registered under Section 45-IA of the Reserve Bank of India Act, 1934.

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No. 101720W/W100355

**Amit Chaturvedi**
Partner
Membership No. 103141

UDIN: 20103141AAAAP07576
Place: Mumbai
Date: 30 July, 2020

# ANNEXURE "B" TO THE INDEPENDENT AUDITOR'S REPORT ON THE STANDALONE FINANCIAL STATEMENTS OF EROS INTERNATIONAL MEDIA LIMITED

**(Referred to in paragraph 2 (f) under 'Report on Other Legal and Regulatory Requirements' of our report of even date)**

**Report on the Internal Financial Controls over Financial Reporting under Clause (i) of sub-section 3 of Section 143 of the Companies Act, 2013 ("the Act")**

We have audited the Internal Financial Control over financial reporting of **Eros International Media Limited** ("the Company") as of 31 March 2020 in conjunction with our audit of the standalone financial statements of the Company for the year then ended.

## Management Responsibility for the Internal Financial Controls

The Company's management is responsible for establishing and maintaining internal financial controls based on the internal control over financial reporting criteria established by the Company considering the essential components of internal control stated in the  Guidance Note on Audit of Internal Financial Controls Over Financial Reporting (the "Guidance Note") issued by the Institute of Chartered Accountants of India ("ICAI"). These responsibilities include the design, implementation and maintenance of adequate internal financial controls that were operating effectively for ensuring the orderly and efficient conduct of its business, including adherence to company's policies, the safeguarding of its assets, the prevention and detection of frauds and errors, the accuracy and completeness of the accounting records, and the timely preparation of reliable financial information, as required under the Act.

## Auditor's Responsibility

Our responsibility is to express an opinion on the Company's internal financial controls over financial reporting based on our audit. We conducted our audit in accordance with the Guidance Note issued by ICAI and the Standards on Auditing, issued by ICAI and deemed to be prescribed under Section 143(10) of the Act, to the extent applicable to an audit of internal financial controls, both applicable to an audit of Internal Financial Controls and both issued by the ICAI.  Those Standards and the Guidance Note require that we comply with ethical requirements and plan and perform the audit to obtain reasonable assurance about whether adequate internal financial controls over financial reporting was established and maintained and if such controls operated effectively in all material respects.

Our audit involves performing procedures to obtain audit evidence about the adequacy of the internal financial controls system over financial reporting and their operating effectiveness. Our audit of internal financial controls over financial reporting included obtaining an understanding of internal financial controls over financial reporting, assessing the risk that a material weakness exists, and testing and evaluating the design and operating effectiveness of internal control based on the assessed risk. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the standalone financial statements, whether due to fraud or error.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion on the Company's internal financial controls system over financial reporting.

## Meaning of Internal Financial Controls over Financial Reporting

A company's internal financial control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of standalone financial statements for external purposes in accordance with generally accepted accounting principles. A company's internal financial control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of standalone financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the Company are being made only in accordance with authorisations of management and directors of the Company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorised acquisition, use, or disposition of the Company's assets that could have a material effect on the  standalone financial statements.

## Inherent Limitations of Internal Financial Controls over Financial Reporting

Because of the inherent limitations of internal financial controls over financial reporting, including the possibility of collusion or improper management override of controls, material misstatements due to error or fraud may occur and not be detected. Also, projections of any evaluation of the internal financial controls over financial reporting to future periods are subject to the risk that the internal financial control over financial reporting may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

## Opinion

In our opinion, the Company has, in all material respects, adequate internal financial controls over financial reporting with reference to these Standalone Financial Statements and such internal financial controls over financial reporting with reference to these Standalone Financial Statements were operating effectively as at March 31, 2020, based on the internal control over financial reporting criteria established by the Company considering the essential components of internal control stated in the Guidance Note issued by ICAI.

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No. 101720W/W100355

**Amit Chaturvedi**
Partner
Membership No. 103141

UDIN: 20103141AAAAP07576
Place: Mumbai
Date: 30 July, 2020

STANDALONE FINANCIAL STATEMENTS

# Balance Sheet
## as at 31 March 2020

Amount ₹ in lakhs

| Particulars | Notes | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|---|
| **Assets** | | | |
| **Non-current assets** | | | |
| Property, plant and equipment | 3 | 3,305 | 3,499 |
| Intangible assets | | | |
| a) Content advances | 4 | 41,525 | 144,435 |
| b) Film rights | 4 | 36,258 | 66,974 |
| c) Other intangible assets | 4 | 27 | 20 |
| d) Intangible assets under development | | 5,874 | 3,712 |
| Financial assets | | | |
| a) Investments | 5 | 4,502 | 4,819 |
| b) Loans | 6 | 545 | 1,671 |
| c) Restricted bank deposits | 7 | 41 | 511 |
| d) Other financial assets | 8 | 279 | 643 |
| Other non-current assets | 9 | 3,838 | 4,254 |
| **Total non-current assets** | | **96,194** | **230,538** |
| **Current assets** | | | |
| Inventories | 10 | 4 | 301 |
| Financial assets | | | |
| a) Trade receivables | 11 | 52,590 | 66,595 |
| b) Cash and cash equivalents | 12 | 102 | 268 |
| c) Restricted bank deposits | 13 | 3,609 | 5,982 |
| d) Loans and advances | 14 | 720 | 1,481 |
| e) Other financial assets | 15 | 69 | 228 |
| Other current assets | 16 | 142 | 243 |
| **Total current assets** | | **57,236** | **75,098** |
| **Total assets** | | **153,430** | **305,636** |
| **Equity and Liabilities** | | | |
| **Equity** | | | |
| Equity share capital | 17 | 9,563 | 9,551 |
| Other equity | 18 | 28,417 | 144,294 |
| **Total equity** | | **37,980** | **153,845** |
| **Liabilities** | | | |
| **Non-current liabilities** | | | |
| Financial liabilities | | | |
| a) Borrowings | 19 | 63 | 8,698 |
| b) Trade payables | 20 | | |
| i) Total outstanding dues of micro and small enterprises | | - | - |
| ii) Total outstanding dues of creditors other than micro and small enterprises | | 118 | 108 |
| c) Other financial liabilities | 21 | 47 | 25 |
| Employee benefit obligations | 22 | 318 | 378 |
| Deferred tax liabilities | 23 | - | 18,758 |
| Other non-current liabilities | 24 | 4,424 | 10,050 |
| **Total non-current liabilities** | | **4,970** | **38,017** |
| **Current liabilities** | | | |
| Financial liabilities | | | |
| a) Borrowings | 25 | 49,423 | 46,796 |
| b) Acceptances | 26 | 1,400 | 5,796 |
| c) Trade payables | | | |
| i) Total outstanding dues of micro and small enterprises | | - | - |
| ii) Total outstanding dues of creditors other than micro and small enterprises | | 28,394 | 19,429 |
| d) Other financial liabilities | 27 | 10,932 | 7,293 |
| Employee benefit obligations | 28 | 301 | 359 |
| Other current liabilities | 29 | 13,054 | 22,866 |
| Current tax liabilities | 30 | 6,976 | 11,235 |
| **Total current liabilities** | | **110,480** | **113,774** |
| **Total liabilities** | | **115,450** | **151,791** |
| **Total equity and liabilities** | | **153,430** | **305,636** |

Notes 1 to 53 form an integral part of these standalone financial statements.
As per our report of even date

For **Chaturvedi & Shah LLP**          **For and on behalf of Board of Directors**
Chartered Accountants
Firm Registration No.: 101720W/W100355

**Amit Chaturvedi**           **Sunil Lulla**              **Sunil Srivastav**             **Pradeep Dwivedi**
Partner                       Executive Vice Chairman &    Non Executive Independent       Chief Executive Officer
Membership No: 103141         Managing Director            Director
                              (DIN: 00243191)              (DIN: 00237561)

                                                            **Farokh P. Gandhi**            **Vijay Thaker**
                                                            Chief Financial Officer         Vice President - Company Secretary
                                                                                            and Compliance Officer

Place: Mumbai                                               Place: Mumbai
Date : 30 July 2020                                        Date : 30 July 2020

# Statement of Profit and Loss
**for the year ended 31 March 2020**

Amount ₹ in lakhs

| Particulars | Notes | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|---|
| **Revenue** | | | |
| Revenue from operations (net) | 31 | 66,900 | 83,564 |
| Other income | 32 | 5,547 | 3,416 |
| **Total revenue** | | **72,447** | **86,980** |
| **Expenses** | | | |
| Film right costs including amortization costs | 33 | 23,556 | 39,278 |
| Changes in inventories of film rights | 34 | 297 | (114) |
| Employee benefits expense | 35 | 2,974 | 4,141 |
| Finance cost (net) | 36 | 7,075 | 7,903 |
| Depreciation and amortization expense | 37 | 818 | 539 |
| Other expenses | 38 | 47,661 | 21,556 |
| **Total expenses** | | **82,381** | **73,303** |
| Profit/(Loss) before exceptional items and tax | | (9,934) | 13,677 |
| Exceptional items | 39 | 127,850 | - |
| Profit/(Loss) before tax and after exceptional items | | (137,784) | 13,677 |
| **Tax expense** | | | |
| Current tax | | - | 12,535 |
| Deferred tax | | (18,790) | (6,996) |
| Short/(excess) provision of earlier years | | (2,921) | (598) |
| | | **(21,711)** | **4,941** |
| **Profit/(Loss) after tax for the year** | | **(116,073)** | **8,736** |
| **Other comprehensive income** | | | |
| (i) Items that will not be reclassified to profit or loss | | | |
| Remeasurement gain on defined benefit plan | | 127 | 61 |
| Income tax effect (net) | | (32) | (21) |
| **Total comprehensive income for the year** | | **(115,978)** | **8,776** |
| Earnings per share | | | |
| Basic (in ₹) (nominal value ₹10) | 40 | (121.48) | 9.18 |
| Diluted (in ₹) (nominal value ₹10) | | (121.48) | 9.10 |

Notes 1 to 53 form an integral part of these standalone financial statements

As per our report of even date

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No.: 101720W/W100355

**For and on behalf of Board of Directors**

**Amit Chaturvedi**
Partner
Membership No: 103141

**Sunil Lulla**
Executive Vice Chairman &
Managing Director
(DIN: 00243191)

**Sunil Srivastav**
Non Executive Independent
Director
(DIN: 00237561)

**Pradeep Dwivedi**
Chief Executive Officer

**Farokh P. Gandhi**
Chief Financial Officer

**Vijay Thaker**
Vice President - Company Secretary
and Compliance Officer

Place: Mumbai
Date : 30 July 2020

Place: Mumbai
Date : 30 July 2020

STANDALONE FINANCIAL STATEMENTS

# Statement of Changes in Equity
**As at 31 March 2020**

| A.    Equity share capital | Number | Amounts ₹ in lakhs |
|---|---|---|
| **Balance as at 1 April 2018** | **94,971,877** | **9,497** |
| Add: Issued on exercise of employee share options | 536,263 | 54 |
| **Balance as at 31 March 2019** | **95,508,140** | **9,551** |
| Add: Issued on exercise of employee share options | 120,883 | 12 |
| **Balance as at 31 March 2020** | **95,629,023** | **9,563** |

B.    Other equity
Amount ₹ in lakhs

| Particulars | Share Premium Account | General Reserves | Share Options Outstanding | Retained Earnings | Other comprehensive income / (loss) | Total other equity |
|---|---|---|---|---|---|---|
| **Balance as at 1 April 2018** | 40,498 | 526 | 1,577 | 92,055 | 46 | 134,702 |
| Profit for the year | - | - | - | 8,736 | - | 8,736 |
| Acturial gain / (loss) on employee benefit plans through OCI | - | - | - | - | 40 | 40 |
| **Total Comprehensive income/ (loss) for the year** | **-** | **-** | **-** | **8,736** | **40** | **8,776** |
| Transfer from/to share option outstanding account | 1,049 | - | (1,049) | - | - | - |
| Employee stock option compensation expense | - | - | 761 | - | - | 761 |
| Employee stock option compensation expense to employees of subsidiary and Fellow subsidiary | - | - | 55 | - | - | 55 |
| **Balance as at 31 March 2019** | **41,547** | **526** | **1,344** | **100,791** | **86** | **144,294** |
| Profit/(loss) for the year | - | - | - | (116,073) | - | (116,073) |
| Acturial gain / (loss) on employee benefit plans through OCI | - | - | - | - | 95 | 95 |
| **Total Comprehensive income/ (loss) for the year** | **-** | **-** | **-** | **(116,073)** | **95** | **(115,978)** |
| Transfer from/to share option outstanding account | 230 | - | (230) | - | - | - |
| Employee stock option compensation expense | - | - | 85 | - | - | 85 |
| Employee stock option compensation expense to employees of subsidiary and fellow subsidiary | - | - | 16 | - | - | 16 |
| **Balance as at 31 March 2020** | **41,777** | **526** | **1,216** | **(15,282)** | **180** | **28,417** |

As per our report of even date

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No.: 101720W/W100355

For and on behalf of Board of Directors

**Amit Chaturvedi**
Partner
Membership No: 103141

**Sunil Lulla**
Executive Vice Chairman &
Managing Director
(DIN: 00243191)

**Sunil Srivastav**
Non Executive Independent
Director
(DIN: 00237561)

**Pradeep Dwivedi**
Chief Executive Officer

**Farokh P. Gandhi**
Chief Financial Officer

**Vijay Thaker**
Vice President - Company Secretary
and Compliance Officer

Place: Mumbai
Date : 30 July 2020

Place: Mumbai
Date : 30 July 2020

# Cash Flow Statement
**For the year ended 31 March 2020**

Amount ₹ in lakhs

| Particulars | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| **Cash flow from operating activities** | | |
| **Profit/(Loss) before tax** | **(137,784)** | **13,677** |
| Non-cash adjustments to reconcile Profit before tax to net cash flows | | |
| Depreciation and amortisation | 17,579 | 25,012 |
| Bad debts and trade receivables written off | 44,966 | 1,917 |
| Sundry balances written back | (882) | (45) |
| Content advances written off | - | 2,226 |
| Provision/(Reversal of provision) for doubtful advances | (1,687) | 1,687 |
| Impairment of content advance provision (exceptional item) | 106,812 | - |
| Impairment of film rights (exceptional item) | 17,251 | - |
| Impairment of other advances provision (exceptional item) | 762 | - |
| Impairment of content advance written off (exceptional item) | 3,025 | - |
| Advances and deposits written off | - | 298 |
| Provision for doubtful trade receivables | - | 7,942 |
| Finance costs | 7,366 | 8,237 |
| Interest income | (290) | (334) |
| Gratuity | 112 | 117 |
| (Gain) on sale of tangible assets (net) | (0) | (1) |
| Impairment loss on Investment | 332 | 722 |
| Expense on employee stock option scheme | 85 | 761 |
| Unrealised foreign exchange gain | 1,176 | (814) |
| **Operating profit before working capital changes** | **58,823** | **61,402** |
| Movements in working capital: | | |
| Increase/(Decrease) in current liabilities | (15,438) | 18,228 |
| Increase/(Decrease) in other financial liabilities | (109) | 946 |
| (Decrease) in trade payables | (397) | (619) |
| Increase/(Decrease) in employee benefit obligations | (103) | 44 |
| (Increase)/Decrease in inventories | 0 | 9 |
| (Increase)/Decrease in trade receivables | (28,431) | (32,412) |
| (Increase)/Decrease in other current assets | 101 | (188) |
| (Increase) /Decrease in other non- current assets | 416 | (1,303) |
| (Increase)/Decrease in short-term loans and advances | 1,126 | 1,475 |
| Decrease in other financial assets | (364) | (28) |
| **Cash generated from operations** | **15,624** | **47,554** |
| Taxes paid (net) | (2,951) | (4,750) |
| **Net cash generated from operating activities (A)** | **12,673** | **42,804** |
| **Cash flow from investing activities** | | |
| Purchase of tangible assets | (40) | (117) |
| Purchase of intangible film rights and related content | (3,635) | (24,213) |
| Deposits with banks (net) | 2,843 | (2,001) |
| Proceeds from Sale of fixed assets | 1 | 1 |
| Interest Income | 449 | 401 |
| **Net cash used in investing activities (B)** | **(382)** | **(25,929)** |

STANDALONE FINANCIAL STATEMENTS

# Cash Flow Statement
**For the year ended 31 March 2020**

Amount ₹ in lakhs

| Particulars | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| **Cash flows from financing activities** | | |
| Proceeds from issue of equity shares (net) | 12 | 54 |
| Repayment of long-term borrowings | (5,201) | (8,561) |
| Proceeds from long-term borrowings | | - |
| Change in short-term borrowings | (1,741) | (1,249) |
| Finance charges (net) | (5,527) | (7,235) |
| **Net cash flow from/(used ) in financing activities (C)** | **(12,457)** | **(16,991)** |
| **Net decrease in cash and cash equivalents (A + B + C)** | **(166)** | **(116)** |
| **Cash and cash equivalents at the beginning of the year** | **268** | **384** |
| **Cash and cash equivalents at the end of the year (refer note 12)** | **102** | **268** |

*amount represents less than ₹ one lakh

**Change in liability arising from financing activities :-**

Amount ₹ in lakhs

| | Non current borrowings | Current borrowing | Acceptances | Total |
|---|---:|---:|---:|---:|
| As on 1 April 2018 | 22,135 | 48,621 | 5,796 | 76,552 |
| Cash Flows | (8,561) | (1,249) | - | (9,810) |
| Adjustments | 304 | (576) | - | (272) |
| **As on 31 March 2019** | **13,878** | **46,796** | **5,796** | **66,470** |
| Cash Flows | (5,201) | 2,655 | (4,396) | (6,942) |
| Adjustments | (1) | (28) | - | (29) |
| **As on 31 March 2020** | **8,676** | **49,423** | **1,400** | **59,499** |

Notes 1 to 53 form an integral part of these standalone financial statements

As per our report of even date

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No.: 101720W/W100355

For and on behalf of Board of Directors

**Amit Chaturvedi**
Partner
Membership No: 103141

**Sunil Lulla**
Executive Vice Chairman &
Managing Director
(DIN: 00243191)

**Sunil Srivastav**
Non Executive Independent
Director
(DIN: 00237561)

**Pradeep Dwivedi**
Chief Executive Officer

**Farokh P. Gandhi**
Chief Financial Officer

**Vijay Thaker**
Vice President - Company Secretary
and Compliance Officer

Place: Mumbai
Date :  30 July 2020

Place: Mumbai
Date :  30 July 2020

# Summary of Significant Accounting Policies

## Corporate Information

Eros International Media Limited (the 'Company') was incorporated in India, under the Companies Act, 1956. The Company is a global player within the Indian media and entertainment industry and is primarily engaged in the business of film production, exploitation and distribution. It operates on a vertically integrated studio model controlling content as well as distribution and exploitation across multiple formats globally, including cinema, digital, home entertainment and television syndication. Its shares are listed on leading stock exchanges in India (BSE Scrip Code: 533261; NSE Scrip Code: EROSMEDIA).

These separate financial statements were authorised for issue in accordance with a resolution passed in the Board of Directors meeting held on 30 July 2020.

## Statement of compliance

These financial statements have been prepared in accordance with the Indian Accounting Standards (referred to as "Ind AS") as prescribed under section 133 of the Companies Act, 2013 read with Companies (Indian Accounting Standards) Rules as amended from time to time.

## Basis of preparation

The financial statements have been prepared on accrual basis of accounting using historical cost basis, except certain investment, Employee Stock Option Plan ('ESOP') Compensation and forward contracts are measured at fair value.

All assets and liabilities have been classified as current or non-current as per the Company's normal operating cycle and other criteria set out in the Schedule III to the Act. The Company considers 12 months to be its normal operating cycle.

All values are rounded to the nearest rupees in Lakhs, except where otherwise indicated. Amount in zero (0) represents amount below rupees fifty thousand.

## 1.    Significant Accounting Policies

### a.    Revenue Recognition

Revenue from contracts are recognized only when the contract has been approved by the parties to the contract and creates enforceable rights and obligations.

Revenue is recognized upon transfer of control of promised products or services to customers in an amount that reflects the consideration which the Company expects to receive in exchange for those products or services. Revenue do not include the taxes collected from the customer on behalf of taxing authorities. To ensure collectability of such consideration and financial stability of the counterparty, the Company performs certain standard Know Your Client (KYC) procedures based on their locations and evaluates trend of past collection.

Revenue is measured based on the transaction price, which is the consideration, adjusted for any discounts and incentives, if any, as specified in the contract with the customer. In case of variable consideration, the Company estimates, at the contract inception, the amount to be received using the "most likely amount" approach, or the "expected value" approach, as appropriate. This amount is then included in the Company's estimate of the transaction price only if it is highly probable that a significant reversal of revenue will not occur once any uncertainty associated with the variable consideration is resolved. In making this assessment the Company considers its historical performance on similar contracts.

The Company recognises contract liabilities for consideration received in respect of unsatisfied performance obligations and reports these amounts as other current liabilities in the statement of financial position (see Note 29). Similarly, if the Company satisfies a performance obligation before it receives the consideration, the Company recognises either a contract asset or a receivable in its balance sheet , depending on whether something other than the passage of time is required before the consideration is due.

Consideration is generally due upon satisfaction of performance obligations and a receivable is recognised when it becomes unconditional. Generally, the credit period varies between 0-180 days from the shipment or delivery of goods or services as the case may be.

The transaction price, being the amount to which the Company expects to be entitled and has rights to under the contract is allocated to the identified performance obligations. The transaction price will also include an estimate of any variable consideration where the Company's performance may result in additional revenues based on the achievement of agreed targets.

The Company does not expect to have any contracts where the period between the transfer of the promised goods or services to the customer and payment by the customer exceeds one year. As a consequence, the Company does not adjust any of the transaction prices for the time value of money.

The Company disaggregates revenue from contracts with customers by geography and nature of services.

The following additional criteria apply in respect of various revenue streams within filmed entertainment:

Theatrical — Contracted minimum guarantees are recognized on the theatrical release date. The Company's share of box office receipts in excess of the minimum guarantee is recognized at the point they are notified to the Company.

Television — In arrangements for television syndication, license fees received in advance which do not meet the revenue recognition criteria, including commencement of the availability for broadcast under the terms of the related licensing agreement, are included in contract liability until the criteria for recognition is met. Revenues from television licensing arrangements are recognized when the feature film or television program is delivered and the period for the exploitation of rights has begun.

Other — DVD, CD and video distribution revenue is recognized on the date the product is delivered or is licensed in line with the above criteria. Provision is made for physical returns where applicable. Digital and ancillary media revenues are recognized at the earlier of when the content is accessed or declared. Visual effects, production and other fees for services rendered by the Company and overhead recharges are recognized in the period in which they are earned and in certain cases, the stage of production is used to determine the proportion recognized in the period.

## Other income

Dividend income is recognised when the Company's right to receive the payment is established, which is generally when shareholders approve the dividend.

Interest income is recognized on a time proportion basis taking into account the amount outstanding and the effective interest rate applicable.

### b.    Property, plant and equipment and depreciation

Property, Plant and Equipment is stated at cost, net of accumulated depreciation and accumulated impairment losses, if any.

The cost of Property, Plant and Equipment comprises of its purchase price or construction cost, any costs directly attributable to bringing the asset into the location and condition necessary for it to be capable of operating in the manner intended by management,

**STANDALONE FINANCIAL STATEMENTS**

the initial estimate of any decommissioning obligation, if any, and borrowing costs for assets that necessarily take a substantial period of time to get ready for their intended use. Subsequent costs are included in the asset's carrying amount or recognised as a separate asset, as appropriate, only when it is probable that future economic benefits associated with the item will flow to the Company and the cost of the item can be measured reliably.

Capital Work-in-progress (CWIP) includes expenditure that is directly attributable to the acquisition/construction of assets, which are yet to be commissioned.

Depreciation is provided under written down value method at the rates and in the manner prescribed under Schedule II to the Companies Act, 2013.The residual values, useful lives and methods of depreciation of property, plant and equipment are reviewed at each financial year end and adjusted prospectively, if appropriate. Gains or losses arising from de-recognition of a property, plant and equipment are measured as the difference between the net disposal proceeds and the carrying amount of the asset and are recognized in the Statement of Profit and Loss when the asset is de-recognized.

c.  **Intangible assets**

Intangible assets acquired by the Company are stated at cost less accumulated amortization less impairment loss, if any, (film production cost and content advances are transferred to film and content rights at the point at which content is first exploited).

Investments in films and associated rights, including acquired rights and distribution advances in respect of completed films, are stated at cost less amortization less provision for impairment. Costs include production costs, overhead and capitalized interest costs net of any amounts received from third party investors. A charge is made to write down the cost of completed rights over the estimated useful lives, writing off more in year one which recognizes initial income flows and then the balance over a period of up to nine years, except where the asset is not yet available for exploitation. The average life of the assets is the lesser of 10 years or the remaining life of the content rights. The amortization charge is recognized in the statement of profit and loss within cost of sales. The determination of useful life is based upon Management's judgment and includes assumptions on the timing and future estimated revenues to be generated by these assets, which are summarized in Note 4.

Intangible assets comprising film scripts and related costs are stated at cost less amortization less provision for impairment. The script costs are amortized over a period of 3 years on a straight-line basis and the amortization charge is recognized in the statement of profit and loss within cost of sales. The determination of useful life is based upon Management's estimate of the period over which the Company explores the possibility of making films using the script.

Other intangible assets, which comprise internally generated and acquired software used within the Entity's digital, home entertainment and internal accounting activities, are stated at cost less amortization less provision for impairment. A charge is made to write down the cost of software over the estimated useful lives except where the software is not yet available for use. The average life of the software is the lesser of 3 years or the remaining life of the software. The amortization charge is recognized in the statement of profit and loss.

d.  **Impairment of non-financial assets**

At each reporting date, for the purposes of assessing impairment, assets are grouped at the lowest levels for which there are separately identifiable cash flows (cash generating units). As a result, some assets are tested individually for impairment and some are tested at the cash generating unit level.  All individual assets or cash generating units are tested for impairment whenever events or changes in circumstances both internal and external indicate that the carrying amount may not be recoverable.

An impairment loss is recognised wherever the carrying amount of an asset exceeds its recoverable amount which represents the greater of the net selling price of assets and their 'value in use'.

In assessing value in use, the estimated future cash flows are discounted to their present value using a pre-tax discount rate that reflects current market assessments of the time value of money and the risks specific to the asset. In determining fair value less costs of disposal, recent market transactions are taken into account. If no such transactions can be identified, an appropriate valuation model is used. These calculations are corroborated by valuation multiples, quoted share prices for publicly traded companies or other available fair value indicators.

Film and content rights are stated at the lower of unamortized cost and estimated recoverable amounts. In accordance with Ind AS 36 Impairment of Assets, film content costs are assessed for indication of impairment on a library basis as the nature of the Company's business, the contracts it has in place and the markets it operates in do not yet make an ongoing individual film evaluation feasible with reasonable certainty. Impairment losses on content advances are recognized when film production does not seem viable and refund of the advance is not probable. Irrespective of existence of indicators of impairment, company makes provision on Content Advances in accordance with the provisioning policy, such that, unadjusted advances are provided over a period of 3 to 5 years.

All assets are subsequently reassessed for indications that an impairment loss previously recognized may no longer exist.

e.  **Borrowing costs**

The Company is capitalising borrowing costs that are directly attributable to the acquisition or construction of qualifying assets. Qualifying assets are assets that necessarily take a substantial period of time to get ready for their intended use or sale.

Borrowings are recognised initially at fair value, net of transaction costs incurred. Borrowings are subsequently stated at amortized cost with any difference between the proceeds (net of transaction costs) and the redemption value recognised in the income statement within Finance costs over the period of the borrowings using the effective interest method. Finance costs in respect of film productions and other assets which take a substantial period of time to get ready for use or for exploitation are capitalized as part of the assets. All other borrowing costs are recognized as expense in the period in which they are incurred and charged to the Statement of Profit and Loss.

Borrowings are classified as current liabilities unless the Company has an unconditional right to defer settlement of the liability for at least 12 months after the balance sheet date.

f.  **Impairment of financial assets**

In accordance with Ind AS 109, the Company applies expected credit loss (ECL) model for measurement and recognition of impairment loss on risk exposure arising from financial assets like debt instruments measured at amortised cost e.g., trade receivables and deposits.

The Company follows 'simplified approach' for recognition of impairment loss allowance on Trade receivables or contract revenue receivables. The application of simplified approach does not require the Company to track changes in credit risk. Rather, it recognises impairment loss allowance based on lifetime ECLs at each reporting date, right from its initial recognition.

For recognition of impairment loss on other financial assets and risk exposure, the Company determines that whether there has been a significant increase in the credit risk since initial recognition. If credit risk has not increased significantly, 12-month ECL is used to provide for impairment loss. However, if credit risk has increased significantly, lifetime ECL is used. If, in a subsequent period, credit quality of the instrument improves such that there is no longer a significant increase in credit risk since initial recognition, then the

entity reverts to recognising impairment loss allowance based on 12-month ECL.

Lifetime ECL are the expected credit losses resulting from all possible default events over the expected life of a financial instrument. The 12-month ECL is a portion of the lifetime ECL which results from default events that are possible within 12 months after the reporting date.

ECL is the difference between all contractual cash flows that are due to the Company in accordance with the contract and all the cash flows that the entity expects to receive (i.e., all cash shortfalls), discounted at the original EIR. When estimating the cash flows, an entity is required to consider all contractual terms of the financial instrument (including prepayment, extension, call and similar options) over the expected life of the financial instrument. However, in rare cases when the expected life of the financial instrument cannot be estimated reliably, then the entity is required to use the remaining contractual term of the financial instrument.

ECL impairment loss allowance (or reversal) recognized during the period is recognized as income/ expense in the statement of profit and loss (P&L). This amount is reflected under the head 'Other income or other expenses' in the P&L.

For assessing increase in credit risk and impairment loss, the Company combines financial instruments on the basis of shared credit risk characteristics with the objective of facilitating an analysis that is designed to enable significant increases in credit risk to be identified on a timely basis.

### g.  Inventories

Inventories primarily comprise of music CDs and DVDs are valued at the lower of cost and net realizable value. Cost in respect of goods for resale is defined as all costs of purchase, costs of conversion and other costs incurred in bringing the inventories to their present location and condition. Cost in respect of raw materials is purchase price.

Purchase price is assigned using a weighted average basis. Net realisable value is the estimated selling price in the ordinary course of business less the estimated costs of completion and the estimated costs necessary to make the sale  .

### h.  Provisions, Contingent Liabilities and Contingent Assets

Provisions are recognized when the Company has a present legal or constructive obligation as a result of a past event, it is more likely than not that an outflow of resources will be required to settle the obligations and can be reliably measured. Provisions are measured at Management's best estimate of the expenditure required to settle the obligations at the balance sheet date. If the effect of the time value of money is material, provisions are discounted using a current pre-tax rate that reflects, when appropriate, the risks specific to the liability. When discounting is used, the increase in the provision due to the passage of time is recognised as a finance cost.

Contingent liabilities are not recognized in the financial statements but are disclosed by way of notes to accounts unless the possibility of an outflow of economic resources is considered remote.

Contingent assets are not recognized in financial statements. However, the same is disclosed, where an inflow of economic benefit is virtual.

### i.  Employee Benefits

Short term employee benefits obligations

Short-term employee benefits are recognized as an expense in the Statement of Profit and Loss for the year in which related services are rendered.

Post-employment benefits and other long-term employee benefits

**Defined contribution plan**

Provident fund & National Pension scheme: The Company's contributions paid or payable during the year to the provident fund, employee's state insurance corporation and National pension scheme are recognized in the Statement of Profit and Loss. This fund is administered by the respective Government authorities, and the Company has no further obligation beyond making its contribution, which is expensed in the year to which it pertains.

**Defined benefit plan**

Gratuity: The Company's liability towards gratuity is determined using the projected unit credit method which considers each period of service as giving rise to an additional unit of benefit entitlement and measures each unit separately to build up the final obligation. The cost for past services is recognized on a straight-line basis over the average period until the amended benefits become vested. Re-measurement gains and losses are recognized immediately in the Other Comprehensive Income as income or expense and are not reclassified to profit or loss in subsequent periods. Obligation is measured at the present value of estimated future cash flows using a discounted rate that is determined by reference to market yields at the Balance Sheet date on Government bonds where the currency and terms of the Government bonds are consistent with the currency and estimated terms of the defined benefit obligation.

Compensated absences: Accumulated compensated absences are expected to be availed or encashed within 12 months from the end of the year and are treated as short-term employee benefits. The obligation towards the same is measured at the expected cost of accumulating compensated absences as the additional amount expected to be paid as a result of the unused entitlement as at the year end.

**Employee stock option plan**

In accordance with Ind AS 102 Share Based Payments, the fair value of shares or options granted is recognized as personnel costs with a corresponding increase in equity. The fair value is measured at the grant date and spread over the period during which the recipient becomes unconditionally entitled to payment unless forfeited or surrendered.

The fair value of share options granted is measured using the Black Scholes model, each taking into account the terms and conditions upon which the grants are made. At each Balance Sheet date, the Company revises its estimate of the number of equity instruments expected to vest as a result of non-market based vesting conditions. The amount recognized as an expense is adjusted to reflect the revised estimate of the number of equity instruments that are expected to become exercisable, with a corresponding adjustment to equity. The Company's share option plan does not feature any cash settlement option.

Upon exercise of share options, the proceeds received net of any directly attributable transaction costs up to the nominal value of the shares are allocated to equity share capital with any excess being recorded as securities premium.

### j.  Leases

The Company adopted Ind AS 116 'Leases' on April 1, 2019, utilizing the modified retrospective approach, and therefore, results for reporting periods beginning after April 1, 2019 are presented under the new lease standard, while prior periods have not been adjusted.

**The Company as a lessee:**

The Company assesses, whether the contract is, or contains, a lease at the inception of the contract or upon the modification of a contract. A contract is, or contains, a lease if the contract conveys the right to control the use of an identified asset for a period of time in exchange for consideration.

**STANDALONE FINANCIAL STATEMENTS**

The Company at the commencement of the lease contract recognizes a Right-of-Use (RoU) asset at cost and corresponding lease liability, except for leases with a term of twelve months or less (short-term leases) and leases for which the underlying asset is of low value (low-value leases). For these short-term and low-value leases, the Company recognizes the lease payments as an operating expense on a straight-line basis over the term of the lease.

The cost of the right-of-use assets comprises the amount of the initial measurement of the lease liability, adjusted for any lease payments made at or prior to the commencement date of the lease, any initial direct costs incurred by the Company, any lease incentives received and expected costs for obligations to dismantle and remove right-of-use assets when they are no longer used.

Subsequently, the right-of-use assets is measured at cost less any accumulated depreciation and accumulated impairment losses, if any. The right-of-use assets are depreciated on a straight-line basis from the commencement date of the lease over the shorter of the end of the lease term or useful life of the right-of-use asset.

Right-of-use assets are assessed for impairment whenever there is an indication that the balance sheet carrying amount may not be recoverable using cash flow projections for the useful life.

For lease liabilities at commencement date, the Company measures the lease liability at the present value of the future lease payments as from the commencement date of the lease to end of the lease term. The lease payments are discounted using the interest rate implicit in the lease or, if not readily determinable, the Company's incremental borrowing rate for the asset subject to the lease in the respective markets.

Subsequently, the Company measures the lease liability by adjusting carrying amount to reflect interest on the lease liability and lease payments made.

The Company remeasures the lease liability (and makes a corresponding adjustment to the related right-of-use asset) whenever there is a change to the lease terms or expected payments under the lease, or a modification that is not accounted for as a separate lease.

The portion of the lease payments attributable to the repayment of lease liabilities is recognized in cash flows used in financing activities. Also, the portion attributable to the payment of interest is included in cash flows from financing activities. Further, Short-term lease payments, payments for leases for which the underlying asset is of low-value and variable lease payments not included in the measurement of the lease liability is also included in cash flows from operating activities.

### The Company as a lessor:

In arrangements where the Company is the lessor, it determines at lease inception whether the lease is a finance lease or an operating lease. Leases that transfer substantially all of the risk and rewards incidental to ownership of the underlying asset to the counterparty (the lessee) are accounted for as finance leases. Leases that do not transfer substantially all of the risks and rewards of ownership are accounted for as operating leases. Lease payments received under operating leases are recognized as income in the statement of profit and loss on a straight-line basis over the lease term or another systematic basis. The Company applies another systematic basis if that basis is more representative of the pattern in which benefit from the use of the underlying asset is diminished.

### k.    Foreign Currency Transactions

Transactions in foreign currencies are translated at the rates of exchange prevailing on the dates of the transactions. Monetary assets and liabilities in foreign currencies are translated at the prevailing rates of exchange at the balance sheet date. Non-monetary items that are measured at historical cost in a foreign currency are translated at the exchange rate at the date of the transaction. Non-monetary items that are measured at fair value in a foreign currency are translated using the exchange rates at the date when the fair value was determined.

Any exchange differences arising on the settlement of monetary items or on translating monetary items at rates different from those at which they were initially recorded are recognized in the statement of profit and loss in the period in which they arise. Non-monetary items carried at fair value that are denominated in foreign currencies are translated at rates prevailing at the date when the fair value was determined. Non-monetary items that are measured in terms of historical cost in a foreign currency are not retranslated.

The Company's functional currency and the presentation currency is same i.e. Indian Rupee.

### l.    Financial instrument

#### Non-derivative financial instruments

Financial assets and financial liabilities are recognized when the Company becomes party to the contractual provisions of the instrument.

Financial assets and liabilities are initially measured at fair value. Transaction costs that are directly attributable to the acquisition or issue of financial assets or liabilities (other than financial assets and liabilities at fair value through profit and loss) are added to or deducted from the fair value of the financial assets or financial liabilities, as appropriate, on initial recognition. Transaction costs directly attributable to the acquisition of financial assets or financial liabilities at fair value through profit and loss are recognized immediately in profit or loss. Financial assets and financial liabilities are offset against each other and the net amount reported in the balance sheet if, and only if, there is a currently enforceable legal right to offset the recognized amounts and there is an intention to settle on a net basis, or to realize the assets and settle the liabilities simultaneously.

#### Financial Assets

Financial assets are divided into the following categories:

- financial assets carried at amortised cost

- financial assets at fair value through other comprehensive income

- financial assets at fair value through profit and loss

Financial assets are assigned to the different categories by Management on initial recognition, depending on the nature and purpose of the financial assets. The designation of financial assets is re-evaluated at every reporting date at which a choice of classification or accounting treatment is available. Financial Assets like Investments in Subsidiaries are measured at Cost as allowed by Ind-AS 27 – Separate Financial Statements and hence are not fair valued.

#### Financial assets carried at amortised cost

The Financial asset is measures at amortised cost if both the following conditions are met:

1. The asset is held within a business model whose objective is to hold the assets for collecting contractual cash flows; and

2. Contractual terms of the financial asset give rise on specified dates to cash flows that are solely payments of principal and interest on the principal amount outstanding.

After initial measurement, such financial assets are subsequently measured at amortised cost using the effective interest rate (the "EIR") method. The effective interest rate is the rate that exactly discounts future cash receipts or payments through the expected life of the financial instrument, or where appropriate, a shorter period.

Amortised cost is calculated by taking into account any discount or premium on acquisition and fees or costs that are an integral part of the EIR. The EIR amortisation is included in finance income/other income in the Statement of Profit & Loss.

In accordance with Ind AS 109: Financial Instruments, the Company recognizes impairment loss allowance on trade receivables and content advances based on historically observed default rates. Impairment loss allowance recognized during the year is charged to Statement of Profit and Loss.

### Financial assets at fair value through other comprehensive income

Financial assets at fair value through other comprehensive income are non-derivative financial assets held within a business model whose objective is achieved by both collecting contractual cash flows and selling financial assets and the contractual terms of the financial asset give rise on specified dates to cash flows that are solely payments of principal and interest on the principal amount outstanding.

### Financial assets at fair value through profit or loss

A financial asset which is not classified in any of the above categories are subsequently fair valued through profit or loss. It includes non-derivative financial assets that are either designated as such or do not qualify for inclusion in any of the other categories of financial assets. Gains and losses arising from investments classified under this category is recognized in the statement of profit and loss when they are sold or when the investment is impaired.

In the case of impairment, any loss previously recognized in other comprehensive income is transferred to the statement of profit and loss. Impairment losses recognized in the statement of profit and loss on equity instruments are not reversed through the statement of profit and loss. Impairment losses recognized previously on debt securities are reversed through the statement of profit and loss when the increase can be related objectively to an event occurring after the impairment loss was recognized in the statement of profit and loss.

When the Company considers that fair value of financial assets can be reliably measured, the fair values of financial instruments that are not traded in an active market are determined by using valuation techniques. The Company applies its judgment to select a variety of methods and make assumptions that are mainly based on market conditions existing at each balance sheet date. Equity instruments measured at fair value through profit or loss that do not have a quoted price in an active market and whose fair value cannot be reliably measured are measured at cost less impairment at the end of each reporting period.

An assessment for impairment is undertaken at least at each balance sheet date.

A financial asset is derecognized only where the contractual rights to the cash flows from the asset expire or the financial asset is transferred, and that transfer qualifies for derecognition. A financial asset is transferred if the contractual rights to receive the cash flows of the asset have been transferred or the Company retains the contractual rights to receive the cash flows of the asset but assumes a contractual obligation to pay the cash flows to one or more recipients. A financial asset that is transferred qualifies for derecognition if the Company transfers substantially all the risks and rewards of ownership of the asset, or if the Company neither retains nor transfers substantially all the risks and rewards of ownership but does transfer control of that asset.

### Financial liabilities

All financial liabilities are recognised initially at its fair value, adjusted by directly attributable transaction costs.

### Financial liabilities at fair value through profit or loss

Financial liabilities are classified as at fair value through profit or loss when the financial liability is held for trading such as a derivative, except for a designated and effective hedging instrument, or if upon initial recognition it is thus designated to eliminate or significantly reduce measurement or recognition inconsistency or it forms part of a contract containing one or more embedded derivatives and the contract is designated as fair value through profit or loss.

Financial liabilities at fair value through profit or loss are stated at fair value. Any gains or losses arising of held for trading financial liabilities are recognized in profit or loss. Such gains or losses incorporate any interest paid and are included in the "other gains and losses" line item.

### Financial liabilities at amortised cost

After initial recognition, other financial liabilities (including borrowing and trade and other payables) are subsequently measured at amortized cost using the effective interest method.

The effective interest method is a method of calculating the amortized cost of a financial liability and of allocating interest expense over the relevant period. The effective interest rate is the rate that exactly discounts estimated future cash payments (including all fees and points paid or received that form an integral part of the effective interest rate, transaction costs and other premiums or discounts) through the expected life of the financial liability, or (where appropriate) a shorter period, to the net carrying amount on initial recognition.

A financial liability is derecognized only when the obligation is extinguished, that is, when the obligation is discharged or cancelled or expires. Changes in liabilities' fair value that are reported in profit or loss are included in the statement of profit and loss within finance costs or finance income.

Financial assets and financial liabilities are offset and the net amount is reported in the balance sheet when, and only when, there is a legally enforceable right to offset the recognized amount and there is intention either to settle on net basis or to realize the assets and to settle the liabilities simultaneously.

### Equity Instrument

All equity investments in scope of Ind AS 109 are measured at fair value. Equity instruments which are held for trading are classified as at fair value through profit and loss with all changes recognized in the Statement of Profit and Loss .For all other equity instruments, the Company may make an irrevocable election to present in other comprehensive income, the subsequent changes in the fair value. The Company makes such election on an instrument-by-instrument basis. If the Company decides to classify an equity instrument as at fair value through other comprehensive income, then all fair value changes on the instrument, excluding dividends and impairment loss, are recognized in other comprehensive income. There is no recycling of the amounts from the other comprehensive income to the Statement of Profit and Loss, even on sale of the investment. However, the Company may transfer the cumulative gain or loss within categories of equity.

**m.   Taxes**

Taxation on profit and loss comprises current tax and deferred tax. Tax is recognized in the statement of profit and loss except to the extent that it relates to items recognized directly in equity or other comprehensive income in which case tax impact is also recognized in equity or other comprehensive income.

Current tax is provided at amounts expected to be paid (or recovered) using the tax rates and laws that have been enacted or substantively enacted at the balance sheet date along with any adjustment relating to tax payable in previous years.

Deferred income tax is provided in full, using the liability method, on temporary differences arising between the tax bases of assets and liabilities and their carrying amounts in the financial statements. Deferred income tax is provided at amounts expected to be paid (or recovered) using the tax rates and laws that have been enacted or substantively enacted at the balance sheet date and are expected to apply when the related deferred income tax asset is realized or the deferred income tax liability is settled.

**STANDALONE FINANCIAL STATEMENTS**

Deferred tax is not recognized for all taxable temporary differences between the carrying amount and tax bases of investments in subsidiaries, branches and associates and interest in joint arrangements where it is probable that the differences will not reverse in the foreseeable future.

Deferred tax assets and deferred tax liabilities are offset when there is a legally enforceable right to set off assets against liabilities representing current tax and where the deferred tax assets and the deferred tax liabilities relate to taxes on income levied by the same governing taxation laws.

Minimum alternate tax (MAT) paid in a year is charged to the Statement of Profit and Loss as current tax. MAT credit entitlement is recognised as a deferred tax asset only when and to the extent there is convincing evidence that the Company will pay normal income tax during the specified period, which is the period for which MAT credit is allowed to be carried forward. Such asset is reviewed at each Balance Sheet date and the carrying amount of the MAT credit asset is written down to the extent there is no longer a convincing evidence to the effect that the Company will pay normal income tax during the specified period.

The carrying amount of deferred tax assets is reviewed at each reporting date and reduced to the extent that it is no longer probable that sufficient taxable profit will be available to utilize all or part of the deferred tax asset. Unrecognized deferred tax assets are re-assessed at each reporting date and are recognized to the extent that it has become probable that future taxable profits will available to utilize the deferred tax asset.

**n. Earnings per share**

Basic EPS is computed by dividing net profit after taxes for the year by weighted average number of equity shares outstanding during the financial year, adjusted for bonus share elements in equity shares issued during the year and excluding treasury shares, if any.

Diluted earnings per share adjusts the figures used in the determination of basic earnings per share to take into account the after income tax effect of interest and other financing costs associated with dilutive potential equity shares and the weighted average number of additional equity shares that would have been outstanding assuming the conversion of all dilutive potential equity shares.

**o. Cash and cash equivalents**

Cash and cash equivalents include cash in hand, deposits held at call with banks, other short term highly liquid investments which are readily convertible into known amounts of cash and are subject to insignificant risk of changes in value. Bank overdrafts are shown within borrowings in current liabilities on the balance sheet.

Deposits held with banks as security for overdraft facilities are included in restricted deposits held with bank.

**p. Segment reporting**

Ind-AS 108 Operating Segments ("Ind-AS 108") requires operating segments to be identified on the same basis as is used internally for the review of performance and allocation of resources by the Chief Operating Decision Maker. The revenues of films are earned over various formats; all such formats are functional activities of filmed entertainment and these activities take place on an integrated basis. The management team reviews the financial information on an integrated basis for the Company as a whole., The management team also monitors performance separately for individual films or for at least 12 months after the theatrical release.

The Company has identified three geographic markets: India, UAE and Rest of the world.

**q. Statement of cash flows**

Cash flows are reported using the indirect method, whereby profit before tax is adjusted for the effects of transactions of a non-cash nature, any deferrals or accruals of past or future operating cash receipts or payments and item of income or expenses associated with investing or financing cash flows. The cash flows from operating, investing and financing activities of the Company are segregated.

**r. Dividends**

The Company recognises a liability for dividends to equity holders of the Company when the dividend is authorized, and the dividend is no longer at the discretion of the Company. As per the corporate laws in India, a dividend is authorized when it is approved by the shareholders. A corresponding amount is recognised directly in equity.

**s. Event occurring after the reporting date**

Adjusting events (that provides evidence of condition that existed at the balance sheet date) occurring after the balance sheet date are recognized in the financial statements. Material non-adjusting events (that are inductive of conditions that arose subsequent to the balance sheet date) occurring after the balance sheet date that represents material change and commitment affecting the financial position are disclosed in the Directors' Report.

**t. Standards Issued but not yet Effective**

Ministry of Corporate Affairs ("MCA") has notified amendments to following standards which would be applicable from the date of publication in official gazette.

IndAS 1- Presentation of Financial Statements

IndAS 8 - Accounting Policies Changes in estimates and errors

IndAS 34 - Interim Financial Reporting

IndAS 37 - Provisions, Contingent Liabilities and Contingent Assets

IndAS 103 - Business Combination

IndAS 107 - Financial Instruments -Disclosures

IndAS 109 - Financial Instruments

IndAS 116 - Leases

Company does not expect the amendments in above standards to have material effect on the financials of the company.

**2. Significant accounting judgements estimates and assumptions**

The preparation of the financial statements requires management to make judgements, estimates and assumptions, as described below, that affect the reported amounts and the disclosures. The Company based its assumptions and estimates on parameters available when the financial statements were prepared and reviewed at each balance sheet date. Uncertainty about these assumptions and estimates could result in outcomes that may require a material adjustment to the reported amounts and disclosures.

**a. Estimation of uncertainties relating to global health pandemic from COVID-19:**

In December 2019, a novel strain of coronavirus (COVID-19) emerged in Wuhan, Hubei Province, China. While initially the outbreak was largely concentrated in China and caused significant disruptions to its economy, it has now spread to several other countries, and infections have been reported globally including India, United Kingdom, United States, Dubai, Singapore and Australia where the group through its offices distributes the films theatrically. On March 24, 2020, in response to the public health risks associated with the COVID-19, the Government of India announced nation-wide lockdown which resulted in the closure of all the theatres across India and caused disruptions in the production and availability of content, including delayed, or in some cases, shortened or cancelled theatrical releases. The lockdown has affected the Group's ability to generate revenues from the monetization of Indian film content in various distribution channels through agreements with commercial theatre operators.

The Central and State Governments have initiated the steps to lift the lockdown, however, theatres are still not allowed to operate till the further directives issued by the governments. The Company has considered the possible effects that may results from the pandemic on the carrying amount of the asset.

The extent of the impact on Company's operations remains uncertain and may differ from that estimated as at the date of approval of these standalone financial statements and will be dictated by the length of time that such disruptions continue, which will, in turn, depend on the currently unknowable duration of COVID-19 and among other things, the impact of governmental actions imposed in response to the pandemic. The Company is monitoring the rapidly evolving situation and its potential impacts on the Group's financial position, results of operations, liquidity, and cash flows.

**b.    Intangible Assets**

The Company is required to identify and assess the useful life of intangible assets and determine their income generating life. Judgment is required in determining this and then providing an amortization rate to match this life as well as considering the recoverability or conversion of advances made in respect of securing film content or the services of talent associated with film production.

Accounting for the film content requires Management's judgment as it relates to total revenues to be received and costs to be incurred throughout the life of each film or its license period, whichever is the shorter. These judgments are used to determine the amortization of capitalized film content costs. The Company uses a stepped method of amortization on first release film content writing off more in year one which recognizes initial income flows and then the balance over a period of up to nine years. In the case of film content that is acquired by the Company after its initial exploitation, commonly referred to as Library, amortization is spread evenly over the lesser of 10 years or the license period. Management's policy is based upon factors such as historical performance of similar films, the star power of the lead actors and actresses and others. Management regularly reviews, and revises when necessary, its estimates, which may result in a change in the rate of amortization and/or a write down of the asset to the recoverable amount.

Intangible assets are tested for impairment in accordance with the accounting policy. These calculations require judgments and estimates to be made, and in the event of an unforeseen event these judgments and assumptions would need to be revised and the value of the intangible assets could be affected. There may be instances where the useful life of an asset is shortened to reflect the uncertainty of its estimated income generating life.

**c.    Employee benefit plans**

The cost of the employment benefit plans, and their present value are determined using actuarial valuations which involves making various assumptions that may differ from actual developments in the future. For further details refer to Note 42.

**d.    Fair value measurement of ESOP Liability**

The fair value of ESOP Liability is determined using valuation methods which involves making various assumptions that may differ from actual developments in the future. For further details refer Note 42.

**e.    Trade receivable**

Judgements are required in assessing the recoverability of overdue trade receivables and determining whether a provision against those receivables is required. Factors considered include the amount and timing of anticipated future payments and any possible actions that can be taken to mitigate the risk of non-payment.

**f.    Depreciation**

Property, plant and equipment are depreciated over the estimated useful lives of the assets, after taking into account their estimated residual value. Management reviews the estimated useful lives and residual values of the assets annually in order to determine the amount of depreciation to be recorded during any reporting period. The useful lives and residual values are based on the Company's historical experience with similar assets and take into account anticipated technological changes. The depreciation for future periods is adjusted if there are significant changes from previous estimates.

**g.    Impairment of non-financial assets**

In assessing impairment, management estimates the recoverable amount of each asset or cash-generating unit based on expected future cash flows and uses an interest rate to discount them. Estimation uncertainty relates to assumptions about future operating results and the determination of a suitable discount rate.

**h.    Provisions**

Provisions and liabilities are recognized in the period when it becomes probable that there will be a future outflow of funds resulting from past operations or events and the amount of cash outflow can be reliably estimated. The timing of recognition and quantification of the liability require the application of judgment to existing facts and circumstances, which can be subject to change. Since the cash outflows can take place many years in the future, the carrying amounts of provisions and liabilities are reviewed regularly and adjusted to take account of changing facts and circumstances.

**i.    Fair value measurement**

Management uses valuation techniques to determine the fair value of financial instruments (where active market quotes are not available) and non-financial assets. This involves developing estimates and assumptions consistent with how market participants would price the instrument. Management bases its assumptions on observable data as far as possible, but this is not always available. In that case management uses the best information available. Estimated fair values may vary from the actual prices that would be achieved in an arm's length transaction at the reporting date.

STANDALONE FINANCIAL STATEMENTS

# Notes
**to the standalone financial statements and other explanatory information**

### 3  Property, plant and equipment

Details of the Company's property, plant and equipment and their carrying amounts are as follows:

Amount ₹ in lakhs

| Gross carrying amount | Buildings | Leasehold improvements | Furniture and fixtures | Motor vehicles | Office equipment | Data processing equipment | Studio equipment | Leasehold assets | Right of Use | Capital work in progress | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Balance as at 1 April 2018** | **3,317** | **372** | **274** | **480** | **170** | **374** | **287** | **-** | **-** | **6** | **5,280** |
| Additions | - | 71 | 1 | - | 26 | 19 | - | 169 | - | 71 | 357 |
| Adjustments/disposals | - | - | - | 0 | 0 | (3) | - | - | - | 0 | (3) |
| Capitalized during the year | - | - | - | - | - | - | - | - | - | (71) | (71) |
| **Balance as at 31 March 2019** | **3,317** | **443** | **275** | **480** | **196** | **390** | **287** | **169** | **-** | **6** | **5,563** |
| Additions | - | - | 0 | - | 2 | 2 | - | 47 | 986 | - | 1,037 |
| Adjustments/disposals | - | - | (1) | - | (1) | (0) | - | - | - | - | (2) |
| **Balance as at 31 March 2020** | **3,317** | **443** | **274** | **480** | **197** | **392** | **287** | **216** | **986** | **6** | **6,599** |
| **Accumulated depreciation** | | | | | | | | | | | |
| **Balance as at 1 April 2018** | **460** | **207** | **165** | **90** | **104** | **317** | **191** | **-** | **-** | **-** | **1,534** |
| Depreciation charge | 139 | 116 | 33 | 122 | 37 | 28 | 28 | 30 | - | - | 533 |
| Adjustments/disposals | - | - | - | - | - | (3) | - | - | - | - | (3) |
| **Balance as at 31 March 2019** | **599** | **323** | **198** | **212** | **141** | **342** | **219** | **30** | **-** | **-** | **2,064** |
| Depreciation charge | 132 | 89 | 22 | 78 | 25 | 18 | 19 | 70 | 357 | - | 810 |
| Adjustments/disposals | - | - | (1) | - | (1) | (0) | - | - | 421 | - | 419 |
| **Balance as at 31 March 2020** | **731** | **412** | **219** | **289** | **165** | **360** | **239** | **100** | **778** | **-** | **3,294** |
| **Net carrying amount** | | | | | | | | | | | |
| **Balance as at 31 March 2019** | **2,718** | **120** | **77** | **268** | **55** | **48** | **68** | **139** | **-** | **6** | **3,499** |
| **Balance as at 31 March 2020** | **2,586** | **31** | **55** | **191** | **32** | **32** | **48** | **116** | **208** | **6** | **3,305** |

1. The Company's immovable property situated in Mumbai, India is pledged against the borrowings as explained in note 19 and 25

2. The Company has used Indian GAAP carrying value of its Property, plant and equipment on date of transition as deemed cost, accordingly, the net carrying amount as per Indian GAAP as on 1 April 2015 has been considered as gross carrying amount under Ind-AS 101.Details of accumulated depreciation as on 1 April 2015 are as under:-

Amount ₹ in lakhs

| | Buildings | Leasehold improvements | Furniture and fixtures | Motor vehicles | Office equipment | Data processing equipment | Studio equipment | | | Capital work in progress | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Accumulated depreciation as on 1 April 2015** | **791** | **-** | **426** | **191** | **95** | **435** | **1,220** | | | **-** | **3,158** |

# Notes
## to the standalone financial statements and other explanatory information

### 4    Intangible assets

Details of the Company's Intangible assets and their carrying amounts are as follows:                    Amount ₹ in lakhs

| Gross carrying amount | Content advances | Film rights | Other intangible assets | Total |
|---|---:|---:|---:|---:|
| **Balance as at 1 April 2018** | 137,408 | 188,830 | 72 | 188,902 |
| Additions | 39,878 | 14,132 | - | 14,132 |
| Transfer to film and content rights | (28,938) | - | - | - |
| Amount written off | (2,226) | - | - | - |
| Provision for doubtful advances | (1,687) | - | - | - |
| **Balance as at 31 March 2019** | **144,435** | **202,962** | **72** | **203,034** |
| Additions | 15,331 | 3,296 | 15 | 3,311 |
| Transfer to film and content rights | (10,091) | - | - | - |
| Impairment of content advance (refer note 39) | (106,812) | - | - | - |
| Impairment of content advance written off (refer note 39) | (3,025) | - | - | - |
| Reversal of provision for doubtful advances | 1,687 | - | - | - |
| **Balance as at 31 Mar 2020** | **41,525** | **206,258** | **87** | **206,345** |
| **Accumulated amortization** | | | | |
| **Balance as at 1 April 2018** | | 111,515 | 46 | 111,561 |
| Amortisation charge | | 24,473 | 6 | 24,479 |
| **Balance as at 31 March 2019** | | **135,988** | **52** | **136,040** |
| Amortisation charge | | 16,761 | 8 | 16,769 |
| Impairment of film rights (refer note 39) | | 17,251 | - | 17,251 |
| **Balance as at 31 Mar 2020** | | **170,000** | **60** | **170,060** |
| **Net carrying amount** | | | | |
| Balance as at 31 March 2019 | 144,435 | 66,974 | 20 | 66,994 |
| **Balance as at 31 Mar 2020** | **41,525** | **36,258** | **27** | **36,285** |

1.   The Company has used Indian GAAP carrying value of its intangible assets on date of transition as deemed cost, accordingly, the net carrying amount as per Indian GAAP as on 1 April 2015 has been considered as gross carrying amount under Ind-AS 101. Details of accumulated depreciation as on 1 April 2015 are as under:-

| | | | | |
|---|---:|---:|---:|---:|
| **Accumulated amortization as on 1 April 2015** | | **223,210** | **119** | **223,329** |

### 5    Investments                                                                                         Amount ₹ in lakhs

| | | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---:|---:|
| **A** | **Non current investments** | | |
| | Unquoted equity shares | | |
| | **i) Investment in equity shares of subsidiaries accounted at cost** | | |
| | **Eros International Films Private Limited** | | |
| | 19,930,300 (31 March 2019 : 19,930,300) equity shares of ₹ 10 each, fully paid-up | 1,993 | 1,993 |
| | **Eros Animation Private Limited** | | |
| | 9,300 (31 March 2019 : 9,300) equity shares of ₹ 10 each, fully paid-up | 1 | 1 |
| | **Copsale Limited** | | |
| | 105,000 (31 March 2019 : 105,000) equity shares of USD 1 each, fully paid-up | 45 | 45 |
| | **Big Screen Entertainment Private Limited** | | |
| | 6,400 (31 March 2019 : 6,400) equity shares of ₹ 10 each, fully paid-up | 1 | 1 |
| | **EyeQube Studios Private Limited** | | |
| | 9,999 (31 March 2019 : 9,999) equity shares of ₹ 10 each, fully paid-up | 1 | 1 |

STANDALONE FINANCIAL STATEMENTS

# Notes
## to the standalone financial statements and other explanatory information

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| **EM Publishing Private Limited** | | |
| 9,900 (31 March 2019 : 9,900) equity shares of ₹ 10 each, fully paid-up | 1 | 1 |
| **Digicine PTE Limited\*** | | |
| 100 (31 March 2019 : 100) equity shares of USD 1 each, fully paid-up | 0 | 0 |
| **Colour Yellow Productions Private Limited** | | |
| 5,000 (31 March 2019 : 5,000) equity shares of ₹ 10 each, fully paid-up | 1 | 1 |
| Investment in Reliance Eros Production LLP | 0 | - |
| **ii) Investment in equity shares of subsidiaries measured at fair value through profit and loss** | | |
| **ErosNow Private limited (Formerly know as Universal Power Systems Private Limited) #** | 5,546 | 5,530 |
| 1,000 (31 March 2019 : 1,000) equity shares of ₹ 100 each, fully paid-up | | |
| Less: Provision for impairment in the value of investment | (3,086) | (2,754) |
| **Total** | **4,502** | **4,819** |

\*amount represents less than ₹ one lakh

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| Aggregate value of unquoted investments | 7,588 | 7,573 |
| Aggregate value of impairment in the value of investment | 3,086 | 2,754 |

# Increase in value of investment is due to ESOP benefits provided to subsidiary

## 6 Loans

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| **Unsecured considered good,unless otherwise stated** | | |
| Amounts due from related parties (refer note 44) | - | 39 |
| Other loans and advances | | |
| Considered good | 545 | 1,632 |
| **Total** | **545** | **1,671** |

## 7 Restricted bank deposits

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| Bank deposits with maturity of more than twelve months\* | 41 | 511 |
| **Total** | **41** | **511** |

\* Given as securities to bank for margin

## 8 Other financial assets

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| Unsecured and considered good | | |
| Security deposits to | | |
| - Related parties (refer note 44) | 268 | 582 |
| - Others | 11 | 61 |
| **Total** | **279** | **643** |

## Notes
### to the standalone financial statements and other explanatory information

**9    Other non- current assets**                                                                         Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| (a) Advance payment of income taxes (net of provision) | 177 | 177 |
| (b) Balances due with Statutory Authorities | 3,661 | 4,077 |
| **Total** | **3,838** | **4,254** |

**10   Inventories**                                                                                        Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| VCD/ DVD/ Audio CDs* | - | - |
| Film rights | 4 | 301 |
| **Total** | **4** | **301** |

*amount represents less than ₹ one lakh

**11   Trade receivables**                                                                                  Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| Secured, considered good | 1,327 | 1,327 |
| Unsecured, considered good | 2,497 | 55,703 |
| Dues from related parties (refer note 44) | 49,012 | 16,604 |
| Unbilled Income | 907 | 1,322 |
| | **53,743** | **74,956** |
| Less : Expected credit loss | (1,153) | (8,361) |
| **Total** | **52,590** | **66,595** |
| *Movement of Expected credit loss | | |
| Opening Balance | 8,361 | 419 |
| Addition | 44,790 | 7,942 |
| Less: transfer to bad debts | (51,998) | - |
| Closing Balance | **1,153** | **8,361** |

All amounts are short-term. The net carrying value of trade receivables is considered a reasonable approximation of fair value.

All accounts receivable are pledged against borrowing which are shown under note 19 and 25.

**12   Cash and cash equivalents**                                                                          Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| a. Cash on hand | 72 | 47 |
| b. Balances with Bank | | |
| In current account | 30 | 221 |
| **Total** | **102** | **268** |

**13   Restricted bank deposits**                                                                           Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| Unclaimed dividend account | 1 | 1 |
| Margin money accounts with:* | | |
| maturity less than 12 months | 3,608 | 5,981 |
| maturity more than twelve months | 41 | 511 |
| | **3,650** | **6,493** |
| Less: disclosed under non current financial assets - Restricted deposits (refer note 7) | (41) | (511) |
| **Total** | **3,609** | **5,982** |

* Given as securities to bank for margin

STANDALONE FINANCIAL STATEMENTS

# Notes
## to the standalone financial statements and other explanatory information

### 14 Loans and advances

Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Unsecured and considered good |  |  |
| Amounts due from related parties (refer note 44) | 61 | 124 |
| Loans and advances to employees | 88 | 76 |
| Other loans | 565 | 1,272 |
| Security deposits | 6 | 9 |
| **Total** | **720** | **1,481** |

### 15 Other financial assets

Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Accrued interest on fixed deposits | 69 | 228 |
| **Total** | **69** | **228** |

### 16 Other current assets

Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Prepaid expenses | 62 | 243 |
| Deferred expenses | 80 | - |
| **Total** | **142** | **243** |

### 17 Equity share capital

₹ in lakhs, except share data

|  | As at 31 March 2020 | | As at 31 March 2019 | |
|---|---|---|---|---|
|  | Number | Amount | Number | Amount |
| **Authorised share capital** |  |  |  |  |
| Equity shares of ₹ 10 each | 125,000,000 | 12,500 | 125,000,000 | 12,500 |
|  | **125,000,000** | **12,500** | **125,000,000** | **12,500** |
| **Issued, subscribed and fully paid- up** |  |  |  |  |
| Equity shares of ₹ 10 each | 95,629,023 | 9,563 | 95,508,140 | 9,551 |
| **Total** | **95,629,023** | **9,563** | **95,508,140** | **9,551** |

**a) Reconciliation of paid- up share capital (Equity Shares)**

₹ in lakhs, except share data

|  | As at 31 March 2020 | | As at 31 March 2019 | |
|---|---|---|---|---|
|  | Number | Amount | Number | Amount |
| Balance at the beginning of the year | 95,508,140 | 9,551 | 94,971,877 | 9,497 |
| Add: Issued on exercise of employee share options | 120,883 | 12 | 536,263 | 54 |
| **Balance at the end of the year** | **95,629,023** | **9,563** | **95,508,140** | **9,551** |

During the year, the Company has issued total 120,883 equity shares (2019: 536,263) on exercise of options granted under the employees stock option plan (ESOP) wherein part consideration was received in the form of employees services.

**b) Shares held by holding company, ultimate holding company, subsidiaries / associates of holding company or ultimate holding company**

₹ in lakhs, except share data

|  | As at 31 March 2020 | | As at 31 March 2019 | |
|---|---|---|---|---|
|  | Number | Amount | Number | Amount |
| Equity shares of ₹ 10 each |  |  |  |  |
| Eros Worldwide FZ LLC - Holding company | 37,877,302 | 3,788 | 37,877,302 | 3,788 |
| Eros Digital Private Limited - Fellow subsidiary | 21,700,000 | 2,170 | 21,700,000 | 2,170 |

# Notes
**to the standalone financial statements and other explanatory information**

**c)   Details of Shareholders holding more than 5% of the shares in the Company**    ₹ in lakhs, except share data

| | As at 31 March 2020 | | As at 31 March 2019 | |
|---|---|---|---|---|
| | **Number** | **% holding in the class** | **Number** | **% holding in the class** |
| Equity shares of ₹ 10 each | | | | |
| Eros Worldwide FZ LLC - Holding company | 37,877,302 | 39.61% | 37,877,302 | 39.66% |
| Eros Digital Private Limited - Fellow subsidiary | 21,700,000 | 22.69% | 21,700,000 | 22.72% |

**d)   Details of employee stock options issued during the last 5 years**

During the period of five years immediately preceding the reporting date, the Company has issued total 2,220,779 equity shares ( 2019: 2,633,980) on exercise of options granted under the employees stock option plan (ESOP) wherein part consideration was received in the form of employee services.

**e)   Details of equity share issued for consideration other than cash during the last 5 years**

During the period of five years immediately preceding the reporting date, the Company has issued total 900,970 equity shares ( 2019:900,970) to the shareholders of UPSPL at a premium of ₹ 586 per share in exchange for the entire shareholding of UPSPL.

**f)   Rights, preferences, restrictions of equity shares**

The Company has only one class of equity shares having par value of ₹10 per share. Every holder is entitled to one vote per share. The dividend, if any, proposed by the Board of Directors and approved by the Shareholders in the Annual General Meeting is paid in Indian rupees.

In the event of liquidation of the Company, the holders of equity shares will be entitled to receive remaining assets of the Company, after distribution of all preferential  amounts. The distribution will be in proportion to the number of equity shares held by the shareholders.

**18   Other equity**    Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| **Securities premium** | | |
| Balance at the beginning of the year | 41,547 | 40,498 |
| Add : Transfer from share option outstanding account | 230 | 1,049 |
| **Balance at the end of the year** | **41,777** | **41,547** |
| **Share options outstanding account** | | |
| Balance at the beginning of the year | 1,344 | 1,577 |
| Less: Transfer to securities premium account | (230) | (1049) |
| Add: Employee stock option compensation expense | 85 | 761 |
| Add: Employee stock option compensation expense to employees of fellow subsidiary | 0 | 18 |
| Add: Employee stock option compensation expense to employees of subsidiary | 16 | 37 |
| **Balance at the end of the year** | **1,215** | **1,344** |
| **General reserve** | | |
| Balance at the beginning of the year | 526 | 526 |
| **Balance at the end of the year** | **526** | **526** |
| **Retained earnings** | | |
| Balance at the beginning of the year | 100,791 | 92,055 |
| Add: Net profit/(loss) after tax for the year | (116,073) | 8,736 |
| **Balance at the end of the year** | **(15,281)** | **100,791** |
| **Other comprehensive income** | | |
| Balance at the beginning of the year | 86 | 46 |
| Acturial gain / (loss) on employee benefit plans through OCI | 95 | 40 |
| **Balance at the end of the year** | **181** | **86** |
| **Total** | **28,417** | **144,294** |

1    Securities Premium: The amount received in excess of face value of the equity shares is recognised in Securities Premium.
2    General Reserve: General Reserve was created by transferring a portion of the net profit of the Company as per the requirements of the Companies Act, 2013.
3    Share Options Outstanding: Share Options Outstanding relates to the stock options granted by the company to employees under a Employee Stock Option Plan.
4    Retained Earnings: Remaining portion of profits earned by the Company till date after appropriations.

STANDALONE FINANCIAL STATEMENTS

# Notes
## to the standalone financial statements and other explanatory information

**19  Long-term borrowings**                                                                             Amount ₹ in lakhs

|                                                                                      | As at 31 March 2020 | As at 31 March 2019 |
|--------------------------------------------------------------------------------------|--------------------:|--------------------:|
| **Secured-at amortised cost**                                                        |                     |                     |
| Term loan from banks*                                                                |               5,541 |               9,721 |
| Car loans **                                                                         |                  86 |                 198 |
| Others***                                                                            |                 141 |                 142 |
| **Unsecured**                                                                        |                     |                     |
| Term loan from others#                                                               |               2,940 |               3,887 |
|                                                                                      |           **8,708** |          **13,948** |
| Less: Cumulative effect of unamortised cost                                          |                (31) |                (71) |
| Less: Current maturities disclosed under other current financial liabilities (refer note 27) |             (8,614) |             (5,179) |
| **Total**                                                                            |              **63** |           **8,698** |

\*   Term loans from banks carry an interest rate between 12.5% - 15.5% are secured by pari passu first charge on the satellite rights acquired for the domestic market, actionable claims, revenue and receivables arising on sales of the rights and negatives of films. Term loans are further secured by equitable mortgage of Company's immovable properties situated at Mumbai (India), amounts held as margin money,corporate guarantee of Eros International PLC (the ultimate holding company),residual value of equipments and vehicles and existing rights of hindi films with nil book value.

\*\*  Car loans are secured by hypothecation of vehicles acquired there against, carrying rate of interest of 7.48%-9.50% which are repayable as per maturity profile set out below.

\*\*\* Other loans are secured by hypothecation of assets acquired there against, carrying rate of interest of 10.50%-11.50% which are repayable as per maturity profile set out below.

\#   Term loan from others carry an interest rate between 15% - 16% are secured against the pledge of company's shares held by holding company, current assets of a subsidiary company and corporate guarantee of holding company and subsidiary company.

Maturity profile of long term borrowing is set out below:-                                              Amount ₹ in lakhs

|                        | Less than 1 year | 1-3 years | 3-5 years |
|------------------------|-----------------:|----------:|----------:|
| **Secured**            |                  |           |           |
| Term loan from banks   |            5,509 |         - |         - |
| Car loan               |               86 |         - |         - |
| Others                 |               77 |        63 |         - |
| **Unsecured**          |                  |           |           |
| Term loan from others  |            2,941 |         - |         - |
| **Total**              |        **8,613** |    **63** |       **-** |

| Default in repayment as on 31 March 2020 | Period of delay | Principal due | Interest due |
|------------------------------------------|----------------:|--------------:|-------------:|
| Term loan from others                    |         31 days |           167 |           23 |
| **Total**                                |           **-** |       **167** |       **23** |

**20  Trade payable - non current**                                                                      Amount ₹ in lakhs

|                                         | As at 31 March 2020 | As at 31 March 2019 |
|-----------------------------------------|--------------------:|--------------------:|
| Payable to related parties (refer note 44) |                 118 |                 108 |
| **Total**                               |             **118** |             **108** |

**21  Other financial liabilities**                                                                      Amount ₹ in lakhs

|                   | As at 31 March 2020 | As at 31 March 2019 |
|-------------------|--------------------:|--------------------:|
| Security deposits |                  25 |                  25 |
| Lease liabilities |                  22 |                   - |
| **Total**         |              **47** |              **25** |

# Notes
## to the standalone financial statements and other explanatory information

**22  Employee benefit obligations - non current**                                   Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Provision for gratuity (refer note 42) | 318 | 378 |
| **Total** | **318** | **378** |

**23  Deferred tax (assets)/liabilities (net)**                                      Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| **Deferred tax liability on** | | |
| Depreciation on tangible assets | 48 | 77 |
| Amortization of intangible assets | 9,080 | 23,224 |
| **Total** | **9,127** | **23,301** |
| **Deferred tax asset on** | | |
| Provision for expenses allowed on payment basis | 821 | 981 |
| Others | 30 | 3,562 |
| Impairment | 31,417 | - |
| Business loss | 48 | - |
| **Total** | **32,316** | **4,543** |
| **Deferred tax (assets)/liabilities (net)** | **(23,189)** | **18,758** |
| **Restricted to and consequent impact** | **-** | **18,758** |

Significant management judgement is considered in determining provision for income tax, deferred tax assets and liabilities and recoverability of deferred tax asset. The recoverability of deferred tax asset is based on estimate of taxable inome for the period over which deferred tax asset will be recovered.

However net deferred tax assets have been restricted to NIL due to non existence of reasonable certainity.

**Reconciliation of statutory rate of tax and effective rate of tax**                 Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Profit before tax | (137,784) | 13,677 |
| Tax expense | (21,711) | 4,941 |
| **Tax rate as a % of profit before tax** | **15.76%** | **36.13%** |
| **Adjustments** | | |
| Non-deductible expenses for tax purposes | 0.32% | -3.35% |
| Effect of change in deferred tax balances due to change in tax rates | -3.81% | 0% |
| Tax impact of earlier years | -2.12% | 4.37% |
| Effect of unrecognised deferred tax assets | 16.89% | -1.84% |
| Effect of Items deductible for tax purpose | -1.85% | 0.00% |
| Others | -0.02% | -0.37% |
| **At India's statutory income tax rate of 25.17% (31 March 2019: 34.94%)** | **25.17%** | **34.94%** |

**24  Other non-current liabilities**                                                Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Deferred revenue | 4,424 | 10,050 |
| **Total** | **4,424** | **10,050** |

**STANDALONE FINANCIAL STATEMENTS**

# Notes
## to the standalone financial statements and other explanatory information

**25 Short-term borrowings**                                              Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| **Repayable on demand** | | |
| **Secured** | | |
| From banks | 39,942 | 38,605 |
| **Unsecured** | | |
| From others* | 1,537 | 2,400 |
| From related parties (refer note 44) | 7,944 | 5,791 |
| **Total** | **49,423** | **46,796** |

Secured short term borrowings include:

Cash credit carry an interest rate between 12% - 16% , secured by way of hypothecation of inventories and receivables relating to domestic rights operations on pari passu basis.

Bills discounted carry an interest rate between 11.5% - 13.5% for INR bills and 6M MCLR or LIBOR+3.5% for USD bills , secured by document of title to goods and accepted hundis with first pari passu charge on current assets.

Packing credit carry an interest rate between 10% - 11% for INR and 6M MCLR or LIBOR + 3.5% for USD, secured by hypothecation of films and film rights with first pari passu charge on current assets.

Short term borrowings are further secured by equitable mortgage of company's immovable properties situated at Mumbai (India), amount held in margin money, corporate guarantee of Eros International Plc (the ultimate holding company),residual value of equipments and existing rights of hindi films with nil book value.

*Loan from others carry an  interest rate between 15% - 16% , secured by security provided by holding company.

**26 Acceptances**                                                        Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Payable under the film financing arrangements | 1,400 | 5,796 |
| **Total** | **1,400** | **5,796** |

Acceptances comprise of credit availed from banks for payment to film producers for film co-production arrangement entered by the group. The carrying value of acceptances are considered a reasonable approximation of fair value.

**27 Other financial liabilities**                                        Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Current maturities of long term borrowings (refer note 19) | 8,614 | 5,179 |
| Interest accrued but not due | 452 | 135 |
| Interest accrued and due | 23 | 161 |
| Unclaimed dividend* | 1 | 1 |
| Employee dues | 483 | 609 |
| Other payables | 671 | 526 |
| Other payable to related party (refer note 44) | 473 | 252 |
| Forward contract liabilities | - | 430 |
| Lease liabilities | 215 | - |
| **Total** | **10,932** | **7,293** |

* Does not include any amount due and outstanding to be credited to Investor, education and protection fund.

**28 Employee benefit obligations - current**                             Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Gratuity | 73 | 111 |
| Compensated absences | 228 | 248 |
| **Total** | **301** | **359** |

## Notes
### to the standalone financial statements and other explanatory information

**29  Other current liabilities**                                                     Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Advance from customers- related parties (refer note 44) | 311 | 14,049 |
| Advances from customers- others | 1,171 | 906 |
| Deferred revenue | 5,176 | 781 |
| Duties and taxes payable | 6,396 | 7,130 |
| **Total** | **13,054** | **22,866** |

**30  Current tax liabilities**                                                       Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Provision for corporate taxes (net) | 6,976 | 11,235 |
| **Total** | **6,976** | **11,235** |

**31  Revenue from operations (net)**                                                 Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| Revenue from distribution and exhibition of film and other rights | 66,896 | 83,560 |
| Revenue from services | 4 | 4 |
| **Total** | **66,900** | **83,564** |

**32  Other income**                                                                  Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| Sundry balances written back | 882 | 45 |
| Interest income on advances | 102 | 42 |
| Interest income on Income tax refund | 28 | - |
| Reversal of provision for doubtful advances(refer note 4 ) | 1,687 | - |
| Other non-operating income | 1,301 | 1,710 |
| Gain on foreign currency transactions and translation (net) | 1,020 | - |
| Gain on sale of tangible assets (net) | 0 | 1 |
| Income from export incentives | 527 | 1,618 |
| **Total** | **5,547** | **3,416** |

**33  Film right cost including amortization costs**                                  Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| Amortization of film rights (refer note 4) | 16,761 | 24,473 |
| Film rights cost | 6,795 | 14,805 |
| **Total** | **23,556** | **39,278** |

**34  Changes in inventories of film rights**                                         Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| Opening stock | | |
| - Finished goods | 301 | 187 |
| | 301 | 187 |
| Closing stock | | |
| - Finished goods | 4 | 301 |
| | 4 | 301 |
| **Total** | **297** | **(114)** |

STANDALONE FINANCIAL STATEMENTS

# Notes
**to the standalone financial statements and other explanatory information**

**35    Employee benefits expense**                                   Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| Salaries and bonus | 2,557 | 3,012 |
| Contribution to provident and other funds (refer note 42) | 136 | 167 |
| Gratuity expense (refer note 42) | 112 | 117 |
| Employee stock option compensation (refer note 42) | 85 | 761 |
| Staff welfare expenses | 84 | 84 |
| **Total** | **2,974** | **4,141** |

**36    Finance cost**                                                 Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| Interest expense | 7,643 | 9,163 |
| Other borrowing costs | 485 | 449 |
| Interest on late payment of taxes | 2,619 | 1,642 |
| | **10,747** | **11,254** |
| Less: Interest capitalised to film rights | (3,382) | (3,017) |
| Less: Interest income | (290) | (334) |
| **Total** | **7,075** | **7,903** |

The capitalisation rate of interest was 13.03 % (2019 : 12.12 %)

**37    Depreciation and amortization expense**                        Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| Depreciation on tangible assets (refer note 3) | 810 | 535 |
| Amortisation on intangible assets (refer note 4) | 8 | 4 |
| **Total** | **818** | **539** |

**38    Other expenses**                                               Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| Print and digital distribution cost | 198 | 838 |
| Selling and distribution expenses | 503 | 2,670 |
| Processing and other direct cost & Home entertainment products related cost | 105 | 195 |
| Shipping, packing and forwarding expenses | 25 | 69 |
| Power and fuel | 49 | 53 |
| Rent | 31 | 371 |
| Repairs and maintenance | 134 | 120 |
| Insurance | 19 | 29 |
| Rates and taxes | 34 | 35 |
| Legal and professional | 577 | 1,432 |
| Payments to auditors (refer note 48) | 107 | 89 |
| Bad and doubtful receivables & expecterd credit receivable | - | 7,942 |
| Provision for doubtful advances (refer note 4 ) | - | 1,687 |
| Communication expenses | 64 | 67 |
| Travelling and conveyance | 111 | 283 |
| Content advances written off (refer note 4) | - | 2,226 |

# Notes
**to the standalone financial statements and other explanatory information**

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| Advances and deposits written off | - | 298 |
| Bad debts and trade receivables written off* | 44,966 | 1,917 |
| Provision for impairment in the value of investment | 332 | 722 |
| Loss on foreign currency transactions and translation (net) | - | 62 |
| CSR expenditure (refer note 50) | 3 | 20 |
| Miscellaneous expenses | 403 | 431 |
| **Total** | **47,661** | **21,556** |

*The Company had entered into an agreement with some of the customers which entitled them to exploit the film rights for the period as specified therein. The amount receivable from such customers under the said agreement has been past due over a prolonged period.

Due to disruption in the film business caused by the outbreak of COVID-19, the management does not have any reasonable expectation of recovering the amount due and therefore has terminated the agreement with such customers. Consequently, the receivable of ₹ 44,966 lakhs have been written-off by the management.

**39    Exceptional Items***

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| Impairment of content advance provision | 106,812 | - |
| Impairment of film rights | 17,251 | - |
| Impairment of other advances provision | 762 | - |
| Impairment of content advance written off | 3,025 | |
| **Total** | **127,850** | **-** |

*Exceptional item comprises of the following:

The COVID-19 outbreak and resulting measures taken by the Government of India to contain the virus have already significantly affected the business in the first quarter of fiscal 2020. Further, in 19-20, the Company has witnessed a significant decline in market capitalization as compared with the previous year. Because of unexpected decline in the market capitalization and disruptions in the business caused by the outbreak of COVID-19, the Company has performed the annual impairment assessment following the requirements of Ind AS 36 'Impairment of Assets'. Value in use was determined based on future cash flows after considering current economic conditions and trends, estimated future operating results, growth rates (which is lower than those considered in previous years) and anticipated future economic conditions. The approach and key (unobservable) assumptions used to determine the cash generating unit's value comprises of growth rate beyond explicit period (4%) and post tax discount rate of 16.5%.

Based on the assessment, the management has recorded the impairment charge of ₹ 127,850 lakhs and disclosed the same under the exceptional item. The impairment loss has been allocated between component of CGU i.e. content advance ₹ 109,837 lakhs and film right ₹ 17,251 lakhs. Company has also impaired certain advances of ₹ 762 lakhs.

**40    Earnings per share**

| | | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---:|---:|
| a) | **Computation of net profit for the year** | | |
| | Net profit /(loss) after tax attributable to equity shareholders (₹ in lakhs) | (116,073) | 8,736 |
| b) | **Computation of number of shares for Basic Earnings per share** | | |
| | Weighted average number of equity shares | 95,551,002 | 95,205,870 |
| | **Total** | **95,551,002** | **95,205,870** |
| c) | **Computation of number of shares for Diluted Earnings per share** | | |
| | Weighted average number of equity shares used in the calculation of basic earning per share | 95,551,002 | 95,205,870 |
| | Add:- Weighted average potential equity shares (dilutive impact of ESOPs) | 124,695 | 828,067 |
| | **Weighted average number of equity shares used in the calculation of diluted earning per share** | **95,675,697** | **96,033,937** |
| d) | **Nominal value of shares** (in ₹) | **10** | **10** |
| e) | **Computation** | | |
| | Basic (in ₹) | (121.48) | 9.18 |
| | Diluted (in ₹) | (121.48) | 9.10 |

STANDALONE FINANCIAL STATEMENTS

# Notes
## to the standalone financial statements and other explanatory information

**41    Contingent liabilities and commitments (to the extent not provided for)**                          Amount ₹ in lakhs

| | | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---:|---:|
| a) | **Contingent liabilities** | | |
| (i) | **Claims against the Company not acknowledged as debt** | | |
| | Sales tax claims disputed by the Company | 1,315 | 717 |
| | Service tax claim disputed by the Company | 34,305 | 34,506 |
| | Income tax liability that may arise in respect of matters in appeal | 105 | 105 |
| (ii) | **Guarantees** | | |
| | Guarantee given in favour of various government authorities | 25 | 35 |
| | | **35,750** | **35,363** |

**Notes:**

1    During the year ended 31 March 2015, the Company received a show cause notice from the Commissioner of Service Tax to show cause why an amount aggregating to ₹ 15,675 lakhs  for the period 1 April 2009 to 31 March 2014 should not be levied on and paid by the Company for service tax arising on temporary/Perpetual transfer of copyright services and other matters.

In connection with the aforementioned matters, on 19 May 2015, the Company received an Order-in-original issued by the Principal Commissioner, Service Tax, wherein the department confirmed the demand of ₹ 15,675 lakhs along with interest and penalty amounting to ₹ 15,675 lakhs resulting into a total demand of  ₹ 31,350 lakhs.

On 3 September 2015, the Company filed an appeal against the said order before the authorities. The Company has paid ₹ 1,000 lakhs under protest.  Considering the facts and nature of levies and the ad-interim protection for the period 1 July 2010 to 30 June 2012 granted by the Honorable High Court of Mumbai, the Company expects that the final outcome of this matter will be favourable. Accordingly, based on the assessment made after taking appropriate legal advice, the provision of ₹ 88.52 lakhs only has been recorded and  no additional liability has been recorded in the financial statements.

2    Company has received showcause notice for reversal of CENVAT credit for the period 2013-14 to 2015-16 ₹ 187 lakhs. no additional liability has been accounted in financial statements for this showcause notice. Further Company  also received show cause notice for Non levy of Service tax on Import of Services for the period 2013-14 to 2015-16 for ₹ 70 lakhs. the Company has recorded liability ₹ 51.51 lakhs on account of this show cause notices.

3    On 8 October 2018, the Company received a show cause notice from the Commissioner of Service Tax to show cause why an amount aggregating to ₹ 2,695 lakhs for the period 1 April 2014 to 31 March 2015 should not be levied on and paid by the Company for service tax with equal penalty arising on temporary / Perpetual transfer of copyright services and other matters. The provision of ₹ 60.77 lakhs has been recorded and no additional liability has been recorded in the financial statements.

4    In addition, the Company is liable to pay service tax on use on temporary transfer of copyright in the period 1 July 2010 to 30 June 2012. The Company filed a writ petition in Mumbai High Court challenging the constitutionality and the legality of this entry and received ad-interim protection and accordingly, no amounts were provided for by the Company for the period 1 April 2011 to 30 June 2012.

5    It is not practicable for the Company to estimate the timing of cash outflows, if any, in respect of the above, pending resolution of the respective proceedings.

6    From time to time, the 'Company' is involved in legal proceedings arising in the ordinary course of its business, typically intellectual property litigation and infringement claims related to the Company's feature films and other commercial activities, which could cause the Company to incur expenses or prevent the Company from releasing a film. While the resolution of these matters cannot be predicted with certainty, the Company does not believe, based on current knowledge or information available, that any existing legal proceedings or claims are likely to have a material and adverse effect on its financial position, results of operations or cash flows.

7    The Company does not expect any reimbursements in respect of the above contingent liabilities.

Amount ₹ in lakhs

| | | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---:|---:|
| b) | **Commitments** | | |
| | Estimated amount of contracts remaining to be executed on content commitments | 176,640 | 167,082 |
| | | **176,640** | **167,082** |
| | **Total** | **212,390** | **202,445** |

# Notes
**to the standalone financial statements and other explanatory information**

**42    Employment benefits**

**a)    Gratuity (unfunded)**

The following table set out the status of the gratuity plan as required under Indian Accounting Standard (Ind AS) - 19, Employee benefits, and the reconciliation of opening and closing balances of the present value of the defined benefit obligation:

Amount ₹ in lakhs

| | | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|---|
| **I** | **Change in projected benefit obligation** | | |
| | Liability at the beginning of the year | **489** | **478** |
| | Interest cost | 36 | 38 |
| | Current service cost | 76 | 79 |
| | Past service cost | - | - |
| | Benefits paid | (83) | (45) |
| | Actuarial loss/(gain) on obligations | (127) | (61) |
| | Liability at the end of the year | **391** | **489** |
| | Current portion | **73** | **111** |
| | Non-current portion | **318** | **378** |
| **II** | **Recognized in Balance Sheet** | | |
| | Liability at the end of the year | 391 | 489 |
| | **Amount recognized in Balance Sheet** | **391** | **489** |
| **III** | **Expense recognized in Statement of Profit and Loss** | | |
| | Current service cost | 76 | 79 |
| | Interest cost | 36 | 38 |
| | Past service cost | - | - |
| | **Expense recognized in Statement of Profit and Loss** | **112** | **117** |
| **IV** | **Expense recognized in Other Comprehensive Income** | | |
| | Arising from changes in experience | (71) | (27) |
| | Arising from changes in financial assumptions | (38) | 9 |
| | Arising from changes in demographic assumptions | (18) | (43) |
| | **Expense/(income) recognized in Other comprehensive income** | **(127)** | **(61)** |
| | *Actuarial (gain)/loss of ₹ (51) lakhs (31 March 2019: ₹ (61) lakhs) is included in other comprehensive income. | | |
| | **Assumptions used** | | |
| | Discount rate | 5.76% | 7.22% |
| | Long-term rate of compensation increase | 4.76% | 9.71% |
| | Attrition Rate | 19.00% | 13.00% |
| | Expected average remaining working life in years | 6.00 | 6.00 |

# Notes
## to the standalone financial statements and other explanatory information

**V    A quantitative sensitivity analysis for significant assumption as at 31 March 2020 is as shown below:**    Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| **Impact on defined benefit obligation** | | |
| **Projected benefit obligation on current assumption** | 391 | 489 |
| Discount rate | | |
| 1.00 % increase | (12) | (23) |
| 1.00 % decrease | 13 | 26 |
| **Salary growth rate** | | |
| 1.00 % increase | 12 | 20 |
| 1.00 % decrease | 11 | (19) |
| **Employee turnover** | | |
| 1.00 % increase | 0 | (4) |
| 1.00 % decrease | 0 | 4 |

**VI    Maturity profile of defined benefit obligation**    Amount ₹ in lakhs

|  | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| Year 1 | 74 | 111 |
| Year 2 | 98 | 46 |
| Year 3 | 55 | 45 |
| Year 4 | 40 | 54 |
| Year 5 | 41 | 42 |
| Sum of Years 6-10 | 112 | 199 |
| Sum of Years 11 and above | 68 | 284 |

**VII    Interest rate risk:** A fall in the discount rate which is linked to the G.Sec. Rate will increase the present value of the liability requiring higher provision.

**VIII    Salary Risk:** The present value of the defined benefit plan liability is calculated by reference to the future salaries of members. As such, an increase in the salary of the members more than assumed level will increase the plan's liability.

**IX    Asset Liability Matching Risk:** The plan faces the ALM risk as to the matching cash flow. Company has to manage pay-out based on pay as you go basis from own funds.

**X    Mortality risk:** Since the benefits under the plan is not payable for life time and payable till retirement age only, plan does not have any longevity risk.

**b)    Compensated absences**

The Company incurred ₹ 66  lakhs (31 March 2019 :₹ 112 lakhs) towards accrual for compensated absences during the year.

**c)    Provident fund**

The Company contributed ₹ 131  lakhs (31 March 2019 : ₹ 156 lakhs) to the provident fund plan, ₹  4 lakh (31 March 2019 : ₹ 5 lakhs) to the Employee state insurance plan and ₹ 1 lakhs (31 March 2019 : ₹ 6 lakhs) to the National Pension Scheme during the year.

# Notes
## to the standalone financial statements and other explanatory information

**d)    Share-based payment transactions**

The Company has instituted Employees' Stock Option Plan "ESOP 2009" and "ESOS 2017" under which the stock options have been granted to employees. The scheme was approved by the shareholders at the Extra Ordinary General Meeting held on 17 December 2009 and Annual General Meeting held on 29 September 2017 respectively. The details of activities under the ESOP 2009 and ESOS 2017 scheme are summarized below:

**The expense recognized for employee services received during the year is shown in the following table:**

Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| Expense arising from equity-settled share-based payment transactions | 85 | 761 |

There were no cancellations or modifications to the awards in 31 March 2020 or 31 March 2019.

**Movements during the year**

The following table illustrates the number and weighted average exercise prices (WAEP) of, and movements in, share options during the year:

| | As at 31 March 2020 | | As at 31 March 2019 | |
|---|---|---|---|---|
| | Number | WAEP* | Number | WAEP* |
| Outstanding at 1 April | 757,885 | 32 | 1,624,034 | 29 |
| Granted during the year | | - | - | - |
| Forfeited during the year | (156,775) | 10 | (329,886) | 52 |
| Exercised during the year | (121,496) | 10 | (536,263) | 10 |
| **Outstanding at 31 March** | **479,614** | **45** | **757,885** | **32** |
| Exercisable at 31 March | 325,740 | 59 | 289,002 | 68 |
| Range of exercise price of outstanding options (₹) | | ₹ 10-150 | | ₹ 10-150 |
| Weighted average remaining contractual life of option | | 2.96 Years | | 2.96 Years |

*WAEP denotes weighted average exercise price of the option

Black Scholes valuation model has been used for computing the weighted average fair value considering the following inputs:

| | Date of grant | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Particulars** | **17-Dec-09** | **12-Aug-10** | **1-Jul-12** | **14-Oct-13** | **12-Nov-14** | **12-Feb-15** | **9-Feb-16** | **10-Feb-17** | **14-Nov-17** | **10-Feb-18** |
| Dividend yield (%) | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil |
| Expected volatility | 75.00% | 60.00% | 44.00% | 35.00% | 40.11% | 37.84% | 46.46% | 48.66% | 56.53% | 53.15% |
| Risk free interest rate | 6.30% | 6.50% | 8.36% | 8.57% | 8.50% | 7.74% | 7.49% | 6.51% | 6.90% | 7.38% |
| Exercise price | 75-175 | 75-135 | 75 | 150 | 10 | 10 | 10 | 10 | 10 | 10 |
| Expected life of options granted in years | 5.25 | 5.25 | 5.50 | 4.50 | As per Table 1.1 | | | 4.27 | 3.50 | 4.50 |

**Table 1.1**

Expected life of options granted in years

| Option Grant date | 9-Feb-16 | | 12-Feb-15 | | 12-Nov-14 | |
|---|---|---|---|---|---|---|
| | **Old Employees** | **New Employees** | **Old Employees** | **New Employees** | **Old Employees** | **New Employees** |
| Year I | 3.50 | 4.50 | 3.00 | 3.00 | 3.50 | 4.50 |
| Year II | 4.50 | 5.50 | 3.50 | 4.00 | 4.50 | 5.50 |
| Year III | 5.50 | 6.50 | 4.00 | 4.50 | 5.50 | 6.50 |

The expected life of options is based on historical data and current expectations and is not necessarily indicative of exercise patterns that may occur. The expected volatility reflects the assumption that the historical volatility over a period similar to the life of the options is indicative of future trends, which may differ from the actual.

STANDALONE FINANCIAL STATEMENTS

# Notes
## to the standalone financial statements and other explanatory information

**43    Operating Segment**

**Description of segment and principal activities**

The Company acquires, co-produces and distributes Indian films in multiple formats worldwide. Film content is monitored and strategic decisions around the business operations are made based on the film content, whether it is new release or library. Hence, management identifies only one operating segment in the business, film content. The Company distributes film content to the Indian population in India and worldwide and to non-Indian consumers who view Indian films that are subtitled or dubbed in local languages. As a result of these distribution activities, the management examines the performance of the business from a geographical market perspective.

Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| **Revenue by region of domicile of customer's location** | | |
| India | 11,629 | 65,822 |
| United Arab Emirates* | 47,742 | 17,313 |
| Rest of the world | 7,529 | 429 |
| **Total revenue** | **66,900** | **83,564** |

For the year ended 31 March 2020 and 31 March 2019 no external customers accounted for more than 10% of the entity's total revenues.

*Sales to United Arab Emirates includes  sales to its related party Eros Worldwide FZ LLC.

**Non-current assets other than financial instruments, investments accounted for using equity method and income taxes**

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Non-current assets | | |
| India | 90,651 | 220,360 |
| United Arab Emirates | - | - |
| Rest of the world | - | 2,357 |
| **Total non-current assets** | **90,651** | **222,717** |

# Notes
**to the standalone financial statements and other explanatory information**

**44   Related party disclosures**

a)   **Parent entity**

| Relationship | Name |
|---|---|
| Ultimate holding Company | **Eros International PLC** |
| Holding Company | **Eros Worldwide FZ LLC** |

b)   **Subsidiaries**

| Relationship | Name |
|---|---|
| Subsidiary companies | Eros International Films Private Limited |
| | Copsale Limited |
| | Big Screen Entertainment Private Limited |
| | EyeQube Studios Private Limited |
| | EM Publishing Private Limited |
| | Eros Animation Private Limited |
| | Digicine PTE Limited |
| | Colour Yellow Productions Private Limited |
| | ErosNow Private Limited (formerly known as Universal Power Systems Private Limited) |
| List of Key management personnel (KMP) | Mr. Sunil Lulla – Executive Vice Chairman and Managing Director |
| | Mr. Kishore Lulla – Executive Director |
| | Mr. Farokh Gandhi - Chief Financial Officer (India) (w.e.f. 9 March 2018) |
| | Mr. Abhishek Kanoi - Vice President Company Secretary and Compliance Officer (upto 12 August 2019) |
| | Mr. Vijay Jayantilal Thaker - Vice President Company Secretary and Compliance Officer (w.e.f. 13 August 2019) |
| | Mr. Pradeep Dwivedi - Chief Executive Officer (w.e.f. 10 February 2020) |
| Relatives of KMP with whom transactions exist | Mrs. Manjula K Lulla (wife of Mr. Kishore Lulla) |
| | Mrs. Krishika Lulla (wife of Mr. Sunil Lulla) |
| Entities over which KMP exercise significant influence | Shivam Enterprises |
| | Eros Television India Private Limited |
| | Eros International Distribution LLP |
| Fellow subsidiary company | Eros Digital Private Limited |
| | Eros International Limited, United Kingdom |
| | Eros Digital FZ LLC |

## Notes
to the standalone financial statements and other explanatory information

**c (i)  Transactions during the year with related parties**

Amount ₹ in lakhs

| Particulars | Holding Company | | Subsidiary | | Fellow subsidiary company | | Key Management Personnel including transactions with relatives of Key Management Personnel | | Entities over which Key Management Personnel exercise significant influence | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Year ended 31 March 2020 | Year ended 31 March 2019 | Year ended 31 March 2020 | Year ended 31 March 2019 | Year ended 31 March 2020 | Year ended 31 March 2019 | Year ended 31 March 2020 | Year ended 31 March 2019 | Year ended 31 March 2020 | Year ended 31 March 2019 | Year ended 31 March 2020 | Year ended 31 March 2019 |
| Sale of film rights | 47,828 | 15,985 | 80 | 40 | - | - | - | - | - | - | 47,907 | 16,025 |
| Revenue attributable to Eros Digital FZ LLC | - | - | - | - | (8,271) | (9,207) | - | - | - | - | (8,271) | (9,207) |
| Producer Share  attributable | - | - | - | (31) | - | - | - | - | - | - | - | (31) |
| Sale of prints/VCD/DVD | - | 2 | - | - | - | - | - | - | - | - | - | 2 |
| Purchase of film rights | - | - | 3,161 | 6,125 | - | - | - | - | - | - | 3,161 | 6,125 |
| Re-imbursement of administrative expense | 333 | 69 | 12 | 12 | 4,887 | 8,751 | - | - | - | - | 5,232 | 8,832 |
| Re-imbursement given | 70 | - | 137 | 184 | - | - | - | - | - | - | 207 | 184 |
| Assets Usage Charges paid | - | - | 7 | 7 | - | - | - | - | - | - | 7 | 7 |
| Commission expenses | - | - | 4 | 10 | - | - | - | - | - | - | 4 | 10 |
| Other Income | - | - | - | 84 | - | - | - | - | - | - | - | 84 |
| Investment in | - | - | 16 | 37 | - | - | - | - | - | - | 16 | 37 |
| Rent expenses | - | - | - | - | - | - | 768 | 768 | - | - | 768 | 768 |
| Interest income | - | - | 102 | 32 | - | - | - | - | - | - | 102 | 32 |
| Interest expenses | - | - | 648 | 782 | 57 | 54 | - | - | - | - | 706 | 836 |
| Salary, commission and perquisites* to KMPs | - | - | - | - | - | - | 778 | 826 | - | - | 778 | 826 |
| Content advances given | - | - | 1,104 | 6,478 | - | - | - | - | - | - | 1,104 | 6,478 |
| Loan and advances given | - | - | 1,866 | 815 | - | - | - | - | - | - | 1,866 | 815 |
| Recovery of loans and advances given | - | - | 2,638 | 3,148 | - | 222 | - | - | 43 | - | 2,680 | 3,370 |
| Trade advances/ loans taken | - | 10,596 | 5,275 | 2,267 | 25 | 75 | - | - | - | - | 5,300 | 12,938 |
| Repayment of advances/ loans | 13,738 | - | 4,334 | 3,333 | 43 | 81 | - | - | - | - | 18,114 | 3,414 |
| Refund of deposits | - | - | - | - | - | - | 314 | 35 | - | - | 314 | 35 |

# Notes
**to the standalone financial statements and other explanatory information**

**c** **(ii)** **Transactions during the year with related parties** — Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| **Sale of film rights** | | |
| Eros Worldwide FZ LLC | 47,828 | 15,985 |
| ErosNow Private Limited (formerly known as Universal Power Systems Private Limited) | 80 | 40 |
| **Total** | **47,908** | **16,025** |
| Revenue attributable to Eros Digital FZ LLC | (8,271) | (9,207) |
| Producer Share to Colour Yellow Productions Privated Limited | - | (31) |
| **Sale of prints/VCD/DVD** | | |
| Eros Worldwide FZ LLC | - | 2 |
| **Total** | **-** | **2** |
| **Purchase of film rights** | | |
| Eros International Films Private Limited | 68 | 161 |
| Colour Yellow Productions Private Limited | 3,092 | 5,964 |
| **Total** | **3,161** | **6,125** |
| **Re-imbursement of administrative expense** | | |
| Eros Worldwide FZ LLC | 333 | 69 |
| Eros Digital FZ LLC | 4,678 | 8,751 |
| Eros International Films Private Limited | 12 | 12 |
| Eros International Ltd United Kingdom | 142 | - |
| Eros International Ltd USA INC | 67 | - |
| **Total** | **5,232** | **8,832** |
| *amount represents less than ₹ one lakh | | |
| **Re-imbursement given** | | |
| Eros International Films Private Limited | - | 62 |
| Colour Yellow Productions Private Limited | 137 | 122 |
| Eros Worldwide FZ LLC | 70 | - |
| **Total** | **207** | **184** |
| **Assets Usage Charges paid** | | |
| EyeQube Studios Private Limited | 7 | 7 |
| **Total** | **7** | **7** |
| **Commission expenses** | | |
| ErosNow Private Limited (formerly known as Universal Power Systems Private Limited) | 2 | 6 |
| EM Publishing Private Limited | 2 | 4 |
| **Total** | **4** | **10** |
| **Other Income** | | |
| Colour Yellow Productions Private Limited | - | 84 |
| **Total** | **-** | **84** |
| **Investment in** | | |
| ErosNow Private Limited (formerly known as Universal Power Systems Private Limited) | 16 | 37 |
| **Total** | **16** | **37** |
| **Rent expenses** | | |
| Mr. Sunil Arjan Lulla | 384 | 384 |
| Mrs. Manjula K Lulla | 36 | 36 |
| Mr. Kishore Arjan Lulla | 348 | 348 |
| **Total** | **768** | **768** |

**STANDALONE FINANCIAL STATEMENTS**

# Notes
## to the standalone financial statements and other explanatory information

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| **Interest income** | | |
| EyeQube Studios Private Limited | 1 | 3 |
| ErosNow Private Limited (formerly known as Universal Power Systems Private Limited) | 101 | 29 |
| **Total** | **102** | **32** |
| **Interest expenses** | | |
| Eros Digital Private Limited | 57 | 54 |
| ErosNow Private Limited (formerly known as Universal Power Systems Private Limited) | 9 | - |
| EyeQube Studios Private Limited | 3 | - |
| Eros International Films Private Limited | 636 | 782 |
| **Total** | **706** | **836** |
| **Salary, commission and perquisites\* to KMPs** | | |
| Mr. Sunil Lulla\*\*\* | 527 | 480 |
| Mr. Kishore Lulla | - | 140 |
| Mrs. Krishika Lulla | 86 | 86 |
| Mr. Farokh Gandhi - Chief Financial Officer (India) (w.e.f. 9 March 2018) | 84 | 84 |
| Mr. Vijay Jayantilal Thaker (w.e.f. 13 August 2019) | 23 | - |
| Mr. Abhishek Kanoi\*\* (upto 12 August 2019) | 18 | 36 |
| Mr. Pradeep Dwivedi - Chief Executive Officer (w.e.f. 10 February 2020) | 41 | - |
| **Total** | **779** | **826** |

\*    Perquisites to KMP have been valued as per Income tax Act, 1961 and rules framed thereunder or at actuals as the case may be.

\*\*   Excludes ₹ 1 lakhs (31 March 2019 : ₹ 9 lakhs) charged to Statement of Profit and loss on account of stock compensation for awards granted.

\*\*\*The remuneration accrued/paid by the company to its Vice Chairman and Managing Director for the year ended 31 March 2020 is in excess by ₹ 398 lakhs vis-a-vis the limits specified in section 197 of Companies Act, 2013 ('the act') read with schedule V thereto, as the Company does not have profits. The Company is in process of complying with the prescribed statutory requirements to regularize such excess payments, including seeking approval of shareholders, as necessary. Untill then, the said excess amount is held in trust by the Vice Chairman and Managing Director.

**d)    Transactions with related parties**                                          Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| **Content advances given** | | |
| Colour Yellow Productions Private Limited | 1,104 | 6,478 |
| **Total** | **1,104** | **6,478** |
| **Loan and advances given** | | |
| EyeQube Studios Private Limited | 9 | 10 |
| Eros Animation Private Limited | 0 | 1 |
| EM Publishing Private Limited | 3 | 4 |
| ErosNow Private Limited (formerly known as Universal Power Systems Private Limited) | 1,854 | 800 |
| **Total** | **1,866** | **815** |
| **Refund of content advances** | | |
| ErosNow Private Limited (formerly known as Universal Power Systems Private Limited) | 2,572 | 1,624 |
| Eros Television India Private Limited | 3 | - |
| Copsale Limited | - | 1,516 |
| EyeQube Studios Private Limited | 66 | 8 |
| Eros International Limited | - | 222 |
| Shivam Enterprises | 39 | - |
| **Total** | **2,680** | **3,370** |

## Notes
**to the standalone financial statements and other explanatory information**

Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| **Trade advances/ loans taken** | | |
| Eros Worldwide FZ LLC | - | 10,596 |
| Eros Digital Private Limited | 25 | 75 |
| Eros International Films Private Limited | 5,275 | 2,267 |
| **Total** | **5,300** | **12,938** |
| **Repayment of advances/ loans** | | |
| Eros Digital Private Limited | 13,738 | - |
| Big Screen Entertainment Private Limited | 43 | 81 |
| Eros Television India Private Limited | 1 | 8 |
| Eros International Films Private Limited | 4,333 | 3,325 |
| **Total** | **18,115** | **3,414** |
| **Refund of deposits** | | |
| Mr. Sunil Lulla | 254 | 35 |
| Mr. Kishore Lulla | 60 | - |
| **Total** | **314** | **35** |

e)    **Balances with related parties**                                    Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| **Trade balances due from** | | |
| Eros Worldwide FZ LLC | 37,884 | 10,623 |
| Eros Digital FZ LLC | 11,128 | 5,981 |
| **Total** | **49,012** | **16,604** |
| **Trade balances due to** | | |
| Eros International Limited | 118 | 108 |
| Big Screen Entertainment Private Limited | 96 | 98 |
| Colour Yellow Productions Private Limited | 3,074 | 2,971 |
| Eros Digital FZ LLC | 18,682 | 9,652 |
| **Total** | **21,970** | **12,829** |
| **Advances due to** | | |
| Eros Worldwide FZ LLC | 311 | 14,048 |
| **Total** | **311** | **14,048** |
| **Loans due to** | | |
| Eros Digital Private Limited | 562 | 528 |
| Eros International Films Private Limited | 6,832 | 5,263 |
| ErosNow Private Limited (formerly known as Universal Power Systems Private Limited) | 512 | - |
| EyeQube Studios Private Limited | 38 | - |
| **Total** | **7,944** | **5,791** |
| **Content advances given to** | | |
| Colour Yellow Productions Private Limited | 4,782 | 7,177 |
| **Total** | **4,782** | **7,177** |

STANDALONE FINANCIAL STATEMENTS

# Notes
## to the standalone financial statements and other explanatory information

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| **Loans and advances due from** | | |
| Shivam Enterprises | - | 39 |
| EM Publishing Private Limited | 20 | 20 |
| Digicine Pte Limited | 39 | 36 |
| EyeQube Studios Private Limited | - | 28 |
| ErosNow Private Limited (formerly known as Universal Power Systems Private Limited) | - | 35 |
| Eros Animation Private Limited | 2 | 2 |
| Mrs. Krishika Lulla | - | 0 |
| Eros Television India Private Limited | - | 3 |
| Eros International Limited | - | 0 |
| **Total** | **61** | **163** |
| **Security Deposits/Amounts due from KMPs or their relatives** | | |
| Mr. Sunil Arjan Lulla | 13 | 267 |
| Mrs. Manjula K. Lulla | 75 | 75 |
| Mr. Kishore Arjan Lulla | 180 | 240 |
| **Total** | **268** | **582** |
| **Amounts due to KMPs or their relatives** | | |
| Mr. Sunil Lulla | 225 | 39 |
| Mr. Kishore Lulla | 143 | 149 |
| Mrs. Manjula Lulla | 103 | 64 |
| Mrs. Krishika Lulla | 2 | - |
| **Total** | **473** | **252** |

**Terms and conditions**

All outstanding balances are unsecured and repayable in cash.

**45    Categories of financial assets and financial liabilities**

The carrying value of financial instruments by categories are as follows:

Amount ₹ in lakhs

| Particulars | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| **Financial assets** | | |
| **Measured at fair value through Statement of Profit and Loss** | | |
| Investments* | 2,460 | 2,776 |
| **Total** | **2,460** | **2,776** |
| **Measured at amortised cost** | | |
| Loans | 1,265 | 3,152 |
| Restricted deposits | 3,650 | 6,493 |
| Other financial assets | 348 | 871 |
| Trade receivables | 52,590 | 66,595 |
| Cash and cash equivalents | 102 | 268 |
| **Total** | **57,954** | **77,379** |
| **Financial liabilities** | | |
| **Measured at fair value through profit and loss** | | |
| Forward contract liabilities | - | 430 |
| **Total** | **-** | **430** |
| **Measured at amortised cost** | | |
| Borrowings | 49,486 | 55,494 |
| Acceptance | 1,400 | 5,796 |
| Trade payables | 28,512 | 19,537 |
| Other financial liabilities | 10,979 | 6,888 |
| **Total** | **90,377** | **87,715** |

* Exclude financial instruments of investment in subsidiaries carried at cost.

# Notes
## to the standalone financial statements and other explanatory information

**46    Fair value measurement of financial instruments**

Financial assets and financial liabilities measured at fair value in the balance sheet are grouped into three Levels of a fair value hierarchy. The three Levels are defined based in the observability of significant inputs to the measurement, as follows:

Level 1: quoted prices (unadjusted) in active markets for identical assets or liabilities

Level 2: inputs other than quoted prices included within Level 1 that are observable for the asset or liability, either directly (i.e as price) or indirectly (i.e. derived from price)

Level 3: unobservable inputs for the asset or liability

a.    **The following table shows the Levels within the hierarchy of financial assets and liabilities measured at fair value on a recurring basis:**

Amount ₹ in lakhs

| Particulars | As at 31 March 2020 | Level 1 | Level 2 | Level 3 |
|---|---|---|---|---|
| **Financial assets** | | | | |
| Measured at fair value through Statement of Profit and Loss | | | | |
| Investments* | 2,460 | - | - | 2,460 |
| **Total** | **2,460** | **-** | **-** | **2,460** |

b.    **The following table shows the financial assets and liabilities measured at amortised cost on a recurring basis:**

Amount ₹ in lakhs

| Particulars | As at 31 March 2020 | Level 1 | Level 2 | Level 3 |
|---|---|---|---|---|
| **Measured at amortised cost** | | | | |
| **Financial assets** | | | | |
| Loans | 1,265 | | | |
| Restricted bank deposits | 3,650 | | | |
| Other financial assets-Non Current | 279 | | 279 | |
| Other financial assets- Current | 69 | | | |
| Trade receivables | 52,590 | | | |
| Cash and cash equivalents | 102 | | | |
| **Total** | **57,954** | **-** | **279** | **-** |
| **Financial liabilities** | | | | |
| **Measured at amortised cost** | | | | |
| Borrowings-Non current | 63 | | 63 | |
| Borrowings-Current | 49,423 | | | |
| Acceptance | 1,400 | | | |
| Trade payables | 28,512 | | | |
| Other financial liabilities | 10,979 | | | |
| **Total** | **90,377** | **-** | **63** | **-** |

* Exclude financial instruments of investment in subsidiaries carried at cost.

During the year ended 31 March  2020 there was no transfers between level 2 and level 3 fair value hierarchy.

Fair value of cash and short term deposits, trade and other short term receivables, trade payables, other current liabilities and short term borrowings carried at amortised cost  is not materially different from its carrying cost largely due to short term maturities of these financial assets and liabilities

Fair value of the borrowing items fall within level 2 of the fair value hierarchy and is calculated on the basis of discounted future cash flows.

Non-listed shares and other securities fall within level 3 of the fair value hierarchy.  Valuation is based on the discounted future cash flow method.

Financial instruments with fixed and variable interest rate fall within level 2 of the fair value hierarchy and are evaluated by Company based on parameters such as interest rate, credit rating or assessed credit worthiness.

STANDALONE FINANCIAL STATEMENTS

# Notes
## to the standalone financial statements and other explanatory information

a.  The following table shows the Levels within the hierarchy of financial assets and liabilities measured at fair value on a recurring basis:

Amount ₹ in lakhs

| Particulars | As at 31 March 2019 | Level 1 | Level 2 | Level 3 |
|---|---|---|---|---|
| **Financial assets** | | | | |
| **Measured at fair value through Statement of Profit and Loss** | | | | |
| Investments* | 2,776 | - | - | 2,776 |
| **Total** | **2,776** | **-** | **-** | **2,776** |
| **Financial liabilities** | | | | |
| **Measured at fair value through profit and loss** | | | | |
| Forward contract liabilities | 430 | - | 430 | - |
| **Total** | **430** | **-** | **430** | **-** |

b.  The following table shows the  financial assets and liabilities measured at amortised cost on a recurring basis:

Amount ₹ in lakhs

| Particulars | As at 31 March 2019 | Level 1 | Level 2 | Level 3 |
|---|---|---|---|---|
| **Measured at amortised cost** | | | | |
| Loans | 3,152 | | | |
| Restricted bank deposits | 6,493 | | | |
| Other financial assets-Non current | 643 | | 643 | |
| Other financial assets- Current | 228 | | | |
| Trade receivables | 66,595 | | | |
| Cash and cash equivalents | 268 | | | |
| **Total** | **77,379** | **-** | **643** | **-** |
| **Financial liabilities** | | | | |
| **Measured at amortised cost** | | | | |
| Borrowings-Non current | 8,698 | | 8,698 | |
| Borrowings- Current | 46,796 | | | |
| Acceptance | 5,796 | | | |
| Trade payables | 19,537 | | | |
| Other financial liabilities | 6,888 | | | |
| **Total** | **87,715** | **-** | **8,698** | **-** |

*Exclude financial instruments of investment in subsidiaries carried at cost.

During the year ended 31 March  2019 there  was no transfers between level 2 and level 3 fair value hierarchy.

Fair value of cash and short term deposits, trade and other short term receivables, trade payables, other current liabilities and short term borrowings carried at amortised cost  is not materially different from its carrying cost largely due to short term maturities of these financial assets and liabilities

**Following table shows the reconciliation from the opening balances to the closing balances of the level 3 values:-**

Amount ₹ in lakhs

| Particulars | |
|---|---|
| **Balance as on 1 April 2018** | **3,460** |
| Add: Employee stock option compensation expense to employee's of subsidiary | 38 |
| Less: Fair value loss recognized through Statement of Profit and Loss | (722) |
| **Balance as on 31 March 2019** | **2,776** |
| Add: Employee stock option compensation expense to employee's of subsidiary | 16 |
| Less: Fair value loss recognized through Statement of Profit and Loss | (332) |
| **Balance as on 31 March 2020** | **2,460** |

# Notes
## to the standalone financial statements and other explanatory information

| Financial asset | Fair value as at (₹ in lakhs) | | Fair value hierarchy | Valuation techniques and key inputs | Significant unobservable input | Relationship of unobservable input to fair value |
|---|---|---|---|---|---|---|
| | 31 March 2020 | 31 March 2019 | | | | |
| Investment in unquoted equity share | Equity share of :- ErosNow Private limited (Formerly known as Universal Power Systems Private Limited) - ₹ 2,460 | Equity share of :- ErosNow Private limited (Formerly known as Universal Power Systems Private Limited) - ₹ 2,776 | Level 3 | Income approach - In this approach, the discounted cash flow method was used to capture the present value of the expected future economic benefit to be derived from the ownership of these equity instruments. | The significant inputs were:- a) the estimated cash flow; and b) the discount rate to compute the present value of the future expected cash flow. | A 1 % increase / decrease in the discount rate used would decrease/ increase the fair value of unquoted equity instruments by ₹ 160 lakhs / ₹ 180 lakhs (₹ 89 lakhs / ₹ 66 lakhs  As at 31 March 2019). |

**47 Financial instruments and Risk management**

The Company is exposed to various risks in relation to financial instruments. The Company's financial assets and liabilities by category are summarised in note 44 The main types of risks are market risk, credit risk and liquidity risk.

The Company's risk management is coordinated in close cooperation with the board of directors and audit committee meetings.

The Company has established objectives concerning the holding and use of financial instruments. The underlying basis of these objectives is to manage the financial risks faced by the Company.

**Management of Capital Risk and Financial Risk**

The Company manages its capital to ensure that it will be able to continue as a going concern while maximizing the return to shareholders through the optimization of the debt and equity balance. The Company monitors capital using a gearing ratio, which is net debt divided by total capital. For the purpose of the Company's capital management, capital includes issued capital and all other equity reserves attributable to the equity shareholders of the Company. Net debt is calculated as borrowing (refer note 19,25,26 and 27)  less cash and cash equivalents.

The gearing ratio at the end of the reporting period was as follows:                                         Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Debt | 59,531 | 66,540 |
| Less: Cash and cash equivalents | (102) | (268) |
| **Net debt** | **59,429** | **66,272** |
| Equity | 37,980 | 153,845 |
| **Net debt to equity** | **156.47%** | **43.08%** |

**Financial risk management objectives**

Based on the operations of the Company , Management considers that  key financial risks that it faces are credit risk, currency risk, liquidity risk and interest rate risk. The objectives under each of these risks are as follows:

• credit risk: minimize the risk of default and concentration.

• currency risk: reduce exposure to foreign exchange movements principally between INR and USD.

• liquidity risk: ensure adequate funding to support working capital and future capital expenditure requirements.

• interest rate risk: mitigate risk of significant change in market rates on the cash flow of issued variable rate debt.

**Credit Risk**

The Company's credit risk is principally attributable to its trade receivables, loans and bank balances. As a number of the Company's trading activities require third parties to report revenues due to the Company this risk is not limited to the initial agreed sale or advance amounts. The amounts shown within the Balance Sheet in respect of trade receivables and loans are net of allowances for doubtful debts based upon objective evidence that the Company will not be able to collect all amounts due.

Trading credit risk is managed on a customer by customer basis by the use of credit checks on new clients and individual credit limits, where appropriate, together with regular updates on any changes in the trading partner's situation. In a number of cases trading partners will be required to make advance payments or minimum guarantee payments before delivery of any goods. The Company reviews reports received from third parties and in certain cases as a matter of course reserve the right within the contracts it enters into to request an independent third party audit of the revenue reporting.

**STANDALONE FINANCIAL STATEMENTS**

# Notes
## to the standalone financial statements and other explanatory information

The credit risk on bank balances is limited because the counterparties are banks with high credit ratings as signed by international credit rating agencies.

The Company from time to time will have significant concentration of credit risk in relation to individual theatrical releases, television syndication deals or digital licenses. This risk is mitigated by contractual terms which seek to stagger receipts and/or the release or airing of content. As at 31 March 2020 97% (31 March 2019: 46 %) of trade account receivables were represented by the top 5 customer, out of which as at 31 March 2020  93 % (31 March 2019: 25 %) of trade account receivables were represented by the related parties. The maximum exposure to credit risk is that shown within the statement of financial position.

As at 31 March 2020, the Company did not hold any material collateral or other credit enhancements to cover its credit risks associated with its financial assets, except certain secured debtors as disclosed in note 11.

**Currency Risk**

The Company is exposed to foreign exchange risk from foreign currency transactions. As a result it faces both translation and transaction currency risks which are principally mitigated by matching foreign currency revenues and costs wherever possible.

The Company has identified that it will need to utilize hedge transactions to mitigate any risks in movements between the US Dollar and the Indian Rupee and has adopted an agreed set of principles that will be used when entering into any such transactions. No such transactions have been entered into to date and the Company has managed foreign currency exposure to date by seeking to match foreign currency inflows and outflows as much as possible such as packing credit repayment in USD is matched with remittances from UAE in USD. Details of the foreign currency borrowings that the Company uses to mitigate risk are shown within Interest Risk disclosures.

The Company adopts a policy of borrowing where appropriate in the foreign currency as a hedge against translation risk. The table below shows the Company's net foreign currency monetary assets and liabilities position in the main foreign currencies, translated to Indian Rupees (INR) equivalents, as at the year end:

Amount ₹ in lakhs

| | Net balance receivables / (payables) | | | |
|---|---|---|---|---|
| | INR | USD | SGD* | GBP |
| As at 31 March 2020 | 26,839 | 355 | 1 | - |
| As at 31 March 2019 | (1,858) | (27) | 0 | - |

*amount represents less than  one lakh

The above foreign currency arises when the Company holds monetary assets and liabilities denominated in a currency other than INR.

A uniform decrease of 10% in exchange rates against all foreign currencies in position as of 31 March 2020 would have decreased in the Company's net profit before tax by approximately ₹ 2,684 lakhs (2019: profit of ₹ 186 lakhs). An equal and opposite impact would be experienced in the event of an increase by a similar percentage.

**Liquidity risk**

The Company manages liquidity risk by maintaining adequate reserves and agreed committed banking facilities. Management of working capital takes account of film release dates and payment terms agreed with customers.

A maturity analysis for financial liabilities is provided below. The amounts disclosed are based on contractual undiscounted cash flows. The table includes both interest and principal cash flows. To the extent that interest flows are floating rate, the undiscounted amount is derived from interest rates as at 31 March in each year.

Amount ₹ in lakhs

| | Total | Less than 1 year | 1-3 years | 3-5 years | More than 5 years |
|---|---|---|---|---|---|
| **As at 31 March 2020** | | | | | |
| Borrowing principal payments | 58,100 | 58,037 | 63 | - | - |
| Borrowing interest payments | 7,160 | 7,158 | 2 | - | - |
| Acceptance | 1,400 | 1,400 | - | - | - |
| Trade and other payables | 30,186 | 30,021 | 165 | - | - |

# Notes
## to the standalone financial statements and other explanatory information

Amount ₹ in lakhs

| | Total | Less than 1 year | 1-3 years | 3-5 years | More than 5 years |
|---|---|---|---|---|---|
| **As at 31 March 2019** | | | | | |
| Borrowing principal payments | 60,743 | 51,975 | 8,168 | 600 | - |
| Borrowing interest payments | 7,587 | 6,380 | 1,189 | 18 | - |
| Acceptance | 5,796 | 5,796 | - | - | - |
| Trade and other payables | 20,950 | 20,817 | 133 | - | - |

At 31 March 2020, the Company had facilities available of ₹ 51,556 Lakhs (31 March 2019: ₹ 60,950 Lakhs) and had net undrawn amounts of ₹ 189 Lakhs (31 March 2019: ₹ 201 Lakhs) available.

### Interest rate risk

The Company is exposed to interest rate risk as the Company has borrowed funds at floating interest rates. The risk is managed as the loans are at floating interest rates which is aligned to the market.

A uniform increase of 100 basis points in interest rates against all borrowings in position as of 31 March 2020 would have decreased in the Company's net profit before tax by approximately ₹ 204 Lakhs (2019:decrease net profit before tax of ₹ 386 Lakhs). An equal and opposite impact would be experienced in the event of a decrease by a similar basis.

**48    Auditors' remuneration**                                                         Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| **As auditor** | | |
| Statutory audit | 80 | 65 |
| Limited review | 15 | 15 |
| Tax audit | 7 | 7 |
| | 102 | 87 |
| **In other capacity** | | |
| Other services (certification fees) | 5 | 2 |
| | 5 | 2 |
| **Total** | 107 | 89 |

**49**    Based on the information available with the Company, there are no dues payable as at the year end to micro, small and medium enterprises as defined in The Micro, Small & Medium Enterprises Development Act, 2006. This information has been relied upon by the statutory auditors of the Company.

**50**    As per the provision of the Act, a Corporate Social Responsibility (CSR) committee has been formed by the Company. CSR objects chosen by the Company primarily consist of promoting education, promoting gender equality, empowering women, setting up homes and hostels for women and orphans etc. As per the provisions of the Act, gross amount required to be spent by the Company is ₹ 485 lakhs (31 March 2019 : ₹ 425 lakhs), of which ₹ 3 lakh (31 March 2019 : ₹ 20 lakhs) have been spent during the current year details as ₹ 3 lakhs to Vardhaman Sanskar Dham (31 March 2019: ₹ 15 lakhs to Arpan and ₹ 5 lakhs to Kerala Chief Minister's Distress Relief Fund)

**51    Estimation of uncertainties relating to global health pandemic from COVID-19:**

In December 2019, a novel strain of coronavirus (COVID-19) emerged in Wuhan, Hubei Province, China. While initially the outbreak was largely concentrated in China and caused significant disruptions to its economy, it has now spread to several other countries, and infections have been reported globally including India, United Kingdom, United States, Dubai, Singapore and Australia where the group through its offices distributes the films theatrically. On March 24, 2020, in response to the public health risks associated with the COVID-19, the Government of India announced nation-wide lockdown which resulted in the closure of all the theatres across India and caused disruptions in the production and availability of content, including delayed, or in some cases, shortened or cancelled theatrical releases. The lockdown has affected the Company's ability to generate revenues from the monetization of Indian film content in various distribution channels through agreements with commercial theatre operators.

The Central and State Governments have initiated the steps to lift the lockdown, however, theatres are still not allowed to operate till the further directives issued by the governments. The Company has considered the possible effects that may results from the pandemic on the carrying amount of the asset.

**STANDALONE FINANCIAL STATEMENTS**

The Management has evaluated the impact on its financial statements and have made appropriate adjustments, wherever required. The extent of the impact on Company's operations remains uncertain and may differ from that estimated as at the date of approval of these standalone financial statements and will be dictated by the length of time that such disruptions continue, which will, in turn, depend on the currently unknowable duration of COVID-19 and among other things, the impact of governmental actions imposed in response to the pandemic. The Company is monitoring the rapidly evolving situation and its potential impacts on the Company's financial position, results of operations, liquidity, and cash flows.

52  The company has incurred loss for the year amounting ₹ 115,978 lakhs  [after considering the impact of an impairment loss amounting ₹ 127,850 lakhs]. The company is dependent upon external borrowings for its working capital needs and investment in content and film rights. Given the economic uncertainty created by the novel coronavirus coupled with significant business disruptions for film distributer and broadcasting companies, there is likely be an increase in events and circumstances which may cast doubt on a Company's ability to continues as a going concern. The merger of STX Filmworks Inc with subsidiary of ultimate holding company Eros International Plc will result into equity infusion of US$ 125 million in combined entity. These funds would improve liquidity within the group. The company has considered the impact of these uncertainties and factored them into their financial forecasts, including renewal of short-term borrowings. For this reason, Management continues to adopt the going concern basis in preparing the consolidated financial statements.

## 53  Post reporting date events

No adjusting or significant non-adjusting events have occurred between 31 March 2020 and the date of authorisation of these standalone financial statements.

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No.: 101720W/W100355

**For and on behalf of Board of Directors**

**Amit Chaturvedi**
Partner
Membership No: 103141

**Sunil Lulla**
Executive Vice Chairman &
Managing Director
(DIN: 00243191)

**Sunil Srivastav**
Non Executive Independent
Director
(DIN: 00237561)

**Pradeep Dwivedi**
Chief Executive Officer

**Farokh P. Gandhi**
Chief Financial Officer

**Vijay Thaker**
Vice President - Company Secretary
and Compliance Officer

Place: Mumbai
Date : 30 July 2020

Place: Mumbai
Date : 30 July 2020

# Consolidated Financial Statements

# INDEPENDENT AUDITOR'S REPORT

To the Members of
**Eros International Media Limited**

**Report on the Consolidated Financial Statements**

**Opinion**

We have audited the accompanying consolidated financial statements of Eros International Media Limited (hereinafter referred to as the "Holding Company") and its subsidiaries (Holding Company and its subsidiaries together referred to as "the Group"), its joint venture, which comprise the consolidated Balance Sheet as at March 31, 2020, and the consolidated Statement of Profit and Loss, including consolidated Other Comprehensive Income, the consolidated Cash Flow Statement and the consolidated Statement of Changes in Equity for the year then ended, and a summary of significant accounting policies and other explanatory information (hereinafter referred to as "the consolidated financial statements").

In our opinion and to the best of our information and according to the explanations given to us and based on the consideration of reports of other auditors on separate financial statements and on other financial information of the subsidiaries and joint venture, the aforesaid consolidated financial statements give the information required by the Companies Act, 2013 (" the Act")  in the manner so required and give a true and fair view in conformity with the Indian Accounting Standards ("Ind AS") specified under Section 133 of the Act and other accounting principles generally accepted in India, of the state of affairs of the Company as at March 31, 2020, its loss including other comprehensive income, its cash flows and the statement of changes in equity for the year ended on that date.

**Basis for Opinion**

We conducted our audit in accordance with the Standards on Auditing ("SAs") specified under Section 143(10) of the Act. Our responsibilities under those Standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements section of our report. We are independent of the Company in accordance with the Code of Ethics issued by the Institute of Chartered Accountants of India (ICAI) together with the ethical requirements that are relevant to our audit of the consolidated financial statements under the provisions of the Act and the Rules made thereunder, and we have fulfilled our other ethical responsibilities in accordance with these requirements and the ICAI's Code of Ethics. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our opinion on the consolidated financial statements.

**Material Uncertainty related to Going Concern**

As stated in Note No. 52 of the consolidated financial statements, the economic uncertainty created by the novel coronavirus has resulted in significant business disruptions for film distributer and broadcasting companies. These conditions, along with other matter as set forth in the aforesaid note, indicate the existence of a material uncertainty that may cast significant doubt about the Company's ability to continue as a going concern.

**Our opinion is not modified in respect of this above matter.**

**Emphasis of Matter**

We draw attention to Note No. 51 of the consolidated financial statements, which describes the Company's management evaluation of Covid 19 impact on the future business operations and future cash flows of the Company and it's consequential effects on the carrying value of assets as on March 31, 2020. In view of uncertain economic conditions, the Company's management's evaluation of impact on subsequent periods is highly dependent upon conditions as they evolve. Our opinion is not modified in respect of this matter.

**Key Audit Matters**

Key audit matters are those matters that, in our professional judgment, were of most significance in our audit of the consolidated financial statements of the current period. These matters were addressed in the context of our audit of the consolidated financial statements as a whole, and in forming our opinion thereon, and we do not provide a separate opinion on these matters. For each matter below, our description of how our audit addressed the matter is provided in that context.

We have determined the matters described below to be key audit matters to be communicated in our report. We have fulfilled the responsibilities described in the Auditors' responsibilities for the audit of the Consolidated Financial Statements section of our report, including in relation to these matters. Accordingly, our audit included the performance of procedures designed to respond to our assessment of the risks of material misstatement of the Consolidated Financial Statements. The results of our audit procedures, including the procedures performed to address the matters below, provide the basis for our audit opinion on the accompanying consolidated financial statements:-

| Key Audit Matters | Response to Key Audit Matters |
|---|---|

### Impairment of Non financial assets

*(Refer note 38 of consolidated financial statement)*

| | |
|---|---|
| Annually management reviews whether there are any indicators of impairment of the non financial assets (Refer note 1 and para (d) of significant accounting policies by reference to the requirements under Ind AS 36 – "Impairment of Assets". Accordingly, management has identified impairment indicators (impact of Covid-19 pandemic of Group's operations, significant reduction in market capitalisation as compared with the previous year and other factors) exist as at March 31.2020. As a result, an impairment assessment was required to be performed by the Group by comparing the carrying value of the cash generating unit (CGU) to their recoverable amount i.e. value in use to determine whether impairment was required to be recognised. For the purpose of impairment testing, management has determined the value in use of CGU based on the valuation report by external expert. | Our audit procedures included and were not limited to the following: |
| | • Obtaining an understanding, evaluating the design and testing, the operating effectiveness of controls that the Group has in relation to impairment review processes. |
| | • Assessing the appropriateness of Group's valuation methodology applied in determining the recoverable amount. In making this assessment, we evaluated the objectivity and independence of Group's specialists involved in the process. |
| The assessment of the value in use (the present value of the future cash flows that are expected to be derived from the asset.) requires significant judgment, in particular relating to estimated cash flow projections and discount rates. | • Assessing the assumptions around the key drivers of the cash flow forecasts including discount rates, expected growth rates and terminal growth rates used. |
| | • Assessing the recoverable value headroom by performing sensitivity testing of key assumptions used. |
| During the year ended March 31, 2020 the Group has recorded an impairment provision of ₹ 1,52,855 lakhs to reduce the aggregate carrying value of CGU comprising of Content Advances and Film Rights, to their estimated recoverable values, as per the valuation report. | • Assess the methodology and appropriateness of allocation of impairment value derived for CGU to individual accounts as per Ind AS 36. |
| | • Verifying the completeness of disclosure in the Consolidated Financial Statements as per Ind AS 36. |
| Due to the level of judgment, market environment and significance to the Group's financial position, this is considered to be a key audit matter. | |

### Revenue Recognition

*(Refer note 1 and para 'a' of the significant accounting policies)*

| | |
|---|---|
| The Group recognize theatrical income, license Fees and distribution revenue, net of sales related taxes, when control of the underlying products have been transferred along with satisfaction of performance obligation. | Our audit procedures to assess the appropriateness of revenue recognised included and were not limited to following: |
| Recognition of revenue is driven by specific terms of related contracts. | • Obtaining an understanding of an assessing the design, implementation and operating effectiveness of the Group's key internal controls over the revenue recognition process. |
| The various streams of revenue, together with the level of judgement involved make its accounting treatment for revenue a significant matter for our audit. | • Examination of significant contracts entered into close to year end to ensure revenue recognition is made in correct period. |
| | • Testing a sample of contracts from various revenue streams by agreeing information back to contracts and proof of delivery or transmission as appropriate and ensure revenue recognition is in accordance with principles of Ind AS 115. |
| | • Assessing the adequacy of Groups's disclosure in accordance with requirements of Ind AS 115. |

### Content Advances

| | |
|---|---|
| Group enters into agreements with production houses to develop future film content. Advances are given as per terms of agreements. Such content advances are monitored by the respective management of the companies included in the Group for recoverability and appropriate write offs are taken when film production does not seem viable and refund of advance is not probable basis management evaluation. | Our audit procedures with respect to content advance, delivery of the content and it's impairment included and were not limited to following: |
| | • Obtaining an understanding of and assessing the design, implementation and operating effectiveness of the Group's key controls over the processes of authorisation of content advances and tracking of receipt of related content as per agreement. |
| The Content advances are transferred to film and rights at the point at which the content is first exploited. Provision is made as per provision policy in respect of content advances against which content has not been delivered by vendor within agreed timelines or where projects are at standstill/put on hold for substantial period of time. | • Examination of contracts on sample basis entered by the Group and agreeing with the schedule of content advance |
| | • Examination of the approvals of write off where amounts are not recoverable. |
| Because of the significance of content advances to the balance sheet and of the significant degree of management judgment involved in evaluating the adequacy of the allowance for content advances, we identified this area as key audit matter. | • Testing of the amounts transferred to film and rights account on sample basis on delivery of content by vendor. |
| | • Circulating and obtaining independent confirmations from parties on the outstanding balances on sample basis. Testing the reconciliation, if any between the balances confirmed by party and balance in the books. |

**CONSOLIDATED FINANCIAL STATEMENT**

| Key Audit Matters | Response to Key Audit Matters |
|---|---|
| | • Conducting discussion with the management and reviewing, on sample basis, the project status prepared by management for determining the adequacy of impairment provisions where balances are still pending to be adjusted against the content to be delivered by the party. |

### Amortisation of Film and Content Rights
(Refer note 1 and para 'c' of the significant accounting policies)

| | |
|---|---|
| The cost incurred on acquisition of film and content rights are amortised over the period. Group carries out stepped up amortisation of film content, with higher amortisation in year of film release and lower amortisation in later periods as per the policy disclosed in significant accounting policy. | Our audit procedures to test amortisation/ impairment of film content included and were not limited to following: |
| | • Assessing the design, implementation and operating effectiveness of the Group's key internal controls over the processes of maintenance and updation of master files containing data on the film rights carrying value and the related amortisation computations thereof. |
| Such amortisation policy has been derived basis management's expectation of overall performance of films based on historical trends. The Group maintains detailed content wise information relating to historical trends and future benefits from content through theatrical sales, sale of satellite or television and other forms of monetisation of the content. | • Testing, on sample basis, the mathematical accuracy of the acquisition cost of film and content rights, associated amortisation charge and additions and disposals to third party supporting documents. |
| | • Discussing the expectations of the selected films and shows with key personnel, including those outside of finance, to ensure its consistency of expected performance with key assumptions. |
| Determination of amortisation policy and assessing impairment of content asset involves significant judgement and estimates since it is dependent on various internal and external factors. | • Determining the overall assumptions used by management for amortisation policy is appropriate based on the expected utilisation of benefits of the underlying content. |
| Because of the significance of the amortisation of content and film rights to balance sheet together with the level of judgement involved make its accounting treatment a significant matter for our audit. | • Assessing management's historical forecasting accuracy by comparing past assumptions to actual outcomes. |
| | • The carrying value of the content and film cost were tested for impairment based on the valuation model. We tested the historical data used for valuation, challenged the terminal growth and discount rates used and considered the reasonableness of the sensitivity assessment applied. |

### Trade Receivables
(Refer note 1 and para 'i' of the significant accounting policies)

| | |
|---|---|
| The Group is required to regularly assess the recoverability of its trade receivables. Management assesses the level of allowance for expected credit loss required at each reporting date after taking into account the ageing analysis of trade receivables and other historical and current factors specific to individual accounts. | Our audit procedures to assess the recoverability of trade receivables included and were not limited to following: |
| | • Tested the accuracy of aging of trade receivables at year end on a sample basis. |
| The recoverability of trade receivables was significant to our audit because of the significance of trade receivables to balance sheet and involvement of significant degree of management judgement involved in evaluating the adequacy of the allowance for expected credit loss. | • Assessed the recoverability of the unsettled receivables on a sample basis through our evaluation of management's assessment with reference to the credit profile of the customers, historical payment pattern of customers, publicly available information and latest correspondence with customers related to the recoverability of outstanding amount and to consider if any additional provision should be made. |
| | • Tested subsequent settlement of trade receivables after the balance sheet date on a sample basis, if any. |
| | • Examination of the approvals of write off where amounts are not recoverable. |
| | • Circulating and obtaining independent customers confirmation on the outstanding balances on sample basis. Testing the reconciliation, if any between the balances confirmed by customer and balance in the books on sample basis. |
| | • In assessing the appropriateness of the overall provision for expected credit loss we considered the management's application of policy for recognizing provisions which included assessing whether the calculation was in accordance with IND AS 109 and comparing the Group's provisioning rates against historical collection data. |

### Information Other than the Financial Statements and Auditor's Report thereon

The Company's Board of Directors is responsible for the other information. The other information comprises the information included in the Annual Report, but does not include the consolidated financial statements and our auditor's report thereon.

Our opinion on the consolidated financial statements does not cover the other information and we do not express any form of assurance conclusion thereon.

In connection with our audit of the financial statements, our responsibility is to read the other information and, in doing so, consider whether the other information is materially inconsistent with the financial statements or our knowledge obtained in the audit or otherwise appears to be materially misstated. If, based on the work we have performed, we conclude that there is a material misstatement of this other information; we are required to report that fact. We have nothing to report in this regard.

### Management Responsibility for the Consolidated Financial Statements

The Holding Company's Board of Directors is responsible for the matters stated in Section 134(5) of the Act, with respect to the preparation of these Consolidated Financial Statements that give a true and fair view of the consolidated financial position, consolidated financial performance including consolidated other comprehensive income, consolidated cash flows and the consolidated statement of changes in equity of the Group in accordance with the accounting principles generally accepted in India, including the Indian Accounting Standards ("Ind AS") specified under Section 133 of the Act, read with the Companies (Indian Accounting Standards) Rules, 2015, as amended.

The respective Board of Directors of the companies included in the Group and joint venture are responsible for maintenance of adequate accounting records in accordance with the provisions of the Act for safeguarding the assets of the Group and joint venture and for preventing and detecting frauds and other irregularities; selection and application of the appropriate accounting policies; making judgements and estimates that are reasonable and prudent; and design, implementation and maintenance of adequate internal financial controls, that were operating effectively for ensuring the accuracy and completeness of the accounting records, relevant to the preparation and fair presentation of the consolidated financial statements that give a true and fair view and are free from material misstatement, whether due to fraud or error, which have been used for the purpose of preparation of the consolidated financial statements by the directors of the holding Company, as aforesaid.

In preparing the consolidated financial statements, the respective Board of Directors of the companies included in the Group and joint venture are responsible for assessing the ability of the Group and joint venture to continue as a going concern, disclosing, as applicable, matters related to going concern and using the going concern basis of accounting unless management either intends to liquidate the Group or to cease operations, or has no realistic alternative but to do so.

The respective Board of Directors of the companies included in the Group and joint venture are responsible for overseeing the financial reporting process of the Group and joint venture.

### Auditor's Responsibility

Our objectives are to obtain reasonable assurance about whether the consolidated financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance, but is not a guarantee that an audit conducted in accordance with SAs will always detect a material misstatement when it exists. Misstatements can arise from fraud or error and are considered material if, individually or in the aggregate, they could reasonably be expected to influence the economic decisions of users taken on the basis of these consolidated financial statements.

As part of an audit in accordance with SAs, we exercise professional judgment and maintain professional scepticism throughout the audit. We also:

- Identify and assess the risks of material misstatement of the financial statements, whether due to fraud or error, design and perform audit procedures responsive to those risks, and obtain audit evidence that is sufficient and appropriate to provide a basis for our opinion. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control.

- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances. Under Section 143(3) (i) of the Act, we are also responsible for expressing our opinion on whether the Company has adequate internal financial controls system in place and the operating effectiveness of such controls.

- Evaluate the appropriateness of accounting policies used and the reasonableness of accounting estimates and related disclosures made by management.

- Conclude on the appropriateness of management's use of the going concern basis of accounting and, based on the audit evidence obtained, whether a material uncertainty exists related to events or conditions that may cast significant doubt on the ability of the Group and joint venture to continue as a going concern. If we conclude that a material uncertainty exists, we are required to draw attention in our auditor's report to the related disclosures in the consolidated financial statements or, if such disclosures are inadequate, to modify our opinion. Our conclusions are based on the audit evidence obtained up to the date of our auditor's report. However, future events or conditions may cause the Group and joint venture to cease to continue as a going concern.

- Evaluate the overall presentation, structure and content of the consolidated financial statements, including the disclosures, and whether the consolidated financial statements represent the underlying transactions and events in a manner that achieves fair presentation.

- Obtain sufficient appropriate audit evidence regarding the financial information of the entities or business activities within the Group and joint venture to express an opinion on the consolidated financial statements. We are responsible for the direction, supervision and performance of the audit of the financial statements of such entities included in the consolidated financial statements of which are the independent auditors. For the other entities included in the consolidated financial statements, which have been audited by other auditors, such other auditors remain responsible for the direction, supervision and performance of the audits carried out by them. We remain solely responsible for our audit opinion.

Materiality is the magnitude of misstatements in the Consolidated Financial Statements that, individually or in aggregate, makes it probable that the economic decisions of a reasonably knowledgeable user of the Consolidated Financial Statements may be influenced. We consider quantitative materiality and qualitative factors in (i) planning the scope of our audit work and in evaluating the results of our work; and (ii) to evaluate the effect of any identified misstatements in the Consolidated Financial Statements.

We communicate with those charged with governance of the Holding Company and such other entities included in the consolidated financial statements of which we are the independent auditors regarding, among other matters, the planned scope and timing of the audit and significant audit findings, including any significant deficiencies in internal control that we identify during our audit.

We also provide those charged with governance with a statement that we have complied with relevant ethical requirements regarding independence, and to communicate with them all relationships and other

**EROS INTERNATIONAL MEDIA LIMITED    101**

**CONSOLIDATED FINANCIAL STATEMENT**

matters that may reasonably be thought to bear on our independence, and where applicable, related safeguards.

From the matters communicated with those charged with governance, we determine those matters that were of most significance in the audit of the consolidated financial statements of the current period and are therefore the key audit matters. We describe these matters in our auditor's report unless law or regulation precludes public disclosure about the matter or when, in extremely rare circumstances, we determine that a matter should not be communicated in our report because the adverse consequences of doing so would reasonably be expected to outweigh the public interest benefits of such communication.

**Other Matters**

We did not audit the financial statements of the two subsidiaries, whose financials results/statements reflect total assets of ₹ 9,048 lakhs as at March 31, 2020 and total revenue of ₹ 6,461 lakhs and ₹11,717 lakhs, total profit of ₹ 1,449 lakhs and ₹ 802 lakhs, and total comprehensive income of Nil and Nil, each for the quarter ended March 31, 2020 and for the year ended on that date respectively, and net cash inflows of ₹ 207 lakhs for the year ended March 31,2020, as considered in the Statement.

These financial statements and other financial information have been furnished to us by the Management and our report on the Statement, in so far as it relates to the amounts included in respect of these subsidiaries, is based solely on the reports of the other auditor.

Our opinion on the consolidated financial statements, and our report on Other Legal and Regulatory Requirements below, is not modified in respect of the above matters with respect to our reliance on the work done and the reports of the other auditors.

**Report on Other Legal and Regulatory Requirements**

As required by Section 143(3) of the Act, we report, to the extent applicable, that:

a)  We have sought and obtained all the information and explanations which to the best of our knowledge and belief were necessary for the purposes of our audit of the aforesaid consolidated financial statements;

b)  In our opinion, proper books of account as required by law relating to preparation of the aforesaid consolidated financial statements have been kept so far as it appears from our examination of those books and the reports of the other auditors;

c)  The Consolidated Balance Sheet, the Consolidated Statement of Profit and Loss, and the Consolidated Cash Flow Statement dealt with by this Report are in agreement with the relevant books of account maintained for the purpose of preparation of the consolidated financial statements;

d)  In our opinion, the aforesaid consolidated financial statements comply with the Ind AS specified under Section 133 of the Act read with Companies (Indian Accounting Standards) Rules, 2015 as amended;

e)  The matter described under Material Uncertainty Related to Going Concern paragraph above, in our opinion, may have an adverse effect on the functioning of the Company.

f)  On the basis of the written representations received from the directors of the Holding Company as on March 31, 2020 taken on record by the Board of Directors of the Holding Company and the reports of the statutory auditors of its subsidiaries and joint venture, none of the directors of the Group companies and joint venture incorporated in India is disqualified as on March 31, 2020 from being appointed as a director in terms of Section 164 (2) of the Act;

g)  With respect to the adequacy of the internal financial controls over financial reporting of the Group and joint venture incorporated in India and the operating effectiveness of such controls, refer to our separate Report in "Annexure A". Our report expresses an unmodified opinion on the adequacy and operating effectiveness of the Group and joint venture incorporated in India;

h)  With respect to the other matters to be included in the Auditor's Report in accordance with the requirements of Section 197(16) of the Act, as amended,

In our opinion and to the best of our information and according to the explanations given to us, the remuneration paid by the Holding Company to its Executive Vice Chairman and Managing Director for the year ended March 31, 2020 is in excess by ₹ 398 lakhs vis-à-vis the limits specified in Section 197 of Companies Act, 2013 ('the Act') read with Schedule V thereto as the Holding Company does not have profits. The Holding Company has represented to us that it is in the process of complying with the prescribed statutory requirements to regularize such excess payments, including seeking approval of shareholders, as necessary.

i)  With respect to the other matters to be included in the Auditor's Report in accordance with Rules 11 of the Companies (Audit and Auditors) Rules, 2014, as amended , in our opinion and to the best of our information and according to the explanations given to us:

i.  The consolidated financial statements disclose the impact of pending litigations on the consolidated financial position of the Group and joint venture - Refer Note 40 to the consolidated financial statements;

ii.  The Group and joint venture did not have any material foreseeable losses on long-term contracts including derivative contracts during the year ended March 31, 2020, and

iii.  There has been no delay in transferring amounts, required to be transferred, to the Investor Education and Protection Fund by the Holding Company and its subsidiary companies incorporated in India.

**For Chaturvedi & Shah LLP**
Chartered Accountants
(Firm Registration no. 101720W/W100355)

**Amit Chaturvedi**
Partner
Membership No.:103141
UDIN: 20103141AAAAPP6675
Place: Mumbai
Date: 30 July, 2020

# ANNEXURE "A" TO THE INDEPENDENT AUDITOR'S REPORT ON THE CONSOLIDTAED FINANCIAL STATEMENTS OF EROS INTERNATIONAL MEDIA LIMITED

**(Referred to in paragraph 2 (f) under 'Report on Other Legal and Regulatory Requirements' of our report of even date)**

**Report on the Internal Financial Controls over Financial Reporting under Clause (i) of sub-section 3 of Section 143 of the Companies Act, 2013 ("the Act")**

We have audited the Internal Financial Control over financial reporting of **Eros International Media Limited** (hereinafter referred to as "the Holding Company") and its subsidiary companies incorporated in India as of March 31, 2020 in conjunction with our audit of the consolidated financial statements of the Company for the year then ended.

## Management Responsibility for the Internal Financial Controls

The respective Board of Directors of the Holding Company and its subsidiary companies incorporated in India, are responsible for establishing and maintaining internal financial controls based on the internal control over financial reporting criteria established by the Holding Company considering the essential components of internal control stated in the Guidance Note on Audit of Internal Financial Controls Over Financial Reporting (the "Guidance Note") issued by the Institute of Chartered Accountants of India ("ICAI"). These responsibilities include the design, implementation and maintenance of adequate internal financial controls that were operating effectively for ensuring the orderly and efficient conduct of its business, including adherence to the respective company's policies, the safeguarding of its assets, the prevention and detection of frauds and errors, the accuracy and completeness of the accounting records, and the timely preparation of reliable financial information, as required under the Act.

## Auditor's Responsibility

Our responsibility is to express an opinion on the Holding Company and its subsidiary companies incorporated in India, internal financial controls over financial reporting based on our audit. We conducted our audit in accordance with the Guidance Note issued by ICAI and the Standards on Auditing, issued by ICAI and deemed to be prescribed under Section 143(10) of the Act, to the extent applicable to an audit of internal financial controls, both applicable to an audit of Internal Financial Controls and both issued by the ICAI. Those Standards and the Guidance Note require that we comply with ethical requirements and plan and perform the audit to obtain reasonable assurance about whether adequate internal financial controls over financial reporting was established and maintained and if such controls operated effectively in all material respects.

Our audit involves performing procedures to obtain audit evidence about the adequacy of the internal financial controls system over financial reporting and their operating effectiveness. Our audit of internal financial controls over financial reporting included obtaining an understanding of internal financial controls over financial reporting, assessing the risk that a material weakness exists, and testing and evaluating the design and operating effectiveness of internal control based on the assessed risk. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the consolidated financial statements, whether due to fraud or error.

We believe that the audit evidence we have obtained and the audit evidence obtained by the other auditors in terms of their reports referred to in the Other Matters paragraph below, is sufficient and appropriate to provide a basis for our audit opinion on the internal financial controls system over financial reporting.

## Meaning of Internal Financial Controls over Financial Reporting

A company's internal financial control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of consolidated financial statements for external purposes in accordance with generally accepted accounting principles. A company's internal financial control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of consolidated financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the Company are being made only in accordance with authorisations of management and directors of the Company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorised acquisition, use, or disposition of the company's assets that could have a material effect on the consolidated financial statements.

## Inherent Limitations of Internal Financial Controls over Financial Reporting

Because of the inherent limitations of internal financial controls over financial reporting, including the possibility of collusion or improper management override of controls, material misstatements due to error or fraud may occur and not be detected. Also, projections of any evaluation of the internal financial controls over financial reporting to future periods are subject to the risk that the internal financial control over financial reporting may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

## Opinion

In our opinion, to the best of our information and according to the explanations given to us and based on the consideration of reports of other auditors, as referred to in Other Matters paragraph, the Holding Company, its subsidiary companies which are companies incorporated in India, have, maintained in all material respects, adequate internal financial controls system over financial reporting with reference to these consolidated financial statements and such internal financial controls over financial reporting with reference to these consolidated financial statements were operating effectively as at March 31, 2020, based on the internal control over financial reporting criteria established by the Holding Company considering the essential components of internal control stated in the Guidance Note on Audit of Internal Financial Controls Over Financial Reporting issued by the Institute of Chartered Accountants of India.

## Other Matters

Our aforesaid reports under Section 143(3) (i) of the Act on the adequacy and operating effectiveness of the internal financial controls over financial reporting insofar as it relates to its two subsidiary companies, which are companies incorporated in India, is based on the corresponding reports of the auditors of such companies incorporated in India.

**For Chaturvedi & Shah LLP**
Chartered Accountants
(Firm Registration no. 101720W/W100355)

**Amit Chaturvedi**
Partner
Membership No.:103141
UDIN: 20103141AAAAPP6675
Place: Mumbai
Date: 30 July, 2020

CONSOLIDATED FINANCIAL STATEMENT

# Consolidated Balance Sheet
**as at 31 March 2020**

Amount ₹ in lakhs

| Particulars | Notes | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|---|
| **Assets** | | | |
| **Non-current assets** | | | |
| Property, plant & equipment | 2 | 3,803 | 3,838 |
| Intangible assets | | | |
| a) Content advances | 3 | 36,018 | 158,315 |
| b) Film rights | 3 | 51,041 | 91,234 |
| c) Others intangible assets | 3 | 1,127 | 1,340 |
| d) Intangible assets under development | 3 | 8,887 | 9,049 |
| e) Goodwill | 3 | - | 1,735 |
| Financial assets | | | |
| a) Loans | 4 | 76,432 | 44,484 |
| b) Restricted bank deposits | 10 | 46 | 511 |
| c) Other financial assets | 5 | 373 | 795 |
| Deferred tax assets | 21 | 775 | - |
| Other non-current assets | 6 | 7,101 | 6,391 |
| **Total non-current assets** | | **185,603** | **317,692** |
| **Current assets** | | | |
| Inventories | 7 | 4 | 301 |
| Financial assets | | | |
| a) Investments | | 0 | 0 |
| b) Trade and other receivables | 8 | 55,224 | 79,352 |
| c) Cash & cash equivalents | 9 | 1,107 | 14,111 |
| d) Restricted bank deposits | 10 | 3,609 | 5,994 |
| e) Loans and advances | 11 | 3,589 | 1,827 |
| f) Other financial assets | 12 | 468 | 998 |
| Other current assets | 13 | 63 | 297 |
| **Total current assets** | | **64,064** | **102,880** |
| **Total assets** | | **249,667** | **420,572** |
| **Equity and Liabilities** | | | |
| **Equity** | | | |
| Equity share capital | 14 | 9,563 | 9,551 |
| Other equity | 15 | 115,051 | 247,660 |
| **Equity attributable to owners** | | **124,614** | **257,211** |
| Non-controlling Interests | 16 | 1,428 | 1,028 |
| **Total equity** | | **126,042** | **258,239** |
| **Liabilities** | | | |
| **Non-current liabilities** | | | |
| Financial liabilities | | | |
| a) Borrowings | 17 | 67 | 8,724 |
| b) Trade payables | 18 | 118 | 108 |
| c) Other financial liabilities | 19 | 47 | 25 |
| Employee benefit obligations | 20 | 350 | 435 |
| Deferred tax liabilities | 21 | - | 17,958 |
| Other non-current liabilities | 22 | 4,679 | 10,050 |
| **Total non-current liabilities** | | **5,261** | **37,300** |
| **Current liabilities** | | | |
| Financial liabilities | | | |
| a) Borrowings | 23 | 46,177 | 45,268 |
| b) Acceptances | 24 | 1,400 | 5,796 |
| c) Trade payables | 25 | 35,363 | 31,070 |
| d) Other financial liabilities | 26 | 11,447 | 7,640 |
| Employee benefit obligations | 27 | 307 | 372 |
| Other current liabilities | 28 | 16,322 | 23,487 |
| Current tax liabilities | 29 | 7,348 | 11,400 |
| **Total current liabilities** | | **118,364** | **125,033** |
| **Total liabilities** | | **123,625** | **162,333** |
| **Total equity and liabilities** | | **249,667** | **420,572** |
| Significant Accounting Policies and Key Accounting Estimates and Judgements | 1 | | |
| Notes to the Financial Statements | 2-53 | | |

As per our report of even date
For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No.: 101720W/W100355

**For and on behalf of Board of Directors**

**Amit Chaturvedi**
Partner
Membership No: 103141

**Sunil Lulla**
Executive Vice Chairman &
Managing Director
(DIN: 00243191)

**Sunil Srivastav**
Non Executive Independent
Director
(DIN: 00237561)

**Pradeep Dwivedi**
Chief Executive Officer

**Farokh P. Gandhi**
Chief Financial Officer

**Vijay Thaker**
Vice President - Company Secretary
and Compliance Officer

Place: Mumbai
Date : 30 July 2020

Place: Mumbai
Date : 30 July 2020

# Consolidated Statement of Profit and Loss
### for the year ended 31 March 2020

Amount ₹ in lakhs

| Particulars | Notes | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|---|
| **Revenue** | | | |
| Revenue from operations | 30 | 81,360 | 103,130 |
| Other income | 31 | 12,026 | 10,839 |
| **Total revenue** | | **93,386** | **113,969** |
| **Expenses** | | | |
| Purchases/operating expenses | 32 | 38,439 | 47,319 |
| Changes in inventories | 33 | 297 | (114) |
| Employee benefits expense | 34 | 3,787 | 5,079 |
| Finance costs | 35 | 7,056 | 7,748 |
| Depreciation and amortisation expense | 36 | 1,247 | 909 |
| Other expenses | 37 | 48,754 | 21,265 |
| **Total expenses** | | **99,580** | **82,206** |
| **Profit/ (loss) before tax and exceptional items** | | **(6,194)** | **31,763** |
| Exceptional items Gain/ (loss) | 38 | (155,352) | - |
| **Profit/ (loss) before tax** | | **(161,546)** | **31,763** |
| Tax expense | | | |
| Current tax | 21 | (2,897) | 11,905 |
| Deferred tax | 21 | (18,528) | (6,790) |
| | | (21,425) | 5,115 |
| **Profit/ (loss) for the year** | | **(140,121)** | **26,648** |
| **Other Comprehensive Income** | | | |
| **(i) Items that will not be reclassified to profit or loss** | | | |
| Remeasurement gain on definted benfit plan | | 140 | 61 |
| Income tax effect | | (35) | (21) |
| **(i) Items that will be reclassified to profit or loss** | | | |
| Exchange differences on translating foreign operations | | 7,706 | 5,094 |
| **Total Other Comprehensive Income for the year** | | **7,811** | **5,134** |
| **Total Comprehensive Income for the year** | | **(132,310)** | **31,782** |
| **Net Profit/ (loss) attributable to :** | | | |
| a) Owners of the Company | | (140,521) | 26,908 |
| b) Non Controlling Interest | | 400 | (260) |
| **Other Comprehensive Income attibutable to :** | | | |
| a) Owners of the Company | | 7,811 | 5,134 |
| b) Non Controlling Interest | | - | - |
| **Total Comprehensive Income/ (loss) attibutable to :** | | | |
| a) Owners of the Company | | (132,710) | 32,042 |
| b) Non Controlling Interest | | 400 | (260) |
| **Earnings per share of face value of ₹ 10 each** | | | |
| 1. Basic | 39 | (147.06) | 28.26 |
| 2. Diluted | 39 | (147.06) | 28.02 |
| Significant Accounting Policies and Key Accounting Estimates and Judgements | 1 | | |
| Notes to the Financial Statements | 2-53 | | |

As per our report of even date
For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No.: 101720W/W100355

**For and on behalf of Board of Directors**

**Amit Chaturvedi**
Partner
Membership No: 103141

**Sunil Lulla**
Executive Vice Chairman &
Managing Director
(DIN: 00243191)

**Sunil Srivastav**
Non Executive Independent
Director
(DIN: 00237561)

**Pradeep Dwivedi**
Chief Executive Officer

**Farokh P. Gandhi**
Chief Financial Officer

**Vijay Thaker**
Vice President - Company Secretary
and Compliance Officer

Place: Mumbai
Date : 30 July 2020

Place: Mumbai
Date : 30 July 2020

CONSOLIDATED FINANCIAL STATEMENT

# Consolidated Statement of Changes in Equity
## As at 31 March 2020

| A.    Equity share capital | Number | Amount ₹ in lakhs |
|---|---|---|
| **Balance as at 31 March 2018** | **94,971,877** | **9,497** |
| Add: Issued on exercise of employee share options | 536,263 | 54 |
| **Balance as at 31 March 2019** | **95,508,140** | **9,551** |
| Add: Issued on exercise of employee share options | 120,883 | 12 |
| **Balance as at 31 March 2020** | **95,629,023** | **9,563** |

**B.    Other equity**                                                                 Amount ₹ in lakhs

| Particulars | Securities Premium Reserve | General Reserves and Capital Reserve | Share Options Outstanding | Retained Earnings | Foreign Currency Translation Reserve | Other comprehensive income / (loss) for the year | Total Other Reserve | Non-Controlling Interest | Total Equity |
|---|---|---|---|---|---|---|---|---|---|
| **Balance as at 31 March 2018** | **40,498** | **564** | **1,577** | **167,433** | **4,654** | **77** | **214,803** | **1,288** | **216,091** |
| Profit for the year | - | - | - | 26,908 | - | | 26,908 | (260) | 26,648 |
| Other comprehensive income / (loss) for the year | - | - | - | - | 5,094 | 39 | 5,133 | - | 5,133 |
| **Total Comprehensive income/ (loss) for the year** | **-** | **-** | **-** | **26,908** | **5,094** | **39** | **32,041** | **(260)** | **31,781** |
| Transfer from/to share option outstanding account | 1,049 | - | (1,049) | - | - | - | - | - | - |
| Employee stock option compensation expense | - | - | 816 | - | - | - | 816 | - | 816 |
| **Balance as at 31 March 2019** | **41,547** | **564** | **1,344** | **194,341** | **9,748** | **116** | **247,660** | **1,028** | **248,688** |
| Profit for the year | - | - | - | (140,521) | - | | (140,521) | 400 | (140,121) |
| Other comprehensive income / (loss) for the year | - | - | - | - | 7,762 | 49 | 7,811 | - | 7,811 |
| **Total Comprehensive income/ (loss) for the year** | **-** | **-** | **-** | **(140,521)** | **7,762** | **49** | **(132,710)** | **400** | **(132,310)** |
| Transfer from/to share option outstanding account | 230 | - | (230) | - | - | - | - | - | - |
| Employee stock option compensation expense | - | - | 101 | - | - | - | 101 | - | 101 |
| **Balance as at 31 March 2020** | **41,777** | **564** | **1,215** | **53,820** | **17,510** | **165** | **115,051** | **1,428** | **116,479** |

As per our report of even date
For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No.: 101720W/W100355

**For and on behalf of Board of Directors**

**Amit Chaturvedi**
Partner
Membership No: 103141

**Sunil Lulla**
Executive Vice Chairman & Managing Director
(DIN: 00243191)

**Sunil Srivastav**
Non Executive Independent Director
(DIN: 00237561)

**Pradeep Dwivedi**
Chief Executive Officer

**Farokh P. Gandhi**
Chief Financial Officer

**Vijay Thaker**
Vice President - Company Secretary and Compliance Officer

Place: Mumbai
Date : 30 July 2020

Place: Mumbai
Date : 30 July 2020

# Consolidated Cash Flow Statement
**For the year ended 31 March 2020**

Amount ₹ in lakhs

| Particulars | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| **Cash flow from operating activities** | | |
| **Profit before tax** | **(161,546)** | **31,763** |
| Non-cash adjustments to reconcile Profit before tax to net cash flows | | |
| Depreciation and Other Amortization | 1,247 | 909 |
| Amortization on film rights | 24,152 | 29,643 |
| Trade receivables written off | 46,494 | 1,917 |
| Sundry balances written back | (892) | (74) |
| Content advances written off | - | 2,226 |
| Advances and deposits written off | 2 | 2,006 |
| Provision for doubtful trade receivables | 184 | 8,023 |
| Provision for Content advances written back | (1,687) | - |
| Impact of expected credit loss | (2,527) | (6,645) |
| Impairment of content advance (exceptional item) | 129,015 | - |
| Impairment of film rights (exceptional item) | 20,815 | - |
| Impairment of other advances (exceptional item) | 762 | - |
| Impairement of Content advance write off (exceptional item) | 3,025 | - |
| Impairment of Goodwill (exceptional item) | 1,735 | |
| Finance costs | 7,346 | 8,082 |
| Finance income | (4,387) | (642) |
| (Gain) on sale of tangible assets (net) | - | 2 |
| Impairement loss on Investment in techzone | - | (452) |
| Expense on employee stock option scheme | 101 | 799 |
| Unrealised foreign exchange gain | 1,138 | (72) |
| **Operating profit before working capital changes** | **64,977** | **77,485** |
| Movements in working capital: | | |
| Increase/(Decrease) in trade payables | 4,449 | (3,607) |
| Decrease in other financial liabilities | (13) | (39) |
| Increase in Employee benefit obligations | (150) | 161 |
| Decrease in Other liabilities | (12,562) | 14,314 |
| Decrease in inventories | 298 | 9 |
| (Increase)/Decrease in trade receivables | (23,021) | (42,746) |
| Decrease in short-term loans | (1,762) | 1,472 |
| (Increase)/Decrease in other current assets | 184 | 199 |
| Increase in long-term loans | (25,347) | (1,691) |
| (Increase) /Decrease in other financial assets | 1,697 | (236) |
| **Cash generated from operations** | **8,750** | **45,321** |
| Taxes paid (net) | (3,667) | (5,124) |
| **Net cash generated from operating activities (A)** | **5,083** | **40,197** |

# Consolidated Cash Flow Statement
**For the year ended 31 March 2020**

Amount ₹ in lakhs

| Particulars | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| **Cash flow from investing activities** | | |
| Purchase of tangible and other intangible assets | (78) | (436) |
| Purchase of intangible film rights and related content | (7,637) | (22,902) |
| Proceeds from fixed deposits with banks | 16,315 | (1,870) |
| Proceeds from sale of fixed assets | 1 | 1 |
| Interest received | 999 | 941 |
| **Net cash used in investing activities (B)** | **9,600** | **(24,266)** |
| **Cash flows from financing activities** | | |
| Proceeds from issue of equity shares | 12 | 71 |
| Repayment of long-term borrowings | (5,258) | (8,565) |
| Proceeds from long-term borrowings | - | 304 |
| Proceeds/(repayment) from short-term borrowings | (3,459) | (1,688) |
| Finance costs | (6,705) | (7,791) |
| **Net cash used in financing activities (C)** | **(15,410)** | **(17,669)** |
| **Net decrease in cash and cash equivalents (A + B + C)** | **(727)** | **(1,738)** |
| **Cash and cash equivalents at the beginning of the year** | **646** | **1,486** |
| Effect of exhange rate on consolidation of foreign subsidiaries | 1,188 | 898 |
| Cash and cash equivalents at the end of the year | 1,107 | 646 |

**Change in liability arising from financing activities :-**

| | Non current borrowings | Current borrowing | Acceptances | Total |
|---|---:|---:|---:|---:|
| **As on 1 April 2019** | **13,924** | **45,268** | **5,796** | **64,988** |
| Cash Flows | (5,258) | 937 | (4,396) | (8,717) |
| Adjustments for processing fees | 40 | (28) | - | 12 |
| **As on 31 March 2020** | **8,706** | **46,177** | **1,400** | **56,283** |
| **As on 1 April 2018** | **22,169** | **46,808** | **5,796** | **74,773** |
| Cash Flows | (8,261) | (1,688) | - | (9,949) |
| Adjustments for processing fees | 16 | 148 | - | 164 |
| **As on 31 March 2019** | **13,924** | **45,268** | **5,796** | **64,988** |

Notes 1 to 53 form an integral part of these consolidated financial statements

| | |
|---|---|
| As per our report of even date<br>For **Chaturvedi & Shah LLP**<br>Chartered Accountants<br>Firm Registration No.: 101720W/W100355 | **For and on behalf of Board of Directors** |

| | | | |
|---|---|---|---|
| **Amit Chaturvedi**<br>Partner<br>Membership No: 103141 | **Sunil Lulla**<br>Executive Vice Chairman &<br>Managing Director<br>(DIN: 00243191) | **Sunil Srivastav**<br>Non Executive Independent<br>Director<br>(DIN: 00237561) | **Pradeep Dwivedi**<br>Chief Executive Officer |
| | | **Farokh P. Gandhi**<br>Chief Financial Officer | **Vijay Thaker**<br>Vice President - Company Secretary<br>and Compliance Officer |
| Place: Mumbai<br>Date : 30 July 2020 | | Place: Mumbai<br>Date : 30 July 2020 | |

# Summary of Significant Accounting Policies

## 1. Corporate Information and Significant accounting policies

### Corporate Information

Eros International Media Limited (the 'Company' or 'parent') was incorporated in India, under the Companies Act, 1956. The Company and its subsidiaries including step down subsidiaries (hereinafter collectively referred to as the "Group") is a global player within the Indian media and entertainment industry and is primarily engaged in the business of film production, exploitation and distribution. It operates on a vertically integrated studio model controlling content as well as distribution and exploitation across multiple formats globally, including cinema, digital, home entertainment and television syndication. Its shares are listed on leading stock exchanges in India (BSE Scrip Code: 533261; NSE Scrip Code: EROSMEDIA).

The Group is engaged in the business of sourcing Indian film content either through acquisition, co-production or production of such films, and subsequently exploiting and distributing such films in India through music release, theatrical distribution, DVD and VCD release, television licensing and new media distribution avenues such as cable or DTH licensing; and trading and exporting overseas rights to its parent Eros Worldwide FZ LLC.

### Statement of compliance

These consolidated financial statements have been prepared in accordance with the Indian Accounting Standards (referred to as "Ind AS") as prescribed under section 133 of the Companies Act, 2013 read with Companies (Indian Accounting Standards) Rules as amended from time to time.

### Basis of preparation

The consolidated financial statements have been prepared on accrual basis of accounting using historical cost basis, except for the following:

- Employee Stock Option Compensation measured at fair value (refer accounting policy on ESOP).

- Accounting of Business Combinations at fair value (refer accounting policy on Business Combinations).

- Forward Contacts measured at fair value.

All assets and liabilities have been classified as current or non-current as per the Group's normal operating cycle and other criteria set out in the Schedule III to the Act. The Group considers 12 months to be its normal operating cycle.

All values are rounded to the nearest rupees in Lacs, except where otherwise indicated. Amount in zero (0) represents amount below One (1) lakh.

### Principles of consolidation

The Group consolidates results of the Company and entities controlled by the Company i.e. its subsidiary undertakings. Control exists when the Company has existing rights that give the Company the current ability to direct the activities which affect the entity's returns; the Company is exposed to or has rights to a return which may vary depending on the entity's performance; and the Company has the ability to use its powers to affect its own returns from its involvement with the entity.

Subsidiaries are consolidated by combining like items of assets, liabilities, equity, income, expenses and cash flows of the parent with those of its subsidiaries. The intra-company balances and transactions including unrealized gain / loss from such transactions are eliminated upon consolidation. These consolidated financial statements are prepared by applying uniform accounting policies in use. Non-controlling interests ("NCI") which represent part of the net profit or loss and net assets of subsidiaries that are not, directly or indirectly, owned or controlled by the Group, are excluded.

Changes in the Group's equity interest in a subsidiary that do not result in a loss of control are accounted for as equity transactions.

Business combinations are accounted for under the acquisition method. The acquisition method involves the recognition at fair value of all identifiable assets and liabilities, including contingent liabilities of the subsidiaries, at the acquisition date, regardless of whether or not they were recorded in the financial statements of the subsidiary prior to acquisition. On initial recognition, the assets and liabilities of the subsidiaries are included in the consolidated balance sheet at their fair values, which are also used as the bases for subsequent measurement in accordance with the Group accounting policies. Transaction costs that the Group incurs in connection with a business combination such as finder's fees, legal fees, due diligence fees, and other professional and consulting fees are expensed as incurred. Goodwill is stated after separating out identifiable intangible assets. Goodwill represents the excess of acquisition cost over the fair value of the Group's share of the identifiable net assets of the acquired subsidiary at the date of acquisition.

Changes in controlling interest in a subsidiary that do not result in gaining or losing control are not business combinations as defined by Ind AS 103 'Business Combinations'. The Group adopts the "equity transaction method" which regards the transaction as a realignment of the interests of the different equity holders in the Group. Under the equity transaction method an increase or decrease in the Group's ownership interest is accounted for as follows:

- the non-controlling component of equity is adjusted to reflect the non-controlling interest revised share of the net carrying value of the subsidiaries net assets;

- the difference between the consideration received or paid and the adjustment to non-controlling interests is debited or credited to equity;

- no adjustment is made to the carrying amount of goodwill or the subsidiaries' net assets as reported in the consolidated financial statements; and

- no gain or loss is reported in the Consolidated Statement of profit and loss.

### Associates

Associates are all entities over which the Group has significant influence but not control or joint control. Assessment of whether the Group has significant influence or not is made based on Ind AS 28 – Associates and joint ventures, which requires duly considering potential voting rights if any. Investments in associates are accounted for using the equity method, after initially recognised at cost.

### Joint arrangements

Investments in joint arrangements are classified as either joint operations or joint ventures. The classification depends on the contractual rights and obligations of each investor, rather than the legal structure of the joint arrangement. The Group has investments in joint ventures which are accounted using the equity method based on requirements of Ind AS 111 – Joint arrangements, after initially being recognised at cost in the consolidated balance sheet.

**CONSOLIDATED FINANCIAL STATEMENT**

### Equity method

Under the equity method of accounting, the investments are initially recognised at cost and adjusted thereafter to recognise the Group's share of the post-acquisition profits or losses of the investee in profit and loss, and the Group's share of other comprehensive income of the investee in other comprehensive income.

Any excess/short of the amount of investments in associate or joint venture over the Group's portion of in net assets of associate or joint venture, at the date of investments is considered as goodwill/capital reserve.

Dividends received or receivable from associates and joint ventures are recognised as a reduction in the carrying amount of the investment. When the Group's share of losses in an equity-accounted investment equals or exceeds its interest in the entity, including any other unsecured long-term receivables, the Group does not recognise further losses, unless it has incurred obligations or made payments on behalf of the other entity.

Unrealised gains on transactions between the Group and its associates and joint ventures are eliminated to the extent of the Group's interest in these entities. Unrealised losses are also eliminated unless the transaction provides evidence of an impairment of the asset transferred.

Accounting policies of joint ventures and associates are similar to the Group's accounting policies, therefore, no adjustment is required for the purposes of preparation of these consolidated financial statements. The financial statements of joint ventures and associates are prepared up to the same reporting date as that of the Group i.e. 31st March 2020. The carrying amount of equity accounted investments are tested for impairment in accordance with the policy described in accounting policies below.

### Significant accounting policies

**a. Revenue recognition**

Revenue from contracts are recognized only when the contract has been approved by the parties to the contract and creates enforceable rights and obligations.

Revenue is recognized upon transfer of control of promised products or services to customers in an amount that reflects the consideration which the Group expects to receive in exchange for those products or services. Revenue do not include the taxes collected from the customer on behalf of taxing authorities. To ensure collectability of such consideration and financial stability of the counterparty, the Group performs certain standard Know Your Client (KYC) procedures based on their locations and evaluates trend of past collection.

Revenue is measured based on the transaction price, which is the consideration, adjusted for any discounts and incentives, if any, as specified in the contract with the customer. . In case of variable consideration, , the Group estimates, at the contract inception, the amount to be received using the "most likely amount" approach, or the "expected value" approach, as appropriate. This amount is then included in the Group's estimate of the transaction price only if it is highly probable that a significant reversal of revenue will not occur once any uncertainty associated with the variable consideration  is resolved. In making this assessment the Group consider its historical performance on similar contracts.

The Group recognises contract liabilities for consideration received in respect of unsatisfied performance obligations and reports these amounts as other current liabilities in the statement of financial position (see Note 29). Similarly, if the Group satisfies a performance obligation before it receives the consideration, the Group recognises either a contract asset or a receivable in its balance sheet , depending on whether something other than the passage of time is required before the consideration is due.

Consideration is generally due upon satisfaction of performance obligations and a receivable is recognised when the it becomes unconditional. Generally, the credit period varies between 0-180 days from the shipment or delivery of goods or services as the case may be.

The transaction price, being the amount to which the Group expects to be entitled and has rights to under the contract is allocated to the identified performance obligations. The transaction price will also include an estimate of any variable consideration where the Group's performance may result in additional revenues based on the achievement of agreed targets.

The Group does not expect to have any contracts where the period between the transfer of the promised goods or services to the customer and payment by the customer exceeds one year. As a consequence, the Group does not adjust any of the transaction prices for the time value of money.

The Group disaggregates revenue from contracts with customers by geography and nature of services.

The following additional criteria apply in respect of various revenue streams within filmed entertainment:

Theatrical — Contracted minimum guarantees are recognized on the theatrical release date. The Group's share of box office receipts in excess of the minimum guarantee is recognized at the point they are notified to the Group.

Television — In arrangements for television syndication, license fees received in advance which do not meet the revenue recognition criteria, including commencement of the availability for broadcast under the terms of the related licensing agreement, are included in contract liability until the criteria for recognition is met. Revenues from television licensing arrangements are recognized when the feature film or television program is delivered and the period for the exploitation of rights has begun.

Other — DVD, CD and video distribution revenue is recognized on the date the product is delivered or is licensed in line with the above criteria. Provision is made for physical returns where applicable. Digital and ancillary media revenues are recognized at the earlier of when the content is accessed or declared. Visual effects, production and other fees for services rendered by the Group and overhead recharges are recognized in the period in which they are earned and in certain cases, the stage of production is used to determine the proportion recognized in the period.

### Other income

Dividend income is recognised when the Group's right to receive the payment is established, which is generally when shareholders approve the dividend.

Interest income is recognized on a time proportion basis taking into account the amount outstanding and the effective interest rate applicable.

**b. Property, plant and equipment and depreciation**

Property, Plant and Equipment is stated at cost, net of accumulated depreciation and accumulated impairment losses, if any.

The cost of Property, Plant and Equipment comprises of its purchase price or construction cost, any costs directly attributable to bringing the asset into the location and condition necessary for it to be capable of operating in the manner intended by management, the initial estimate of any decommissioning obligation, if any, and borrowing costs for assets that necessarily take a substantial period of time

to get ready for their intended use. Subsequent costs are included in the asset's carrying amount or recognised as a separate asset, as appropriate, only when it is probable that future economic benefits associated with the item will flow to the Group and the cost of the item can be measured reliably.

Capital Work-in-progress (CWIP) includes expenditure that is directly attributable to the acquisition/construction of assets, which are yet to be commissioned.

Depreciation is provided under written down value method at the rates and in the manner prescribed under Schedule II to the Companies Act, 2013.The residual values, useful lives and methods of depreciation of property, plant and equipment are reviewed at each financial year end and adjusted prospectively, if appropriate. Gains or losses arising from de-recognition of a property, plant and equipment are measured as the difference between the net disposal proceeds and the carrying amount of the asset and are recognized in the Statement of Profit and Loss when the asset is de-recognized.

**c.   Intangible assets**

Intangible assets acquired by the Group are stated at cost less accumulated amortization less impairment loss, if any, (film production cost and content advances are transferred to film and content rights at the point at which content is first exploited).

Investments in films and associated rights, including acquired rights and distribution advances in respect of completed films, are stated at cost less amortization less provision for impairment. Costs include production costs, overhead and capitalized interest costs net of any amounts received from third party investors. A charge is made to write down the cost of completed rights over the estimated useful lives, writing off more in year one which recognizes initial income flows and then the balance over a period of up to nine years, except where the asset is not yet available for exploitation. The average life of the assets is the lesser of 10 years or the remaining life of the content rights. The amortization charge is recognized in the statement of profit and loss within cost of sales. The determination of useful life is based upon Management's judgment and includes assumptions on the timing and future estimated revenues to be generated by these assets, which are summarized in Note 3.

Intangible assets comprising film scripts and related costs are stated at cost less amortization less provision for impairment. The script costs are amortized over a period of 3 years on a straight-line basis and the amortization charge is recognized in the statement of profit and loss  within cost of sales. The determination of useful life is based upon Management's estimate of the period over which the Group explores the possibility of making films using the script.

Other intangible assets, which comprise internally generated and acquired software used within the Entity's digital, home entertainment and internal accounting activities, are stated at cost less amortization less provision for impairment. A charge is made to write down the cost of software over the estimated useful lives except where the software is not yet available for use. The average life of the software is the lesser of 3 years or the remaining life of the software. The amortization charge is recognized in the statement of profit and loss.

Goodwill represents excess of the consideration transferred in a business combination over the fair value of the Group's share of the identifiable net assets acquired. Goodwill is carried at cost less accumulated impairment losses. Gain on bargain purchase is recognized immediately after acquisition in the consolidated Statement of profit and loss.

**d.   Impairment of non-financial assets**

At each reporting date, for the purposes of assessing impairment, assets are grouped at the lowest levels for which there are separately identifiable cash flows (cash generating units). As a result, some assets are tested individually for impairment and some are tested at the cash generating unit level.  All individual assets or cash generating units are tested for impairment whenever events or changes in circumstances both internal and external indicate that the carrying amount may not be recoverable.

An impairment loss is recognised wherever the carrying amount of an asset exceeds its recoverable amount which represents the greater of the net selling price of assets and their 'value in use'.

In assessing value in use, the estimated future cash flows are discounted to their present value using a pre-tax discount rate that reflects current market assessments of the time value of money and the risks specific to the asset. In determining fair value less costs of disposal, recent market transactions are taken into account. If no such transactions can be identified, an appropriate valuation model is used. These calculations are corroborated by valuation multiples, quoted share prices for publicly traded companies or other available fair value indicators.

Film and content rights are stated at the lower of unamortized cost and estimated recoverable amounts. In accordance with Ind AS 36 Impairment of Assets, film content costs are assessed for indication of impairment on a library basis as the nature of the Group's business, the contracts it has in place and the markets it operates in do not yet make an ongoing individual film evaluation feasible with reasonable certainty. Impairment losses on content advances are recognized when film production does not seem viable and refund of the advance is not probable. Irrespective of existence of indicators of impairment, group makes provision on Content Advances in accordance with the provisioning policy, such that, unadjusted advances are provided over a period of 3 to 5 years.

All assets are subsequently reassessed for indications that an impairment loss previously recognized may no longer exist.

**e.   Borrowing costs**

The Group is capitalising borrowing costs that are directly attributable to the acquisition or construction of qualifying assets. Qualifying assets are assets that necessarily take a substantial period of time to get ready for their intended use or sale.

Borrowings are recognised initially at fair value, net of transaction costs incurred. Borrowings are subsequently stated at amortized cost with any difference between the proceeds (net of transaction costs) and the redemption value recognised in the income statement within Finance costs over the period of the borrowings using the effective interest method. Finance costs in respect of film productions and other assets which take a substantial period of time to get ready for use or for exploitation are capitalized as part of the assets. All other borrowing costs are recognized as expense in the period in which they are incurred and charged to the Statement of Profit and Loss.

Borrowings are classified as current liabilities unless the Group has an unconditional right to defer settlement of the liability for at least 12 months after the balance sheet date.

**f.   Impairment of financial assets**

In accordance with Ind AS 109, the Group apply expected credit loss (ECL) model for measurement and recognition of impairment loss on risk exposure arising from financial assets

**EROS INTERNATIONAL MEDIA LIMITED   111**

CONSOLIDATED FINANCIAL STATEMENT

like debt instruments measured at amortised cost e.g., trade receivables and deposits.

The Group follow 'simplified approach' for recognition of impairment loss allowance on Trade receivables or contract revenue receivables. The application of simplified approach does not require the Group to track changes in credit risk. Rather, it recognises impairment loss allowance based on lifetime ECLs at each reporting date, right from its initial recognition.

For recognition of impairment loss on other financial assets and risk exposure, the Group determines that whether there has been a significant increase in the credit risk since initial recognition. If credit risk has not increased significantly, 12-month ECL is used to provide for impairment loss. However, if credit risk has increased significantly, lifetime ECL is used. If, in a subsequent period, credit quality of the instrument improves such that there is no longer a significant increase in credit risk since initial recognition, then the entity reverts to recognising impairment loss allowance based on 12-month ECL.

Lifetime ECL are the expected credit losses resulting from all possible default events over the expected life of a financial instrument. The 12-month ECL is a portion of the lifetime ECL which results from default events that are possible within 12 months after the reporting date.

ECL is the difference between all contractual cash flows that are due to the Group in accordance with the contract and all the cash flows that the entity expects to receive (i.e., all cash shortfalls), discounted at the original EIR. When estimating the cash flows, an entity is required to consider all contractual terms of the financial instrument (including prepayment, extension, call and similar options) over the expected life of the financial instrument. However, in rare cases when the expected life of the financial instrument cannot be estimated reliably, then the entity is required to use the remaining contractual term of the financial instrument.

ECL impairment loss allowance (or reversal) recognized during the period is recognized as income/ expense in the statement of profit and loss (P&L). This amount is reflected under the head 'Other income or other expenses' in the P&L.

For assessing increase in credit risk and impairment loss, the Group combines financial instruments on the basis of shared credit risk characteristics with the objective of facilitating an analysis that is designed to enable significant increases in credit risk to be identified on a timely basis.

g.  **Inventories**

Inventories primarily comprise of music CDs and DVDs, and are valued at the lower of cost and net realizable value. Cost in respect of goods for resale is defined as all costs of purchase, costs of conversion and other costs incurred in bringing the inventories to their present location and condition. Cost in respect of raw materials is purchase price.

Purchase price is assigned using a weighted average basis. Net realisable value is the estimated selling price in the ordinary course of business less the estimated costs of completion and the estimated costs necessary to make the sale.

h.  **Provisions, Contingent Liabilities and Contingent Assets**

Provisions are recognized when the Group has a present legal or constructive obligation as a result of a past event, it is more likely than not that an outflow of resources will be required to settle the obligations and can be reliably measured. Provisions are measured at Management's best

estimate of the expenditure required to settle the obligations at the balance sheet date. If the effect of the time value of money is material, provisions are discounted using a current pre-tax rate that reflects, when appropriate, the risks specific to the liability. When discounting is used, the increase in the provision due to the passage of time is recognised as a finance cost.

Contingent liabilities are not recognized in the financial statements but are disclosed by way of notes to accounts unless the possibility of an outflow of economic resources is considered remote.

Contingent assets are not recognized in financial statements. However, the same is disclosed, where an inflow of economic benefit is virtual.

i.  **Employee benefits**

### Short term employee benefits obligations

Short-term employee benefits are recognized as an expense in the Statement of Profit and Loss for the year in which related services are rendered.

**Post-employment benefits and other long term employee benefits**

### Defined contribution plan

Provident fund & National Pension scheme: The Group's contributions paid or payable during the year to the provident fund, employee's state insurance corporation and National pension scheme are recognized in the Statement of Profit and Loss. This fund is administered by the respective Government authorities, and the Group has no further obligation beyond making its contribution, which is expensed in the year to which it pertains.

### Defined benefit plan

Gratuity: The Group's liability towards gratuity is determined using the projected unit credit method which considers each period of service as giving rise to an additional unit of benefit entitlement and measures each unit separately to build up the final obligation. The cost for past services is recognized on a straight-line basis over the average period until the amended benefits become vested. Re-measurement gains and losses are recognized immediately in the Other Comprehensive Income as income or expense and are not reclassified to profit or loss in subsequent periods. Obligation is measured at the present value of estimated future cash flows using a discounted rate that is determined by reference to market yields at the Balance Sheet date on Government bonds where the currency and terms of the Government bonds are consistent with the currency and estimated terms of the defined benefit obligation.

Compensated absences: Accumulated compensated absences are expected to be availed or encashed within 12 months from the end of the year and are treated as short-term employee benefits. The obligation towards the same is measured at the expected cost of accumulating compensated absences as the additional amount expected to be paid as a result of the unused entitlement as at the year end.

### Employee stock option plan

In accordance with Ind AS 102 Share Based Payments, the fair value of shares or options granted is recognized as personnel costs with a corresponding increase in equity. The fair value is measured at the grant date and spread over the period during which the recipient becomes unconditionally entitled to payment unless forfeited or surrendered.

The fair value of share options granted is measured using the Black Scholes model, each taking into account the terms and conditions upon which the grants are made. At each Balance Sheet date, the Group revises its estimate of the number of equity instruments expected to vest as a result of non-market based vesting conditions. The amount recognized as an expense is adjusted to reflect the revised estimate of the number of equity instruments that are expected to become exercisable, with a corresponding adjustment to equity. The Group's share option plan does not feature any cash settlement option.

Upon exercise of share options, the proceeds received net of any directly attributable transaction costs up to the nominal value of the shares are allocated to equity share capital with any excess being recorded as securities premium.

### j.     Leases

The Group adopted Ind AS 116 'Leases' on April 1, 2019, utilizing the modified retrospective approach, and therefore, results for reporting periods beginning after April 1, 2019 are presented under the new lease standard, while prior periods have not been adjusted.

#### The Group as a lessee:

The Group assesses, whether the contract is, or contains, a lease at the inception of the contract or upon the modification of a contract. A contract is, or contains, a lease if the contract conveys the right to control the use of an identified asset for a period of time in exchange for consideration.

The Group at the commencement of the lease contract recognizes a Right-of-Use (RoU) asset at cost and corresponding lease liability, except for leases with a term of twelve months or less (short-term leases) and leases for which the underlying asset is of low value (low-value leases). For these short-term and low-value leases, the Group recognizes the lease payments as an operating expense on a straight-line basis over the term of the lease.

The cost of the right-of-use assets comprises the amount of the initial measurement of the lease liability, adjusted for any lease payments made at or prior to the commencement date of the lease, any initial direct costs incurred by the Group, any lease incentives received and expected costs for obligations to dismantle and remove right-of-use assets when they are no longer used.

Subsequently, the right-of-use assets is measured at cost less any accumulated depreciation and accumulated impairment losses, if any. The right-of-use assets are depreciated on a straight-line basis from the commencement date of the lease over the shorter of the end of the lease term or useful life of the right-of-use asset.

Right-of-use assets are assessed for impairment whenever there is an indication that the balance sheet carrying amount may not be recoverable using cash flow projections for the useful life.

For lease liabilities at commencement date, the Group measures the lease liability at the present value of the future lease payments as from the commencement date of the lease to end of the lease term. The lease payments are discounted using the interest rate implicit in the lease or, if not readily determinable, the Group 's incremental borrowing rate for the asset subject to the lease in the respective markets.

Subsequently, the Group measures the lease liability by adjusting carrying amount to reflect interest on the lease liability and lease payments made.

The Group remeasures the lease liability (and makes a corresponding adjustment to the related right-of-use asset)

whenever there is a change to the lease terms or expected payments under the lease, or a modification that is not accounted for as a separate lease.

The portion of the lease payments attributable to the repayment of lease liabilities is recognized in cash flows used in financing activities. Also, the portion attributable to the payment of interest is included in cash flows from financing activities. Further, Short-term lease payments, payments for leases for which the underlying asset is of low-value and variable lease payments not included in the measurement of the lease liability is also included in cash flows from operating activities.

#### The Group as a lessor:

In arrangements where the Group is the lessor, it determines at lease inception whether the lease is a finance lease or an operating lease. Leases that transfer substantially all of the risk and rewards incidental to ownership of the underlying asset to the counterparty (the lessee) are accounted for as finance leases. Leases that do not transfer substantially all of the risks and rewards of ownership are accounted for as operating leases. Lease payments received under operating leases are recognized as income in the statement of profit and loss on a straight-line basis over the lease term or another systematic basis. The Group apply another systematic basis if that basis is more representative of the pattern in which benefit from the use of the underlying asset is diminished.

### k.     Foreign currency transactions

Transactions in foreign currencies are translated at the rates of exchange prevailing on the dates of the transactions. Monetary assets and liabilities in foreign currencies are translated at the prevailing rates of exchange at the consolidated balance sheet date. Non-monetary items that are measured at historical cost in a foreign currency are translated at the exchange rate at the date of the transaction. Non-monetary items that are measured at fair value in a foreign currency are translated using the exchange rates at the date when the fair value was determined.

Any exchange differences arising on the settlement of monetary items or on translating monetary items at rates different from those at which they were initially recorded are recognized in the consolidated Statement of profit and loss in the period in which they arise. Non-monetary items carried at fair value that are denominated in foreign currencies are translated at rates prevailing at the date when the fair value was determined. Non-monetary items that are measured in terms of historical cost in a foreign currency are not retranslated.

The assets and liabilities in the financial statements of foreign subsidiaries are translated at the prevailing rate of exchange at the consolidated balance sheet date. Income and expenses are translated at the annual average exchange rate. The exchange differences arising from the retranslation of the foreign operations are recognized in other comprehensive income and taken to the "currency translation reserve" in equity.

On disposal of a foreign operation the cumulative translation differences (including, if applicable, gains and losses on related hedges) are transferred to the Consolidated Statement of profit and loss as part of the gain or loss on disposal.

Items included in the Consolidated financial statements of each of the Group's entities are measured using the currency of the primary economic environment in which the entity operates ('the functional currency'). The Consolidated financial statements are presented in Indian Rupee (INR) which is Group's functional and presentation currency.

CONSOLIDATED FINANCIAL STATEMENT

I.  **Financial instrument**

### Non-derivative financial instruments

Financial assets and financial liabilities are recognized when the Group becomes party to the contractual provisions of the instrument.

Financial assets and liabilities are initially measured at fair value. Transaction costs that are directly attributable to the acquisition or issue of financial assets or liabilities (other than financial assets and liabilities at fair value through profit and loss) are added to or deducted from the fair value of the financial assets or financial liabilities, as appropriate, on initial recognition. Transaction costs directly attributable to the acquisition of financial assets or financial liabilities at fair value through profit and loss are recognized immediately in profit or loss. Financial assets and financial liabilities are offset against each other and the net amount reported in the balance sheet if, and only if, there is a currently enforceable legal right to offset the recognized amounts and there is an intention to settle on a net basis, or to realize the assets and settle the liabilities simultaneously.

### Financial Assets

Financial assets are divided into the following categories:

*   financial assets carried at amortised cost

*   financial assets at fair value through other comprehensive income

*   financial assets at fair value through profit and loss

Financial assets are assigned to the different categories by Management on initial recognition, depending on the nature and purpose of the financial assets. The designation of financial assets is re-evaluated at every reporting date at which a choice of classification or accounting treatment is available. Financial Assets like Investments in Subsidiaries are measured at Cost as allowed by Ind-AS 27 – Separate Financial Statements and hence are not fair valued.

### Financial assets carried at amortised cost

The Financial asset is measures at amortised cost if both the following conditions are met:

1.  The asset is held within a business model whose objective is to hold the assets for collecting contractual cash flows; and

2.  Contractual terms of the financial asset give rise on specified dates to cash flows that are solely payments of principal and interest on the principal amount outstanding.

After initial measurement, such financial assets are subsequently measured at amortised cost using the effective interest rate (the "EIR") method. The effective interest rate is the rate that exactly discounts future cash receipts or payments through the expected life of the financial instrument, or where appropriate, a shorter period.

Amortised cost is calculated by taking into account any discount or premium on acquisition and fees or costs that are an integral part of the EIR. The EIR amortisation is included in finance income/other income in the Statement of Profit & Loss.

In accordance with Ind AS 109: Financial Instruments, the Group recognizes impairment loss allowance on trade receivables and content advances based on historically observed default rates. Impairment loss allowance recognized during the year is charged to Statement of Profit and Loss.

### Financial assets at fair value through other comprehensive income

Financial assets at fair value through other comprehensive income are non-derivative financial assets held within a business model whose objective is achieved by both collecting contractual cash flows and selling financial assets and the contractual terms of the financial asset give rise on specified dates to cash flows that are solely payments of principal and interest on the principal amount outstanding.

### Financial assets at fair value through profit or loss

A financial asset which is not classified in any of the above categories are subsequently fair valued through profit or loss. It includes non-derivative financial assets that are either designated as such or do not qualify for inclusion in any of the other categories of financial assets. Gains and losses arising from investments classified under this category is recognized in the statement of profit and loss when they are sold or when the investment is impaired.

In the case of impairment, any loss previously recognized in other comprehensive income is transferred to the statement of profit and loss. Impairment losses recognized in the statement of profit and loss on equity instruments are not reversed through the statement of profit and loss. Impairment losses recognized previously on debt securities are reversed through the statement of profit and loss when the increase can be related objectively to an event occurring after the impairment loss was recognized in the statement of profit and loss.

When the Group considers that fair value of financial assets can be reliably measured, the fair values of financial instruments that are not traded in an active market are determined by using valuation techniques. The Group applies its judgment to select a variety of methods and make assumptions that are mainly based on market conditions existing at each balance sheet date. Equity instruments measured at fair value through profit or loss that do not have a quoted price in an active market and whose fair value cannot be reliably measured are measured at cost less impairment at the end of each reporting period.

### An assessment for impairment is undertaken at least at each balance sheet date.

A financial asset is derecognized only where the contractual rights to the cash flows from the asset expire or the financial asset is transferred and that transfer qualifies for derecognition. A financial asset is transferred if the contractual rights to receive the cash flows of the asset have been transferred or the Group retains the contractual rights to receive the cash flows of the asset but assumes a contractual obligation to pay the cash flows to one or more recipients. A financial asset that is transferred qualifies for derecognition if the Group transfers substantially all the risks and rewards of ownership of the asset, or if the Group neither retains nor transfers substantially all the risks and rewards of ownership but does transfer control of that asset.

### Financial liabilities

All financial liabilities are recognised initially at its fair value, adjusted by directly attributable transaction costs.

### Financial liabilities at fair value through profit or loss

Financial liabilities are classified as at fair value through profit or loss when the financial liability is held for trading such as a derivative, except for a designated and effective hedging instrument, or if upon initial recognition it is thus designated to eliminate or significantly reduce measurement or recognition inconsistency or it forms part of a contract containing one or

more embedded derivatives and the contract is designated as fair value through profit or loss.

Financial liabilities at fair value through profit or loss are stated at fair value. Any gains or losses arising of held for trading financial liabilities are recognized in profit or loss. Such gains or losses incorporate any interest paid and are included in the "other gains and losses" line item.

### Financial liabilities at amortised cost

After initial recognition, other financial liabilities (including borrowing and trade and other payables) are subsequently measured at amortized cost using the effective interest method.\

The effective interest method is a method of calculating the amortized cost of a financial liability and of allocating interest expense over the relevant period. The effective interest rate is the rate that exactly discounts estimated future cash payments (including all fees and points paid or received that form an integral part of the effective interest rate, transaction costs and other premiums or discounts) through the expected life of the financial liability, or (where appropriate) a shorter period, to the net carrying amount on initial recognition.

A financial liability is derecognized only when the obligation is extinguished, that is, when the obligation is discharged or cancelled or expires. Changes in liabilities' fair value that are reported in profit or loss are included in the statement of profit and loss within finance costs or finance income.

Financial assets and financial liabilities are offset and the net amount is reported in the balance sheet when, and only when, there is a legally enforceable right to offset the recognized amount and there is intention either to settle on net basis or to realize the assets and to settle the liabilities simultaneously.

### Equity Instrument

All equity investments in scope of Ind AS 109 are measured at fair value. Equity instruments which are held for trading are classified as at fair value through profit and loss with all changes recognised in the Statement of Profit and Loss .For all other equity instruments, the Group may make an irrevocable election to present in other comprehensive income, the subsequent changes in the fair value. The Group make such election on an instrument-by-instrument basis. If the Group decide to classify an equity instrument as at fair value through other comprehensive income, then all fair value changes on the instrument, excluding dividends and impairment loss, are recognised in other comprehensive income. There is no recycling of the amounts from the other comprehensive income to the Statement of Profit and Loss, even on sale of the investment. However, the Group may transfer the cumulative gain or loss within categories of equity.

**m.    Taxes**

Taxation on profit and loss comprises current tax and deferred tax. Tax is recognized in the statement of profit and loss except to the extent that it relates to items recognized directly in equity or other comprehensive income in which case tax impact is also recognized in equity or other comprehensive income.

Current tax is provided at amounts expected to be paid (or recovered) using the tax rates and laws that have been enacted or substantively enacted at the balance sheet date along with any adjustment relating to tax payable in previous years.

Deferred income tax is provided in full, using the liability method, on temporary differences arising between the tax

bases of assets and liabilities and their carrying amounts in the financial statements. Deferred income tax is provided at amounts expected to be paid (or recovered) using the tax rates and laws that have been enacted or substantively enacted at the balance sheet date and are expected to apply when the related deferred income tax asset is realized or the deferred income tax liability is settled.

Deferred tax is not recognized for all taxable temporary differences between the carrying amount and tax bases of investments in subsidiaries, branches and associates and interest in joint arrangements where it is probable that the differences will not reverse in the foreseeable future.

Deferred tax assets and deferred tax liabilities are offset when there is a legally enforceable right to set off assets against liabilities representing current tax and where the deferred tax assets and the deferred tax liabilities relate to taxes on income levied by the same governing taxation laws.

Minimum alternate tax (MAT) paid in a year is charged to the Statement of Profit and Loss as current tax. MAT credit entitlement is recognised as a deferred tax asset only when and to the extent there is convincing evidence that the Group will pay normal income tax during the specified period, which is the period for which MAT credit is allowed to be carried forward. Such asset is reviewed at each Balance Sheet date and the carrying amount of the MAT credit asset is written down to the extent there is no longer a convincing evidence to the effect that the Group will pay normal income tax during the specified period.

The carrying amount of deferred tax assets is reviewed at each reporting date and reduced to the extent that it is no longer probable that sufficient taxable profit will be available to utilize all or part of the deferred tax asset. Unrecognized deferred tax assets are re-assessed at each reporting date and are recognized to the extent that it has become probable that future taxable profits will available to utilize the deferred tax asset.

**n.    Earnings per share (EPS)**

Basic EPS is computed by dividing net profit after taxes for the year by weighted average number of equity shares outstanding during the financial year, adjusted for bonus share elements in equity shares issued during the year and excluding treasury shares, if any.

Diluted earnings per share adjusts the figures used in the determination of basic earnings per share to take into account the after income tax effect of interest and other financing costs associated with dilutive potential equity shares and the weighted average number of additional equity shares that would have been outstanding assuming the conversion of all dilutive potential equity shares.

**o.    Cash and cash equivalents**

Cash and cash equivalents include cash in hand, deposits held at call with banks, other short term highly liquid investments which are readily convertible into known amounts of cash and are subject to insignificant risk of changes in value. Bank overdrafts are shown within borrowings in current liabilities on the balance sheet.

Deposits held with banks as security for overdraft facilities are included in restricted deposits held with bank.

**p.    Segment reporting**

Ind-AS 108 Operating Segments ("Ind-AS 108") requires operating segments to be identified on the same basis as is used internally for the review of performance and allocation of resources by the Chief Operating Decision Maker. The revenues of films are earned over various formats; all such

CONSOLIDATED FINANCIAL STATEMENT

formats are functional activities of filmed entertainment and these activities take place on an integrated basis. The management team reviews the financial information on an integrated basis for the Group as a whole., The management team also monitors performance separately for individual films or for at least 12 months after the theatrical release.

**The Group has identified three geographic markets: India, UAE and Rest of the world.**

**q.    Statement of cash flows**

Cash flows are reported using the indirect method, whereby profit before tax is adjusted for the effects of transactions of a non-cash nature, any deferrals or accruals of past or future operating cash receipts or payments and item of income or expenses associated with investing or financing cash flows. The cash flows from operating, investing and financing activities of the Group are segregated.

In line with the amendments to Ind AS 7 Statement of Cash flows (effective from April 1, 2017), the Group has provided disclosures that enable users of the consolidated financial statements to evaluate changes in liabilities arising from financing activities, including both changes arising from cash flows and non-cash changes. The adoption of amendment did not have any material impact on the consolidated financial statements.

**r.    Dividends**

The Group recognise a liability for dividends to equity holders of the Group when the dividend is authorized and the dividend is no longer at the discretion of the Group. As per the corporate laws in India, a dividend is authorized when it is approved by the shareholders. A corresponding amount is recognised directly in equity.

**s.    Event occurring after the reporting date**

Adjusting events (that provides evidence of condition that existed at the consolidated balance sheet date) occurring after the consolidated balance sheet date are recognized in the consolidated financial statements. Material non adjusting events (that are inductive of conditions that arose subsequent to the consolidated balance sheet date) occurring after the consolidated balance sheet date that represents material change and commitment affecting the financial position are disclosed in the Directors' Report.

**t.    Standards Issued but not yet Effective**

Ministry of Corporate Affairs ("MCA") has notified amendments to following standards which would be applicable from the date of publication in official gazette.

o    Ind AS 103 - Business Combination

o    Ind AS 107 - Financial Instruments -Disclosures

o    Ind AS 109 - Financial Instruments

o    Ind AS 116 - Leases

o    Ind AS 1- Presentation of Financial Statements

o    Ind AS 8 - Accounting Policies Changes in Estimates and errors

o    Ind AS 34 - Interim Financial Reporting

o    Ind AS 37 - Provisions, Contingent Liabilities and Contingent Assets

Company does not expect the amendments in above standards to have material effect on the financials of the company.

**Significant accounting judgements, estimates and assumptions**

The preparation of the financial statements requires management to make judgements, estimates and assumptions, as described below, that affect the reported amounts and the disclosures. The Group based its assumptions and estimates on parameters available when the financial statements were prepared and reviewed at each balance sheet date. Uncertainty about these assumptions and estimates could result in outcomes that may require a material adjustment to the reported amounts and disclosures.

**a.    Estimation of uncertainties relating to global health pandemic from COVID-19:**

In December 2019, a novel strain of coronavirus (COVID-19) emerged in Wuhan, Hubei Province, China. While initially the outbreak was largely concentrated in China and caused significant disruptions to its economy, it has now spread to several other countries, and infections have been reported globally including India, United Kingdom, United States, Dubai, Singapore and Australia where the group through its offices distributes the films theatrically. On March 24, 2020, in response to the public health risks associated with the COVID-19, the Government of India announced nation-wide lockdown which resulted in the closure of all the theatres across India and caused disruptions in the production and availability of content, including delayed, or in some cases, shortened or cancelled theatrical releases. The lockdown has affected the Group's ability to generate revenues from the monetization of Indian film content in various distribution channels through agreements with commercial theatre operators.

The Central and State Governments have initiated the steps to lift the lockdown, however, theatres are still not allowed to operate till the further directives issued by the governments. The Group has considered the possible effects that may results from the pandemic on the carrying amount of the asset.

The Management has evaluated the impact on its financial statements and have made appropriate adjustments, wherever required. The extent of the impact on Group's operations remains uncertain and may differ from that estimated as at the date of approval of these consolidated financial statements and will be dictated by the length of time that such disruptions continue, which will, in turn, depend on the currently unknowable duration of COVID-19 and among other things, the impact of governmental actions imposed in response to the pandemic. The Group is monitoring the rapidly evolving situation and its potential impacts on the Group's financial position, results of operations, liquidity, and cash flows.

**b.    Intangible Assets**

The Group is required to identify and assess the useful life of intangible assets and determine their income generating life. Judgment is required in determining this and then providing an amortization rate to match this life as well as considering the recoverability or conversion of advances made in respect of securing film content or the services of talent associated with film production.

Accounting for the film content requires Management's judgment as it relates to total revenues to be received and costs to be incurred throughout the life of each film or its license period, whichever is the shorter. These judgments are used to determine the amortization

of capitalized film content costs. The Group use a stepped method of amortization on first release film content writing off more in year one which recognizes initial income flows and then the balance over a period of up to nine years. In the case of film content that is acquired by the Group after its initial exploitation, commonly referred to as Library, amortization is spread evenly over the lesser of 10 years or the license period. Management's policy is based upon factors such as historical performance of similar films, the star power of the lead actors and actresses and others. Management regularly reviews, and revises when necessary, its estimates, which may result in a change in the rate of amortization and/or a write down of the asset to the recoverable amount.

Intangible assets are tested for impairment in accordance with the accounting policy. These calculations require judgments and estimates to be made, and in the event of an unforeseen event these judgments and assumptions would need to be revised and the value of the intangible assets could be affected. There may be instances where the useful life of an asset is shortened to reflect the uncertainty of its estimated income generating life.

**c.  Employee benefit plans**

The cost of the employment benefit plans and their present value are determined using actuarial valuations which involves making various assumptions that may differ from actual developments in the future. For further details refer to Note 41.

**d.  Fair value measurement of ESOP Liability**

The fair value of ESOP Liability is determined using valuation methods which involves making various assumptions that may differ from actual developments in the future. For further details refer Note 42.

**e.  Trade receivable**

Judgements are required in assessing the recoverability of overdue trade receivables and determining whether a provision against those receivables is required. Factors considered include the amount and timing of anticipated future payments and any possible actions that can be taken to mitigate the risk of non-payment.

**f.  Depreciation**

Property, plant and equipment are depreciated over the estimated useful lives of the assets, after taking into account their estimated residual value. Management reviews the estimated useful lives and residual values of the assets annually in order to determine the amount of depreciation to be recorded during any reporting period. The useful lives and residual values are based on the Group's historical experience with similar assets and take into account anticipated technological changes. The depreciation for future periods is adjusted if there are significant changes from previous estimates.

**g.  Impairment of non-financial assets**

In assessing impairment, management estimates the recoverable amount of each asset or cash-generating unit based on expected future cash flows and uses an interest rate to discount them. Estimation uncertainty relates to assumptions about future operating results and the determination of a suitable discount rate.

**h.  Provisions**

Provisions and liabilities are recognized in the period when it becomes probable that there will be a future outflow of funds resulting from past operations or events and the amount of cash outflow can be reliably estimated. The timing of recognition and quantification of the liability require the application of judgment to existing facts and circumstances, which can be subject to change. Since the cash outflows can take place many years in the future, the carrying amounts of provisions and liabilities are reviewed regularly and adjusted to take account of changing facts and circumstances.

**i.  Fair value measurement**

Management uses valuation techniques to determine the fair value of financial instruments (where active market quotes are not available) and non-financial assets. This involves developing estimates and assumptions consistent with how market participants would price the instrument. Management bases its assumptions on observable data as far as possible, but this is not always available. In that case management uses the best information available. Estimated fair values may vary from the actual prices that would be achieved in an arm's length transaction at the reporting date.

# Notes
to the consolidated financial statements and other explanatory information

## 2    Property, Plant and Equipment

Details of the Group's property, plant and equipment and their carrying amounts are as follows:                                                          Amount ₹ in lakhs

| Gross carrying amount | Buildings | Leasehold improvements | Furniture and fixtures | Motor vehicles | Office equipment | Data processing equipment | Studio equipment | Right of Use | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Balance as at 31 March 2018** | **4,108** | **511** | **753** | **837** | **329** | **1,661** | **1,621** | **–** | **9,820** |
| Additions | - | 358 | 2 | - | 34 | 26 | - | – | 420 |
| Adjustments/ disposals | | | (13) | - | (8) | (71) | - | – | (92) |
| **Balance as at 31 March 2019** | **4,108** | **869** | **742** | **837** | **355** | **1,616** | **1,621** | **–** | **10,148** |
| Additions | - | 71 | 0 | - | 2 | 5 | - | **1,331** | 1,409 |
| Adjustments/ disposals | - | - | (1) | - | (1) | (0) | - | – | (2) |
| **Balance as at 31 March 2020** | **4,108** | **940** | **741** | **837** | **356** | **1,621** | **1,621** | **1,331** | **11,555** |
| **Accumulated depreciation** | | | | | | | | | |
| **Balance as at 31 March 2018** | **1,251** | **211** | **628** | **381** | **246** | **1,485** | **1,526** | **–** | **5,728** |
| Depreciation charge | 139 | 190 | 40 | 140 | 49 | 56 | 29 | – | 643 |
| Adjustments/ disposals | - | - | (10) | - | (9) | (35) | - | – | (54) |
| **Balance as at 31 March 2019** | **1,390** | **401** | **658** | **521** | **286** | **1,506** | **1,555** | **–** | **6,317** |
| Depreciation charge | 132 | 226 | 25 | 90 | 30 | 31 | 21 | **463** | 1,018 |
| Adjustments/ disposals | - | - | 1 | - | 1 | 1 | - | **421** | 424 |
| **Balance as at 31 March 2020** | **1,522** | **627** | **684** | **611** | **317** | **1,538** | **1,576** | **884** | **7,759** |
| **Net carrying amount** | | | | | | | | | |
| **Capital-work-in progress 31 March 2019** | | | | | | | | | **7** |
| **Capital-work-in progress 31 March 2020** | | | | | | | | | **7** |
| Balance as at 31 March 2019 | 2,718 | 468 | 84 | 316 | 69 | 110 | 66 | – | 3,838 |
| **Balance as at 31 March 2020** | **2,586** | **313** | **57** | **226** | **39** | **83** | **45** | **447** | **3,803** |

The Group's immovable property situated in Mumbai, India is pledged against the borrowings as explained in Note 17 and 23

## 3.    a) Intangible assets

Details of the Group's Intangible assets and their carrying amounts are as follows:                                                          Amount ₹ in lakhs

| Gross carrying amount | Content advances | Film rights | Others | Total |
|---|---|---|---|---|
| **Balance as at 31 March 2018** | **151,234** | **481,759** | **2,665** | **484,424** |
| Additions | 39,878 | 14,105 | 16 | 14,121 |
| Adjustments/ Deletion | (30,087) | - | - | - |
| Amounts written off | (3,913) | - | - | - |
| Foreign currency translation difference | 1,203 | 5,488 | - | 5,488 |
| **Balance as at 31 March 2019** | **158,315** | **501,352** | **2,681** | **504,033** |
| Additions | 12,305 | 3,265 | 16 | 3,281 |
| Transfer to film and content rights | (10,091) | (3,563) | - | (3,563) |
| Amounts written back | 1,687 | - | - | - |
| Impairement of content advance | (129,015) | | | |
| Foreign currency translation difference | 2,817 | 7,959 | - | 7,959 |
| **Balance as at 31 March 2020** | **36,018** | **509,013** | **2,697** | **511,710** |

## Notes
to the consolidated financial statements and other explanatory information

| Accumulated amortization | Film rights | Others | Total |
|---|---|---|---|
| **Balance as at 31 March 2018** | **376,616** | **1,075** | **377,691** |
| Amortisation charge | 29,643 | 266 | 29,909 |
| Adjustments/ Deletion | - | - | - |
| Foreign currency translation difference | 3,859 | - | 3,859 |
| **Balance as at 31 March 2019** | **410,118** | **1,341** | **411,459** |
| Amortisation charge | 24,152 | 229 | 24,381 |
| Adjustments/ Deletion/ Impairement | 17,261 | - | 17,261 |
| Foreign currency translation difference | 6,441 | - | 6,441 |
| **Balance as at 31 March 2020** | **457,972** | **1,570** | **459,542** |

| Net carrying amount | Content advances | Film rights | Others | Total |
|---|---|---|---|---|
| Balance as at 31 March 2019 | 158,315 | 91,234 | 1,340 | 92,574 |
| **Balance as at 31 March 2020** | **36,018** | **51,041** | **1,127** | **52,168** |
| **Intangible assets under development** | | | | |
| Balance as at 31 March 2019 | 9,049 | | | |
| **Balance as at 31 March 2020** | **8,887** | | | |

### 3    b) Goodwill on consolidation

On 1 August 2015, Company acquired 100% of the shares and voting interests in ErosNow Private Limited (formely known as Universal Power Systems Private Limited). Goodwill of ₹ 2,130 lakhs was recognised on acquisition. Impairement provision of ₹ 395 lakhs was made upto previous year. During the year, Impairement loss of ₹ 1,735 lakhs has been recognised.

### 4    Loans

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Amounts due from related parties (refer note 44) | 75,887 | 42,852 |
| Unsecured, considered good | 545 | 1,632 |
| **Total** | **76,432** | **44,484** |

### 5    Other financial assets

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| **Security deposits** | | |
| Security deposits- related parties (refer note 44) | 268 | 582 |
| Security deposits- others | 105 | 213 |
| **Total** | **373** | **795** |

### 6    Other non- current assets

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Advance payment of taxes (net of provision) | 1,668 | 1,008 |
| Balances due with statutory authorities | 5,218 | 5,383 |
| Deferred expeses | 215 | - |
| **Total** | **7,101** | **6,391** |

### 7    Inventory

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Film Rights | 4 | 301 |
| **Total** | **4** | **301** |

CONSOLIDATED FINANCIAL STATEMENT

## Notes
**to the consolidated financial statements and other explanatory information**

### 8   Trade and other receivables
Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Secured, considered good | 1,327 | 1,327 |
| Unsecured, considered good | 5,343 | 69,856 |
| Dues from related parties (refer note 44) | 49,012 | 17,690 |
| Accrued Income | 1,103 | 1,486 |
| | **56,785** | **90,359** |
| Less : Expected credit loss * | (1,561) | (11,007) |
| **Total** | **55,224** | **79,352** |

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| *Movement of Expected credit loss | | |
| Opening Balance | 11,007 | 5,188 |
| Addition during the year | 44,974 | 12,164 |
| Reverse During the year | (2,527) | (6,631) |
| OCI Movement | 56 | - |
| Transfer to Bad debts* | (51,998) | - |
| Foreign Currency Translation reserve | 49 | 266 |
| Closing Balance | **1,561** | **11,007** |

The Group had entered into an agreement with some of the customers which entitled them to exploit the film rights for the period as specified therein. The amount receivable from such customers under the said agreement has been past due over a prolonged period. Due to disruption in the film business caused by the outbreak of COVID-19, the management does not have any reasonable expectation of recovering the amount due and therefore has terminated the agreement with such customers. Consequently, the receivable of ₹ 51,998 lakhs have been written-off by the management and has disclosed the same under the exceptional item.

All amounts are short-term. The net carrying value of trade receivables is considered a reasonable approximation of fair value.

### 9   Cash and cash equivalents
Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Balances with banks | | |
| -in current accounts | 1,021 | 586 |
| Cash on hand | 86 | 60 |
| | 1,107 | 646 |
| Other Bank Balances | | |
| -Deposits with maturity of more than 3 months but less than 12 months | - | 13,465 |
| **Total** | **1,107** | **14,111** |

### 10   Restricted bank deposits
Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| i. Unclaimed dividend account | 1 | 1 |
| ii. Margin money deposit- less than 12 Months* | 3,608 | 5,993 |
| iii. Deposits with maturity more than 12 months* | 46 | 511 |
| | 3,655 | 6,505 |
| Less: Disclosed under non current financial assets - Restricted bank deposits | (46) | (511) |
| **Total** | **3,609** | **5,994** |

* given as securities against fund based working capital limits.

# Notes
**to the consolidated financial statements and other explanatory information**

## 11 Loans

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| Amounts due from related parties (refer note 44) | - | 4 |
| Loans and advances to employees | 100 | 84 |
| Other loans | 3,458 | 1,698 |
| Security deposits | 31 | 41 |
| **Total** | **3,589** | **1,827** |

## 12 Other financial assets

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| Interest accrued | 70 | 390 |
| Amounts due from related parties (refer note 44) | 319 | 561 |
| Others | 79 | 47 |
| **Total** | **468** | **998** |

## 13 Other current assets

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| Prepaid-expenses | 63 | 246 |
| Amounts due from related parties (refer note 44) | - | 51 |
| **Total** | **63** | **297** |

## 14 Share capital

₹ in lakhs, except share data

| | As at 31 March 2020 | | As at 31 March 2019 | |
|---|---:|---:|---:|---:|
| | Number | Amounts | Number | Amounts |
| **Authorised share capital** | | | | |
| Equity shares of ₹ 10 each | 125,000,000 | 12,500 | 125,000,000 | 12,500 |
| | **125,000,000** | **12,500** | **125,000,000** | **12,500** |
| **Issued, subscribed and fully paid up** | | | | |
| Equity shares of ₹ 10 each | 95,629,023 | 9,563 | 95,508,140 | 9,551 |
| **Total** | **95,629,023** | **9,563** | **95,508,140** | **9,551** |

### a) Reconciliation of paid up share capital (Equity Shares)

₹ in lakhs, except share data

| | As at 31 March 2020 | | As at 31 March 2019 | |
|---|---:|---:|---:|---:|
| | Number | Amounts | Number | Amounts |
| Balance at the beginning of the year | 95,508,140 | 9,551 | 94,971,877 | 9,497 |
| Add: Shares issued during the year | 120,883 | 12 | 536,263 | 54 |
| **Balance at the end of the year** | **95,629,023** | **9,563** | **95,508,140** | **9,551** |

During the year, the Company has issued total 120,883 equity shares (2019: 536,263) on exercise of options granted under the employees stock option plan (ESOP) wherein part consideration was received in the form of employees services.

### b) Shares held by holding company, ultimate holding company, subsidiaries / associates of holding company or ultimate holding company

₹ in lakhs, except share data

| | As at 31 March 2020 | | As at 31 March 2019 | |
|---|---:|---:|---:|---:|
| | Number | Amounts | Number | Amounts |
| Equity shares of ₹ 10 each | | | | |
| Eros Worldwide FZ LLC - the Holding Company | 37,877,302 | 3,788 | 37,877,302 | 3,788 |
| Eros Digital Private Limited - fellow subsidiary | 21,700,000 | 2,170 | 21,700,000 | 2,170 |

**CONSOLIDATED FINANCIAL STATEMENT**

# Notes
**to the consolidated financial statements and other explanatory information**

c)  **Details of Shareholders holding more than 5% of the shares**

| | As at 31 March 2020 | | As at 31 March 2019 | |
|---|---|---|---|---|
| | Number | % Holding in the class | Number | % Holding in the class |
| Equity shares of ₹ 10 each | | | | |
| Eros Worldwide FZ LLC - the Holding Company | 37,877,302 | 39.61% | 37,877,302 | 39.66% |
| Eros Digital Private Limited - fellow subsidiary | 21,700,000 | 22.69% | 21,700,000 | 22.72% |

d)  **Details of employee stock options issued during the last 5 years**

During the period of five years immediately preceding the reporting date, the Company has issued total 2,222,005 equity shares (2019: 2,633,980) on exercise of options granted under the employees stock option plan (ESOP) wherein part consideration was received in the form of employee services.

e)  **Details of equity share issued for consideration other than cash  during the last 5 years**

During the period of five years immediately preceding the reporting date, the Company has issued total 900,970 equity shares (31 March 2019: 900,970) to the shareholders of UPSPL at a premium of ₹ 586 per share in exchange for the entire shareholding of UPSPL.

f)  **Rights, preferences, restrictions of Equity Shares**

The Company has only one class of equity shares having par value of ₹10 per share. Every holder is entitled to one vote per share. The dividend, if any, proposed by the Board of Directors and approved by the Shareholders in the Annual General Meeting is paid in Indian rupees.

In the event of liquidation of the Company, the holders of equity shares will be entitled to receive remaining assets of the Company, after distribution of all preferential  amounts. The distribution will be in proportion to the number of equity shares held by the shareholders.

**15  Other equity**                                                      Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| **Securities premium reserve** | | |
| Balance at the beginning of the year | 41,547 | 40,498 |
| Add : Transfer from share option outstanding account | 230 | 1,049 |
| **Balance at the end of the year** | **41,777** | **41,547** |
| **Share options outstanding account** | | |
| Balance at the beginning of the year | 1,344 | 1,577 |
| Less: Transfer to securities premium account | (230) | (1,049) |
| Add: Employee stock option compensation expense | 85 | 779 |
| Add: Employee stock option compensation expense to employees of subsidiary | 16 | 37 |
| **Balance at the end of the year** | **1,215** | **1,344** |
| **Capital reserves** | | |
| As per last year balance sheet | **56** | **56** |
| **General reserves** | | |
| As per last year balance sheet | **508** | **508** |
| **Surplus from Statement of Profit & Loss** | | |
| Balance at the beginning of the year | 194,341 | 167,433 |
| Add : Profit/ (loss) for the year | (140,521) | 26,908 |
| **Balance at the end of the year** | **53,820** | **194,341** |
| **Other comprehensive income** | | |
| **a) Foreign currency translation reserve** | | |
| Balance at the beginning of the year | **9,748** | **4,654** |
| Movement during the year | 7,762 | 5,094 |
| **Balance at the ending of the year** | **17,510** | **9,748** |
| **b) Remeasurement gain on definted benfit plan** | **221** | **116** |
| **c) ECL Rate Difference** | **(56)** | **-** |
| **Total** | **115,051** | **247,660** |

# Notes
### to the consolidated financial statements and other explanatory information

**Nature and Purpose of Reserves:-**

**Securities Premium Reserve:** The amount received in excess of face value of the equity shares is recognised in Securities Premium Reserve.

**General Reserve:** General Reserve was created by transferring a portion of the net profit of the Company as per the requirements of the Companies Act, 2013.

**Capital Reserve:** Capital Reserve is used from pre-acquisition profit of subsidiaries.

**General Reserve :** The General Reserve is used from time to time to transfer profit from retained earning for appropriation purpose.

**Foreign Currency Translation Reserve :** Exchange Fluctuation Reserve represents the unrealised gains and losses on account of translation of foreign subsidiaries into the reporting currency.

## 16   Non- controlling interest

Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| Balance at beginning of the year |  |  |
| Opening balance | 1,028 | 1,288 |
| Profit/(loss) for the year | 400 | (260) |
| **Balance at end of year** | **1,428** | **1,028** |

## 17   Borrowings

Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| a) Term Loans |  |  |
| **Secured** |  |  |
| Term loan from banks* | 5,541 | 9,721 |
| Car loans# | 96 | 245 |
| Others @ | 160 | 142 |
| **Unsecured** |  |  |
| Term loan from others** | 2,940 | 3,887 |
|  | **8,737** | **13,995** |
| Less: Cumulative effect of unamortised cost | (31) | (71) |
| Less: Current maturities disclosed under other current  financial liabilities (refer note 26) | (8,639) | (5,200) |
| **Total** | **67** | **8,724** |

* Term loans from banks carry an interest rate between 12.5% - 15.5% are secured by pari passu first charge on the satellite rights acquired for the domestic market, actionable claims, revenue and receivables arising on sales of the rights and negatives of films. Term loans are further secured by equitable mortgage of Company's immovable properties situated at Mumbai (India), amounts held as margin money,corporate guarantee of Eros International PLC (the ultimate holding company),residual value of equipments and vehicles and existing rights of hindi films with nil book value.

# Car loans are secured by hypothecation of vehicles acquired there against, carrying rate of interest of 7.48%-9.50% which are repayable as per maturity profile set out below.

** Other loans are secured by hypothecation of assets acquired there against, carrying rate of interest of 10.50%-11.50% which are repayable as per maturity profile set out below.

@ Term loan from others carry an interest rate between 15% - 16% are secured against the pledge of company's shares held by holding company, current assets of a subsidiary company and corporate guarantee of holding company and subsidiary company.

CONSOLIDATED FINANCIAL STATEMENT

# Notes
to the consolidated financial statements and other explanatory information

Maturity profile of long term borrowing is set out below:-

|  | As at 31 March 2020 | | |
|---|---|---|---|
|  | Less than 1 year | 1-3 years | 3-5 years |
| Secured |  |  |  |
| Term loan from banks | 5,536 | - | - |
| Car loan | 86 | 10 | - |
| Others | 77 | 57 | - |
| **Unsecured** |  |  |  |
| Term loan from others | 2,940 | - | - |
| **Total** | **8,639** | **67** | **-** |

| Default in repayment as on 31 March, 2020 | Period of delay | Principal due | Interest due |
|---|---|---|---|
| Term loan from banks | 31 days | 167 | 23 |
| **Total** |  | **167** | **23** |

**18  Trade payable - non current**                                         Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Payable to related parties (refer note 44) | 118 | 108 |
| **Total** | **118** | **108** |

**19  Other financial liabilities**                                         Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Security desposits | 25 | 25 |
| Lease Liability | 22 | - |
| **Total** | **47** | **25** |

**20  Employee benefit obligations - non current**                          Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Provision for gratuity (refer note 41) | 344 | 426 |
| Leave encashment | 6 | 9 |
| **Total** | **350** | **435** |

**21  Deferred Taxes**                                                      Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| **Deferred Tax Liability arising on account of** |  |  |
| Depreciation on tangible assets | 48 | 77 |
| Amortisation of intangible assets | 9,080 | 23,084 |
| **Total Deferred Tax Liability** | **9,128** | **23,161** |
| **Deferred Tax Asset arising on account of** |  |  |
| Depreciation on tangible assets | 962 | 52 |
| Disallowances under Income Tax Act, 1961 | - | 985 |
| Gratuity and leave encashment | 10 | 19 |
| Others | 639 | 4,085 |
| Minimum alternative tax credit recoverable | 63 | 62 |
| Impairment | 31,417 |  |
| **Total Deferred Tax Assets** | **33,091** | **5,203** |
| Restricted to and consequent impact | (23,188) | - |
| **Total Deferred Tax Assets/ (Liabilities)- net** | **775** | **(17,958)** |

# Notes
**to the consolidated financial statements and other explanatory information**

**Reconciliation of tax expense and the accounting profit multiplied by India's domestic tax rate:**

| Particulars | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| Profit before tax | **(161,546)** | **31,763** |
| Income tax expense | (21,425) | 5,115 |
| Tax rate as a % of profit before tax | 13.26% | 16.10% |
| | | |
| Effect of Income taxed at higher/ (lower) rates | 0.00% | 0.00% |
| Effect of Income taxes relating to prior years | -1.90% | 1.67% |
| Effect of change in deferred tax balances due to change in tax rates | -3.39% | -0.32% |
| Effect of unrecognised deferred tax assets | 15.19% | -0.44% |
| Effect of Items not deductible for tax purpose | 0.29% | -1.47% |
| Effect of Items deductible for tax purpose | -1.64% | 0.00% |
| Effect of MAT Credit | 0.00% | 0.00% |
| Others | -0.03% | -0.20% |
| **Average Income Tax Rate applicable to individual entities** | **21.78%** | **15.35%** |

**22  Other non-current liabilities**                                    Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| Deferred revenue | 4,679 | 10,050 |
| **Total** | **4,679** | **10,050** |

**23  Short-term borrowings**                                            Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| **Secured** | | |
| Secured from banks | 39,943 | 38,605 |
| **Unsecured** | | |
| Unsecured from others | 5,672 | 6,135 |
| From related parties (refer note 44) | 562 | 528 |
| **Total** | **46,177** | **45,268** |

Secured short term borrowings include:

Cash credit carry an interest rate between 12% - 16%, secured by way of hypothecation of inventories and receivables relating to domestic rights operations on pari passu basis.

Bills discounted carry an interest rate between 11.5% - 13.5% for INR bills and 6M MCLR or LIBOR+3.5% for USD bills, secured by document of title to goods and accepted hundis with first pari passu charge on current assets.

Packing credit carry an interest rate between 10% - 11% for INR and 6M MCLR or LIBOR + 3.5% for USD, secured by hypothecation of films and film rights with first pari passu charge on current assets.

Short term borrowings are further secured by equitable mortgage of company's immovable properties situated at Mumbai (India),amount held in margin money,corporate guarantee of Eros International Plc (the ultimate holding company),residual value of equipments and existing rights of hindi films with nil book value.

*Loan from others carry an  interest rate between 15% - 16%, secured by security provided by holding company.

# Notes
**to the consolidated financial statements and other explanatory information**

## 24  Acceptances

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Payable under the film financing arrangements | 1,400 | 5,796 |
| **Total** | 1,400 | 5,796 |

Acceptances comprise of credit availed from banks for payment to film producers for film co-production arrangement entered by the group. The carrying value of acceptances are considered a reasonable approximation of fair value.

## 25  Trade payables - current financial liabilities

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Trade payable | 12,508 | 11,017 |
| Payable to related parties (refer note 44) | 22,855 | 20,053 |
| **Total** | **35,363** | **31,070** |

## 26  Other financial liabilities

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Current maturities of long-term borrowings (refer note 17) | 8,639 | 5,200 |
| Interest accrued but not due on borrowings | 926 | 147 |
| Interest accrued and due on borrowings | 23 | 161 |
| Employee dues | 483 | 657 |
| Unclaimed dividend* | 1 | 1 |
| Other expenses payable | 687 | 792 |
| Forward contract liabilities | - | 430 |
| Lease liabilities | 215 | - |
| Other payable to related party (refer note 44) | 473 | 252 |
| **Total** | **11,447** | **7,640** |

* These figures do not includes any amount due and outstanding to be credited to Investor Education and Protection Fund.

## 27  Employee benefit obligations - current

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Provision for gratuity (refer note 41) | 80 | 121 |
| Leave encashment | 227 | 251 |
| **Total** | **307** | **372** |

## 28  Other Current Liabilities

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Advance from customers- related parties (refer note 44) | 337 | 14,059 |
| Advances from customers- Others | 2,374 | 1,040 |
| Duties & Taxes Payable | 7,448 | 7,385 |
| Deferred income | 5,609 | 781 |
| Others | 554 | 222 |
| **Total** | **16,322** | **23,487** |

# Notes
**to the consolidated financial statements and other explanatory information**

### 29  Current tax liabilites (net)

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| Provision for Corporate Taxes (net of advance tax) | 7,348 | 11,400 |
| **Total** | **7,348** | **11,400** |

### 30  Revenue from operations

Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| Sale/distribution/exhibition of films and other rights | 81,356 | 103,027 |
| Other operating revenues | 4 | 103 |
| **Total** | **81,360** | **103,130** |

### 31  Other income

Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| Gain on foreign exchange (net) | 694 | - |
| Interest income : | | |
| Bank deposits | 338 | 290 |
| Others | 4,809 | 1,166 |
| Income from Export Incentives | 527 | 1,618 |
| Sundry balances written back and Bad debts recovered | 892 | 74 |
| Provision written back for expected credit loss | 1,477 | 5,497 |
| Provision for Content advances written back (refer note 3) | 1,687 | - |
| Reversal of provision for diminishment in the value of investments | - | 452 |
| Other non-operating income | 1,602 | 1,742 |
| **Total** | **12,026** | **10,839** |

### 32  Purchases / Operating Expenses

Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| Film rights cost | 14,287 | 17,676 |
| Amortization of film rights (refer note 3) | 24,152 | 29,643 |
| **Total** | **38,439** | **47,319** |

### 33  Changes in Inventories

Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| **Inventories at the end of the year of -** | | |
| Stock-in-trade | 4 | 301 |
| | **4** | **301** |
| **Inventories at the beginning of the year** | | |
| Stock-in-trade | 301 | 187 |
| | **301** | **187** |
| **Total** | **297** | **(114)** |

CONSOLIDATED FINANCIAL STATEMENT

# Notes
**to the consolidated financial statements and other explanatory information**

### 34  Employee benefit expenses

Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| Salaries and wages | 3,314 | 3,841 |
| Contributions to provident and other funds (refer note 41) | 151 | 183 |
| Employee share based compensation (refer note 42) | 101 | 799 |
| Gratuity expenses (refer note 41) | 123 | 131 |
| Staff welfare expenses | 98 | 125 |
| **Total** | **3,787** | **5,079** |

### 35  Finance costs

Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| Interest expenses on loans taken from banks | 7,642 | 8,964 |
| Other interest expenses | 405 | 451 |
| Interest on delayed payment of taxes | 2,681 | 1,684 |
| | **10,728** | **11,099** |
| Less: Interest expenses capitalised to film rights* | (3,382) | (3,017) |
| Less : Interest received | (290) | (334) |
| **Total** | **7,056** | **7,748** |

*The capitalisation rate of interest was 13.03 % (2019 : 12.12 %)

### 36  Depreciation and amortization expenses

Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| Depreciation on property, plants and equipments (refer note 2) | 1,018 | 643 |
| Amortization on intangible assets other than film rights (refer note 3) | 229 | 266 |
| **Total** | **1,247** | **909** |

### 37  Other expenses

Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| Print & digital distribution cost | 198 | 851 |
| Selling & distribution expenses | 399 | 2,565 |
| Processing and other direct cost | 107 | 200 |
| Shipping, Packing & Forwarding Expenses | 25 | 69 |
| Power and fuel | 55 | 65 |
| Rent including lease rentals | 37 | 453 |
| Repairs and maintenance | 140 | 137 |
| Insurance | 21 | 29 |
| Rates and taxes | 55 | 68 |
| Communication Expenses | 68 | 80 |
| Travelling and conveyance | 116 | 305 |
| Legal and professional expenses | 645 | 1,557 |
| Payments to auditors | 147 | 122 |
| Trade receivables written off | 46,494 | 1,917 |
| Content advance written off | - | 2,226 |
| Advances & deposits written off | 2 | 319 |
| Provision for doubtful receivables | 184 | 8,023 |
| Provision for doubtful advances | - | 1,687 |
| Loss on disposal of property, plant and equipment (net) | - | 2 |
| Corporate social responsibility expenses | 20 | 30 |
| Loss on foreign exchange (net) | - | 44 |
| Miscellaneous expenses | 41 | 516 |
| **Total** | **48,754** | **21,265** |

# Notes
**to the consolidated financial statements and other explanatory information**

### 38    Exceptional items

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---:|---:|
| Impairment of content advance provision | 129,015 | - |
| Impairment of film rights | 20,815 | - |
| Impairment of other advances | 762 | - |
| Impairment of content advance write off | 3,025 | - |
| Impairment of Goodwill | 1,735 | - |
| **Total** | **155,352** | **-** |

**Exceptional item comprises of the following:**

1.    The COVID-19 outbreak and resulting measures taken by the Government of India to contain the virus have already significantly affected the business in the first quarter of the fiscal 2020. Further, in 2019-20, the company has witnessed a significant decline in market capitazation as compared with the previous year. Because of unexpected decline in the market capitalization and disruptions in the business caused by the out break of COVID-19, the Company has performed the annual impairment assessment following the requirements of Ind AS-36 'Impairment of Assets'.

Based on the assessment, the management has recorded the impairment charge of ₹ 155,352 lakhs and disclosed the same under the exceptional item.

### 39    Earnings per share

| | | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---:|---:|
| a) | **Computation of net profit/(loss) for the year** | | |
| | Profit/(loss) after tax attributable to equity shareholders (₹ in lakhs) | (140,521) | 26,908 |
| b) | **Computation of number of shares for Basic Earnings per share** | | |
| | Weighted average number of equity shares | 95,551,002 | 95,205,870 |
| | **Total** | **95,551,002** | **95,205,870** |
| c) | **Computation of number of shares for Diluted Earnings per share** | | |
| | Weighted average number of equity shares used in the calculation of basic earning per share | 95,551,002 | 95,205,870 |
| | Add:- Effect of ESOPs | - | 828,067 |
| | **Total** | **95,551,002** | **96,033,937** |
| d) | **Nominal value of shares** | **10** | **10** |
| e) | **Computation** | | |
| | Basic (in ₹) | (147.06) | 28.26 |
| | Diluted (in ₹) | (147.06) | 28.02 |

### 40    Contingent liabilities and commitments (to the extent not provided for)

a)    **Contingent liabilities**                                                                     Amount ₹ in lakhs

| | | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---:|---:|
| (i) | **Claims against the Company not acknowledged as debt** | | |
| | Sales tax claims disputed by the Company | 1,983 | 2,088 |
| | Service tax (refer note 1) | 43,604 | 43,828 |
| | Income tax liability that may arise in respect of matters in appeal | 105 | 105 |
| (ii) | **Guarantees** | | |
| | Guarantee given in favour of various government authorities | 25 | 35 |
| | | **45,717** | **46,056** |

**Notes:**

1.a    During the year ended 31 March 2015, the Company received a show cause notice from the Commissioner of Service Tax to show cause why an amount aggregating to ₹ 15,675 lakhs for the period 1 April 2009 to 31 March 2014 should not be levied on and paid by the Company for service tax arising on temporary/Perpetual transfer of copyright services and other matters.

CONSOLIDATED FINANCIAL STATEMENT

# Notes
## to the consolidated financial statements and other explanatory information

In connection with the aforementioned matters, on 19 May 2015, the Company received an Order-in-original issued by the Principal Commissioner, Service Tax, wherein the department confirmed the demand of ₹ 15,675 lakhs along with interest and penalty amounting to ₹ 15,675 lakhs resulting into a total demand of ₹ 31,350 lakhs.

On 3 September 2015, the Company filed an appeal against the said order before the authorities. The Company has paid ₹ 1,000 lakhs under protest. Considering the facts and nature of levies and the ad-interim protection for the period 1 July 2010 to 30 June 2012 granted by the Honorable High Court of Mumbai, the Company expects that the final outcome of this matter will be favourable. Accordingly, based on the assessment made after taking appropriate legal advice, the provision of ₹ 88.52 lakhs only has been recorded and no additional liability has been recorded in the financial statements.

On 8 October, 2018, the Company received a show cause notice from the Commissioner of Service Tax to show cause why an amount aggregating to ₹ 1,347 lakhs and penalty of ₹ 1,347 lakhs resulting to total demand of ₹ 2,694 lakhs for the period 1 April 2014 to 31 March 2015 should not be levied on and paid by the Company for service tax arising on temporary/perpetual transfer of copyright services and other matters. Considering the facts and nature of levies and the ad-interim protection for the period 1 July 2010 to 30 June 2012 granted by the Honorable High Court of Mumbai, the Company expects that the final outcome of this matter will be favorable. Accordingly, based on the assessment made after taking appropriate legal advice, the provision of ₹ 60.77 lakhs has been recorded and no additional liability has been recorded in the financial statements.

1.b On 18 April, 2016, a subsidiary of the Company- Eros International Films Private Limited, received a show cause notice from the Commissioner of Service Tax to show cause why an amount aggregating to ₹ 597 lakhs and panalty of 60 lakhs for the period 1 April 2014 to 31 March 2015 should not be levied on and paid by the Company for service tax arising on temporary/ Perpetual transfer of copyright services and other matters. Considering the facts and nature of levies and the ad-interim protection for the period 1 July 2010 to 30 June 2012 granted by the Honorable High Court of Mumbai, the Company expects that the final outcome of this matter will be favorable. Accordingly, based on the assessment made after taking appropriate legal advice, no additional liability has been recorded in the financial statements.

1.c On 28 February, 2013, a subsidiary of the Company- Universal Power System Private Limited (acquired on 1 August, 2015), received a service tax order with reference to the internal audit conducted by the service tax department. Based on the audit conducted, department has demanded tax amounting to ₹ 114 lakhs against which the subsidiary has paid ₹ 20 lakhs. The subsidiary has not made any provision in the books to give effect to this order and filed an appeal against the demand. The subsidiary expects that the final outcome will be favorable. Accordingly, based on the assessment made after appropriate legal advice, ₹ 94 lakhs has been considered as contingent liability and no liability has been recorded in the financial statements.

1.d Company Eros International Media LImited has received showcause notice for reversal of CENVAT credit for the period 2013-14 to 2015-16 ₹ 187 lakhs,no additional liability has been accounted in financial statements for this showcause notice. Further Company also received showcause notice for Non levy of Service tax on Import of Services for the period 2013-14 to 2015-16 for ₹ 70 lakhs, the Company has recorded liability ₹ 51.51 lakhs on account of this show cause notice.

2 In addition, the Company is liable to pay service tax on use on temporary transfer of copyright in the period 1 July 2010 to 30 June 2012. The Company filed a writ petition in Mumbai High Court challenging the constitutionality and the legality of this entry and received ad-interim protection and accordingly, no amounts were provided for by the Company for the period 1 April 2011 to 30 June 2012.

3 It is not practicable for the Group to estimate the timing of cash outflows,if any, in respect of the above, pending resolution of the respective proceedings.

4 From time to time, the Group is involved in legal proceedings arising in the ordinary course of its business, typically intellectual property litigation and infringement claims related to the Company's feature films and other commercial activities, which could cause the Company to incur expenses or prevent the Company from releasing a film. While the resolution of these matters cannot be predicted with certainty, the Company does not believe, based on current knowledge or information available, that any existing legal proceedings or claims are likely to have a material and adverse effect on its financial position, results of operations or cash flows.

5 The Company does not expect any reimbursements in respect of the above contingent liabilities.

**(b) Commitments**                                                                    Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| Estimated amount of contracts remaining to be executed on capital account | 179,444 | 168,465 |
| | 179,444 | 168,465 |
| **Total** | **225,161** | **214,521** |

# Notes
**to the consolidated financial statements and other explanatory information**

**41   Employment benefits**

**a)   Gratuity**

The following table set out the status of the gratuity plan as required under Indian Accounting Standard (Ind AS) - 19, Employee benefits, and the reconciliation of opening and closing balances of the present value of the defined benefit obligation:

Amount ₹ in lakhs

|  |  | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---:|---:|
| **I** | **Change in projected benefit obligation** | | |
| | Liability at the beginning of the year | 547 | 539 |
| | Interest cost | 39 | 42 |
| | Current service cost | 84 | 89 |
| | Past service cost | - | - |
| | Benefits paid | (107) | (63) |
| | Actuarial loss on obligations | (139) | (60) |
| | Liability at the end of the year | 424 | 547 |
| | Current portion | 80 | 121 |
| | Non-current portion | 344 | 426 |
| **II** | **Recognized in Balance Sheet** | | |
| | Liability at the end of the year | 424 | 547 |
| | Amount recognized in Balance Sheet | **424** | **547** |
| **III** | **Expense recognized in Statement of Profit and loss** | | |
| | Current service cost | 84 | 89 |
| | Interest cost | 39 | 42 |
| | | **123** | **131** |
| | **Actuarial (Gains) / losses** | | |
| | Arising from changes in experience | (88) | (33) |
| | Arising from changes in financial assumptions | (36) | 10 |
| | Arising from changes in demographic assumptions | (17) | (43) |
| | Expense/(income) recognised in Other comprehensive income | **(141)** | **(66)** |
| **IV** | **Assumptions used** | | |
| | Discount rate | 6.43%- 6.76% | 6.76% - 7.22 % |
| | Long-term rate of compensation increase | 10.00% | 10.00% |
| | Attrition Rate | 13%-23% | 13%-23% |
| | Expected average remaining working life | 6 years | 6 years |

**CONSOLIDATED FINANCIAL STATEMENT**

# Notes
**to the consolidated financial statements and other explanatory information**

**V    A quantitative sensitivity analysis for significant assumption as at 31 March 2020 is as shown below:**

**Impact on defined benefit obligation**                                          Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| Projected benefit obligation on current assumption | 424 | 547 |
| Discount rate | | |
| 1.00 % increase | (13) | (25) |
| 1.00 % decrease | 14 | 28 |
| **Rate of increase in salary** | | |
| 1.00 % increase | 13 | 22 |
| 1.00 % decrease | 10 | (21) |
| **Rate of increase in employee turnover** | | |
| 1.00 % increase* | 0 | (4) |
| 1.00 % decrease* | 0 | 4 |

* Amount less than one lakh

**VI    Maturity profile of defined benefit obligation**                          Amount ₹ in lakhs

|  | As at 31 March 2020 | As at 31 March 2019 |
|---|---:|---:|
| **Year** | | |
| Year 1 | 95 | 121 |
| Year 2 | 103 | 55 |
| Year 3 | 60 | 54 |
| Year 4 | 44 | 62 |
| Year 5 | 45 | 49 |
| Sum of Years 6-10 | 198 | 504 |

**VII    Interest rate risk :** A fall in the discount rate which is linked to the G.Sec. Rate will increase the present value of the liability requiring higher provision.

**VIII    Salary Risk :** The present value of the defined benefit plan liability is calculated by reference to the future salaries of members. As such, an increase in the salary of the members more than assumed level will increase the plan's liability.

**IX    Asset Liability Matching Risk :** The plan faces the ALM risk as to the matching cash flow. Company has to manage pay-out based on pay as you go basis from own funds.

**X    Mortality risk :** Since the benefits under the plan is not payable for life time and payable till retirement age only, plan does not have any longevity risk.

**b)    Compensated absences**

The Company incurred ₹ 74 lakhs (31 March 2019 ₹ 118 lakhs) towards accrual for compensated absences during the year.

**c)    Provident fund**

The Company contributed ₹ 134 lakhs (31 March 2019 ₹ 172 lakhs) to the provident fund plan, ₹ 2 lakhs (31 March 2019 ₹ 6 lakhs) to the Employee state insurance plan and ₹ 4 lakhs (31 March 2019 ₹ 5 lakhs) to the National Pension Scheme during the year.

# Notes
**to the consolidated financial statements and other explanatory information**

## 42 Share Based Compensation

The Company has instituted Employees' Stock Option Plan "ESOP 2009" and "ESOS 2017" under which the stock options have been granted to employees. The scheme was approved by the shareholders at the Extra Ordinary General Meeting held on 17 December 2009 and Annual General Meeting held on 29 September 2017 respectively. The details of activities under the ESOP 2009 and ESOS 2017 scheme are summarized below:

**The expense recognized for employee services received during the year is shown in the following table:**          Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| Expense arising from equity-settled share-based payment transactions | 101 | 799 |

There were no cancellations or modifications to the awards in 31 March 2020 or 31 March 2019

**Movements during the year**

The following table illustrates the number and weighted average exercise prices (WAEP) of, and movements in, share options during the year:

| | As at 31 March 2020 | | As at 31 March 2019 | |
|---|---|---|---|---|
| | Number | WAEP* | Number | WAEP* |
| Outstanding at 1 April | 757,885 | 32 | 1,624,034 | 29 |
| Granted during the year | - | - | - | - |
| Forfeited during the year | (156,775) | 10 | (329,886) | 52 |
| Exercised during the year | (121,496) | 10 | (536,263) | 10 |
| Outstanding at 31 March | **479,614** | **45** | **757,885** | **32** |
| Exercisable at 31 March | 325,740 | 59 | 289,002 | 68 |
| Range of exercise price of outstanding options (₹) | | ₹ 10-150 | | ₹ 10-150 |
| Weighted average remaining contractual life of option | | 2.96 Years | | 2.96 Years |

Black Scholes valuation model has been used for computing the weighted average fair value considering the following inputs:

| Particulars | 17-Dec-09 | 12-Aug-10 | 1-Jul-12 | 14-Oct-13 | 12-Nov-14 | 12-Feb-15 | 9-Feb-16 | 10-Feb-17 | 14-Nov-17 | 10-Feb-18 |
|---|---|---|---|---|---|---|---|---|---|---|
| Dividend yield (%) | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil |
| Expected volatility | 75.00% | 60.00% | 44.00% | 35.00% | 40.11% | 37.84% | 46.46% | 48.66% | 56.53% | 53.15% |
| Risk free interest rate | 6.30% | 6.50% | 8.36% | 8.57% | 8.50% | 7.74% | 7.49% | 6.51% | 6.90% | 7.38% |
| Exercise price | 75-175 | 75-135 | 75 | 150 | 10 | 10 | 10 | 10 | 10 | 10 |
| Expected life of options granted in years | 5.25 | 5.25 | 5.50 | 4.50 | As per Table 1.1 | | | 4.27 | 3.50 | 4.50 |

**Table 1.1**

**Expected life of options granted in years**

| Option Grant date | 9-Feb-16 | | 12-Feb-15 | | 12-Nov-14 | |
|---|---|---|---|---|---|---|
| | Old Employees | New Employees | Old Employees | New Employees | Old Employees | New Employees |
| Year I | 3.50 | 4.50 | 3.00 | 3.00 | 3.50 | 4.50 |
| Year II | 4.50 | 5.50 | 3.50 | 4.00 | 4.50 | 5.50 |
| Year III | 5.50 | 6.50 | 4.00 | 4.50 | 5.50 | 6.50 |

The expected life of options is based on historical data and current expectations and is not necessarily indicative of exercise patterns that may occur. The expected volatility reflects the assumption that the historical volatility over a period similar to the life of the options is indicative of future trends, which may differ from the actual.

## 43 Segment Reporting

**Description of segment and principal activities**

The Company acquires, co-produces and distributes Indian films in multiple formats worldwide. Film content is monitored and strategic decisions around the business operations are made based on the film content, whether it is new release or library. Hence, Management identifies only

CONSOLIDATED FINANCIAL STATEMENT

# Notes
**to the consolidated financial statements and other explanatory information**

one operating segment in the business, film content. The Company distributes film content to the Indian population in India and worldwide and to non-Indian consumers who view Indian films that are subtitled or dubbed in local languages. As a result of these distribution activities, the management examines the performance of the business from a geographical market perspective.

Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| **Revenue by region of domicile of customer's location** | | |
| India | 21,363 | 67,164 |
| United Arab Emirates | 52,108 | 27,817 |
| Rest of the world | 7,889 | 8,149 |
| **Total revenue** | **81,360** | **103,130** |

**Non-current assets other than financial instruments, investments accounted for using equity method and deferred tax**    Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| **Non-current assets** | | |
| India | 92,325 | 225,740 |
| United Arab Emirates | 18,444 | 19,375 |
| Rest of the world | 3,008 | 25,694 |
| **Total non-current assets** | **113,777** | **270,809** |

## 44 Related party disclosures

**Parent entity**

| Relationship | Name |
|---|---|
| Ultimate holding company | **Eros International PLC** |
| Holding company | **Eros Worldwide FZ LLC** |

**List of Key management personnel (KMP)**

Mr. Sunil Lulla – Executive Vice Chairman and Managing Director

Mr. Kishore Lulla – Executive Director

Mr. Farokh Gandhi - Chief Financial Officer (India)

Mr. Abhishekh Kanoi - Vice President Company Secretary and Compliance Officer (upto 12 August 2019)

Mr. Vijay Thaker - Vice President Company Secretary and Compliance Officer (w.e.f. 13 August 2019)

Mr. Pradeep Dwivedi - Chief Executive Officer (w.e.f. 10 February 2020)

| | |
|---|---|
| **Relatives of KMP with whom transactions exist** | Mrs. Manjula K Lulla (wife of Mr. Kishore Arjan Lulla) |
| | Mrs. Krishika Lulla (wife of Mr. Sunil Arjan Lulla) |
| **Entities over which KMP exercise significant influence** | Shivam Enterprises |
| | Eros Television India Private Limited |
| | M/s Eros International Distribution LLP |
| **Fellow subsidiary company** | Eros Digital Private Limited |
| | Eros International Limited, United Kingdom |
| | Eros Digital FZ LLC |
| | Eros Films Limited, Isle of Man |
| | Eros International Limited USA Inc. |

# Notes
to the consolidated financial statements and other explanatory information

**c)  Transactions with related parties**                                              Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| **Sale of film rights** | | |
| Eros Worldwide FZ LLC | 52,762 | 17,897 |
| | **52,762** | **17,897** |
| **Revenue attributable to Eros Digital FZ LLC** | **(10,681)** | **(9,727)** |
| **Sale of prints/VCD/DVD** | | |
| Eros Worldwide FZ LLC | - | 2 |
| **Total** | **-** | **2** |
| **Re-imbursement of administrative expense** | | |
| Eros Worldwide FZ LLC | 2,412 | 337 |
| Eros Digital FZ LLC | 5,678 | 9,349 |
| Eros International Limited | 142 | - |
| Eros International Limited USA Inc | 67 | - |
| **Total** | **8,299** | **9,686** |
| **Re-imbursement of administrative expenses given** | | |
| Eros Worldwide FZ LLC | 70 | - |
| **Total** | **70** | **-** |
| **Rent expenses** | | |
| Mr. Sunil Lulla | 384 | 384 |
| Mr. Kishore Lulla | 348 | 348 |
| Mrs. Manjula K Lulla | 36 | 36 |
| **Total** | **768** | **768** |
| **Interest income** | | |
| Eros Worldwide FZ LLC | 3,718 | - |
| Eros Digital FZ LLC | | 8 |
| **Total** | **3,718** | **8** |
| **Interest expenses** | | |
| Eros Digital Private Limited | 57 | 54 |
| **Total** | **57** | **54** |
| **Salary, commission and perquisites* to KMPs Total** | **778** | **826** |

\*   Perquisites to KMP have been valued as per Income tax Act, 1961 and rules framed thereunder or at actuals as the case may be.

\*   Excludes ₹ 1 lakhs (31 March 2019 : ₹ 9 lakhs) charged to Statement of Profit and loss on account of stock compensation for awards granted.

\*\* The remuneration accrued/paid by the company to its Vice Chairman and Managing Director for the year ended 31 March 2020 is in excess by ₹ 398 lakhs vis-a-vis the limits specified in section 197 of Companies Act, 2013 ('the act') read with schedule V thereto, as the Company does not have profits. The Company is in process of complying with the prescribed statutory requirements to regularize such excess payments, including seeking approval of shareholders, as necessary. Untill then, the said excess amount is held in trust by the Vice Chairman and Managing Director.

**d)  Transactions with related parties (continued)**                                   Amount ₹ in lakhs

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| **Content advances given** | | |
| Eros International Limited | 100 | - |
| **Total** | **100** | **-** |
| **Trade advances/ loans given** | | |
| Eros Worldwide FZ LLC | 28,615 | 35,307 |
| Eros Films Limited | 7,858 | 13,937 |
| **Total** | **36,473** | **49,244** |
| **Recovery of trade advances/ loans given** | | |
| Eros International Limited | 100 | 281 |
| Eros Worldwide FZ LLC | 6,920 | 3,912 |
| Eros Films Limited | 7,858 | 13,937 |

# Notes
to the consolidated financial statements and other explanatory information

| | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| Shivam Enterprises | 57 | - |
| Eros Television India Pvt. Ltd. | 4 | - |
| **Total** | **14,939** | **18,130** |
| **Trade advances/ loans taken** | | |
| Eros Worldwide FZ LLC | - | 10,596 |
| Eros International Limited | - | 1,112 |
| Eros Digital Private Limited | 25 | 75 |
| Eros Digital FZ LLC | 29 | - |
| **Total** | **54** | **11,783** |
| **Repayment of advances/ loans** | | |
| Eros International Limited | 13,738 | 1,102 |
| Eros Digital Private Limited | 43 | 81 |
| **Total** | **13,781** | **1,183** |
| **Refund of deposits** | | |
| Mr. Sunil Lulla | 254 | 35 |
| Mr. Kishore Lulla | 60 | - |
| **Total** | **314** | **35** |

Amount ₹ in lakhs

| Balances with related parties | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| **Trade balances due from** | | |
| Eros Worldwide FZ LLC | 37,884 | 11,701 |
| Eros Digital FZ LLC | 11,128 | 5,989 |
| **Total** | **49,012** | **17,690** |
| **Trade balances due to** | | |
| Eros Worldwide FZ LLC | 3,028 | 9,340 |
| Eros International Limited | 118 | 108 |
| Eros Digital FZ LLC | 19,827 | 10,713 |
| **Total** | **22,973** | **20,161** |
| **Advances/Loan due to** | | |
| Eros Worldwide FZ LLC | 311 | 14,049 |
| Eros Digital Private Limited | - | 528 |
| Eros International Limited | 11 | 10 |
| Eros Digital FZ LLC | 15 | - |
| **Total** | **337** | **14,587** |
| **Loans and advances due from** | | |
| Eros Worldwide FZ LLC | 76,150 | 42,983 |
| Shivam Enterprises | - | 57 |
| Eros Television India Private Limited | - | 4 |
| Eros Digital FZ LLC | 562 | 373 |
| Eros International Limited | 56 | 51 |
| **Total** | **76,768** | **43,468** |
| **Security Deposits/Amounts due from KMPs or their relatives** | | |
| Mr. Sunil Lulla | 13 | 267 |
| Mr. Kishore Lulla | 180 | 240 |
| Mrs. Manjula Lulla | 75 | 75 |
| **Total** | **268** | **582** |
| **Amounts due to KMPs or their relatives** | | |
| Mr. Sunil Lulla | 225 | 39 |
| Mr. Kishore Lulla | 143 | 149 |
| Mrs. Krishika Lulla | 2 | - |
| Mrs. Manjula Lulla | 103 | 64 |
| **Total** | **473** | **252** |

**2 (a)  Terms and conditions**

All outstanding balances are unsecured and repayable in cash.

# Notes
**to the consolidated financial statements and other explanatory information**

**45    Categories of financial assets and financial liabilities**

The carrying value and fair value of financial instruments by categories are as follows:      Amount ₹ in lakhs

| Particulars | Carrying value /Fair value | |
|---|---|---|
| | As at 31 March 2020 | As at 31 March 2019 |
| **Financial assets** | | |
| **Measured at fair value through profit and loss** | | |
| Investments | - | - |
| | - | - |
| **Measured at amortised cost** | | |
| Loans | 80,021 | 46,311 |
| Restricted bank deposits | 3,655 | 6,505 |
| Other financial assets | 841 | 1,793 |
| Trade receivables | 55,224 | 79,352 |
| Cash and cash equivalents | 1,107 | 14,111 |
| | **140,848** | **148,072** |
| **Financial liabilities** | | |
| **Measured at fair value through profit and loss** | | |
| Forward contract liabilities | - | 430 |
| **Total** | **-** | 430 |
| **Measured at amortised cost** | | |
| Borrowings | 46,244 | 53,992 |
| Acceptance | 1,400 | 5,796 |
| Trade payables | 35,481 | 31,178 |
| Other financial liabilities | 11,494 | 7,235 |
| | **94,619** | **98,201** |

**46    Fair value measurement of financial instruments**

Financial assets and financial liabilities measured at fair value in the balance sheet are grouped into three Levels of a fair value hierarchy. The three Levels are defined based in the observability of significant inputs to the measurement, as follows:

Level 1: quoted prices (unadjusted) in active markets for identical assets or liabilities

Level 2: inputs other than quoted prices included within Level 1 that are observable for the asset or liability, either directly or indirectly
Level 3: unobservable inputs for the asset or liability

The following table shows the Levels within the hierarchy of financial assets and liabilities measured at fair value on a recurring basis:

Amount ₹ in lakhs

| Particulars | Carrying value /Fair value | | | |
|---|---|---|---|---|
| | As at 31 March 2020 | Level 1 | Level 2 | Level 3 |
| **Financial assets** | | | | |
| **Measured at fair value through Profit and Loss** | | | | |
| Investments | - | - | - | - |
| **Total** | **-** | **-** | **-** | **-** |

**CONSOLIDATED FINANCIAL STATEMENT**

# Notes
**to the consolidated financial statements and other explanatory information**

| Particulars | Carrying value /Fair value | | | |
|---|---|---|---|---|
| | As at 31 March 2020 | Level 1 | Level 2 | Level 3 |
| **Measured at fair value through profit and loss** | | | | |
| Forward contract liabilities | - | - | - | - |
| **Total** | **-** | **-** | **-** | **-** |

The following table shows the financial assets and liabilities measured at amortised cost on a recurring basis:

Amount ₹ in lakhs

| Particulars | Carrying value /Fair value | | | |
|---|---|---|---|---|
| | As at 31 March 2020 | Level 1 | Level 2 | Level 3 |
| **Measured at amortised cost** | | | | |
| **Financial assets** | | | | |
| Loans | 80,021 | - | - | - |
| Restricted deposits | 3,655 | - | - | - |
| Other financial assets | 841 | - | 373 | - |
| Trade receivables | 55,224 | - | - | - |
| Cash and cash equivalents | 1,107 | - | - | - |
| | **140,848** | **-** | **373** | **-** |
| **Measured at amortised cost** | | | | **-** |
| **Financial liabilities** | | | | |
| Borrowings- Non-current | 67 | - | 67 | - |
| Borrowings- Current | 46,177 | - | - | - |
| Acceptance | 1,400 | - | - | - |
| Trade payables | 35,481 | - | - | - |
| Other financial liabilities | 11,494 | - | - | - |
| **Total** | **94,619** | **-** | **67** | **-** |

During the year ended 31 March 2020 there was no transfer between level 2 and level 3 fair value hierarchy.

Fair value of cash and short term deposits, trade and other short term receivables, trade payables, other current liabilities and short term borrowings carried at amortised cost is not materially different from its carrying cost largely due to short term maturities of these financial assets and liabilities.

Fair value of the borrowing items fall within level 2 of the fair value hierarchy and is calculated on the basis of discounted future cash flows.

Non-listed shares and other securities fall within level 3 of the fair value hierarchy. Valuation is based on the net asset method.

Financial instruments with fixed and variable interest rate fall within level 2 of the fair value hierarchy and are evaluated by Company based on parameters such as interest rate, credit rating or assessed credit worthiness.

Amount ₹ in lakhs

| Particulars | Carrying value /Fair value | | | |
|---|---|---|---|---|
| | As at 31 March 2019 | Level 1 | Level 2 | Level 3 |
| **Financial assets** | | | | |
| **Measured at fair value through Profit and Loss** | | | | |
| Investments | - | - | - | - |
| **Total** | **-** | **-** | **-** | **-** |

# Notes
**to the consolidated financial statements and other explanatory information**

| Particulars | Carrying value /Fair value | | | |
| --- | --- | --- | --- | --- |
| | As at 31 March 2019 | Level 1 | Level 2 | Level 3 |
| **Measured at fair value through profit and loss** | | | | |
| Forward contract liabilities | 430 | - | 430 | - |
| **Total** | **430** | **-** | **430** | **-** |

The following table shows the financial assets and liabilities measured at amortised cost on a recurring basis:          Amount ₹ in lakhs

| Particulars | Carrying value /Fair value | | | |
| --- | --- | --- | --- | --- |
| | As at 31 March 2019 | Level 1 | Level 2 | Level 3 |
| **Measured at amortised cost** | | | | |
| **Financial assets** | | | | |
| Loans | 46,311 | - | - | - |
| Restricted deposits | 6,505 | - | - | - |
| Other financial assets | 1,793 | - | 795 | - |
| Trade receivables | 79,352 | - | - | - |
| Cash and cash equivalents | 14,111 | - | - | - |
| | **148,072** | **-** | **795** | **-** |
| **Measured at amortised cost** | | | | **-** |
| **Financial liabilities** | | | | |
| Borrowings- Non-current | 8,724 | - | 8,724 | - |
| Borrowings- Current | 45,268 | - | - | - |
| Acceptance | 5,796 | - | - | - |
| Trade payables | 31,178 | - | - | - |
| Other financial liabilities | 7,235 | - | - | - |
| **Total** | **98,201** | **-** | **8,724** | **-** |

During the year ended 31 March  2019 there  was no transfers between level 2 and level 3 fair value hierarchy.

Fair value of cash and short term deposits, trade and other short term receivables, trade payables, other current liabilities and short term borrowings carried at amortised cost  is not materially different from its carrying cost largely due to short term maturities of these financial assets and liabilities.

**47  Financial instruments and Risk management**

The Company is exposed to various risks in relation to financial instruments. The Company's financial assets and liabilities by category are summarised in note. The main types of risks are market risk, credit risk and liquidity risk.

The Company's risk management is coordinated in close cooperation with the board of directors and audit committee meetings.

The Company has established objectives concerning the holding and use of financial instruments. The underlying basis of these objectives is to manage the financial risks faced by the Company.

**Management of Capital Risk and Financial Risk**

The Company manages its capital to ensure that it will be able to continue as a going concern while maximizing the return to shareholders through the optimization of the debt and equity balance. The Company monitors capital using a gearing ratio, which is net debt divided by total capital. For the purpose of the Company's capital management, capital includes issued capital and all other equity reserves attributable to the equity shareholders of the Company. Net debt is calculated as borrowing (refer note 17, 23, 24 and 26) less cash and cash equivalents.

# Notes
## to the consolidated financial statements and other explanatory information

The gearing ratio at the end of the reporting period was as follows:

Amount ₹ in lakhs

| | As at 31 March 2020 | As at 31 March 2019 |
|---|---|---|
| Debt | 56,283 | 64,988 |
| Less: Cash and cash equivalents | (1,107) | (14,111) |
| Net debt | 55,176 | 50,877 |
| Equity | 126,042 | 258,239 |
| Net debt to equity | 43.78% | 19.70% |

**Financial risk management objectives**

Based on the operations of the Company , Management considers that  key financial risks that it faces are credit risk, currency risk, liquidity risk and interest rate risk. The objectives under each of these risks are as follows:

• credit risk: minimize the risk of default and concentration.

• currency risk: reduce exposure to foreign exchange movements principally between INR and USD.

• liquidity risk: ensure adequate funding to support working capital and future capital expenditure requirements.

• interest rate risk: mitigate risk of significant change in market rates on the cash flow of issued variable rate debt.

**Credit Risk**

The Company's credit risk is principally attributable to its trade receivables, loans and bank balances. As a number of the Company's trading activities require third parties to report revenues due to the Company this risk is not limited to the initial agreed sale or advance amounts. The amounts shown within the Balance Sheet in respect of trade receivables and loans are net of allowances for doubtful debts based upon objective evidence that the Company will not be able to collect all amounts due.

Trading credit risk is managed on a customer by customer basis by the use of credit checks on new clients and individual credit limits, where appropriate, together with regular updates on any changes in the trading partner's situation. In a number of cases trading partners will be required to make advance payments or minimum guarantee payments before delivery of any goods. The Company reviews reports received from third parties and in certain cases as a matter of course reserve the right within the contracts it enters into to request an independent third party audit of the revenue reporting.

The credit risk on bank balances is limited because the counterparties are banks with high credit ratings as signed by international credit rating agencies.

The Company from time to time will have significant concentration of credit risk in relation to individual theatrical releases, television syndication deals or digital licenses. This risk is mitigated by contractual terms which seek to stagger receipts and/or the release or airing of content. As at 31 March 2020 93 % (31 March 2019: 38 %) of trade account receivables were represented by the top 5 customer, out of which as at 31 March 2020  88 % (31 March 2019: 21 %) of trade account receivables were represented by the related parties. The maximum exposure to credit risk is that shown within the statement of financial position.

As at 31 March 2020, the Company did not hold any material collateral or other credit enhancements to cover its credit risks associated with its financial assets.

**Currency Risk**

The Company is exposed to foreign exchange risk from foreign currency transactions. As a result it faces both translation and transaction currency risks which are principally mitigated by matching foreign currency revenues and costs wherever possible.

The Company has identified that it will need to utilize hedge transactions to mitigate any risks in movements between the US Dollar and the Indian Rupee and has adopted an agreed set of principles that will be used when entering into any such transactions. No such transactions have been entered into to date and the Company has managed foreign currency exposure to date by seeking to match foreign currency inflows and outflows as much as possible such as packing credit repayment in USD is matched with remittances from UAE in USD. Details of the foreign currency borrowings that the Company uses to mitigate risk are shown within Interest Risk disclosures.

As at the Balance Sheet date there were no outstanding forward foreign exchange contracts. The Company adopts a policy of borrowing where appropriate in the local currency as a hedge against translation risk. The table below shows the Company's net foreign currency monetary assets and liabilities position in the main foreign currencies, translated to Indian Ruppes (INR) equivalents, as at the year end:

# Notes
## to the consolidated financial statements and other explanatory information

Amount in lakhs

|  | Net balance receivables / (payables) | | | | |
|---|---|---|---|---|---|
|  | INR | USD | SGD* | GBP | EUR |
| As at 31 March 2020 | 27,190 | 360 | 1 | 0 | (0) |
| As at 31 March 2019 | (179) | (3) | 0 | - | - |

*amount represents less than one lakh

The above foreign currency arises when the Company holds monetary assets and liabilities denominated in a currency other than INR.

A uniform decrease of 10% in exchange rates against all foreign currencies in position as of 31 March 2020 would have increased in the Company's net profit before tax by approximately ₹ 2,719 lakhs (31 March 2019: ₹ 2 lakhs). An equal and opposite impact would be experienced in the event of an increase by a similar percentage

**Liquidity risk**

The Company manages liquidity risk by maintaining adequate reserves and agreed committed banking facilities. Management of working capital takes account of film release dates and payment terms agreed with customers.

A maturity analysis for financial liabilities is provided below. The amounts disclosed are based on contractual undiscounted cash flows. The table includes both interest and principal cash flows. To the extent that interest flows are floating rate, the undiscounted amount is derived from interest rates as at 31 March, in each year.

Amount ₹ in lakhs

|  | Total | Less than 1 year | 1-3 years | 3-5 years | More than 5 years |
|---|---|---|---|---|---|
| **As at 31 March 2020** |  |  |  |  |  |
| Borrowing principal payments | 54,914 | 54,816 | 98 | - | - |
| Borrowing interest payments | 6,127 | 6,125 | 2 | - | - |
| Acceptance | 1,400 | 1,400 | - | - | - |
| Trade and other payables | 35,528 | 35,410 | 118 | - | - |

Amount ₹ in lakhs

|  | Total | Less than 1 year | 1-3 years | 3-5 years | More than 5 years |
|---|---|---|---|---|---|
| **As at 31 March 2019** |  |  |  |  |  |
| Borrowing principal payments | 59,263 | 50,468 | 8,195 | 600 | - |
| Borrowing interest payments | 7,199 | 5,987 | 1,194 | 18 | - |
| Acceptance | 5,796 | 5,796 | - | - | - |
| Trade and other payables | 31,203 | 31,095 | 108 | - | - |

At 31 March 2020, the Company had facilities available of ₹ 51,556 lakhs (31 March 2019: ₹ 64,731 lakhs) and had net undrawn amounts of ₹ 189 lakhs ( 31 March 2019: ₹ 201 lakhs) available.

**Interest rate risk**

The Company is exposed to interest rate risk as the Company has borrowed funds at floating interest rates. The risk is managed  as the loans are at flowting interest rates which is aligned to the market.

A uniform increase of 100 basis in interest rates against all borrowings in position as of 31 March 2020 would have decreased in the Company's net profit before tax by approximately ₹ 247 lakhs (31 March 2019: net profit before tax  of ₹ 453 lakhs). An equal and opposite impact would be experienced in the event of a decrease by a similar basis.

CONSOLIDATED FINANCIAL STATEMENT

# Notes
**to the consolidated financial statements and other explanatory information**

**48    a.    Enterprises Consolidated as Subsidiary in accordance with Indian Accounting Standard 110- Consolidated Financial Statements**

| Sr. No. | Name of enterprises | Country of incorporation | Proportion of ownership interest |
|---|---|---|---|
| 1 | Eros International Films Private Limited | India | 100% |
| 2 | Big Screen Entertainment Private Limited | India | 64% |
| 3 | EyeQube Studios Private Limited | India | 100% |
| 4 | EM Publishing Private Limited | India | 100% |
| 5 | Eros Animation Private Limited | India | 100% |
| 6 | Copsale Limited | British Virigin Island | 100% |
| 7 | Digicine PTE Limited | Singapore | 100% |
| 8 | Colour Yellow Productions Private Limited | India | 50% |
| 9 | ErosNow Private Limited (formerly known as Universal Power Systems Private Limited) | India | 100% |
| 10 | Reliance Eros Production LLP | India | 50% |
| 11 | Eros International Distribution LLP | India | 100% |

**48    b.    Additional information, as required under Schedule III to the Companies Act, 2013, of enterprises consolidated as Subsidiary/ Associates/Joint Ventures**

| Name of Enterprises | Net Assets, i.e., total assets minus total liabilities | | Share in profit or loss | | Share in other comprehensive income | | Share in total comprehensive income | |
|---|---|---|---|---|---|---|---|---|
| | As % of consolidated net assets | ₹ in lakhs | As % of consolidated profit or loss | ₹ in lakhs | As % of consolidated other comprehensive income | ₹ in lakhs | As % of consolidated total comprehensive income | ₹ in lakhs |
| **Parent** | | | | | | | | |
| Eros International Media Limited | 1.4% | 1,822 | 82.8% | (116,073) | 1% | 95 | 87.7% | (115,978) |
| **Subsidiaries** | | | | | | | | |
| **Indian** | | | | | | | | |
| Eros International Films Private Limited | 71.9% | 90,587 | 0.2% | (227) | - | - | 0.2% | (227) |
| Big Screen Entertainment Private Limited | 0.1% | 77 | 0.0% | (1) | - | - | 0.0% | (1) |
| EyeQube Studios Private Limited | 0.0% | 46 | 0.0% | 6 | - | - | 0.0% | 6 |
| EM Publishing Private Limited | 0.0% | (19) | 0.0% | (1) | - | - | 0.0% | (1) |
| Eros Animation Private Limited | 0.0% | (2) | 0.0% | (0) | - | - | 0.0% | (0) |
| Colour Yellow Productions Private Limited | 2.1% | 2,673 | -0.6% | 803 | - | - | -0.6% | 803 |
| Universal Power Systems Private Limited | 0.0% | (59) | 0.2% | (272) | 0% | 10 | 0.2% | (262) |
| Eros International Distribution LLP | - | - | - | - | - | - | - | - |
| **Foreign** | | | | | | | | |
| Digicine PTE Limited | 0.2% | 243 | 0.3% | (377) | 0% | 22 | 0.3% | (355) |
| Copsale Limited | 71.9% | 90,587 | 12.2% | (17,129) | 98% | 7,684 | 7.1% | (9,445) |
| **Non controlling interests** | 1.1% | 1,428 | -0.3% | 400 | | | -0.3% | 400 |

# Notes
**to the consolidated financial statements and other explanatory information**

**49    Auditors' remuneration**                                                                  Amount ₹ in lakhs

|  | Year ended 31 March 2020 | Year ended 31 March 2019 |
|---|---|---|
| **As auditor** | | |
| Statutory audit | 117 | 96 |
| Limited review | 18 | 15 |
| Tax audit | 10 | 9 |
| | **145** | **120** |
| In other capacity | | |
| Other services (certification fees) | 2 | 2 |
| | **2** | **2** |
| **Total** | **147** | 122 |

**50**    Based on the information available with the Company, there are no dues payable as at the year end to micro, small and medium enterprises as defined in The Micro, Small & Medium Enterprises Development Act, 2006. This information has been relied upon by the statutory auditors of the Company.

**51    Post reporting date events**

In December 2019, a novel strain of coronavirus (COVID-19) emerged in Wuhan, Hubei Province, China. While initially the outbreak was largely concentrated in China and caused significant disruptions to its economy, it has now spread to several other countries, and infections have been reported globally including India, United Kingdom, United States, Dubai, Singapore and Australia where the group through its offices distributes the films theatrically. On March 24, 2020, in response to the public health risks associated with the COVID-19, the Government of India announced nation-wide lockdown which resulted in the closure of all the theatres across India and caused disruptions in the production and availability of content, including delayed, or in some cases, shortened or cancelled theatrical releases. The lockdown has affected the Group's ability to generate revenues from the monetization of Indian film content in various distribution channels through agreements with commercial theatre operators

The Central and State Governments have initiated the steps to lift the lockdown, however, theatres are still not allowed to operate till the further directives issued by the governments. The Group has considered the possible effects the may results from the pandemic on the carrying amount of the asset.

The Management has evaluated the impact on its financial statements and have made appropriate adjustments, wherever required. The extent of the impact on Group's operations remains uncertain and may differ from that estimated as at the date of approval of these standalone financial statements and will be dictated by the length of time that such disruptions continue, which will, in turn, depend on the currently unknowable duration of COVID-19 and among other things, the impact of governmental actions imposed in response to the pandemic. The Group is monitoring the rapidly evolving situation and its potential impacts on the Group's financial position, results of operations, liquidity, and cash flows.

**52**    The group has incurred loss for the year amounting ₹ 140,121 lakhs (after considering the impact of an impairment loss amounting ₹ 155,352 lakhs) The Group is dependent upon external borrowings for its working capital needs and investment in content and film rights. Given the economic uncertainty created by the novel coronavirus coupled with significant business disruptions for film distributer and broadcasting companies, there is likely be an increase in events and circumstances which may cast doubt on a Company's ability to continues as a going concern. The merger of STX Filmworks Inc with subsidiary of ultimate holding company Eros International Plc will result into equity infusion of US$ 125 million in combined entity. These funds would improve liquidity within the group. The group has considered the impact of these uncertainties and factored them into their financial forecasts, including renewal of short-term borrowings. For this reason, Management continues to adopt the going concern basis in preparing the consolidated financial statements.

**53    Authorisation of financial statements**

The financial statement for the year ended 31 March 2020 (including comparatives) were approved by the board of directors on 30 July 2020.

As per our report of even date

**For and on behalf of Board of Directors**

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No.: 101720W/W100355

**Amit Chaturvedi**
Partner
Membership No: 103141

**Sunil Lulla**
Executive Vice Chairman &
Managing Director
(DIN: 00243191)

**Sunil Srivastav**
Non Executive Independent
Director
(DIN: 00237561)

**Pradeep Dwivedi**
Chief Executive Officer

**Farokh P. Gandhi**
Chief Financial Officer

**Vijay Thaker**
Vice President - Company Secretary
and Compliance Officer

Place: Mumbai
Date : 30 July 2020

Place: Mumbai
Date : 30 July 2020

# NOTICE OF THE 26TH ANNUAL GENERAL MEETING

**Regd. Office:** 201, Kailash Plaza, Opp. Laxmi Industrial Estate, Off. Andheri Link Road, Andheri West, Mumbai 400 053, Maharashtra (India).
**Corporate Office:** 901/ 902, Supreme Chambers, Off. Veera Desai Road, Andheri West, Mumbai 400 053, Maharashtra (India).
Phone: +91 22 66021500 | Fax: +91 22 66021540 | Email: compliance.officer@erosintl.com | Website: www.erosstx.com
**CIN:** L99999MH1994PLC080502

**NOTICE** is hereby given that the 26th Annual General Meeting (AGM) of the Members of Eros International Media Limited will be held on Tuesday, the 15th day of December, 2020 through Video Conferencing/ Other Audio Visual Means ("VC/OAVM") Facility, at 3.00 P.M., to transact the following business:

## ORDINARY BUSINESS:

1.  To receive, consider and adopt:

    a.  the Audited Financial Statements of the Company for the financial year ended 31 March 2020, together with the Report of the Directors' and Auditors thereon; and

    b.  the Audited Consolidated Financial Statements of the Company for the financial year ended 31 March 2020, together with the Report of the Auditors thereon.

2.  To appoint a Director in place of Mr. Kishore Arjan Lulla (DIN: 02303295), who retires by rotation, and being eligible, offers himself for re-appointment.

## SPECIAL BUSINESS:

3.  **To consider and approve payment of remuneration for financial year 2019-20 to Mr. Sunil Lulla, an Executive Vice Chairman & Managing Director of the Company**

    To consider and if thought fit, to pass with or without modification(s), the following resolution as a **Special Resolution**:

    "**RESOLVED THAT** pursuant to the provisions of Sections 197 and 198 read with Schedule V of the Companies Act, 2013 ("the Act") and other applicable provisions, if any, of the Act and the Companies (Appointment and Remuneration of Managerial Personnel) Rules, 2014 (including any statutory modification(s) or re-enactment thereof, for the time being in force), and pursuant to the recommendations of Nomination and Remuneration Committee and the Board of Directors of the Company and subject to such approval as may be required, the approval of the members of the Company be and is hereby accorded to ratify and confirm the waiver of recovery of the excess remuneration amounting to ₹ 398 lakhs paid to Mr. Sunil Lulla (DIN: 00243191), Executive Vice Chairman & Managing Director for the financial year 2019-20, which is in excess of the limits prescribed under Schedule V of the Act in view of loss for the financial year 2019-20 and within the limits as approved by the Members of the Company at their 21st Annual General Meeting held on 3 September 2015.

    **RESOLVED FURTHER THAT** the Board and/or Company Secretary of the Company, be and are hereby authorised to do all such acts, deeds, matters and things as may be necessary, desirable or expedient to give effect to this resolution."

4.  **Re-appointment of Mr. Sunil Lulla (DIN: 00243191) as an Executive Vice Chairman & Managing Director of the Company and payment of remuneration**

    To consider and if thought fit, to pass with or without modification(s), the following resolution as a **Special Resolution:**

    "**RESOLVED THAT** in accordance with the provisions of Section 196, 197 and 203 read with Schedule V and all other applicable provisions of the Companies Act, 2013 and the Companies (Appointment and Remuneration of Managerial Personnel) Rules, 2014 (including any statutory modification(s) or re-enactment(s) thereof for the time being in force), approval of the Members of the Company be and is hereby accorded for re-appointment of Mr. Sunil Lulla (DIN: 00243191), as Executive-Vice Chairman & Managing Director of the Company, not liable to retire by rotation, for a period of five (5) years with effect from 28 September 2020 on such terms and conditions including remuneration as set out in the Explanatory Statement annexed to the Notice convening this Meeting, with the liberty to the Board of Directors (hereinafter referred to as "the Board" which term shall be deemed to include any committees constituted by the board) to alter and vary the terms and conditions of the said re-appointment and/or remuneration as it may deem fit and mutually agreed with Mr. Sunil Lulla, subject to the same not exceeding the limits specified under Schedule V to the Companies Act, 2013 or any statutory modification(s) or re-enactment(s) thereof."

    **RESOLVED FURTHER THAT** in the event of there being a loss or inadequacy of profits for any financial year, the aforesaid remuneration payable to Mr. Sunil Lulla, Executive Vice Chairman & Managing Director shall be the minimum remuneration payable to him in terms of the provisions of Schedule V of the Companies Act, 2013.

    **RESOLVED FURTHER THAT** the Board and/or Company Secretary of the Company, be and are hereby authorised to do all such acts, deeds, matters and things as may be necessary, desirable or expedient to give effect to this resolution."

5.  **Appointment of Ms. Bindu Saxena (DIN: 00167802) as an Independent Director of the Company**

    To consider and if thought fit, to pass with or without modification(s), the following resolution as an **Ordinary Resolution:**

    "**RESOLVED THAT** pursuant to Sections 149, 150 and 152 read with Schedule IV and other applicable provisions of the Companies Act, 2013 ('the Act') and Companies (Appointment and Qualification of Directors) Rules, 2014 (including any statutory modification(s) or re-enactment thereof, for the time being in force) and Regulation 17(1) and other relevant provisions of the SEBI (Listing Obligations and Disclosure Requirements) Regulations, 2015, Ms. Bindu Saxena (DIN: 00167802) who was appointed as an Additional Non-Executive Independent Director of the Company by the Board with effect from 26 September 2019, pursuant to Section 161 of the Act and Article 153 of the Article of Association of the Company and who holds office upto the date of this Annual General Meeting and is eligible for appointment as a Director and in respect of whom the Company has received a notice in writing from a member under section 160 of the Act proposing her candidature for the office of Director, be and is hereby appointed as an Independent Director of the Company.

    **RESOLVED FURTHER THAT** Ms. Bindu Saxena, who has submitted a declaration that she meets the criteria for independence as provided in Section 149(6) of the Act and who is eligible for appointment, be and is hereby appointed as an Independent Director of the Company, not liable to retire by rotation for a term of five (5) consecutive years commencing from the conclusion of this Annual General Meeting to the conclusion of the Annual General Meeting of the Company to be held in the calendar year 2025."

6.  **Appointment of Mr. Farokh P. Gandhi (DIN: 03112612) as a Director of the Company**

    To consider and if thought fit, to pass, with or without modification(s), the following resolution as an **Ordinary Resolution:**

    "**RESOLVED THAT** pursuant to the provisions of Sections 149, 152 and other applicable provisions, if any, of the Companies Act, 2013 ("the Act") read with the Companies (Appointment and Qualification of Director) Rules, 2014 (including any statutory modification(s) or re-enactment thereof, for the time being in force) and Regulation 17 of the SEBI (Listing Obligations and Disclosure Requirements) Regulations, 2015, Mr. Farokh P. Gandhi (DIN: 03112612) who was appointed by the Board of Directors as an

Additional Director of the Company with effect from 9 November 2020 in terms of Section 161(1) of the Act, and Article 153 of the Articles of Association of the Company and who holds office up to the date of this Annual General Meeting of the Company and in respect of whom the Company has received a notice in writing from a member under Section 160 of the Act proposing his candidature for the office of Director in addition to the Chief Financial Officer of the Company, be and is hereby appointed as a Director of the Company, liable to retire by rotation.

**RESOLVED FURTHER THAT** the Nomination and Remuneration Committee / Board of Director thereof be and is hereby authorized to do all such acts, deeds, matters and things as may be considered necessary, expedient or desirable to give effect to this Resolution."

By Order of the Board of Directors
For **Eros International Media Limited**

**Vijay Thaker**
Vice President- Company Secretary
& Compliance Officer

Date : 9 November 2020
Place : Mumbai

### NOTES

1. In view of the outbreak of the COVID-19 pandemic, Ministry of Corporate Affairs ("MCA")  has vide its Circular dated 5 May 2020 read with circulars dated 8 April 2020 and 13 April 2020 (collectively referred to as "MCA Circulars") permitted the holding of the ("AGM") through VC / OAVM, without the physical presence of the Members at a common venue. In compliance with the provisions of the Companies Act, 2013 ("Act"), SEBI (Listing Obligations and Disclosure Requirements) Regulations, 2015 ("SEBI Listing Regulations") and MCA Circulars, the AGM of the Company is being held through VC / OAVM.

2. The Explanatory Statement pursuant to Section 102 of the Companies Act, 2013 ("the Act") in respect of the special business set out at Item Nos. 3 to 6 of this notice is annexed as Annexure I. The relevant details as required under Regulation 36 and 36(3) of the SEBI Listing Regulations and Secretarial Standard-2 (SS-2), in respect of Director seeking appointment/re-appointment/fixation of remuneration at this AGM is annexed as Annexure II.

3. A Member entitled to attend and vote at the Meeting is entitled to appoint one or more proxies to attend and vote on his/ her behalf and the proxy need not be a Member of the Company. However, pursuant to MCA Circulars and SEBI Circular, the AGM will be held through VC / OAVM and the physical attendance of Members in any case has been dispensed with. Accordingly, the facility for appointment of proxies by the Members will not be available for the Meeting and hence the Proxy Form is not annexed to this Notice.

4. Pursuant to Section 113 of the Act representatives of Corporate Members may be appointed for the purpose of voting through remote e-voting or for participation and voting in the Meeting to be conducted through VC / OAVM. Corporate Members intending to attend the Meeting through their authorised representatives are requested to send a Certified True Copy of the Board Resolution and Power of Attorney, (PDF / JPG Format) if any, authorizing its representative to attend and vote on their behalf at the Meeting. The said Resolution/Authorisation shall be sent to the Company by email through its registered email address at compliance.officer@erosintl.com.

5. In compliance with the aforesaid MCA Circulars and SEBI Circular, Notice of the Meeting along with the Annual Report for FY 2019-20 is being sent only through electronic mode to those Members whose email addresses are registered with the Company/ Depositories. Members may note that the Notice and Annual Report for FY 2019-20 will also be available on website of the Company, i.e. www.erosstx.com, website of the Stock Exchanges i.e. BSE Limited and National Stock Exchange of India Limited at www.bseindia.com and www.nseindia.com respectively, and on the website of the CDSL www.evotingindia.com.

6. The business set out in the Notice will be transacted through electronic voting system and the Company is providing facility for voting by electronic means. Instructions and other information relating to e-voting are given in this Notice under Note No. 12.

7. Members attending the Meeting through VC / OAVM shall be counted for the purpose of reckoning the quorum under Section 103 of the Act.

8. Relevant documents referred to in the accompanying Notice and the Explanatory Statement, Registers and all other documents will be available for inspection in electronic mode during business hours on all days except Saturdays, Sundays and public holidays upto the date of the AGM. Members can inspect the same by sending an email to the Company at compliance.officer@erosintl.com.

9. Notice is also given under Section 91 of the Act read with Regulation 42 of the Listing Regulations, that the Register of Members and the Share Transfer Book of the Company will remain closed from Tuesday, 8 December, 2020 to Tuesday, 15 December, 2020 (both days inclusive).

10. Members are requested to intimate changes, if any, pertaining to their name, postal address, telephone/ mobile numbers, Permanent Account Number (PAN), mandates, nominations, power of attorney, to their Depository Participants ("DPs") in case the shares are held by them in dematerialized form and to the Registrar and Share Transfer Agents of the Company i.e. Link Intime India Private Limited in case the shares are held by them in physical form.

11. Members seeking any information/desirous of asking any questions at the Meeting with regard to the accounts or any matter to be placed at the Meeting are requested to send email to the Company at compliance.officer@erosintl.com atleast 10 days before the Meeting. The same will be replied by the Company suitably.

12. Information and other instructions relating to e-voting are as under

    i. Pursuant to the provisions of Section 108 and other applicable provisions of the Act and Rule 20 of the Companies (Management and Administration) Rules, 2014, as amended and Regulation 44 of the SEBI Listing Regulations, MCA Circulars and SEBI Circular the Company is pleased to provide its Members facility to exercise their right to vote on resolutions proposed to be passed in the Meeting by electronic means

    ii. The Company has engaged the services of Central Depository Services (India) Limited ("CDSL") to provide evoting facility to the Members.

    iii. Voting rights shall be reckoned on the paid-up value of shares registered in the name of the Member/ beneficial owner (in case of electronic shareholding) as on the cut-off date, i.e., Monday, 7 December 2020. A person who is not a Member as on the cut-off date should treat this Notice for information purpose only.

    iv. A person, whose name is recorded in the Register of Members or in the register of beneficial owners maintained by the depositories as on the cut-off date, i.e., Monday, 7 December 2020, only shall be entitled to avail the facility of e-voting.

    v. Members who are holding shares in physical form or who have not registered their email address with the Company/ Depository or any person who acquires shares of the Company and becomes a Member of the Company after the Notice has been sent electronically by the Company, and holds shares as on the cut-off date, i.e. Monday, 7 December 2020; such Member may obtain the User ID and password by sending a request at helpdesk.evoting@cdslindia.com or may temporarily get their email registered with the Company's Registrar and Share Transfer Agent, Link Intime

**EROS INTERNATIONAL MEDIA LIMITED    145**

**AGM NOTICE**

India Private Limited. In case of any queries, members may contact Company's Registrar and Share Transfer Agent, Link Intime India Private Limited, Unit – Eros International Media Limited, C-101, 247 Park, L.B.S Marg, Vikhroli (West), Mumbai 400 083.

It is further clarified that for permanent registration of Email address, Members are required to register their Email address in respect of Electronic holdings with their concerned Depository Participant(s) and in respect of Physical Holdings with the Company's Registrar and Share Transfer Agent, Link Intime India Private Limited by sending an Email at rnt.helpdesk@linkintime.co.in or at Co's Email Id compliance.officer@erosintl.com by following due procedure.

However, if a Member is already registered with CDSL for e-voting then existing User ID and password can be used for casting vote

vi.     Mr. Suhas Ganpule, Practicing Company Secretary, (Membership No. 12122, CP No: 5722) proprietor of S G & Associates has been appointed as the Scrutinizer for providing facility to the Members of the Company to scrutinize the voting and remote e-voting process in a fair and transparent manner.

vii.    The Scrutinizer, after scrutinizing the votes, will, not later than forty eight hours from the conclusion of the Meeting; make a consolidated scrutinizer's report which shall be placed on the website of the Company, i.e. www.erosstx.com and on the website of CDSL. The results shall simultaneously be communicated to the Stock Exchanges.

viii.   Subject to receipt of requisite number of votes, the resolutions shall be deemed to be passed on the date of the Meeting, i.e. Tuesday, 15 December 2020.

ix.     Information and other instructions relating to e-voting are as under

  a)    The remote e-voting facility will be available during the following period:

        Commencement of e-voting: From 9:00 a.m. (IST) on Friday, 11 December 2020. End of e-voting: Up to 5:00 p.m. (IST) on Monday, 14 December 2020. The remote e-voting will not be allowed beyond the aforesaid date and time and the e-voting module shall be disabled by CDSL upon expiry of the aforesaid period.

  b)    The Members who have cast their vote by remote e-voting prior to the Meeting may also attend/participate in the Meeting through VC / OAVM but shall not be entitled to cast their vote again.

  c)    The shareholders should log on to the e-voting website www.evotingindia.com.

  d)    Click on "Shareholders" module.

  e)    Now Enter your User ID.

        i.    For CDSL: 16 digits beneficiary ID,

        ii.   For NSDL: 8 Character DP ID followed by 8 Digits Client ID,

        iii.  Members holding shares in Physical Form should enter Folio Number registered with the Company OR Alternatively, if you are registered for CDSL's EASI/EASIEST e-services, you can login at https://www.cdslindia.com from Login-Myeasi using your login credentials. Once you successfully login to CDSL's EASI/EASIEST e-services, click on e-voting option and proceed directly to cast your vote electronically.

  f)    Next enter the Image Verification as displayed and Click on Login.

  g)    If you are holding shares in demat form and had logged on to www.evotingindia.com and voted on an earlier voting of any company, then your existing password is to be used.

  h)    If you are a first time user follow the steps given below

| **For Shareholders holding shares in Demat Form and Physical Form** | |
|---|---|
| PAN | Enter your 10 digit alpha-numeric *PAN issued by Income Tax Department (Applicable for both demat shareholders as well as physical shareholders)<br><br>• Shareholders who have not updated their PAN with the Company/Depository Participant are requested to use the sequence number sent by Company/RTA or contact Company/RTA |
| Dividend Bank Details<br><br>OR<br><br>Date of Birth (DOB) | Enter the Dividend Bank Details or Date of Birth (in dd/mm/yyyy format) as recorded in your demat account or in the company records in order to login.<br><br>• If both the details are not recorded with the depository or company please enter the member ID / folio number in the Dividend Bank details field as mentioned in instruction (v). |

  i)    After entering these details appropriately, click on "SUBMIT" tab.

  j)    Shareholders holding shares in physical form will then directly reach the Company selection screen. However, shareholders holding shares in demat form will now reach 'Password Creation' menu wherein they are required to mandatorily enter their login password in the new password field. Kindly note that this password is to be also used by the demat holders for voting for resolutions of any other company on which they are eligible to vote, provided that company opts for e-voting through CDSL platform. It is strongly recommended not to share your password with any other person and take utmost care to keep your password confidential.

  k)    For shareholders holding shares in physical form, the details can be used only for e-voting on the resolutions contained in this Notice.

  l)    Click on the EVSN for the relevant <Company Name> on which you choose to vote.

  m)    On the voting page, you will see "RESOLUTION DESCRIPTION" and against the same the option "YES/NO" for voting. Select the option YES or NO as desired. The option YES implies that you assent to the Resolution and option NO implies that you dissent to the Resolution.

  n)    Click on the "RESOLUTIONS FILE LINK" if you wish to view the entire Resolution details.

  o)    After selecting the resolution you have decided to vote on, click on "SUBMIT". A confirmation box will be displayed. If you wish to confirm your vote, click on "OK", else to change your vote, click on "CANCEL" and accordingly modify your vote.

  p)    Once you "CONFIRM" your vote on the resolution, you will not be allowed to modify your vote.

  q)    You can also take a print of the votes cast by clicking on "Click here to print" option on the Voting page.

  r)    If a demat account holder has forgotten the login password then Enter the User ID and the image verification code and click on Forgot Password & enter the details as prompted by the system.

  s)    Shareholders can also cast their vote using CDSL's mobile app "m-Voting". The m-Voting app can be downloaded from respective Store. Please follow the

instructions as prompted by the mobile app while Remote Voting on your mobile.

t) Note for Non - Individual Shareholders and Custodians

- Non-Individual shareholders (i.e. other than Individuals, HUF, NRI etc.) and Custodian are required to log on to www.evotingindia.com and register themselves as Corporate.

- A scanned copy of the Registration Form bearing the stamp and sign of the entity should be emailed to helpdesk.evoting@cdslindia.com.

- After receiving the login details a Compliance User should be created using the admin login and password. The Compliance User would be able to link the account(s) for which they wish to vote on.

- The list of accounts linked in the login should be mailed to helpdesk.evoting@cdslindia.com and on approval of the accounts they would be able to cast their vote.

- A scanned copy of the Board Resolution and Power of Attorney (POA) which they have issued in favour of the Custodian, if any, should be uploaded in PDF format in the system for the scrutinizer to verify the same.

u) If you have any queries or issues regarding attending AGM & e-voting from the e-voting System, you may refer the Frequently Asked Questions ("FAQs") and e-voting manual available at www.evotingindia.com, under help section or write an email to helpdesk.evoting@cdslindia.com or contact Mr. Nitin Kunder (022- 23058738) or Mr. Mehboob Lakhani (022-23058543) or Mr. Rakesh Dalvi (022-23058542).

v) All grievances connected with the facility for voting by electronic means may be addressed to Mr. Rakesh Dalvi, Manager, (CDSL) Central Depository Services (India) Limited, A Wing, 25th Floor, Marathon Futurex, Mafatlal Mill Compounds, N M Joshi Marg, Lower Parel (East), Mumbai - 400013 or send an email to helpdesk.evoting@cdslindia.com or call on 022-23058542/43

**x. Instructions for Shareholders for e-voting during the Meeting are as under:**

a) The procedure for e-voting on the day of the Meeting is same as the instructions mentioned above for remote e-voting.

b) Only those Shareholders, who are present in the Meeting through VC / OAVM facility and have not casted their vote on the Resolutions through remote e-voting and are otherwise not barred from doing so, shall be eligible to vote through e-voting system available during the Meeting.

c) If any votes are cast by the Shareholders through the e-voting available during the Meeting and if the same Shareholders have not participated in the Meeting through VC / OAVM facility, then the votes cast by such Shareholders shall be considered invalid as the facility of e-voting during the Meeting is available only to the Shareholders attending the Meeting.

13. In case of joint holders, the Member whose name appears as the first holder in the order of names as per the Register of Members of the Company will be entitled to vote at the Meeting.

14. Share transfer documents and all correspondence relating thereto, should be addressed to the Link Intime India Private Limited, Unit – Eros International Media Limited, C-101, 247 Park, L.B.S Marg, Vikhroli (West), Mumbai 400 0839, Registrars and Transfer Agent of the Company.

15. To prevent fraudulent transactions, Members are advised to exercise due diligence and notify the Company of any change in address or demise of any Member as soon as possible. Members are also advised not to leave their demat account(s) dormant for long. Periodic statement of holdings should be obtained from the concerned DP and holdings should be verified

16. SEBI has mandated the submission of PAN by every participant of the securities market. Members holding shares in dematerialised form are, therefore, requested to submit their PAN to their DPs with whom they are maintaining their demat accounts. Members holding shares in physical form can submit their PAN details to the Company/ Link Intime India Private Limited

17. Pursuant to provisions of Sections 124 and 125 of the Act read with the Investor Education and Protection Fund Authority (Accounting, Audit, Transfer and Refund) Rules, 2016 ("IEPF Rules"), dividends, if not claimed for a consecutive period of 7 years from the date of transfer to Unpaid Dividend Account of the Company, are liable to be transferred to the Investor Education and Protection Fund ("IEPF"). Accordingly, the amount of ₹ 1,25,658/- Unpaid / Unclaimed dividend for financial year 2012-13 has been transferred to IEPF on 25 August 2020.

The Company also transmitted 11,359 Equity Shares of 279 members into the DEMAT Account of the IEPF Authority in terms of the provisions of section 124(6) of the Companies Act, 2013 and the IEPF Authority (Accounting, Audit, Transfer and Refund) Rules, 2016, as amended from time to time. These Equity Shares were the shares of such Shareholders whose unclaimed/ unpaid dividend pertaining to financial year 2012-13 had been transferred into IEPF and who have not encashed their dividends for 7 (Seven) subsequent financial years.

Concerned Shareholders may still claim the dividend and shares or apply for refund to the IEPF Authority in Web Form No. IEPF-5 available on www.iepf.gov.in.

18. The voting rights on the shares lying with the IEPF shall remain frozen until the rightful owner of such shares claims the shares.

19. As mandated by SEBI, effective 1 April 2019 except in case of transmission or transposition of securities, requests for effecting transfer of securities shall not be processed unless the securities are held in dematerialised mode with a depository. Accordingly, the Members of the Company were requested to open a demat account and submit physical securities to their DPs.

20. As per Regulation 40(7) of the SEBI Listing Regulations, read with Schedule VII to the said Regulations, for registration of transfer of shares, the transferee(s) as well as transferor(s) shall mandatorily furnish copies of their Income Tax PAN Card. Additionally, for securities market transactions and / or for off market / private transactions involving transfer of shares in physical mode for listed Companies, it shall be mandatory for the transferee(s) as well as transferor(s) to furnish copies of PAN Card to the Company/ Link Intime India Private Limited for registration of such transfer of shares. In case of transmission of shares held in physical mode, it is mandatory to furnish a copy of the PAN Card of the legal heir(s) / nominee(s). In exceptional cases, the transfer of physical shares is subject to the procedural formalities as prescribed under SEBI Circular No. SEBI/ HO/MIRSD/DOS3/CIR/P/2018/139 dated 6 November 2018.

21. Pursuant to Section 72 of the Companies Act, 2013, Members are entitled to make a nomination in respect of shares held by them. Members desirous of making a nomination, pursuant to the Rule 19(1) of the Companies (Share Capital and Debentures)

**AGM NOTICE**

Rules, 2014 are requested to send their requests in Form No. SH-13, to Link Intime India Private Limited. Further, Members desirous of cancelling/varying nomination pursuant to the Rule 19(9) of the Companies (Share Capital and Debentures) Rules, 2014, are requested to send their requests in Form No. SH-14, to Link Intime India Private Limited. These forms will be made available on request.

22. Since the Meeting will be held through VC / OAVM, the Route Map and Attendance Slip are not annexed to this Notice

**INSTRUCTIONS FOR SHAREHOLDERS ATTENDING THE MEETING THROUGH VC / OAVM ARE AS UNDER:**

1. Shareholder will be provided with a facility to attend the Meeting through VC / OAVM through the CDSL e-voting system. Shareholders may access the same at https://www.evotingindia.com under Shareholders/Members login by using the remote e-voting credentials. The link for VC / OAVM will be available in Shareholders/ Members login where the EVSN of the Company will be displayed.

2. The Members can join the Meeting through VC / OAVM mode 15 minutes before and after the scheduled time of the commencement of the Meeting by following the procedure mentioned in the Notice. The facility of participation at the Meeting through VC / OAVM will be made available to at least 1000 members on first come first served basis. However the participation of large Shareholders (Shareholders holding 2% or more shareholding), Promoters, Institutional Investors, Directors, Key Managerial Personnel, the Chairpersons of the Audit Committee, Nomination and Remuneration Committee and Stakeholders Relationship Committee, Auditors etc. are not restricted on first come first served basis.

3. Shareholders are encouraged to join the Meeting through Laptops / IPads for better experience

4. Further Shareholders will be required to allow Camera and use Internet with a good speed to avoid any disturbance during the Meeting.

5. Please note that Participants connecting from Mobile Devices or Tablets or through Laptop connecting via Mobile Hotspot may experience Audio/Video loss due to Fluctuation in their respective network. It is therefore recommended to use stable Wi-Fi or LAN Connection to mitigate any kind of aforesaid glitches.

6. Members who would like to express their views or ask questions during the Meeting may register themselves as a speaker by sending their request from their registered email address mentioning their name, DP ID and Client ID/folio number, PAN, mobile number at compliance.officer@erosintl.com. Those Shareholders who have registered themselves as a speaker will only be allowed to express their views/ask questions during the Meeting.

7. The Shareholders who have not registered themselves can put the question on the chatbox available on the screen at the time of the Meeting.

8. Members who need technical assistance before or during the Meeting can send an email to helpdesk.evoting@cdslindia.com or call on 1800225533.

By Order of the Board of Directors
For **Eros International Media Limited**

**Vijay Thaker**
Vice President- Company Secretary
& Compliance Officer

Date : 9 November 2020
Place : Mumbai

## EXPLANATORY STATEMENT IN RESPECT OF THE SPECIAL BUSINESS PURSUANT TO SECTION 102 OF THE COMPANIES ACT, 2013

**Item No. 3:**

The Company at its 21st Annual General Meeting had re-appointed Mr. Sunil Lulla, as Executive Vice Chairman & Managing Director of the Company for a period of five (5) years with effect from 28 September 2015 till 27 September 2020, by means of Special Resolution passed by the Members at 21st AGM of the Company held on 3 September 2015 on the terms and conditions including payment of remuneration as mentioned therein.

At the time of his re-appointment, the Company had adequate profits and the remuneration paid / payable to Mr. Sunil Lulla was well within the limits prescribed under the Companies Act, 2013. However, during the last financial year 2019-20, the company reported net loss amounting to ₹ 1,16,073/- lakhs as compared to Net Profit of ₹ 8,736/- lakhs for the previous year. Owing to the above, the financial performance of the Company for the financial year ended 31 March 2020 did not meet expectations and it is possible that the Company may also have inadequate profits in coming years.

As a result of the above, the remuneration paid to Mr. Sunil Lulla for the financial year 2019-20 exceeded the limits specified under Section 197 of the Companies Act, 2013 (the Act) read with Schedule V thereto. Pursuant to Section 197(10) of the Act, the members of the Company can waive the recovery of excess remuneration by passing a special resolution.

The management of the Company believes that the remuneration as previously approved by the members of the Company and paid to Mr. Sunil Lulla is justified in terms of their key role within the Company.

The Nomination and Remuneration Committee and the Board have at their respective meeting(s) held on 30 July 2020, subject to the approval of the members of the Company, accorded their approvals for waiver of the recovery of excess managerial remuneration paid by the Company to Mr. Sunil Lulla and, in the interest of the Company have also recommended the aforesaid resolution as set out in this Notice for approval of the Members.

Accordingly, it is proposed that approval of the members of the Company by way of a special resolutions be obtained for the waiver of recovery of excess remuneration paid to Mr. Sunil Lulla.

The Company has as on date not defaulted in payment of dues to any bank or public financial institution or non-convertible debenture holders or other secured creditor, if any.

Save and except Mr. Sunil Lulla and Mr. Kishore Lulla and their relatives to the extent of their shareholding interest, if any, in the Company for Item No. 3, none of the other Directors / Key Managerial Personnel and their relatives are in any way, concerned or interested, financially or otherwise, in the resolutions set out in Item No. 3.

**Item No. 4:**

The Board of Directors of the Company at its meeting held on 9 November 2020 has, subject to the approval of the members, re-appointed Mr. Sunil Lulla, as Executive Vice Chairman & Managing Director of the Company (DIN: 00243191) for another period of five (5) years from expiry of his present term viz. 28 September 2020 till 27 September 2025 on terms including remuneration as recommended and approved by the Nomination and Remuneration Committee.

Keeping in view his vast experience, role and responsibilities, leadership capabilities, entrepreneurship skills, and contribution in the performance of the Company, it is proposed to seek approval of the members for re-appointment of Mr. Sunil Lulla as Executive Vice Chairman & Managing Director on the following terms including remuneration and commission, which are in accordance with applicable provisions of the Companies Act, 2013 and applicable rules thereto:

i.  Salary:- Salary of ₹ 5,14,46,131 (Rupees Five Crore Forteen Lakhs Forty Six Thousand One Hundred Thirty One Only) per annum. (With an annual increment of 10% on salary, payable at the commencement of each financial year).

ii. Commission:- Commission upto 1% of net profits of the Company as calculated under Section 198 and such other applicable provisions, if any, of the Companies Act, 2013, as may be determined by the Board of Directors from time to time.

iii. Company's contribution to the Provident Fund and Super Annuation Fund and payment of Gratuity shall be as per the rules of the Company.

iv. Benefits, Perquisites and Allowances:

    a.  Travelling Allowance: The Company shall bear all travelling expenses, including boarding and lodging, as per the rules of the Company during domestic and overseas business trips.

    b.  Accommodation Allowance: Rent-free furnished accommodation owned, leased or rented by the Company and reimbursement of Utility expenses at accommodation such as electricity, gas, water, payments to servants, etc.

    c.  Medical Allowance: All expenses on medical including hospitalisation, diagnostic checks, periodic health checks incurred by Director and his family, will be borne by the Company at actual cost.

    d.  Club fees: Fees of Clubs subject to maximum of two clubs. This will include admission and life membership fees.

    e.  All expenses relating to telephone at residence, mobile bills, PDA Charges and all other expenses incurred for the purpose of business of the Company shall be reimbursed by the Company at actual cost.

    f.  Other benefits/expenses as per the Company's policy, from time to time.

v.  Mr. Sunil Lulla has entered into an Agreement dated 30 July 2020 with the Company (as co-owner) to lease out his property at 5th Floor, Supreme Chambers, Andheri (West), Mumbai – 400 053 for a monthly lease rental of ₹ 29 lakhs plus taxes. Pursuant to the said Agreement, the Company has made a deposit of a sum of ₹ 240 lakhs as on 31 March 2015 as interest free refundable security. For due observance of terms and conditions of the Agreement. The copy of agreement is available for inspection.

Mr. Sunil Lulla satisfies all the conditions set out in Part I of Schedule V to the Companies Act, 2013 as also conditions set out under sub-section (3) of Section 196 of the Act for being eligible for his re-appointment. He is not disqualified from being appointed as Director in terms of Section 164 of the Act. He shall not be liable to retire by rotation.

In the event of there being any loss or inadequacy of profits for any financial year, the aforesaid remuneration payable to Mr. Sunil Lulla shall be the minimum remuneration payable to him in terms of the provisions of Schedule V of the Companies Act, 2013.

Mr. Sunil Lulla is interested in the resolution set out in Item No. 4 of the Notice pertaining to his re-appointment and remuneration payable to him to the extent of the benefits and remuneration that he will get by virtue of his proposed re-appointment.

Relatives of Mr. Sunil Lulla may be deemed to be interested in the resolution set out at Item No. 4 of the Notice, to the extent of their shareholding interest, if any, in the Company.

The other details of Mr. Sunil Lulla, whose appointment is proposed at Item No. 4 of the accompanying Notice, have been given in the attached annexure.

**AGM NOTICE**

Except for Mr. Kishore Lulla, being brother of Mr. Sunil Lulla, none of the other Directors, Key Managerial Personnels or their relatives are concerned or interested in Item No. 4 above.

The Board recommends the Special Resolution set out at Item No. 4 of the Notice for approval by the shareholders.

**Item No. 5:**

The Board of Directors of the Company had appointed Ms. Bindu Saxena as an Additional Director of the Company with effect from 26 September 2019. In accordance with the provisions of Section 161 of Companies Act, 2013, Ms. Bindu Saxena shall hold office up to the date of the forthcoming Annual General Meeting and is eligible to be appointed as an Independent Director for a term upto five (5) years. The Company has received notice under Section 160 of the Companies Act, 2013 from Ms. Bindu Saxena signifying her candidature as an Independent Director of the Company.

A brief profile of Ms. Bindu Saxena in terms of Regulation 36(3) of the SEBI Listing Regulation and Secretarial Standard 2 is annexed to this Notice. Ms. Bindu Saxena is not related to any Director of the Company.

In terms of proviso to sub-section (5) of Section 152, the Board of Directors is of the opinion that Ms. Bindu Saxena fulfils the conditions specified in the Act for her appointment as an Independent Director. After taking into consideration the recommendation of the Nomination and Remuneration Committee, the Board is of the opinion that Ms. Bindu Saxena's vast knowledge and varied experience will be of great value to the Company and has recommended the Resolution at Item No.5 of this Notice relating to the appointment of Ms. Bindu Saxena as an "Independent Director", not liable to retire by rotation for a term of five (5) consecutive years from the conclusion of this Annual General Meeting to the conclusion of the Annual General Meeting of the Company to be held in the Calendar Year 2025, for your approval.

Ms. Saxena has given a declaration to the Board that she meets the criteria of independence as provided in Section 149(6) of the Companies Act, 2013 and Regulation 16 of the SEBI Listing Regulations.

The Company has also received:-

(i)    the consent in writing to act as Director and

(ii)   intimation that she is not disqualified under section 164(2) of the Companies Act, 2013.

(iii)  a declaration to the effect that she is not debarred from holding the office of Director pursuant to any Order issued by the Securities and Exchange Board of India (SEBI).

A copy of the draft letter for the appointment of Ms. Saxena as Independent Director setting out the terms & conditions would be available for inspection without any fee by the members at the Registered Office of the Company during normal business hours on any working day and the same has also been put up on the Company website www.erosstx.com.

The other details of Ms. Saxena, whose appointment is proposed at Item No. 5 of the accompanying Notice, have been given in the attached annexure.

Except, Ms. Saxena, none of the other Directors, Key Managerial Personnel or their relatives are concerned or interested in the Resolution at Item No. 5 of the Notice.

**Item No. 6:**

The Board of Directors of the Company on recommendation of Nomination and Remuneration Committee, at its meeting held on 9 November 2020, appointed Mr. Farokh P. Gandhi who holds office as Chief Financial Officer and Key Managerial Personnel as an Additional Director of the Company subject to approval of members of the Company. In terms of the provisions of Section 161(1) of the Act, he holds office upto the date of this Annual General Meeting and is eligible for appointment and in respect of whom the Company has received a notice in writing from a member under Section 160 of the Act proposing his candidature of Mr. Farokh P. Gandhi for the office of Director of the Company.

Mr. Farokh P. Gandhi is not disqualified from being appointed as Director in terms of Section 164 of the Act and have given his consent to act as Director.

Mr. Farokh P. Gandhi shall not be entitled to receive any sitting fees for attending any Meetings of the Board or any committee constituted by the Board except annual remuneration of ₹ 79,18,560 payable as Chief Financial Officer of the Company and subject to increment from time to time as per Company's policy.

Your Director recommends the resolution set out at Item No. 6 of the accompanying Notice for the approval of members.

None of the Directors and / or Key Managerial Personnel of the Company and their relatives except Mr. Farokh P. Gandhi is concerned or interested, financially or otherwise, in the resolution set out at item No. 6 of the accompanying Notice

By Order of the Board of Directors
For **Eros International Media Limited**

**Vijay Thaker**
Vice President- Company Secretary
& Compliance Officer

Date : 9 November 2020
Place: Mumbai

---

**Registered Office:**
201, Kailash Plaza,
Plot No. A-12,
Opp. Laxmi Industrial Estate,
Off. Andheri Link Road, Andheri West,
Mumbai 400 053

**Corporate Office:**
901/902, Supreme Chambers,
Off. Veera Desai Road, Andheri West,
Mumbai 400 053, Maharashtra (India).
Tel: +91 22 66021500
Fax No.: +91 22 66021540
Email: compliance.officer@erosintl.com

**Registrar and Transfer Agent:**
Link Intime India Private limited
Unit: Eros International Media Limited
C-101, 247 Park, L.B.S Marg, Vikhroli (West),
Mumbai 400 083
Tel: +91 22 49186270
Fax No.: +91 22 49186060
Email: rnt.helpdesk@linkintime.co.in

Details of Directors seeking appointment/ re-appointment/ fixation of remuneration of Director furnished pursuant to Regulation 36 of the SEBI (Listing Obligations and Disclosure Requirements) Regulations, 2015 and Clause 1.2.5 of the Secretarial Standard-2.

| Name | Mr. Kishore Arjan Lulla | Mr. Sunil Arjan Lulla | Ms. Bindu Saxena | Mr. Farokh P. Gandhi |
|---|---|---|---|---|
| DIN | 02303295 | 00243191 | 00167802 | 03112612 |
| Designation | Executive Director | Executive Vice Chairman & Managing Director | Non-Executive Independent Director | Executive Director |
| Date of Birth | 4 September 1961 | 29 June 1964 | 20 May 1958 | 30 June 1969 |
| Age | 59 Years | 56 Years | 62 Years | 51 Years |
| Date of First Appointment on the Board | 28 September 2009 | 19 August 1994 | 26 September 2019 | 9 November 2020 |
| Qualifications | Bachelor of Arts, University of Mumbai | Bachelor of Commerce, University of Mumbai | Bachelor of Law | Chartered Accountant |
| Profile | Mr. Kishore Lulla received a bachelor's degree in arts from the Mumbai University. He has over 36 years of experience in the media and film industry. He is a member of the British Academy of Film and Television Arts and Young Presidents' Organization and is also a board member of the School of Film at the University of California, Los Angeles. He has been honored at the Asian Business Awards 2007 and the Indian Film Academy Awards 2007 for his contribution in taking Indian cinema global. In 2010, Mr. Lulla was awarded the "Entrepreneur of the Year" at the GG2 Leadership and Diversity Awards and in 2014, Forbes Asia featured Mr. Lulla in the list of 'Best under a Billion'. He was also honored with the 2014 Global Citizenship Award by the American Jewish Committee, a leading global Jewish advocacy organization. Mr. Lulla also received the Entertainment Visionary award at the 2015 Annual Gala Dinner from the Asia Society Southern California. In 2015, he was invited to attend the "billionaires' summer camp" in Sun Valley, an annual gathering of the world's most powerful entrepreneurs and business executives. He has been instrumental in expanding our presence in the United Kingdom, the United States, Dubai, Australia and other international markets. In 2018, he was featured in the Variety 500 list of "influential business leaders shaping the global $2 trillion entertainment industry". | Mr. Sunil Lulla holds a commerce degree from the University of Mumbai. Possessing an expansive 27 years long experience in the Media & Entertainment industry, he has been associated with Eros since its inception. He led the Company's growth within India for many years before being appointed Executive Vice Chairman & Managing Director of Eros India.<br><br>During his stint, he has contributed tremendously in developing and expanding the Company's business in India. Under his able leadership, the Company continued to achieve milestones. He has been instrumental in developing the Company's distribution business along with its home entertainment and music segments | Ms. Bindu Saxena, is a practicing Advocate and is a partner of the law firm Swarup & Company, New Delhi, India and has over 33 years of experience as corporate attorney with clients in India and overseas including large multinational corporations. Her experience as corporate attorney includes experience of commercial transactions and projects in India and overseas. Her experience includes Indian and transborder transactions, acquisitions, joint ventures, private equity transactions, investments and participation in both new and existing companies and ventures in diverse sectors and industry. She has been advising clients (both Indian and foreign and in private sector and public sector) in diverse corporate and commercial matters and transactions and projects including foreign collaboration, foreign investment, funding, acquisitions, mergers, amalgamations and takeovers, acting as project counsel, advice regarding legislative and regulatory frame work, environmental laws, and in all aspects of structuring, negotiating and drafting of diverse business and project related agreements including joint venture and shareholders agreements, share subscription agreements, EPC contracts, loan and security agreements, marketing and distribution agreements, sales promotion agreements, franchise agreements, concession agreements, technology licensing agreements, long term supply contracts, buyback/offtake agreements etc. for diverse sectors including infrastructure, fertilizer, mining, refineries, steel, chemicals, engineering goods, mining and highway projects, telecommunications, white consumer goods, automobiles and auto parts, insurance and investment banks and funds, etc. She also handles court matters including litigation pertaining to corporate matters, contractual disputes, enforcement of foreign awards, domestic and international commercial arbitration and matters before various tribunals etc. | Mr. Farokh Gandhi is an experienced Chartered Accountant and Corporate Finance Strategist who has been associated with Eros Group for over 17 years, out of his 27 years of experience in the finance sector. During his association, he has been key in executing the various IPOs and listing of the Group in India as well as overseas as well as setting of financial systems and processes to support the Company's growth. |

Case 2:19-cv-14125-ES-JSA   Document 66-6   Filed 03/04/22   Page 155 of 158   PageID: 2726

**AGM NOTICE**

| Name | Mr. Kishore Arjan Lulla | Mr. Sunil Arjan Lulla | Ms. Bindu Saxena | Mr. Farokh P. Gandhi |
|---|---|---|---|---|
| Terms and conditions of Re-appointment | **Retire by rotation:** • Liable to retire by rotation. **Duties:** • To adhere as provided under Section 166 of the Act. **Code of Conduct:** • Abide by the Code of Conduct devised by the Company | **Retire by rotation:** • Not liable to retire by rotation. **Duties:** • To adhere as provided under Section 166 of the Act. **Code of Conduct:** • Abide by the Code of Conduct devised by the Company | **Appointment:** • Not liable to retire by rotation **Termination:** • Terminated by either side in terms of Section 168 or Section 169 of the Companies Act, 2013 ('the Act'). **Duties:** • To adhere as provided under Section 166 of the Act in addition to duties mandated under Schedule IV of the Act. **Code of Conduct:** • Abide by the Code of Conduct devised by the Company. | **Retire by rotation:** • Liable to retire by rotation. **Duties:** • To adhere as provided under Section 166 of the Act. **Code of Conduct:** • Abide by the Code of Conduct devised by the Company |
| Directorships held in other companies (as on 31 March, 2020) | • Eros International Plc (Isle of Man) • Eros International USA Inc • Eros Digital Limited (Isle of Man) | • Eros International Films Private Limited • Eros Digital Private Limited • Big Screen Entertainment Private Limited • Eyeqube Studios Private Limited • EM Publishing Private Limited • Eros Animation Private Limited • Colour Yellow Productions Private Limited • ErosNow Private Limited (Formerly known as Universal Power Systems Private Limited) • Eros Television India Private Limited • Eros Energy Private Limited • Eros International Plc (Isle of Man) | • INOX Wind Limited • INDAG Rubber Limited • Nectar Enterprises Private Limited • Dev Valley Devcon Private Limited • VIS Legis Consult Private Limited | • Sistan Energy Private Limited • ErosNow Private Limited (Formerly known as Universal Power Systems Private Limited) (w.e.f. 21 August 2020) |
| Last remuneration drawn | NIL (2019-20) | ₹ 4,80,08,808 | Nil | ₹ 79,18,560 (as Chief Financial Officer) |
| Remuneration to be paid | NIL | ₹ 5,14,46,131 | Nil | NIL |
| Memberships/ Chairmanships of Committees of other companies | Nil | **Eros International Films Pvt. Ltd.** Audit Committee - Member | **Inox Wind Limited** Audit Committee - Member **Indag Rubber Limited** Nomination and Remuneration Committee – Member | Nil |
| Number of Board Meetings attended during FY 2019-20 | One (1) | Four (4) | Two (2) | Not Applicable |
| Relationship with other Directors, Key Managerial Personnel | Brother of Mr. Sunil Lulla and not related to any Director/ Key Managerial Personnel. | Brother of Mr. Kishore Lulla and not related to any Director/ Key Managerial Personnel. | Not related to any Director/ Key Managerial Personnel. | Not related to any Director/ Key Managerial Personnel. |
| Number of shares held in the Company | Nil | 1,400 shares | Nil | 43 shares |
| Number of Stock Options | Nil | Nil | Nil | Nil |



**EROS INTERNATIONAL MEDIA LIMITED**
CIN: L99999MH1994PLC080502
201, Kailash Plaza, Opp. Laxmi Industrial Estate,
Off. Andheri Link Road, Andheri West,
Mumbai 400 053, Maharashtra (India).
Tel: + (91 22) 66021500, Fax: + (91 22) 66021540
Email: compliance.officer@erosintl.com
Website: www.erosstx.com