# EXHIBIT 5

# EXHIBIT 6

August 31, 2019

The Secretary
BSE Limited
Pheeroze Jeejeebhoy Towers,
Dalal Street, Fort,
Mumbai – 400 001
**Scrip Code: 533261**

The Secretary
National Stock Exchange of India Limited
Exchange Plaza, 5th Floor
Plot No- 'C' Block, G Block
Bandra-Kurla Complex, Bandra (E)
Mumbai-400051
**Scrip Code: EROSMEDIA**

**SUB: Submission of Annual Report for the financial year 2018-19**

Dear Sir/Madam,

Pursuant to Regulation 34 of SEBI (Listing Obligations and Disclosure Requirements) Regulations 2015, we are submitting herewith the Annual Report of the Company for the financial year 2018-19 along with the Notice of 25th Annual General Meeting of the Company to be held on Wednesday, September 25, 2019 at 2:00 p.m. at "The Classic Club", New Link Road, Behind Infinity Mall, Andheri West, Mumbai – 400 053.

The Annual Report and the Notice of 25th Annual General Meeting are also available on the website of the Company at www.erosplc.com.

Kindly take the same on records.

Thanking you,

Yours faithfully,
**For Eros International Media Limited**

**Vijay Thaker**
**Vice President - Company Secretary & Compliance Officer**

*Encl: As above*

**EROS INTERNATIONAL MEDIA LIMITED**
Corporate Office: 9th Floor, Supreme Chambers, Off Veera Desai Road, Andheri (W), Mumbai - 400 053.
Tel.: +91-22-6602 1500   Fax: +91-22-6602 1540   E-mail: eros@erosintl.com   •   www.erosplc.com
Regd. Office: 201, 2nd Floor, Kailash Plaza, Plot No. A-12, Off New Link Road, Andheri (W), Mumbai - 400053.
CIN No. L99999MH1994PLC080502

# EROS INTERNATIONAL MEDIA LIMITED

## ANNUAL REPORT 2018-19



# Contents

## Corporate Overview

Board of Directors                                                                                    **02**

## Management Reports

Management Discussion and Analysis                                                **04**

Directors' Report                                                                                    **07**

Corporate Governance Report                                                              **37**

## Financial Statements

Standalone Financial Statements                                                        **49**

Consolidated Financial Statements                                                    **98**

Notice to the AGM                                                                                  **144**

FORWARD-LOOKING STATEMENTS

Certain statements in this report concerning the future growth prospects are forward-looking statements, which involve a number of risks and uncertainties that could cause actual results to differ materially from those in such forward-looking statements. In some cases, these forward-looking statements can be identified by the use of forward-looking terminology, including the terms "believes", "estimates", "forecasts", "plans", "prepares", "projects", "anticipates", "expects", "intends", "may", "will" or "should" or, in each case, their negative or other variations or comparable terminology, or by discussions of strategy, plans, objectives, goals, future events or intentions. These forward-looking statements include all matters that are not historical facts. They appear in a number of places throughout this report and include, but are not limited to, statements regarding the Company's intentions, beliefs or current expectations concerning, among other things, the Company's results of operations, financial condition, liquidity, prospects, growth, strategies, business development, the markets in which the Company operates, expected changes in the Company's margins, certain cost or expense items as a percentage of the Company's revenues, the Company's relationships with theater operators and industry participants, the Company's ability to source film content, the completion or release of the Company's films and the popularity thereof, the Company's ability to maintain and acquire rights to film content, the Company's dependence on the Indian box office success of its films, the Company's ability to recoup box office revenues, the Company's ability to compete in the Indian film industry, the Company's ability to protect its intellectual property rights and its ability to respond to technological changes, the Company's contingent liabilities, general economic and political conditions in India, including fiscal policy and regulatory changes in the Indian film industry. By their nature, forward-looking statements involve known and unknown risk and uncertainty because they relate to future events and circumstances. The forward-looking statements speak only as of the date they are made and are not guarantees of future performance and the actual results of the Company's operations, financial condition and liquidity, and the development of the markets and the industry in which the Company operates may differ materially from those described in, or suggested by, the forward-looking statements contained in these materials. The forward-looking statements in this report are made only as of the date hereof and the Company undertakes no obligation to update or revise any forward-looking statement, whether as a result of current or future events or otherwise, except as required by law or applicable rules.

# Founder of Eros Group



**Late Shri Arjan Gobindram Lulla**
*(1934-2018)*

*We are deeply saddened that Shri Arjan Lulla passed away last year. Eros lost an incredible visionary and the world lost a wonderful human being.*

*We have all been fortunate to have his guidance and work with him as our inspiring mentor. He leaves behind a company that he built with passion, and his spirit will forever be the foundation of Eros.*

*We honor his legacy by dedicating ourselves to continuing the work he loved so much and bringing his dreams to reality.*

# Board of Directors



**Mr. Dhirendra Swarup**
*Non-Executive Chairman, Independent*

A government-certified accountant and a member of the Institute of Public Auditors of India, Mr. Swarup holds a post-graduate degree in humanities. A career bureaucrat, he retired as Secretary of Ministry of Finance, Government of India in 2005. He possesses a vast experience of 45 years in the finance sector and has also worked in the UK, Turkey and Georgia. He was the Chairman of Financial Sector Redress Agency and is also on the Board of several listed companies besides acting as a member and the Chairman of several committees. In the past, he has held many key positions and responsibilities like being a member of the Board of the SEBI, a member of the Permanent High-level Committee on Financial Markets, Chairman of the Pension Funds Regulatory Authority, Chief of the Budget Bureau of the Government of India, a member secretary of the Financial Sector Reforms Commission, Chairman of Public Debt Management Authority Task Force, Vice-Chairman of the International Network on Financial Education of OECD.



**Mr. Sunil Arjan Lulla**
*Executive Vice Chairman & Managing Director*

Mr. Lulla holds a commerce degree from the University of Mumbai. Possessing an expansive 26 year long experience in the Media & Entertainment industry, he has been associated with Eros since its inception. He led the Company's growth within India for many years before being appointed Executive Vice Chairman & Managing Director of Eros India on 28 September 2009. Mr. Lulla was reappointed to the same position on 3 September 2015 for another period of five years. During his stint, he has contributed tremendously in developing and expanding the Company's business in India. Under his able leadership, the Company continued to achieve milestones. He has been instrumental in developing the Company's distribution business along with its home entertainment and music segments.



**Mr. Kishore Arjan Lulla**
*Executive Director*

The Executive Chairman and Group Chief Executive Officer of our parent Company, Eros International Plc., Mr. Lulla holds a bachelor's degree in Arts from Mumbai University. Possessing a rich experience of over 36 years in the filmed entertainment and media industry, he is a member of the British Academy of Film and Television Arts and Young Presidents' Organization besides serving on the board of the School of Film at the University of California, Los Angeles. Mr. Kishore Arjan Lulla has been instrumental in expanding the Company's presence in the United Kingdom, the U.S., Dubai, Australia, Fiji and other international markets. He is responsible for taking the Indian film industry to the global arena. A recipient of the 'Asian Business Awards' 2007, the 'Indian Film Academy Awards' 2007, and 'Entrepreneur of the Year' 2010, 'Global Citizenship Award' 2014, 'Entertainment Visionary Award' 2015, he has also featured on the 'Best under a Billion' 2014 list of Forbes Asia and got invited to attend the "billionaires' summer camp" in the Sun Valley.



**Mr. Rakesh Sood**
*Non-Executive, Independent*

Mr. Sood holds a master's degree in Physics from St. Stephen's College, Delhi University and a post-graduate in Economics and Defence Studies. He joined the Indian Foreign Service (IFS) in 1976 after briefly working at DCM and SBI. In his 37 years long diplomatic career, Mr. Sood served India's diplomatic missions in Brussels, Dakar, Geneva and Islamabad in varied capacities and as the Deputy Chief of Mission in Washington. Having set up the Disarmament and International Security Affairs Division at Delhi and heading it for eight years, he was responsible for multilateral disarmament negotiations relating to chemical and biological weapons, nuclear tests, etc., and establishing bilateral dialogues with the USA, Pakistan, France and the ASEAN Regional Forum. He has also served as an Ambassador on the Conference of Disarmament in Geneva, Afghanistan, Nepal and France, and been appointed as a Special Envoy of the Prime Minister (SEPM) for disarmament and non-proliferation issues. As a commentator, panelist and speaker on the foreign policy and international security issues, he keeps on addressing various forums, newspapers and television channels in India and abroad.



**Mr. S. Lakshminarayanan**
*Non-Executive, Independent*

Mr. Lakshminarayanan joined the Indian Audit and Accounts service in 1965. After holding various positions in the Audit and Accounts Department, he retired as the Deputy Comptroller and Auditor General in 2002. During the period, he served in the Ministry of Personnel and Pensions as Additional Secretary and earlier in the Railways and Ministry of Defense, Government of India. Several successful stints have helped Mr. Lakshminarayanan gain experience in cadre management, staff welfare, purchases and contracts, financial advice and accounting. With a commendable knowledge on the relevant rules and regulations, he has led offices comprising as many as 1,500 employees. He has also provided direction, guidance and created administrative framework for the companies. Mr. Lakshminarayanan also has an international exposure.



**Mr. Sunil Srivastav**
*Non-Executive, Independent*

Mr. Srivastav retired as the Dy. Managing Director, Corporate Accounts Group, from the State Bank of India (SBI). He was responsible for a large corporate credit exposure, including project and infrastructure financing for the bank. In an illustrious career spanning over three decades with the SBI, he rose from the ranks holding several leadership positions, including DMD – CSNB, CGM – Kolkata and GM – Delhi, accomplishing several achievements like initiating the Bank's foray into digital delivery of financial products and services, entry into the new lines of businesses, including identification and negotiation with global JV partners, managing and growing operations of a network of 1,450 offices in Bengal, Sikkim and Andaman & Nicobar, and growing the bank's business in the mountainous terrain in the State of Uttarakhand.



**Ms. Jyoti Deshpande**
*Non-Executive, Non-Independent*

Ms. Jyoti Deshpande 48 years, has over 26 years of experience in media and entertainment across advertising, media consulting, television and film. From April 2018, Ms. Deshpande joined Reliance Industries Limited as President of the Chairman's Office to set up and head the Media and Entertainment business. In her new role at RIL, Ms. Deshpande leads the company's initiatives in Media and Entertainment to organically build and grow businesses around the content ecosystem such as Broadcasting, Films, Sports, Music, Digital, Gaming, Animation etc., as well as integrate RIL's existing media investments such as Viacom, Balaji Telefilms, Saavn and IndiaCast with a view to build, scale and consolidate the fragmented $20 billion Indian M&E sector.

Ms. Deshpande was recently featured in Forbes Emergent 25 business women in Asia list in May 2018. Ms. Deshpande also features in the prestigious Fortune India magazine's 50 Most Powerful Women in Business which celebrates the journeys and triumphs of women who not only impact their organizations but are also thought leaders in their industry.

# MANAGEMENT DISCUSSION AND ANALYSIS

**Macroeconomic Environment in India**

The Indian economy is recovering in 2019 as disruptions related to demonetization and implementation of Goods and Services Tax (GST) are easing up. As per the World Economic Outlook Update published in July 2019, India's economy is set to grow at 7.0 percent in 2019, further picking up to 7.2 percent in 2020. The downward revision of 0.3 percentage point for both years from the earlier released estimates reflects a weaker than expected outlook for domestic demand. However, as per the Union Budget 2019, the Government has set up an ambitious target to reach US $ 5 trillion in the next five years from the US $ 2.7 trillion recorded in 2019.



**GDP Growth CAGR (2017-2020E)**

*Calendar years, E stands for estimates*

*Source: World Economic Outlook Update, July 2019*

**Indian Media and Entertainment Industry**

With a population of over 1.3 billion, India has as many as 23 languages spoken across the country. Indians have a huge appetite for entertainment and the demand for content in multiple languages is only growing. In CY2018, the Indian M&E sector reached ₹ 1.67 trillion, a growth of 13.4% over CY2017. With its current trajectory, the industry is expected to grow to ₹ 2.35 trillion by 2021. The favorable media metrics and the industry growth is being driven, in part, by increasing digitization, higher penetration in rural markets, rapidly growing young population, increasing online and mobile connectivity, and increasing growth of the Indian middle and affluent classes. According to CIA's World Factbook, India has one of the youngest populations in the world with a median age of 28 years and 59% of the population between 15-54 years is the key driver of the consumption growth. The country is also at an inflexion point in wireless broadband connectivity and infrastructure that, combined with its GDP growth and young demographics, creates the right tailwinds for the Indian Media and Entertainment Industry.

**Indian Media and Entertainment Industry Revenue Outlook**



(a)  *Other includes Radio, Music, Out of Home, Animation/VFX, Gaming and Digital Advertising*

(b)  *All figures in ₹ billion, calender years*

*Source: FICCI-EY M&E Report 2019*

**Theatrical**

The Indian film segment grew by 12.2% in 2018 to reach ₹ 174.5 billion. The Indian film entertainment industry is the largest in the world in terms of the total number of films released theatrically. The FICCI-EY M&E Report 2019 estimates that 1,776 films were released in 2018 as compared to 1,807 films in 2017. Despite a decline in the number of films, the year 2018 turned out to be a successful year for the Hindi theatricals segment in terms of the box office with films entering the ₹ 1 billion club almost every month. Going forward, the filmed entertainment is projected to grow to ₹ 236 billion by 2021.

Hindi films contributed approximately 42.1% of Net Box Office collections, despite comprising only 13.4% of the films released. Films in other languages comprised 81% of the films released and contributed approximately 46.9% of the Box Office collections. Hollywood and foreign films contributed the balance. Strong focus from top studios towards regional cinema continues to be driving the growing popularity of regional films. Another major trend that the regional cinema has benefited from has been through the increased consumption of dubbed films by the audiences.

Rapid urbanization has resulted in increased demand for modern cinema screens featuring quality infrastructure, latest audio-visual systems, food and beverage offerings etc. While the multiplexes are at the forefront of providing such facilities to the patrons, many single screen cinemas are also converting themselves into multiplexes or are revamping themselves. On an overall basis, multiplexes screen count stood at 2,950 screens, which was about 30% of the overall screen count, but contributed approximately 60% of the box office revenues. There continues to be a major opportunity to build more screens, given the low penetration of the screens in India, especially in tier-III, tier-IV and rural markets.

**Screens per million of population**



*Source: FICCI-EY M&E Report 2019*

Another trend that has augmented the convenience factor for cinema visits is the increasing adoption of online ticketing from platforms such as BookMyShow, Paytm etc. and also cinemas' own platforms. In recent years, well over 50% of ticket sales for multiplexes are being booked online.

Overseas theatricals have emerged as the fast growing revenue stream for film studios. In 2018, overseas theatricals market grew to ₹ 30 billion from ₹ 25 billion in 2017. 120-125 movies, across the Hindi and regional domains, were released in the overseas theatrical markets in 2018. Apart from the big banner releases, several small and medium-sized films made their mark in overseas markets. The main overseas markets for Indian films, where often the release date is the same as in India, are USA, UK, Middle East, Canada, Australia. Apart from these traditional markets, the following of Indian films continues to grow with cross over audiences across many countries in Asia Pacific and Western Europe. China is being cemented as a big overseas market for Indian content. While only 2 films and 1 film was released in China in 2016 and 2017 respectively, 2018 saw 10 films from India being screened in China, accounting for highest collection in this overseas region.

### OTT platforms

While the theatrical and television segments are steadily increasing and reporting healthy growth, the exponential growth of digital media and the advent of the OTT platforms in the Media and Entertainment industry is a game changer for India.

Internet subscribers grew 28% from 446 million in 2017 to 570 million in 2018. Hence given that there are 4 billion internet users in the world, one amongst eight internet users is an Indian.

**Internet penetration was also driven by rural subscriber growth**

|  | Dec 2017 | Dec 2018 |
|---|---|---|
| Total internet subscribers | 446 | 570 |
| Narrow band subscribers | 83 | 58 |
| Broadband subscribers | 363 | 512 |
| Urban internet subscribers | 314 | 373 |
| Rural internet subscribers | 132 | 197 |

At over 500 million broadband subscribers, India has the second largest broadband subscriber base in the world after China. This number is expected to grow to 700 million by 2021, effectively meaning that the broadband access will be available to all internet subscribers. Wireless broadband comprises 96% of the total broadband subscribers, clearly indicating that smartphone is a preferred device for internet access for most Indians.

54% of the total mobile connections were 3G and 4G and data consumption across 3G and 4G networks comprised 12% and 87% of the total data consumption. The average Indian data user doubled consumption from 4GB to 8GB per month between 2017 to 2018 and expected to reach 10GB in 2019. This is an indication that as network rollout progresses further, the data consumption and thereby the OTT viewership is set to grow exponentially.

According to FICCI-EY M&E Report 2019, India has the world's second highest number of internet users after China, with around 570 million internet subscribers, growing at a rate of 13% annually. The impressive scale of the market and a liberal foreign investment environment will continue to be attractive to global streaming platforms looking to capitalize on the country's fast growing digital consumption.

Digital media is playing an increasingly important role in the Indian media industry. With the rapid convergence of media and technology, entertainment companies are digitizing their content and leveraging digital platforms such as mobile and broadband to monetize their content. Further, with increasing digital infrastructure, Indians are now increasingly getting accustomed to consuming content online. As a result, digital content creation is growing across languages and genres. In 2018, the demand for original digital content increased to around 1,200 hours, also pushing up prices as a result.

The telecom companies have been integral to the digital market with over 200 million people accessing digital content through telco data bundles and upto 60% of video viewership volumes generated by telecom companies. According to UC News Feed platform in India, Entertainment was the largest category of mobile content consumption for Indian users, followed Sports and Lifestyle segments.

It is expected that by 2021, 30-35 million paying subscribers and a further 350+ million subscribers will access bundled OTT services from telecom companies. Rollout of fiber to home and 5G services will also significantly improve connectivity from 2020 onwards. This will be beneficial for video consumption, particularly for long form content such as films and digital series.

### Television

Since 2016, TV viewership in India has shot up by 12%, according to the Broadcast Audience Research Council (BARC)'s Broadcast India survey. According to FICCI-EY M&E Report 2019, the survey report indicates a 7.5% increase in the number of TV-owning households across India to 197 million in 2018 and the number of viewers also rose by 7.2% to 836 million. The TV penetration amongst Indian households increased 66% in 2018 from 64% in 2016 and 88% of the TV households were digitized.

| Mode of Signal | CY2017 | CY2018 |
|---|---|---|
| Cable | 98.5 | 103 |
| DTH | 52 | 56 |
| Hits | 1.5 | 2 |
| Free TV | 31 | 36 |
| **Total** | **183** | **197** |

Television segment in 2018 grew by 12% to reach ₹ 740 billion. Growth was led by a 14% increase in advertising revenues and 11% increase in subscription revenues. This segment is expected to reach ₹ 955 billion by 2021, with advertising growing at 10% and subscription at 8%.

### Viewership Growth Regional Languages



Source: FICCI-EY M&E Report 2019

In terms of content consumption trends, 24% of the total content consumed was on films. The broadcast rights for films grew from ₹ 19 billion in 2017 to ₹ 21.2 billion in 2018. Films continue to generate healthy sales on satellite rights as they continue to drive advertising and well as subscription revenues effectively.

### Music

Music is an integral part of Indian film promotion and generates additional revenue streams for film companies. The Indian music segment grew 10% to reach ₹ 14.2 billion in 2018. It is expected to grow 10.8% annually till 2021, on the back of increased digital revenues, performance rights and synchronization rights. In India, songs related to films have the highest share accounts for over 80% of the music segment's revenues. The three most popular genres amongst internet users in India are new Bollywood music, older Bollywood music and Indian classical music.

### Company Overview

Eros International Media Limited (Eros International) is a leading global Company in the Indian filmed and digital Entertainment Industry which co-produces, acquires and distributes Indian language films in multiple formats worldwide. The success is built on the relationships we have cultivated over the past 40 years with leading talent, production companies, exhibitors and other key participants in our industry. Leveraging these relationships, we have aggregated rights to over 2,000 films in our library, including recent and classic titles that span different genres, budgets and languages. We have co-produced/acquired a portfolio of over 130+ new films over the last three completed fiscal years. Film distribution across theatrical, overseas and television and

**MANAGEMENT DISCUSSION & ANALYSIS**

others channels along with library monetization provide us with diversified revenue streams. In addition, Eros International produces and acquires content for Eros Now, parent Eros International Plc's, OTT entertainment service. Launched in 2012, Eros Now has digital rights to over 12,000 films, out of which approximately 5,000 films are owned in perpetuity, across Hindi and regional languages from Eros' internal library, as well as third-party aggregated content. As of 31 March 2019, Eros Now has garnered ~ 155 million registered users across WAP, APP and Web and 18.8 million paying subscribers.

## Strategic Overview

Our strategy is driven by the scale and variety of our content and the global exploitation of that content through diversified channels. Specifically, we intend to pursue the following strategies:

- Scaling up productions, co-productions and acquisitions to augment our film library and original digital content

- Expand our regional content offerings

- Effectively monetize our strong film library across various platforms

- Create compelling content for our Eros Now, our parent Eros International Plc's OTT entertainment service

- Further extend the distribution of our content to new audiences and platforms

- Capitalize on the highly attractive market opportunity driven by secular tailwinds

## Human resources

Within our strategic roadmap, we have 5 distinct themes that guide our actions. **Position Human Resources** to support senior leadership in executing on the priorities for the organization. **Enhancing HR systems & process** solutions to serve our employees better, while ensuring accountability through policy and reporting. **Maximizing efficiencies** and effectiveness in business through process standardization. Our quest to becoming **Employers of choice** with our ability to retain, motivate, develop and continue to attract the best talent market has to offer through a stringent promotion, Internal recruitment and job rotation process. Our reward and recognition program forms a core part of the exercise. In order to maintain market leader's position of being an attractive employer, the Company has developed global guidelines on diversity, equal rights and against discrimination. **Employee relations & listening post** through an open door policy giving every employee the right and opportunity to discuss any work-related issues directly with the management. In order for us to do so, we have aligned the workplace layout and seating to foster the said culture.

## Cautionary Statements

Statements in the Management Discussion and Analysis describing the Company's objectives, projections, estimates and expectations may be 'forward-looking statements' within the meaning of applicable securities, laws and regulations. Actual results could differ materially from those expressed or implied. Important factors that could influence the Company's operations include economic developments in India or globally, demand and supply conditions in the industry, changes in Government regulations, tax laws, litigations and employee relations and others.

# DIRECTORS' REPORT

To,
The Members
Eros International Media Limited
Your Board of Directors are pleased to present 25th Annual Report of Eros International Media Limited (hereinafter referred to as "**the Company**") covering the business, operations and Audited Financial Statements of the Company for the financial year ended 31 March 2019.

## 1. FINANCIAL RESULTS

The Financial Performance of your Company for the year ended 31 March 2019 is summarized below:                     ₹ in lakhs

| Particulars | Standalone Year Ended | | Consolidated Year Ended | |
| --- | --- | --- | --- | --- |
| | **2018-19** | **2017-18** | **2018-19** | **2017-18** |
| Sales and other Income | **86,980** | 72,857 | **1,13,969** | 1,01,001 |
| **Profit before Tax** | **13,677** | **14,043** | **31,763** | **28,735** |
| Less: Tax Expenses | **4,941** | 6,342 | **5,115** | 5,613 |
| **Net Profit for the year from continuing operations** | **8,736** | **7,701** | **26,648** | **23,122** |
| **Profit for the year attributable to:** | | | | |
| Equity shareholders of the Company | **-** | - | **26,908** | 22,934 |
| Non-controlling Interests | **-** | - | **(260)** | 188 |
| **Other Comprehensive Income/(Loss) (net of taxes)** | **40** | 56 | **5,134** | 51 |
| **Total Comprehensive Income for the Year** | **8,776** | **7,757** | **31,782** | **23,173** |
| **Attributable to:** | | | | |
| Equity Shareholders of the Company | **-** | - | **32,042** | 23,207 |
| Non-controlling Interests | **-** | - | **(260)** | (34) |
| **EPS (Diluted) in ₹** | **9.10** | **8.03** | **28.02** | **23.92** |

## 2. FINANCIAL PERFORMANCE

On a consolidated basis, the Company has recorded the revenues of ₹ 1,13,969 lakhs which is an increase of 12.84% as compared to previous year of ₹ 101,001 lakhs. The profit before tax increased by 10.54% to ₹ 31,763 lakhs as compared to previous year of ₹ 28,735 lakhs. The profit after tax attributable to equity shareholders was ₹ 26,908 lakhs, which was an increase of 17.33% as compared to previous year of ₹ 22,934 lakhs. Diluted EPS increased by 17.14% to ₹ 28.02 as compared to previous year of ₹ 23.92.

On standalone basis, the Company has recorded revenues of ₹ 86,980 lakhs which was an increase of 19.38% as compared to previous year of ₹ 72,857 lakhs. The profit before tax decreased by 2.61% to ₹ 13,677 lakhs as compared to previous year of ₹ 14,043 lakhs. The profit after tax at ₹ 8,736 lakhs an increase of 13.44 % as compared to previous year of ₹ 7,701 lakhs. Diluted EPS increased by 13.33% to ₹ 9.10 as compared to previous year of ₹ 8.03.

## 3. OPERATIONAL PERFORMANCE

During the Financial Year 2018-19, your Company released a total of 72 Films, of which 7 medium budget and 65 low budget Films as compared to 24 Films released in corresponding period last year, of which 1 were high budget, 4 medium budget and 19 low budget Films. Amongst the 72 Films released during the financial year 2018-19, 15 Hindi films, 7 Tamil/Telugu film and 50 regional films.

Major releases for FY 2018-19 included: Bhavesh Joshi Super Hero (Hindi), Saakshyam (Telugu), Happy Phirr Bhag Jayegi (Hindi), Manmarziyan (Hindi), Patakhaa (Hindi), Amar Akbar Anthony (Telugu), Savyasachi (Telugu), Boyz 2 (Marathi), Tumbbad (Hindi), Mumbai Pune Mumbai 3 (Marathi) and others.

Your Company's key asset is a film library of over 2,000 films. In an effort to reach a wide range of audiences, we maintain rights to a diverse portfolio of films spanning various genres, generations and languages. These include rights to films in Hindi and several regional languages, Tamil, Telugu, Kannada, Marathi, Bengali, Malayalam and Punjabi.

## 4. DIVIDEND

With a view to conserve resources and to strengthen the financial position of the Company, your Directors did not recommend any dividend to its members for the financial year 2018-19.

The Dividend Distribution policy adopted by the Company in terms of SEBI (Listing Obligations & Disclosures Requirements) Regulations, 2015 ("**SEBI Listing Regulations**"). This Policy is uploaded on the website of the Company at www.erosplc.com

## 5. RESERVES

No percentage of profits was transferred to General Reserve as dividend was not recommended for the financial year 2018-19.

## 6. EMPLOYEES' STOCK OPTION SCHEME & CHANGES IN SHARE CAPITAL

During the year under review, the Nomination and Remuneration Committee of the Board had issued and allotted 3,09,642 Equity Shares of the Company to its employees against exercise of equal number of stock options pursuant to Eros Employee Stock Option Scheme 2009 ("EROS ESOP 2009") and 2,26,621 Equity Shares of the Company to its employees against exercise of equal number of stock options pursuant to Eros Employee Stock Option Scheme 2017 ("EROS ESOP 2017"). This resulted in increase in the Company's Paid up Share Capital to ₹ 95,50,81,400 as on 31 March 2019 as against ₹ 94,97,18,770 in the previous year.

The disclosures as required under Regulation 14 of Securities Exchange Board of India (Share Based Employee Benefits) Regulations, 2014 read with SEBI Circular No. CIR/CFD/POLICY CELL/2/2015 dated 16 June 2015, is attached to this report as **Annexure A** hereto and is also available on website of the Company at www.erosplc.com. A certificate from the statutory auditors certifying that both the schemes viz. EROS ESOP 2009

DIRECTORS' REPORT

and EROS ESOP 2017 has been implemented in accordance with SEBI (Share Based Employee Benefits) Regulations, 2014 and in accordance with the resolution(s) passed by the members would be placed at the Annual General Meeting of the Company for inspection by the members.

### 7. SUBSIDIARIES, JOINT VENTURE AND ASSOCIATE COMPANIES

As on 31 March 2019, the Company has 11 subsidiaries. There has been no material change in the nature of the business of the Company and its subsidiaries. Pursuant to the provisions of Section 129(3) of the Act read with Rule 5 of the Companies (Accounts) Rules, 2014, a statement containing salient features of the financial statements of the Company's subsidiaries and joint venture, its performance and financial position is provided in the prescribed Form AOC-1 is attached to this Report as **Annexure B**.

None of the subsidiary companies except Copsale Limited (a British Virgin Island Company) are material subsidiary in terms of Regulation 16(c) of the SEBI Listing Regulations (as amended) and in accordance with Company's policy on "Determination of material subsidiaries", which is uploaded on the website of the Company at www.erosplc.com.

In accordance with Section 136 of the Act, the financial statements of the subsidiary companies are available for inspection by the members at the Corporate Office of the Company during business hours on all days except Saturdays, Sundays and public holidays between 11:00 A.M. to 1:00 P.M. up to the date of the Annual General Meeting of the Company. Any member desirous of obtaining a copy of the said financial statements may write to the Company Secretary at the Corporate Office of the Company. The financial statements including the consolidated financial statements, financial statements of subsidiaries and all other documents required to be attached to this report have been uploaded on the website of the Company at www.erosplc.com.

### 8. BOARD OF DIRECTORS & KEY MANAGERIAL PERSONNEL

In accordance with the provisions of Section 152(6) of the Act and in terms of the Articles of Association of the Company, Mr. Kishore Lulla, Executive Director (DIN: 02303295) retires by rotation at the ensuring Annual General Meeting and being eligible, has offered himself for re-appointment.

The first term of office of Mr. Dhirendra Swarup as an Independent Director expires at the ensuing Annual General Meeting of the Company.

The Board of Directors, on recommendation of Nomination and Remuneration Committee has recommended re-appointment of Mr. Dhirendra Swarup as an Independent Director of the Company for a second term of Five (5) consecutive years on the expiry of his current term of office.

As per the provisions of the Act, Independent Directors have been appointed for a period of five years and shall not be liable to retire by rotation. All other Directors, except the Managing Director, are liable to retire by rotation at the Annual General Meeting of the Company.

The brief details of the Directors proposed to be reappointed as required under Secretarial Standard 2 issued by the Institute of Company Secretaries of India and Regulation 36 of the SEBI Listing Regulations is provided in the Notice convening Annual General Meeting of the Company.

All the Directors of the Company have confirmed that they are not disqualified to act as Director in terms of Section 164 of the Act.

As on the date of this Report, Mr. Sunil Arjan Lulla, Managing Director, Mr. Farokh P. Gandhi, Group Chief Financial Officer (India) and Mr. Abhishekh Kanoi, VP-Company Secretary & Compliance Officer are the Key Managerial Personnel of your Company in accordance with the provisions of Section 2(51) read with Section 203 of the Act.

**Declaration of Independence by Independent Directors & adherence to the Company's Code of Conduct for Independent Directors**

All the Independent Directors of the Company have submitted their disclosure to the effect that they fulfill all the requirements/criteria of independence as per Section 149(6) of the Act. Further, all the Independent Directors have affirmed that they have adhered and complied with the Company's Code of Conduct for Independent Directors which is framed in accordance with Schedule IV of the Act.

### Meetings conducted during the Year

The Board met four (4) times during the financial year under review, the details of which are given in the Corporate Governance Report that forms part of this Report. The intervening gap between any two meetings of the Board was not more than one hundred and twenty (120) days as stipulated under the Act and SEBI Listing Regulations.

### Constitution of various Committees

The Board of Directors of the Company has constituted following Committees:

a. Audit Committee

b. Nomination and Remuneration Committee

c. Stakeholders Relationship Committee

d. Corporate Social Responsibility Committee

e. Management Committee

Details of each of the Committees stating their respective composition, terms of reference and others are uploaded on our website at www.erosplc.com and are stated in brief in the Corporate Governance Report attached to and forming part of this Report.

### Annual Evaluation of Board, its Committees and Individual Directors

The Company has devised a Policy for performance evaluation of the Board, its Committees and other individual Directors (including Independent Directors) which includes criteria for Performance Evaluation of the Non-Executive Directors and Executive Directors. The evaluation process *inter alia* considers attendance of Directors at Board and Committee Meetings, acquaintance with business, communicating inter se Board Members, effective participation, domain knowledge, compliance with code of conduct, vision and strategy, benchmarks established by global peers, etc., which is in compliance with applicable laws, regulations and guidelines.

The Board carried out annual evaluation of the performance of the Board, its Committees and Individual Directors and Chairperson. The Chairman of the respective Board Committees shared the report on evaluation with the respective Committee Members. The performance of each Committee was evaluated by the Board, based on report on evaluation received from respective Board Committees. The reports on performance evaluation of the Individual Directors were reviewed by the Chairman of the Board.

### Familiarization Programme for Independent Directors

Familiarization Programme for Independent Directors is mentioned at length in Corporate Governance Report attached to this Report and the details of the same have also been disclosed on the website of the Company at www.erosplc.com.

### Policy on appointment and remuneration and other details of Directors

The remuneration paid to the Directors is in line with the Nomination and Remuneration Policy formulated in accordance with Section 178 of the Act and Regulation 19 of the SEBI Listing Regulations (including any statutory modification(s) or re-enactment(s) thereof for the time being in force).

The Company's policy on directors' appointment and remuneration and other matters as provided in Section 178(3) of the Act has been disclosed in the Corporate Governance Report, which forms part of this Report.

A detailed statement of disclosure required to be made in accordance with the Nomination and Remuneration Policy of the Company, disclosures as per the Act and applicable Rules thereto is attached to this Report as **Annexure C** hereto and forms part of this Report.

### 9.    AUDITORS & AUDITORS' REPORT

Chaturvedi & Shah LLP (erstwhile known as *Chaturvedi & Shah*), (Firm Registration No. 101720W/W100355) were appointed as Statutory Auditors of the Company at the 23rd Annual General Meeting of the Company held on 28 September 2017 for the term of Five (5) years i.e. from the conclusion of 23rd Annual General Meeting until the conclusion of 28th Annual General Meeting, to be held in the year 2022. They have confirmed that they are not disqualified from continuing as Auditors of the Company.

#### Auditors' Report

There are no qualifications, adverse remarks reservations or disclaimer made by Chaturvedi & Shah LLP, Statutory Auditors, in their report for the financial year ended 31 March 2019. The notes to the Accounts referred to in the Auditor's Report are self-explanatory and therefore do not call for any further explanation and comments.

Pursuant to provisions of Section 143(12) of the Act, the Statutory Auditors have not reported any incidence of fraud to the Audit Committee during the year under review.

### 10.   SECRETARIAL AUDITORS' AND ITS REPORT

Pursuant to the provisions of Section 204 of the Act and the Companies (Appointment and Remuneration of Managerial Personnel) Rules, 2014, the Board has appointed Makarand M. Joshi & Co., a firm of Company Secretaries in Practice to undertake the Secretarial Audit of the Company for the financial year 2018-19. The Secretarial Audit Report for the financial year ended 31 March 2019 in the prescribed Form MR-3 is attached to this Report as **Annexure D**, which is self-explanatory. The Secretarial Audit Report does not contain any qualification, reservation, adverse remark or disclaimer.

### 11.   PARTICULARS OF EMPLOYEES

The requisite disclosures in terms of the provisions of Section 197 of the Act read with Rule 5 of the Companies (Appointment and Remuneration of Managerial Personnel) Rules, 2014 along with statement showing names and other particulars of employees drawing remuneration in excess of the limits prescribed under the said Rules is annexure to this Report as **Annexure E**.

### 12.   LOANS, GUARANTEES OR INVESTMENTS

Particulars of loans given, investments made or guarantees given or security provided by the Company as required under Section 186(4) of the Act and the SEBI Listing Regulations are contained in Notes to the Standalone Financial Statements of the Company forming part of this Annual Report.

### 13.   RELATED PARTY TRANSACTIONS

In line with the requirements of the Act and SEBI Listing Regulations, your Company has formulated policy on Related Party Transactions duly approved by the Board, which is also available on the Company's website at www.erosplc.com. The Policy intends to ensure that proper reporting, approval and disclosure processes are in place for all transactions between the Company and Related Parties.

All contracts/arrangements/transactions entered by the Company during the financial year with related parties were on an arm's length basis, in the ordinary course of business and in compliance with the applicable provisions of the Act and SEBI Listing Regulations. Prior omnibus approval had been obtained for the transaction which are of a foreseeable and repetitive in nature and such transactions are reported on a quarterly basis for review by the Audit Committee as well as the Board.

Pursuant to Section 134 of the Act read with Rule 8(2) of the Companies (Accounts) Rules, 2014, the particulars of contracts / arrangements / transactions entered into with related parties during the financial year 2018-19 in terms of Section 188(1) of the Act and applicable Rules made thereunder, is attached to this Report as **Annexure F** in the prescribed Form AOC-2.

All other contracts / arrangements / transactions with related parties, are in the usual course of business and at arm's length basis and stated in Notes to Accounts to the Financial Statements of the Company forming part of this Annual Report.

### 14.   WHISTLE BLOWER / VIGIL MECHANISM

Your Company promotes ethical behavior in all its business activities and your Company has adopted a Policy on Vigil Mechanism and Whistle Blower in terms of Section 177(9) and Section 177(10) of the Act and Regulation 22 of the SEBI Listing Regulations for receiving and redressing complaints from employees, directors and other stakeholders to report concerns about unethical behaviour, actual or suspected fraud.

The Policy is appropriately communicated within the Company across all levels and has been displayed on the Company's intranet for its employees and website at www.erosplc.com for stakeholders.

Protected disclosures are made by a whistle blower in writing to the Ombudsman on Email-ID at whistleblower@erosintl.com and under the said mechanism, no person has been denied direct access to the Chairperson of the Audit Committee. The Audit Committee and Stakeholders Relationship Committee periodically reviews the functioning of this Mechanism.

### 15.   PREVENTION, PROHIBITION AND REDRESSAL OF SEXUAL HARASSMENT AT WORKPLACE

The Company has formulated a Policy on Prevention of Sexual Harassment at Workplace in accordance with the Sexual Harassment of Women at Workplace (Prevention, Prohibition and Redressal) Act 2013 and the Rules thereunder. All employees (permanent, contractual, temporary, trainees) are covered under the Policy. Further, the Company has constituted an Internal Complaints Committee, where employees can register their complaints against sexual harassment.

During the year under review, the Company has not received any complaints on sexual harassment.

### 16.   EXTRACT OF THE ANNUAL RETURN

The extract of Annual Return in the prescribed Form MGT-9 as required under Section 92(3) of the Act read with Companies (Management & Administration) Rules, 2014 is placed on the website of the Company at www.erosplc.com and is set out in **Annexure G** to this Report.

### 17.   INSURANCE

All the insurable interests of your Company including properties, equipment, stocks etc. are adequately insured**.**

### 18.   DEPOSITS

Your Company has not accepted any deposit from public under Chapter V of the Act.

**19. DIRECTORS' RESPONSIBILITY STATEMENT**

To the best of their knowledge and belief and according to the information and explanations obtained, in terms of Section 134 of the Act, your Directors confirms that:

a. in the preparation of the annual accounts for the financial year ended 31 March 2019, the applicable Accounting Standards read with the requirements set out under Schedule III to the Act, have been followed and there are no material departures from the same;

b. such accounting policies have been selected and applied consistently and judgments and estimates made that are reasonable and prudent so as to give a true and fair view of the state of affairs of the Company as at 31 March 2019 and of the profit of the Company for the year ended on that date;

c. proper and sufficient care has been taken for the maintenance of adequate accounting records in accordance with the provisions of the Act, for safeguarding the assets of the Company and for preventing and detecting fraud and other irregularities;

d. the annual accounts have been prepared on a '*going concern*' basis;

e. internal financial controls were followed by the Company and such internal financial controls are adequate and are operating effectively; and

f. proper systems have been devised to ensure compliance with the provisions of all applicable laws and such systems are adequate and operating effectively.

**20. CONSERVATION OF ENERGY, TECHNOLOGY ABSORPTION, FOREIGN EXCHANGE**

Your Company is into the business of production, acquisitions, marketing and distributions of cinematograph films. Since this business does not involve any manufacturing activity, the Information required to be provided under Section 134(3)(m) of the Act read with the Companies (Accounts) Rules, 2014, are not applicable to the Company. However, the Company has been continuously and extensively using technology in its business operations.

The particulars of foreign currency earnings and outgo are as under:

₹ in lakhs

| Particulars | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| Expenditure in foreign currency | 520 | 372 |
| Earnings in foreign currency | 16,526 | 11,014 |
| CIF Value of Imports | NIL | NIL |

**21. INTERNAL FINANCIAL CONTROLS**

Your Company maintains adequate and effective internal control systems which commensurate with the nature, size and complexity of its business and ensure orderly and efficient conduct of the business. The internal control systems of the Company are routinely tested and verified by Independent Internal Auditors and significant audit observations and follow-up actions are reported to the Audit Committee. The Audit Committee reviews the adequacy and effectiveness of the Company's internal control requirement and monitors the implementation of audit recommendations.

**22. CORPORATE GOVERNANCE**

In accordance with the provisions of the SEBI Listing Regulations, a detailed report on Corporate Governance along with Compliance Certificate issued by the Secretarial Auditor of the Company is attached and forms an integral part of this Annual Report.

**23. MANAGEMENT DISCUSSION AND ANALYSIS REPORT**

In terms of Regulation 34 and Schedule V of the SEBI Listing Regulations, Management Discussion and Analysis Report is presented in separate sections forming part of this Annual Report.

**24. CORPORATE SOCIAL RESPONSIBILITY**

The disclosures on Corporate Social Responsibility activities, as required under Rule 9 of the Companies (Corporate Social Responsibility Policy) Rules, 2014, are reported in **Annexure H** forming part of this Report and is also available on the website of the Company at www.erosplc.com.

**25. RISK MANAGEMENT**

The Audit Committee of the Board has been vested with powers and functions relating to Risk Management, which *inter alia* includes (a) review of risk management policies and business processes to ensure that the business processes adopted and transactions entered into by the Company are designed to identify and mitigate potential risk; (b) laying down procedures relating to Risk assessment and minimization.

The objective of the risk management framework is to enable and support achievement of business objectives through risk intelligent assessment while also placing significant focus on constantly identifying and mitigating risks within the business. Further details on the Company's risk management framework is provided in the Management Discussion and Analysis report.

**26. MATERIAL CHANGES AND COMMITMENTS AFFECTING THE FINANCIAL POSITION OF THE COMPANY**

There have been no material changes and commitments, affecting the financial position of the Company which have occurred between the end of the financial year of the Company to which the financial statements relate and till the date of this Report except for downgrade of credit rating by CARE Rating Limited in June 2019 from CARE BBB- to CARE D for Long term facilities and CARE A3 to CARE D for Short Term Facility on account of delay in debt servicing for more than 30 days.

**27. DETAILS OF SIGNIFICANT/MATERIAL ORDERS PASSED BY THE REGULATORS/COURTS**

There have been no significant and material orders passed by the Regulators or Courts or Tribunals impacting the going concern status and Company's operations in future.

**28. OTHER DISCLOSURES**

• During the year under review, the Company has not accepted any deposit within the meaning of Sections 73 and 74 of the Act read with the Companies (Acceptance of Deposits)

Rules, 2014 (including any statutory modification(s) or re-enactment(s) thereof for the time being in force);

- Your Company has complied with the provisions of all applicable Secretarial Standards issued by the Institute of Company Secretaries of India on Meeting of Board of Directors [SS-1] and General Meetings [SS-2];

- The Company has not issued equity shares with differential rights as to dividend, voting or otherwise.

**29.    ACKNOWLEDGMENTS**

The Board of Directors take this opportunity to express their sincere appreciation for support and co-operation from the Banks, Financial Institutions, Members, Vendors, Customers and all other business associates.

Your Directors sincerely appreciate the high degree of professionalism, commitment and dedication displayed by the employees at all levels. Your Directors also wish to place on record their gratitude to all the stakeholders for their continued support and confidence.

**For and on behalf of the Board of Directors**

**Sunil Arjan Lulla**
**Executive Vice Chairman & Managing Director**
DIN: 00243191

Place: Mumbai
Date: 23 May 2019

**Subramaniam Lakshminarayanan**
**Non-Executive Independent Director**
DIN: 07972480

**Sunil Srivastav**
**Non-Executive Independent Director**
DIN: 00237561

# Annexure A

**DISCLOSURE PURSUANT TO REGULATION 14 OF THE SEBI (SHARE BASED EMPLOYEE BENEFITS) REGULATIONS, 2014 FOR THE FINANCIAL YEAR 2018-19**

| | | Eros Employee Stock Option Scheme 2009 | | | | | | | | Eros Employee Stock Option Scheme 2017 | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | (A) | (B) | (C) | (D) | (E) | (F) | (G) | (H) | (I) | (J) | |
| | Date of Shareholders Approval | 4 December 2009 | | | | | | | | 27 September 2017 | | |
| | Total number of options approved under the Scheme | 5% of the issued paid up share capital as on grant Date | | | | | | | | 5% of the issued paid up share capital as on grant Date | | |
| | Grant dates | 17-Dec-09 | 12-Aug-10 | 1-Jul-12 | 14-Oct-13 | 12-Nov-14 | 12-Feb-15 | 9-Feb-16 | 10-Feb-17 | 14-Nov-17 | 8-Feb-18 | |
| (a) | **Eros Employee Stock Option Scheme 2009** Options Granted during the year 2009-2010 (Refer to Column A), Options Granted during the year 2010-2011 (refer Column B), Options Granted during the year 2012-2013 (refer Column C), Options Granted during the year 2013-2014 (refer column D), Options Granted during the year 2014-2015 (refer column E), Options Granted during the year 2014-2015 (refer column F), Options Granted during the year 2015-2016 (refer column G), Options Granted during the year 2016-2017 (refer column H), **Eros Employee Stock Option Scheme 2017** Options Granted during the year 2017-2018 (refer column I & J). | 1,729,512 | 83,628 | 571,160 | 300,000 | 552,961 | 139,000 | 966,009 | 282,227 | 822,190 | 41,824 | 5,488,511 |
| (b) | Pricing Formula | | | | | | | | | | | |
| | Discount to Fair Value | At a Discount ranging from Nil to 50% to Fair value (₹ 175/-) | At a Discount ranging from 20% to 50% to Fair value (₹ 175/-) | At a Discount of 57.15% to Fair Value (₹ 175/-) | At Nil Discount to Fair Value | At a Discount of approx 94 % to Fair Value (₹ 284/-) | At a Discount of approx 98% to Fair Value (₹ 376/-) | At a Discount of approx 95% to Fair Value (₹ 190/-) | At a Discount of approx 95% to Fair Value (₹ 188/-) | At a Discount of approx 95% to Fair Value (₹ 200.60/-) | At a Discount of approx 95% to Fair Value (₹ 190.45/-) | |
| (c) | Options vested | 1,046,552 | 79,128 | 571,160 | 180,000 | 509,384 | 93,000 | 945,693 | 183,323 | 285,126 | 13,942 | 3,907,308 |
| (d) | Options exercised | 1,019,791 | 76,128 | 360,000 | 60,000 | 485,036 | 93,000 | 730,652 | 148,942 | 220,391 | 6,230 | 3,200,170 |
| (e) | Total number of shares arising as a result of exercise of options | 1,019,791 | 76,128 | 360,000 | 60,000 | 485,036 | 93,000 | 730,652 | 148,942 | 220,391 | 6,230 | 3,200,170 |

| | | Eros Employee Stock Option Scheme 2009 | | | | | | | | Eros Employee Stock Option Scheme 2017 | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Date of Shareholders Approval | 4 December 2009 | | | | | | | | 27 September 2017 | | | | |
| | Total number of options approved under the Scheme | 5% of the issued paid up share capital as on grant Date | | | | | | | | 5% of the issued paid up share capital as on grant Date | | | | |
| | Grant dates | (A) 17-Dec-09 | (B) 12-Aug-10 | (C) 1-Jul-12 | (D) 14-Oct-13 | (E) 12-Nov-14 | (F) 12-Feb-15 | (G) 9-Feb-16 | (H) 10-Feb-17 | (I) 14-Nov-17 | (J) 8-Feb-18 | | | |
| (f) | Options lapsed (as at 31 March 2019) | 709,721 | 7,500 | 211,160 | 120,000 | 52,990 | 46,000 | 123,728 | 95,626 | 163,731 | - | | | 1,530,456 |
| (g) | Variation of terms options | Fair Market value of ESOP 2009 scheme is revised from ₹ 200 to ₹ 175 wide Postal Ballot date 21 December 2010 | Fair Market value of ESOP 2009 scheme is revised from ₹ 200 to ₹175 wide Postal Ballot date 21 December 2010 | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | | | |
| (h) | Money realized by exercise of options (upto 31 March 2019) | 139,542,885 | 6,609,600 | 27,000,000 | 9,000,000 | 4,850,360 | 930,000 | 7,306,520 | 1,489,420 | 2,203,910 | 62,300 | | | 198,994,995 |
| (I) | Total number of options in force (as at 31 March 2019) | - | - | - | 120,000 | 14,935 | - | 111,629 | 37,659 | 438,068 | 35,594 | | | 757,885 |
| (i) 1 | Employee wise details of options granted to Senior Management | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | | | |
| 2 | Employees to whom more than 5% options granted during the year | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | Detailed below | | | |
| 3 | Employees to whom options more than 1% of issued capital granted during the year | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | Not Applicable | | | |
| (k) | Diluted EPS,pursuant to issue of shares on exercise of options | The diluted EPS will be ₹ 9.10 per share, lower by i.e. ₹ 0.08 | | | | | | | | | | | | |
| (l) 1 | Method of calculation of employee compensation cost | Calculation is based on intrinsic value method | | | | | | | | | | | | |
| 2 | Instrinsic Value per share (in ₹) | 28.09 | 88.18 | 100.00 | - | 282.35 | 376.20 | 189.95 | 188.00 | 200.60 | 190.45 | | | |
| 3 | Difference between the above and employee compensation cost that shall have been recognized if it had used the fair value of the options | Cost has been recongnized using fair value. | | | | | | | | | | | | |
| 4 | Impact of this difference on Profits and on EPS of the Company | Not Applicable. | | | | | | | | | | | | |

**EROS INTERNATIONAL MEDIA LIMITED**    13

| | | Eros Employee Stock Option Scheme 2009 | | | | | | | Eros Employee Stock Option Scheme 2017 | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | (A) | (B) | (C) | (D) | (E) | (F) | (G) | (H) | (I) | (J) | |
| | Date of Shareholders Approval | 4 December 2009 | | | | | | | 27 September 2017 | | | |
| | Total number of options approved under the Scheme | 5% of the issued paid up share capital as on grant Date | | | | | | | 5% of the issued paid up share capital as on grant Date | | | |
| | Grant dates | 17-Dec-09 | 12-Aug-10 | 1-Jul-12 | 14-Oct-13 | 12-Nov-14 | 12-Feb-15 | 9-Feb-16 | 10-Feb-17 | 14-Nov-17 | 8-Feb-18 | |
| (m) 1 | Weighted average exercise price (in ₹) | 118.42 | 91.14 | 75.00 | 150.00 | 10.00 | 10.00 | 10.00 | ₹ 10.00 | ₹ 10.00 | ₹ 10.00 | |
| 2 | Weighted average fair value of options based on Black Scholes methodology (in ₹) | 114.64 | 95.25 | 122.19 | 55.49 | 284.07 | 379.69 | 189.19 | 179.37 | 193.28 | 183.28 | |
| (n) | Sigificant assumptions used to estimate fair value of options including weighted average | | | | | | | | | | | |
| 1 | Risk free interest rate | 6.30% | 6.50% | 8.36% | 8.57% | 8.50% | 7.74% | 7.49% | 6.51% | 6.90% | 7.38% | |
| 2 | Expected life | 5.25 years | 5.25 years | 5.5 years | 4.5 years | 3.5- 6.5 years | 3.0-4.5 years | 3.5- 6.5 years | 4.27 years | 3.5 years | 4.5 years | |
| 3 | Expected volatility (based in competitor companies volatility) | 75% | 60% | 44% | 35% | 40.11% | 37.84% | 46.46% | 48.66% | 56.53% | 53.15% | |
| 4 | Expected dividends | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil | |
| 5 | Closing market price of share on a date prior to date of grant (Fair market value in absence of listing) (in ₹) | 175 | 175 | 168.65 | 144.75 | 291.45 | 386.3 | 199.95 | 199.85 | 200.75 | 190.5 | |

| Options granted to Senior Management Personnel (including more than 5%) during the year | Options Granted | Option Excercised | Options Lapsed | Options in force |
|---|---|---|---|---|
| Kumar Ahuja | Nil | 70,776 | Nil | 37,460 |
| Nandu Ahuja | Nil | 13,000 | Nil | 169,157 |
| Aamod Gupte | Nil | Nil | Nil | 40,363 |

# Annexure B

## Form AOC-I

(Pursuant to first proviso to sub-section (3) of Section 129 of Companies Act, 2013 read with Rule 5 of Companies (Accounts) Rules, 2014)
Statement containing salient features of the financial statement of subsidiaries/associate companies/joint ventures

**Part "A": Subsidiaries**

₹ in lakhs

| Sr No | Name of Subsidiary | Date since Subsidiary was acquired | Reporting period for the subsidiary concerned, if different from the holding Company's reporting period | Reporting currency and Exchange rate as on the last date of the relevant Financial year in the case of foreign Subsidiaries | | Share Capital | Reserves & Surplus | Other Liabilities | Total Liabilities | Invest-ments | Total Assets | Turnover | Profit Before Taxation | Provision for Taxation | Profit after Taxation | Proposed Dividend | % of Share-holding |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Currency | Rate of Exchange to INR | | | | | | | | | | | | |
| 1 | Eros International Films Private Limited | 31 March 1997 | 31 March 2019 | INR | 1.00 | 2,000 | 49 | 7,587 | 9,636 | 0 | 9,636 | 2,178 | 480 | 139 | 341 | Nil | 100.00% |
| 2 | Copsale Limited | 11 February 1999 | 31 March 2019 | USD | 69.28 | 45 | 99,986 | 25 | 100,056 | 0 | 100,056 | 22,941 | 16,748 | - | 16,748 | Nil | 100.00% |
| 3 | Bigscreen Entertainment Private Limited | 17 January 2007 | 31 March 2019 | INR | 1.00 | 1 | 77 | 120 | 198 | 0 | 198 | - | (1) | - | (1) | Nil | 64.00% |
| 4 | Eyeqube Studios Private Limited | 31 October 2007 | 31 March 2019 | INR | 1.00 | 1 | 39 | 29 | 69 | 0 | 69 | 7 | 1 | - | 1 | Nil | 100.00% |
| 5 | EM Publishing Private Limited | 25 March 2009 | 31 March 2019 | INR | 1.00 | 1 | (19) | 23 | 6 | 0 | 6 | 4 | 2 | - | 2 | Nil | 100.00% |
| 6 | Eros Animation Private Limited | 02 January 2009 | 31 March 2019 | INR | 1.00 | 1 | (3) | 2 | (0) | 0 | 0 | - | (1) | - | (1) | Nil | 100.00% |
| 7 | Digicine Pte Ltd | 30 March 2012 | 31 March 2019 | USD | 69.28 | 0 | 594 | 9,384 | 9,978 | 0 | 9,978 | 2,629 | 1,304 | - | 1,304 | Nil | 100.00% |
| 8 | Color Yellow Productions Private Limited | 23 May 2014 | 31 March 2019 | INR | 1.00 | 1 | 1,869 | 7,996 | 9,866 | 0 | 9,866 | 7,254 | (467) | 53 | (520) | Nil | 50.00% |
| 9 | Universal Power Systems Private Limited | 01 August 2015 | 31 March 2019 | INR | 1.00 | 1 | 185 | 1,769 | 1,955 | 0 | 1,955 | 1,098 | (158) | 71 | (229) | Nil | 100.00% |

Note: 1) Eros International Disctribution LLP, subsidiary of the Company incorporated on 11 December 2015 has not yet commenced the operations.

2) Reliance Eros Productions LLP, subsidiary of the Company incorporated on 31 May 2018 has not yet commenced the operations.

**Part "B": Associates and Joint Ventures**

Not Applicable

# Annexure C

Information required under Section 197 of the Companies Act, 2013, read with The Companies (Appointment and Remuneration of Managerial Personnel) Rules, 2014

**A. Ratio of remuneration of each Directors/KMP to the median remuneration of the employees of the Company for the financial year 2018-19 is as follows:**

| Name of Director/KMP | Total remuneration (Amount in ₹) | Ratio of remuneration of director to the Median remuneration |
|---|---|---|
| Mr. Dhirendra Swarup | 5,655,000 | 13.07 |
| Mr. Rakesh Sood | 3,207,500 | 7.42 |
| Mr. Sunil Arjan Lulla | 48,008,808 | 110.99 |
| Mr. Kishore Arjan Lulla | 14,070,372 | 32.53 |
| Mr. S. Lakshminarayanan | 3,007,500 | 6.95 |
| Mr. Sunil Srivastav | 2,453,120 | 5.67 |
| Mr. Farokh Gandhi | 7,918,560 | 18.31 |
| Mr. Abhishekh Kanoi | 3,367,956 | 7.79 |

**Notes:**
1. The above information is on standalone basis.
2. The aforesaid details are calculated on the basis of remuneration for the financial year 2018-19.
3. The remuneration to Directors includes sitting fees paid to them for the financial year 2018-19.

**B. Percentage increase in reumeration of each Director, Chief Financial Officer and Company Secretary in the financial year 2018-19 are as follows:**

| Name of Director | Designation | Remuneration (in ₹) | | Increase in % |
|---|---|---|---|---|
| | | 2018-19 | 2017-18 | |
| Mr. Dhirendra Swarup | Non Executive Independent Director | 5,655,000 | 5,556,209 | 1.78 |
| Mr. Rakesh Sood | Non Executive Independent Director | 3,207,500 | 3,577,113 | (10.33) |
| Mr. Sunil Arjan Lulla | Executive Vice Chairman & Managing Director | 48,008,808 | 43,757,064 | 9.72 |
| Mr. Kishore Arjan Lulla | Executive Director | 14,070,372 | 12,755,244 | 10.31 |
| Mrs. Jyoti Deshpande | Non Executive Non Independent Director | - | 71,445,672 | Refer Note 1 |
| Mr. S. Lakshminarayanan | Non Executive Independent Director | 3,007,500 | 1,173,664 | Refer Note 2 |
| Mr. Sunil Srivastav | Non Executive Independent Director | 2,453,120 | - | Refer Note 3 |
| Mr. Farokh P Gandhi | Chief Financial Officer | 7,918,560 | 482,258 | Refer Note 4 |
| Mr. Abhishekh Kanoi | Vice President - Company Secretary & Compliance Officer | 3,367,956 | 1,388,093 | Refer Note 4 |

Note:
1. The designation of Mrs. Jyoti Deshpande has been changed from Executive Director to Non-Executive Non-Independent Director of the Company w.e.f. 1 April 2018 and no remuneration was paid to Mrs. Jyoti Deshpande for financial year 2018-19.
2. Mr. S. Lakshminarayanan was appointed as an Non Executive Additional Independent Director on 14 November 2017.
3. Mr. Sunil Srivastav was appointed as an Non Executive Additional Independent Director on 23 May 2018.
4. Mr. Farokh P. Gandhi was appointed as Chief Financial Officer and Mr. Abhishekh Kanoi was appointed as VP-Company Secretary & Compliance Officer w.e.f. 9 March 2018 and 15 December 2017 respectively

**C. Percentage increase in the median remuneration of employees in the financial year 2018-19:**

| Particulars | 2018-19 Amt in ₹ | 2017-18 Amt in ₹ | % Change |
|---|---|---|---|
| Median Remuneration of all employees per annum | 432,535 | 575,016 | (24.78) |

**D.    Number of permanent employees on the rolls of the Company as on 31 March 2019 :**

As on 31 March 2019, the Company has 307 permanent employees on its payroll, as compared to 285 employees as at 31 March 2018.

**E.    Comparison of average percentile increase in salary of employees other than the key managerial personnel and the percentage increase in the key managerial remuneration:**

| Particulars | 2018-19 Amt in ₹ | 2017-18 Amt in ₹ | % Change |
|---|---|---|---|
| Average salary of all employees (other than Key Managerial Personnel) | 34,188,873 | 33,260,958 | 2.79 |

**F.**    The key parameters for any variable component of Remuneration availed by the Directors are considered by the Board of Directors based on the recommendation of the Nomination and Remuneration Committee as per the Remuneration Policy of the Company.

**G.    Affirmation:**

Pursuant to Rule 5(1)(xii) of the Companies (Appointment and Remuneration of Managerial Personnel) Rules, 2014, the Company hereby affirms that the remuneration paid is as per the Remuneration Policy for Directors, Key Managerial Personnel and other Employees.

# Annexure D

**FORM NO. MR-3**
**SECRETARIAL AUDIT REPORT**
For the Financial Year Ended 31 March 2019
[Pursuant to Section 204(1) of the Companies Act, 2013 and Rule 9 of the Companies
(Appointment and Remuneration of Managerial Personnel) Rules, 2014]

To,
The Members,
**Eros International Media Limited**
901/902, Supreme Chambers,
Off Veera Desai Road, Andheri West,
Mumbai - 400053
Maharashtra (India).

We have conducted the secretarial audit of the compliance of applicable statutory provisions and the adherence to good corporate practices by **Eros International Media Limited** (hereinafter called the "**Company**"). Secretarial Audit was conducted in a manner that provided us a reasonable basis for evaluating the corporate conducts/ statutory compliances and expressing our opinion thereon.

Based on our verification of the Company's books, papers, minute books, forms and returns filed and other records maintained by the Company and also the information provided by the Company, its officers, agents and authorized representatives during the conduct of secretarial audit, we hereby report that in our opinion, the Company has, during the audit period covering the financial year ended on 31 March 2019 (hereinafter called the '**Audit Period**') complied with the statutory provisions listed hereunder and also that the Company has proper Board processes and compliance mechanism in place to the extent, in the manner and subject to the reporting made hereinafter:

We have examined the books, papers, minute books, forms and returns filed and other records maintained by the Company for the financial year ended on 31 March 2019 according to the provisions of:

(i)   The Companies Act, 2013 (the Act) and the Rules made thereunder;

(ii)  The Securities Contracts (Regulation) Act, 1956 ('SCRA') and the Rules made there under;

(iii) The Depositories Act, 1996 and the Regulations and Bye-laws framed there under;

(iv)  Foreign Exchange Management Act, 1999 and the rules and regulations made thereunder to the extent of Foreign Direct Investment, and Overseas Direct Investment (**External Commercial Borrowing not applicable during the audit period**);

(v)   The following Regulations and Guidelines prescribed under the Securities and Exchange Board of India Act, 1992 ('**SEBI Act**') :-

    (a)   The Securities and Exchange Board of India (Substantial Acquisition of Shares and Takeovers) Regulations, 2011;

    (b)   The Securities and Exchange Board of India (Prohibition of Insider Trading) Regulations, 2015;

    (c)   The Securities and Exchange Board of India (Issue of Capital and Disclosure Requirements) Regulations, 2009 and Securities and Exchange Board of India (Issue of Capital and Disclosure Requirements) Regulations, 2018 notified on 11 September 2018 **(Not Applicable to the Company during the audit period)**;

    (d)   The Securities and Exchange Board of India (Share Based Employee Benefits) Regulations, 2014;

    (e)   The Securities and Exchange Board of India (Issue and Listing of Debt Securities) Regulations, 2008 (**Not Applicable to the Company during the audit period**);

    (f)   The Securities and Exchange Board of India (Registrars to an Issue and Share Transfer Agents) Regulations, 1993 regarding the Companies Act and dealing with client;

    (g)   The Securities and Exchange Board of India (Delisting of Equity Shares) Regulations, 2009 (**Not Applicable to the Company during the audit period**);

    (h)   The Securities and Exchange Board of India (Buyback of Securities) Regulations, 1998 and The Securities and Exchange Board of India (Buyback of Securities) Regulations, 2018 notified on 11 September 2018 **(Not Applicable during the audit period)**.

We have also examined compliance with the applicable clauses of the following:

(i)   Secretarial Standards issued by The Institute of Company Secretaries of India.

(ii)  The Securities and Exchange Board of India (Listing Obligations and Disclosure Requirements) Regulations, 2015.

During the period under review, the Company has complied with the provisions of the SEBI Act, Rules, Regulations, Guidelines, Standards etc.

**We further report that,** having regard to the Compliance system prevailing in the Company and on examination of the relevant documents and records in pursuance thereof on test check basis, the Company has complied with following specific laws to the extent applicable

1.   The Cinematograph Act, 1952

2.   The West Bengal (Compulsory Censorship of Film Publicity Materials) Act, 1974.

**We further report that**

The Board of Directors of the Company is duly constituted with proper balance of Executive Directors, Non-Executive Directors and Independent Directors. The composition of the Board of Directors during the period under review was in compliance with the provisions of the Act.

Adequate notice is given to all directors to schedule the Board Meetings, agenda and detailed notes on agenda were sent at least seven days in advance and a system exists for seeking and obtaining further information and clarifications on the agenda items before the meeting and for meaningful participation at the meeting.

All decisions at Board Meetings and Committee Meetings are carried out either unanimously as recorded in the minutes of the meetings of the Board of Directors or Committee of the Board, as the case may be.

**We further report that** there are adequate systems and processes in the Company commensurate with the size and operations of the Company to monitor and ensure compliance with applicable laws, rules, regulations and guidelines.

**We further report that during the audit period** the Company has issued and allotted 5,36,263 Equity shares having face value of ₹ 10/- each aggregating to ₹ 53,62,630/- under (Employee Stock Option Scheme and Employee Stock Purchase Scheme), Guidelines, 1999 and the Securities and Exchange Board of India (Share Based Employee Benefits) Regulations, 2014.

For **Makarand M. Joshi & Co.**
Company Secretaries

**Makarand Joshi**
Partner
FCS No. 5533
CP No. 9662

Place: Mumbai
Date: 23 May 2019

*This Report is to be read with our letter of even date which is annexed as **Annexure A** and forms an integral part of this Report.*


**Annexure A**

To,
The Members,
**Eros International Media Limited**
901/902, Supreme Chambers,
Off Veera Desai Road, Andheri West,
Mumbai - 400053
Maharashtra (India).

Our report of even date is to be read along with this Letter.

1.    Maintenance of secretarial record is the responsibility of the management of the Company. Our responsibility is to express an opinion on these secretarial records based on our audit.

2.    We have followed the audit practices and processes as were appropriate to obtain reasonable assurance about the correctness of the contents of the secretarial records. The verification was done on test basis to ensure that correct facts are reflected in secretarial records. We believe that the processes and practices, we followed provide a reasonable basis for our opinion.

3.    We have not verified the correctness and appropriateness of financial records and Books of Accounts of the Company.

4.    Where ever required, we have obtained the Management Representation about the compliance of laws, rules and regulations and happening of events etc.

5.    The compliance of the provisions of Corporate and other applicable laws, rules, regulations, standards is the responsibility of management. Our examination was limited to the verification of procedures on test basis.

6.    The Secretarial Audit Report is neither an assurance as to the future viability of the Company nor of the efficacy or effectiveness with which the management has conducted the affairs of the Company.

For **Makarand M. Joshi & Co.**
Company Secretaries

**Makarand Joshi**
Partner
FCS No. 5533
CP No. 9662

Place: Mumbai
Date: 23 May 2019

DIRECTORS' REPORT

# Annexure E

**Particulars of Employees as per Rule 5 of Companies (Appointment and Remuneration) Rules, 2014 for the financial year ended 31 March 2019**

| Sr. No. | Name of Employee | Designation | Remuneration (in ₹) | Qualification | Experience | Date of commencement of employment with the Company | Age of Employee | Last employment held by such employee before joining the Company | No. of Equity Shares | % of Equity Shares | Relation of employee with Directors of the Company |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Mr. Sunil Arjan Lulla | Executive Vice Chairman & Managing Director | 48,008,808 | Bachelor of Commerce | 26 yrs + | 19-Aug-94 | 54 Years | - | 1,400 | 0.00% | Brother of Mr. Kishore Arjan Lulla |
| 2 | Mr. Kishore Arjan Lulla | Executive Director | 14,070,372 | Bachelor of Arts | 36 yrs + | 1-Nov-11 | 56 Years | - | 0 | 0.00% | Brother of Mr. Sunil Arjan Lulla |
| 3 | Mr. Kumar Ahuja | President - Business Development | 20,558,466 | SYJC Commerce | 19 yrs + | 22-Apr-99 | 39 Years | - | 85,937 | 0.09% | - |
| 4 | Mr. Ali Hussein | Chief Operating Officer | 18,800,004 | B.Sc (Eletrical Engg.) | 15 yrs + | 11-Jan-18 | 39 Years | Google, Viacom | 0 | 0.00% | - |
| 5 | Mr. Nandu Ahuja | Senior Vice President - India Theatrical | 10,897,190 | Bachelor of Commerce | 35 yrs + | 27-Jan-09 | 55 Years | Balaji Motion Pictures Limited | 31,083 | 0.03% | - |
| 6 | Mr. Aamod Gupte | Head - Legal | 9,140,556 | PGLM (Media Laws) | 27 yrs | 15-Apr-15 | 51 Years | Media Law Office | 0 | 0.00% | - |
| 7 | Ms. Krishika Lulla | Creative Producer | 8,065,200 | Bachelor of Arts | 7 yrs | 1-Jan-15 | 47 Years | - | 1,400 | 0.00% | Wife of Mr. Sunil Arjan Lulla |
| 8 | Mr. Farokh Gandhi | Chief Financial Officer | 7,918,560 | Chartered Accountant | 26 yrs | 9-Mar-18 | 50 Years | - | 43 | 0.00% | - |
| 9 | Mr. Ram Mirchandani [4] | President - Motion Pictures | 5,349,946 | B.Sc Chemistry | 30 yrs+ | 08-Oct-18 | 52 Years | Sony Pictures Entertainment | 0 | 0.00% | - |
| 10 | Mr. Manav Sethi [4] | Chief Marketing Officer | 2,001,290 | MBA in Marketing, LLB | 18 yrs + | 28-Jan-19 | 41 Years | ALT Digital Media Entertainment Limited | 0 | 0.00% | - |

Notes:

[1] Gross remuneration comprises of Salary Allowances, monetary value of perquisites valued as per the rules under the Income Tax Act, 1961, Commission, Statutory Contribution to Provident Fund & Family Pension Fund and Superannuation Fund, but excludes contributions to Gratuity Fund

[2] All the above employees are on pay roll of the Company and their service can be terminated by notice on either side

[3] None of the employees mentioned above hold more than 2% of the shares of your Company, alongwith their spouse and dependent children

[4] Employed for part of a year and in receipt of Remuneration aggregating to ₹ 8,50,000/- or more per month

# Annexure F

**Form No. AOC-2**

Form for disclosure of particulars of contracts/arrangements entered into by the Company with related parties referred to in sub-section (1) of Section 188 of the Companies Act, 2013 including certain arms length transactions under third proviso thereto

1. **Details of contracts or arrangements or transactions not at arm's length basis :**

| | | |
|---|---|---|
| (a) | Name(s) of the related party and nature of relationship | Nil |
| (b) | Nature of contracts/arrangements/transactions | Nil |
| (c) | Duration of the contracts/arrangements/transactions | Nil |
| (d) | Salient terms of the contracts or arrangements or transactions including the value, if any | Nil |
| (e) | Justification for entering into such contracts or arrangements or transactions | Nil |
| (f) | Date(s) of approval by the Board | Nil |
| (g) | Amount paid as advances, if any | Nil |
| (h) | Date on which the special resolution was passed in general meeting as required under first proviso to Section 188 | Nil |

2. **Details of material contracts or arrangement or transactions at arm's length basis exceeding 10% of Annual Consolidated turnover.**

| | | **Eros World Wide FZ LLC** | **Eros Digital FZ LLC** |
|---|---|---|---|
| (a) | Name(s) of the related party | | |
| (b) | Nature of relationship | Holding Company | Fellow Subsidiary |
| (c) | Nature of contracts/arrangements/transactions | Sale of film right, DVD/VCD, Reimbursement of expense | Revenue Attributable and Reimbursement of expense |
| (d) | Duration of the contracts /arrangements/transactions | Not Applicable | Not Applicable |
| (e) | Salient terms of the contracts or arrangements or transactions including the value, if any: | Not Applicable | Not Applicable |
| (f) | Date(s) of approval by the Board, if any: | 23 May 18 | 23 May 18 |
| (g) | Amount ₹ lakhs | 18,236 | 19,138 |

# Annexure G

**Form No. MGT-9**
**EXTRACT OF ANNUAL RETURN**
**as on the financial year ended on 31 March 2019**
[Pursuant to Section 92(3) of the Companies Act, 2013 and Rule 12(1) of the Companies
(Management and Administration) Rules, 2014]

## I. REGISTRATION AND OTHER DETAILS:

| | | |
|---|---|---|
| i. | CIN No. | L99999MH1994PLC080502 |
| ii. | Registration Date | 19 August 1994 |
| iii. | Name of the Company | Eros International Media Limited |
| iv. | Category/Sub-Category of the Company | Public Company Limited by Shares |
| v. | Address of the Registered office and contact Details | 201, Kailash Plaza, Opp. Laxmi Industrial Estate, Off. Andheri Link Road, Andheri West, Mumbai - 400053, Maharashtra (India). <br> Tel No: +91 22 6602 1500 \| Fax: +91 22 6602 1540 <br> Email : compliance.officer@erosintl.com |
| vi. | Whether listed company Yes/ No | Yes |
| vii. | Name, Address and Contact details of Registrar and Transfer Agent, if any | Link Intime India Private Limited <br> CIN: U67190MH1999PTC118368 <br> C 101, 247 Park, LBS Marg, Vikhroli West, Mumbai 400 083, Maharashtra (India). <br> Tel: +91 22 4918 6270 \| Fax: +91 22 4918 6060; <br> E-mail: rnt.helpdesk@linkintime.co.in & mumbai@linkintime.co.in <br> Website: www.linkintime.co.in |

## II. PRINCIPAL BUSINESS ACTIVITIES OF THE COMPANY:

All the business activities contributing 10 % or more of the total turnover of the Company are as under:-

| Sr. No. | Name and Description of main products/services | NIC Code of the Product/ service | % to total turnover of the company |
|---|---|---|---|
| 1 | Media and Entertainment Industry | 59131 | 100 |

* As per National Industrial Classification, 2008 issued by Central Statistical Organisation, Ministry of Statistics and Programme Implementation.

## III. PARTICULARS OF HOLDING, SUBSIDIARY AND ASSOCIATE COMPANIES:

| Sr. No. | NAME AND ADDRESS OF THE COMPANY | CIN/GLN/LLPIN | Holding/ Subsidiary/ Associate | % of shares held* | Applicable Section |
|---|---|---|---|---|---|
| 1 | Eros International Plc, Isle of Man Address: First Names House, Victoria Road, Douglas, Isle of Man IM2 4DF British Isles | 007466V | Ultimate Holding | 100.00 | 2(46) |
| 2 | Eros Worldwide FZ LLC Address: 3902 Tower A, Business Central Towers, Dubai Internet City, Sheikh Zayed Road, PO 502501, Dubai, United Arab Emirates | 30295 | Holding | 39.66 | 2(46) |
| 3 | Eros International Films Private Limited Address: 201, Kailash Plaza, 2nd Floor, Plot No. A-12, Off New Link Road, Andheri West, Mumbai- 400 053, Maharashtra (India) | U92113MH1994PTC080423 | Subsidiary | 100.00 | 2(87) |
| 4 | Copsale Limited (Isle of Man) Address: Offices of Ansbacher (BVI) Limited, P.O Box 659, Road Town, Tortola, British Virgin Islands | 269307 | Subsidiary | 100.00 | 2(87) |
| 5 | Big Screen Entertainment Private Limited Address: B-301-302, Brook Hill Tower, 3rd Cross Lane, Lokhandwala Complex, Andheri West, Mumbai - 400 053, Maharashtra (India) | U92110MH2005PTC156504 | Subsidiary | 64.00 | 2(87) |

| Sr. No. | NAME AND ADDRESS OF THE COMPANY | CIN/GLN/LLPIN | Holding/ Subsidiary/ Associate | % of shares held* | Applicable Section |
|---|---|---|---|---|---|
| 6 | EyeQube Studios Private Limited Address: 201, Kailash Plaza, 2nd Floor, Plot No. 12, Off New Link Road, Andheri West, Mumbai- 400 053, Maharashtra (India) | U92120MH2007PTC175027 | Subsidiary | 100.00 | 2(87) |
| 7 | EM Publishing Private Limited Address: 201, Kailash Plaza, 2nd Floor, Plot No. 12, Off New Link Road, Andheri West, Mumbai- 400 053, Maharashtra (India) | U92140MH2008PTC178628 | Subsidiary | 100.00 | 2(87) |
| 8 | Eros Animation Private Limited Address: 201, Kailash Plaza, 2nd Floor, Plot No. 12, Off New Link Road, Andheri West, Mumbai- 400 053, Maharashtra (India) | U92100MH2008PTC186402 | Subsidiary | 100.00 | 2(87) |
| 9 | Digicine Pte. Limited Address: 9 Raffles Place, #27-00, Repubic Plaza, Singapore - 048619 | 201207959W | Subsidiary | 100.00 | 2(87) |
| 10 | Colour Yellow Productions Private Limited Address: G-001, Plot No B-53, Indus House, V P Road, Off. New Link Road, Near Monginis Cake Factory, Andheri (West) Mumbai – 400053, Maharashtra (India) | U92412MH2013PTC248167 | Subsidiary | 50.00 | 2(87) |
| 11 | Universal Power Systems Private Limited Address: Gee Gee Plaza, Flat No. 20, 3rd Floor, No.1, Wheatcrofts Road, Nungambakkam-600034, Tamil Nadu (India) | U33111TN1984PTC010826 | Subsidiary | 100.00 | 2(87) |
| 12 | Eros International Distribution LLP Address: 201, Kailash Plaza, Plot No. A-12, Opp Laxmi Industrial Estate, Andheri West, Mumbai – 400 053, Maharashtra (India) | AAF-3133 | Subsidiary | 99.80 | 2(87) |
| 13 | Reliance Eros Productions LLP Address: 9th Floor, Maker Chamber IV, 222 Nariman Point, Mumbai- 400021, Maharashtra (India) | AAM-7521 | Subsidiary | 50.00 | 2(87) |

*Representing aggregate % of shares held by the Company and / or its subsidiaries.

**IV.   SHARE HOLDING PATTERN (Equity Share Capital Breakup as percentage of Total Equity)**

**(i)   Category-wise Share Holding as on 31 March 2019**

| Sr. No. | Category of Shareholders | No. of Shares held at the beginning of the year i.e. 1 April 2018 | | | | No. of Shares held at the end of the year i.e. 31 March 2019 | | | | % Change during the year |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Demat | Physical | Total | % of Total Shares | Demat | Physical | Total | % of Total Shares | |
| (A) | **PROMOTER AND PROMOTER GROUP** | | | | | | | | | |
| (1) | **INDIAN** | | | | | | | | | |
| (a) | Individual /HUF | 7,000 | 0 | 7,000 | 0.01 | 7,000 | 0 | 7,000 | 0.01 | 0.00 |
| (b) | Central Government/ State Government(s) | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (c) | Bodies Corporate | 21,700,000 | 0 | 21,700,000 | 22.85 | 21,700,000 | 0 | 21,700,000 | 22.72 | (0.13) |
| (d) | Financial Institutions / Banks | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (e) | Others | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | **Sub-Total A (1)** | **21,707,000** | **0** | **21,707,000** | **22.86** | **21,707,000** | **0** | **21,707,000** | **22.73** | **(0.13)** |

**DIRECTORS' REPORT**

| Sr. No. | Category of Shareholders | No. of Shares held at the beginning of the year i.e. 1 April 2018 | | | | No. of Shares held at the end of the year i.e. 31 March 2019 | | | | % Change during the year |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Demat | Physical | Total | % of Total Shares | Demat | Physical | Total | % of Total Shares | |
| (2) | **FOREIGN** | | | | | | | | | |
| (a) | Individuals (NRIs/Foreign Individuals) | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (b) | Bodies Corporate | 35,409,440 | 0 | 35,409,440 | 37.28 | 37,877,302 | 0 | 37,877,302 | 39.66 | 2.38 |
| (c) | Institutions | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (d) | Qualified Foreign Investor | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (e) | Others | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | **Sub-Total A (2)** | **35,409,440** | **0** | **35,409,440** | **37.28** | **37,877,302** | **0** | **37,877,302** | **39.66** | **2.38** |
| | **Total A=A(1)+A(2)** | **57,116,440** | **0** | **57,116,440** | **60.14** | **59,584,302** | **0** | **59,584,302** | **62.39** | **2.25** |
| (B) | **PUBLIC SHAREHOLDING** | | | | | | | | | |
| (1) | **INSTITUTIONS** | | | | | | | | | |
| (a) | Mutual Funds /UTI | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (b) | Financial Institutions / Banks | 455,464 | 0 | 455,464 | 0.48 | 1,000 | 0 | 1,000 | 0.00 | (0.48) |
| (c) | Central Government / State Government(s) | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (d) | Venture Capital Funds | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (e) | Insurance Companies | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (f) | Foreign Portfolio Investors | 4,732,345 | 0 | 4,732,345 | 4.98 | 5,859,792 | 0 | 5,859,792 | 6.14 | 1.16 |
| (g) | Foreign Venture Capital Investors | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (h) | Qualified Foreign Investor | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| (i) | Others (NBFC) | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | **Sub-Total B (1)** | **5,187,809** | **0** | **5,187,809** | **5.46** | **5,860,792** | **0** | **5,860,792** | **6.14** | **0.68** |
| (2) | **NON-INSTITUTIONS** | | | | | | | | | |
| (a) | Bodies Corporate | 10,965,437 | 0 | 10,965,437 | 11.55 | 6,545,923 | 0 | 6,545,923 | 6.85 | (4.70) |
| (b) | Individuals | | | | | | | | | |
| (i) | Individuals holding nominal share capital upto ₹ 1 lakh | 93,79,551 | 103 | 9,379,654 | 9.89 | 11,766,925 | 123 | 11,767,048 | 12.32 | 2.43 |
| (ii) | Individuals holding nominal share capital in excess of ₹ 1 lakh | 7,582,384 | 0 | 7,582,384 | 7.98 | 7,774,017 | 0 | 7,774,017 | 8.14 | 0.16 |
| (c) | NBFCs registered with RBI | 0 | 0 | 0 | 0.00 | 148,185 | 0 | 148,185 | 0.16 | 0.16 |
| (d) | Others | | | | | | | | | |
| | Clearing Members | 2,245,595 | 0 | 2,245,595 | 2.36 | 2,019,350 | 0 | 2,019,350 | 2.11 | (0.25) |
| | Foreign Nationals | 26 | 0 | 26 | 0.00 | 119 | 0 | 119 | 0.00 | 0.00 |
| | Hindu Undivided Family | 1,735,489 | 0 | 1,735,489 | 1.83 | 1,067,463 | 0 | 1,067,463 | 1.12 | (0.71) |
| | Non Resident Indians | 288,959 | 0 | 288959 | 0.3 | 560,107 | 0 | 560,107 | 0.59 | 0.29 |
| | NRI Non-Repatriation | 469,749 | 0 | 469,749 | 0.49 | 180,499 | 0 | 180,499 | 0.19 | (0.30) |
| | Trusts | 335 | 0 | 335 | 0.00 | 335 | 0 | 335 | 0.00 | - |
| | **Sub-Total B(2)** | **32,667,525** | **103** | **32,667,628** | **34.4** | **30,062,923** | **123** | **30,063,046** | **31.48** | **(2.92)** |
| | **Total B=B(1) + B(2)** | **37,855,334** | **103** | **37,855,437** | **39.86** | **35,923,715** | **123** | **35,923,838** | **37.61** | **(2.25)** |
| | **Total (A+B)** | **94,971,774** | **103** | **94,971,877** | **100.00** | **95,508,017** | **123** | **95,508,140** | **100.00** | **-** |
| (c) | Shares held by custodians for GDRs and ADRs | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | **GRAND TOTAL (A+B+C)** | **94,971,774** | **103** | **94,971,877** | **100.00** | **95,508,017** | **123** | **95,508,140** | **100.00** | **0.00** |

**(ii)    Shareholding of Promoters:**

| Sr. No. | Shareholder's Name | Shareholding at the beginning of the year | | | Shareholding at the end of the year | | | % change in share holding during the year |
|---|---|---|---|---|---|---|---|---|
| | | No. of Shares | % of total Shares of the company | % of Shares Pledged/ encumbered to total shares | No. of Shares | % of total Shares of the Company | % of Shares Pledged/ encumbered to total shares | |
| 1 | Arjan Gobindram Lulla * | 1,400 | 0.00 | 0.00 | 1,400 | 0.00 | 0.00 | 0.00 |
| 2 | Krishika Sunil Lulla | 1,400 | 0.00 | 0.00 | 1,400 | 0.00 | 0.00 | 0.00 |
| 3 | Meena Arjan Lulla | 2,800 | 0.00 | 0.00 | 2,800 | 0.00 | 0.00 | 0.00 |
| 4 | Sunil Arjan Lulla | 1,400 | 0.00 | 0.00 | 1,400 | 0.00 | 0.00 | 0.00 |
| 5 | Eros Worldwide FZ LLC | 35,409,440 | 37.28 | 21.26 | 37,877,302 | 39.66 | 29.78 | 2.38 |
| 6 | Eros Digital Private Limited | 21,700,000 | 22.85 | 0.00 | 21,700,000 | 22.72 | 0.00 | (0.13) |
| | Total | 57,116,440 | 60.13 | 21.26 | 59,584,302 | 62.38 | 29.78 | 2.25 |

Note:  Eros Worldwide FZ LLC pledged 28,446,169 equity shares as on 31 March 2019. Out of total shares pledged, 18,813,303 equity shares are transferred by way of pledge to pool account of the Lender, who hold the shares on behalf of Eros Worldwide FZ LLC.

*Mr. Arjan Gobindram Lulla ceased to be a promoter due to his sudden demise on 17 December 2018. Currently his shares are been held by his legal heirs.

**(iii)    Change in Promoters' Shareholding:**

| Sr. No. | Name of Promoter | Shareholding at the beginning of the year | | Cumulative Shareholding during the year | | Reason |
|---|---|---|---|---|---|---|
| | | No. of Shares | % of total Shares of the Company | No. of Shares | % of total Shares of the Company | |
| 1 | **Arjan Gobindram Lulla*** | | | | | |
| | At the beginning of the year | 1,400 | 0.00 | 1,400 | 0.00 | |
| | Date wise Increase / Decrease in Promoters Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc) | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 1,400 | 0.00 | |
| 2 | **Krishika Sunil Lulla** | | | | | |
| | At the beginning of the year | 1,400 | 0.00 | 1,400 | 0.00 | |
| | Date wise Increase / Decrease in Promoters Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 1,400 | 0.00 | |
| 3 | **Meena Arjan Lulla** | | | | | |
| | At the beginning of the year | 2,800 | 0.00 | 2,800 | 0.00 | |
| | Date wise Increase / Decrease in Promoters Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc) | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 2,800 | 0.00 | |
| 4 | **Sunil Arjan Lulla** | | | | | |
| | At the beginning of the year | 1,400 | 0.00 | 1,400 | 0.00 | |
| | Date wise Increase / Decrease in Promoters Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc) | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 1,400 | 0.00 | |

**DIRECTORS' REPORT**

| Sr. No. | Name of Promoter | Shareholding at the beginning of the year | | Cumulative Shareholding during the year | | Reason |
|---|---|---|---|---|---|---|
| | | No. of Shares | % of total Shares of the Company | No. of Shares | % of total Shares of the Company | |
| 5 | **Eros Worldwide FZ LLC** | | | | | |
| | At the beginning of the year | 35,409,440 | 37.28 | 35,409,440 | 37.28 | |
| | Date wise Increase / Decrease in Promoters Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | | | | | |
| | 30.10.2018 | 123,994 | 0.13 | 35,533,434 | 37.41 | Purchase |
| | 31.10.2018 | 153,318 | 0.16 | 35,686,752 | 37.37 | Purchase |
| | 01.11.2018 | 100,000 | 0.10 | 35,786,752 | 37.47 | Purchase |
| | 02.11.2018 | 150,000 | 0.16 | 35,936,752 | 37.63 | Purchase |
| | 05.11.2018 | 40,000 | 0.04 | 35,976,752 | 37.67 | Purchase |
| | 06.11.2018 | 82,723 | 0.09 | 36,059,475 | 37.76 | Purchase |
| | 07.11.2018 | 65,000 | 0.07 | 36,124,475 | 37.82 | Purchase |
| | 09.11.2018 | 73,105 | 0.08 | 36,197,580 | 37.90 | Purchase |
| | 12.11.2018 | 25,000 | 0.03 | 36,222,580 | 37.93 | Purchase |
| | 13.11.2018 | 25,000 | 0.03 | 36,247,580 | 37.95 | Purchase |
| | 16.11.2018 | 75,000 | 0.08 | 36,322,580 | 38.03 | Purchase |
| | 19.11.2018 | 25,000 | 0.03 | 36,347,580 | 38.06 | Purchase |
| | 20.11.2018 | 50,000 | 0.05 | 36,397,580 | 38.11 | Purchase |
| | 21.11.2018 | 75,000 | 0.08 | 36,472,580 | 38.19 | Purchase |
| | 29.11.2018 | 35,000 | 0.04 | 36,507,580 | 38.22 | Purchase |
| | 30.11.2019 | 15,000 | 0.02 | 36,522,580 | 38.24 | Purchase |
| | 03.12.2018 | 15,000 | 0.02 | 36,537,580 | 38.26 | Purchase |
| | 07.12.2018 | 100,000 | 0.10 | 36,637,580 | 38.36 | Purchase |
| | 10.12.2018 | 50,000 | 0.05 | 36,687,580 | 38.41 | Purchase |
| | 11.12.2018 | 25,000 | 0.03 | 36,712,580 | 38.44 | Purchase |
| | 12.12.2018 | 25,000 | 0.03 | 36,737,580 | 38.47 | Purchase |
| | 14.12.2018 | 12,000 | 0.01 | 36,749,580 | 38.48 | Purchase |
| | 26.12.2018 | 25,000 | 0.03 | 36,774,580 | 38.50 | Purchase |
| | 17.01.2019 | 50,000 | 0.05 | 36,824,580 | 38.56 | Purchase |
| | 21.01.2019 | 50,000 | 0.05 | 36,874,580 | 38.61 | Purchase |
| | 22.01.2019 | 75,000 | 0.08 | 36,949,580 | 38.69 | Purchase |
| | 23.01.2019 | 15,000 | 0.02 | 36,964,580 | 38.70 | Purchase |
| | 25.01.2019 | 75,000 | 0.08 | 37,039,580 | 38.78 | Purchase |
| | 28.01.2019 | 60,000 | 0.06 | 37,099,580 | 38.84 | Purchase |
| | 29.01.2019 | 60,000 | 0.06 | 37,159,580 | 38.91 | Purchase |
| | 30.01.2019 | 25000 | 0.03 | 37,184,580 | 38.93 | Purchase |
| | 11.02.2019 | 100,000 | 0.10 | 37,284,580 | 39.04 | Purchase |
| | 12.02.2019 | 180,000 | 0.19 | 37,464,580 | 39.23 | Purchase |
| | 14.02.2019 | 50,000 | 0.05 | 37,514,580 | 39.28 | Purchase |
| | 15.02.2019 | 150,000 | 0.16 | 37,664,580 | 39.44 | Purchase |
| | 18.02.2019 | 12,722 | 0.01 | 37,677302 | 39.45 | Purchase |
| | 06.03.2019 | 100,000 | 0.10 | 37,777,302 | 39.55 | Purchase |
| | 22.03.2019 | 100,000 | 0.10 | 37,877,302 | 39.66 | Purchase |
| | At the End of the year | 0 | 0.00 | 37,877,302 | 39.66 | |

| Sr. No. | Name of Promoter | Shareholding at the beginning of the year | | Cumulative Shareholding during the year | | Reason |
|---|---|---|---|---|---|---|
| | | No. of Shares | % of total Shares of the Company | No. of Shares | % of total Shares of the Company | |
| 6 | **Eros Digital Private Limited** | | | | | |
| | At the beginning of the year | 21,700,000 | 22.72 | 21,700,000 | 22.72 | |
| | Date wise Increase / Decrease in Promoters Share holding during the year specifying the reasons for increase/decrease (e.g. allotment/transfer/bonus/sweat equity etc): | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 21,700,000 | 22.72 | |

*Mr. Arjan Gobindram Lulla ceased to be a promoter due to his sudden demise on 17 December 2018. Currently his shares are been held by his legal heirs.

**(iv)    Shareholding Pattern of top ten Shareholders (other than Directors, Promoters and Holders of GDRs and ADRs):**

| Sr. No. | Shareholder's Name | Shareholding at the beginning of the year | | Cumulative Shareholding during the year | | Reason |
|---|---|---|---|---|---|---|
| | | No. of shares | % of total shares of the Company | No. of shares | % of total shares of the Company | |
| 1 | **Government Pension Fund Global** | | | | | |
| | At the beginning of the year | 1,113,149 | 1.17 | 1,113,149 | 1.17 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc) | | | | | |
| | 26.10.2018 | 16,851 | 0.02 | 1,130,000 | 1.18 | Purchase |
| | 25.01.2019 | 55,668 | 0.06 | 1,185,668 | 1.24 | Purchase |
| | 01.02.2019 | 22,679 | 0.02 | 1,208,347 | 1.27 | Purchase |
| | 15.02.2019 | 1,61,653 | 0.17 | 1,370,000 | 1.43 | Purchase |
| | 22.02.2019 | 63,619 | 0.07 | 1,433,619 | 1.50 | Purchase |
| | 01.03.2019 | 17,381 | 0.02 | 1,451,000 | 1.52 | Purchase |
| | 15.03.2019 | 42,438 | 0.04 | 1,493,438 | 1.56 | Purchase |
| | 29.03.2019 | 26,562 | 0.03 | 1,520,000 | 1.59 | Purchase |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 1,520,000 | 1.59 | |
| 2 | **Puran Associates Private Limited** | | | | | |
| | At the beginning of the year | 1,080,000 | 1.13 | 1,080,000 | 1.13 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | - | - | - | - | No Change |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 1,080,000 | 1.13 | |

**DIRECTORS' REPORT**

| Sr. No. | Shareholder's Name | Shareholding at the beginning of the year | | Cumulative Shareholding during the year | | Reason |
|---|---|---|---|---|---|---|
| | | No. of shares | % of total shares of the Company | No. of shares | % of total shares of the Company | |
| 3 | **Polus Global Fund** | | | | | |
| | At the beginning of the year | 0 | 0.00 | 0 | 0.00 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | | | | | |
| | 20.04.2018 | 10,000 | 0.01 | 10,000 | 0.01 | Purchase |
| | 27.04.2018 | 15,000 | 0.02 | 25,000 | 0.03 | Purchase |
| | 18.05.2018 | (1,056) | (0.00) | 23,944 | 0.03 | Sale |
| | 25.05.2018 | (13,944) | (0.01) | 10,000 | 0.01 | Sale |
| | 22.06.2018 | (462) | (0.00) | 9,538 | 0.01 | Sale |
| | 30.06.2018 | (9,538) | (0.01) | 0 | 0.00 | Sale |
| | 10.08.2018 | 25,000 | 0.03 | 25,000 | 0.03 | Purchase |
| | 21.09.2018 | (5,000) | (0.01) | 20,000 | 0.02 | Sale |
| | 29.09.2018 | 65,000 | 0.07 | 85,000 | 0.09 | Purchase |
| | 05.10.2018 | 163,292 | 0.17 | 248,292 | 0.26 | Purchase |
| | 12.10.2018 | 522,032 | 0.55 | 770,324 | 0.81 | Purchase |
| | 19.10.2018 | 158,848 | 0.17 | 929,172 | 0.97 | Purchase |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 929,172 | 0.97 | |
| 4 | **Shilpa Stock Broker Private Limited** | | | | | |
| | At the beginning of the year | 1,220,885 | 1.28 | 1,220,885 | 1.28 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | | | | | |
| | 06.04.2018 | (34,310) | (0.04) | 1,186,575 | 1.24 | Sale |
| | 13.04.2018 | (1,26,705) | (0.13) | 1,059,870 | 1.11 | Sale |
| | 20.04.2018 | 90,615 | 0.09 | 1,150,485 | 1.20 | Purchase |
| | 27.04.2018 | 6,715 | 0.01 | 1,157,200 | 1.21 | Purchase |
| | 04.05.2018 | 19,593 | 0.02 | 1,176,793 | 1.23 | Purchase |
| | 11.05.2018 | 4,054 | 0.00 | 1,180,847 | 1.24 | Purchase |
| | 18.05.2018 | 83,000 | 0.09 | 1,263,847 | 1.32 | Purchase |
| | 25.05.2018 | (2,425) | (0.00) | 1,261,422 | 1.32 | Sale |
| | 01.06.2018 | (142,209) | (0.15) | 1,119,213 | 1.17 | Sale |
| | 08.06.2018 | (66,931) | (0.07) | 1,052,282 | 1.10 | Sale |
| | 15.06.2018 | (3,270) | (0.00) | 1,049,012 | 1.10 | Sale |
| | 22.06.2018 | (2,720) | (0.00) | 1,046,292 | 1.10 | Sale |
| | 30.06.2018 | (56,180) | (0.06) | 990,112 | 1.04 | Sale |
| | 06.07.2018 | (51,503) | (0.05) | 938,609 | 0.98 | Sale |
| | 13.07.2018 | (31,036) | (0.03) | 907,573 | 0.95 | Sale |
| | 20.07.2018 | (78,448) | (0.08) | 829,125 | 0.87 | Sale |
| | 27.07.2018 | 52,830 | 0.06 | 881,955 | 0.92 | Purchase |
| | 03.08.2018 | 27,502 | 0.03 | 909,457 | 0.95 | Purchase |
| | 10.08.2018 | 8,014 | 0.01 | 917,471 | 0.96 | Purchase |
| | 17.08.2018 | (53,980) | (0.06) | 863,491 | 0.90 | Sale |
| | 24.08.2018 | (37,106) | (0.04) | 826,385 | 0.87 | Sale |

| Sr. No. | Shareholder's Name | Shareholding at the beginning of the year | | Cumulative Shareholding during the year | | Reason |
|---|---|---|---|---|---|---|
| | | No. of shares | % of total shares of the Company | No. of shares | % of total shares of the Company | |
| | 31.08.2018 | (6,410) | (0.01) | 819,975 | 0.86 | Sale |
| | 07.09.2018 | 35,476 | 0.04 | 855,451 | 0.90 | Purchase |
| | 14.09.2018 | 909 | 0.00 | 856,360 | 0.90 | Purchase |
| | 21.09.2018 | 169,746 | 0.18 | 1,026,106 | 1.07 | Purchase |
| | 29.09.2018 | 8,261 | 0.01 | 1,034,367 | 1.08 | Purchase |
| | 05.10.2018 | 73,356 | 0.08 | 1,107,723 | 1.16 | Purchase |
| | 12.10.2018 | (152,014) | (0.16) | 955,709 | 1.00 | Sale |
| | 19.10.2018 | (84,745) | (0.09) | 870,964 | 0.91 | Sale |
| | 26.10.2018 | 118,423 | 0.12 | 989,387 | 1.04 | Purchase |
| | 02.11.2018 | (57,151) | (0.06) | 932,236 | 0.98 | Sale |
| | 09.11.2018 | (386) | (0.00) | 931,850 | 0.98 | Sale |
| | 16.11.2018 | (2,685) | (0.00) | 929,165 | 0.97 | Sale |
| | 23.11.2018 | (9,797) | (0.01) | 919,368 | 0.96 | Sale |
| | 30.11.2018 | (42,840) | (0.04) | 876,528 | 0.92 | Sale |
| | 07.12.2018 | (120,469) | (0.13) | 756,059 | 0.79 | Sale |
| | 14.12.2018 | (21,799) | (0.02) | 734,260 | 0.77 | Sale |
| | 21.12.2018 | (35,713) | (0.04) | 698,547 | 0.73 | Sale |
| | 28.12.2018 | 41,884 | 0.04 | 740,431 | 0.78 | Purchase |
| | 31.12.2018 | 800 | 0.00 | 741,231 | 0.78 | Purchase |
| | 04.01.2019 | (29,335) | (0.03) | 711,896 | 0.75 | Sale |
| | 11.01.2019 | 7,909 | 0.01 | 719,805 | 0.75 | Purchase |
| | 18.01.2019 | 63,159 | 0.07 | 782,964 | 0.82 | Purchase |
| | 25.01.2019 | (882) | (0.00) | 782,082 | 0.82 | Sale |
| | 01.02.2019 | 82,350 | 0.09 | 864,432 | 0.91 | Purchase |
| | 08.02.2019 | 115,303 | 0.12 | 979,735 | 1.03 | Purchase |
| | 15.02.2019 | 300,168 | 0.31 | 1,279,903 | 1.34 | Purchase |
| | 22.02.2019 | (18,591) | (0.02) | 1,261,312 | 1.32 | Sale |
| | 01.03.2019 | (306,146) | (0.32) | 955,166 | 1.00 | Sale |
| | 15.03.2019 | (45,945) | (0.05) | 909,221 | 0.95 | Sale |
| | 22.03.2019 | 44,146 | 0.05 | 953,367 | 1.00 | Purchase |
| | 29.03.2019 | (170,878) | (0.18) | 782,489 | 0.82 | Sale |
| | 30.03.2019 | (1,734) | (0.00) | 780,755 | 0.82 | Sale |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 780,755 | 0.82 | |
| 5 | **VIC Enterprises Private Limited** | | | | | |
| | At the beginning of the year | 780,000 | 0.82 | 780,000 | 0.82 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc) | - | - | - | - | No Change |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 780,000 | 0.82 | |

**DIRECTORS' REPORT**

| Sr. No. | Shareholder's Name | Shareholding at the beginning of the year | | Cumulative Shareholding during the year | | Reason |
|---|---|---|---|---|---|---|
| | | No. of shares | % of total shares of the Company | No. of shares | % of total shares of the Company | |
| 6 | **Rajesh M Sanghavi (HUF)** | | | | | |
| | At the beginning of the year | 719,548 | 0.75 | 719,548 | 0.75 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc) | | | | | No Change |
| | 27.07.2018 | (468,388) | (0.49) | 251,160 | 0.26 | Sale |
| | 03.08.2018 | (9,673) | (0.01) | 241,487 | 0.25 | Sale |
| | 10.08.2018 | (107,620) | (0.11) | 133,867 | 0.14 | Sale |
| | 14.09.2018 | (44,880) | (0.05) | 88,987 | 0.09 | Sale |
| | 21.09.2018 | (6,668) | (0.01) | 82,319 | 0.09 | Sale |
| | 29.09.2018 | 50,120 | 0.05 | 132,439 | 0.14 | Purchase |
| | 05.10.2018 | (132,439) | (0.14) | 0 | 0.00 | Purchase |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 0 | 0.00 | |
| 7 | **Chetan Jayantilal Shah** | | | | | |
| | At the beginning of the year | 350,000 | 0.37 | 350,000 | 0.37 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | | | | | |
| | 09.11.2018 | 50,000 | 0.05 | 400,000 | 0.42 | Purchase |
| | 01.03.2019 | 100,000 | 0.10 | 500,000 | 0.52 | Purchase |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 500,000 | 0.52 | |
| 8 | **Danske Invest Sicav - SIF - Emerging and Frontier Markets SMID II** | | | | | |
| | At the beginning of the year | 361,997 | 0.38 | 361,997 | 0.38 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | | | | | |
| | 20.04.2018 | 20,000 | 0.02 | 381,997 | 0.40 | Purchase |
| | 02.11.2018 | 20,000 | 0.02 | 401,997 | 0.42 | Purchase |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 401,997 | 0.42 | |
| 9 | **Missouri Local Government Employees Retirement System** | | | | | |
| | At the beginning of the year | 0 | 0.00 | 0 | 0.00 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | | | | | |
| | 29.09.2018 | 55,409 | 0.06 | 55,409 | 0.06 | Purchase |
| | 05.10.2018 | 324,857 | 0.34 | 380,266 | 0.40 | Purchase |
| | 12.10.2018 | 73,803 | 0.08 | 454,069 | 0.48 | Purchase |
| | 15.02.2019 | (71,174) | (0.07) | 382,895 | 0.40 | Sale |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 382,895 | 0.40 | |

| Sr. No. | Shareholder's Name | Shareholding at the beginning of the year | | Cumulative Shareholding during the year | | Reason |
|---|---|---|---|---|---|---|
| | | No. of shares | % of total shares of the Company | No. of shares | % of total shares of the Company | |
| 10 | **Dimensional Emerging Markets Value Fund** | | | | | |
| | At the beginning of the year | 393,491 | 0.41 | 393,491 | 0.41 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | | | | | |
| | 11.05.2018 | (20,125) | (0.02) | 373,366 | 0.39 | Sale |
| | 18.05.2018 | (7,185) | (0.01) | 366,181 | 0.38 | Sale |
| | At the End of the year (or on the date of separation, if separated during the year) | 0 | 0.00 | 366,181 | 0.38 | |

(v)    **Shareholding of Directors and Key Managerial Personnel:**

| Sr. No. | For each of the Directors and KMP | Shareholding at the beginning of the year | | Cumulative Shareholding during the year | | Reason |
|---|---|---|---|---|---|---|
| | | No. of Shares | % of total Shares of the Company | No. of Shares | % of total Shares of the Company | |
| 1 | **Sunil Arjan Lulla** | | | | | |
| | At the beginning of the year | 1,400 | 0.00 | 1,400 | 0.00 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 1,400 | 0.00 | |
| 2 | **Jyoti Deshpande** | | | | | |
| | At the beginning of the year | 360,000 | 0.38 | 360,000 | 0.38 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 360,000 | 0.38 | |
| 3 | **Farokh P. Gandhi** | | | | | |
| | At the beginning of the year | 43 | 0.00 | 43 | 0.00 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | - | - | - | - | No Change |
| | At the End of the year | 0 | 0.00 | 43 | 0.00 | |
| 4 | **Abhishekh Kanoi** | | | | | |
| | At the beginning of the year | 6,528 | 0.00 | 6,528 | 0.00 | |
| | Date wise Increase / Decrease in Share holding during the year specifying the reasons for increase / decrease (e.g. allotment / transfer / bonus/ sweat equity etc): | | | | | |
| | 25.09.2018 | (6,528) | 0.00 | 0 | 0.00 | Sale |
| | 23.11.2018 | 4,676 | 0.00 | 4,676 | 0.00 | ESOP Allotment |
| | 01.03.2019 | (4,676) | 0.00 | 0 | 0.00 | Sale |
| | At the End of the year | 0 | 0.00 | 0 | 0.00 | |

Note: None of the Directors and Key Managerial Personnel hold any shares in the Company except mentioned above.

DIRECTORS' REPORT

## V. INDEBTEDNESS

Indebtedness of the Company including interest outstanding/accrued but not due for payment                    (₹ in lakhs)

| | Secured Loans excluding deposits | Unsecured Loans | Deposits | Total Indebtedness |
|---|---|---|---|---|
| **Indebtedness at the beginning of the financial year** | | | | |
| i) Principal Amount | 60,700 | 16,047 | - | 76,747 |
| ii) Interest due but not paid | - | - | - | |
| iii) Interest accrued but not due | 278 | 16 | - | 294 |
| **Total (i+ii+iii)** | **60,978** | **16,063** | **-** | **77,041** |
| **Change in Indebtedness during the financial year** | | | | |
| * Addition | 36,812 | 6,331 | - | 43,143 |
| * Reduction | (43,031) | (10,290) | - | (53,321) |
| **Net Change** | **(6,219)** | **(3,959)** | **-** | **(10,178)** |
| **Indebtedness at the end of the financial year** | | | | |
| i) Principal Amount | 54,463 | 12,077 | - | 66,540 |
| ii) Interest due but not paid | 161 | - | - | 161 |
| iii) Interest accrued but not due | 135 | 27 | - | 162 |
| **Total (i+ii+iii)** | **54,759** | **12,104** | **-** | **66,863** |

## VI. REMUNERATION OF DIRECTORS AND KEY MANAGERIAL PERSONNEL

**A. Remuneration to Managing Director, Whole-Time Directors and/or Manager:**

(Amount in ₹)

| Sr. No. | Particulars of Remuneration | Sunil Arjan Lulla (Managing Director) | Kishore Arjan Lulla (Executive Director) | Total |
|---|---|---|---|---|
| 1 | Gross salary | | | |
| | (a) Salary as per provisions contained in section 17(1) of the Income-tax Act, 1961 | 46,769,208 | 14,030,772 | 60,799,980 |
| | (b) Value of perquisites u/s 17(2) Income-tax Act, 1961 | 1,239,600 | 39,600 | 1,279,200 |
| | (c) Profits in lieu of salary under section 17(3) Income-tax Act, 1961 | Nil | Nil | Nil |
| 2 | Stock Option | Nil | Nil | Nil |
| 3 | Sweat Equity | Nil | Nil | Nil |
| 4 | Commission | Nil | Nil | Nil |
| | - as % of profit | Nil | Nil | Nil |
| | - others, specify | Nil | Nil | Nil |
| 5 | Others | Nil | Nil | Nil |
| | **Total (A)** | **48,008,808** | **14,070,372** | **62,079,180** |
| | **Ceiling as per the Act** | | | **146,278,031** |

**B.    Remuneration to other directors:**

| Sr. No. | Particulars of Remuneration | Name of Directors | Amount in (₹) |
|---|---|---|---|
| 1. | **Independent Directors** | | |
| | Fees for attending Board/Committee Meetings | Dhirendra Swarup | 680,000 |
| | | Rakesh Sood | 720,000 |
| | | S. Lakshminarayanan | 520,000 |
| | | Sunil Srivastav | 320,000 |
| | Commission payable for FY 2018-19 | Dhirendra Swarup | 4,975,000 |
| | | Rakesh Sood | 2,487,500 |
| | | S. Lakshminarayanan | 2,487,500 |
| | | Sunil Srivastav | 2,133,120 |
| | Others [Reimbursement of maintenance of Chairman's office and expenses incurred towards performance of duties as Chairman] | Dhirendra Swarup | 520,131 |
| | **Total (1)** | | **14,843,251** |
| 2. | **Other Non-Executive Non Independent Directors** | | |
| | Fees for attending Board/Committee Meetings | | 0 |
| | Commission | | 0 |
| | Others, please specify | | 0 |
| | **Total (2)** | | **0** |
| | **Total (B) = (1+2)** | | **14,843,251** |
| | **Total Managerial Remuneration (A+B)** | | **76,922,431** |
| | **Overall Ceiling as per the Act** | Sitting Fees paid is within the limits specified under the Companies Act, 2013 | |

**C.    Remuneration to Key Managerial Personnel other than Managing Director, Whole-time Directors and/or Manager:**

(Amount in ₹)

| Sr. No. | Particulars of Remuneration | Key Managerial Personnel | | Total |
|---|---|---|---|---|
| | | **Farokh P. Gandhi Chief Financial Officer** | **Abhishekh Kanoi VP-Company Secretary & Compliance Officer** | |
| 1 | Gross Salary | | | |
| (a) | Salary as per provisions contained in section 17(1) of the Income-tax Act, 1961 | 7,918,560 | 2,989,200 | 10,907,760 |
| (b) | Value of perquisites u/s 17(2) Income-tax Act, 1961 | Nil | 378,756 | 378,756 |
| (c) | Profits in lieu of salary under section 17(3) Income-tax Act, 1961 | Nil | Nil | Nil |
| 2 | Stock Option | Nil | Nil | Nil |
| 3 | Sweat Equity | Nil | Nil | Nil |
| 4 | Commission | | | |
| | - as % of profit | Nil | Nil | Nil |
| | - others, specify | Nil | Nil | Nil |
| 5 | Others | Nil | Nil | Nil |
| | **Total** | **7,918,560** | **3,367,956** | **11,286,516** |
| | Ceiling as per the Act | Not Applicable | | |

**VII.  PENALTIES / PUNISHMENT/ COMPOUNDING OF OFFENCES:**

| Type | Section of the Companies Act | Brief Description | Details of Penalty/ Punishment/ Compounding fees imposed | Authority [RD/NCLT/ COURT] | Appeal made, if any (give Details) |
|---|---|---|---|---|---|
| **A. COMPANY** | | | | | |
| Penalty | | | | | |
| Punishment | | | NIL | | |
| Compounding | | | | | |
| **B. DIRECTORS** | | | | | |
| Penalty | | | | | |
| Punishment | | | NIL | | |
| Compounding | | | | | |
| **C. OTHER OFFICERS IN DEFAULT** | | | | | |
| Penalty | | | | | |
| Punishment | | | NIL | | |
| Compounding | | | | | |

# Annexure H

## Corporate Social Responsibility

| | | |
|---|---|---|
| 1. | **Brief outline of the Company's CSR policy** | The Company's CSR vision is to make concerted efforts towards promotion of education amongst the underprivileged and women empowerment.<br><br>Besides this, the Company may also undertake other CSR activities listed in Schedule VII of the Companies Act, 2013. |
| 2. | **Overview of projects or programs undertaken/ proposed to be undertaken** | In accordance with the Company's CSR Policy and its vision, the Company is proposed to participate in CSR activities with "Arpan" the registered NGO which is engaged in Personal Safety Education programme for dealing with child sexual abuse. It also focuses on creating awareness and skill enhancement of adults like parents, teachers and institutional care takers who are primary stakeholders and care givers in child's life. |
| 3. | **Reference to the web-link to the CSR policy and projects or programs** | The details of CSR Policy are available on the website of the Company viz. www.erosplc.com. |
| 4. | **Composition of the CSR Committee** | **Members of the Committee:**<br>• Mr. Dhirendra Swarup [Non-Executive Independent Director] (Chairman)<br>• Mr. Rakesh Sood [Non-Executive Independent Director]<br>• Mrs. Jyoti Deshpande [Non-Executive Non-Independent Director] (upto 28 June 2019)<br>• Mr. Kishore Lulla [Executive Director]<br>• Mr. Sunil Lulla [Executive Director] |

| 5. | **Average Net Profit of the Company for last three Financial Years** | Net Profit before Tax (NPBT) |
|---|---|---|

| Particulars | ₹ in Crores |
|---|---|
| 2017-18 | 197.43 |
| 2016-17 | 236.94 |
| 2015-16 | 199.24 |
| Average NPBT | 211.20 |
| 2% of Average NPBT | 4.22 |

| | | |
|---|---|---|
| 6. | **Prescribed CSR Expenditure (two percent of the amount as in Item No. 5 above)** | ₹ 4.22 Crores |
| 7. | **Details of CSR spent during the financial year** | |
| | **a. Total amount spent in FY 2017-18** | ₹ 22,70,000 (Rupees Twenty-Two lakhs Seventy Thousand Only) |
| | **b. Amount unspent, if any** | Unspent CSR amount is ₹ 3,99,30,000 /- (Rupees Three Crores Ninety Nine lakhs Thirty Thousand Only) in FY 2018-19. |

**c.    Manner in which the amount spent during the financial year is detailed below:**

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|
| Sr. No. | CSR Project or activity identified | Sector in which the project is covered | Projects or programs<br><br>(1) Local area or other<br>(2) Specify the state and district where projects or programs was undertaken | Amount outlay (budget) project or programs wise | Amount spent on the projects or programs<br>Sub-heads;<br>(1) Direct expenditure on projects or programs<br>(2) Overheads | Cumulative expenditure upto the reporting period | Amount spent<br><br>Direct or through implementing agency |
| 1 | Personal Safety Education Programme in Schools | Education (Covered under clause no. (ii) of Schedule VII of the Companies Act, 2013) | Mumbai, Thane in Maharashtra | ₹ 15,00,000 | Direct expenditure on program. Minimal overheads (>10% of overall budget) | ₹ 15,00,000 | Implementing agency - ARPAN NGO Registered under Section 8 of the Indian Companies Act. |

**DIRECTORS' REPORT**

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|
| Sr. No. | CSR Project or activity identified | Sector in which the project is covered | Projects or programs<br><br>(1) Local area or other<br>(2) Specify the state and district where projects or programs was undertaken | Amount outlay (budget) project or programs wise | Amount spent on the projects or programs<br><br>Sub-heads;<br><br>(1) Direct expenditure on projects or programs<br>(2) Overheads | Cumulative expenditure upto the reporting period | Amount spent<br><br>Direct or through implementing agency |
| 2 | "Gadadhar Sishu Vikas Kendra" for the education expense of 20 poor children. | Education (Covered under clause no. (ii) of Schedule VII of the Companies Act, 2013) | Baranagar in Kolkata, West Bengal | ₹ 2,70,000 | Direct expenditure on program. Minimal overheads (>10% of overall budget) | ₹ 2,70,000 | Directly – Ramakrishna Math, NGO Registered under Section 8 of the Indian Companies Act. |
| 3 | Towards grating relief to families and individuals distressed by unprecedented flood havoc | Contribution to the prime minister's national relief fund (Covered under clause no. (viii) of Schedule VII of the Companies Act, 2013) | Kerala | ₹ 5,00,000 | Direct expenditure on program | ₹ 5,00,000 | Directly - Chief Minister's Distress Relief Fund Kerala. |

**Reason for not spending the amount of 2% of the average net profits of the last three financial years:** The Company was required to spend a sum of ₹ 4.22 Crores in the financial year 2018-19, being 2% of the average net profits of last 3 (three) years. However, the Company during the financial year 2018-19 has spent ₹ 22.70 lakhs towards its CSR Expenses by way of contribution to NGO "Arpan", Chief Minister's Distress Relief Fund, Kerala and charitable institution, Ramkrishna Math, Baranagar (West Bengal).

The Company is in the process of identifying appropriate institutions and will make up for the short spend in the current year.

8.    **Statement by CSR Committee is stated below:**

The Corporate Social Responsibility Committee hereby confirm that the implementation and monitoring of CSR Policy is in compliance with CSR objectives and Policy of the Company.

**Sunil Arjan Lulla**
**Executive Vice Chairman & Managing Director**
DIN: 00243191

**Rakesh Sood**
**Chairman of CSR Committee**
DIN: 07170411

Place: Mumbai
Date: 23 May 2019

# CORPORATE GOVERNANCE REPORT

**THE COMPANY'S PHILOSOPHY ON CORPORATE GOVERNANCE**

The Company considers fair and transparent corporate governance as one of its core management tenets. Corporate Governance may be defined as a set of systems, policies, processes and principles which ensures that a company is governed in the best interest of all the stakeholders. It is the system by which companies are directed, administered, controlled and managed. Good governance is about promoting corporate fairness, transparency and accountability.

We strongly believe in the practice of conducting our business activities in a fair, direct and completely transparent manner that will not only benefit the Company but more importantly will ensure the highest level of accountability and trust for all our stakeholders such as shareholders, our employees and our partners. The timely disclosures, transparent accounting policies and a strong and independent Board go a long way in maintaining good corporate governance, preserving shareholders' trust and maximizing long-term corporate value.

We, at Eros International, continuously strive at improving and adhering to the good governance practice. The Company has adopted best practices mandated in SEBI (Listing Obligations and Disclosure Requirements) Regulation, 2015, as amended (hereinafter referred to as the "**SEBI Listing Regulations**").

A report on compliance with the principles of Corporate Governance as prescribed by SEBI in Chapter IV read with Schedule V of the SEBI Listing Regulations is given below:

**BOARD OF DIRECTORS**

**a.    Composition and Category of Directors:**

The Board of Directors along with its Committees provide leadership and guidance to the Company's management as also direct, supervise and control the performance of the Company. The Company has a balanced Board with combination of Executive and Non-Executive Directors to ensure independent functioning. As at 31 March 2019, the Board of Directors of the Company consists of Seven (7) Directors, out of which Five (5) are Non-Executive Directors including a Non Independent Woman Director and Two (2) are Executive Directors, comprising of experts from various fields/professions. The Chairman of the Board, Mr. Dhirendra Swarup, is a Non-Executive and Independent Director and is not related to promoters of the Company or any person occupying the position one level below the Board. The present composition of the Board of Directors of the Company is in accordance with the SEBI Listing Regulations and the Companies Act, 2013 (the "Act") read with applicable Rules made thereunder.

| Name of the Director | Directors Identification No. (DIN) | Category | Designation |
| --- | --- | --- | --- |
| Mr. Dhirendra Swarup | 02878434 | Non-Executive & Independent Director | Chairman |
| Mr. Rakesh Sood | 07170411 | Non-Executive & Independent Director | Director |
| Mr. Sunil Arjan Lulla | 00243191 | Promoter & Executive Director | Executive Vice Chairman & Managing Director |
| Mr. Kishore Arjan Lulla | 02303295 | Promoter & Executive Director | Director |
| Mrs. Jyoti Deshpande[1] | 02303283 | Non-Executive & Non- Independent Director | Director |
| Mr. Subramaniam Lakshminarayanan | 07972480 | Non-Executive & Independent Director | Director |
| Mr. Sunil Srivastav | 00237561 | Non-Executive & Independent Director | Director |

There are no Institutional Nominee Directors on the Board. The Company has in place the Succession Policy for appointments at the Board and to Senior Management level.

**Independent Directors**

The Independent Directors of the Company are Non-Executive Directors as defined under Section 149(6) of the Act read with Regulation 16(1)(b) of the SEBI Listing Regulations. Independent Directors of the Company provide appropriate annual certifications to the Board confirming satisfaction of the conditions of their being independent as laid down in Section 149(6) of the Act and Regulation 16(1)(b) of the SEBI Listing Regulations. They possess rich and varied experience with skills in critical areas like governance, finance, entrepreneurship, general management etc

As required by Regulation 46 of the SEBI Listing Regulations, the terms and conditions of appointment of Independent Directors are listed down in the draft letter of appointment, available on the Company's website at www.erosplc.com. Each Independent director has been issued formal letter of appointment.

**Independent Directors Meeting**

During the year under review, a separate meeting of the Independent Directors was held on 27 September 2018, without the attendance of Non-Independent Directors and Management Personnel.

Various matters were discussed by the Independent Directors at the said meeting, including, *inter alia*, matters as prescribed in the Schedule IV of the Act and SEBI Listing Regulations, viz. review of the performance of Non-Independent Directors and the Board as

whole, review of the performance of the Chairman, assessed the quality, quantity and timeliness of flow of information between the Company's management and the Board, that is necessary for the Board to effectively and reasonably perform their duties. All the Independent Directors attended the said Meeting.

**Re-appointment of Directors**

Mr. Kishore Arjan Lulla, being eligible for re-appointment, has offered himself for re-appointment, as his office being longest is liable to retire by rotation at the 25th Annual General Meeting of the Company, as per Section 152(6) of the Act and applicable Rules thereto.

Mr. Dhirendra Swarup was appointed as a Non-Executive Independent Director for a first term of 5 (five) years which expires at the ensuing Annual General Meeting of the Company. Accordingly, the Board of Directors, on recommendation of Nomination and Remuneration Committee has recommended re-appointment of Mr. Dhirendra Swarup as a Non- Executive Independent Director of the Company for a second term of 5 (five) consecutive years from the conclusion of this Annual General Meeting to the conclusion of the Annual General Meeting of the Company to be held in the Calendar Year 2024.

As required under SEBI Listing Regulation, brief resume of Mr. Kishore Arjan Lulla, seeking re-appointment as Executive Director and Mr. Dhirendra Swarup, seeking re-appointment as Non-Executive Independent Director at the ensuing Annual General Meeting are stated at length in the Notice convening 25th Annual General Meeting.

---

[1] Mrs. Jyoti Deshpande ceased to be a Director of the Company with effect from 28 June 2019.

**CORPORATE GOVERNANCE REPORT**

b.  **Attendance of Directors and Number of other Directorship:**

Details of Membership and Attendance of each Director at the Meeting of Board of Directors held during the financial year under review and the last Annual General Meeting and the number of other Directorships and Chairmanship/Membership of Board Committees as on 31 March 2019 are as follows:

| Name of Director | Directors Identification No. (DIN) | Attendance | | Position on the Board of other companies as on 31 March 2019 | | |
|---|---|---|---|---|---|---|
| | | Board Meeting | Last Annual General Meeting | Directorship* | Committee Membership** | Committee Chairmanship** |
| Mr. Dhirendra Swarup | 02878434 | 4 | Yes | 3 | 3 | 2 |
| Mr. Rakesh Sood | 07170411 | 4 | Yes | 2 | 2 | 1 |
| Mr. Sunil Arjan Lulla | 00243191 | 4 | Yes | 7 | 1 | 0 |
| Mr. Kishore Arjan Lulla | 02303295 | 1 | No | 0 | 0 | 0 |
| Mrs. Jyoti Deshpande[2] | 02303283 | 3 | No | 3 | 0 | 0 |
| Mr. Subramaniam Lakshminarayanan | 07972480 | 4 | Yes | 0 | 0 | 0 |
| Mr. Sunil Srivastav[3] | 00237561 | 3 | No | 2 | 0 | 0 |

**Note:**

\* Only Public limited companies, (both listed and unlisted) are included in other directorships. Directorships in all other companies including private limited companies (which are not the subsidiary of Public Company), foreign companies and companies under Section 8 of the Act are excluded.

\** Chairmanship/Membership of the Audit Committee and the Stakeholders' Relationship Committee are considered for the purpose of committee positions in all public companies, whether listed or not as per SEBI Listing Regulations and it also includes the committees in which a Director holds position as a Chairman.

c.  **Number of Directorship(s)/ Chairmanship(s)/ Membership(s):**

None of the Director of the Company holds directorships in more than Ten (10) public companies. Further, none of them is a member of more than Ten (10) committees or chairman of more than Five (5) committees across all the public companies in which he/she is a director.

Further, none of the Independent Director of the Company is acting as an Independent Director in more than Seven (7) listed companies or acting as whole-time director in more than Three (3) listed companies.

Necessary disclosures regarding directorships and committee positions in other public companies as on 31 March 2019 have been made by all the Directors of the Company.

d.  **Number of Board Meetings:**

The Board met Four (4) times during the financial year ended 31 March 2019, i.e. on 23 May 2018; 13 August 2018; 26 October 2018 and 7 February 2019. The maximum time gap between Two (2) meetings of the Board did not exceed One Hundred and Twenty (120) days as stipulated under the Regulation 17(2) of the SEBI Listing Regulations. The necessary quorum was present for all the meetings.

The Board meets at regular intervals to discuss and decide on business policy of the Company and strategy apart from other Board business. The Board/Committee Meetings are pre-scheduled and tentative dates of the Board and Committee Meetings are informed well in advance to facilitate Directors to plan their schedule. The agenda is circulated well in advance to the Board Members, along with comprehensive background information on the agenda items to enable the Board to take

an informed decision. The agenda and related information are circulated to the Board/Committee by uploading the same on e-meeting application, which is accessible to all the Members of the Board and its Committee on their respective i-pads. Notice, Agendas and Minutes of the meeting are all circulated through electronic means. Detailed presentations and notes are laid before each meeting, by the management and senior executives of the Company, to apprise the Board on overall performance on quarterly basis. Additional items of the agenda are permitted with the permission of the Chairman and with the consent of all the Directors present at the meeting. Senior Executives/ Management of the Company are invited to attend the Meetings of the Board and Committees, to make presentations and provide clarifications as and when required.

In accordance with the Act read with the Companies (Meetings of Board and its Powers) Rules, 2014 and in accordance with Secretarial Standard 1 issued by the Institute of Company Secretaries of India, the Company provides an option to its Directors to participate at each of the Board Meetings/ Committee Meetings through video conference except in respect of those agenda items wherein transactions are not permitted to be carried out by way of video conference. As per Secretarial Standards, draft minutes and signed minutes of the Meeting are circulated within the prescribed time.

The Board of Directors has complete access to the information within the Company.

e.  **Details of Other Directorships:**

Details of the directorships of the Company's Directors in other listed companies as on 31 March 2019 were as under:

| Name of Directors | Name of the Listed Company | Category of Directorship |
|---|---|---|
| Mr. Dhirendra Swarup | Berger Paints India Limited (subsequently resigned) | Non-Executive - Independent Director |
| Mr. Sunil Srivastav | Star Paper Mills Limited | Non-Executive - Independent Director |
| | Paisalo Digital Limited | Non-Executive - Independent Director |
| Mrs. Jyoti Deshpande | Network18 Media & Investments Limited | Non-Executive - Non-Independent Director |
| | TV18 Broadcast Limited | Non-Executive - Non-Independent Director |
| | Balaji Telefilms Limited | Non-Executive - Non-Independent Director |

None of the Directors except above are directors in listed entities.

[2] Mrs. Jyoti Deshpande ceased to be a Director of the Company with effect from 28 June 2019.
[3] Mr. Sunil Srivastav was appointed as a Non-Executive Additional Independent Director on the Board w.e.f. 23 May 2018.

**f.    Disclosure of Relationship between directors:**

Mr. Kishore Arjan Lulla, Executive Director and Mr. Sunil Arjan Lulla, Executive Vice Chairman & Managing Director of the Company, are brothers.

Other than the aforesaid, there are no *inter-se* relationships amongst the Directors.

**g.    Number of Shares held by Non-Executive Directors:**

As on 31 March 2019, Except Mrs. Jyoti Deshpande holding 3,60,000 equity shares in the Company none of the Non-Executive Directors holds any equity shares in the Company.

**h.    Familiarisation Programme for Independent Directors:**

Familiarisation Programme for Independent Directors is designed with an aim to make the Independent Directors aware about their roles, responsibilities and liabilities as per the Act, SEBI Listing Regulations and other applicable laws and to get better understanding about the Company, nature of industry in which it operates and environment in which it functions, business model, long term/short term/strategic plans etc. As a part of familiarisation programme, the Company makes presentations to the Board Members, *inter alia*, covering business environment, business strategies, operations review, quarterly and annual results, review of Internal Audit Report and action taken, statutory compliance, risk management, operations of subsidiaries, etc.

The relevant policies of the Company including the Code of Conduct for Board Members and Senior Management Personnel and the Code of Conduct to regulate, monitor and report trading by Insiders etc. are circulated to the Directors and uploaded on e-meeting application on i-pads for easy access.

The familiarisation programme and necessary disclosures to be made in accordance with SEBI Listing Regulations are made on the website of the Company at www.erosplc.com.

**i.    Skills/Expertise/Competence Identified by the Board of Directors:**

The Board comprises of the qualified members who bring in the required skills, competence and expertise to enable then through effectively contribute in deliberations at Board and Committee Meetings. The below matrix summarises a mix of skills, expertise and competences expected to be possessed by our individual Directors which are key to corporate governance and board effectiveness.

| Sr. No. | Essential Skills and description | Whether available with the Board (Yes/No) |
|---|---|---|
| 1 | Leadership experience of running large enterprise | Yes |
| 2 | Experience in formulating Corporate Strategies | Yes |
| 3 | Financial Expertise | Yes |
| 4 | Governance, Compliance and Regulatory | Yes |
| 5 | Knowledge and expertise of Trade and Economic Policies | Yes |

## COMMITTEES OF THE BOARD

The Board of Directors, at its various meetings, has constituted / re-constituted various committees to discuss upon the delegated work as per their respective charters. The Board supervises the execution of its responsibilities by the Committees and is responsible for their action. Minutes of all the Committee Meetings are placed before the Board for noting.

Following Committee(s) are constituted for better and focused attention on various affairs of the Company:

- Audit Committee

- Nomination and Remuneration Committee

- Stakeholders Relationship Committee

- Corporate Social Responsibility Committee

- Management Committee

## AUDIT COMMITTEE

An Audit Committee, duly constituted by the Board of Directors has a well-defined composition of members, terms of reference, powers, role and responsibilities in accordance with Section 177 of the Act and applicable Rules thereto and in accordance with Regulation 18 of SEBI Listing Regulations.

As on 31 March 2019, the Audit Committee comprised of Five (5) Members of whom Four (4) are Non-Executive Independent Directors, all of whom are financially literate and possesses accounting and related financial management expertise. The Chairman of the Audit Committee is a Non- Executive Independent Director and he had attended last year's Annual General Meeting.

The detailed terms of reference of Audit Committee along with working procedure, charter and constitution are uploaded on website of the Company at www.erosplc.com.

**Meeting Details:**

During the year under review, Audit Committee met Four (4) times in a year viz. on 23 May 2018; 13 August 2018; 26 October 2018 and 7 February 2019. The maximum time gap between Two (2) Committee Meetings did not exceed One Hundred and Twenty (120) days as stipulated under the Regulation 18(2) of SEBI Listing Regulations. The necessary quorum was present for all the Meetings.

Composition of the Audit Committee and the attendance of each Member at the said Committee Meetings are set out in following table:

| Name of Committee Member | Directors Identification No. (DIN) | Designation in the Committee | Category | Number of Meetings attended |
|---|---|---|---|---|
| Mr. Subramaniam Lakshminarayanan[4] | 07972480 | Chairman | Non-Executive Independent Director | 4 |
| Mr. Dhirendra Swarup[5] | 02878434 | Member | Non-Executive Independent Director | 4 |
| Mr. Rakesh Sood | 07170411 | Member | Non-Executive Independent Director | 4 |
| Mr. Sunil Arjan Lulla | 00243191 | Member | Executive Vice Chairman & Managing Director | 4 |
| Mr. Sunil Srivastav[6] | 00237561 | Member | Non-Executive Independent Director | 2 |

The Company Secretary and Compliance Officer acts as the Secretary to the Committee. The Chief Financial Officer of the Company is the permanent invitee to the Committee meetings. The Audit Committee also invites senior executives/management including the representatives of the statutory auditors and internal auditors at its meetings.

[4]  Mr. Subramaniam Lakshminarayanan was appointed as a Chairman of the Audit Committee w.e.f. 26 October 2018.

[5]  Mr. Dhirendra Swarup ceased to be a Chairman of the Audit Committee w.e.f. 26 October 2018.

[6]  Mr. Sunil Srivastav was appointed as a Member of Audit Committee w.e.f. 26 October 2018 and two meetings were held since his appointment.

**CORPORATE GOVERNANCE REPORT**

### NOMINATION AND REMUNERATION COMMITTEE

The Nomination and Remuneration Committee is constituted in accordance with Section 178 of the Act and applicable Rules thereto and in accordance with Regulation 19 of SEBI Listing Regulations. As on 31 March 2019, the Nomination and Remuneration Committee comprised of Three (3) Members, all of whom are Non-Executive Independent Directors. The Chairman of the Nomination and Remuneration Committee is a Non- Executive Independent Director and he was present at last year's Annual General Meeting to address the queries of the shareholders.

The detailed terms of reference of Nomination and Remuneration Committee along with working procedure, charter and constitution are uploaded on website of the Company at www.erosplc.com.

**Meeting Details:**

During the year under review, Nomination and Remuneration Committee met Four (4) times in a year viz. on 23 May 2018; 13 August 2018; 26 October 2018 and 7 February 2019. The necessary quorum was present at all the meetings.

Composition of the Nomination and Remuneration Committee and the attendance of each member at the said Committee Meetings are set out in following table:

| Name of Committee Member | Directors Identification No. (DIN) | Designation in the Committee | Category | Number of Meetings attended |
|---|---|---|---|---|
| Mr. Rakesh Sood | 07170411 | Chairman | Non-Executive Independent Director | 4 |
| Mr. Dhirendra Swarup | 02878434 | Member | Non-Executive Independent Director | 4 |
| Mr. Subramaniam Lakshminarayanan | 07972480 | Member | Non-Executive Independent Director | 4 |

The Company Secretary and Compliance Officer acts as the Secretary to the Committee. The Chief Financial Officer of the Company is the permanent invitee to the Committee Meetings.

### Evaluation of performance of the Board, its Committees and Directors:

The Company has formulated a Policy on Board Evaluation in accordance with the applicable provisions of SEBI Listing Regulations and the Act. An annual performance evaluation of the Board its Committees and individual directors (including independent directors and Chairperson) in an independent and fair manner was carried out in accordance with the Company's Board Evaluation Policy for the financial year ended 31 March 2019.

The performance of the Board and individual directors was evaluated by the Board seeking inputs from all the Directors. The performance of the Committees was evaluated by the Board seeking inputs from the Committee Members. The Nomination and Remuneration Committee reviewed the performance of the individual directors. This was followed by a Board Meeting that discussed the performance of the Board, its Committees and individual directors. A separate meeting of Independent Directors was also held to review the performance of Non-Independent Directors, performance of the Board as a whole and performance of the Chairman of the Company.

The criteria for performance evaluation of the Board included aspects like Board composition and structure, effectiveness of Board processes, information and functioning etc. The criteria for performance evaluation of Committees of the Board included aspects like composition of committees, effectiveness of Committee Meetings etc. The criteria for performance evaluation of the individual directors included aspects on contribution to the Board and Committee Meetings like preparedness on the issues to be discussed, meaningful and constructive contribution and inputs in meetings etc. In addition, performance of the Chairman was also evaluated on the key aspects of his role and responsibilities.

The performance evaluation of an Independent Directors was based on the criteria viz. attendance at Board and Committee Meetings, skill, experience, ability to challenge views of others in a constructive manner, knowledge acquired with regard to the Company's business, understanding of industry and global trends etc.

### REMUNERATION OF DIRECTORS

**Non – Executive Directors Compensation and Disclosures:**

The Non-Executive Independent Directors are paid compensation in the following manner:

- Sitting Fees of ₹ 40,000/- for attending each Board and Committee Meeting.
- Commission, as decided by the Board, not exceeding 1% of the Net Profit of the Company is paid in accordance with the Act.
- None of the Non-Executive Independent Directors have any pecuniary relationship with the Company.
- None of the Non-Executive Independent Directors holds any equity shares of the Company.
- None of the Non-Executive Independent Directors hold any convertible instruments in the Company.
- Payment of reimbursement of expenses incurred by Non-Executive Independent Directors for participation in the Board and other meetings of the Company.

**Maintenance of Chairman's Office**

The Company maintains the office of Chairman, being Non-Executive, and reimburses all the expenses incurred by him towards performance of his duties, up to the limit as decided by the Board of Directors.

Details of remuneration paid to all the Directors for the financial year 2018-19 are as follows:

(Amount in ₹)

| Sr. No. | Name of Director | Salary | Benefits / Perquisites | Bonus | Sitting Fees (paid) (1) | Commission paid for FY 2017-18 (2) | Commission (payable for 2018-19) | Total (1+2) | Holding of Equity Shares / stock options of the Company as on 31 March 2019 |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Mr. Dhirendra Swarup | - | - | - | 6,80,000 | 48,76,209 | 49,75,000 | 55,56,209 | Nil |
| 2 | Mr. Rakesh Sood | - | - | - | 7,20,000 | 27,77,113 | 24,87,500 | 34,97,113 | Nil |
| 3 | Mr. Subramaniam Lakshminarayanan | - | - | - | 5,20,000 | 9,33,664 | 24,87,500 | 14,53,664 | Nil |
| 4 | Mr. Sunil Arjan Lulla | 4,67,69,208 | 12,39,600 | - | - | - | - | | 1,400 Equity Shares |
| 5 | Mr. Kishore Arjan Lulla | 1,40,30,772 | 39,600 | | - | - | - | | Nil |
| 6 | Mrs. Jyoti Deshpande | - | - | - | - | - | - | - | 3,60,000 Equity Shares |
| 7 | Mr. Sunil Srivastav | - | - | - | 3,20,000 | - | 21,33,120 | 3,20,000 | Nil |

Note: On demise of Mr. Naresh Chandra he ceased to be a director of the Company w.e.f. 9 July 2017. The Commission paid to Late Mr. Naresh Chandra for FY 2017-18 is ₹ 13,63,014/-

**STAKEHOLDERS RELATIONSHIP COMMITTEE**

The Stakeholders Relationship Committee is constituted in accordance with Section 178 of the Act and applicable Rules thereto and in accordance with Regulation 20 of SEBI Listing Regulations. As on 31 March 2019, the Stakeholders Relationship Committee comprised of Four (4) Members, majority of whom are Non-Executive Independent Directors. The Chairman of the Stakeholders Relationship Committee is a Non- Executive Independent Director and he was present at last year's Annual General Meeting to address the queries of the shareholders.

The detailed terms of reference of Stakeholders Relationship Committee

along with working procedure, charter and constitution are uploaded on website of the Company at www.erosplc.com.

**Meeting Details:**

During the year under review, Stakeholders Relationship Committee met Four (4) times in a year viz. on 23 May 2018; 13 August 2018; 26 October 2018 and 7 February 2019. The necessary quorum was present at all the Meetings.

Composition of the Stakeholders Relationship Committee and the attendance of each member at the said Committee Meetings are set out in the following table:

| Name of Committee Member | Directors Identification No. (DIN) | Designation in the Committee | Category | Number of Meetings attended |
|---|---|---|---|---|
| Mr. Sunil Srivastav[7] | 00237561 | Chairman | Non-Executive Independent Director | 2 |
| Mr. Dhirendra Swarup | 02878434 | Member | Non-Executive Independent Director | 4 |
| Mr. Rakesh Sood | 07170411 | Member | Non-Executive Independent Director | 4 |
| Mr. Sunil Arjan Lulla | 00243191 | Member | Executive Vice Chairman & Managing Director | 4 |

The Company Secretary and Compliance Officer of the Company acts as the Secretary to the Committee. The Chief Financial Officer of the Company is the permanent invitee to the Committee Meetings.

The functions and powers of the Stakeholders Relationship Committee includes resolving of investor's complaints pertaining to share transfers, non-receipt of annual reports, dividend payments, issue of duplicate share certificates, transmission of shares and other shareholder related queries, complaints, maintaining investor relations etc.

The main objective of Stakeholders Relationship Committee is to ensure effective implementation and monitoring of framework devised to avoid insider trading and abusive self-dealing, ensure effective implementation of whistle blower mechanism offered to all the stakeholders to report any concerns about illegal or unethical practices, consider and resolve the grievances of security holders of the Company, approval of transfer, transmission of shares, and other securities of the Company, issue of duplicate certificates on split, carrying out any other function contained in the SEBI Listing Regulations, as and when amended from time to time.

Status of Investor Grievances during the year 2018-19:

| Description of Investors Grievances received during the year | No. of Grievances |
|---|---|
| Total Grievances Pending at the Beginning of Period as on 1 April 2018 | 0 |
| Letters directly received from Investors | 0 |
| N.S.E. | 1 |
| B.S.E. | 0 |
| SEBI (Securities Exchange Board of India) (SCORES) | 0 |
| Total Grievances attended | 1 |
| Total Grievances pending as on 31 March 2019 | 0 |

All the Complaints received were promptly resolved and there was no outstanding complaint as on 31 March 2019.

[7] Mr. Sunil Srivastav became Member and Chairman of the Stakeholder Relationship Committee w.e.f. 26 October 2018 and two meetings were held since his appointment.

CORPORATE GOVERNANCE REPORT

**Share Transfer System:**

Share transfers in physical form are registered and returned within the stipulated time if documents are complete in all respects. The Company obtains from Company Secretary in Practice half yearly certificate to the effect that all certificates have been issued within thirty days of the date of lodgement of the transfer, sub-division, consolidation and renewal as required under Regulation 40(9) of the SEBI Listing Regulations and files a copy of the said certificate with Stock Exchanges. There are no share transfer pending as on 31 March 2019.

**CORPORATE SOCIAL RESPONSIBILITY COMMITTEE**

The Corporate Social Responsibility (CSR) Committee is constituted in accordance with Section 135 of the Act and applicable Rules thereto. As on 31 March 2019, the CSR Committee comprised of Five (5) Members. The Chairman of the CSR Committee is an Independent Director and he was present at last year's Annual General Meeting to address the queries of the shareholders, if any.

The objective of the CSR Committee is to implement the CSR activities as per the CSR policy of the Company as stated at length in Directors Report and to assess the various initiatives forming part of the Business Responsibility performance of the Company.

The detailed terms of reference of CSR Committee along with working procedure, charter and constitution are uploaded on website of the Company at www.erosplc.com.

**Meeting Details:**

During the year under review, Corporate Social Responsibility Committee met One (1) time in a year viz. on 23 May 2018. The necessary quorum was present at all the Meetings.

Composition of the CSR Committee and the attendance of each member at the said Committee Meetings are set out in following table:

| Name of Committee Member | Directors Identification No. (DIN) | Designation in the Committee | Category | Number of Meetings attended |
|---|---|---|---|---|
| Mr. Dhirendra Swarup[8] | 02878434 | Chairman | Non-Executive Independent Director | NA |
| Mr. Rakesh Sood[9] | 07170411 | Member | Non-Executive Independent Director | 1 |
| Mr. Kishore Arjan Lulla | 02303295 | Member | Executive Director | Nil |
| Mr. Sunil Arjan Lulla | 00243191 | Member | Executive Vice Chairman & Managing Director | 1 |
| Mrs. Jyoti Deshpande | 02303283 | Member | Non-Executive Non-Independent Director | Nil |

The Company Secretary and Compliance Officer acts as the Secretary to the Committee. The Chief Financial Officer of the Company is the permanent invitee to the Committee Meetings.

**MANAGEMENT COMMITTEE**

The Board of Directors of the Company have constituted the Management Committee to look after day to day affairs and functioning of the Company. The Board have delegated certain powers to this Committee. As at 31 March 2019, the Management Committee comprised of directors and senior executives of the Company viz. Mr. Sunil Arjan Lulla Mr. Kishore Arjan Lulla and Mr. Farokh P. Gandhi.

The Committee met Nineteen (19) times during the financial year for operational matters.

**INVESTORS INFORMATION**

**General Body Meeting**

**Details of location, date and time of last three Annual General Meetings and special resolution passed thereat:**

| Financial Year | Date and Time | Venue | Special Resolution Passed |
|---|---|---|---|
| 2015-16 | 29 September 2016 at 2.30 P.M. | The Club, 197, D. N. Nagar, Andheri West, Mumbai - 400 053 | No Special Resolution was passed |
| 2016-17 | 28 September 2017 at 2.30 P.M. | The Club, 197, D. N. Nagar, Andheri West, Mumbai - 400 053 | • Payment of remuneration to Mr. Kishore Arjan Lulla (DIN 02303295) on his reappointment as Executive Director.<br>• Approval of Eros International Media Limited – Employee Stock Options Scheme 2017 and grant of stock options to the Employees to the Company under the said scheme.<br>• Grant of stock options to the eligible employees of the Company's subsidiaries and Holding Company under the Eros International Media Limited – Employee Stock Options Scheme 2017. |
| 2017-18 | 27 September 2018 at 2:00 P.M. | The Club, 197, D. N. Nagar, Andheri West, Mumbai - 400 053 | Appointment of Mr. Subramaniam Lakshminarayanan (DIN: 07972480) as an Independent Director of the Company. |

No Extra Ordinary General Meeting of the Shareholders of the Company was held during the financial year 2018-2019.

**RESOLUTIONS PASSED BY WAY OF CONDUCTING THE POSTAL BALLOT:**

During the year under review, no ordinary/special resolutions were passed through Postal Ballot pursuant to the provisions of Section 110 of the Companies Act, 2013 read with the Rule 22 of the Companies (Management and Administration) Rules, 2014.

No ordinary/special resolution is proposed to be conducted through postal ballot as on the date of this report.

**MEANS OF COMMUNICATION**

The Company has always promptly reported to both the stock exchanges where the securities of the Company are listed, all the material information including declaration of quarterly, half yearly and annual financial results in the prescribed formats and through press releases.

Financial results are published in "Financial Express" and "Navshakti" as per the requirements of the SEBI Listing Regulations. The said results are also made available on Company's website at www.erosplc.com.

---

[8]  Mr. Dhirendra Swarup became Member and Chairman of the Corporate Social Responsibility Committee w.e.f. 26 October 2018 and no meetings were held since his appointment.

[9]  Mr. Rakesh Sood ceased to be a Chairman of the Corporate Social Responsibility Committee w.e.f. 26 October 2018

**Presentation to Institutional Investors / Analysts**

The Corporate Presentations made to investors / analysts is displayed on the website of the Company.

**GENERAL SHAREHOLDERS INFORMATION:**

| Annual General Meeting | |
|---|---|
| Day | Wednesday |
| Date | 25 September 2019 |
| Time | 2:00 P.M. |
| Venue | "The Classic Club", New Link Road, Behind Infinity Mall, Andheri West, Mumbai – 400 053. |
| **Financial Calendar (Tentative)** | |
| Audited Annual Results of previous year ended 31 March 2019 | 23 May 2019 |
| 1st quarter results for quarter ending June 2019 | On or before 14 August 2019 |
| 2nd quarter results for quarter ending September 2019 | On or before 14 November 2019 |
| 3rd quarter results for quarter ending December 2019 | On or before 14 February 2020 |
| Last quarter results for quarter ending March 2020 | On or before 30 May 2020 |
| **Financial year** | **1 April to 31 March** |
| **Book Closure Dates** | **From Wednesday, 18 September 2019 to Wednesday, 25 September 2019** |
| **Listing of equity shares at Stock Exchanges** | **BSE Limited** Pheeroze Jeejeebhoy Towers, Dalal Street, Fort, Mumbai-400 001. Tel No:- +91-22-22721233/1234 Fax No:- +91-22-22721919 |
| | **National Stock Exchange of India Limited** Exchange Plaza, 5th Floor, Plot No- C Block, G Block, Bandra Kurla Complex, Mumbai-400 051. Tel No:- +91-22-26598100-8114 Fax No:- +91-22-26598120 |
| **Stock Codes** | **BSE** - 533261 **NSE** – EROSMEDIA |
| **ISIN Number** | INE416L01017 |
| **Corporate Identification Number (CIN)** | **L99999MH1994PLC080502** |

The Annual Listing Fees for the financial year 2019-20 to BSE Limited (BSE) and National Stock Exchange of India Limited (NSE) has been paid by the Company within prescribed time.

The Annual Custodian Fees for the financial year 2019-20 to National Securities Depository Limited (NSDL) and Central Depository Services (India) Limited (CDSL) has been paid by the Company within prescribed time.

**MARKET PRICE DATA**

The equity shares of the Company are listed on the BSE Limited and the National Stock Exchange of India Limited. The monthly high and low share prices on both the exchanges for a period starting from April 2018 to March 2019 are as below:

| Month | BSE Limited (BSE) | | | National Stock Exchange of India Limited (NSE) | | |
|---|---|---|---|---|---|---|
| | High Price (₹) | Low Price (₹) | Volume | High Price (₹) | Low Price (₹) | Volume |
| April 2018 | 186.70 | 163.35 | 27,27,286 | 186.75 | 163.50 | 79,00,837 |
| May 2018 | 177.25 | 118.50 | 45,77,723 | 177.80 | 115.30 | 2,28,59,877 |
| June 2018 | 151.25 | 115.45 | 29,47,469 | 151.45 | 115.00 | 1,12,88,158 |
| July 2018 | 125.35 | 104.00 | 34,24,460 | 125.40 | 103.60 | 1,12,74,963 |
| August 2018 | 136.75 | 105.70 | 28,59,615 | 136.95 | 105.05 | 1,35,11,386 |
| September 2018 | 116.90 | 72.00 | 45,70,307 | 117.00 | 72.20 | 1,26,95,608 |
| October 2018 | 86.50 | 61.65 | 29,83,921 | 86.80 | 59.95 | 1,85,70,407 |
| November 2018 | 106.85 | 75.25 | 19,27,031 | 107.00 | 75.10 | 1,02,37,757 |
| December 2018 | 98.75 | 80.80 | 14,03,925 | 96.85 | 80.45 | 58,50,476 |
| January 2019 | 87.85 | 75.10 | 15,98,761 | 88.25 | 75.00 | 68,27,311 |
| February 2019 | 81.45 | 68.20 | 10,98,649 | 81.50 | 68.90 | 99,21,277 |
| March 2019 | 89.95 | 75.45 | 17,29,434 | 89.90 | 75.25 | 1,27,83,904 |

CORPORATE GOVERNANCE REPORT

## PERFORMANCE IN COMPARISON TO BROAD BASED INDICES





## REGISTRAR AND SHARE TRANSFER AGENTS

### Address for Investor Correspondence

For any assistance regarding dematerialization of shares, re-materialization of shares, share transfers, transmissions, change of address, non-receipt of dividend or any other query relating to shares, please write to:

**LINK INTIME INDIA PRIVATE LIMITED**
Unit – Eros International Media Limited
C 101, 247 Park,
LBS Marg, Vikhroli West,
Mumbai 400 083, Maharashtra (India).
Tel: +91 (22) 49186270
Fax: +91 (22) 49186060
Email: rnt.helpdesk@linkintime.co.in and mumbai@linkintime.co.in
Web: www.linkintime.co.in

## DISTRIBUTION OF SHAREHOLDING AS ON 31 March 2019

| Shares Holding of Shares | No. of Shareholders | % to Total |
|---|---|---|
| 1-5000 | 45,736 | 89.11 |
| 5001-10000 | 2,599 | 5.06 |
| 10001-20000 | 1,371 | 2.67 |
| 20001-30000 | 463 | 0.90 |
| 30001-40000 | 225 | 0.44 |
| 40001-50000 | 191 | 0.37 |
| 50001-100000 | 331 | 0.65 |
| 100001 and above | 412 | 0.80 |
| **Total** | **51,328** | **100.00** |

## PLEDGE OF SHARES

2,84,46,169 Equity Shares have been pledged by Eros Worldwide FZ LLC, Holding Company as on 31 March 2019.

## DEMATERIALISATION OF SHARES AND LIQUIDITY AS ON 31 March 2019

The securities of the Company are compulsory traded in dematerialised form and are available for trading on both the depositories in India viz. National Securities Depository Limited (NSDL) and Central Depository Services (India) Limited (CDSL). Equity Shares of the Company representing 99.99% of the Company's Equity Share Capital are in dematerialised form as on 31 March 2019 and the entire promoters holding have been held in the dematerialised as on 31 March 2019.

**Break up of Shares in physical and demat form as on 31 March 2019 is as follows:**

| | Number of Shares | % of Total Number of Shares |
|---|---|---|
| **Physical Segment** | 123 | 0.00 |
| **Demat Segment** | | |
| • NSDL | 7,32,91,774 | 76.74 |
| • CDSL | 2,22,16,243 | 23.26 |
| **Total** | **9,55,08,140** | **100.00** |

The Company's Equity Shares are regularly traded on the BSE Limited and the National Stock Exchange of India Limited, in dematerialised form.

Under the Depository system, the International Security Identification Number (ISIN) allotted to the Company's shares is INE416L01017.

## OUTSTANDING ADRS/GDRS AND OTHER INSTRUMENTS

During the year under review, the Company did not issue any ADRs/GDRs/ other instruments, which are convertible into equity shares of the Company.

The Company has outstanding stock options in force which carries entitlement of equity shares of the Company, as and when exercised.

## PAYMENT OF UNPAID DIVIDEND(S) OF PREVIOUS YEAR(S)

The Company had declared interim dividend in the financial year 2012-13. Each year your Company sends reminders to those shareholders who have not encashed their dividend. This year the Company has sent reminder on 7 May 2019.

The unclaimed / unpaid interim dividend declared in the financial year 2012-13 will be transferred to the Investor Education and Protection Fund in April 2020 and details of the same will be uploaded on the website of the Company and will be filed with Ministry of Corporate Affairs. The Company has already sent individual reminders to the concerned shareholders with a request to claim the unpaid/ unclaimed dividends and to avoid transfer of unpaid/ unclaimed dividend to IEPF.

Likewise, all the shares wherein the interim dividend for the financial year 2012-13 has remained unpaid/unclaimed for seven consecutive years will be transferred by the Company to IEPF in April 2020, if not claimed by the concerned shareholders in time.

Those Shareholders who have so far not encashed their interim dividend warrants for the financial 2012-13 are requested to approach the Company's Registrar and Share Transfer Agent [RTA] for claiming the same at the earliest.

Further, pursuant to the provisions of Investor Education and Protection Fund Authority (Accounting, Audit, Transfer and Refund) Rules, 2016, the Company has uploaded the details of unpaid and unclaimed amounts lying with the Company as on 27 September 2018 (date of last Annual General Meeting) on the Company's website at www.erosplc.com and on the website of the Ministry of Corporate Affairs.

The Company also sends request letter to all the shareholders, who have opted for physical mode of communication, to register their email IDs for receiving all communication from the Company through electronic mode on annual basis.

**Address for General Correspondence**

Company Secretary & Compliance Officer
Eros International Media Limited
**Registered Office:**
201, Kailash Plaza,
Opp Laxmi industrial Estate,
Off. Andheri Link Road,
Andheri West,
Mumbai – 400 053,
Maharashtra (India).

**Corporate Office:**
901/902, Supreme Chambers,
Off. Veera Desai Road, Andheri West,
Mumbai- 400 053,
Maharashtra (India).
Tel: + (91 22) 6602 1500
Fax: + (91 22) 6602 1540
Email: compliance.officer@erosintl.com
Web: www.erosplc.com

**CREDIT RATING**

During the year under review, following ratings were reviewed by CARE Ratings Limited, a Credit Rating Agency on the Long-Term and Short-Term bank facility(ies) of the Company.

| Facilities Rated | Ratings as on 1 April 2018 | Rating as on 31 March 2019 |
|---|---|---|
| Long-Term Bank Facilities | CARE BBB+ | CARE BBB-; Stable |
| Short-Term Bank Facilities | CARE A3+ | CARE A3 |

Subsequent to 23 May 2019, in June 2019, the Company's credit rating has been revised from CARE BBB- to CARE D for Long term facilities and CARE A3 to CARE D for Short Term Facility on account of delay in debt servicing for more than 30 days This facts are disclosed as per Board meeting dated 12 August 2019.

**OTHER DISCLOSURES:**

**Disclosure on Material Related Party Transactions**

During the year, there were no transactions of materially significant nature with the Promoters or Directors or the Management or the subsidiaries or relatives etc. that had potential conflict with the interests of the Company at large. A statement of summary of related party transactions is duly disclosed in the Notes to Accounts.

**Details of Non-Compliance**

No penalties have been imposed on the Company by the Stock Exchanges, SEBI or any other statutory authorities on any matter related to capital markets during the last three years.

**Whistle Blower Policy**

The Whistle Blower Mechanism (Vigil Mechanism) in the Company enables all the directors, employees and its stakeholders, to report concerns about unethical behaviour, report for leakage of unpublished price sensitive information, actual or suspected fraud or violation of the Company's code of conduct or ethics policy. This mechanism has provided adequate safeguards against victimisation of directors/ employees of the Company who avail the mechanism and also provide for direct access to the Chairman of the Audit Committee. No personnel are denied access to this mechanism.

The Vigil Mechanism and Whistle Blower Policy has been posted on the website of the Company at www.erosplc.com.

**SUBSIDIARIES**

As on 31 March 2019, the Company has Eleven (11) direct subsidiaries. Out of Eleven (11) direct subsidiaries, Nine (9) are Indian and other Two (2) are foreign subsidiaries.

None of the subsidiary companies except Copsale Limited (a British Virgin Island Company) are material non-listed subsidiary in terms of Regulation 16(c) of the SEBI Listing Regulation. Mr. Dhirendra Swarup, the Company's Independent Director has been appointed as Independent

Director on the Board of Copsale Limited, a material subsidiary company. The Board of Directors of the Companies have also formulated a policy for determining 'material' subsidiaries and the same has been uploaded on the website of the Company at www.erosplc.com.

The Financial Statements including investments made by the unlisted subsidiaries and all significant transactions and arrangements entered into by the unlisted subsidiaries forming part of the financials are being reviewed by the Audit Committee of your Company on a quarterly basis.

**RELATED PARTY TRANSACTION**

A policy on materiality of Related Parties and dealings with Related Party Transactions has been formulated by the Board of Directors and has also been uploaded on the website of the Company at www.erosplc.com.

The objective of the Policy is to ensure due and timely identification, approval, disclosure reporting and transparency of transactions between Company and any of its Related Parties in compliance with the applicable laws and regulations, as may be amended from time to time.

**Insider Trading Regulations**

The Company has instituted a comprehensive code of conduct for its Directors, Key Managerial Personnel, Senior Management Personnel, Designated Persons and third parties such as auditors, consultants, etc. who are expected to have access to unpublished price sensitive information relating to the Company in compliance with Securities and Exchange Board of India (Prohibition of Insider Trading) Regulations, 2015, as amended from time to time.

The objective of the Code is to prevent purchase and/or sale of securities of the Company by an insider on the basis of unpublished price sensitive information. Under this Code, Directors, Key Managerial Personnel and Senior Management Personnel, Designated Persons, their immediate relatives and such others connected person, are completely prohibited from dealing in the Company's shares during the closure of Trading Window. Further, the Code specifies the procedures to be followed and disclosures to be made by Directors, Key Managerial Personnel, Senior Management Personnel and such other Designated Persons, while dealing with the securities of the Company and enlists the consequences of any violations.

The Annual disclosures as required from Directors, Key Managerial Personnel, Senior Management Personnel and other Designated Employees for adherence to this Code during the financial year 2018-19 have been received by the Company and certificate to that effect from the Executive Vice Chairman & Managing Director is annexed hereto and forms part of this Report.

The Company Secretary has been appointed as the Compliance Officer for monitoring adherence to the Code.

The Code is uploaded on the Company's website at www.erosplc.com.

**Secretarial Audit**

Makarand M. Joshi & Co., firm of Company Secretaries, carried out various compliance and secretarial audits during the year:

- Quarterly Secretarial Audit
- Annual Secretarial Audit as required under Section 204 of the Act & applicable Rules thereto.
- Secretarial Compliance Report to Stock Exchanges pursuant to SEBI's Circular CIR/CFD/CMD1/27/2019 dated 8 February 2019

Report issued by Makarand M. Joshi & Co. in Form No. MR-3 is attached and forms part of Directors Report.

**GREEN INITIATIVE**

As a responsible corporate citizen, the Company welcomes and supports the 'Green Initiative' undertaken by the Ministry of Corporate Affairs, Government of India, enabling electronic delivery of documents including the Annual Report, quarterly and half-yearly results, amongst others, to Shareholders at their e-mail address previously registered with the DPs and RTAs.

**CORPORATE GOVERNANCE REPORT**

Shareholders who have not registered their e-mail addresses so far are requested to do the same. Those holding shares in demat form can register their e-mail address with their concerned DPs. Shareholders who hold shares in physical form are requested to register their e-mail addresses with the RTA, by sending a letter, duly signed by the first/ sole holder quoting details of Folio Number.

**CEO / CFO CERTIFICATION**

The Executive Vice Chairman & Managing Director and the Chief Financial Officer of the Company give annual certification on financial reporting and internal controls to the Board in terms of Regulation 17(8) of the SEBI Listing Regulations. The Executive Vice Chairman & Managing Director and the Chief Financial Officer also give quarterly certification on financial results while placing the financial results before the Board in terms of Regulation 33(2) of the SEBI Listing Regulations. The annual certificate given by the Executive Vice Chairman & Managing Director and the Chief Financial Officer is published in this Report.

The Company has complied with all the mandatory requirements of Corporate Governance Report as stated under SEBI Listing Regulations.

**COMPLIANCE OF DISCRETIONARY REQUIREMENTS**

The Company has adopted the following discretionary requirements stated under Part E of Schedule II of Regulation 27(1) of SEBI Listing Regulations:-

**A.   The Board**

The Chairman i.e Mr. Dhirendra Swarup is a Non-Executive Independent Director and the Company maintains the Chairman's office at its expense and reimburses all expenses incurred in performance of duties by the Chairman.

**B.   Separate posts of chairperson and chief executive officer**

The Company has appointed two separate persons for the post of Chairperson of the Company and Managing Director. Mr. Dhirendra Swarup act as the Chairperson of the Board whereas Mr. Sunil Arjan Lulla is the Executive Vice Chairman & Managing Director of the Company.

**C.   Reporting of Internal Auditor**

The internal control systems of the Company are routinely tested and verified by Independent Internal Auditors and significant audit observations and follow-up actions are reported to the Audit Committee.

**COMPLIANCE WITH CORPORATE GOVERNANCE MANDATORY REQUIREMENTS**

The Company has complied with the all the required requirements specified under Regulation 17 to Regulation 27 and Clauses (b) to (i) of sub-regulation (2) of Regulation 46 of SEBI Listing Regulations and the disclosure of the compliance status forms part of this Report.

**OTHER DISCLOSURES**

- No treatment different from the Indian Accounting Standards (Ind AS), prescribed by the Institute of Chartered Accountants of India, has been followed in the preparation of financial statements.

- The Company has in place the mechanism to inform Board members about the risk assessment and minimisation procedures and periodical reviews to ensure that risk is controlled by the Executive Management.

- During the year, the Company did not make any public issue, right issue, preferential issue, etc. and hence it did not receive any proceeds from any such issues. The proceeds received from public issue made in 2010, were appropriately utilized.

- During the last three years, there were no instances of non-compliance by the Company and no penalty or strictures were imposed on the Company by the Stock Exchanges or SEBI or any statutory authority, on any matter related to the capital markets.

- The Company is fully compliant with the applicable mandatory requirements under SEBI Listing Regulations, relating to Corporate Governance.

- The Company has laid down the Whistle Blower Mechanism for employees and its stakeholders of the Company to report to the management about any instances of unethical behaviour, actual or suspected fraud, illegal or unethical practices in the Company.

- During the year under review, there was no audit qualification in the Company's Financial Statements. Your Company continues to adopt best practices to ensure a regime of unqualified Financial Statements.

- Certificate from a Company Secretary in Practice on confirming directors are not debarred or disqualified by SEBI/MCA or any statutory authority is published as an annexure to this Report.

- The total fees for all services paid by the Company and its subsidiaries, on a consolidated basis, to the statutory auditor is ₹ 122 lakhs.

- During the year, there were no complaints filed, disposed or pending relating to the Sexual Harassment of Women at Workplace (Prevention, Prohibition and Redressal) Act, 2013.

**Code of Conduct**

The Board has laid down a Code of Business Conduct and Ethics for all the Directors, Key Managerial Personnel and Senior Managerial Personnel of the Company in accordance with the requirement under Regulation 17(5) of SEBI Listing Regulations. The Code has also been posted on the website of the Company at www.erosplc.com. All the Board Members, Key Managerial Personnel and Senior Management Personnel have affirmed their compliance with the said Code for the Financial Year ending 31 March 2019.

A declaration to this effect signed by the Executive Vice Chairman & Managing Director of the Company is provided below in this Report.

In accordance with Schedule IV of the Act, a separate Code of Conduct for the Independent Directors has been adopted by the Company. The said Code states, *inter alia*, the duties, roles and responsibilities of Independent Directors and it has also been posted on the website of the Company at www.erosplc.com.

All Independent Directors have confirmed to the Company that they have adhered to and complied with the said Code for the Financial Year end 31 March 2019.

**DECLARATION AFFIRMING COMPLIANCE OF CODE OF CONDUCT**

To the best of my knowledge and belief, I hereby affirm that all the Board Members and Senior Management Personnel of the Company have fully complied with the provisions of the code of conduct as laid down by the Company for Directors and Senior Management Personnel during the financial year ended on 31 March 2019.

For and on behalf of the Board
**Eros International Media Limited**

**Sunil Arjan Lulla**
**Executive Vice Chairman & Managing Director**
DIN: 00243191

Date: 23 May 2019
Place: Mumbai

**CEO/CFO CERTIFICATE**

**To,**
**The Board of Directors**
**Eros International Media Limited**

We hereby certify that in the preparation of the accounts for the year ended 31 March 2019:

(a)   We have reviewed Financial Statements and the Cash Flow Statement for the year and that to the best of our knowledge and belief:

   (i)   these statements do not contain any materially untrue statement or omit any material fact or contain statements that might be misleading;

   (ii)   these statements together present a true and fair view of the Company's affairs and are in compliance with existing Indian Accounting Standards (Ind AS), applicable laws and regulations.

(b)   To the best of our knowledge and belief, there are no transactions entered into by the Company during the year, which are fraudulent, illegal or in violation of the Company's code of conduct.

(c)   We accept responsibility for establishing and maintaining internal controls for financial reporting and that we have evaluated the effectiveness of the internal control systems of the Company pertaining to financial reporting and we have disclosed to the auditors and the Audit Committee, and further state that there were no deficiencies in the design or operation of such internal controls.

(d)   We have indicated to the Auditors and the Audit Committee:

   (i)   That there are no significant changes in internal controls over financial reporting during the year.

   (ii)   That there are no Significant changes in accounting policies during the year.

   (iii)   There have been no instances of significant fraud of which we have become aware and the involvement therein, if any of the management or an employee having a significant role in the Company's internal control system over financial reporting.

**Sunil Arjan Lulla**                                                              **Farokh P. Gandhi**
**Executive Vice Chairman & Managing Director**                                   **Chief Financial Officer**

Date: 23 May 2019
Place: Mumbai

CORPORATE GOVERNANCE REPORT

CERTIFICATE OF COMPLIANCE WITH THE CONDITIONS OF CORPORATE GOVERNANCE UNDER SCHEDULE V OF THE SEBI (LISTING OBLIGATIONS AND DISCLOSURE REQUIREMENTS) REGULATIONS, 2015

To,
The Members of
**Eros International Media Limited**

We have examined the compliance of conditions of corporate governance by **Eros International Media Limited** ("the Company"), for the year ended on 31 March 2019, as stipulated in Regulation 17 to 27 and clauses (b) to (i) of sub-regulation (2) of regulation 46 of SEBI (Listing Obligations and Disclosure Requirements) Regulations, 2015 of the said Company with stock exchange(s).

The compliance of conditions of corporate governance is responsibility of the management. Our examination was limited to procedures and implementation thereof, adopted by the Company for ensuring the compliance of the conditions of the Corporate Governance. It is neither an audit nor an expression of opinion on the financial statements of the Company.

In our opinion and to the best of our information and according to the explanations given to us and the representations made by the Directors and the management, we certify that the Company has complied with the conditions of Corporate Governance as stipulated in Regulation 17 to 27 and clauses (b) to (i) of sub-regulation (2) of regulation 46 SEBI (Listing Obligations and Disclosure Requirements) Regulations, 2015.

We further state that such compliance is neither an assurance as to the future viability of the Company nor of the efficiency or effectiveness with which the management has conducted the affairs of the Company.

**For Makarand M. Joshi & Co.**
Practicing Company Secretaries

**Makarand Joshi**
Partner

Date : 23 May 2019                                        Membership No.: FCS No.: 5533
Place : Mumbai                                             Certificate of Practice No.: 3662

**EQUITY SHARES IN THE SUSPENSE ACCOUNT**

In terms of Schedule V(F) of SEBI Listing Regulations, the Company reports the following details in respect of equity shares lying in the suspense accounts which were issued in demat form:

| Sr. No. | Particulars | No. of Shareholders | No. of Shares |
|---|---|---|---|
| 1 | Aggregate number of shareholders and the outstanding shares in the suspense account lying at the beginning of the year (1 April 2018); | 4 Shareholders | 169 Equity Shares |
| 2 | Number of shareholders who approached issuer for transfer of shares from suspense account during the year; | Nil | Nil |
| 3 | Number of shareholders to whom shares were transferred from suspense account during the year; | Nil | Nil |
| 4 | Aggregate number of shareholders and the outstanding shares in the suspense account lying at the end of the year (31 March 2019). | 4 Shareholders | 169 Equity Shares |

The voting rights on the shares in the suspense accounts as on 31 March 2019 shall remain frozen till the rightful owners of such shares claim the shares.

# INDEPENDENT AUDITOR'S REPORT

To the Members of

**Eros International Media Limited**

**Report on the Standalone financial statements**

**Opinion**

We have audited the accompanying standalone financial statements of **Eros International Media Limited** ("the Company"), which comprise the Balance Sheet as at 31 March 2019, the Statement of Profit and Loss, including Other Comprehensive Income, the Cash Flow Statement and the Statement of Changes in Equity for the year then ended, and a summary of significant accounting policies and other explanatory information (hereinafter referred to as "Financial Statement").

In our opinion and to the best of our information and according to the explanations given to us, the aforesaid standalone financial statements give the information required by the Companies Act, 2013 ("the Act") in the manner so required and give a true and fair view in conformity with the Indian Accounting Standards ("Ind AS") specified under Section 133 of the Act and other accounting principles generally accepted in India, of the state of affairs of the Company as at 31 March 2019, its profit including other comprehensive income, its cash flows and the statement of changes in equity for the year ended on that date.

**Basis for Opinion**

We conducted our audit in accordance with the Standards on Auditing ("SAs") specified under Section 143(10) of the Act. Our responsibilities under those Standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements section of our report. We are independent of the Company in accordance with the Code of Ethics issued by the Institute of Chartered Accountants of India (ICAI) together with the ethical requirements that are relevant to our audit of the standalone financial statements under the provisions of the Act and the Rules made thereunder, and we have fulfilled our other ethical responsibilities in accordance with these requirements and the ICAI's Code of Ethics. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our opinion on the standalone financial statements.

**Key Audit Matters**

Key audit matters are those matters that, in our professional judgment, were of most significance in our audit of the standalone financial statements of the current period. These matters were addressed in the context of our audit of the standalone financial statements as a whole, and in forming our opinion thereon, and we do not provide a separate opinion on these matters. We have determined the matters described below to be key audit matters to be communicated in our report

| Key Audit Matters | Response to Key Audit Matters |
|---|---|
| **Revenue Recognition** | |
| (*Refer note 1 and para 'a' of the significant accounting policies*) | |
| The Company recognize theatrical income, license Fees and distribution revenue, net of sales related taxes, when control of the underlying products have been transferred along with satisfaction of performance obligation. | Our audit procedures to assess the appropriateness of revenue recognised included the following: |
| | • Obtaining an understanding of an assessing the design, implementation and operating effectiveness of the Company's key internal controls over the revenue recognition process. |
| Recognition of revenue is driven by specific terms of related contracts. The Company has applied Ind AS 115 from 1 April 2018 and has evaluated all its contracts with respect to the new accounting guidance. | • Examination of contracts entered into close to year end to ensure revenue recognition is made in correct period. |
| | • Testing a sample of contracts from various revenue streams by agreeing information back to contracts and proof of delivery or transmission as appropriate and ensure revenue recognition is in accordance with principles of Ind AS 115. |
| The various streams of revenue, together with the level of judgement involved make its accounting treatment a significant matter for our audit. | • Assessing the adequacy of Company's disclosure in accordance with requirements of Ind AS 115. |
| | Our testing as described above showed that revenue has been recorded in accordance with the terms of underlying contracts and accounting policy in this area. The disclosures made relating to revenues are in agreement with Ind AS 115. |

**STANDALONE FINANCIAL STATEMENTS**

| Key Audit Matters | Response to Key Audit Matters |
| --- | --- |
| **Content Advances** | |
| Company enters into agreements with production houses to develop future film content. Advances are given as per terms of agreements. Such content advances are monitored by management of the Company for recoverability and appropriate write offs are taken when film production does not seem viable and refund of advance is not probable basis management evaluation.<br><br>The Content advances are transferred to film and rights at the point at which the content is first exploited. Provision is made as per provision policy in respect of content advances against which content has not been delivered by vendor within agreed timelines or where projects are at standstill/put on hold for substantial period of time.<br><br>Because of the significance of content advances to the balance sheet and of the significant degree of management judgment involved in evaluating the adequacy of the allowance for content advances, we identified this area as key audit matter. | Our audit procedures with respect to content advance, delivery of the content and it's impairment includes:<br><br>• Obtaining an understanding of and assessing the design, implementation and operating effectiveness of the Company's key controls over the processes of authorisation of content advances and tracking of receipt of related content as per agreement.<br><br>• Examination of contracts on sample basis entered by the Company and agreeing with the schedule of content advance.<br><br>• Reviewing ageing of advances to determine the adequacy of the provision made as per provisioning policy.<br><br>• Testing of the amounts transferred to film and rights account on sample basis on delivery of content by vendor.<br><br>• Circulating and obtaining independent confirmations from parties on the outstanding balances on sample basis. Testing the reconciliation, if any between the balances confirmed by party and balance in the books.<br><br>• Conducting discussion with the management and reviewing, on sample basis, the project status prepared by management for determining the adequacy of impairment provisions where balances are still pending to be adjusted against the content to be delivered by the party.<br><br>The results of our testing of confirmations floated and other test as described above, were satisfactory and concluded that provision made for impairment of content advance was appropriate. |
| **Amortisation of Film and Content Rights**<br>*(Refer note 1 and para 'd' of the significant accounting policies)* | |
| The cost incurred on acquisition of film and content rights are amortised over the period. Company carries out stepped up amortisation of film content, with higher amortisation in year of film release and lower amortisation in later periods as per the policy disclosed in significant accounting policy.<br><br>Such amortisation policy has been derived basis management's expectation of overall performance of films based on historical trends. The Company maintains detailed content wise information relating to historical trends and future benefits from content through theatrical sales, sale of satellite or television and other forms of monetisation of the content.<br><br>Determination of amortisation policy and assessing impairment of content asset involves significant judgement and estimates since it is dependent on various internal and external factors.<br><br>Because of the significance of the amortisation of content and film rights to balance sheet together with the level of judgement involved make its accounting treatment a significant matter for our audit. | Our audit procedures to test amortisation/impairment of film content included the following:<br><br>• Assessing the design, implementation and operating effectiveness of the Company's key internal controls over the processes of maintenance and updation of master files containing data on the film rights carrying value and the related amortisation computations thereof.<br><br>• Testing, on sample basis, the mathematical accuracy of the acquisition cost of film and content rights, associated amortisation charge and additions and disposals to third party supporting documents.<br><br>• Discussing the expectations of the selected films and shows with key personnel, including those outside of finance, to ensure its consistency of expected performance with key assumptions.<br><br>• Determining the overall assumptions used by management for amortisation policy is appropriate based on the expected utilisation of benefits of the underlying content.<br><br>• Assessing management's historical forecasting accuracy by comparing past assumptions to actual outcomes.<br><br>• The carrying value of the content and film cost were tested for impairment based on the valuation model. We tested the historical data used for valuation, challenged the terminal growth and discount rates used and considered the reasonableness of the sensitivity assessment applied.<br><br>The results of the test described as above, were satisfactory and amortisation charged for content and film right was found satisfactory. |

| Key Audit Matters | Response to Key Audit Matters |
|---|---|
| **Trade Receivables**<br>*(Refer note 1 and para 'i' of the significant accounting policies)* | |
| The Company is required to regularly assess the recoverability of its trade receivables. Management assesses the level of allowance for expected credit loss required at each reporting date after taking into account the ageing analysis of trade receivables and other historical and current factors specific to individual accounts.<br><br>The recoverability of trade receivables was significant to our audit because of the significance of trade receivables to balance sheet and involvement of significant degree of management judgement involved in evaluating the adequacy of the allowance for expected credit loss. | Our audit procedures to assess the recoverability of trade receivables included the following:<br><br>• Tested the accuracy of aging of trade receivables at year end on a sample basis.<br><br>• Assessed the recoverability of the unsettled receivables on a sample basis through our evaluation of management's assessment with reference to the credit profile of the customers, historical payment pattern of customers, publicly available information and latest correspondence with customers and to consider if any additional provision should be made.<br><br>• Tested subsequent settlement of trade receivables after the balance sheet date on a sample basis, if any.<br><br>• Circulating and obtaining independent customers confirmation on the outstanding balances on sample basis. Testing the reconciliation, if any between the balances confirmed by customer and balance in the books on sample basis.<br><br>• In assessing the appropriateness of the overall provision for impairment we considered the management's application of policy for recognizing provisions which included assessing whether the calculation was in accordance with Ind AS 109 and comparing the Company's provisioning rates against historical collection data.<br><br>The results of the test described as above, were satisfactory and provision made for expected credit loss/doubtful debt was found satisfactory. |

## Other Information

The Company's Board of Directors is responsible for the other information. The other information comprises the information included in the Annual Report, but does not include the standalone financial statements and our auditor's report thereon.

Our opinion on the standalone financial statements does not cover the other information and we do not express any form of assurance conclusion thereon.

In connection with our audit of the financial statements, our responsibility is to read the other information and, in doing so, consider whether the other information is materially inconsistent with the financial statements or our knowledge obtained in the audit or otherwise appears to be materially misstated. If, based on the work we have performed, we conclude that there is a material misstatement of this other information; we are required to report that fact. We have nothing to report in this regard.

## Management Responsibility for the Standalone Financial Statements

The Company's Board of Directors is responsible for the matters stated in Section 134(5) of the Act, with respect to the preparation of these Standalone Financial Statements that give a true and fair view of the financial position, financial performance including other comprehensive income, cash flows and the statement of changes in equity of the Company in accordance with the accounting principles generally accepted in India, including the Indian Accounting Standards ("Ind AS") specified under Section 133 of the Act, read with the Companies (Indian Accounting Standards) Rules, 2015, as amended.

This responsibility also includes maintenance of adequate accounting records in accordance with the provision of the Act for safeguarding the assets of the Company and for preventing and detecting frauds and other irregularities; selection and application of the appropriate accounting policies; making judgements and estimates that are reasonable and prudent; and design, implementation and maintenance of adequate internal financial controls, that were operating effectively for ensuring the accuracy and completeness of the accounting records, relevant to the preparation and fair presentation of the standalone financial statements that give a true and fair view and are free from material misstatement, whether due to fraud or error.

In preparing the standalone financial statements, management is responsible for assessing the Company's ability to continue as a going concern, disclosing, as applicable, matters related to going concern and using the going concern basis of accounting unless management either intends to liquidate the Company or to cease operations, or has no realistic alternative but to do so.

The Board of Directors are also responsible for overseeing the Company's financial reporting process.

## Auditor's Responsibility

Our objectives are to obtain reasonable assurance about whether the standalone financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance, but is not a guarantee that an audit conducted in accordance with SAs will always detect a material misstatement when it exists. Misstatements can arise from fraud or error and are considered material if, individually or in the aggregate, they could reasonably be expected to influence the economic decisions of users taken on the basis of these standalone financial statements.

As part of an audit in accordance with SAs, we exercise professional judgment and maintain professional scepticism throughout the audit. We also:

• Identify and assess the risks of material misstatement of the financial statements, whether due to fraud or error, design and perform audit procedures responsive to those risks, and obtain audit evidence that is sufficient and appropriate to provide a basis for our opinion. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control.

• Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances. Under Section 143(3)(i) of the Act, we are also responsible for expressing our opinion on whether the Company has adequate internal financial controls system in place and the operating effectiveness of such controls.

- Evaluate the appropriateness of accounting policies used and the reasonableness of accounting estimates and related disclosures made by management.

- Conclude on the appropriateness of management's use of the going concern basis of accounting and, based on the audit evidence obtained, whether a material uncertainty exists related to events or conditions that may cast significant doubt on the Company's ability to continue as a going concern. If we conclude that a material uncertainty exists, we are required to draw attention in our auditor's report to the related disclosures in the standalone financial statements or, if such disclosures are inadequate, to modify our opinion. Our conclusions are based on the audit evidence obtained up to the date of our auditor's report. However, future events or conditions may cause the Company to cease to continue as a going concern.

- Evaluate the overall presentation, structure and content of the standalone financial statements, including the disclosures, and whether the standalone financial statements represent the underlying transactions and events in a manner that achieves fair presentation.

Materiality is the magnitude of misstatements in the standalone financial statements that, individually or in aggregate, makes it probable that the economic decisions of a reasonably knowledgeable user of the standalone financial statements may be influenced. We consider quantitative materiality and qualitative factors in (i) planning the scope of our audit work and in evaluating the results of our work; and (ii) to evaluate the effect of any identified misstatements in the standalone financial statements.

We communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit and significant audit findings, including any significant deficiencies in internal control that we identify during our audit.

We also provide those charged with governance with a statement that we have complied with relevant ethical requirements regarding independence, and to communicate with them all relationships and other matters that may reasonably be thought to bear on our independence, and where applicable, related safeguards.

From the matters communicated with those charged with governance, we determine those matters that were of most significance in the audit of the standalone financial statements of the current period and are therefore the key audit matters. We describe these matters in our auditor's report unless law or regulation precludes public disclosure about the matter or when, in extremely rare circumstances, we determine that a matter should not be communicated in our report because the adverse consequences of doing so would reasonably be expected to outweigh the public interest benefits of such communication.

**Report on Other Legal and Regulatory Requirements**

1. As required by the Companies (Auditor's Report) Order, 2016 ("the Order"), issued by the Central Government of India in terms of sub-section (11) of Section 143 of the Act, we give in the "Annexure A" a statement on the matters specified in paragraphs 3 and 4 of the Order.

2. As required by Section 143(3) of the Act, we report that:

   a) We have sought and obtained all the information and explanations which to the best of our knowledge and belief were necessary for the purposes of our audit;

   b) In our opinion, proper books of account as required by law have been kept by the Company so far as appears from our examination of those books;

   c) The Balance Sheet, Statement of Profit and Loss including Other Comprehensive Income, the Cash Flow Statement and the Statement of Changes in Equity dealt with by this report are in agreement with the books of account;

   d) In our opinion, the aforesaid standalone financial statements comply with the Ind AS specified under Section 133 of the Act read with Companies (Indian Accounting Standards) Rules, 2015 as amended;

   e) On the basis of written representations received from the directors as on 31 March 2019 taken on record by the Board of Directors, none of the directors is disqualified as on 31 March 2019, from being appointed as a director in terms of Section 164(2) of the Act;

   f) With respect to the adequacy of the internal financial controls over financial reporting of the Company and the operating effectiveness of such controls, refer to our separate Report in "**Annexure B**". Our report expresses an unmodified opinion on the adequacy and operating effectiveness of the Company's internal financial controls over financial reporting;

   g) With respect to the other matters to be included in the Auditor's Report in accordance with the requirements of section 197(16) of the Act, as amended, in our opinion and to the best of our information and according to the explanations given to us, the remuneration paid by the Company to its directors during the year is in accordance with the provisions of section 197 of the Act;

   h) With respect to the other matters to be included in the Auditor's Report in accordance with Rules 11 of the Companies (Audit and Auditors) Rules, 2014, as amended, in our opinion and to the best of our information and according to the explanations given to us:

      i. The Company has disclosed the impact of pending litigations on its financial position in its standalone financial statements - Refer Note 40 to the standalone financial statements;

      ii. The Company has made provision, as required under the applicable law or accounting standards, for material foreseeable losses, if any, on long-term contracts including derivative contracts; and

      iii. There has been no delay in transferring amounts, required to be transferred, to the Investor Education and Protection Fund by the Company.

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No. 101720W/W100355

**Amit Chaturvedi**
Partner
Membership No. 103141

Place : Mumbai
Dated : 23 May 2019

## ANNEXURE "A" TO THE INDEPENDENT AUDITOR'S REPORT ON THE STANDALONE FINANCIAL STATEMENTS OF EROS INTERNATIONAL MEDIA LIMITED

**(Referred to in Paragraph 1 under the heading of "Report on other legal and regulatory requirements" of our report of even date)**

i)   **In respect of its Fixed Assets :**

    a.   The Company has maintained proper records showing full particulars including quantitative details and situation of Fixed Assets on the basis of available information.

    b.   As explained to us, all the fixed assets have been physically verified by the management in a phased periodical manner, which in our opinion is reasonable, having regard to the size of the Company and nature of its assets. No material discrepancies were noticed on such physical verification.

    c.   According to the information and explanations given to us, the title deeds of all the immovable properties are held in the name of the Company.

ii)   In respect of its inventories:

Accordingly to the information and explanations given to us, physical verification of inventories comprising of VCD/DVD/Audio CD and cost of films acquired have been conducted at reasonable intervals by the management, which in our opinion is reasonable, having regard to the size of the Company and nature of its inventories. No material discrepancies noticed on such verification of inventories as compared to the book records.

iii)   In respect of loans, secured or unsecured granted by the Company to companies, firms, limited liability partnerships or other parties covered in the register maintained under Section 189 of the Act:

    a.   In our opinion the terms and conditions of the grant of such loans are prima facie, not prejudicial to the company's interest.

    b.   The schedule of repayment of principal and interest has been stipulated wherein the principal and interest amounts are repayable on demand. Since the repayment of such loans has not been demanded, in our opinion, the repayment of the principal and interest amount is regular.

    c.   There is no overdue amount in respect of loans granted to such companies and firms.

iv)   In respect of loans, investments, guarantees and security, the Company has complied with the provisions of Section 185 and 186 of the Act.

v)   According to the information and explanations given to us, the Company has not accepted any deposits within the meaning of provisions of Sections 73 to 76 or any other relevant provisions of the Act and the rules framed thereunder. Therefore, the provisions of Clause (v) of paragraph 3 of the Order are not applicable to the Company.

vi)   To the best of our knowledge and explanations given to us, the Central Government has not prescribed the maintenance of cost records under sub section (1) of Section 148 of the Act in respect of the activities undertaken by the Company. Accordingly, the provision of clause 3(vi) of the order is not applicable.

vii)   In respect of Statutory dues :

    a.   According to the records of the Company, undisputed statutory dues including goods and service tax, employee's state insurance, provident fund, income-tax, duty of customs, value added tax, cess and any other statutory dues as applicable to it have not been regularly deposited to the appropriate authorities and there have been significant delays in a large number of cases. According to the information and explanations given to us, following are the undisputed amounts payable in respect of the aforesaid dues were outstanding as at 31 March 2019 for a period of more than six months from the date of becoming payable:-

| Sr. No. | Name of the statute | Nature of the dues | Amount ₹ in lakhs | Period to which the amount relates | Due Date | Date of Payment |
|---|---|---|---|---|---|---|
| 1 | Income Tax Act, 1961 | Self-Assessment Tax | 2,903 | Assessment year 2017-18 | 30-11-2017 | Paid ₹ 735 lakhs till date |
| 2 | Income Tax Act, 1961 | Interest on Income Tax | 820 | Assessment year 2017-18 | 30-11-2017 | Unpaid |
| 3 | Income Tax Act, 1961 | Self-Assessment Tax | 526 | Assessment year 2018-19 | 30-11-2018 | Unpaid |
| 4 | Income Tax Act, 1961 | Interest on Income Tax | 33 | Assessment year 2018-19 | 30-11-2018 | Unpaid |
| 5 | Income Tax Act, 1961 | Advance Income Tax | 3,492 | Assessment year 2019-20 | 15-09-2018 | Unpaid |
| 6 | Goods and Services Tax Act | Goods and Services Tax | 444 | For the month of July 2018. | 20-08-2018 | Unpaid |
| 7 | Goods and Services Tax Act | Interest on Goods and Services Tax | 69 | For the year 2017-18 | Various dates | Unpaid |
|  |  |  | 49 | For the month of July 2018. | 20-08-2018 | Unpaid |

**STANDALONE FINANCIAL STATEMENTS**

b.  On the basis of our examination of accounts and documents on records of the Company and information and explanations given to us upon enquires in this regard, the following are the disputed amounts payable in respect of goods and service tax, income tax, sales tax, service tax, duty and cess as applicable to it, which have not been deposited on account of disputed matters pending before the appropriate authorities:-

| Sr. No | Name of the statute | Nature of the dues | Amount ₹ in lakhs | Amount Paid under protest (Amount ₹ in lakhs) | Period to which the amount relates | Forum where dispute is pending |
|---|---|---|---|---|---|---|
| 1 | Finance Act, 1994 | Service Tax, Penalties and Interest | 34,506 | 1,000.00 | Various Years From 2009-10 to 2016-2017 | Assistant commissioner of sales tax (Appeals) |
| 2 | Income Tax Act, 1961 | Income Tax | 68 | - | Various Assessment Years From 2003-04 to 2016-17 | Commissioner of Income Tax (Appeal) |
| | | | 37 | - | Assessment Year 2004-05 | High Court |
| | | | 450 | - | Assessment Year 2016-17 | Commissioner of Income Tax (Appeal) |
| 3 | Maharashtra Value Added Tax, 2002 | Sales Tax | 2,132 | 29 | Various Years From 2005-06 to 2013-14 | Joint Commissioner of sales tax (Appeals) |
| 4 | Central Sales Tax Act, 1956 | Sales Tax | 235 | 165 | Various Years From 2005-06 to 2013-14 | Joint Commissioner of sales tax (Appeals) |

viii.  In our opinion and according to the information and explanations given to us, the Company has delayed in repayment of dues to financial institutions, banks and government during the year. The lender wise details of the default as on 31 March 2019 is tabulated as under:-

| Name of Bank/ Financial Instituition | Nature of default | Amount of default (in lakhs) | Period of default | Present status |
|---|---|---|---|---|
| **Bank of Baroda** | Principal | 175.00 | 53 Days | Paid |
| | Interest | 21.00 | 39 days | 16.06 lakhs Paid |
| **Union Bank of India** | Principal | 33.00 | 53 Days | Not Paid |
| | Interest | 8.00 | 53 Days | Not Paid |
| **Dena Bank** | Principal | 42.00 | 26 Days | Paid |
| | Interest | 50.00 | 26 days | Paid |
| **IDBI Bank Ltd.** | Interest | 59.00 | 27 days | Paid |
| **Punjab National Bank** | Principal | 33.00 | 53 Days | Not Paid |
| | Interest | 23.00 | 53 Days | 1.06 lakhs Paid |

ix)  The Company has not raised money by way of initial public offer or further public offer (including debt instruments). In our opinion, the term loans were applied for the purpose for which the loans were obtained.

x)  Based on the audit procedures performed for the purpose of reporting the true and fair view of the financial statements and as per information and explanations given to us, no fraud by the Company or on the Company by its officers or employees has been noticed or reported during the year.

xi)  In our opinion and according to the information and explanations given to us, managerial remuneration has been paid or provided in accordance with the requisite approvals mandated by the provisions of Section 197 read with Schedule V to the Act.

xii)  In our opinion Company is not a nidhi Company. Therefore, the provisions of clause (xii) of paragraph 3 of the Order are not applicable to the Company.

xiii)  In respect of transactions with related parties:

In our opinion and according to the information and explanations given to us, all transactions with related parties are in compliance with Sections 177 and 188 of the Act and their details have been disclosed in the financial statements etc., as required by the applicable Ind AS.

xiv)  In our opinion and according to the information and explanations given to us, the Company has not made any preferential allotment or private placement of shares or of fully or partly convertible debentures during the year and hence clause (xiv) of paragraph 3 of the Order is not applicable to the Company.

xv)  In our opinion and according to the information and explanations given to us, the Company has not entered into any non-cash transaction with the directors or persons connected with him and covered under Section 192 of the Act. Hence, clause (xv) of the paragraph 3 of the Order is not applicable to the Company.

xvi)  Based on information and explanation given to us, the Company is not required to be registered under Section 45-IA of the Reserve Bank of India Act, 1934.

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No. 101720W/W100355

**Amit Chaturvedi**
Partner
Membership No. 103141

Place : Mumbai
Dated : 23 May 2019

# ANNEXURE "B" TO THE INDEPENDENT AUDITOR'S REPORT ON THE STANDALONE FINANCIAL STATEMENTS OF EROS INTERNATIONAL MEDIA LIMITED

**(Referred to in paragraph 2 (f) under 'Report on Other Legal and Regulatory Requirements' of our report of even date)**

**Report on the Internal Financial Controls over Financial Reporting under Clause (i) of sub-section 3 of Section 143 of the Companies Act, 2013 ("the Act")**

We have audited the Internal Financial Control over financial reporting of **Eros International Media Limited** ("the Company") as of 31 March 2019 in conjunction with our audit of the standalone financial statements of the Company for the year then ended.

### Management Responsibility for the Internal Financial Controls

The Company's management is responsible for establishing and maintaining internal financial controls based on the internal control over financial reporting criteria established by the Company considering the essential components of internal control stated in the Guidance Note issued by ICAI. These responsibilities include the design, implementation and maintenance of adequate internal financial controls that were operating effectively for ensuring the orderly and efficient conduct of its business, including adherence to company's policies, the safeguarding of its assets, the prevention and detection of frauds and errors, the accuracy and completeness of the accounting records, and the timely preparation of reliable financial information, as required under the Act.

### Auditor's Responsibility

Our responsibility is to express an opinion on the Company's internal financial controls over financial reporting based on our audit. We conducted our audit in accordance with the Guidance Note issued by ICAI and the Standards on Auditing, issued by ICAI and deemed to be prescribed under Section 143(10) of the Act, to the extent applicable to an audit of internal financial controls, both applicable to an audit of Internal Financial Controls and both issued by the ICAI. Those Standards and the Guidance Note require that we comply with ethical requirements and plan and perform the audit to obtain reasonable assurance about whether adequate internal financial controls over financial reporting was established and maintained and if such controls operated effectively in all material respects.

Our audit involves performing procedures to obtain audit evidence about the adequacy of the internal financial controls system over financial reporting and their operating effectiveness. Our audit of internal financial controls over financial reporting included obtaining an understanding of internal financial controls over financial reporting, assessing the risk that a material weakness exists, and testing and evaluating the design and operating effectiveness of internal control based on the assessed risk. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the standalone financial statements, whether due to fraud or error.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion on the Company's internal financial controls system over financial reporting.

### Meaning of Internal Financial Controls over Financial Reporting

A company's internal financial control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of standalone financial statements for external purposes in accordance with generally accepted accounting principles. A company's internal financial control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of standalone financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the Company are being made only in accordance with authorisations of management and directors of the Company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorised acquisition, use, or disposition of the Company's assets that could have a material effect on the standalone financial statements.

### Inherent Limitations of Internal Financial Controls over Financial Reporting

Because of the inherent limitations of internal financial controls over financial reporting, including the possibility of collusion or improper management override of controls, material misstatements due to error or fraud may occur and not be detected. Also, projections of any evaluation of the internal financial controls over financial reporting to future periods are subject to the risk that the internal financial control over financial reporting may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

### Opinion

In our opinion, the Company has, in all material respects, an adequate internal financial controls system over financial reporting and such internal financial controls over financial reporting were operating effectively as at 31 March 2019, based on the internal control over financial reporting criteria established by the Company considering the essential components of internal control stated in the Guidance Note on Audit of Internal Financial Controls Over Financial Reporting issued by the ICAI.

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No. 101720W/W100355

**Amit Chaturvedi**
Partner
Membership No. 103141

Place : Mumbai
Dated : 23 May 2019

STANDALONE FINANCIAL STATEMENTS

# Balance Sheet
**as at 31 March 2019**

Amount ₹ in lakhs

| Particulars | Notes | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|---|
| **Assets** | | | |
| **Non-current assets** | | | |
| Property, plant and equipment | 3 | 3,499 | 3,746 |
| Intangible assets | | | |
| a) Content advances | 4 | 1,44,435 | 1,37,408 |
| b) Film rights | 4 | 66,974 | 77,315 |
| c) Other intangible assets | 4 | 20 | 26 |
| d) Intangible assets under development | | 3,712 | 1,397 |
| Financial assets | | | |
| a) Investments | 5 | 4,819 | 5,503 |
| b) Loans and advances | 6 | 1,671 | 1,721 |
| c) Restricted bank deposits | 7 | 511 | 716 |
| d) Other financial assets | 8 | 643 | 672 |
| Other non-current assets | 9 | 4,254 | 2,951 |
| **Total non-current assets** | | **2,30,538** | **2,31,455** |
| **Current assets** | | | |
| Inventories | 10 | 301 | 187 |
| Financial assets | | | |
| a) Trade receivables | 11 | 66,595 | 44,024 |
| b) Cash and cash equivalents | 12 | 268 | 385 |
| c) Restricted bank deposits | 13 | 5,982 | 3,776 |
| d) Loans and advances | 14 | 1,481 | 3,205 |
| e) Other financial assets | 15 | 228 | 294 |
| Other current assets | 16 | 243 | 55 |
| **Total current assets** | | **75,098** | **51,926** |
| **Total assets** | | **3,05,636** | **2,83,381** |
| **Equity and Liabilities** | | | |
| **Equity** | | | |
| Equity share capital | 17 | 9,551 | 9,497 |
| Other equity | 18 | 144,294 | 134,702 |
| **Total equity** | | **1,53,845** | **1,44,199** |
| **Liabilities** | | | |
| **Non-current liabilities** | | | |
| Financial liabilities | | | |
| a) Borrowings | 19 | 8,698 | 14,941 |
| b) Trade payables | 20 | | |
| i) Total outstanding dues of micro and small enterprises | | - | - |
| ii) Total outstanding dues of creditors other than micro and small enterprises | | 108 | 102 |
| c) Other financial liabilities | 21 | 25 | - |
| Employee benefit obligations | 22 | 378 | 425 |
| Deferred tax liabilities | 23 | 18,758 | 25,221 |
| Other non-current liabilities | 24 | 10,050 | 1,512 |
| **Total non-current liabilities** | | **38,017** | **42,201** |
| **Current liabilities** | | | |
| Financial liabilities | | | |
| a) Borrowings | 25 | 46,796 | 48,621 |
| b) Acceptances | 26 | 5,796 | 5,796 |
| c) Trade payables | | | |
| i) Total outstanding dues of micro and small enterprises | | - | - |
| ii) Total outstanding dues of creditors other than micro and small enterprises | | 19,429 | 17,023 |
| d) Other financial liabilities | 27 | 7,293 | 8,521 |
| Employee benefit obligations | 28 | 359 | 212 |
| Current tax liabilities | 29 | 11,235 | 3,506 |
| Other current liabilities | 30 | 22,866 | 13,302 |
| **Total current liabilities** | | **1,13,774** | **96,981** |
| **Total liabilities** | | **1,51,791** | **1,39,182** |
| **Total equity and liabilities** | | **3,05,636** | **2,83,381** |

Notes 1 to 50 form an integral part of these standalone financial statements.
As per our report of even date

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No.: 101720W/W100355

**For and on behalf of Board of Directors**

**Amit Chaturvedi**
Partner

Membership No: 103141

**Sunil Arjan Lulla**
Executive Vice Chairman &
Managing Director
(DIN: 00243191)

**Sunil Srivastav**
Non Executive Independent
Director
(DIN: 00237561)

**Subramaniam Lakshminarayanan**
Non Executive Independent
Director
(DIN: 07972480)

**Farokh P. Gandhi**
Chief Financial Officer

**Abhishekh Kanoi**
Vice President - Company Secretary
and Compliance Officer

Place: Mumbai
Date : 23 May 2019

Place: Mumbai
Date : 23 May 2019

# Statement of Profit and Loss
**for the year ended 31 March 2019**

Amount ₹ in lakhs

| Particulars | Notes | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|---|
| **Revenue** | | | |
| Revenue from operations (net) | 31 | 83,564 | 70,766 |
| Other income | 32 | 3,416 | 2,091 |
| **Total revenue** | | **86,980** | **72,857** |
| **Expenses** | | | |
| Film right costs including amortization costs | 33 | 39,278 | 33,201 |
| Changes in inventories of film rights | 34 | (114) | (142) |
| Employee benefits expense | 35 | 4,141 | 4,625 |
| Finance cost (net) | 36 | 7,903 | 7,488 |
| Depreciation and amortization expense | 37 | 539 | 615 |
| Other expenses | 38 | 21,556 | 13,027 |
| **Total expenses** | | **73,303** | **58,814** |
| Profit before tax | | 13,677 | 14,043 |
| **Tax expense** | | | |
| Current tax | | 12,535 | 9,393 |
| Deferred tax | | (6,996) | (3,233) |
| Short/(excess) provision of earlier years | | (598) | 182 |
| | | **4,941** | **6,342** |
| **Profit after tax for the year** | | **8,736** | **7,701** |
| **Other comprehensive income** | | | |
| (i) Items that will not be reclassified to profit or loss | | | |
| Remeasurement gain on defined benefit plan | | 61 | 86 |
| Income tax effect (net) | | (21) | (30) |
| **Total comprehensive income for the year** | | **8,776** | **7,757** |
| Earnings per share | | | |
| Basic (in ₹) (nominal value ₹10) | 39 | 9.18 | 8.15 |
| Diluted (in ₹) (nominal value ₹10) | | 9.10 | 8.03 |

Notes 1 to 50 form an integral part of these standalone financial statements

As per our report of even date

| | |
|---|---|
| For **Chaturvedi & Shah LLP**<br>Chartered Accountants<br>Firm Registration No.: 101720W/W100355 | For and on behalf of Board of Directors |

**Amit Chaturvedi**
Partner

Membership No: 103141

**Sunil Arjan Lulla**
Executive Vice Chairman &
Managing Director
(DIN: 00243191)

**Sunil Srivastav**
Non Executive Independent
Director
(DIN: 00237561)

**Subramaniam Lakshminarayanan**
Non Executive Independent
Director
(DIN: 07972480)

**Farokh P. Gandhi**
Chief Financial Officer

**Abhishekh Kanoi**
Vice President - Company Secretary
and Compliance Officer

Place: Mumbai
Date : 23 May 2019

Place: Mumbai
Date : 23 May 2019

STANDALONE FINANCIAL STATEMENTS

# Statement of Changes in Equity
**As at 31 March 2019**

| A.   Equity share capital | Number | Amounts ₹ in lakhs |
|---|---|---|
| **Balance as at 1 April 2017** | **93,858,717** | **9,385** |
| Add: Issued on exercise of employee share options | 1,113,160 | 112 |
| **Balance as at 31 March 2018** | **94,971,877** | **9,497** |
| Add: Issued on exercise of employee share options | 536,263 | 54 |
| **Balance as at 31 March 2019** | **95,508,140** | **9,551** |

**B.   Other equity**                                                                                           Amount ₹ in lakhs

| Particulars | Share Premium Account | General Reserves | Share Options Outstanding | Retained Earnings | Other comprehensive income / (loss) | Total other equity |
|---|---|---|---|---|---|---|
| **Balance as at 1 April 2017** | 38,141 | 526 | 2,645 | 84,354 | (10) | 1,25,656 |
| Profit for the year | - | - | - | 7,701 | - | 7,701 |
| Acturial gain / (loss) on employee benefit plans through OCI | - | - | - | - | 56 | 56 |
| **Total Comprehensive income/ (loss) for the year** | **-** | **-** | **-** | **7,701** | **56** | **7,757** |
| Additions for employee stock options exercised during the year | 247 | - | - | - | - | 247 |
| Transfer from/to share option outstanding account | 2,110 | - | (2,110) | - | - | - |
| Employee stock option compensation expense | - | - | 834 | - | - | 834 |
| Employee stock option compensation expense to employee's of subsidiary and Fellow subsidiary | - | - | 208 | - | - | 208 |
| **Balance as at 31 March 2018** | **40,498** | **526** | **1,577** | **92,055** | **46** | **1,34,702** |
| Profit for the year | - | - | - | 8,736 | - | 8,736 |
| Acturial gain / (loss) on employee benefit plans through OCI | - | - | - | - | 40 | 40 |
| **Total Comprehensive income/ (loss) for the year** | **-** | **-** | **-** | **8,736** | **40** | **8,776** |
| Additions for employee stock options exercised during the year | - | - | - | - | - | - |
| Transfer from/to share option outstanding account | 1,049 | - | (1,049 ) | - | - | - |
| Employee stock option compensation expense | - | - | 761 | - | - | 761 |
| Employee stock option compensation expense to employee's of subsidiary and Fellow subsidiary | - | - | 55 | - | - | 55 |
| **Balance as at 31 March 2019** | **41,547** | **526** | **1,344** | **100,791** | **86** | **144,294** |

**C.   Nature and purpose of reserves**

1. Securities Premium: The amount received in excess of face value of the equity shares is recognised in Securities Premium.

2. General Reserve: General Reserve was created by transferring a portion of the net profit of the Company as per the requirements of the Companies Act, 2013.

3. Share Options Outstanding: Share Options Outstanding relates to the stock options granted by the Company to employees under a Employee Stock Option Plan.

4. Retained Earnings: Remaining portion of profits earned by the Company till date after appropriations.

As per our report of even date

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No.: 101720W/W100355

**For and on behalf of Board of Directors**

**Amit Chaturvedi**
Partner

Membership No: 103141

**Sunil Arjan Lulla**
Executive Vice Chairman &
Managing Director
(DIN: 00243191)

**Sunil Srivastav**
Non Executive Independent
Director
(DIN: 00237561)

**Subramaniam Lakshminarayanan**
Non Executive Independent
Director
(DIN: 07972480)

**Farokh P. Gandhi**
Chief Financial Officer

**Abhishekh Kanoi**
Vice President - Company Secretary
and Compliance Officer

Place: Mumbai
Date : 23 May 2019

Place: Mumbai
Date : 23 May 2019

# Cash Flow Statement
**For the year ended 31 March 2019**

Amount ₹ in lakhs

| Particulars | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| **Cash flow from operating activities** | | |
| **Profit before tax** | **13,677** | **14,043** |
| Non-cash adjustments to reconcile Profit before tax to net cash flows | | |
| Depreciation and amortization | 25,012 | 22,979 |
| Trade receivables written off | 1,917 | 3,539 |
| Sundry balances written back | (45) | (79) |
| Content advances written off | 2,226 | 228 |
| Provision for doubtful advances | 1,687 | - |
| Advances and deposits written off | 298 | 0 |
| Loss on disposal of fixed assets (net) | | 0 |
| Provision for doubtful trade receivables | 7,943 | - |
| Unwinding of interest on expected credit loss | - | (409) |
| Finance costs | 8,237 | 7,752 |
| Interest income | (334) | (264) |
| Gratuity | 117 | |
| (Gain) on sale of tangible assets (net) | (1) | 1 |
| Impairment loss on investment in subsidiary | 722 | 1,480 |
| Expense on employee stock option scheme | 761 | 834 |
| Unrealised foreign exchange gain | (814) | (309) |
| **Operating profit before working capital changes** | **61,403** | **49,795** |
| Movements in working capital: | | |
| Increase/(Decrease) in current liabilities | 18,228 | (1,361) |
| Increase/(Decrease) in other financial liabilities | 946 | (485) |
| Increase in trade payables | (619) | 2,257 |
| Increase in employee benefit obligations | 44 | 88 |
| Decrease in inventories | 9 | 29 |
| (Increase)/Decrease in trade receivables | (32,413) | (20,444) |
| Decrease in other current assets | (188) | 51 |
| (Increase) /Decrease in other non- current assets | (1,303) | 1,640 |
| (Increase)/Decrease in short-term loans and advances | 1,475 | (934) |
| Decrease in other financial assets | (28) | 51 |
| **Cash generated from operations** | **47,554** | **30,687** |
| Taxes paid (net) | (4,750) | (4,807) |
| **Net cash generated from operating activities (A)** | **42,804** | **25,880** |
| **Cash flow from investing activities** | | |
| Purchase of tangible assets | (117) | (443) |
| Purchase of intangible film rights and related content | (24,213) | (25,892) |
| Deposits with banks (net) | (2,001) | (21) |
| Advance given | - | - |
| Proceeds from sale of fixed assets | 1 | 4 |
| Interest income | 401 | 154 |
| **Net cash used in investing activities (B)** | **(25,929)** | **(26,198)** |

STANDALONE FINANCIAL STATEMENTS

# Cash Flow Statement
**For the year ended 31 March 2019**

Amount ₹ in lakhs

| Particulars | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---:|---:|
| **Cash flows from financing activities** | | |
| Proceeds from issue of equity shares (net) | 54 | 358 |
| Repayment of long-term borrowings | (8,561) | (7,159) |
| Proceeds from long-term borrowings | - | 7,272 |
| Change in short-term borrowings | (1,249) | 7,252 |
| Finance charges (net) | (7,235) | (7,152) |
| **Net cash flow from/(used ) in financing activities (C)** | **(16,991)** | **571** |
| **Net decrease in cash and cash equivalents (A + B + C)** | **(116)** | **253** |
| **Cash and cash equivalents at the beginning of the year** | **384** | **131** |
| **Cash and cash equivalents at the end of the year (refer note 12)** | **268** | **384** |

*amount represents less than ₹ one lakh

**Change in liability arising from financing activities :-**

Amount ₹ in lakhs

| | Non current borrowings | Current borrowing | Acceptances | Total |
|---|---:|---:|---:|---:|
| As on 1 April 2018 | 22,135 | 48,621 | 5,796 | 76,552 |
| Cash Flows | (8,561) | (1,249) | - | (9,810) |
| Adjustments | 304 | (576) | - | (272) |
| **As on 31 March 2019** | **13,878** | **46,796** | **5,796** | **66,470** |

Notes 1 to 50 form an integral part of these standalone financial statements

As per our report of even date

| For **Chaturvedi & Shah LLP** | **For and on behalf of Board of Directors** |
|---|---|
| Chartered Accountants | |
| Firm Registration No.: 101720W/W100355 | |

| **Amit Chaturvedi** | **Sunil Arjan Lulla** | **Sunil Srivastav** | **Subramaniam Lakshminarayanan** |
|---|---|---|---|
| Partner | Executive Vice Chairman & Managing Director | Non Executive Independent Director | Non Executive Independent Director |
| Membership No: 103141 | (DIN: 00243191) | (DIN: 00237561) | (DIN: 07972480) |
| | | **Farokh P. Gandhi** | **Abhishekh Kanoi** |
| | | Chief Financial Officer | Vice President - Company Secretary and Compliance Officer |
| Place: Mumbai | | Place: Mumbai | |
| Date : 23 May 2019 | | Date : 23 May 2019 | |

# Summary of Significant Accounting Policies

## Corporate Information

Eros International Media Limited (the 'Company') was incorporated in India, under the Companies Act, 1956. The Company is a global player within the Indian media and entertainment industry and is primarily engaged in the business of film production, exploitation and distribution. It operates on a vertically integrated studio model controlling content as well as distribution and exploitation across multiple formats globally, including cinema, digital, home entertainment and television syndication. Its shares are listed on leading stock exchanges in India (BSE Scrip Code: 533261; NSE Scrip Code: EROSMEDIA).

These separate financial statements were authorised for issue in accordance with a resolution passed in the Board of Directors meeting held on 23 May 2019.

## Statement of compliance

These financial statements have been prepared in accordance with the Indian Accounting Standards (referred to as "Ind AS") as prescribed under section 133 of the Companies Act, 2013 read with Companies (Indian Accounting Standards) Rules as amended from time to time.

## Basis of preparation

The financial statements have been prepared on accrual basis of accounting using historical cost basis, except certain investment and Employee Stock Option Plan ('ESOP') Compensation measured at fair value.

All assets and liabilities have been classified as current or non-current as per the Company's normal operating cycle and other criteria set out in the Schedule III to the Act. The Company considers 12 months to be its normal operating cycle.

All values are rounded to the nearest rupees in lakhs, except where otherwise indicated. Amount in zero (0) represents amount below rupees fifty thousand

1. **Significant Accounting Policies**

a. **Revenue Recognition**

Effective 1 April 2018, the Company has applied Ind AS 115 which establishes a comprehensive framework for determining whether, how much and when revenue is to be recognised. Ind AS 115 replaces Ind AS 18 Revenue and Ind AS 11 Construction Contracts. The Company has adopted Ind AS 115 using the modified retrospective effect method. The effect of initially applying this standard is recognised at the date of initial application (i.e. 1 April 2018). The standard is applied retrospectively only to contracts that are not completed as at the date of initial application and the comparative information in the statement of profit and loss is not restated – i.e. the comparative information continues to be reported under Ind AS 18 and Ind AS 11. Refer note 1(a) – Significant accounting policies – Revenue recognition in the Annual report of the Company for the year ended 31 March 2018, for revenue recognition policy as per Ind AS 18 and Ind AS 11. The impact of adoption of the standard on the financial statements of the Company is insignificant.

To determine whether to recognise revenue, the Company follows a 5-step process:

i.     Identifying the contract with a customer

ii.    Identifying the performance obligations

iii.   Determining the transaction price

iv.    Allocating the transaction price to the performance obligations

v.     Recognising revenue when/as performance obligation(s) are satisfied

Revenue is recognized upon transfer of control of promised products or services to customers in an amount that reflects the consideration which the Company expects to receive in exchange for those products or services. To ensure collectability of such consideration and financial stability of the counterparty, the Company performs certain standard Know Your Client (KYC) procedures based on their locations and evaluates trend of past collection.

Revenue is measured based on the transaction price, which is the consideration, adjusted for any discounts and incentives, if any, as specified in the contract with the customer. Revenue also excludes taxes collected from customers. In case of revenues which are subject to change, the Company estimates the amount to be received using the "most likely amount" approach, or the "expected value" approach, as appropriate. This amount is then included in the Company's estimate of the transaction price only if it is highly probable that a significant reversal of revenue will not occur once any uncertainty surrounding the bonus is resolved. In making this assessment the Company considers its historical performance on similar contracts.

The Company recognises contract liabilities for consideration received in respect of unsatisfied performance obligations and reports these amounts as other liabilities in the statement of financial position (see Note 30). Similarly, if the Company satisfies a performance obligation before it receives the consideration, the Company recognises either a contract asset or a receivable in its statement of financial position, depending on whether something other than the passage of time is required before the consideration is due.

Consideration is generally due upon satisfaction of performance obligations and a receivable is recognised when it becomes unconditional. Generally, the credit period varies between 0-180 days from the shipment or delivery of goods or services as the case may be.

The transaction price, being the amount to which the Company expects to be entitled and has rights to under the contract is allocated to the identified performance obligations. The transaction price will also include an estimate of any variable consideration where the Company's performance may result in additional revenues based on the achievement of agreed targets.

The Company does not expect to have any contracts where the period between the transfer of the promised goods or services to the customer and payment by the customer exceeds one year. As a consequence, the Company does not adjust any of the transaction prices for the time value of money.

The Company disaggregates revenue from contracts with customers by geography and nature of services.

The following additional criteria apply in respect of various revenue streams within filmed entertainment:

Theatrical — Contracted minimum guarantees are recognized on the theatrical release date. The Company's share of box office receipts in excess of the minimum guarantee is recognized at the point they are notified to the Company.

Television — License fees received in advance which do not meet all the above criteria are included in deferred income until the above criteria is met.

Other — DVD, CD and video distribution revenue is recognized on the date the product is delivered or if licensed in line with the above criteria. Provision is made for physical returns where applicable. Digital and ancillary media revenues are recognized at the earlier of when the content is accessed or declared. Visual effects,

**STANDALONE FINANCIAL STATEMENTS**

production and other fees for services rendered by the Company and overhead recharges are recognized in the period in which they are earned and in certain cases, the stage of production is used to determine the proportion recognized in the period.

**Other income**

Dividend income is recognised when the Company's right to receive the payment is established, which is generally when shareholders approve the dividend.

Interest income is recognized on a time proportion basis taking into account the amount outstanding and the effective interest rate applicable.

**b.    Property, plant and equipment and depreciation**

Property, Plant and Equipment is stated at cost, net of accumulated depreciation and accumulated impairment losses, if any.

The cost of Property, Plant and Equipment comprises of its purchase price or construction cost, any costs directly attributable to bringing the asset into the location and condition necessary for it to be capable of operating in the manner intended by management, the initial estimate of any decommissioning obligation, if any, and borrowing costs for assets that necessarily take a substantial period of time to get ready for their intended use. Subsequent costs are included in the asset's carrying amount or recognised as a separate asset, as appropriate, only when it is probable that future economic benefits associated with the item will flow to the Company and the cost of the item can be measured reliably.

Capital Work-in-progress (CWIP) includes expenditure that is directly attributable to the acquisition/construction of assets, which are yet to be commissioned.

Depreciation is provided under written down value method at the rates and in the manner prescribed under Schedule II to the Companies Act, 2013.The residual values, useful lives and methods of depreciation of property, plant and equipment are reviewed at each financial year end and adjusted prospectively, if appropriate. Gains or losses arising from de-recognition of a property, plant and equipment are measured as the difference between the net disposal proceeds and the carrying amount of the asset and are recognized in the Statement of Profit and Loss when the asset is de-recognized.

**c.    Intangible assets**

Intangible assets acquired by the Company are stated at cost less accumulated amortization less impairment loss, if any, (film production cost and content advances are transferred to film and content rights at the point at which content is first exploited).

Investments in films and associated rights, including acquired rights and distribution advances in respect of completed films, are stated at cost less amortization less provision for impairment. Costs include production costs, overhead and capitalized interest costs net of any amounts received from third party investors. A charge is made to write down the cost of completed rights over the estimated useful lives, writing off more in year one which recognizes initial income flows and then the balance over a period of up to nine years, except where the asset is not yet available for exploitation. The average life of the assets is the lesser of 10 years or the remaining life of the content rights. The amortization charge is recognized in the statement of profit and loss within cost of sales. The determination of useful life is based upon Management's judgment and includes assumptions on the timing and future estimated revenues to be generated by these assets, which are summarized in Note 2.

Intangible assets comprising film scripts and related costs are stated at cost less amortization less provision for impairment. The script costs are amortized over a period of 3 years on a straight-line basis and the amortization charge is recognized in the income statement within cost of sales. The determination of useful life is based upon Management's estimate of the period over which the Company explores the possibility of making films using the script.

Other intangible assets, which comprise internally generated and acquired software used within the Entity's digital, home entertainment and internal accounting activities, are stated at cost less amortization less provision for impairment. A charge is made to write down the cost of software over the estimated useful lives except where the software is not yet available for use. The average life of the software is the lesser of 3 years or the remaining life of the software. The amortization charge is recognized in the statement of profit and loss.

**d.    Impairment of non-financial assets**

At each reporting date, for the purposes of assessing impairment, assets are grouped at the lowest levels for which there are separately identifiable cash flows (cash generating units). As a result, some assets are tested individually for impairment and some are tested at the cash generating unit level. All individual assets or cash generating units are tested for impairment whenever events or changes in circumstances both internal and external indicate that the carrying amount may not be recoverable.

An impairment loss is recognised wherever the carrying amount of an asset exceeds its recoverable amount which represents the greater of the net selling price of assets and their 'value in use'.

In assessing value in use, the estimated future cash flows are discounted to their present value using a pre-tax discount rate that reflects current market assessments of the time value of money and the risks specific to the asset. In determining fair value less costs of disposal, recent market transactions are taken into account. If no such transactions can be identified, an appropriate valuation model is used. These calculations are corroborated by valuation multiples, quoted share prices for publicly traded companies or other available fair value indicators.

Film and content rights are stated at the lower of unamortized cost and estimated recoverable amounts. In accordance with Ind AS 36 Impairment of Assets, film content costs are assessed for indication of impairment on a library basis as the nature of the Company's business, the contracts it has in place and the markets it operates in do not yet make an ongoing individual film evaluation feasible with reasonable certainty. Impairment losses on content advances are recognized when film production does not seem viable and refund of the advance is not probable. Irrespective of existence of indicators of impairment, Company makes provision on Content Advances in accordance with the provisioning policy, such that, unadjusted advances are provided over a period of 3 to 5 years.

All assets are subsequently reassessed for indications that an impairment loss previously recognized may no longer exist.

**e.    Borrowing costs**

The Company is capitalising borrowing costs that are directly attributable to the acquisition or construction of qualifying assets. Qualifying assets are assets that necessarily take a substantial period of time to get ready for their intended use or sale.

Borrowings are recognised initially at fair value, net of transaction costs incurred. Borrowings are subsequently stated at amortized cost with any difference between the proceeds (net of transaction costs) and the redemption value recognised in the income statement within Finance costs over the period of the borrowings using the effective interest method. Finance costs in respect of film productions and other assets which take a substantial period of time to get ready for use or for exploitation are capitalized as part of the assets. All other borrowing costs are recognized as expense in the period in which they are incurred and charged to the Statement of Profit and Loss.

Borrowings are classified as current liabilities unless the Company has an unconditional right to defer settlement of the liability for at least 12 months after the balance sheet date.

### f. Impairment of financial assets

In accordance with Ind AS 109, the Company applies expected credit loss (ECL) model for measurement and recognition of impairment loss on risk exposure arising from financial assets like debt instruments measured at amortised cost e.g., trade receivables and deposits.

The Company follows 'simplified approach' for recognition of impairment loss allowance on Trade receivables or contract revenue receivables. The application of simplified approach does not require the Company to track changes in credit risk. Rather, it recognises impairment loss allowance based on lifetime ECLs at each reporting date, right from its initial recognition.

For recognition of impairment loss on other financial assets and risk exposure, the Company determines that whether there has been a significant increase in the credit risk since initial recognition. If credit risk has not increased significantly, 12-month ECL is used to provide for impairment loss. However, if credit risk has increased significantly, lifetime ECL is used. If, in a subsequent period, credit quality of the instrument improves such that there is no longer a significant increase in credit risk since initial recognition, then the entity reverts to recognising impairment loss allowance based on 12-month ECL.

Lifetime ECL are the expected credit losses resulting from all possible default events over the expected life of a financial instrument. The 12-month ECL is a portion of the lifetime ECL which results from default events that are possible within 12 months after the reporting date.

ECL is the difference between all contractual cash flows that are due to the Company in accordance with the contract and all the cash flows that the entity expects to receive (i.e., all cash shortfalls), discounted at the original EIR. When estimating the cash flows, an entity is required to consider all contractual terms of the financial instrument (including prepayment, extension, call and similar options) over the expected life of the financial instrument. However, in rare cases when the expected life of the financial instrument cannot be estimated reliably, then the entity is required to use the remaining contractual term of the financial instrument.

ECL impairment loss allowance (or reversal) recognized during the period is recognized as income/ expense in the statement of profit and loss (P&L). This amount is reflected under the head 'Other income or other expenses' in the P&L.

For assessing increase in credit risk and impairment loss, the Company combines financial instruments on the basis of shared credit risk characteristics with the objective of facilitating an analysis that is designed to enable significant increases in credit risk to be identified on a timely basis.

### g. Inventories

Inventories primarily comprise of music CDs and DVDs are valued at the lower of cost and net realizable value. Cost in respect of goods for resale is defined as all costs of purchase, costs of conversion and other costs incurred in bringing the inventories to their present location and condition. Cost in respect of raw materials is purchase price.

Purchase price is assigned using a weighted average basis. Net realisable value is the estimated selling price in the ordinary course of business less the estimated costs of completion and the estimated costs necessary to make the sale.

### h. Provisions, Contingent Liabilities and Contingent Assets

Provisions are recognized when the Company has a present legal or constructive obligation as a result of a past event, it is more likely than not that an outflow of resources will be required to settle the obligations and can be reliably measured. Provisions are measured at Management's best estimate of the expenditure required to settle the obligations at the balance sheet date. If the effect of the time value of money is material, provisions are discounted using a current pre-tax rate that reflects, when appropriate, the risks specific to the liability. When discounting is used, the increase in the provision due to the passage of time is recognised as a finance cost.

Contingent liabilities are not recognized in the financial statements but are disclosed by way of notes to accounts unless the possibility of an outflow of economic resources is considered remote.

Contingent assets are not recognized in financial statements. However, the same is disclosed, where an inflow of economic benefit is virtual.

### i. Employee Benefits

#### Short term employee benefits obligations

Short-term employee benefits are recognized as an expense in the Statement of Profit and Loss for the year in which related services are rendered.

#### Post-employment benefits and other long term employee benefits

#### Defined contribution plan

Provident fund & National Pension scheme: The Company's contributions paid or payable during the year to the provident fund, employee's state insurance corporation and National pension scheme are recognized in the Statement of Profit and Loss. This fund is administered by the respective Government authorities, and the Company has no further obligation beyond making its contribution, which is expensed in the year to which it pertains.

#### Defined benefit plan

Gratuity: The Company's liability towards gratuity is determined using the projected unit credit method which considers each period of service as giving rise to an additional unit of benefit entitlement and measures each unit separately to build up the final obligation. The cost for past services is recognized on a straight-line basis over the average period until the amended benefits become vested. Re-measurement gains and losses are recognized immediately in the Other Comprehensive Income as income or expense and are not reclassified to profit or loss in subsequent periods. Obligation is measured at the present value of estimated future cash flows using a discounted rate that is determined by reference to market yields at the Balance Sheet date on Government bonds where the currency and terms of the Government bonds are consistent with the currency and estimated terms of the defined benefit obligation.

Compensated absences: Accumulated compensated absences are expected to be availed or encashed within 12 months from the end of the year and are treated as short-term employee benefits. The obligation towards the same is measured at the expected cost of accumulating compensated absences as the additional amount expected to be paid as a result of the unused entitlement as at the year end.

#### Employee stock option plan

In accordance with Ind AS 102 Share Based Payments, the fair value of shares or options granted is recognized as personnel costs with a corresponding increase in equity. The fair value is measured at the grant date and spread over the period during which the recipient becomes unconditionally entitled to payment unless forfeited or surrendered.

The fair value of share options granted is measured using the Black Scholes model, each taking into account the terms and conditions upon which the grants are made. At each Balance Sheet date, the Company revises its estimate of the number of equity instruments expected to vest as a result of non-market based vesting conditions. The amount recognized as an expense is adjusted to reflect the revised estimate of the number of equity instruments that are expected to become exercisable, with a corresponding adjustment to equity. The Company's share option plan does not feature any cash settlement option.

**STANDALONE FINANCIAL STATEMENTS**

Upon exercise of share options, the proceeds received net of any directly attributable transaction costs up to the nominal value of the shares are allocated to equity share capital with any excess being recorded as securities premium.

### j.  Leases

The determination of whether an arrangement is (or contains) a lease is based on the substance of the arrangement at the inception of the lease. The arrangement is, or contains, a lease if fulfilment of the arrangement is dependent on the use of a specific asset or assets and the arrangement conveys a right to use the asset or assets, even if that right is not explicitly specified in an arrangement.

A lease is classified at the inception date as a finance lease or an operating lease. Leases in which significantly all the risks and rewards incidental to ownership are transferred to the lessee are classified as Finance leases. All other leases are Operating Leases.

#### As a lessee

**Finance lease**

Leases are classified as finance leases (including those for land), if substantially all the risks and rewards incidental to ownership of the leased asset is transferred to the lessee.

At the commencement of the lease term, the Company recognises finance leases as assets and liabilities in its balance sheet at amounts equal to the fair value of the leased property or, if lower, the present value of the minimum lease payments, each determined at the inception of the lease. The corresponding rental obligations, net of finance charges, are included in borrowings or other financial liabilities as appropriate. Any indirect costs of the Company are added to the amount recognized as an asset.

Minimum lease payments are apportioned between the finance charge and the reduction of the outstanding liability. The finance cost is charged to the profit or loss over the lease period so as to produce a constant periodic rate of interest on the remaining balance of the liability for each period.

**Operating lease**

Leases (including those for land) which are not classified as finance leases are considered as operating lease. Lease payments under an operating lease are recognized as an expense on a straight-line basis over the lease term unless either:

A.  Another systematic basis is more representative of the time pattern of the user's benefit even if the payments to the lessors are not on that basis; or

B.  The payments to the lessor are structured to increase in line with expected general inflation to compensate for the lessor's expected inflationary cost increases. If payments to the lessor vary because of factors other than general inflation, then this condition is not met.

#### As a lessor

**Finance lease**

All assets given on finance lease are shown as receivables at an amount equal to net investment in the lease. Principal component of the lease receipts are adjusted against outstanding receivables and interest income is accounted by applying the interest rate implicit in the lease to the net investment.

**Operating lease**

Lease income from operating lease (excluding amount for services such as insurance and maintenance) is recognised in the statement of profit or loss on a straight-line basis over the lease term, unless either:

A.  Another systematic basis is more representative of the time pattern of the user's benefit even if the payments to the Company are not on that basis; or

B.  The payments to the Company are structured to increase in line with expected general inflation to compensate for the Company's expected inflationary cost increases. If payments to the Company vary because of factors other than general inflation, then this condition is not met.

### k.  Foreign Currency Transactions

Transactions in foreign currencies are translated at the rates of exchange prevailing on the dates of the transactions. Monetary assets and liabilities in foreign currencies are translated at the prevailing rates of exchange at the balance sheet date. Non-monetary items that are measured at historical cost in a foreign currency are translated at the exchange rate at the date of the transaction. Non-monetary items that are measured at fair value in a foreign currency are translated using the exchange rates at the date when the fair value was determined.

Any exchange differences arising on the settlement of monetary items or on translating monetary items at rates different from those at which they were initially recorded are recognized in the statement of profit and loss in the period in which they arise. Non-monetary items carried at fair value that are denominated in foreign currencies are translated at rates prevailing at the date when the fair value was determined. Non-monetary items that are measured in terms of historical cost in a foreign currency are not retranslated.

The Company's functional currency and the presentation currency is same i.e. Indian Rupee (₹).

### l.  Financial instrument

#### Non-derivative financial instruments

Financial assets and financial liabilities are recognized when the Company becomes party to the contractual provisions of the instrument.

Financial assets and liabilities are initially measured at fair value. Transaction costs that are directly attributable to the acquisition or issue of financial assets or liabilities (other than financial assets and liabilities at fair value through profit and loss) are added to or deducted from the fair value of the financial assets or financial liabilities, as appropriate, on initial recognition. Transaction costs directly attributable to the acquisition of financial assets or financial liabilities at fair value through profit and loss are recognized immediately in profit or loss. Financial assets and financial liabilities are offset against each other and the net amount reported in the balance sheet if, and only if, there is a currently enforceable legal right to offset the recognized amounts and there is an intention to settle on a net basis, or to realize the assets and settle the liabilities simultaneously.

A financial instrument is measured at fair value through profit or loss if:

• it has been acquired principally for the purpose of selling/ repurchasing it in the near term

• on initial recognition it is part of a portfolio of identified financial instruments that the Company manages together and has a recent pattern of short term profit taking or

• it is a derivative that is not designated in a hedging relationship.

The fair value of financial instruments denominated in a foreign currency is determined in that foreign currency and translated at the spot rate at the end of the reporting period. The foreign exchange component forms part of its fair value gain or loss. Therefore for financial instruments that are classified as fair value through Statement of Profit and Loss, the exchange component is recognized in Statement of Profit and Loss.

**Financial Assets**

Financial assets are divided into the following categories:

• financial assets carried at amortised cost

• financial assets at fair value through Other Comprehensive Income

• financial assets at fair value through Statement of Profit and Loss;

Financial assets are assigned to the different categories by Management on initial recognition, depending on the nature and purpose of the financial assets. The designation of financial assets is re-evaluated at every reporting date at which a choice of classification or accounting treatment is available. Financial Assets like Investments in Subsidiaries are measured at Cost as allowed by Ind-AS 27 – Separate Financial Statements and hence are not fair valued.

**Financial assets carried at amortised cost**

A financial asset is subsequently measured at amortised cost if it is held within a business model whose objective is to hold the asset in order to collect contractual cash flows and the contractual terms of the financial asset give rise on specified dates to cash flows that are solely payments of principal and interest on the principal amount outstanding. These are non-derivative financial assets that are not quoted in an active market. Loans and receivables (including trade and other receivables, bank and cash balances) are measured subsequent to initial recognition at amortized cost using the effective interest method, less provision for impairment. Any change in their value through impairment or reversal of impairment is recognized in the Statement of Profit and Loss.

In accordance with Ind AS 109: Financial Instruments, the Company recognizes impairment loss allowance on trade receivables and content advances based on historically observed default rates. Impairment loss allowance recognized during the year is charged to Statement of Profit and Loss.

**Financial assets at fair value through Other Comprehensive Income**

Financial assets at fair value through Other Comprehensive Income are non-derivative financial assets held within a business model whose objective is achieved by both collecting contractual cash flows and selling financial assets and the contractual terms of the financial asset give rise on specified dates to cash flows that are solely payments of principal and interest on the principal amount outstanding.

**Financial assets at fair value through profit or loss**

A financial asset which is not classified in any of the above categories are subsequently fair valued through profit or loss. It includes non-derivative financial assets that are either designated as such or do not qualify for inclusion in any of the other categories of financial assets. Gains and losses arising from investments classified under this category is recognized in the statement of profit and loss when they are sold or when the investment is impaired.

In the case of impairment, any loss previously recognized in other comprehensive income is transferred to the statement of profit and loss. Impairment losses recognized in the statement of profit and loss on equity instruments are not reversed through the statement of profit and loss. Impairment losses recognized previously on debt securities are reversed through the statement of profit and loss when the increase can be related objectively to an event occurring after the impairment loss was recognized in the statement of profit and loss.

When the Company considers that fair value of financial assets can be reliably measured, the fair values of financial instruments that are not traded in an active market are determined by using valuation techniques. The Company applies its judgment to select a variety of methods and make assumptions that are mainly based on market conditions existing at each balance sheet date. Equity instruments measured at fair value through profit or loss that do not have a quoted price in an active market and whose fair value cannot be reliably measured are measured at cost less impairment at the end of each reporting period.

An assessment for impairment is undertaken at least at each balance sheet date.

A financial asset is derecognized only where the contractual rights to the cash flows from the asset expire or the financial asset is transferred and that transfer qualifies for derecognition. A financial asset is transferred if the contractual rights to receive the cash flows of the asset have been transferred or the Company retains the contractual rights to receive the cash flows of the asset but assumes a contractual obligation to pay the cash flows to one or more recipients. A financial asset that is transferred qualifies for derecognition if the Company transfers substantially all the risks and rewards of ownership of the asset, or if the Company neither retains nor transfers substantially all the risks and rewards of ownership but does transfer control of that asset.

**Financial liabilities**

Financial liabilities are classified as either 'financial liabilities at fair value through profit or loss' or 'other financial liabilities'. Financial liabilities are subsequently measured at amortized cost using the effective interest method or at fair value through profit or loss.

Financial liabilities are classified as at fair value through profit or loss when the financial liability is held for trading such as a derivative, except for a designated and effective hedging instrument, or if upon initial recognition it is thus designated to eliminate or significantly reduce measurement or recognition inconsistency or it forms part of a contract containing one or more embedded derivatives and the contract is designated as fair value through profit or loss.

Financial liabilities at fair value through profit or loss are stated at fair value. Any gains or losses arising of held for trading financial liabilities are recognized in profit or loss. Such gains or losses incorporate any interest paid and are included in the "other gains and losses" line item.

Other financial liabilities (including borrowing and trade and other payables) are subsequently measured at amortized cost using the effective interest method.

The effective interest method is a method of calculating the amortized cost of a financial liability and of allocating interest expense over the relevant period. The effective interest rate is the rate that exactly discounts estimated future cash payments (including all fees and points paid or received that form an integral part of the effective interest rate, transaction costs and other premiums or discounts) through the expected life of the financial liability, or (where appropriate) a shorter period, to the net carrying amount on initial recognition.

A financial liability is derecognized only when the obligation is extinguished, that is, when the obligation is discharged or cancelled or expires. Changes in liabilities fair value that are reported in profit or loss are included in the statement of profit and loss within finance costs or finance income.

Financial assets and financial liabilities are offset and the net amount is reported in the balance sheet when, and only when, there is a legally enforceable right to offset the recognized amount and there is intention either to settle on net basis or to realize the assets and to settle the liabilities simultaneously.

**m.    Taxes**

Taxation on profit and loss comprises current tax and deferred tax. Tax is recognized in the statement of profit and loss except to the extent that it relates to items recognized directly in equity or other comprehensive income in which case tax impact is also recognized in equity or other comprehensive income.

**STANDALONE FINANCIAL STATEMENTS**

Current tax is provided at amounts expected to be paid (or recovered) using the tax rates and laws that have been enacted or substantively enacted at the balance sheet date along with any adjustment relating to tax payable in previous years.

Deferred income tax is provided in full, using the liability method, on temporary differences arising between the tax bases of assets and liabilities and their carrying amounts in the financial statements. Deferred income tax is provided at amounts expected to be paid (or recovered) using the tax rates and laws that have been enacted or substantively enacted at the balance sheet date and are expected to apply when the related deferred income tax asset is realized or the deferred income tax liability is settled.

Deferred tax is not recognized for all taxable temporary differences between the carrying amount and tax bases of investments in subsidiaries, branches and associates and interest in joint arrangements where it is probable that the differences will not reverse in the foreseeable future.

Deferred tax assets and deferred tax liabilities are offset when there is a legally enforceable right to set off assets against liabilities representing current tax and where the deferred tax assets and the deferred tax liabilities relate to taxes on income levied by the same governing taxation laws.

Minimum alternate tax (MAT) paid in a year is charged to the Statement of Profit and Loss as current tax. MAT credit entitlement is recognised as a deferred tax asset only when and to the extent there is convincing evidence that the Company will pay normal income tax during the specified period, which is the period for which MAT credit is allowed to be carried forward. Such asset is reviewed at each Balance Sheet date and the carrying amount of the MAT credit asset is written down to the extent there is no longer a convincing evidence to the effect that the Company will pay normal income tax during the specified period.

The carrying amount of deferred tax assets is reviewed at each reporting date and reduced to the extent that it is no longer probable that sufficient taxable profit will be available to utilize all or part of the deferred tax asset. Unrecognized deferred tax assets are re-assessed at each reporting date and are recognized to the extent that it has become probable that future taxable profits will available to utilize the deferred tax asset.

**n.    Earnings per share**

Basic EPS is computed by dividing net profit after taxes for the year by weighted average number of equity shares outstanding during the financial year, adjusted for bonus share elements in equity shares issued during the year and excluding treasury shares, if any.

Diluted earnings per share adjusts the figures used in the determination of basic earnings per share to take into account the after income tax effect of interest and other financing costs associated with dilutive potential equity shares and the weighted average number of additional equity shares that would have been outstanding assuming the conversion of all dilutive potential equity shares.

**o.    Cash and cash equivalents**

Cash and cash equivalents include cash in hand, deposits held at call with banks, other short term highly liquid investments which are readily convertible into known amounts of cash and are subject to insignificant risk of changes in value. Bank overdrafts are shown within borrowings in current liabilities on the balance sheet.

Deposits held with banks as security for overdraft facilities are included in restricted deposits held with bank.

**p.    Segment reporting**

Ind-AS 108 Operating Segments ("Ind-AS 108") requires operating segments to be identified on the same basis as is used internally for the review of performance and allocation of resources by the Chief Operating Decision Maker. The revenues of films are earned over various formats; all such formats are functional activities of filmed entertainment and these activities take place on an integrated basis. The management team reviews the financial information on an integrated basis for the Company as a whole, with respective heads of business for each region and in accordance with Ind-AS 108, the Company provides a geographical split as it considers that all activities fall within one segment of business which is filmed entertainment. The management team also monitors performance separately for individual films or for at least 12 months after the theatrical release.

The Company has identified three geographic markets: India, UAE and Rest of the world.

**q.    Statement of cash flows**

Cash flows are reported using the indirect method, whereby profit before tax is adjusted for the effects of transactions of a non-cash nature, any deferrals or accruals of past or future operating cash receipts or payments and item of income or expenses associated with investing or financing cash flows. The cash flows from operating, investing and financing activities of the Company are segregated.

**r.    Dividends**

The Company recognises a liability for dividends to equity holders of the Company when the dividend is authorized and the dividend is no longer at the discretion of the Company. As per the corporate laws in India, a dividend is authorised when it is approved by the shareholders. A corresponding amount is recognised directly in equity.

**s.    Event occurring after the reporting date**

Adjusting events (that provides evidence of condition that existed at the balance sheet date) occurring after the balance sheet date are recognized in the financial statements. Material non-adjusting events (that are inductive of conditions that arose subsequent to the balance sheet date) occurring after the balance sheet date that represents material change and commitment affecting the financial position are disclosed in the Directors' Report.

**t.    Standards Issued but not yet Effective**

Ministry of Corporate Affairs ("MCA") through Companies (Indian Accounting Standards) Amendment Rules, 2019 and Companies (Indian Accounting Standards) Second Amendment Rules, has notified the following new and amendments to Ind AS which the Company has not applied as they are effective from 1 April 2019:

**Ind AS 116 – Leases**

Ind AS 116 will replace the existing leasing standard i.e. Ind AS 17 and related interpretations. Ind AS 116 introduces a single lessee accounting model and requires lessee to recognize assets and liabilities for all leases with non-cancellable period of more than twelve months except for low value assets. Ind AS 116 substantially carries forward the lessor accounting requirements in Ind AS 17. The Company does not expect any significant impact of the amendment on its financial statements.

**Ind AS 12 – Income taxes (amendments relating to income tax consequences of dividend and uncertainty over income tax treatments)**

The amendment relating to income tax consequences of dividend clarify that an entity shall recognise the income tax consequences of dividends in profit or loss, other comprehensive income or equity according to where the entity originally recognised those past transactions or events. The Company does not expect any impact from this pronouncement. It is relevant to note that the amendment does not amend situations where the entity pays a tax on dividend which is effectively a portion of dividends paid to taxation authorities on behalf of shareholders. Such amount paid or payable to taxation authorities continues to be charged to equity as part of dividend, in accordance with Ind AS 12.

The amendment to Appendix C of Ind AS 12 specifies that the amendment is to be applied to the determination of taxable profit (tax loss), tax bases, unused tax losses, unused tax credits and tax rates, when there is uncertainty over income tax treatments under Ind AS 12. It outlines the following: (1) the entity has to use judgement, to determine whether each tax treatment should be considered separately or whether some can be considered together. The decision should be based on the approach which provides better predictions of the resolution of the uncertainty (2) the entity is to assume that the taxation authority will have full knowledge of all relevant information while examining any amount (3) entity has to consider the probability of the relevant taxation authority accepting the tax treatment and the determination of taxable profit (tax loss), tax bases, unused tax losses, unused tax credits and tax rates would depend upon the probability. The Company does not expect any significant impact of the amendment on its financial statements.

### Ind AS 109 – Prepayment Features with Negative Compensation

The amendments relate to the existing requirements in Ind AS 109 regarding termination rights in order to allow measurement at amortised cost (or, depending on the business model, at fair value through other comprehensive income) even in the case of negative compensation payments. The Company does not expect this amendment to have any impact on its financial statements.

### Ind AS 19 – Plan Amendment, Curtailment or Settlement

The amendments clarify that if a plan amendment, curtailment or settlement occurs, it is mandatory that the current service cost and the net interest for the period after the re-measurement are determined using the assumptions used for the re-measurement. In addition, amendments have been included to clarify the effect of a plan amendment, curtailment or settlement on the requirements regarding the asset ceiling. The Company does not expect this amendment to have any significant impact on its financial statements.

### Ind AS 23 – Borrowing Costs

The amendments clarify that if any specific borrowing remains outstanding after the related asset is ready for its intended use or sale, that borrowing becomes part of the funds that an entity borrows generally when calculating the capitalisation rate on general borrowings. The Company does not expect any impact from this amendment.

### Ind AS 28 – Long-term Interests in Associates and Joint Ventures

The amendments clarify that an entity applies Ind AS 109 Financial Instruments, to long-term interests in an associate or joint venture that form part of the net investment in the associate or joint venture but to which the equity method is not applied. The Company does not currently have any long-term interests in associates and joint ventures.

### Ind AS 103 – Business Combinations and Ind AS 111 – Joint Arrangements

The amendments to Ind AS 103 relating to re-measurement clarify that when an entity obtains control of a business that is a joint operation, it re-measures previously held interests in that business. The amendments to Ind AS 111 clarify that when an entity obtains joint control of a business that is a joint operation, the entity does not remeasure previously held interests in that business. The Company will apply the pronouncement if and when it obtains control /joint control of a business that is a joint operation.

## 2. Significant accounting judgements estimates and assumptions

The preparation of the financial statements requires management to make judgements, estimates and assumptions, as described below, that affect the reported amounts and the disclosures. The Company based its assumptions and estimates on parameters available when the financial statements were prepared and reviewed at each balance sheet date. Uncertainty about these assumptions and estimates could result in outcomes that may require a material adjustment to the reported amounts and disclosures.

### a. Intangible Assets

The Company is required to identify and assess the useful life of intangible assets and determine their income generating life. Judgment is required in determining this and then providing an amortization rate to match this life as well as considering the recoverability or conversion of advances made in respect of securing film content or the services of talent associated with film production.

Accounting for the film content requires Management's judgment as it relates to total revenues to be received and costs to be incurred throughout the life of each film or its license period, whichever is the shorter. These judgments are used to determine the amortization of capitalized film content costs. The Company uses a stepped method of amortization on first release film content writing off more in year one which recognizes initial income flows and then the balance over a period of up to nine years. In the case of film content that is acquired by the Company after its initial exploitation, commonly referred to as Library, amortization is spread evenly over the lesser of 10 years or the license period. Management's policy is based upon factors such as historical performance of similar films, the star power of the lead actors and actresses and others. Management regularly reviews, and revises when necessary, its estimates, which may result in a change in the rate of amortization and/or a write down of the asset to the recoverable amount.

Intangible assets are tested for impairment in accordance with the accounting policy. These calculations require judgments and estimates to be made, and in the event of an unforeseen event these judgments and assumptions would need to be revised and the value of the intangible assets could be affected. There may be instances where the useful life of an asset is shortened to reflect the uncertainty of its estimated income generating life.

### b. Employee benefit plans

The cost of the employment benefit plans and their present value are determined using actuarial valuations which involves making various assumptions that may differ from actual developments in the future. For further details refer to Note 41.

### c. Fair value measurement of ESOP Liability

The fair value of ESOP Liability is determined using valuation methods which involves making various assumptions that may differ from actual developments in the future. For further details refer Note 41.

### d. Trade receivable

Judgements are required in assessing the recoverability of overdue trade receivables and determining whether a provision against those receivables is required. Factors considered include the amount and timing of anticipated future payments and any possible actions that can be taken to mitigate the risk of non-payment.

### e. Depreciation

Property, plant and equipment are depreciated over the estimated useful lives of the assets, after taking into account their estimated residual value. Management reviews the estimated useful lives and residual values of the assets annually in order to determine the amount of depreciation to be recorded during any reporting period. The useful lives and residual values are based on the Company's historical experience with similar assets and take into account anticipated technological changes. The depreciation for future periods is adjusted if there are significant changes from previous estimates.

**STANDALONE FINANCIAL STATEMENTS**

**f.    Impairment of non-financial assets**

In assessing impairment, management estimates the recoverable amount of each asset or cash-generating unit based on expected future cash flows and uses an interest rate to discount them. Estimation uncertainty relates to assumptions about future operating results and the determination of a suitable discount rate.

**g.    Provisions**

Provisions and liabilities are recognized in the period when it becomes probable that there will be a future outflow of funds resulting from past operations or events and the amount of cash outflow can be reliably estimated. The timing of recognition and quantification of the liability require the application of judgment to existing facts and circumstances, which can be subject to change. Since the cash outflows can take place many years in the future, the carrying amounts of provisions and liabilities are reviewed regularly and adjusted to take account of changing facts and circumstances.

**h.    Fair value measurement**

Management uses valuation techniques to determine the fair value of financial instruments (where active market quotes are not available) and non-financial assets. This involves developing estimates and assumptions consistent with how market participants would price the instrument. Management bases its assumptions on observable data as far as possible, but this is not always available. In that case management uses the best information available. Estimated fair values may vary from the actual prices that would be achieved in an arm's length transaction at the reporting date.

# Notes
**to the standalone financial statements and other explanatory information**

### 3    Property, plant and equipment

Details of the Company's property, plant and equipment and their carrying amounts are as follows:                            Amount ₹ in lakhs

| Gross carrying amount | Buildings | Leasehold improvements | Furniture and fixtures | Motor vehicles | Office equipment | Data processing equipment | Studio equipment | Leasehold assets | Capital work in progress | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Balance as at 1 April 2017** | **3,317** | **258** | **274** | **296** | **163** | **377** | **287** | **-** | **13** | **4,985** |
| Additions | - | 114 | - | 272 | 7 | 5 | - | - | 114 | 512 |
| Adjustments/ disposals | - | - | 0 | (88) | 0 | (8) | - | - | (7) | (103) |
| Capitalized during the year | - | - | - | - | - | - | - | - | (114) | (114) |
| **Balance as at 31 March 2018** | **3,317** | **372** | **274** | **480** | **170** | **374** | **287** | **-** | **6** | **5,280** |
| Additions | - | 71 | 1 | - | 26 | 19 | - | 169 | 71 | 357 |
| Adjustments/ disposals | - | - | - | - | - | (3) | - | - | - | (3) |
| Capitalized during the year | - | - | - | - | - | - | - | - | (71) | (71) |
| **Balance as at 31 March 2019** | **3,317** | **443** | **275** | **480** | **196** | **390** | **287** | **169** | **6** | **5,563** |
| **Accumulated depreciation** | | | | | | | | | | |
| **Balance as at 1 April 2017** | **314** | **33** | **116** | **102** | **54** | **249** | **151** | **-** | **-** | **1,019** |
| Depreciation charge | 146 | 174 | 49 | 71 | 50 | 76 | 40 | - | - | 606 |
| Adjustments/ disposals | - | (0) | (0) | (83) | 0 | (8) | - | - | - | (91) |
| **Balance as at 31 March 2018** | **460** | **207** | **165** | **90** | **104** | **317** | **191** | **-** | **-** | **1,534** |
| Depreciation charge | 139 | 116 | 33 | 122 | 37 | 28 | 28 | 30 | - | 533 |
| Adjustments/ disposals | - | - | - | - | - | (3) | - | - | - | (3) |
| **Balance as at 31 March 2019** | **599** | **323** | **198** | **212** | **141** | **342** | **219** | **30** | **-** | **2,064** |
| **Net carrying amount** | | | | | | | | | | |
| **Balance as at 31 March 2018** | **2,857** | **165** | **109** | **390** | **66** | **57** | **96** | **-** | **6** | **3,746** |
| **Balance as at 31 March 2019** | **2,718** | **120** | **77** | **268** | **55** | **48** | **68** | **139** | **6** | **3,499** |

1. The Company's immovable property situated in Mumbai, India is pledged against the borrowings as explained in note 19 and 25

2. The Company has used Indian GAAP carrying value of its Property, plant and equipment on date of transition as deemed cost, accordingly , the net carrying amount as per Indian GAAP as on 1 April 2015 has been considered as gross carrying amount under Ind AS 101. Details of accumulated depreciation as on 1 April 2015 are as under:-

Amount ₹ in lakhs

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Accumulated depreciation as on 1 April 2015** | **791** | **-** | **426** | **191** | **95** | **435** | **1,220** | **-** | **3,158** |

STANDALONE FINANCIAL STATEMENTS

## Notes
**to the standalone financial statements and other explanatory information**

**4    Intangible assets**

Details of the Company's Intangible assets and their carrying amounts are as follows:        Amount ₹ in lakhs

| Gross carrying amount | Content advances | Film rights | Other intangible assets | Total |
|---|---|---|---|---|
| **Balance as at 1 April 2017** | 1,19,967 | 1,77,894 | 72 | 1,77,966 |
| Additions | 39,442 | 10,936 | - | 10,936 |
| Transfer to film and content rights | (21,773) | - | - | - |
| Amount written off | (228) | - | - | - |
| Provision for doubtful advances | - | - | - | - |
| **Balance as at 31 March 2018** | **1,37,408** | **1,88,830** | **72** | **1,88,902** |
| Additions | 39,878 | 14,132 | - | 14,132 |
| Transfer to film and content rights | (28,938) | - | - | - |
| Amount written off | (2,226) | - | - | - |
| Provision for doubtful advances | (1,687) | - | - | - |
| **Balance as at 31 March 2019** | **1,44,435** | **2,02,962** | **72** | **2,03,034** |
| **Accumulated amortization** | | | | |
| **Balance as at 1 April 2017** | | 89,151 | 38 | 89,189 |
| Amortization charge | | 22,364 | 8 | 22,372 |
| **Balance as at 31 March 2018** | | **1,11,515** | **46** | **1,11,561** |
| Amortization charge | | 24,473 | 6 | 24,479 |
| **Balance as at 31 March 2019** | | **1,35,988** | **52** | **1,36,040** |
| **Net carrying amount** | | | | |
| Balance as at 31 March 2018 | 1,37,408 | 77,315 | 26 | 77,341 |
| **Balance as at 31 March 2019** | **1,44,435** | **66,974** | **20** | **66,994** |

1.  The Company has used Indian GAAP carrying value of its intangible assets on date of transition as deemed cost, accordingly, the net carrying amount as per Indian GAAP as on 1 April 2015 has been considered as gross carrying amount under Ind AS 101. Details of accumulated amortization as on 1 April 2015 are as under:-

| Accumulated amortization as on 1 April 2015 | 223,210 | 119 | 223,329 |
|---|---|---|---|

**5    Investments**        Amount ₹ in lakhs

| | | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|---|
| **A** | **Non current investments** | | |
| | Unquoted equity shares | | |
| | **i) Investment in equity shares of subsidiaries accounted at cost** | | |
| | **Eros International Films Private Limited** | | |
| | 19,930,300 (31 March 2018 : 19,930,300) equity shares of ₹ 10 each, fully paid-up | 1,993 | 1,993 |
| | **Eros Animation Private Limited** | | |
| | 9,300 (31 March 2018 : 9,300) equity shares of ₹ 10 each, fully paid-up | 1 | 1 |
| | **Copsale Limited** | | |
| | 105,000 (31 March 2018 : 105,000) equity shares of USD 1 each, fully paid-up | 45 | 45 |
| | **Big Screen Entertainment Private Limited** | | |
| | 6,400 (31 March 2018 : 6,400) equity shares of ₹ 10 each, fully paid-up | 1 | 1 |
| | **EyeQube Studios Private Limited** | | |
| | 9,999 (31 March 2018 : 9,999) equity shares of ₹ 10 each, fully paid-up | 1 | 1 |
| | **EM Publishing Private Limited** | | |
| | 9,900 (31 March 2018 : 9,900) equity shares of ₹ 10 each, fully paid-up | 1 | 1 |

# Notes
**to the standalone financial statements and other explanatory information**

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Digicine PTE Limited** | | |
| 100 (31 March 2018 : 100) equity shares of USD 1 each, fully paid-up | 0 | 0 |
| **Colour Yellow Productions Private Limited** | | |
| 5,000 (31 March 2018 : 5,000) equity shares of ₹ 10 each, fully paid-up | 1 | 1 |
| **ii) Investment in equity shares of subsidiaries measured at fair value through profit and loss** | | |
| **Universal Power Systems Private Limited**# | 5,530 | 5,492 |
| 1,000 (31 March 2018 : 1,000) equity shares of ₹ 100 each, fully paid-up | | |
| Less: Provision for impairment in the value of investment | (2,754) | (2,032) |
| **Total** | **4,819** | **5,503** |

*amount represents less than ₹ one lakh

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Aggregate value of unquoted investments | 7,573 | 7,535 |
| Aggregate value of impairment in the value of investment | 2,754 | 2,032 |

# Increase in value of investment is due to ESOP benefits provided to subsidiary

## 6    Loans and advances
Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Unsecured considered good,unless otherwise stated | | |
| Amounts due from related parties (refer note 43) | 39 | 39 |
| Other loans and advances | | |
| Considered good | 1,632 | 1,682 |
| **Total** | **1,671** | **1,721** |

## 7    Restricted bank deposits
Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Bank deposits with maturity of more than twelve months* | 511 | 716 |
| **Total** | **511** | **716** |

* Given as securities to bank for margin

## 8    Other financial assets
Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Unsecured and considered good | | |
| Security deposits to | | |
| - Related parties (refer note 43) | 582 | 617 |
| - Others | 61 | 55 |
| **Total** | **643** | **672** |

STANDALONE FINANCIAL STATEMENTS

# Notes
**to the standalone financial statements and other explanatory information**

**9    Other non- current assets**                                    Amount ₹ in lakhs

|  | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| (a) Advance payment of income taxes (net of provision) | 177 | 177 |
| (b) Balances due with statutory authorities | 4,077 | 2,774 |
| **Total** | **4,254** | **2,951** |

**10    Inventories**                                                 Amount ₹ in lakhs

|  | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| VCD/ DVD/ Audio CDs | - | 9 |
| Film rights | 301 | 178 |
| **Total** | **301** | **187** |

**11    Trade receivables**                                           Amount ₹ in lakhs

|  | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Secured, considered good | 1,327 | 1,327 |
| Unsecured, considered good | 55,703 | 34,035 |
| Dues from related parties (refer note 43) | 16,604 | 8,791 |
| Unbilled Income | 1,322 | 290 |
|  | 74,956 | 44,443 |
| Less : Expected credit loss | (8,361) | (419) |
| **Total** | **66,595** | **44,024** |

All amounts are short-term. The net carrying value of trade receivables is considered a reasonable approximation of fair value.

All accounts receivable are pledged against borrowing which are shown under note 19 and 25.

**12    Cash and cash equivalents**                                   Amount ₹ in lakhs

|  | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| a. Cash on hand | 47 | 7 |
| b. Cheques on hand | - | 5 |
| c. Balances with banks |  |  |
|    In current account | 221 | 373 |
| **Total** | **268** | **385** |

**13    Restricted bank deposits**                                    Amount ₹ in lakhs

|  | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Unclaimed dividend account | 1 | 1 |
| Margin money accounts with:* |  |  |
|    maturity less than 12 months | 5,981 | 3,775 |
|    maturity more than twelve months | 511 | 716 |
|  | 6,493 | 4,492 |
| Less: disclosed under non current financial assets - Restricted deposits (refer note 7) | (511) | (716) |
| **Total** | **5,982** | **3,776** |

* Given as securities to bank for margin

## Notes
to the standalone financial statements and other explanatory information

**14  Loans and advances**  Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Unsecured and considered good | | |
| Amounts due from related parties (refer note 43) | 124 | 2,662 |
| Loans and advances to employees | 76 | 146 |
| Other loans | 1,272 | 392 |
| Security deposits | 9 | 5 |
| **Total** | **1,481** | **3,205** |

**15  Other financial assets**  Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Accrued interest on fixed deposits | 228 | 110 |
| Forward contract assets | - | 184 |
| **Total** | **228** | **294** |

**16  Other current assets**  Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Prepaid expenses | 243 | 55 |
| **Total** | **243** | **55** |

**17  Equity share capital**  ₹ in lakhs, except share data

| | As at 31 March 2019 | | As at 31 March 2018 | |
|---|---|---|---|---|
| | Number | Amount | Number | Amount |
| **Authorised share capital** | | | | |
| Equity shares of ₹ 10 each | 125,000,000 | 12,500 | 125,000,000 | 12,500 |
| | **125,000,000** | **12,500** | **125,000,000** | **12,500** |
| **Issued, subscribed and fully paid- up** | | | | |
| Equity shares of ₹ 10 each | 95,508,140 | 9,551 | 94,971,877 | 9,497 |
| **Total** | **95,508,140** | **9,551** | **94,971,877** | **9,497** |

**a)  Reconciliation of paid- up share capital (Equity Shares)**  ₹ in lakhs, except share data

| | As at 31 March 2019 | | As at 31 March 2018 | |
|---|---|---|---|---|
| | Number | Amount | Number | Amount |
| Balance at the beginning of the year | 94,971,877 | 9,497 | 93,858,717 | 9,385 |
| Add: Issued on exercise of employee share options | 536,263 | 54 | 1,113,160 | 112 |
| **Balance at the end of the year** | **95,508,140** | **9,551** | **94,971,877** | **9,497** |

During the year, the Company has issued total 5,36,263 equity shares (2018: 11,13,160 ) on exercise of options granted under the employees stock option plan (ESOP) wherein part consideration was received in the form of employees services.

**b)  Shares held by holding company, ultimate holding company, subsidiaries / associates of holding company or ultimate holding company**  ₹ in lakhs, except share data

| | As at 31 March 2019 | | As at 31 March 2018 | |
|---|---|---|---|---|
| | Number | Amount | Number | Amount |
| Equity shares of ₹ 10 each | | | | |
| Eros Worldwide FZ LLC - Holding company | 37,877,302 | 3,788 | 35,409,440 | 3,541 |
| Eros Digital Private Limited - Fellow subsidiary | 21,700,000 | 2,170 | 21,700,000 | 2,170 |

STANDALONE FINANCIAL STATEMENTS

# Notes
## to the standalone financial statements and other explanatory information

c)   **Details of Shareholders holding more than 5% of the shares in the Company**    ₹ in lakhs, except share data

| | As at 31 March 2019 | | As at 31 March 2018 | |
|---|---|---|---|---|
| | Number | % holding in the class | Number | % holding in the class |
| Equity shares of ₹ 10 each | | | | |
| Eros Worldwide FZ LLC - Holding company | 37,877,302 | 39.66% | 35,409,440 | 37.28% |
| Eros Digital Private Limited - Fellow subsidiary | 21,700,000 | 22.72% | 21,700,000 | 22.85% |

d)   **Details of employee stock options issued during the last 5 years**

During the period of five years immediately preceding the reporting date, the Company has issued total 26,33,980 equity shares (2018: 21,49,567) on exercise of options granted under the employees stock option plan (ESOP) wherein part consideration was received in the form of employee services.

e)   **Details of equity share issued for consideration other than cash during the last 5 years**

During the period of five years immediately preceding the reporting date, the Company has issued total 900,970 equity shares (31 March 2017: 900,970) to the shareholders of Universal Power Systems Private Limited at a premium of ₹ 586 per share in exchange for the entire shareholding of Universal Power Systems Private Limited.

f)   **Rights, preferences, restrictions of equity shares**

The Company has only one class of equity shares having par value of ₹ 10 per share. Every holder is entitled to one vote per share. The dividend, if any, proposed by the Board of Directors and approved by the Shareholders in the Annual General Meeting is paid in Indian rupees.

In the event of liquidation of the Company, the holders of equity shares will be entitled to receive remaining assets of the Company, after distribution of all preferential amounts. The distribution will be in proportion to the number of equity shares held by the shareholders.

**18   Other equity**    Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Securities premium** | | |
| Balance at the beginning of the year | 40,498 | 38,141 |
| Add : Shares issued on employee stock options exercised during the year | - | 247 |
| Add : Transfer from share option outstanding account | 1,049 | 2,110 |
| **Balance at the end of the year** | **41,547** | **40,498** |
| **Share options outstanding account** | | |
| Balance at the beginning of the year | 1,577 | 2,645 |
| Less: Transfer to securities premium account | (1049) | (2,110) |
| Add: Employee stock option compensation expense | 761 | 834 |
| Add: Employee stock option compensation expense to employee's of fellow subsidiary | 18 | 28 |
| Add: Employee stock option compensation expense to employee's of subsidiary | 37 | 180 |
| **Balance at the end of the year** | **1,344** | **1,577** |
| **General reserve** | | |
| **Balance at the beginning of the year** | 526 | 526 |
| Add: Additions during the year | - | - |
| **Balance at the end of the year** | **526** | **526** |
| **Retained earnings** | | |
| **Balance at the beginning of the year** | | |
| Add: Net profit after tax for the year | 92,055 | 84,354 |
| Balance at the end of the year | 8,736 | 7,701 |
| **Balance at the end of the year** | **100,791** | **92,055** |
| **Other comprehensive income** | | |
| Balance at the beginning of the year | 46 | (10) |
| Acturial gain / (loss) on employee benefit plans through OCI | 40 | 56 |
| **Balance at the end of the year** | **86** | **46** |
| **Total** | **144,294** | **134,702** |

# Notes
**to the standalone financial statements and other explanatory information**

1) Securities Premium Reserve: The amount received in excess of face value of the equity shares is recognized in Securities Premium Reserve.

2) General Reserve: General Reserve was created by transferring a portion of the net profit of the Company as per the requirements of the Companies Act, 2013.

3) Retained Earnings: Remaining portion of profits earned by the Company till date after appropriations.

**19    Long-term borrowings**                                                                     Amount ₹ in lakhs

|  | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Secured-at amortised cost** | | |
| Term loan from banks* | 9,721 | 15,761 |
| Car loans ** | 198 | 330 |
| Others*** | 142 | - |
| **Unsecured** | | |
| Term loan from others# | **3,887** | **6,240** |
| | **13,948** | **22,331** |
| Less: Cumulative effect of unamortised cost | (71) | (196) |
| Less: Current maturities disclosed under other current financial liabilities (refer note 27) | (5,179) | (7,194) |
| **Total** | **8,698** | **14,941** |

\* Term loans from banks carry an interest rate between 12% - 14% are secured by pari passu first charge on the DVD/ satellite rights acquired for the domestic market, actionable claims, revenue and receivables arising on sales of the rights and negatives of films. Term loans are further secured by equitable mortgage of Company's immovable properties situated at Mumbai (India), amounts held as margin money,corporate guarantee of Eros International PLC (the ultimate holding Company), residual value of equipments and vehicles and existing rights of hindi films with nil book value.

\*\* Car loans are secured by hypothecation of vehicles acquired there against, carrying rate of interest of 7.48%-9.50% which are repayable as per maturity profile set out below.

\*\*\* Other loans are secured by hypothecation of assets acquired there against, carrying rate of interest of 10.50%-11.50% which are repayable as per maturity profile set out below.

\# Term loan from others carry an interest rate of 15% - 16% are secured against the pledge of Company's shares held by holding company, current assets of a subsidiary company and corporate guarantee of holding company and subsidiary company.

Maturity profile of long term borrowing is set out below:-                                         Amount ₹ in lakhs

|  | Less than 1 year | 1-3 years | 3-5 years |
|---|---|---|---|
| **Secured** | | | |
| Term loan from banks | 5,014 | 4,707 | - |
| Car loan | 112 | 86 | - |
| Others | 53 | 89 | |
| **Unsecured** | | | |
| Term loan from others | - | 3,287 | 600 |
| **Total** | **5,179** | **8,169** | **600** |

| Default in repayment as on 31 March 2019 | Period of delay | Principal due | Interest due |
|---|---|---|---|
| Term loan from others | 26-53 days | 283 | 161 |
| Car loan | - | - | - |
| Others | - | - | - |
| **Total** | **-** | **283** | **161** |

STANDALONE FINANCIAL STATEMENTS

# Notes
**to the standalone financial statements and other explanatory information**

### 20 Trade payable - non current

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| Payable to related parties (refer note 43) | 108 | 102 |
| **Total** | **108** | **102** |

### 21 Other financial liabilities

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| Security deposits | 25 | - |
| **Total** | **25** | **-** |

### 22 Employee benefit obligations - non current

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| Provision for gratuity (refer note 41) | 378 | 425 |
| **Total** | **378** | **425** |

### 23 Deferred tax liabilities (net)

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| **Deferred tax liability on** | | |
| Depreciation on tangible assets | 77 | 107 |
| Amortization of intangible assets | 23,224 | 26,795 |
| **Total** | **23,301** | **26,902** |
| **Deferred tax asset on** | | |
| Provision for expenses allowed on payment basis | 981 | 971 |
| Provision for doubtful debts | 2,922 | 146 |
| Provision for doubtful advances | 589 | - |
| Others | 51 | 53 |
| MAT credit recoverable | - | 511 |
| **Total** | **4,543** | **1,681** |
| **Deferred tax liabilities (net)** | **18,758** | **25,221** |

**Reconciliation of statutory rate of tax and effective rate of tax**

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| Profit before tax | 13,677 | 14,043 |
| Tax expense | 4,941 | 6,342 |
| **Tax rate as a % of profit before tax** | **36.13%** | **45.16%** |
| **Adjustments** | | |
| Non-deductible expenses for tax purposes | -3.35% | -2.19% |
| Effect of change in deferred tax balances due to change in tax rates | 0% | -1.76% |
| Tax impact of earlier years | 4.37% | -2.88% |
| Effect of unrecognized deferred tax assets | -1.84% | -3.65% |
| Others | -0.37% | -0.07% |
| **At India's statutory income tax rate of 34.94% (Previous year: 34.61%)** | **34.94%** | **34.61%** |

### 24 Other non-current liabilities

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| Deferred revenue | 10,050 | 1,512 |
| **Total** | **10,050** | **1,512** |

# Notes
**to the standalone financial statements and other explanatory information**

## 25  Short-term borrowings

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Repayable on demand** | | |
| **Secured** | | |
| From banks | 38,605 | 38,813 |
| **Unsecured** | | |
| From others* | 2,400 | 4,000 |
| From related parties (refer note 43) | 5,791 | 5,808 |
| **Total** | **46,796** | **48,621** |

Secured short term borrowings include:

Cash credit carry an interest rate between 10% - 13% , secured by way of hypothecation of inventories and receivables relating to domestic rights operations on pari passu basis.

Bills discounted carry an interest rate between 10% - 11% for ₹ bills and LIBOR +3.5% for USD bills, secured by document of title to goods and accepted hundis with first pari passu charge on current assets.

Packing credit carry an interest rate between 10% - 11% for ₹ and LIBOR +3.5% for USD, secured by hypothecation of films and film rights with first pari passu charge on current assets.

Short term borrowings are further secured by equitable mortgage of Company's immovable properties situated at Mumbai (India), amount held in margin money, corporate guarantee of Eros International Plc (the ultimate holding company),residual value of equipments and existing rights of hindi films with nil book value.

*Loan from others carry an interest rate between 14% - 15% , secured by security provided by holding company.

## 26  Acceptances

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Payable under the film financing arrangements | 5,796 | 5,796 |
| **Total** | **5,796** | **5,796** |

Acceptances comprise of credit availed from banks for payment to film producers for film co-production arrangement entered by the group. The carrying value of acceptances are considered a reasonable approximation of fair value.

## 27  Other financial liabilities

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Current maturities of long term borrowings (refer note 19) | 5,179 | 7,194 |
| Interest accrued but not due | 135 | 294 |
| Interest accrued and due | 161 | - |
| Unclaimed dividend* | 1 | 1 |
| Employee dues | 609 | 364 |
| Other payables | 526 | 394 |
| Other payable to related party (refer note 43 ) | 252 | 274 |
| Forward contract liabilities | 430 | - |
| **Total** | **7,293** | **8,521** |

* Does not include any amount due and outstanding to be credited to Investor Education and Protection Fund.

## 28  Employee benefit obligations - current

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Gratuity | 111 | 53 |
| Compensated absences | 248 | 159 |
| **Total** | **359** | **212** |

STANDALONE FINANCIAL STATEMENTS

## Notes
**to the standalone financial statements and other explanatory information**

**29  Current tax liabilities**                                                        Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Provision for corporate taxes (net) | 11,235 | 3,506 |
| **Total** | **11,235** | **3,506** |

**30  Other current liabilities**                                                      Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Advance from customers- related parties (refer note 43) | 14,049 | 3,457 |
| Advances from customers- others | 906 | 1,145 |
| Deferred revenue | 781 | 2,449 |
| Duties and taxes payable | 7,130 | 6,251 |
| **Total** | **22,866** | **13,302** |

**31  Revenue from operations (net)**                                                  Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| Revenue from distribution and exhibition of film and other rights | 83,560 | 70,678 |
| Revenue from services | 4 | 88 |
| **Total** | **83,564** | **70,766** |

**32  Other income**                                                                   Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| Sundry balances written back | 45 | 69 |
| Interest income on advances | 42 | 499 |
| Unwinding of interest on expected credit loss | - | 409 |
| Other non-operating income | 1,710 | 1,104 |
| Gain on sale of tangible assets (net) | 1 | - |
| Bad debts recovered | - | 10 |
| Income from export incentives | 1,618 | - |
| **Total** | **3,416** | **2,091** |

**33  Film right cost including amortization costs**                                   Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| Amortization of film rights (refer note 4) | 24,473 | 22,364 |
| Film rights cost | 14,805 | 10,837 |
| **Total** | **39,278** | **33,201** |

**34  Changes in inventories of film rights**                                          Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| Opening stock | | |
| - Finished goods | 187 | 45 |
| | 187 | 45 |
| Closing stock | | |
| - Finished goods | 301 | 187 |
| | 301 | 187 |
| **Total** | **(114)** | **(142)** |

# Notes
**to the standalone financial statements and other explanatory information**

**35  Employee benefits expense**                                Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| Salaries and bonus | 3,012 | 3,328 |
| Contribution to provident and other funds (refer note 41) | 167 | 184 |
| Gratuity expense (refer note 41) | 117 | 196 |
| Employee stock option compensation (refer note 41) | 761 | 834 |
| Staff welfare expenses | 84 | 83 |
| **Total** | **4,141** | **4,625** |

**36  Finance cost**                                             Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| Interest expense | 9,163 | 7,950 |
| Other borrowing costs | 449 | 399 |
| Interest on late payment of taxes | 1,642 | 1,518 |
| | **11,254** | **9,867** |
| Less: Interest capitalised to film rights | (3,017) | (2,115) |
| Less: Interest income | (334) | (264) |
| **Total** | **7,903** | **7,488** |

The capitalisation rate of interest was 12.12 % (previous year : 10.91 %)

**37  Depreciation and amortization expense**                    Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| Depreciation on tangible assets (refer note 3) | 535 | 607 |
| Amortization on intangible assets (refer note 4) | 4 | 8 |
| **Total** | **539** | **615** |

**38  Other expenses**                                           Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| Print and digital distribution cost | 838 | 1,182 |
| Selling and distribution expenses | 2,670 | 3,491 |
| Processing and other direct cost | 195 | 208 |
| Shipping, packing and forwarding expenses | 69 | 72 |
| Home entertainment products related cost | 0 | 23 |
| Power and fuel | 53 | 53 |
| Rent | 371 | 328 |
| Repairs and maintenance | 120 | 130 |
| Insurance | 29 | 18 |
| Rates and taxes | 35 | 11 |
| Legal and professional | 1,432 | 1,371 |
| Payments to auditors (refer note 47) | 89 | 92 |
| Provision for doubtful receivables | 7,942 | - |
| Provision for doubtful advances (refer note 4 ) | 1,687 | - |
| Communication expenses | 67 | 57 |
| Travelling and conveyance | 283 | 208 |

# Notes
## to the standalone financial statements and other explanatory information

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| Content advances written off (refer note 4) | 2,226 | 228 |
| Advances and deposits written off | 298 | 0 |
| Loss on disposal of fixed assets (net) | - | 1 |
| Trade receivables written off | 1,917 | 3,539 |
| Provision for impairment in the value of investment | 722 | 1,480 |
| Loss on foreign currency transactions and translation (net) | 62 | 68 |
| CSR expenditure (refer note 49) | 20 | 0 |
| Miscellaneous expenses | 431 | 467 |
| **Total** | **21,556** | **13,027** |

**39  Earnings per share**

| | | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|---|
| a) | **Computation of net profit for the year** | | |
| | Net profit after tax attributable to equity shareholders (₹ in lakhs) | 8,736 | 7,701 |
| b) | **Computation of number of shares for Basic Earnings per share** | | |
| | Weighted average number of equity shares | 95,205,870 | 94,524,136 |
| | **Total** | **95,205,870** | **94,524,136** |
| c) | **Computation of number of shares for Diluted Earnings per share** | | |
| | Weighted average number of equity shares used in the calculation of basic earning per share | 95,205,870 | 94,524,136 |
| | Add:- Weighted average potential equity shares (dilutive impact of ESOPs) | 828,067 | 1,342,648 |
| | **Weighted average number of equity shares used in the calculation of diluted earning per share** | **96,033,937** | **95,866,784** |
| d) | **Nominal value of shares** (in ₹) | **10** | **10** |
| e) | **Computation** | | |
| | Basic (in ₹) | 9.18 | 8.15 |
| | Diluted (in ₹) | 9.10 | 8.03 |

**40  Contingent liabilities and commitments (to the extent not provided for)**          Amount ₹ in lakhs

| | | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|---|
| a) | **Contingent liabilities** | | |
| (i) | **Claims against the Company not acknowledged as debt** | | |
| | Sales tax claims disputed by the Company | 717 | 669 |
| | Service tax claim disputed by the Company | 34,506 | 30,811 |
| | Income tax liability that may arise in respect of matters in appeal | 105 | 79 |
| (ii) | **Guarantees** | | |
| | Guarantee given in favour of various government authorities | 35 | 25 |
| | | **35,363** | **31,584** |

# Notes
## to the standalone financial statements and other explanatory information

**Notes:**

1) During the year ended 31 March 2015, the Company received a show cause notice from the Commissioner of Service Tax to show cause why an amount aggregating to ₹ 15,675 lakhs for the period 1 April 2009 to 31 March 2014 should not be levied on and paid by the Company for service tax arising on temporary transfer of copyright services and other matters.

   In connection with the aforementioned matters, on 19 May 2015, the Company received an Order-in-original issued by the Principal Commissioner, Service Tax, wherein the department confirmed the demand of ₹ 15,675 lakhs along with interest and penalty amounting to ₹ 15,675 lakhs resulting into a total demand of ₹ 31,350 lakhs.

   On 3 September 2015, the Company filed an appeal against the said order before the authorities. The Company has paid ₹ 1,000 lakhs under protest. Considering the facts and nature of levies and the ad-interim protection for the period 1 July 2010 to 30 June 2012 granted by the Honorable High Court of Mumbai, the Company expects that the final outcome of this matter will be favourable. Accordingly, based on the assessment made after taking appropriate legal advise, no additional liability has been recorded in the financial statements.

2) Company has received notice for reversal of CENVAT credit for the period 2013-14 to 2015-16 ₹ 187 lakhs and for the period January 2016 to March 2017 ₹ 204 lakhs. Further Company also received notice for Non levy of Service tax on Import of Services for the period 2013-14 to 2015-16 for ₹ 70 lakhs.

3) On 8 October 2018, the Company received a show cause notice from the Commissioner of Service Tax to show cause why an amount aggregating to ₹ 2,695 lakhs for the period 1 April 2014 to 31 March 2015 should not be levied on and paid by the Company for service tax with equal penalty arising on temporary / perpatual transfer of copyright services and other matters.

4) In addition, the Company is liable to pay service tax on use on temporary transfer of copyright in the period 1 July 2010 to 30 June 2012. The Company filed a writ petition in Mumbai High Court challenging the constitutionality and the legality of this entry and received ad-interim protection and accordingly, no amounts were provided for by the Company for the period 1 April 2011 to 30 June 2012.

5) It is not practicable for the Company to estimate the timing of cash outflows, if any, in respect of the above, pending resolution of the respective proceedings.

6) From time to time, the 'Company' is involved in legal proceedings arising in the ordinary course of its business, typically intellectual property litigation and infringement claims related to the Company's feature films and other commercial activities, which could cause the Company to incur expenses or prevent the Company from releasing a film. While the resolution of these matters cannot be predicted with certainty, the Company does not believe, based on current knowledge or informatiotn available, that any existing legal proceedings or claims are likely to have a material and adverse effect on its financial position, results of operations or cash flows.

7) The Company does not expect any reimbursements in respect of the above contingent liabilities.

Amount ₹ in lakhs

|  |  | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|---|
| b) | **Commitments** |  |  |
|  | Estimated amount of contracts remaining to be executed on content commitments | 167,082 | 171,911 |
|  |  | **167,082** | **171,911** |
|  | **Total** | **202,445** | **203,495** |

# Notes
**to the standalone financial statements and other explanatory information**

**41  Employment benefits**

**a)  Gratuity (unfunded)**

The following table set out the status of the gratuity plan as required under Indian Accounting Standard (Ind AS) - 19, Employee benefits, and the reconciliation of opening and closing balances of the present value of the defined benefit obligation:

Amount ₹ in lakhs

|   |   | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|---|
| I | **Change in projected benefit obligation** | | |
|   | Liability at the beginning of the year | 478 | 389 |
|   | Interest cost | 38 | 29 |
|   | Current service cost | 79 | 63 |
|   | Past service cost | - | 104 |
|   | Benefits paid | (45) | (21) |
|   | Actuarial loss/(gain) on obligations | (61) | (86) |
|   | Liability at the end of the year | 489 | 478 |
|   | Current portion | 111 | 53 |
|   | Non-current portion | 378 | 425 |
| II | **Recognized in Balance Sheet** | | |
|   | Liability at the end of the year | 489 | 478 |
|   | **Amount recognized in Balance Sheet** | **489** | **478** |
| III | **Expense recognized in Statement of Profit and Loss** | | |
|   | Current service cost | 79 | 63 |
|   | Interest cost | 38 | 29 |
|   | Past service cost | - | 104 |
|   | **Expense recognized in Statement of Profit and Loss** | **117** | **196** |
| IV | **Expense recognized in Other Comprehensive Income** | | |
|   | Arising from changes in experience | (27) | (66) |
|   | Arising from changes in financial assumptions | 9 | (20) |
|   | Arising from changes in demographic assumptions | (43) | - |
|   | **Expense/(income) recognized in Other comprehensive income** | **(61)** | **(86)** |
|   | *Actuarial (gain)/loss of ₹ 61 lakhs (31 March 2018: ₹ 86 lakhs) is included in other comprehensive income. | | |
| V | **Assumptions used** | | |
|   | Discount rate | 7.22% | 7.85% |
|   | Long-term rate of compensation increase | 9.71% | 10.00% |
|   | Attrition Rate | 13.00% | 2.00% |
|   | Expected average remaining working life in years | 6.00 | 17.00 |

# Notes
**to the standalone financial statements and other explanatory information**

**VI   A quantitative sensitivity analysis for significant assumption as at 31 March 2019 is as shown below:**

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| **Impact on defined benefit obligation** | | |
| **Projected benefit obligation on current assumption** | 489 | 478 |
| Discount rate | | |
| 1.00 % increase | (23) | (54) |
| 1.00 % decrease | 26 | 65 |
| **Salary growth rate** | | |
| 1.00 % increase | 20 | 43 |
| 1.00 % decrease | (19) | (42) |
| **Employee turnover** | | |
| 1.00 % increase | (4) | (6) |
| 1.00 % decrease | 4 | 7 |

**VII   Maturity profile of defined benefit obligation**

Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---:|---:|
| Year 1 | 111 | 53 |
| Year 2 | 46 | 18 |
| Year 3 | 45 | 11 |
| Year 4 | 54 | 11 |
| Year 5 | 42 | 30 |
| Sum of Years 6-10 | 199 | 121 |
| Sum of Years 11 and above | 284 | 1,446 |

**VIII   Interest rate risk:** A fall in the discount rate which is linked to the G.Sec. Rate will increase the present value of the liability requiring higher provision.

**IX   Salary Risk:** The present value of the defined benefit plan liability is calculated by reference to the future salaries of members. As such, an increase in the salary of the members more than assumed level will increase the plan's liability.

**X   Asset Liability Matching Risk:** The plan faces the ALM risk as to the matching cash flow. Company has to manage pay-out based on pay as you go basis from own funds

**XI   Mortality risk:** Since the benefits under the plan is not payable for life time and payable till retirement age only, plan does not have any longevity risk.

**b)   Compensated absences**

The Company incurred ₹ 112 lakhs (31 March 2018 : ₹ 29 lakhs) towards accrual for compensated absences during the year.

**c)   Provident fund**

The Company contributed ₹ 156 lakhs (31 March 2018 : ₹ 168 lakhs) to the provident fund plan, ₹ 5 lakhs (31 March 2018 : ₹ 5 lakhs) to the Employee state insurance plan and ₹ 6 lakhs (31 March 2018 : ₹ 11 lakhs) to the National Pension Scheme during the year.

**d)   Share-based payment transactions**

The Company has instituted Employees' Stock Option Plan "ESOP 2009" and "ESOS 2017" under which the stock options have been granted to employees. The scheme was approved by the shareholders at the Extra Ordinary General Meeting held on 4 December 2009 and Annual General Meeting held on 29 September 2017 respectively. The details of activity under the ESOP 2009 scheme are summarized below:

STANDALONE FINANCIAL STATEMENTS

# Notes
## to the standalone financial statements and other explanatory information

The expense recognized for employee services received during the year is shown in the following table:

Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| Expense arising from equity-settled share-based payment transactions | 761 | 834 |

There were no cancellations or modifications to the awards in 31 March 2019 or 31 March 2018.

**Movements during the year**

The following table illustrates the number and weighted average exercise prices (WAEP) of, and movements in, share options during the year:

| | As at 31 March 2019 | | As at 31 March 2018 | |
|---|---|---|---|---|
| | Number | WAEP* | Number | WAEP* |
| Outstanding at 1 April | 1,624,034 | 29 | 2,108,063 | 36 |
| Granted during the year | - | - | 863,320 | 10 |
| Forfeited during the year | (329,886) | 52 | (234,189) | 10 |
| Exercised during the year | (536,263) | 10 | (1,113,160) | 32 |
| **Outstanding at 31 March** | **757,885** | **32** | **1,624,034** | **29** |
| Exercisable at 31 March | 289,002 | 68 | 911,854 | 71 |
| Range of exercise price of outstanding options (₹) | | ₹ 10-150 | | ₹ 10-175 |
| Weighted average remaining contractual life of option | | 2.96 Years | | 2.96 Years |

* WAEP denotes weighted average exercise price of the option

Black Scholes valuation model has been used for computing the weighted average fair value considering the following inputs:

| Particulars | 17-Dec-09 | 12-Aug-10 | 1-Jul-12 | 14-Oct-13 | 12-Nov-14 | 12-Feb-15 | 9-Feb-16 | 10-Feb-17 | 14-Nov-17 | 10-Feb-18 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Date of grant** | | | | | | | | | | |
| Dividend yield (%) | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil |
| Expected volatility | 75.00% | 60.00% | 44.00% | 35.00% | 40.11% | 37.84% | 46.46% | 48.66% | 56.53% | 53.15% |
| Risk free interest rate | 6.30% | 6.50% | 8.36% | 8.57% | 8.50% | 7.74% | 7.49% | 6.51% | 6.90% | 7.38% |
| Exercise price | 75-175 | 75-135 | 75 | 150 | 10 | 10 | 10 | 10 | 10 | 10 |
| Expected life of options granted in years | 5.25 | 5.25 | 5.50 | 4.50 | As per Table 1.1 | | | 4.27 | 3.50 | 4.50 |

**Table 1.1**

Expected life of options granted in years

| Option Grant date | 9-Feb-16 | | 12-Feb-15 | | 12-Nov-14 | |
|---|---|---|---|---|---|---|
| | Old Employees | New Employees | Old Employees | New Employees | Old Employees | New Employees |
| Year I | 3.50 | 4.50 | 3.00 | 3.00 | 3.50 | 4.50 |
| Year II | 4.50 | 5.50 | 3.50 | 4.00 | 4.50 | 5.50 |
| Year III | 5.50 | 6.50 | 4.00 | 4.50 | 5.50 | 6.50 |

The expected life of options is based on historical data and current expectations and is not necessarily indicative of exercise patterns that may occur. The expected volatility reflects the assumption that the historical volatility over a period similar to the life of the options is indicative of future trends, which may differ from the actual.

# Notes
**to the standalone financial statements and other explanatory information**

**42    Operating Segment**

**Description of segment and principal activities**

The Company acquires, co-produces and distributes Indian films in multiple formats worldwide. Film content is monitored and strategic decisions around the business operations are made based on the film content, whether it is new release or library. Hence, Management identifies only one operating segment in the business, film content. The Company distributes film content to the Indian population in India and worldwide and to non-Indian consumers who view Indian films that are subtitled or dubbed in local languages. As a result of these distribution activities, the management examines the performance of the business from a geographical market perspective.

Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| **Revenue by region of domicile of customer's location** | | |
| India | 65,822 | 60,084 |
| United Arab Emirates* | 17,313 | 10,382 |
| Rest of the world | 429 | 300 |
| **Total revenue** | **83,564** | **70,766** |

For the year ended 31 March 2019 and 31 March 2018 no third party customers accounted for more than 10% of the entity's total revenues.

* Sales to United Arab Emirates includes sales to its related party Eros Worldwide FZ LLC.

**Non-current assets other than financial instruments, investments accounted for using equity method and income taxes**

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Non-current assets | | |
| India | 220,360 | 220,107 |
| United Arab Emirates | - | - |
| Rest of the world | 2,357 | 2,558 |
| **Total non-current assets** | **222,717** | **222,665** |

**43    Related party disclosures**

**a)    Parent entity**

| Relationship | Name |
|---|---|
| Ultimate holding Company | **Eros International PLC** |
| Holding Company | **Eros Worldwide FZ LLC** |

STANDALONE FINANCIAL STATEMENTS

## Notes
to the standalone financial statements and other explanatory information

b)    Subsidiaries

| Relationship | Name |
|---|---|
| Subsidiary companies | Eros International Films Private Limited |
| | Copsale Limited |
| | Big Screen Entertainment Private Limited |
| | EyeQube Studios Private Limited |
| | EM Publishing Private Limited |
| | Eros Animation Private Limited |
| | Digicine PTE Limited |
| | Colour Yellow Productions Private Limited |
| | Universal Power Systems Private Limited |
| | Ayngaran International Limited (Isle of Man) (upto 30-09-2017) ** |
| | Ayngaran International UK Limited (upto 30-09-2017) ** |
| | Ayngaran International Mauritius Limited (upto 30-09-2017) ** |
| | Ayngaran International Media Private Limited (upto 30-09-2017) ** |
| | Ayngaran Anak Media Private Limited (upto 30-09-2017) ** |

**The Company has divested five subsidiaries w.e.f. 1 October, 2017.

| | |
|---|---|
| List of Key management personnel (KMP) | Mr. Sunil Lulla – Executive Vice Chairman & Managing Director |
| | Mr. Kishore Lulla – Executive Director |
| | Ms. Jyoti Deshpande – Executive Director (upto 31 March 2018) |
| | Mr. Dinesh Modi -Group Chief Financial Officer (India) (upto 8 March 2018) |
| | Mr. Farokh Gandhi - Chief Financial Officer (India) (w.e.f. 9 March 2018) |
| | Ms. Dimple Mehta - Vice President Company Secretary and Compliance Officer (upto 14 December 2017) |
| | Mr. Abhishekh Kanoi - Vice President Company Secretary and Compliance Officer (w.e.f. 15 December 2017) |
| Relatives of KMP with whom transactions exist | Mrs. Manjula K Lulla (wife of Mr. Kishore Lulla) |
| | Mrs. Krishika Lulla (wife of Mr. Sunil Lulla) |
| Entities over which KMP exercise significant influence | Shivam Enterprises |
| | Eros Television India Private Limited |
| Fellow subsidiary company | Eros Digital Private Limited |
| | Eros International Limited, United Kingdom |
| | Eros Digital FZ LLC |

## Notes
**to the standalone financial statements and other explanatory information**

c (i)  Transactions during the year with related parties

Amount ₹ in lakhs

| Particulars | Holding Company | | Subsidiary | | Fellow subsidiary company | | Key Management Personnel including transactions with relatives of Key Management Personnel | | Entities over which Key Management Personnel exercise significant influence | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Year ended 31 March 2019 | Year ended 31 March 2018 | Year ended 31 March 2019 | Year ended 31 March 2018 | Year ended 31 March 2019 | Year ended 31 March 2018 | Year ended 31 March 2019 | Year ended 31 March 2018 | Year ended 31 March 2019 | Year ended 31 March 2018 | Year ended 31 March 2019 | Year ended 31 March 2018 |
| Sale of film rights | 15,985 | 10,592 | 40 | 9 | - | - | - | - | - | - | 16,025 | 10,601 |
| Revenue attributable to Eros Digital FZ LLC | - | - | - | - | (9,207) | (9,769) | - | - | - | - | (9,207) | (9,769) |
| Producer Share attributable | - | - | (31) | - | - | - | - | - | - | - | (31) | - |
| Sale of prints/VCD/DVD | 2 | 6 | - | - | - | - | - | - | - | - | 2 | 6 |
| Purchase of film rights | - | - | 6,125 | 3,939 | - | - | - | - | - | - | 6,125 | 3,939 |
| Re-imbursement of administrative expense | 69 | 460 | 12 | 12 | 8,751 | 6,834 | - | - | - | - | 8,832 | 7,306 |
| Re-imbursement given | - | - | 184 | 58 | - | - | - | - | - | - | 184 | 58 |
| Assets Usage Charges paid | - | - | 7 | - | - | - | - | - | - | - | 7 | - |
| Commission expenses | - | - | 10 | 8 | - | - | - | - | - | - | 10 | 8 |
| Other Income | - | - | 84 | 1 | - | - | - | - | - | - | 84 | 1 |
| Investment in | - | - | 37 | 180 | - | - | - | - | - | - | 37 | 180 |
| Rent expenses | - | - | - | - | - | - | 768 | 552 | - | - | 768 | 552 |
| Interest income | - | - | 32 | 27 | - | 432 | - | - | - | - | 32 | 459 |
| Interest expenses | - | - | 782 | 186 | 54 | 49 | - | - | - | 482 | 836 | 717 |
| Salary, commission and perquisites* to KMPs | - | - | - | - | - | - | 826 | 1,658 | - | - | 826 | 1,658 |
| Content advances given | - | - | 6,478 | 6,201 | - | 7,414 | - | - | - | - | 6,478 | 13,615 |
| Loan and advances given | - | - | 815 | 4,383 | - | - | - | - | - | 65 | 815 | 4,448 |
| Refund of content advances | - | - | - | - | - | 12,603 | - | - | - | - | - | 12,603 |
| Recovery of loans and advances given | - | - | 3,148 | 2,838 | 222 | - | - | - | - | 62 | 3,370 | 2,900 |
| Trade advances/ loans taken | 10,596 | 3,257 | 2,267 | 8,656 | 75 | - | - | - | - | 610 | 12,938 | 12,523 |
| Repayment of advances/ loans | - | - | 3,333 | 4,961 | 81 | 23 | - | - | - | 5,254 | 3,414 | 10,238 |
| Refund of deposits | - | - | - | - | - | - | 35 | 33 | - | - | 35 | 33 |

STANDALONE FINANCIAL STATEMENTS

# Notes
**to the standalone financial statements and other explanatory information**

**c    (ii)    Transactions during the year with related parties**                                    Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| **Sale of film rights** | | |
| Eros Worldwide FZ LLC | 15,985 | 10,592 |
| Universal Power Systems Private Limited | 40 | 9 |
| **Total** | **16,025** | **10,601** |
| Revenue attributable to Eros Digital FZ LLC | (9,207) | (9,769) |
| Producer Share to Colour Yellow Productions Privated Limited | (31) | - |
| **Sale of prints/VCD/DVD** | | |
| Eros Worldwide FZ LLC | 2 | 6 |
| **Total** | **2** | **6** |
| **Purchase of film rights** | | |
| Eros International Films Private Limited | 161 | 651 |
| Colour Yellow Productions Private Limited | 5,964 | 3,288 |
| **Total** | **6,125** | **3,939** |
| **Re-imbursement of administrative expense** | | |
| Eros Worldwide FZ LLC | 69 | 460 |
| Eros Digital FZ LLC | 8,751 | 6,834 |
| Eros International Films Private Limited | 12 | 12 |
| Big Screen Entertainment Private Limited | - | 0 |
| Ayngaran International Media Private Limited | - | 0 |
| Ayngaran Anak Media Private Limited | - | 0 |
| **Total** | **8,832** | **7,306** |
| **\*amount represents less than ₹ one lakh** | | |
| **Re-imbursement given** | | |
| Eros International Films Private Limited | 62 | - |
| Colour Yellow Productions Private Limited | 122 | 58 |
| **Total** | **184** | **58** |
| **Assets Usage Charges paid** | | |
| EyeQube Studios Private Limited | 7 | - |
| **Total** | **7** | **-** |
| **Commission expenses** | | |
| Universal Power Systems Private Limited | 6 | 8 |
| EM Publishing Private Limited | 4 | - |
| **Total** | **10** | **8** |
| **Other Income** | | |
| Big Screen Entertainment Private Limited | - | 1 |
| Colour Yellow Productions Private Limited | 84 | - |
| **Total** | **84** | **1** |
| **Investment in** | | |
| Universal Power Systems Private Limited | 37 | 180 |
| **Total** | **37** | **180** |
| **Rent expenses** | | |
| Mr. Sunil Arjan Lulla | 384 | 276 |
| Mrs. Manjula K Lulla | 36 | 36 |
| Mr. Kishore Arjan Lulla | 348 | 240 |
| **Total** | **768** | **552** |

## Notes
**to the standalone financial statements and other explanatory information**

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Interest income** | | |
| EyeQube Studios Private Limited | 3 | 3 |
| Eros International Limited | - | 432 |
| Universal Power Systems Private Limited | 29 | 24 |
| **Total** | **32** | **459** |
| **Interest expenses** | | |
| Eros Digital Private Limited | 54 | 49 |
| Eros Television India Private Limited | - | 482 |
| Eros International Films Private Limited | 782 | 186 |
| **Total** | **836** | **717** |
| **Salary, commission and perquisites* to KMPs** | | |
| Mr. Sunil Arjan Lulla | 480 | 438 |
| Mr. Kishore Arjan Lulla | 140 | 128 |
| Mrs. Jyoti Deshpande | - | 714 |
| Mrs. Krishika Lulla | 86 | 86 |
| Mr. Dinesh Modi** - Chief Financial Officer (India) (upto 8 March 2018) | - | 220 |
| Mr. Farokh P. Gandhi - Chief Financial Officer (w.e.f. 9 March 2018) | 84 | 5 |
| Mrs. Dimple Mehta** | - | 53 |
| Mr. Abhishekh Kanoi** | 36 | 14 |
| **Total** | **826** | **1,658** |

\* Perquisites to KMP have been valued as per Income tax Act, 1961 and rules framed thereunder or at actuals as the case may be.

\*\* Excludes ₹ 9 lakhs (31 March 2018 : ₹ 72 lakhs) charged to Statement of Profit and loss on account of stock Compensation for awards granted.

d) **Transactions with related parties**                                         Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| **Content advances given** | | |
| Eros International Limited | - | 7,414 |
| Colour Yellow Productions Private Limited | 6,478 | 6,201 |
| **Total** | **6,478** | **13,615** |
| **Loan and advances given** | | |
| Ayngaran International Media Private Limited | - | 8 |
| EyeQube Studios Private Limited | 10 | 3 |
| Eros Animation Private Limited | 1 | 0 |
| EM Publishing Private Limited | 4 | 0 |
| Universal Power Systems Private Limited | 800 | 2,856 |
| Copsale Limited | - | 1,516 |
| Eros Television India Private Limited | - | 65 |
| **Total** | **815** | **4,448** |
| **Refund of content advances** | | |
| Eros International Limited | - | 12,603 |
| **Total** | **-** | **12,603** |

STANDALONE FINANCIAL STATEMENTS

# Notes
**to the standalone financial statements and other explanatory information**

Amount ₹ in lakhs

|  | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| **Recovery of loans and advances given** | | |
| Universal Power System Private Limited | 1,624 | 2,044 |
| Ayngaran International Media Private Limited | - | 794 |
| Ayngaran Anak Media Private Limited | - | 0 |
| Eros Television India Private Limited | - | 62 |
| Copsale Limited | 1,516 | - |
| EyeQube Studios Private Limited | 8 | - |
| Eros International Limited | 222 | - |
| **Total** | **3,370** | **2,900** |
| **Trade advances/ loans taken** | | |
| Eros Worldwide FZ LLC | 10,596 | 3,257 |
| Eros Digital Private Limited | 75 | - |
| Eros Television India Private Limited | - | 610 |
| Eros International Films Private Limited | 2,267 | 8,656 |
| **Total** | **12,938** | **12,523** |
| **Repayment of advances/ loans** | | |
| Eros Digital Private Limited | 81 | 23 |
| Big Screen Entertainment Private Limited | 8 | 22 |
| Eros Television India Private Limited | - | 5,254 |
| Eros International Films Private Limited | 3,325 | 4,939 |
| **Total** | **3,414** | **10,238** |
| **Refund of deposits** | | |
| Mr. Sunil Arjan Lulla | 35 | 33 |
| **Total** | **35** | **33** |

e)    **Balances with related parties**                                                           Amount ₹ in lakhs

|  | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Trade balances due from** | | |
| Eros Worldwide FZ LLC | 10,623 | 6,477 |
| Eros Digital FZ LLC | 5,981 | 2,314 |
| **Total** | **16,604** | **8,791** |
| **Trade balances due to** | | |
| Eros International Limited | 108 | 102 |
| Big Screen Entertainment Private Limited | 98 | 105 |
| Colour Yellow Productions Private Limited | 2,971 | 2,271 |
| Universal Power System Private Limited | - | 24 |
| Eros Digital FZ LLC | 9,652 | 7,267 |
| **Total** | **12,829** | **9,769** |
| **Advances due to** | | |
| Eros Worldwide FZ LLC | 14,048 | 3,452 |
| Universal Power Systems Private Limited | - | 5 |
| **Total** | **14,048** | **3,457** |

## Notes
**to the standalone financial statements and other explanatory information**

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Loans due to** | | |
| Eros Digital Private Limited | 528 | 480 |
| Eros International Films Private Limited | 5,263 | 5,328 |
| **Total** | **5,791** | **5,808** |
| **Content advances given to** | | |
| Colour Yellow Productions Private Limited | 7,177 | 6,722 |
| **Total** | **7,177** | **6,722** |
| **Loans and advances due from** | | |
| Shivam Enterprises | 39 | 39 |
| EM Publishing Private Limited | 20 | 20 |
| Digicine Pte Limited | 36 | 34 |
| EyeQube Studios Private Limited | 28 | 30 |
| Universal Power System Private Limited | 35 | 836 |
| Eros Animation Private Limited | 2 | 1 |
| Mrs. Krishika Lulla | 0 | - |
| Eros Television India Private Limited | 3 | 3 |
| Copsale Limited | - | 1,516 |
| Eros International Limited | 0 | 222 |
| **Total** | **163** | **2,701** |
| **Security Deposits/Amounts due from KMPs or their relatives** | | |
| Mr. Sunil Arjan Lulla | 267 | 302 |
| Mrs. Manjula K. Lulla | 75 | 75 |
| Mr. Kishore Arjan Lulla | 240 | 240 |
| **Total** | **582** | **617** |
| **Amounts due to KMPs or their relatives** | | |
| Mr. Sunil Arjan Lulla | 39 | 117 |
| Mr. Kishore Arjan Lulla | 149 | 115 |
| Mrs. Manjula K. Lulla | 64 | 42 |
| **Total** | **252** | **274** |

Terms and conditions

All outstanding balances are unsecured and repayable in cash.

**44    Categories of financial assets and financial liabilities**

The carrying value of financial instruments by categories are as follows:                    Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Financial assets** | | |
| **Measured at fair value through Statement of Profit and Loss** | | |
| Investments* | 2,776 | 3,460 |
| **Total** | **2,776** | **3,460** |
| **Measured at amortised cost** | | |
| Loans and advances | 3,152 | 4,926 |
| Restricted deposits | 6,493 | 4,492 |
| Other financial assets | 871 | 966 |
| Trade receivables | 66,595 | 44,024 |
| Cash and cash equivalents | 268 | 385 |
| **Total** | **77,379** | **54,793** |

STANDALONE FINANCIAL STATEMENTS

## Notes
### to the standalone financial statements and other explanatory information

Measured at fair value through Statement of Profit and Loss

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Financial liabilities** | | |
| **Measured at fair value through profit and loss** | | |
| Forward contract liabilities | 430 | - |
| **Total** | **430** | **-** |
| **Measured at amortised cost** | | |
| Borrowings | 55,494 | 63,562 |
| Acceptance | 5,796 | 5,796 |
| Trade payables | 19,537 | 17,125 |
| Other financial liabilities | 6,888 | 8,521 |
| **Total** | **87,715** | **95,004** |

\* Exclude financial instruments of investment in subsidiaries carried at cost.

**45    Fair value measurement of financial instruments**

Financial assets and financial liabilities measured at fair value in the balance sheet are grouped into three Levels of a fair value hierarchy. The three Levels are defined based in the observability of significant inputs to the measurement, as follows:

Level 1: quoted prices (unadjusted) in active markets for identical assets or liabilities

Level 2: inputs other than quoted prices included within Level 1 that are observable for the asset or liability, either directly (i.e as price) or indirectly (i.e. derived from price)

Level 3: unobservable inputs for the asset or liability

a.    **The following table shows the Levels within the hierarchy of financial assets and liabilities measured at fair value on a recurring basis:**

Amount ₹ in lakhs

| Particulars | As at 31 March 2019 | Level 1 | Level 2 | Level 3 |
|---|---|---|---|---|
| **Financial assets** | | | | |
| Measured at fair value through Statement of Profit and Loss | | | | |
| Investments* | 2,776 | - | - | 2,776 |
| **Total** | **2,776** | **-** | **-** | **2,776** |
| **Financial liabilities** | | | | |
| **Measured at fair value through Statement of Profit and Loss** | | | | |
| Forward contract liabilities | 430 | - | 430 | |
| **Total** | **430** | **-** | **430** | |

b.    **The following table shows the financial assets and liabilities measured at amortised cost on a recurring basis:**

Amount ₹ in lakhs

| Particulars | As at 31 March 2019 | Level 1 | Level 2 | Level 3 |
|---|---|---|---|---|
| **Measured at amortised cost** | | | | |
| **Financial assets** | | | | |
| Loans and advances | 3,152 | - | - | - |
| Restricted bank deposits | 6,493 | - | - | - |
| Other financial assets-Non current | 643 | - | 643 | - |
| Other financial assets- Current | 228 | - | - | - |
| Trade receivables | 66,595 | - | - | - |
| Cash and cash equivalents | 268 | - | - | - |
| **Total** | **77,379** | **-** | **643** | **-** |
| **Financial liabilities** | | | | |
| **Measured at amortised cost** | | | | |
| Borrowings-Non current | 8,698 | - | 8,698 | - |
| Borrowings-Current | 46,796 | - | - | - |
| Acceptance | 5,796 | - | - | - |
| Trade payables | 19,537 | - | - | - |
| Other financial liabilities | 6,888 | - | - | - |
| **Total** | **87,715** | **-** | **8,698** | **-** |

\* Exclude financial instruments of investment in subsidiaries carried at cost.

# Notes
**to the standalone financial statements and other explanatory information**

During the year ended 31 March 2018 there was no transfers between level 2 and level 3 fair value hierarchy.

Fair value of cash and short term deposits, trade and other short term receivables, trade payables, other current liabilities and short term borrowings carried at amortised cost is not materially different from its carrying cost largely due to short term maturities of these financial assets and liabilities

Fair value of the borrowing items fall within level 2 of the fair value hierarchy and is calculated on the basis of discounted future cash flows.

Non-listed shares and other securities fall within level 3 of the fair value hierarchy. Valuation is based on the discounted future cash flow method.

Financial instruments with fixed and variable interest rate fall within level 2 of the fair value hierarchy and are evaluated by Company based on parameters such as interest rate, credit rating or assessed credit worthiness.

a.    **The following table shows the Levels within the hierarchy of financial assets and liabilities measured at fair value on a recurring basis:**

Amount ₹ in lakhs

| Particulars | As at 31 March 2018 | Level 1 | Level 2 | Level 3 |
|---|---|---|---|---|
| **Financial assets** | | | | |
| **Measured at fair value through Statement of Profit and Loss** | | | | |
| Investments* | 3,460 | - | - | 3,460 |
| **Total** | **3,460** | **-** | **-** | **3,460** |

b.    **The following table shows the financial assets and liabilities measured at amortised cost on a recurring basis:**

Amount ₹ in lakhs

| Particulars | As at 31 March 2018 | Level 1 | Level 2 | Level 3 |
|---|---|---|---|---|
| **Measured at amortised cost** | | | | |
| Loans | 4,926 | - | - | - |
| Restricted bank deposits | 4,492 | - | - | - |
| Other financial assets-Non current | 672 | - | 672 | - |
| Other financial assets- Current | 294 | - | - | - |
| Trade receivables | 44,024 | - | - | - |
| Cash and cash equivalents | 385 | - | - | - |
| **Total** | **54,793** | **-** | **672** | **-** |
| **Financial liabilities** | | | | |
| **Measured at amortised cost** | | | | |
| Borrowings-Non current | 14,941 | - | 14,941 | - |
| Borrowings- Current | 48,621 | - | - | - |
| Acceptance | 5,796 | - | - | - |
| Trade payables | 17,125 | - | - | - |
| Other financial liabilities | 8,521 | - | - | - |
| **Total** | **95,004** | **-** | **14,941** | **-** |

* Exclude financial instruments of investment in subsidiaries carried at cost.

During the year ended 31 March 2019 and 31 March 2018 there was no transfers between level 2 and level 3 fair value hierarchy.

Fair value of cash and short term deposits, trade and other short term receivables, trade payables, other current liabilities and short term borrowings carried at amortised cost is not materially different from its carrying cost largely due to short term maturities of these financial assets and liabilities

Fair value of the borrowing items fall within level 2 of the fair value hierarchy and is calculated on the basis of discounted future cash flows.

Non-listed shares and other securities fall within level 3 of the fair value hierarchy. Valuation is based on the discounted future cash flow method.

Financial instruments with fixed and variable interest rate fall within level 2 of the fair value hierarchy and are evaluated by Company based on parameters such as interest rate, credit rating or assessed credit worthiness.

STANDALONE FINANCIAL STATEMENTS

# Notes
## to the standalone financial statements and other explanatory information

Following table shows the reconciliation from the opening balances to the closing balances of the level 3 values:-

Amount ₹ in lakhs

| Particulars | |
|---|---:|
| **Balance as on 1 April 2017** | **4,760** |
| Add: Employee stock option compensation expense to employee's of subsidiary | 180 |
| Less: Fair value loss recognized through Statement of Profit and Loss | (1,480) |
| **Balance as on 31 March 2018** | **3,460** |
| Add: Employee stock option compensation expense to employee's of subsidiary | 38 |
| Less: Fair value loss recognized through Statement of Profit and Loss | (722) |
| **Balance as on 31 March 2019** | **2,776** |

| Financial asset | Fair value as at (₹ in lakhs) | | Fair value hierarchy | Valuation techniques and key inputs | Significant unobservable input | Relationship of unobservable input to fair value |
|---|---|---|---|---|---|---|
| | 31 March 2019 | 31 March 2018 | | | | |
| Investment in unquoted equity share | Equity share of :- Universal Power Systems Private Limited - ₹ 2,776 | Equity share of :- Universal Power Systems Private Limited - ₹ 3,460 | Level 3 | Income approach - In this approach, the discounted cash flow method was used to capture the present value of the expected future economic benefit to be derived from the ownership of these equity instruments. | The significant inputs were:- a) the estimated cash flow; and b) the discount rate to compute the present value of the future expected cash flow. | A 0.5% increase / decrease in the discount rate used would decrease/increase the fair value of unquoted equity instruments by ₹ 89 lakhs / ₹ 66 lakhs (₹ 180 lakhs / ₹ 200 lakhs As at 31 March 2018). |

## 46   Financial instruments and Risk management

The Company is exposed to various risks in relation to financial instruments. The Company's financial assets and liabilities by category are summarised in note 44 The main types of risks are market risk, credit risk and liquidity risk.

The Company's risk management is coordinated in close cooperation with the board of directors and audit committee meetings.

The Company has established objectives concerning the holding and use of financial instruments. The underlying basis of these objectives is to manage the financial risks faced by the Company.

### Management of Capital Risk and Financial Risk

The Company manages its capital to ensure that it will be able to continue as a going concern while maximizing the return to shareholders through the optimization of the debt and equity balance. The Company monitors capital using a gearing ratio, which is net debt divided by total capital. For the purpose of the Company's capital management, capital includes issued capital and all other equity reserves attributable to the equity shareholders of the Company. Net debt is calculated as borrowing (refer note 19,25,26 and 27) less cash and cash equivalents.

The gearing ratio at the end of the reporting period was as follows:                                            Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| Debt | 66,540 | 76,748 |
| Less: Cash and cash equivalents | (268) | (385) |
| **Net debt** | **66,272** | **76,363** |
| Equity | 153,845 | 144,199 |
| **Net debt to equity** | **43.08%** | **52.96%** |

# Notes
**to the standalone financial statements and other explanatory information**

**Financial risk management objectives**

Based on the operations of the Company , Management considers that key financial risks that it faces are credit risk, currency risk, liquidity risk and interest rate risk. The objectives under each of these risks are as follows:

• credit risk: minimize the risk of default and concentration.

• currency risk: reduce exposure to foreign exchange movements principally between INR and USD.

• liquidity risk: ensure adequate funding to support working capital and future capital expenditure requirements.

• interest rate risk: mitigate risk of significant change in market rates on the cash flow of issued variable rate debt.

**Credit Risk**

The Company's credit risk is principally attributable to its trade receivables, loans and bank balances. As a number of the Company's trading activities require third parties to report revenues due to the Company this risk is not limited to the initial agreed sale or advance amounts. The amounts shown within the Balance Sheet in respect of trade receivables and loans are net of allowances for doubtful debts based upon objective evidence that the Company will not be able to collect all amounts due.

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Ageing of Receivables | | |
| Not due | 40,880 | 32,285 |
| Overdue less than 90 days | 9,605 | 6,772 |
| Overdue more than 90 days less than 180 days | 5,388 | 1,649 |
| Overdue more than 181days less than 270 days | 6,445 | 19 |
| Overdue more than 271days less than 360 days | 2,352 | 23 |
| Overdue more than 360days | 1,925 | 3,276 |
| **Closing balance** | **66,595** | **44,024** |
| Expected credit loss | | |
| Opening balance | 419 | 829 |
| Provision made during the year | 7,942 | - |
| Reversal of provision during the year | - | 409 |
| **Closing balance** | **8,361** | **419** |

Trading credit risk is managed on a customer by customer basis by the use of credit checks on new clients and individual credit limits, where appropriate, together with regular updates on any changes in the trading partner's situation. In a number of cases trading partners will be required to make advance payments or minimum guarantee payments before delivery of any goods. The Company reviews reports received from third parties and in certain cases as a matter of course reserve the right within the contracts it enters into to request an independent third party audit of the revenue reporting.

The credit risk on bank balances is limited because the counterparties are banks with high credit ratings as signed by international credit rating agencies.

The Company from time to time will have significant concentration of credit risk in relation to individual theatrical releases, television syndication deals or digital licenses. This risk is mitigated by contractual terms which seek to stagger receipts and/or the release or airing of content. As at 31 March 2019 46% (31 March 2018: 51%) of trade account receivables were represented by the top 5 customer, out of which as at 31 March 2019 25% (31 March 2018: 15%) of trade account receivables were represented by the related parties. The maximum exposure to credit risk is that shown within the statement of financial position.

As at 31 March 2019, the Company did not hold any material collateral or other credit enhancements to cover its credit risks associated with its financial assets, except certain secured debtors as disclosed in note 11. ECL movement ageing not added.

**Currency Risk**

The Company is exposed to foreign exchange risk from foreign currency transactions. As a result it faces both translation and transaction currency risks which are principally mitigated by matching foreign currency revenues and costs wherever possible.

The Company has identified that it will need to utilize hedge transactions to mitigate any risks in movements between the US Dollar and the Indian Rupee and has adopted an agreed set of principles that will be used when entering into any such transactions. No such transactions have been entered into to date and the Company has managed foreign currency exposure to date by seeking to match foreign currency inflows and outflows as much as possible such as packing credit repayment in USD is matched with remittances from UAE in USD. Details of the foreign currency borrowings that the Company uses to mitigate risk are shown within Interest Risk disclosures.

STANDALONE FINANCIAL STATEMENTS

# Notes
## to the standalone financial statements and other explanatory information

The Company adopts a policy of borrowing where appropriate in the foreign currency as a hedge against translation risk. The table below shows the Company's net foreign currency monetary assets and liabilities position in the main foreign currencies, translated to Indian Rupees (₹) equivalents, as at the year end:

Amount in lakhs

| | Net balance receivables / (payables) | | | |
|---|---|---|---|---|
| | INR | USD | SGD* | GBP |
| As at 31 March 2019 | (1,858) | (27) | 0 | - |
| As at 31 March 2018 | 1,339 | 25 | 0 | (3) |

*amount represents less than one lakh

The above foreign currency arises when the Company holds monetary assets and liabilities denominated in a currency other than ₹.

A uniform decrease of 10% in exchange rates against all foreign currencies in position as of 31 March 2019 would have increased in the Company's net profit before tax by approximately ₹ 186 lakhs (2018: loss of ₹ 102 lakhs). An equal and opposite impact would be experienced in the event of an increase by a similar percentage.

**Liquidity risk**

The Company manages liquidity risk by maintaining adequate reserves and agreed committed banking facilities. Management of working capital takes account of film release dates and payment terms agreed with customers.

A maturity analysis for financial liabilities is provided below. The amounts disclosed are based on contractual undiscounted cash flows. The table includes both interest and principal cash flows. To the extent that interest flows are floating rate, the undiscounted amount is derived from interest rates as at 31 March in each year.

Amount ₹ in lakhs

| | Total | Less than 1 year | 1-3 years | 3-5 years | More than 5 years |
|---|---|---|---|---|---|
| **As at 31 March 2019** | | | | | |
| Borrowing principal payments | 60,743 | 51,975 | 8,168 | 600 | - |
| Borrowing interest payments | 7,587 | 6,380 | 1,189 | 18 | - |
| Acceptance | 5,796 | 5,796 | - | - | - |
| Trade and other payables | 20,950 | 20,817 | 133 | - | - |

Amount ₹ in lakhs

| | Total | Less than 1 year | 1-3 years | 3-5 years | More than 5 years |
|---|---|---|---|---|---|
| **As at 31 March 2018** | | | | | |
| Borrowing principal payments | 70,952 | 55,815 | 11,804 | 3,333 | - |
| Borrowing interest payments | 9,405 | 6,715 | 2,416 | 274 | - |
| Acceptance | 5,796 | 5,796 | - | - | - |
| Trade and other payables | 18,156 | 18,054 | 102 | - | - |

At 31 March 2019, the Company had facilities available of ₹ 60,950 lakhs (31 March 2018: ₹ 71,354 lakhs) and had net undrawn amounts of ₹ 201 lakhs (31 March 2018: ₹ 414 lakhs) available.

**Interest rate risk**

The Company is exposed to interest rate risk as the Company has borrowed funds at floating interest rates. The risk is managed as the loans are at floating interest rates which is aligned to the market.

A uniform increase of 100 basis in interest rates against all borrowings in position as of 31 March 2018 would have decreased in the Company's net profit before tax by approximately ₹ 386 (2018: net profit before tax of ₹ 317). An equal and opposite impact would be experienced in the event of a decrease by a similar basis.

**47 Auditors' remuneration**

Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| **As auditor** | | |
| Statutory audit | 65 | 60 |
| Limited review | 15 | 25 |
| Tax audit | 7 | 7 |
| | **87** | **92** |
| **In other capacity** | | |
| Other services (certification fees) | 2 | 0 |
| | **2** | **0** |
| **Total** | **89** | **92** |

**48** Based on the information available with the Company, there are no dues payable as at the year end to micro, small and medium enterprises as defined in The Micro, Small & Medium Enterprises Development Act, 2006. This information has been relied upon by the statutory auditors of the Company.

**49** As per the section 135 of the Act, a Corporate Social Responsibility (CSR) committee has been formed by the Company. CSR objects chosen by the Company primarily consist of promoting education, promoting gender equality, empowering women, setting up homes and hostels for women and orphans etc. As per the provisions of the Act, gross amount required to be spent by the Company is ₹ 425 lakh (31 March 2018 : ₹ 448 lakh), of which ₹ 20 lakhs (31 March 2018 : ₹ Nil) have been spent during the current year. Sum of ₹ 20 lakh paid to ARPAN for Child Sexual Abuse Project.

**50 Post reporting date events**

No adjusting or significant non-adjusting events have occurred between 31 March 2019 and the date of authorisation of these standalone financial statements.

As per our report of even date
For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No.: 101720W/W100355

**For and on behalf of Board of Directors**

**Amit Chaturvedi**
Partner

Membership No: 103141

**Sunil Arjan Lulla**
Executive Vice Chairman & Managing Director
(DIN: 00243191)

**Sunil Srivastav**
Non Executive Independent Director
(DIN: 00237561)

**Subramaniam Lakshminarayanan**
Non Executive Independent Director
(DIN: 07972480)

**Farokh P. Gandhi**
Chief Financial Officer

**Abhishekh Kanoi**
Vice President - Company Secretary and Compliance Officer

Place: Mumbai
Date : 23 May 2019

Place: Mumbai
Date : 23 May 2019

# INDEPENDENT AUDITOR'S REPORT

To the Members of
**Eros International Media Limited**

**Report on the Consolidated Financial Statements**

**Opinion**

We have audited the accompanying consolidated financial statements of **Eros International Media Limited** (hereinafter referred to as the "Holding Company") and its subsidiaries (Holding Company and its subsidiaries together referred to as "the Group"), which comprise the consolidated Balance Sheet as at 31 March 2019, and the consolidated Statement of Profit and Loss, including consolidated Other Comprehensive Income, the consolidated Cash Flow Statement and the consolidated Statement of Changes in Equity for the year then ended, and a summary of significant accounting policies and other explanatory information (hereinafter referred to as "the consolidated financial statements").

In our opinion and to the best of our information and according to the explanations given to us and based on the consideration of reports of other auditors on separate financial statements and on other financial information of the subsidiary companies, the aforesaid consolidated financial statements give the information required by the Companies Act, 2013 ("the Act") in the manner so required and give a true and fair view in conformity with the Indian Accounting Standards ("Ind AS") specified under Section 133 of the Act and other accounting principles generally accepted in India, of the state of affairs of the Company as at 31 March 2019, its profit including other comprehensive income, its cash flows and the statement of changes in equity for the year ended on that date.

**Basis for Opinion**

We conducted our audit in accordance with the Standards on Auditing ("SAs") specified under Section 143(10) of the Act. Our responsibilities under those Standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements section of our report. We are independent of the Company in accordance with the Code of Ethics issued by the Institute of Chartered Accountants of India (ICAI) together with the ethical requirements that are relevant to our audit of the consolidated financial statements under the provisions of the Act and the Rules made thereunder, and we have fulfilled our other ethical responsibilities in accordance with these requirements and the ICAI's Code of Ethics. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our opinion on the consolidated financial statements.

**Key Audit Matters**

Key audit matters are those matters that, in our professional judgment, were of most significance in our audit of the consolidated financial statements of the current period. These matters were addressed in the context of our audit of the consolidated financial statements as a whole, and in forming our opinion thereon, and we do not provide a separate opinion on these matters.

| Key Audit Matters | Response to Key Audit Matters |
|---|---|
| **Revenue Recognition** | |
| *(Refer note 1 and para 'a' of the significant accounting policies)* | |
| The Group recognize theatrical income, license Fees and distribution revenue, net of sales related taxes, when control of the underlying products have been transferred along with satisfaction of performance obligation. | Our audit procedures to assess the appropriateness of revenue recognised included the following: |
| Recognition of revenue is driven by specific terms of related contracts. The Group has applied Ind AS 115 from 1 April 2018 and has evaluated all its contracts with respect to the new accounting guidance. | • Obtaining an understanding of an assessing the design, implementation and operating effectiveness of the Group's key internal controls over the revenue recognition process. <br><br> • Examination of contracts entered into close to year end to ensure revenue recognition is made in correct period. <br><br> • Testing a sample of contracts from various revenue streams by agreeing information back to contracts and proof of delivery or transmission as appropriate and ensure revenue recognition is in accordance with principles of Ind AS 115. |
| The various streams of revenue, together with the level of judgement involved make its accounting treatment a significant matter for our audit. | • Assessing the adequacy of Group's disclosure in accordance with requirements of Ind AS 115. <br><br> Our testing as described above showed that revenue has been recorded in accordance with the terms of underlying contracts and accounting policy in this area. The disclosures made relating to revenues are in agreement with Ind AS 115. |

CORPORATE OVERVIEW I MANAGEMENT REPORT I **FINANCIAL MANAGEMENT**

| Key Audit Matters | Response to Key Audit Matters |
|---|---|
| **Content Advances** | |
| Group enters into agreements with production houses to develop future film content. Advances are given as per terms of agreements. Such content advances are monitored by management of the Group for recoverability and appropriate write offs are taken when film production does not seem viable and refund of advance is not probable basis management evaluation.<br><br>The Content advances are transferred to film and rights at the point at which the content is first exploited. Provision is made as per provision policy in respect of content advances against which content has not been delivered by vendor within agreed timelines or where projects are at standstill/put on hold for substantial period of time.<br><br>Because of the significance of content advances to the balance sheet and of the significant degree of management judgment involved in evaluating the adequacy of the allowance for content advances, we identified this area as key audit matter. | Our audit procedures with respect to content advance, delivery of the content and it's impairment includes:<br><br>• Obtaining an understanding of and assessing the design, implementation and operating effectiveness of the Group's key controls over the processes of authorisation of content advances and tracking of receipt of related content as per agreement.<br><br>• Examination of contracts on sample basis entered by the Group and agreeing with the schedule of content advance.<br><br>• Reviewing ageing of advances to determine the adequacy of the provision made as per provisioning policy.<br><br>• Testing of the amounts transferred to film and rights account on sample basis on delivery of content by vendor.<br><br>• Circulating and obtaining independent confirmations from parties on the outstanding balances on sample basis. Testing the reconciliation, if any between the balances confirmed by party and balance in the books.<br><br>• Conducting discussion with the management and reviewing, on sample basis, the project status prepared by management for determining the adequacy of impairment provisions where balances are still pending to be adjusted against the content to be delivered by the party.<br><br>The results of our testing of confirmations floated and other test as described above, were satisfactory and concluded that provision made for impairment of content advance was appropriate. |
| **Amortisation of Film and Content Rights**<br>*(Refer note 1 and para 'd' of the significant accounting policies)* | |
| The cost incurred on acquisition of film and content rights are amortised over the period. Group carries out stepped up amortisation of film content, with higher amortisation in year of film release and lower amortisation in later periods as per the policy disclosed in significant accounting policy.<br><br>Such amortisation policy has been derived basis management's expectation of overall performance of films based on historical trends. The Group maintains detailed content wise information relating to historical trends and future benefits from content through theatrical sales, sale of satellite or television and other forms of monetisation of the content.<br><br>Determination of amortisation policy and assessing impairment of content asset involves significant judgement and estimates since it is dependent on various internal and external factors.<br><br>Because of the significance of the amortisation of content and film rights to balance sheet together with the level of judgement involved make its accounting treatment a significant matter for our audit. | Our audit procedures to test amortisation/ impairment of film content included the following:<br><br>• Assessing the design, implementation and operating effectiveness of the Group's key internal controls over the processes of maintenance and updation of master files containing data on the film rights carrying value and the related amortisation computations thereof.<br><br>• Testing, on sample basis, the mathematical accuracy of the acquisition cost of film and content rights, associated amortisation charge and additions and disposals to third party supporting documents.<br><br>• Discussing the expectations of the selected films and shows with key personnel, including those outside of finance, to ensure its consistency of expected performance with key assumptions.<br><br>• Determining the overall assumptions used by management for amortisation policy is appropriate based on the expected utilisation of benefits of the underlying content.<br><br>• Assessing management's historical forecasting accuracy by comparing past assumptions to actual outcomes.<br><br>• The carrying value of the content and film cost were tested for impairment based on the valuation model. We tested the historical data used for valuation, challenged the terminal growth and discount rates used and considered the reasonableness of the sensitivity assessment applied.<br><br>The results of the test described as above, were satisfactory and amortisation charged for content and film right was found satisfactory. |

**EROS INTERNATIONAL MEDIA LIMITED    99**

| Key Audit Matters | Response to Key Audit Matters |
|---|---|

### Trade Receivables

*(Refer note 1 and para 'i' of the significant accounting policies)*

| | |
|---|---|
| The Group is required to regularly assess the recoverability of its trade receivables. Management assesses the level of allowance for expected credit loss required at each reporting date after taking into account the ageing analysis of trade receivables and other historical and current factors specific to individual accounts. | Our audit procedures to assess the recoverability of trade receivables included the following: |

Our audit procedures to assess the recoverability of trade receivables included the following:

- Tested the accuracy of aging of trade receivables at year end on a sample basis.

- Assessed the recoverability of the unsettled receivables on a sample basis through our evaluation of management's assessment with reference to the credit profile of the customers, historical payment pattern of customers, publicly available information and latest correspondence with customers and to consider if any additional provision should be made.

The recoverability of trade receivables was significant to our audit because of the significance of trade receivables to balance sheet and involvement of significant degree of management judgement involved in evaluating the adequacy of the allowance for expected credit loss.

- Tested subsequent settlement of trade receivables after the balance sheet date on a sample basis, if any.

- Circulating and obtaining independent customers confirmation on the outstanding balances on sample basis. Testing the reconciliation, if any between the balances confirmed by customer and balance in the books on sample basis.

- In assessing the appropriateness of the overall provision for impairment we considered the management's application of policy for recognizing provisions which included assessing whether the calculation was in accordance with IND AS 109 and comparing the Group's provisioning rates against historical collection data.

The results of the test described as above, were satisfactory and provision made for expected credit loss/doubtful debt was found satisfactory.

## Other Information

The Company's Board of Directors is responsible for the other information. The other information comprises the information included in the Annual Report, but does not include the consolidated financial statements and our auditor's report thereon.

Our opinion on the consolidated financial statements does not cover the other information and we do not express any form of assurance conclusion thereon.

In connection with our audit of the financial statements, our responsibility is to read the other information and, in doing so, consider whether the other information is materially inconsistent with the financial statements or our knowledge obtained in the audit or otherwise appears to be materially misstated. If, based on the work we have performed, we conclude that there is a material misstatement of this other information; we are required to report that fact. We have nothing to report in this regard.

## Management Responsibility for the Consolidated Financial Statements

The Holding Company's Board of Directors is responsible for the matters stated in Section 134(5) of the Act, with respect to the preparation of these Consolidated Financial Statements that give a true and fair view of the consolidated financial position, consolidated financial performance including consolidated other comprehensive income, consolidated cash flows and the consolidated statement of changes in equity of the Group in accordance with the accounting principles generally accepted in India, including the Indian Accounting Standards ("Ind AS") specified under Section 133 of the Act, read with the Companies (Indian Accounting Standards) Rules, 2015, as amended.

The respective Board of Directors of the companies included in the Group are responsible for maintenance of adequate accounting records in accordance with the provisions of the Act for safeguarding the assets of the Group and for preventing and detecting frauds and other irregularities; selection and application of the appropriate accounting policies; making judgements and estimates that are reasonable and prudent; and design, implementation and maintenance of adequate internal financial controls, that were operating effectively for ensuring the accuracy and completeness of the accounting records, relevant to the preparation and fair presentation of the consolidated financial statements that give a true and fair view and are free from material misstatement, whether due to fraud or error, which have been used for the purpose of

preparation of the consolidated financial statements by the directors of the holding Company, as aforesaid.

In preparing the consolidated financial statements, the respective Board of Directors of the companies included in the Group are responsible for assessing the ability of the Group to continue as a going concern, disclosing, as applicable, matters related to going concern and using the going concern basis of accounting unless management either intends to liquidate the Group or to cease operations, or has no realistic alternative but to do so.

The respective Board of Directors of the companies included in the Group are responsible for overseeing the financial reporting process of the Group.

## Auditor's Responsibility

Our objectives are to obtain reasonable assurance about whether the consolidated financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance, but is not a guarantee that an audit conducted in accordance with SAs will always detect a material misstatement when it exists. Misstatements can arise from fraud or error and are considered material if, individually or in the aggregate, they could reasonably be expected to influence the economic decisions of users taken on the basis of these consolidated financial statements.

As part of an audit in accordance with SAs, we exercise professional judgment and maintain professional scepticism throughout the audit. We also:

- Identify and assess the risks of material misstatement of the financial statements, whether due to fraud or error, design and perform audit procedures responsive to those risks, and obtain audit evidence that is sufficient and appropriate to provide a basis for our opinion. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control.

- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances. Under Section 143(3)(i) of the Act, we are also responsible for expressing our opinion on whether the Company has adequate internal financial controls system in place and the operating effectiveness of such controls.

- Evaluate the appropriateness of accounting policies used and the reasonableness of accounting estimates and related disclosures made by management.

- Conclude on the appropriateness of management's use of the going concern basis of accounting and, based on the audit evidence obtained, whether a material uncertainty exists related to events or conditions that may cast significant doubt on the ability of the Group to continue as a going concern. If we conclude that a material uncertainty exists, we are required to draw attention in our auditor's report to the related disclosures in the consolidated financial statements or, if such disclosures are inadequate, to modify our opinion. Our conclusions are based on the audit evidence obtained up to the date of our auditor's report. However, future events or conditions may cause the Group to cease to continue as a going concern.

- Evaluate the overall presentation, structure and content of the consolidated financial statements, including the disclosures, and whether the consolidated financial statements represent the underlying transactions and events in a manner that achieves fair presentation.

- Obtain sufficient appropriate audit evidence regarding the financial information of the entities or business activities within the Group to express an opinion on the consolidated financial statements. We are responsible for the direction, supervision and performance of the audit of the financial statements of such entities included in the consolidated financial statements of which are the independent auditors. For the other entities included in the consolidated financial statements, which have been audited by other auditors, such other auditors remain responsible for the direction, supervision and performance of the audits carried out by them. We remain solely responsible for our audit opinion.

We communicate with those charged with governance of the Holding Company and such other entities included in the consolidated financial statements of which we are the independent auditors regarding, among other matters, the planned scope and timing of the audit and significant audit findings, including any significant deficiencies in internal control that we identify during our audit.

We also provide those charged with governance with a statement that we have complied with relevant ethical requirements regarding independence, and to communicate with them all relationships and other matters that may reasonably be thought to bear on our independence, and where applicable, related safeguards.

From the matters communicated with those charged with governance, we determine those matters that were of most significance in the audit of the consolidated financial statements of the current period and are therefore the key audit matters. We describe these matters in our auditor's report unless law or regulation precludes public disclosure about the matter or when, in extremely rare circumstances, we determine that a matter should not be communicated in our report because the adverse consequences of doing so would reasonably be expected to outweigh the public interest benefits of such communication.

## Other Matters

We did not audit the financial statements and other financial information of four subsidiaries whose financial statements reflect total assets of ₹ 121,128 lakhs as at 31 March 2019, total revenues of ₹ 32,824 lakhs and net cash outflows amounting to ₹ 1,127 lakhs for the year ended 31 March 2019. These financial statements and other financial information have been audited by other auditors whose financial statements and other financial information and auditor's reports have been furnished to us by the Management and our opinion on the consolidated financial statements, in so far as it relates to the amounts and disclosures included in respect of these subsidiaries, and our report in terms of sub-sections (3) and (11) of Section 143 of the Act, in so far as it relates to the aforesaid subsidiaries, is based solely on the reports of the other auditors.

Our opinion on the consolidated financial statements, and our report on Other Legal and Regulatory Requirements below, is not modified in respect of the above matters with respect to our reliance on the work done and the reports of the other auditors.

**Report on Other Legal and Regulatory Requirements**

As required by Section 143(3) of the Act, we report, to the extent applicable, that:

a) We have sought and obtained all the information and explanations which to the best of our knowledge and belief were necessary for the purposes of our audit of the aforesaid consolidated financial statements;

b) In our opinion, proper books of account as required by law relating to preparation of the aforesaid consolidated financial statements have been kept so far as it appears from our examination of those books and the reports of the other auditors;

c) The Consolidated Balance Sheet, the Consolidated Statement of Profit and Loss, and the Consolidated Cash Flow Statement dealt with by this Report are in agreement with the relevant books of account maintained for the purpose of preparation of the consolidated financial statements;

d) In our opinion, the aforesaid consolidated financial statements comply with the Ind AS specified under Section 133 of the Act read with Companies (Indian Accounting Standards) Rules, 2015 as amended;

e) On the basis of the written representations received from the directors of the Holding Company as on 31 March 2019 taken on record by the Board of Directors of the Holding Company and the reports of the statutory auditors of its subsidiary companies incorporated in India, none of the directors of the Group companies incorporated in India is disqualified as on 31 March 2019 from being appointed as a director in terms of Section 164(2) of the Act;

f) With respect to the adequacy of the internal financial controls over financial reporting of the Group and the operating effectiveness of such controls, refer to our separate Report in "**Annexure A**".

**EROS INTERNATIONAL MEDIA LIMITED    101**

Our report expresses an unmodified opinion on the adequacy and operating effectiveness of the Group internal financial controls over financial reporting;

g) With respect to the other matters to be included in the Auditor's Report in accordance with the requirements of section 197(16) of the Act, as amended, in our opinion and to the best of our information and according to the explanations given to us, the remuneration paid during the year by the Holding Company to its directors and the reports of the statutory auditors of its subsidiary companies incorporated in India, are in accordance with the provisions of section 197 of the Act.

h) With respect to the other matters to be included in the Auditor's Report in accordance with Rules 11 of the Companies (Audit and Auditors) Rules, 2014, as amended , in our opinion and to the best of our information and according to the explanations given to us:

　i. The consolidated financial statements disclose the impact of pending litigations on the consolidated financial position of the Group - Refer Note 39 to the consolidated financial statements;

　ii. The Group has made provision, as required under the applicable law or accounting standards, for material foreseeable losses, if any, on long-term contracts including derivative contracts; and

　iii. There has been no delay in transferring amounts, required to be transferred, to the Investor Education and Protection Fund by the Holding Company and its subsidiary companies incorporated in India.

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No. 101720W/W100355

**Amit Chaturvedi**
Partner
Membership No. 103141

Place : Mumbai
Dated : 23 May 2019

# ANNEXURE "A" TO THE INDEPENDENT AUDITOR'S REPORT ON THE CONSOLIDTAED FINANCIAL STATEMENTS OF EROS INTERNATIONAL MEDIA LIMITED

**(Referred to in paragraph 2 (f) under 'Report on Other Legal and Regulatory Requirements' of our report of even date)**

**Report on the Internal Financial Controls over Financial Reporting under Clause (i) of sub-section 3 of Section 143 of the Companies Act, 2013 ("the Act")**

We have audited the Internal Financial Control over financial reporting of **Eros International Media Limited** (hereinafter referred to as "the Holding Company") and its subsidiary companies which are companies incorporated in India as of 31 March 2019 in conjunction with our audit of the consolidated financial statements of the Company for the year then ended.

**Management's Responsibility for Internal Financial Control**

The respective Board of Directors of the Holding Company and its subsidiary companies incorporated in India, are responsible for establishing and maintaining internal financial controls based on the internal control over financial reporting criteria established by the Holding Company considering the essential components of internal control stated in Guidance Note issued by the ICAI. These responsibilities include the design, implementation and maintenance of adequate internal financial controls that were operating effectively for ensuring the orderly and efficient conduct of its business, including adherence to the respective company's policies, the safeguarding of its assets, the prevention and detection of frauds and errors, the accuracy and completeness of the accounting records, and the timely preparation of reliable financial information, as required under the Act.

**Auditor's Responsibility**

Our responsibility is to express an opinion on the Company's internal financial controls over financial reporting based on our audit. We conducted our audit in accordance with the Guidance Note on Audit of Internal Financial Controls Over Financial Reporting (the "Guidance Note") and the Standards on Auditing issued by ICAI and deemed to be prescribed under Section 143(10) of the Act, to the extent applicable to an audit of internal financial controls, both issued by the ICAI. Those Standards and the Guidance Note require that we comply with ethical requirements and plan and perform the audit to obtain reasonable assurance about whether adequate internal financial controls over financial reporting was established and maintained and if such controls operated effectively in all material respects.

Our audit involves performing procedures to obtain audit evidence about the adequacy of the internal financial controls system over financial reporting and their operating effectiveness. Our audit of internal financial controls over financial reporting included obtaining an understanding of internal financial controls over financial reporting, assessing the risk that a material weakness exists, and testing and evaluating the design and operating effectiveness of internal control based on the assessed risk. The procedures selected depend on the auditor's judgement, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error.

We believe that the audit evidence we have obtained and the audit evidence obtained by the other auditors in terms of their reports referred to in the Other Matters paragraph below, is sufficient and appropriate to provide a basis for our audit opinion on the Company's internal financial controls system over financial reporting.

**Meaning of Internal Financial Controls over Financial Reporting**

A company's internal financial control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of consolidated financial statements for external purposes in accordance with generally accepted accounting principles. A company's internal financial control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of consolidated financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the Company are being made only in accordance with authorisations of management and directors of the Company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorised acquisition, use, or disposition of the company's assets that could have a material effect on the consolidated financial statements.

**Inherent Limitations of Internal Financial Controls Over Financial Reporting**

Because of the inherent limitations of internal financial controls over financial reporting, including the possibility of collusion or improper management override of controls, material misstatements due to error or fraud may occur and not be detected. Also, projections of any evaluation of the internal financial controls over financial reporting to future periods are subject to the risk that the internal financial control over financial reporting may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

**Other Matters**

Our report under Section 143(3)(i) of the Act on the adequacy and operating effectiveness of the internal financial controls over financial reporting of the Holding Company, in so far as it relates to separate financial statements of two subsidiary companies incorporated in India, is based on the corresponding reports of the auditors of such subsidiary companies incorporated in India.

**Opinion**

In our opinion, to the best of our information and according to the explanations given to us and based on the consideration of reports of other auditors, as referred to in Other Matters paragraph, the Holding Company and its subsidiary companies incorporated in India, have maintained in all material respects, an adequate internal financial controls system over financial reporting and such internal financial controls over financial reporting were operating effectively as at 31 March 2019, based on the internal control over financial reporting criteria established by the Holding Company considering the essential components of internal control stated in the Guidance Note on Audit of Internal Financial Controls Over Financial Reporting (the "Guidance Note") issued by the Institute of Chartered Accountants of India ("ICAI").

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No. 101720W/W100355

**Amit Chaturvedi**
Partner
Membership No. 103141

Place : Mumbai
Dated : 23 May 2019

# Consolidated Balance Sheet
**as at 31 March 2019**

Amount ₹ in lakhs

| Particulars | Notes | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|---|
| **Assets** | | | |
| **Non-current assets** | | | |
| Property, plant & equipment | 2 | 3,838 | 4,100 |
| Intangible assets | | | |
| a) Content advances | 3 | 1,58,315 | 1,51,234 |
| b) Film rights | 3 | 91,234 | 1,05,143 |
| c) Others intangible assets | 3 | 1,340 | 1,590 |
| d) Intangible assets under development | 3 | 9,049 | 7,079 |
| e) Goodwill | 3 | 1,735 | 1,283 |
| Financial assets | | | |
| a) Loans | 4 | 44,484 | 11,862 |
| b) Restricted bank deposits | 10 | 511 | 716 |
| c) Other financial assets | 5 | 795 | 789 |
| Other non-current assets | 6 | 6,391 | 4,686 |
| **Total non-current assets** | | **3,17,692** | **2,88,482** |
| **Current assets** | | | |
| Inventories | 7 | 301 | 187 |
| Financial assets | | | |
| a) Investments | | 0 | 0 |
| b) Trade and other receivables | 8 | 79,352 | 69,857 |
| c) Cash & cash equivalents | 9 | 14,111 | 14,230 |
| d) Restricted bank deposits | 10 | 5,994 | 3,776 |
| e) Loans and advances | 11 | 1,827 | 1,167 |
| f) Other financial assets | 12 | 998 | 302 |
| Other current assets | 13 | 297 | 683 |
| **Total current assets** | | **1,02,880** | **90,202** |
| **Total assets** | | **4,20,572** | **3,78,684** |
| | | | |
| **Equity and Liabilities** | | | |
| **Equity** | | | |
| Equity share capital | 14 | 9,551 | 9,497 |
| Other equity | 15 | 2,47,660 | 2,14,803 |
| Equity attributable to owners | | **2,57,211** | **2,24,300** |
| Non-controlling Interests | 16 | 1,028 | 1,288 |
| **Total equity** | | **2,58,239** | **2,25,588** |
| **Liabilities** | | | |
| **Non-current liabilities** | | | |
| Financial liabilities | | | |
| a) Borrowings | 17 | 8,724 | 14,952 |
| b) Trade payables | 18 | 108 | 102 |
| c) Other financial liabilities | 19 | 25 | - |
| Employee benefit obligations | 20 | 435 | 487 |
| Deferred tax liabilities | 21 | 17,958 | 24,501 |
| Other non-current liabilities | 22 | 10,050 | 1,512 |
| **Total non-current liabilities** | | **37,300** | **41,554** |
| **Current liabilities** | | | |
| Financial liabilities | | | |
| a) Borrowings | 23 | 45,268 | 46,808 |
| b) Acceptances | 24 | 5,796 | 5,796 |
| c) Trade payables | 25 | 31,070 | 32,327 |
| d) Other financial liabilities | 26 | 7,640 | 9,066 |
| Employee benefit obligations | 27 | 372 | 224 |
| Current tax liabilities | 28 | 11,400 | 3,684 |
| Other current liabilities | 29 | 23,487 | 13,637 |
| **Total current liabilities** | | **1,25,033** | **1,11,542** |
| **Total liabilities** | | **162,333** | **1,53,096** |
| **Total equity and liabilities** | | **4,20,572** | **3,78,684** |
| Significant Accounting Policies and Key Accounting Estimates and Judgements | 1 | | |
| Notes to the Financial Statements | 2-51 | | |

As per our report of even date

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No.: 101720W/W100355

For and on behalf of Board of Directors

**Amit Chaturvedi**
Partner
Membership No: 103141

**Sunil Arjan Lulla**
Executive Vice Chairman &
Managing Director
(DIN: 00243191)

**Sunil Srivastav**
Non Executive Independent
Director
(DIN: 00237561)

**Subramaniam Lakshminarayanan**
Non Executive Independent
Director
(DIN: 07972480)

**Farokh P. Gandhi**
Chief Financial Officer

**Abhishekh Kanoi**
Vice President - Company Secretary
and Compliance Officer

Place: Mumbai
Date : 23 May 2019

Place: Mumbai
Date : 23 May 2019

# Consolidated Statement of Profit and Loss
**for the year ended 31 March 2019**

Amount ₹ in lakhs

| Particulars | Notes | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|---|
| **Revenue** | | | |
| Revenue from operations | 30 | 1,03,130 | 96,016 |
| Other income | 31 | 10,839 | 4,985 |
| **Total revenue** | | **1,13,969** | **1,01,001** |
| **Expenses** | | | |
| Purchases/operating expenses | 32 | 47,319 | 39,927 |
| Changes in inventories | 33 | (114) | (141) |
| Employee benefits expense | 34 | 5,079 | 5,894 |
| Finance costs | 35 | 7,748 | 8,053 |
| Depreciation and amortisation expense | 36 | 909 | 1,028 |
| Other expenses | 37 | 21,265 | 17,505 |
| **Total expenses** | | **82,206** | **72,266** |
| **Profit before tax** | | **31,763** | **28,735** |
| **Tax expense** | | | |
| Current tax | 21 | 11,905 | 9,717 |
| Deferred tax | 21 | (6,790) | (4,104) |
| | | 5,115 | 5,613 |
| **Profit for the year** | | **26,648** | **23,122** |
| **Other Comprehensive Income** | | | |
| **(i) Items that will not be reclassified to profit or loss** | | | |
| Remeasurement gain on definted benfit plan | | 61 | 111 |
| Income tax effect | | (21) | (38) |
| **(i) Items that will be reclassified to profit or loss** | | | |
| Exchange differences on translating foreign operations | | 5,094 | (22) |
| **Total Other Comprehensive Income for the year** | | **5,134** | **51** |
| **Total Comprehensive Income for the year** | | **31,782** | **23,173** |
| **Net Profit attributable to :** | | | |
| a) Owners of the Company | | 26,908 | 22,934 |
| b) Non Controlling Interest | | (260) | 188 |
| **Other Comprehensive Income attributable to :** | | | |
| a) Owners of the Company | | 5,134 | 273 |
| b) Non Controlling Interest | | - | (222) |
| **Total Comprehensive Income attibutable to :** | | | |
| a) Owners of the Company | | 32,042 | 23,207 |
| b) Non Controlling Interest | | (260) | (34) |
| **Earnings per share of face value of ₹ 10 each** | | | |
| 1. Basic (in ₹) | 38 | 28.26 | 24.26 |
| 2. Diluted (in ₹) | 38 | 28.02 | 23.92 |
| Significant Accounting Policies and Key Accounting Estimates and Judgements | 1 | | |
| Notes to the Financial Statements | 2-51 | | |

As per our report of even date
For **Chaturvedi & Shah LLP**                     **For and on behalf of Board of Directors**
Chartered Accountants
Firm Registration No.: 101720W/W100355

**Amit Chaturvedi**              **Sunil Arjan Lulla**              **Sunil Srivastav**              **Subramaniam Lakshminarayanan**
Partner                           Executive Vice Chairman &       Non Executive Independent      Non Executive Independent
Membership No: 103141            Managing Director                Director                        Director
                                  (DIN: 00243191)                  (DIN: 00237561)                 (DIN: 07972480)

                                  **Farokh P. Gandhi**             **Abhishekh Kanoi**
                                  Chief Financial Officer          Vice President - Company Secretary
                                                                   and Compliance Officer

Place: Mumbai                     Place: Mumbai
Date : 23 May 2019                Date : 23 May 2019

**EROS INTERNATIONAL MEDIA LIMITED    105**

# Consolidated Statement of Changes in Equity
**As at 31 March 2019**

**A. Equity share capital**

| | Number | Amount ₹ in lakhs |
|---|---|---|
| **Balance as at 31 March 2017** | **93,858,717** | **9,385** |
| Add: Issued on exercise of employee share options | 1,113,160 | 112 |
| **Balance as at 31 March 2018** | **94,971,877** | **9,497** |
| Add: Issued on exercise of employee share options | 536,263 | 54 |
| **Balance as at 31 March 2019** | **95,508,140** | **9,551** |

**B. Other equity**

Amount ₹ in lakhs

| Particulars | Securities Premium Reserve | General Reserves and Capital Reserve | Share Options Outstanding | Retained Earnings | Foreign Currency Translation Reserve | Other comprehensive income / (loss) for the year | Total Other Reserve | Non-Controlling Interest | Total Equity |
|---|---|---|---|---|---|---|---|---|---|
| **Balance at 31 March 2017** | **38,141** | **564** | **2,645** | **1,44,499** | **5,668** | **4** | **1,91,521** | **(466)** | **1,91,055** |
| Profit for the year | - | - | - | 22,934 | - | - | 22,934 | 188 | 23,122 |
| Other comprehensive income / (loss) for the year | - | - | - | - | 200 | 73 | 273 | (222) | 51 |
| Divestment of subsidiary | - | - | - | - | (1,214) | - | (1,214) | 1,788 | 574 |
| **Total Comprehensive income/ (loss) for the year** | **-** | **-** | **-** | **22,934** | **(1,014)** | **73** | **21,993** | **1,754** | **23,747** |
| Transfer from/to share option outstanding account | 2,110 | - | (2,110) | - | - | - | - | - | - |
| Employee stock options exercised during the year | 247 | - | - | - | - | - | 247 | - | 247 |
| Employee stock option compensation expense | - | - | 1,042 | - | - | - | 1,042 | - | 1,042 |
| **Balance as at 31 March 2018** | **40,498** | **564** | **1,577** | **1,67,433** | **4,654** | **77** | **214,803** | **1,288** | **216,091** |
| Profit for the year | - | - | - | 26,908 | - | - | 26,908 | (260) | 26,648 |
| Other comprehensive income / (loss) for the year | - | - | - | - | 5,094 | 39 | 5,133 | - | 5,133 |
| **Total Comprehensive income/ (loss) for the year** | **-** | **-** | **-** | **26,908** | **5,094** | **39** | **32,041** | **(260)** | **31,781** |
| Transfer from/to share option outstanding account | 1,049 | - | (1,049) | - | - | - | - | - | - |
| Employee stock option compensation expense | - | - | 816 | - | - | - | 816 | - | 816 |
| **Balance as at 31 March 2019** | **41,547** | **564** | **1,344** | **1,94,341** | **9,748** | **116** | **2,47,660** | **1,028** | **2,48,688** |

As per our report of even date

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No.: 101720W/W100355

For and on behalf of Board of Directors

**Amit Chaturvedi**
Partner
Membership No: 103141

**Sunil Arjan Lulla**
Executive Vice Chairman &
Managing Director
(DIN: 00243191)

**Sunil Srivastav**
Non Executive Independent
Director
(DIN: 00237561)

**Subramaniam Lakshminarayanan**
Non Executive Independent
Director
(DIN: 07972480)

**Farokh P. Gandhi**
Chief Financial Officer

**Abhishekh Kanoi**
Vice President - Company Secretary
and Compliance Officer

Place: Mumbai

Place: Mumbai

# Consolidated Cash Flow Statement
**For the year ended 31 March 2019**

Amount ₹ in lakhs

| Particulars | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---:|---:|
| **Cash flow from operating activities** | | |
| **Profit before tax** | **31,763** | **28,735** |
| Non-cash adjustments to reconcile Profit before tax to net cash flows | | |
| Depreciation and Other Amortization | 909 | 1,028 |
| Amortization on film rights | 29,643 | 28,838 |
| Trade receivables written off | 1,917 | 5,541 |
| Sundry balances written back | (74) | (98) |
| Content advances written off | 2,226 | 228 |
| Advances and deposits written off | 2,006 | 44 |
| Provision for doubtful trade receivables | 8,023 | 1,652 |
| Impact of expected credit loss | (6,645) | (2,490) |
| Finance costs | 8,082 | 8,317 |
| Finance income | (642) | (1,127) |
| (Gain) on sale of tangible assets (net) | 2 | (6) |
| Impairement loss on Investment in techzone | (452) | 777 |
| Expense on employee stock option scheme | 799 | 1,013 |
| Unrealised foreign exchange gain | (72) | 329 |
| **Operating profit before working capital changes** | **77,485** | **72,781** |
| Movements in working capital: | | |
| Increase/(Decrease) in trade payables | (3,607) | 2,340 |
| Decrease in other financial liabilities | (39) | (1,341) |
| Increase in Employee benefit obligations | 161 | 88 |
| Decrease in Other liabilities | 14,314 | (10,962) |
| Decrease in inventories | 9 | 29 |
| (Increase)/Decrease in trade receivables | (42,746) | (26,573) |
| Decrease in short-term loans | 1,472 | (9,648) |
| (Increase)/Decrease in other current assets | 199 | (266) |
| Increase in long-term loans | (1,691) | 3,024 |
| (Increase) /Decrease in other financial assets | (236) | (961) |
| **Cash generated from operations** | **45,321** | **28,511** |
| Taxes paid (net) | (5,124) | (4,984) |
| **Net cash generated from operating activities (A)** | **40,197** | **23,527** |
| **Cash flow from investing activities** | | |
| Purchase of tangible assets and other intangible assets | (436) | (691) |
| Purchase of intangible film rights and related content | (22,902) | (19,713) |
| Proceeds from fixed deposits with banks | (1,870) | 68 |
| Proceeds from sale of fixed assets | 1 | 22 |
| Interest received | 941 | 923 |
| **Net cash used in investing activities (B)** | **(24,266)** | **(19,391)** |

# Consolidated Cash Flow Statement
**For the year ended 31 March 2019**

Amount ₹ in lakhs

| Particulars | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---:|---:|
| **Cash flows from financing activities** | | |
| Proceeds from issue of equity shares | 71 | 358 |
| Repayment of long-term borrowings | (8,565) | (7,176) |
| Proceeds from long-term borrowings | 304 | 7,272 |
| Proceeds/(repayment) from short-term borrowings | (1,688) | 3,911 |
| Finance costs | (7,791) | (7,663) |
| **Net cash used in financing activities (C)** | **(17,669)** | **(3,298)** |
| **Net decrease in cash and cash equivalents (A + B + C)** | **(1,738)** | **838** |
| **Cash and cash equivalents at the beginning of the year** | **1,486** | **652** |
| Effect of exhange rate on consolidation of foreign subsidiaries | 898 | 3 |
| De-recognition on divestment of subsidiaries | - | (7) |
| **Cash and cash equivalents at the end of the year** | **646** | **1,486** |

Change in liability arising from financing activities :-

| | Non current borrowings | Current borrowing | Acceptances | Total |
|---|---:|---:|---:|---:|
| **As on 1 April 2017** | **22,141** | **43,033** | **5,795** | **70,969** |
| Cash Flows | 96 | 3,910 | 1 | 4,007 |
| Adjustments | (68) | (135) | - | (203) |
| **As on 31 March 2018** | **22,169** | **46,808** | **5,796** | **74,773** |
| **As on 1 April 2018** | **22,169** | **46,808** | **5,796** | **74,773** |
| Cash Flows | (8,261) | (1,688) | - | (9,949) |
| Adjustments | 16 | 148 | - | 164 |
| **As on 31 March 2019** | **13,924** | **45,268** | **5,796** | **64,988** |

Notes 1 to 51 form an integral part of these consolidated financial statements

As per our report of even date

For **Chaturvedi & Shah LLP**
Chartered Accountants
Firm Registration No.: 101720W/W100355

For and on behalf of Board of Directors

**Amit Chaturvedi**
Partner
Membership No: 103141

**Sunil Arjan Lulla**
Executive Vice Chairman &
Managing Director
(DIN: 00243191)

**Sunil Srivastav**
Non Executive Independent
Director
(DIN: 00237561)

**Subramaniam Lakshminarayanan**
Non Executive Independent
Director
(DIN: 07972480)

**Farokh P. Gandhi**
Chief Financial Officer

**Abhishekh Kanoi**
Vice President - Company Secretary
and Compliance Officer

Place: Mumbai
Date : 23 May 2019

Place: Mumbai
Date : 23 May 2019

# Summary of Significant Accounting Policies

**1.    Corporate Information and Significant accounting policies**

**Corporate Information**

Eros International Media Limited (the 'Company' or 'parent') was incorporated in India, under the Companies Act, 1956. The Company and its subsidiaries including step down subsidiaries (hereinafter collectively referred to as the "Group") is a global player within the Indian media and entertainment industry and is primarily engaged in the business of film production, exploitation and distribution. It operates on a vertically integrated studio model controlling content as well as distribution and exploitation across multiple formats globally, including cinema, digital, home entertainment and television syndication. Its shares are listed on leading stock exchanges in India (BSE Scrip Code: 533261; NSE Scrip Code: EROSMEDIA).

The Group is engaged in the business of sourcing Indian film content either through acquisition, co-production or production of such films, and subsequently exploiting and distributing such films in India through music release, theatrical distribution, DVD and VCD release, television licensing and new media distribution avenues such as cable or DTH licensing; and trading and exporting overseas rights to its parent Eros Worldwide FZ LLC.

**Statement of compliance**

These consolidated financial statements have been prepared in accordance with the Indian Accounting Standards (referred to as "Ind AS") as prescribed under section 133 of the Companies Act, 2013 read with Companies (Indian Accounting Standards) Rules as amended from time to time.

**Basis of preparation**

The consolidated financial statements have been prepared on accrual basis of accounting using historical cost basis, except for the following:

- Employee Stock Option Compensation measured at fair value (refer accounting policy on ESOP).

- Accounting of Business Combinations at fair value (refer accounting policy on Business Combinations).

All assets and liabilities have been classified as current or non-current as per the Group's normal operating cycle and other criteria set out in the Schedule III to the Act. The Group considers 12 months to be its normal operating cycle.

All values are rounded to the nearest rupees in Lacs, except where otherwise indicated. Amount in zero (0) represents amount below One (1) lakh.

**Principles of consolidation**

The Group consolidates results of the Company and entities controlled by the Company i.e. its subsidiary undertakings. Control exists when the Company has existing rights that give the Company the current ability to direct the activities which affect the entity's returns; the Company is exposed to or has rights to a return which may vary depending on the entity's performance; and the Company has the ability to use its powers to affect its own returns from its involvement with the entity.

Subsidiaries are consolidated by combining like items of assets, liabilities, equity, income, expenses and cash flows of the parent with those of its subsidiaries. The intra-company balances and transactions including unrealized gain / loss from such transactions are eliminated upon consolidation. These consolidated financial statements are prepared by applying uniform accounting policies in use. Non-controlling interests ("NCI") which represent part of the net profit or loss and net assets of subsidiaries that are not, directly or indirectly, owned or controlled by the Group, are excluded.

Changes in the Group's equity interest in a subsidiary that do not result in a loss of control are accounted for as equity transactions.

Business combinations are accounted for under the acquisition method. The acquisition method involves the recognition at fair value of all identifiable assets and liabilities, including contingent liabilities of the subsidiaries, at the acquisition date, regardless of whether or not they were recorded in the financial statements of the subsidiary prior to acquisition. On initial recognition, the assets and liabilities of the subsidiaries are included in the consolidated balance sheet at their fair values, which are also used as the bases for subsequent measurement in accordance with the Group accounting policies. Transaction costs that the Group incurs in connection with a business combination such as finder's fees, legal fees, due diligence fees, and other professional and consulting fees are expensed as incurred. Goodwill is stated after separating out identifiable intangible assets. Goodwill represents the excess of acquisition cost over the fair value of the Group's share of the identifiable net assets of the acquired subsidiary at the date of acquisition.

Changes in controlling interest in a subsidiary that do not result in gaining or losing control are not business combinations as defined by Ind AS 103 'Business Combinations'. The Group adopts the "equity transaction method" which regards the transaction as a realignment of the interests of the different equity holders in the Group. Under the equity transaction method an increase or decrease in the Group's ownership interest is accounted for as follows:

- the non-controlling component of equity is adjusted to reflect the non-controlling interest revised share of the net carrying value of the subsidiaries net assets;

- the difference between the consideration received or paid and the adjustment to non-controlling interests is debited or credited to equity;

- no adjustment is made to the carrying amount of goodwill or the subsidiaries' net assets as reported in the consolidated financial statements; and

- no gain or loss is reported in the Consolidated Statement of profit and loss.

**Associates**

Associates are all entities over which the Group has significant influence but not control or joint control. Assessment of whether the Group has significant influence or not is made based on Ind AS 28 – Associates and joint ventures, which requires duly considering potential voting rights if any. Investments in associates are accounted for using the equity method, after initially recognised at cost.

**Joint arrangements**

Investments in joint arrangements are classified as either joint operations or joint ventures. The classification depends on the contractual rights and obligations of each investor, rather than the legal structure of the joint arrangement. The Group has investments in joint ventures which are accounted using the equity method based on requirements of Ind AS 111 – Joint arrangements, after initially being recognised at cost in the consolidated balance sheet.

**Equity method**

Under the equity method of accounting, the investments are initially recognised at cost and adjusted thereafter to recognise the Group's

share of the post-acquisition profits or losses of the investee in profit and loss, and the Group's share of other comprehensive income of the investee in other comprehensive income.

Any excess/short of the amount of investments in associate or joint venture over the Group's portion of in net assets of associate or joint venture, at the date of investments is considered as goodwill/ capital reserve.

Dividends received or receivable from associates and joint ventures are recognised as a reduction in the carrying amount of the investment. When the Group's share of losses in an equity-accounted investment equals or exceeds its interest in the entity, including any other unsecured long-term receivables, the Group does not recognise further losses, unless it has incurred obligations or made payments on behalf of the other entity.

Unrealised gains on transactions between the Group and its associates and joint ventures are eliminated to the extent of the Group's interest in these entities. Unrealised losses are also eliminated unless the transaction provides evidence of an impairment of the asset transferred.

Accounting policies of joint ventures and associates are similar to the Group's accounting policies, therefore, no adjustment is required for the purposes of preparation of these consolidated financial statements. The financial statements of joint ventures and associates are prepared up to the same reporting date as that of the Group i.e. 31 March 2019. The carrying amount of equity accounted investments are tested for impairment in accordance with the policy described in accounting policies below.

**Significant accounting policies**

**a.    Revenue recognition**

Effective 1 April 2018, the Group has applied Ind AS 115 which establishes a comprehensive framework for determining whether, how much and when revenue is to be recognised. Ind AS 115 replaces Ind AS 18 Revenue and Ind AS 11 Construction Contracts. The Group has adopted Ind AS 115 using the modified retrospective effect method. The effect of initially applying this standard is recognised at the date of initial application (i.e. 1 April 2018). The standard is applied retrospectively only to contracts that are not completed as at the date of initial application and the comparative information in the statement of profit and loss is not restated – i.e. the comparative information continues to be reported under Ind AS 18 and Ind AS 11. Refer note 1(a) – Significant accounting policies – Revenue recognition in the Annual report of the Group for the year ended 31 March 2018, for revenue recognition policy as per Ind AS 18 and Ind AS 11. The impact of adoption of the standard on the financial statements of the Group is insignificant.

To determine whether to recognise revenue, the Group follows a 5-step process:

i.     Identifying the contract with a customer

ii.    Identifying the performance obligations

iii.   Determining the transaction price

iv.    Allocating the transaction price to the performance obligations

v.     Recognising    revenue    when/as    performance obligation(s) are satisfied

Revenue is recognized upon transfer of control of promised products or services to customers in an amount that reflects the consideration which the Group expects to receive in exchange for those products or services. To ensure collectability of such consideration and financial stability of the counterparty, the Group performs certain standard Know Your Client (KYC) procedures based on their locations and evaluates trend of past collection.

Revenue is measured based on the transaction price, which is the consideration, adjusted for any discounts and incentives, if any, as specified in the contract with the customer. Revenue also excludes taxes collected from customers. In case of revenues which are subject to change, the Group estimates the amount to be received using the "most likely amount" approach, or the "expected value" approach, as appropriate. This amount is then included in the Group's estimate of the transaction price only if it is highly probable that a significant reversal of revenue will not occur once any uncertainty surrounding the bonus is resolved. In making this assessment the Group considers its historical performance on similar contracts.

The Group recognises contract liabilities for consideration received in respect of unsatisfied performance obligations and reports these amounts as other liabilities in the statement of financial position (see Note 29). Similarly, if the Group satisfies a performance obligation before it receives the consideration, the Group recognises either a contract asset or a receivable in its statement of financial position, depending on whether something other than the passage of time is required before the consideration is due.

Consideration is generally due upon satisfaction of performance obligations and a receivable is recognised when it becomes unconditional. Generally, the credit period varies between 0-180 days from the shipment or delivery of goods or services as the case may be.

The transaction price, being the amount to which the Group expects to be entitled and has rights to under the contract is allocated to the identified performance obligations. The transaction price will also include an estimate of any variable consideration where the Group's performance may result in additional revenues based on the achievement of agreed targets.

The Group does not expect to have any contracts where the period between the transfer of the promised goods or services to the customer and payment by the customer exceeds one year. As a consequence, the Group does not adjust any of the transaction prices for the time value of money.

The Group disaggregates revenue from contracts with customers by geography and nature of services.

The following additional criteria apply in respect of various revenue streams within filmed entertainment:

Theatrical — Contracted minimum guarantees are recognized on the theatrical release date. The Group's share of box office receipts in excess of the minimum guarantee is recognized at the point they are notified to the Group.

Television — License fees received in advance which do not meet all the above criteria are included in deferred income until the above criteria is met.

Other — DVD, CD and video distribution revenue is recognized on the date the product is delivered or if licensed in line with the above criteria. Provision is made for physical returns where applicable. Digital and ancillary media revenues are recognized at the earlier of when the content is accessed or declared. Visual effects, production and other fees for services rendered by the Group and overhead recharges are recognized in the period in which they are earned and in certain cases, the stage of production is used to determine the proportion recognized in the period.

**Other income**

Dividend income is recognised when the Group's right to receive the payment is established, which is generally when shareholders approve the dividend.

Interest income is recognized on a time proportion basis taking into account the amount outstanding and the effective interest rate applicable.

**b.    Property, plant and equipment and depreciation**

Property, plant and equipment is stated at cost, net of accumulated depreciation and accumulated impairment losses, if any.

The cost of Property, Plant and Equipment comprises of its purchase price or construction cost, any costs directly attributable to bringing the asset into the location and condition necessary for it to be capable of operating in the manner intended by management, the initial estimate of any decommissioning obligation, if any, and borrowing costs for assets that necessarily take a substantial period of time to get ready for their intended use. Subsequent costs are included in the asset's carrying amount or recognised as a separate asset, as appropriate, only when it is probable that future economic benefits associated with the item will flow to the Group and the cost of the item can be measured reliably.

Capital Work-in-progress (CWIP) includes expenditure that is directly attributable to the acquisition/construction of **assets,** which are yet to be commissioned.

Depreciation is provided under written down value method at the rates and in the manner prescribed under Schedule II to the Companies Act, 2013.

**c.    Intangible assets**

Intangible assets acquired by the Group are stated at cost less accumulated amortisation less impairment loss, if any, (film production cost and content advances are transferred to film and content rights at the point at which content is first exploited).

Investments in films and associated rights, including acquired rights and distribution advances in respect of completed films, are stated at cost less amortisation less provision for impairment. Costs include production costs, overhead and capitalized interest costs net of any amounts received from third party investors. A charge is made to write down the cost of completed rights over the estimated useful lives, writing off more in year one which recognizes initial income flows and then the balance over a period of up to nine years, except where the asset is not yet available for exploitation. The average life of the assets is the lesser of 10 years or the remaining life of the content rights. The amortisation charge is recognized in the consolidated Statement of profit and loss within film right costs including amortisation costs. The determination of useful life is based upon Management's judgment and includes assumptions on the timing and future estimated revenues to be generated by these assets.

Intangible assets comprising film scripts and related costs are stated at cost less amortisation less provision for impairment. The script costs are amortized over a period of 3 years on a straight-line basis and the amortisation charge is recognized in the consolidated Statement of profit and loss within film right costs including amortisation costs. The determination of useful life is based upon Management's estimate of the period over which the Group explores the possibility of making films using the script.

Other intangible assets, which comprise internally generated and acquired software used within the Entity's digital, home entertainment and internal accounting activities, are stated at cost less amortisation less provision for impairment. A charge is made to write down the cost of completed rights over the estimated useful lives except where the asset is not yet available for exploitation. The average life of the assets is the lesser of 3 years or the remaining life of the asset.

The amortisation charge is recognized in the consolidated Statement of profit and loss within depreciation and amortisation expenses.

Goodwill represents excess of the consideration transferred in a business combination over the fair value of the Group's share of the identifiable net assets acquired. Goodwill is carried at cost less accumulated impairment losses. Gain on bargain purchase is recognized immediately after acquisition in the consolidated Statement of profit and loss.

**d.    Impairment of non-financial assets**

At each reporting date, for the purposes of assessing impairment, assets are grouped at the lowest levels for which there are separately identifiable cash flows (cash generating units). As a result, some assets are tested individually for impairment and some are tested at the cash generating unit level. Goodwill is allocated to those cash generating units that are expected to benefit from synergies of the related business combination and represent the lowest level within the Group at which management monitors the related cash flows.

Goodwill is tested for impairment at least annually. All other individual assets or cash generating units are tested for impairment whenever events or changes in circumstances indicate that the carrying amount may not be recoverable.

An impairment loss is recognised wherever the carrying amount of an asset exceeds its recoverable amount which represents the greater of the net selling price of assets and their 'value in use'. Impairment losses recognized for cash-generating units, to which goodwill has been allocated, are credited initially to the carrying amount of goodwill. Any remaining impairment loss is charged pro rata to the other assets in the cash generating unit.

In assessing value in use, the estimated future cash flows are discounted to their present value using a pre-tax discount rate that reflects current market assessments of the time value of money and the risks specific to the asset. In determining fair value less costs of disposal, recent market transactions are taken into account. If no such transactions can be identified, an appropriate valuation model is used. These calculations are corroborated by valuation multiples, quoted share prices for publicly traded companies or other available fair value indicators.

Film and content rights are stated at the lower of unamortized cost and estimated recoverable amounts. In accordance with Ind AS 36 'Impairment of Assets', film content costs are assessed for indication of impairment on a library basis as the nature of the Group's business, the contracts it has in place and the markets it operates in, do not yet make an ongoing individual film evaluation feasible with reasonable certainty. Impairment losses on content advances are recognized when film production does not seem viable and refund of the advance is not probable.

With the exception of goodwill, all assets are subsequently reassessed for indications that an impairment loss previously recognized may no longer exist.

**e.    Borrowing costs**

The Group is capitalising borrowing costs that are directly attributable to the acquisition or construction of qualifying assets. Qualifying assets are assets that necessarily take a substantial period of time to get ready for their intended use or sale.

Borrowings are recognised initially at fair value, net of transaction costs incurred. Borrowings are subsequently stated at amortized cost with any difference between the proceeds (net of transaction costs) and the redemption value

recognised in the consolidated Statement of profit and loss within Finance costs over the period of the borrowings using the effective interest method. Finance costs in respect of film productions and other assets which take a substantial period of time to get ready for use or for exploitation are capitalized as part of the assets. All other borrowing costs are recognized as expense in the period in which they are incurred and charged to the Consolidated Statement of Profit and Loss.

Borrowings are classified as current liabilities unless the Group has an unconditional right to defer settlement of the liability for at least 12 months after the consolidated balance sheet date.

**f.    Impairment of financial assets**

In accordance with Ind AS 109, the Group applies expected credit loss (ECL) model for measurement and recognition of impairment loss on risk exposure arising from financial assets like debt instruments measured at amortised cost e.g., trade receivables and deposits.

The Group follows 'simplified approach' for recognition of impairment loss allowance on trade receivables or contract revenue receivables. The application of simplified approach does not require the Group to track changes in credit risk. Rather, it recognises impairment loss allowance based on lifetime ECLs at each reporting date, right from its initial recognition.

For recognition of impairment loss on other financial assets and risk exposure, the Group determines that whether there has been a significant increase in the credit risk since initial recognition. If credit risk has not increased significantly, 12-month ECL is used to provide for impairment loss. However, if credit risk has increased significantly, lifetime ECL is used. If, in a subsequent period, credit quality of the instrument improves such that there is no longer a significant increase in credit risk since initial recognition, then the entity reverts to recognising impairment loss allowance based on 12-month ECL.

Lifetime ECL are the expected credit losses resulting from all possible default events over the expected life of a financial instrument. The 12-month ECL is a portion of the lifetime ECL which results from default events that are possible within 12 months after the reporting date.

ECL is the difference between all contractual cash flows that are due to the Group in accordance with the contract and all the cash flows that the entity expects to receive (i.e., all cash shortfalls), discounted at the original EIR. When estimating the cash flows, an entity is required to consider all contractual terms of the financial instrument (including prepayment, extension, call and similar options) over the expected life of the financial instrument. However, in rare cases when the expected life of the financial instrument cannot be estimated reliably, then the entity is required to use the remaining contractual term of the financial instrument.

ECL impairment loss allowance (or reversal) recognized during the period is recognized as income/ expense in the consolidated Statement of profit and loss. This amount is reflected under the head 'other income' or 'other expenses' in the consolidated Statement of profit and loss.

For assessing increase in credit risk and impairment loss, the Group combines financial instruments on the basis of shared credit risk characteristics with the objective of facilitating an analysis that is designed to enable significant increases in credit risk to be identified on a timely basis.

**g.    Inventories**

Inventories primarily comprise of music CDs and DVDs, and are valued at the lower of cost and net realizable value.

Cost in respect of goods for resale is defined as all costs of purchase, costs of conversion and other costs incurred in bringing the inventories to their present location and condition. Cost in respect of raw materials is purchase price.

Purchase price is assigned using a weighted average basis. Net realisable value is the estimated selling price in the ordinary course of business less the estimated costs of completion and the estimated costs necessary to make the sale.

**h.    Provisions, Contingent Liabilities and Contingent Assets**

Provisions are recognized when the Group has a present legal or constructive obligation as a result of a past event, it is more likely than not that an outflow of resources will be required to settle the obligations and can be reliably measured. Provisions are measured at management's best estimate of the expenditure required to settle the obligations at the consolidated balance sheet date. If the effect of the time value of money is material, provisions are discounted using a current pre-tax rate that reflects, when appropriate, the risks specific to the liability. When discounting is used, the increase in the provision due to the passage of time is recognised as a finance cost.

Contingent liabilities are not recognized in the consolidated financial statements but are disclosed by way of notes to accounts unless the possibility of an outflow of economic resources is considered remote.

Contingent assets are not recognized in financial statements. However, the same is disclosed, where an inflow of economic benefit is probable.

**i.    Employee benefits**

**Short term employee benefits obligations**

Short-term employee benefits are recognized as an expense in the consolidated Statement of Profit and Loss for the year in which related services are rendered.

**Post-employment benefits and other long term employee benefits**

**Defined contribution plan**

Provident fund and National Pension scheme: The Group's contributions paid or payable during the year to the provident fund, employee's state insurance corporation and National pension scheme are recognized in the consolidated Statement of Profit and Loss. This fund is administered by the respective Government authorities, and the Group has no further obligation beyond making its contribution, which is expensed in the year to which it pertains.

**Defined benefit plan**

Gratuity: The Group's liability towards gratuity is determined using the projected unit credit method which considers each period of service as giving rise to an additional unit of benefit entitlement and measures each unit separately to build up the final obligation. The cost for past services is recognized on a straight-line basis over the average period until the amended benefits become vested. Re-measurement gains and losses are recognized immediately in the Other Comprehensive Income as income or expense and are not reclassified to the consolidated Statement of profit and loss in subsequent periods. Obligation is measured at the present value of estimated future cash flows using a discounted rate that is determined by reference to market yields at the consolidated balance sheet date on government bonds where the currency and terms of the government bonds are consistent with the currency and estimated terms of the defined benefit obligation.

Compensated absences: Accumulated compensated absences are expected to be availed or encashed within

12 months from the end of the year and are treated as short-term employee benefits. The obligation towards the same is measured at the expected cost of accumulating compensated absences as the additional amount expected to be paid as a result of the unused entitlement as at the year end.

**Employee stock option plan**

In accordance with Ind AS 102 'Share Based Payments', the fair value of shares or options granted is recognized as personnel costs with a corresponding increase in equity. The fair value is measured at the grant date and spread over the period during which the recipient becomes unconditionally entitled to payment unless forfeited or surrendered.

The fair value of share options granted is measured using the Black Scholes model, each taking into account the terms and conditions upon which the grants are made. At each consolidated balance sheet date, the Group revises its estimate of the number of equity instruments expected to vest as a result of non-market based vesting conditions. The amount recognized as an expense is adjusted to reflect the revised estimate of the number of equity instruments that are expected to become exercisable, with a corresponding adjustment to equity. The Group's share option plan does not feature any cash settlement option.

Upon exercise of share options, the proceeds received net of any directly attributable transaction costs up to the nominal value of the shares are allocated to equity with any excess being recorded as securities premium.

**j.    Leases**

The determination of whether an arrangement is (or contains) a lease is based on the substance of the arrangement at the inception of the lease. The arrangement is, or contains, a lease if fulfillment of the arrangement is dependent on the use of a specific asset or assets and the arrangement conveys a right to use the asset or assets, even if that right is not explicitly specified in an arrangement.

A lease is classified at the inception date as a finance lease or an operating lease. Leases in which significantly all the risks and rewards incidental to ownership are transferred to the lessee are classified as finance leases. All other leases are operating leases. Payments under operating leases are charged to the consolidated Statement of Profit and Loss on a straight-line basis over the period of the lease.

**As a lessee**

**Finance lease**

Leases are classified as finance leases (including those for land), if substantially all the risks and rewards incidental to ownership of the leased asset is transferred to the lessee.

At the commencement of the lease term, the Group recognises finance leases as assets and liabilities in its consolidated balance sheet at amounts equal to the fair value of the leased property or, if lower, the present value of the minimum lease payments, each determined at the inception of the lease. The corresponding rental obligations, net of finance charges, are included in borrowings or other financial liabilities as appropriate. Any indirect costs of the Group are added to the amount recognised as an asset.

Minimum lease payments are apportioned between the finance charge and the reduction of the outstanding liability. The finance cost is charged to the profit or loss over the lease period so as to produce a constant periodic rate of interest on the remaining balance of the liability for each period.

**Operating lease**

Leases (including those for land) which are not classified as finance leases are considered as operating lease.

Lease payments under an operating lease are recognized as an expense on a straight-line basis over the lease term unless either:

A.    another systematic basis is more representative of the time pattern of the user's benefit even if the payments to the lessors are not on that basis; or

B.    the payments to the lessor are structured to increase in line with expected general inflation to compensate for the lessor's expected inflationary cost increases. If payments to the lessor vary because of factors other than general inflation, then this condition is not met.

**As a lessor**

**Finance lease**

All assets given on finance lease are shown as receivables at an amount equal to net investment in the lease. Principal component of the lease receipts are adjusted against outstanding receivables and interest income is accounted by applying the interest rate implicit in the lease to the net investment.

**Operating lease**

Lease income from operating lease (excluding amount for services such as insurance and maintenance) is recognized in the consolidated Statement of Profit and Loss on a straight-line basis over the lease term, unless either:

A.    Another systematic basis is more representative of the time pattern of the user's benefit even if the payments to the Group are not on that basis; or

B.    The payments to the Group are structured to increase in line with expected general inflation to compensate for the Group's expected inflationary cost increases. If payments to the Group vary because of factors other than general inflation, then this condition is not met.

**k.    Foreign currency transactions**

Transactions in foreign currencies are translated at the rates of exchange prevailing on the dates of the transactions. Monetary assets and liabilities in foreign currencies are translated at the prevailing rates of exchange at the consolidated balance sheet date. Non-monetary items that are measured at historical cost in a foreign currency are translated at the exchange rate at the date of the transaction. Non-monetary items that are measured at fair value in a foreign currency are translated using the exchange rates at the date when the fair value was determined.

Any exchange differences arising on the settlement of monetary items or on translating monetary items at rates different from those at which they were initially recorded are recognized in the consolidated Statement of Profit and Loss in the period in which they arise. Non-monetary items carried at fair value that are denominated in foreign currencies are translated at rates prevailing at the date when the fair value was determined. Non-monetary items that are measured in terms of historical cost in a foreign currency are not retranslated.

The assets and liabilities in the financial statements of foreign subsidiaries are translated at the prevailing rate of exchange at the consolidated balance sheet date. Income and expenses are translated at the annual average exchange rate. The exchange differences arising from the retranslation of the foreign operations are recognized in Other Comprehensive Income and taken to the "currency translation reserve" in equity.

On disposal of a foreign operation the cumulative translation differences (including, if applicable, gains and losses on related hedges) are transferred to the Consolidated Statement of profit and loss as part of the gain or loss on disposal.

Items included in the Consolidated financial statements of each of the Group's entities are measured using the currency of the primary economic environment in which the entity operates ('the functional currency'). The Consolidated financial statements are presented in Indian Rupee (₹) which is Company's functional and presentation currency.

### I. Financial instrument

**Non-derivative financial instruments**

Financial assets and financial liabilities are recognized when the Group becomes party to the contractual provisions of the instrument.

Financial assets and liabilities are initially measured at fair value. Transaction costs that are directly attributable to the acquisition or issue of financial assets or liabilities (other than financial assets and liabilities at fair value through Statement of Profit and Loss) are added to or deducted from the fair value of the financial assets or financial liabilities, as appropriate, on initial recognition. Transaction costs directly attributable to the acquisition of financial assets or financial liabilities at fair value through Statement of Profit and Loss are recognized immediately in the consolidated Statement of Profit and Loss. Financial assets and financial liabilities are offset against each other and the net amount reported in the consolidated balance sheet if, and only if, there is a currently enforceable legal right to offset the recognized amounts and there is an intention to settle on a net basis, or to realize the assets and settle the liabilities simultaneously.

A financial instrument is measured at fair value through profit or loss if:

- it has been acquired principally for the purpose of selling/repurchasing it in the near term;

- on initial recognition it is part of a portfolio of identified financial instruments that the Group manages together and has a recent pattern of short term profit taking; or

- it is a derivative that is not designated in a hedging relationship.

The fair value of financial instruments denominated in a foreign currency is determined in that foreign currency and translated at the spot rate at the end of the reporting period. The foreign exchange component forms part of its fair value gain or loss. Therefore for financial instruments that are classified as fair value through Statement of Profit and Loss, the exchange component is recognized in Statement of Profit and Loss.

**Financial Assets**

Financial assets are divided into the following categories:

- financial assets carried at amortised cost
- financial assets at fair value through Other Comprehensive Income
- financial assets at fair value through Statement Profit and Loss;

Financial assets are assigned to the different categories by management on initial recognition, depending on the nature and purpose of the financial assets. The designation of financial assets is re-evaluated at every reporting date at which a choice of classification or accounting treatment is available.

**Financial assets carried at amortised cost**

A financial asset is subsequently measured at amortised cost if it is held within a business model whose objective is to hold the asset in order to collect contractual cash flows and the contractual terms of the financial asset give rise on specified dates to cash flows that are solely payments of principal and interest on the principal amount outstanding. These are non-derivative financial assets that are not quoted in an active market. Loans and receivables (including trade and other receivables, bank and cash balances) are measured subsequent to initial recognition at amortized cost using the effective interest method, less provision for impairment. Any change in their value through impairment or reversal of impairment is recognized in the consolidated Statement of Profit and Loss.

In accordance with Ind AS 109 "Financial Instruments", the Group recognizes impairment loss allowance on trade receivables and content advances based on historically observed default rates. Impairment loss allowance recognized during the year is charged to consolidated Statement of Profit and Loss.

**Financial assets at fair value through Other Comprehensive Income**

Financial assets at fair value through Other Comprehensive Income are non-derivative financial assets held within a business model whose objective is achieved by both collecting contractual cash flows and selling financial assets and the contractual terms of the financial asset give rise on specified dates to cash flows that are solely payments of principal and interest on the principal amount outstanding.

**Financial assets at fair value through profit or loss**

A financial asset which is not classified in any of the above categories are subsequently fair valued through profit or loss. It includes non-derivative financial assets that are either designated as such or do not qualify for inclusion in any of the other categories of financial assets. Gains and losses arising from investments classified under this category is recognized in the consolidated Statement of profit and loss when they are sold or when the investment is impaired.

In the case of impairment, any loss previously recognized in other comprehensive income is transferred to the consolidated Statement of profit and loss. Impairment losses recognized in the consolidated Statement of profit and loss on equity instruments are not reversed through the consolidated Statement of profit and loss. Impairment losses recognized previously on debt securities are reversed through the consolidated Statement of profit and loss when the increase can be related objectively to an event occurring after the impairment loss was recognized in the consolidated Statement of profit and loss.

When the Group considers that fair value of financial assets can be reliably measured, the fair values of financial instruments that are not traded in an active market are determined by using valuation techniques. The Group applies its judgment to select a variety of methods and make assumptions that are mainly based on market conditions existing at each consolidated balance sheet date. Equity instruments measured at fair value through profit or loss that do not have a quoted price in an active market and whose fair value cannot be reliably measured are measured at cost less impairment at the end of each reporting period.

An assessment for impairment is undertaken at least at each consolidated balance sheet date. A financial asset is derecognized only where the contractual rights to the cash flows from the asset expire or the financial asset is transferred and that transfer qualifies for derecognition. A financial asset is transferred if the contractual rights to receive the cash flows of the asset have been transferred or the Group retains the contractual rights to receive the cash flows of the asset but assumes a contractual obligation to pay the cash flows to one or more recipients. A financial asset that is transferred qualifies for derecognition if the Group transfers substantially all the risks and rewards of ownership of the asset, or if the Group neither retains nor transfers substantially all the

risks and rewards of ownership but does transfer control of that asset.

### Financial liabilities

Financial liabilities are classified as either 'financial liabilities at fair value through profit or loss' or 'other financial liabilities'. Financial liabilities are subsequently measured at amortised cost using the effective interest method or at fair value through profit or loss.

Financial liabilities are classified as at fair value through profit or loss when the financial liability is held for trading such as a derivative, except for a designated and effective hedging instrument, or if upon initial recognition it is thus designated to eliminate or significantly reduce measurement or recognition inconsistency or it forms part of a contract containing one or more embedded derivatives and the contract is designated as fair value through profit or loss.

Financial liabilities at fair value through profit or loss are stated at fair value. Any gains or losses arising of held for trading financial liabilities are recognized in profit or loss. Such gains or losses incorporate any interest paid and are included in the "other gains and losses" line item.

Other financial liabilities (including borrowing and trade and other payables) are subsequently measured at amortized cost using the effective interest method.

The effective interest method is a method of calculating the amortized cost of a financial liability and of allocating interest expense over the relevant period. The effective interest rate is the rate that exactly discounts estimated future cash payments (including all fees and points paid or received that form an integral part of the effective interest rate, transaction costs and other premiums or discounts) through the expected life of the financial liability, or (where appropriate) a shorter period, to the net carrying amount on initial recognition.

A financial liability is derecognized only when the obligation is extinguished, that is, when the obligation is discharged or cancelled or expires. Changes in fair value of liabilities are included in the consolidated Statement of profit and loss.

### m.   Taxes

Taxation on profit and loss comprises current tax and deferred tax. Tax is recognized in the consolidated Statement of profit and loss except to the extent that it relates to items recognized directly in equity or other comprehensive income in which case tax impact is also recognized in equity or other comprehensive income.

Current tax is provided at amounts expected to be paid (or recovered) using the tax rates and laws that have been enacted or substantively enacted at the consolidated balance sheet date along with any adjustment relating to tax payable in previous years.

Deferred income tax is provided in full, using the liability method, on temporary differences arising between the tax bases of assets and liabilities and their carrying amounts in the consolidated financial statements. Deferred income tax is provided at amounts expected to be paid (or recovered) using the tax rates and laws that have been enacted or substantively enacted at the consolidated balance sheet date and are expected to apply when the related deferred income tax asset is realized or the deferred income tax liability is settled in the appropriate territory.

Deferred tax assets and deferred tax liabilities are offset when there is a legally enforceable right to set off assets against liabilities representing current tax and where the deferred tax assets and the deferred tax liabilities relate to taxes on income levied by the same governing taxation authority on either the same taxable entity or different taxable entities which intend either to settle current tax liabilities and assets on a net basis, or to realise the assets and settle the liabilities simultaneously, in each future period in which significant amounts of deferred tax liabilities or assets are expected to be settled or recovered.

Deferred tax in respect of undistributed earnings of subsidiaries is recognized except where the Group is able to control the timing of the reversal of the temporary difference and the temporary difference will not reverse in the foreseeable future. Deferred income tax assets are recognized to the extent that it is probable that future taxable profit will be available against which temporary differences can be utilized.

Minimum alternate tax (MAT) paid in a year is charged to the Consolidated Statement of Profit and Loss as current tax. MAT credit entitlement is recognised as an asset only when and to the extent there is convincing evidence that the Group will pay normal income tax during the specified period, which is the period for which MAT credit is allowed to be carried forward. Such asset is reviewed at each consolidated balance sheet date and the carrying amount of the MAT credit asset is written down to the extent there is no longer a convincing evidence to the effect that the Group will pay normal income tax during the specified period.

The carrying amount of deferred tax assets is reviewed at each reporting date and reduced to the extent that it is no longer probable that sufficient taxable profit will be available to utilize all or part of the deferred tax asset. Unrecognised deferred tax assets are re-assessed at each reporting date and are recognised to the extent that it has become probable that future taxable profits will available to utilize the deferred tax asset.

### n.   Earnings per share (EPS)

Basic EPS is computed by dividing net profit after taxes for the year by weighted average number of equity shares outstanding during the financial year, adjusted for bonus share elements in equity shares issued during the year and excluding treasure shares, if any.

Diluted earnings per share adjusts the figures used in the determination of basic earnings per share to take into account the after income tax effect of interest and other financing costs associated with dilutive potential equity shares and the weighted average number of additional equity shares that would have been outstanding assuming the conversion of all dilutive potential equity shares.

### o.   Cash and cash equivalents

Cash and cash equivalents include cash in hand, deposits held at call with banks, other short term highly liquid investments which are readily convertible into known amounts of cash and are subject to insignificant risk of changes in value. Bank overdrafts are shown within borrowings in current liabilities on the consolidated balance sheet. Deposits held with banks as security for overdraft facilities are included in restricted deposits held with bank.

### p.   Segment reporting

Ind AS 108 "Operating Segments" requires operating segments to be identified on the same basis as is used internally for the review of performance and allocation of resources by the Chief Operating Decision Maker. The revenues of films are earned over various formats; all such formats are functional activities of filmed entertainment and these activities take place on an integrated basis. The management team reviews the financial information on an integrated basis for the Group as a whole with respective heads of business for each region and in accordance with Ind AS 108, the Group provides a geographical split as it considers that all activities fall within one segment of business

which is filmed entertainment. The management team also monitors performance separately for individual films or for at least 12 months after the theatrical release.

The Group has identified three geographic markets: India, United Arab Emirates and Rest of the world.

### q.  Statement of cash flows

Cash flows are reported using the indirect method, whereby profit before tax is adjusted for the effects of transactions of a non-cash nature, any deferrals or accruals of past or future operating cash receipts or payments and item of income or expenses associated with investing or financing cash flows. The cash flows from operating, investing and financing activities of the Group are segregated.

In line with the amendments to Ind AS 7 Statement of Cash flows (effective from 1 April 2017), the Group has provided disclosures that enable users of the consolidated financial statements to evaluate changes in liabilities arising from financing activities, including both changes arising from cash flows and non-cash changes. The adoption of amendment did not have any material impact on the consolidated financial statements.

### r.  Dividends

The Group recognises a liability for dividends to equity holders of the Company when the dividend is authorized and the dividend is no longer at the discretion of the Company. As per the corporate laws in India, a dividend is authorised when it is approved by the shareholders. A corresponding amount is recognised directly in equity.

### s.  Event occurring after the reporting date

Adjusting events (that provides evidence of condition that existed at the consolidated balance sheet date) occurring after the consolidated balance sheet date are recognized in the consolidated financial statements. Material non adjusting events (that are inductive of conditions that arose subsequent to the consolidated balance sheet date) occurring after the consolidated balance sheet date that represents material change and commitment affecting the financial position are disclosed in the Directors' Report.

### t.  Standards Issued but not yet Effective

Ministry of Corporate Affairs ("MCA") through Companies (Indian Accounting Standards) Amendment Rules, 2019 and Companies (Indian Accounting Standards) Second Amendment Rules, has notified the following new and amendments to Ind AS which the Group has not applied as they are effective from 1 April 2019:

#### Ind AS 116 – Leases

Ind AS 116 will replace the existing leases standard, Ind AS 17 Leases. Ind AS 116 sets out the principles for the recognition, measurement, presentation and disclosure of leases for both lessees and lessors. It introduces a single, on-balance sheet lessee accounting model for lessees. A lessee recognises right-of-use asset representing its right to use the underlying asset and a lease liability representing its obligation to make lease payments. The standard also contains enhanced disclosure requirements for lessees. Ind AS 116 substantially carries forward the lessor accounting requirements in Ind AS 17.

The Group will adopt Ind AS 116 effective annual reporting period beginning 1 April 2019. The Group will apply the standard to its leases, retrospectively, with the cumulative effect of initially applying the standard, recognised on the date of initial application (1 April 2019). Accordingly, the Group will not restate comparative information, instead, the cumulative effect of initially applying this Standard will be recognised as an adjustment to the opening balance of retained earnings as on 1 April 2019. On that date, the Group will recognise a lease liability measured at the present value of the remaining lease payments. The right-of-use asset is recognised at its carrying amount as if the Standard had been applied since the commencement date, but discounted using the lessee's incremental borrowing rate as at 1 April 2019. In accordance with the standard, the Group will elect not to apply the requirements of Ind AS 116 to short-term leases and leases for which the underlying asset is of low value.

On transition, the Group will be using the practical expedient provided by the standard and therefore, will not reassess whether a contract, is or contains a lease, at the date of initial application.

The Group is in the process of finalising changes to systems and processes to meet the accounting and the reporting requirements of the standard in conjunction with review of lease agreements.

The Group will recognise with effect from 1 April 2019 new assets and liabilities for its operating leases of premises and other assets. The nature of expenses related to those leases will change from lease rent in previous periods to (a) amortisation charge for the right-to-use asset, and (b) interest accrued on lease liability.

Previously, the Group recognised operating lease expense on a straight-line basis over the term of the lease, and recognised assets and liabilities only to the extent that there was a timing difference between actual lease payments and the expense recognised.

As a lessor, sublease shall be classified as an operating lease if the head lease is classified as a short term lease. In all other cases, the sublease shall be classified as a finance lease.

#### Ind AS 12 – Income taxes (amendments relating to income tax consequences of dividend and uncertainty over income tax treatments)

The amendment relating to income tax consequences of dividend clarify that an entity shall recognise the income tax consequences of dividends in profit or loss, other comprehensive income or equity according to where the entity originally recognised those past transactions or events. The Group does not expect any impact from this pronouncement. It is relevant to note that the amendment does not amend situations where the entity pays a tax on dividend which is effectively a portion of dividends paid to taxation authorities on behalf of shareholders. Such amount paid or payable to taxation authorities continues to be charged to equity as part of dividend, in accordance with Ind AS 12.

The amendment to Appendix C of Ind AS 12 specifies that the amendment is to be applied to the determination of taxable profit (tax loss), tax bases, unused tax losses, unused tax credits and tax rates, when there is uncertainty over income tax treatments under Ind AS 12. It outlines the following: (1) the entity has to use judgement, to determine whether each tax treatment should be considered separately or whether some can be considered together. The decision should be based on the approach which provides better predictions of the resolution of the uncertainty (2) the entity is to assume that the taxation authority will have full knowledge of all relevant information while examining any amount (3) entity has to consider the probability of the relevant taxation authority accepting the tax treatment and the determination of taxable profit (tax loss), tax bases, unused tax losses, unused tax credits and tax rates would depend upon the probability. The Group does not expect any significant impact of the amendment on its financial statements.

**Ind AS 109 – Prepayment Features with Negative Compensation**

The amendments relate to the existing requirements in Ind AS 109 regarding termination rights in order to allow measurement at amortised cost (or, depending on the business model, at fair value through other comprehensive income) even in the case of negative compensation payments. The Group does not expect this amendment to have any impact on its financial statements.

**Ind AS 19 – Plan Amendment, Curtailment or Settlement**

The amendments clarify that if a plan amendment, curtailment or settlement occurs, it is mandatory that the current service cost and the net interest for the period after the re-measurement are determined using the assumptions used for the re-measurement. In addition, amendments have been included to clarify the effect of a plan amendment, curtailment or settlement on the requirements regarding the asset ceiling. The Group does not expect this amendment to have any significant impact on its financial statements.

**Ind AS 23 – Borrowing Costs**

The amendments clarify that if any specific borrowing remains outstanding after the related asset is ready for its intended use or sale, that borrowing becomes part of the funds that an entity borrows generally when calculating the capitalisation rate on general borrowings. The Group does not expect any impact from this amendment.

**Ind AS 28 – Long-term Interests in Associates and Joint Ventures**

The amendments clarify that an entity applies Ind AS 109 Financial Instruments, to long-term interests in an associate or joint venture that form part of the net investment in the associate or joint venture but to which the equity method is not applied. The Group does not currently have any long-term interests in associates and joint ventures.

**Ind AS 103 – Business Combinations and Ind AS 111 – Joint Arrangements**

The amendments to Ind AS 103 relating to re-measurement clarify that when an entity obtains control of a business that is a joint operation, it re-measures previously held interests in that business. The amendments to Ind AS 111 clarify that when an entity obtains joint control of a business that is a joint operation, the entity does not remeasure previously held interests in that business. The Group will apply the pronouncement if and when it obtains control/joint control of a business that is a joint operation.

**Significant accounting judgements, estimates and assumptions**

The preparation of the consolidated financial statements requires management to make judgements, estimates and assumptions, as described below, that affect the reported amounts and the disclosures. The Group based its assumptions and estimates on parameters available when the consolidated financial statements were prepared and reviewed at each consolidated balance sheet date. Uncertainty about these assumptions and estimates could result in outcomes that may require a material adjustment to the reported amounts and disclosures.

a.    **Intangible assets**

The Group is required to identify and assess the useful life of intangible assets and determine their income generating life. Judgment is required in determining this and then providing an amortisation rate to match this life as well as considering the recoverability or conversion of advances made in respect of securing film content or the services of talent associated with film production.

Accounting for the film content requires management's judgment as it relates to total revenues to be received and costs to be incurred throughout the life of each film or its license period, whichever is the shorter. These judgments are used to determine the amortisation of capitalized film content costs. The Group uses a stepped method of amortisation on first release film content writing off more in year one which recognizes initial income flows and then the balance over a period of up to nine years. In the case of film content that is acquired by the Group after its initial exploitation, commonly referred to as Library, amortisation is spread evenly over the lesser of 10 years or the license period. Management's policy is based upon factors such as historical performance of similar films, the star power of the lead actors and actresses and others. Management regularly reviews, and revises when necessary, its estimates, which may result in a change in the rate of amortisation and/or a write down of the asset to the recoverable amount.

The Group tests annually whether intangible assets including goodwill have suffered any impairment, in accordance with the accounting policy. These calculations require judgments and estimates to be made, and in the event of an unforeseen event these judgments and assumptions would need to be revised and the value of the intangible assets could be affected. There may be instances where the useful life of an asset is shortened to reflect the uncertainty of its estimated income generating life.

b.    **Employee benefit plans**

The cost of the employment benefit plans and their present value are determined using actuarial valuations which involves making various assumptions that may differ from actual developments in the future.

c.    **Fair value measurement of Employee shares based compensation plan**

The fair value of ESOP liability is determined using valuation methods which involves making various assumptions that may differ from actual developments in the future.

d.    **Impairment of non-financial assets**

In assessing impairment, management estimates the recoverable amount of each asset or cash-generating unit based on expected future cash flows and uses an interest rate to discount them. Estimation uncertainty relates to assumptions about future operating results and the determination of a suitable discount rate.

e.    **Provisions**

Provisions and liabilities are recognized in the period when it becomes probable that there will be a future outflow of funds resulting from past operations or events and the amount of cash outflow can be reliably estimated. The timing of recognition and quantification of the liability require the application of judgment to existing facts and circumstances, which can be subject to change. Since the cash outflows can take place many years in the future, the carrying amounts of provisions and liabilities are reviewed regularly and adjusted to take account of changing facts and circumstances.

f.    **Fair value measurement**

Management uses valuation techniques to determine the fair value of financial instruments (where active market quotes are not available) and non-financial assets. This involves developing estimates and assumptions consistent with how market participants would price the instrument. Management bases its assumptions on observable data as far as possible but this is not always available. In that case management uses the best information available. Estimated fair values may vary from the actual prices that would be achieved in an arm's length transaction at the reporting date.

**EROS INTERNATIONAL MEDIA LIMITED    117**

# Notes
**to the consolidated financial statements and other explanatory information**

2     **Property, Plant and Equipment**

Details of the Company's property, plant and equipment and their carrying amounts are as follows:         Amount ₹ in lakhs

| Gross carrying amount | Buildings | Leasehold improvements | Furniture and fixtures | Motor vehicles | Office equipment | Data processing equipment | Studio equipment | Total |
|---|---|---|---|---|---|---|---|---|
| **Balance as at 31 March 2017** | **4,108** | **258** | **794** | **857** | **387** | **1,635** | **1,631** | **9,670** |
| Additions | - | 253 | 13 | 272 | 26 | 81 | - | 645 |
| Adjustments/ disposals | - | - | (53) | (292) | (79) | (54) | (10) | (488) |
| Foreign currency translation difference | - | - | (1) | - | (5) | (1) | - | (7) |
| **Balance as at 31 March 2018** | **4,108** | **511** | **753** | **837** | **329** | **1,661** | **1,621** | **9,820** |
| Additions | - | 358 | 2 | - | 34 | 26 | - | 420 |
| Adjustments/ disposals | - | - | (13) | - | (8) | (71) | - | (92) |
| Foreign currency translation difference | - | - | - | - | - | - | - | - |
| **Balance as at 31 March 2019** | **4,108** | **869** | **742** | **837** | **355** | **1,616** | **1,621** | **10,148** |
| **Accumulated depreciation** | | | | | | | | |
| **Balance as at 31 March 2017** | **1,105** | **33** | **625** | **530** | **269** | **1,412** | **1,493** | **5,467** |
| Depreciation charge | 146 | 178 | 54 | 112 | 61 | 125 | 42 | 718 |
| Adjustments/ disposals | - | - | (50) | (261) | (79) | (52) | (9) | (451) |
| Foreign currency translation difference | - | - | (1) | - | (5) | - | - | (6) |
| **Balance as at 31 March 2018** | **1,251** | **211** | **628** | **381** | **246** | **1,485** | **1,526** | **5,728** |
| Depreciation charge | 139 | 190 | 40 | 140 | 49 | 56 | 29 | 643 |
| Adjustments/ disposals | - | - | (10) | - | (9) | (35) | - | (54) |
| Foreign currency translation difference | - | - | - | - | - | - | - | - |
| **Balance as at 31 March 2019** | **1,390** | **401** | **658** | **521** | **286** | **1,506** | **1,555** | **6,317** |
| **Net carrying amount** | | | | | | | | |
| **Capital-work-in progress 31 March 2018** | | | | | | | | **8** |
| **Capital-work-in progress 31 March 2019** | | | | | | | | **7** |
| Balance as at 31 March 2018 | 2,857 | 300 | 125 | 456 | 83 | 176 | 95 | 4,100 |
| **Balance as at 31 March 2019** | **2,718** | **468** | **84** | **316** | **69** | **110** | **66** | **3,838** |

The Company's immovable property situated in Mumbai, India is pledged against the borrowings as explained in note 17 and 23.

3.     **a) Intangible assets**

Details of the Group's Intangible assets and their carrying amounts are as follows:         Amount ₹ in lakhs

| Gross carrying amount | Content advances | Film rights | Other intangible assets | Total |
|---|---|---|---|---|
| **Balance as at 31 March 2017** | **141,611** | **512,490** | **2,665** | **515,155** |
| Additions | 34,863 | 20,550 | - | 20,550 |
| Adjustments/ Deletion | (25,549) | (53,487) | - | (53,487) |
| Amounts written off | 228 | - | - | - |
| Foreign currency translation difference | 81 | 2,206 | - | 2,206 |
| **Balance as at 31 March 2018** | **151,234** | **481,759** | **2,665** | **484,424** |
| Additions | 39,878 | 14,105 | 16 | 14,121 |
| Adjustments/ Deletion | (30,087) | - | - | - |
| Amounts written off | (3,913) | - | - | - |
| Foreign currency translation difference | 1,203 | 5,488 | - | 5,488 |
| **Balance as at 31 March 2019** | **158,315** | **501,352** | **2,681** | **504,033** |

# Notes
**to the consolidated financial statements and other explanatory information**

| Accumulated amortization | Content advances | Film rights | Other intangible assets | Total |
|---|---|---|---|---|
| **Balance as at 31 March 2017** | **-** | **392,120** | **765** | **392,885** |
| Amortisation charge | - | 28,838 | 310 | 29,148 |
| Adjustments/ Deletion | - | (50,409) | - | (50,409) |
| Foreign currency translation difference | - | 6,067 | - | 6,067 |
| **Balance as at 31 March 2018** | **-** | **376,616** | **1,075** | **377,691** |
| Amortisation charge | - | 29,643 | 266 | 29,909 |
| Adjustments/ Deletion | - | - | - | - |
| Foreign currency translation difference | - | 3,859 | - | 3,859 |
| **Balance as at 31 March 2019** | | **410,118** | **1,341** | **411,459** |

| Net carrying amount | Content advances | Film rights | Other intangible assets | Total |
|---|---|---|---|---|
| Balance as at 31 March 2018 | 151,234 | 105,143 | 1,590 | 106,733 |
| **Balance as at 31 March 2019** | **158,315** | **91,234** | **1,340** | **92,574** |
| **Intangible assets under development** | | | | |
| Balance as at 31 March 2018 | 7,079 | | | |
| **Balance as at 31 March 2019** | **9,049** | | | |

**3    b) Goodwill on consolidation**

On 1 August 2015, Company acquired 100% of the shares and voting interests in Universal Power Systems Private Limited ("Techzone"). Goodwill of ₹ 2,130 lakhs was recognised on acquisition. Impairement provision of ₹ 847 lakhs was made upto previous year. During the year, Impairement loss of ₹ 452 lakhs has been reveresed.

The Group tests annually whether goodwill has suffered impairment, in accordance with its accounting policy. The recoverable amount of cash-generating units has been determined based on value in use calculations. We use market related information and estimates (generally risk adjusted discounted cash flows) to determine value in use. Cash flow projections take into account past experience and represent management's best estimate about future developments. Key assumptions on which management has based its determination of fair value less costs to sell and value in use includes estimated growth rates, weighted average cost of capital and tax rates.

As at 31 March 2019, for assessing impairment of goodwill, value in use is determined using discounted cash flow method. The estimated cash flows for a period of four years were developed using internal forecasts, extrapolated for the fifth year, and a pre-tax discount rate of 15.0% and terminal growth rate of 5%. These estimates, includes the methodology used, can have a material impact on the respective values and ultimately the amount of any goodwill.

**4    Loans**                                                                                   Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Amounts due from related parties (refer note 43) | 42,852 | 10,180 |
| Unsecured, considered good | 1,632 | 1,682 |
| **Total** | **44,484** | **11,862** |

**5    Other financial assets**                                                                  Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Security deposits** | | |
| Security deposits- related parties (refer note 43) | 582 | 617 |
| Security deposits- others | 213 | 172 |
| **Total** | **795** | **789** |

## Notes
to the consolidated financial statements and other explanatory information

**6   Other non- current assets**                                                                 Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Advance payment of taxes (net of provision) | 1,008 | 819 |
| Balances due with statutory authorities | 5,383 | 3,867 |
| **Total** | **6,391** | **4,686** |

**7   Inventory**                                                                 Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| VCD/ DVD/ Audio CDs | - | 9 |
| Film rights | 301 | 178 |
| **Total** | **301** | **187** |

**8   Trade and other receivables**                                                                 Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Secured, considered good | 1,327 | 1,327 |
| Unsecured, considered good | 69,856 | 64,008 |
| Dues from related parties (refer note 43) | 17,690 | 9,136 |
| Unbilled Income | 1,486 | 574 |
| | 90,359 | 75,045 |
| Less : Expected credit loss | (11,007) | (5,188) |
| **Total** | **79,352** | **69,857** |

All amounts are short-term. The net carrying value of trade receivables is considered a reasonable approximation of fair value.

**9   Cash and cash equivalents**                                                                 Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Balances with banks** | | |
| -in current accounts | 586 | 1,454 |
| -Cheques, drafts on hand | - | 5 |
| Cash on hand | 60 | 27 |
| | 646 | 1,486 |
| **Other Bank Balances** | | |
| -Deposits with maturity of more than 3 months but less than 12 months | 13,465 | 12,744 |
| **Total** | **14,111** | **14,230** |

**10   Restricted bank deposits**                                                                 Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| i. Unclaimed dividend account | 1 | 1 |
| ii. Margin money deposit- less than 12 Months* | 5,993 | 3,775 |
| iii. Deposits with maturity more than 12 months* | 511 | 716 |
| | 6,505 | 4,492 |
| Less: Disclosed under non current financial assets - Restricted bank deposits | (511) | (716) |
| **Total** | **5,994** | **3,776** |

* given as securities against fund based working capital limits.

## Notes
**to the consolidated financial statements and other explanatory information**

### 11  Loans

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Amounts due from related parties (refer note 43) | 4 | 335 |
| Loans and advances to employees | 84 | 159 |
| Other loans | 1,698 | 637 |
| Security deposits | 41 | 36 |
| **Total** | **1,827** | **1,167** |

### 12  Other financial assets

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Interest accrued | 390 | 114 |
| Amounts due from related parties (refer note 43) | 561 | - |
| Forward contract assets | - | 188 |
| Others | 47 | - |
| **Total** | **998** | **302** |

### 13  Other current assets

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Prepaid-expenses | 246 | 56 |
| Amount due from related parties (refer note 43) | 51 | 627 |
| **Total** | **297** | **683** |

### 14  Share capital

₹ in lakhs, except share data

| | As at 31 March 2019 | | As at 31 March 2018 | |
|---|---|---|---|---|
| | Number | Amounts | Number | Amounts |
| **Authorised share capital** | | | | |
| Equity shares of ₹ 10 each | 125,000,000 | 12,500 | 125,000,000 | 12,500 |
| | 125,000,000 | 12,500 | 125,000,000 | 12,500 |
| **Issued, subscribed and fully paid up** | | | | |
| Equity shares of ₹ 10 each | 95,508,140 | 9,551 | 94,971,877 | 9,497 |
| **Total** | **95,508,140** | **9,551** | **94,971,877** | **9,497** |

**a)   Reconciliation of paid up share capital (Equity Shares)**

₹ in lakhs, except share data

| | As at 31 March 2019 | | As at 31 March 2018 | |
|---|---|---|---|---|
| | Number | Amounts | Number | Amounts |
| Balance at the beginning of the year | 94,971,877 | 9,497 | 93,858,717 | 9,385 |
| Add: Shares issued during the year | 536,263 | 54 | 1,113,160 | 112 |
| **Balance at the end of the year** | **95,508,140** | **9,551** | **94,971,877** | **9,497** |

During the year, the Company has issued total 536,263 equity shares (2018: 1,113,160 ) on exercise of options granted under the employees stock option plan (ESOP) wherein part consideration was received in the form of employees services.

# Notes
**to the consolidated financial statements and other explanatory information**

**b) Shares held by holding company, ultimate holding company, subsidiaries / associates of holding company or ultimate holding Company**

₹ in lakhs, except share data

| | As at 31 March 2019 | | As at 31 March 2018 | |
|---|---|---|---|---|
| | Number | Amounts | Number | Amounts |
| Equity shares of ₹ 10 each | | | | |
| Eros Worldwide FZ LLC - the Holding Company | 37,877,302 | 3,788 | 35,409,440 | 3,541 |
| Eros Digital Private Limited - fellow subsidiary | 21,700,000 | 2,170 | 21,700,000 | 2,170 |

**c) Details of Shareholders holding more than 5% of the shares**

| | As at 31 March 2019 | | As at 31 March 2018 | |
|---|---|---|---|---|
| | Number | % Holding in the class | Number | % Holding in the class |
| Equity shares of ₹ 10 each | | | | |
| Eros Worldwide FZ LLC - the Holding Company | 37,877,302 | 39.66% | 35,409,440 | 37.28% |
| Eros Digital Private Limited - fellow subsidiary | 21,700,000 | 22.72% | 21,700,000 | 22.85% |

**d) Details of employee stock options issued during the last 5 years**

During the period of five years immediately preceding the reporting date, the Company has issued total 2,633,980 equity shares (31 March 2018: 2,149,567) on exercise of options granted under the employees stock option plan (ESOP) wherein part consideration was received in the form of employee services.

**e) Details of equity share issued for consideration other than cash during the last 5 years**

During the period of five years immediately preceding the reporting date, the Company has issued total 900,970 equity shares (31 March 2018: 900,970) to the shareholders of UPSPL at a premium of ₹ 586 per share in exchange for the entire shareholding of UPSPL.

**f) Rights, preferences, restrictions of Equity Shares**

The Company has only one class of equity shares having par value of ₹ 10 per share. Every holder is entitled to one vote per share. The dividend, if any, proposed by the Board of Directors and approved by the Shareholders in the Annual General Meeting is paid in Indian rupees.

In the event of liquidation of the Company, the holders of equity shares will be entitled to receive remaining assets of the Company, after distribution of all preferential amounts. The distribution will be in proportion to the number of equity shares held by the shareholders.

**15 Other equity**

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Securities premium reserve** | | |
| Balance at the beginning of the year | 40,498 | 38,141 |
| Add : Additions for employee stock options exercised during the year | - | 247 |
| Add : Transfer from share option outstanding account | 1,049 | 2,110 |
| **Balance at the end of the year** | **41,547** | **40,498** |
| **Share options outstanding account** | | |
| Balance at the beginning of the year | 1,577 | 2,645 |
| Less: Transfer to securities premium reserve | (1,049) | (2,110) |
| Add: Employee stock option compensation expense | 779 | 862 |
| Add: Employee stock option compensation expense to employee's of subsidiary | 37 | 180 |
| **Balance at the end of the year** | **1,344** | **1,577** |
| **Capital reserves** | | |
| As per last year balance sheet | 56 | 56 |

# Notes
**to the consolidated financial statements and other explanatory information**

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| **General reserves** | | |
| As per last year balance sheet | **508** | **508** |
| **Surplus from Statemet of Profit & Loss** | | |
| Balance at the beginning of the year | 167,433 | 144,499 |
| Add : Profit for the year | 26,908 | 22,934 |
| **Balance at the end of the year** | **194,341** | **167,433** |
| **Other comprehensive income** | | |
| **a) Foreign currency translation reserve** | | |
| **Balance at the beginning of the year** | **4,654** | **5,668** |
| Movement during the year | 5,094 | (22) |
| Share of Non Controlling shareholders | - | 222 |
| Divestment of subsidiary | - | (1,214) |
| **Balance at the ending of the year** | **9,748** | **4,654** |
| **b) Remeasurement gain on defined benefit plan** | **116** | **77** |
| **Total** | **247,660** | **214,803** |

**Nature and Purpose of Reserves:-**

**Securities Premium Reserve:** The amount received in excess of face value of the equity shares is recognized in Securities Premium Reserve.

**General Reserve:** General Reserve was created by transferring a portion of the net profit of the Company as per the requirements of the Companies Act, 2013.

**Capital Reserve:** Capital Reserve is used from pre-acquisition profit of subsidiaries.

**Foreign Currency Translation Reserve :** Exchange Fluctuation Reserve represents the unrealised gains and losses on account of translation of foreign subsidiaries into the reporting currency.

**16    Non- controlling interest**                                                              Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| **Balance at beginning of the year** | | |
| Opening balance | 1,288 | (466) |
| Profit/(loss) for the year | (260) | 188 |
| Share in Foreign Currency Translation reserve | - | (222) |
| Divestment of subsidiary | - | 1,788 |
| **Balance at end of year** | **1,028** | **1,288** |

**17    Borrowings**                                                                           Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| **a) Term Loans** | | |
| **Secured** | | |
| Term loan from banks* | 9,721 | 15,761 |
| Car loans# | 245 | 364 |
| Others | 142 | |
| **Unsecured** | | |
| Term loan from others** | 3,887 | 6,240 |
| | **13,995** | **22,365** |
| Less: Cumulative effect of unamortised cost | (71) | (196) |
| Less: Current maturities disclosed under other current financial liabilities (refer note 26) | (5,200) | (7,217) |
| **Total** | **8,724** | **14,952** |

# Notes
**to the consolidated financial statements and other explanatory information**

\* Term loans from banks carry an interest rate between 12% - 14% are secured by pari passu first charge on the DVD/satellite rights acquired for the domestic market, actionable claims, revenue and receivables arising on sales of the rights and negatives of films. Term loans are further secured by equitable mortgage of Company's immovable properties situated at mumbai (India), amounts held as margin money, corporate guarantee of Eros International PLC (the ultimate holding company), residual value of equipments and vehicles and existing rights of hindi films with nil book value.

\# Car loans are secured by hypothecation of vehicles acquired there against, carrying rate of interest of 7.48% - 9.50% which are repayable as per maturity profile set out below.

\*\* Term loan from others carry an interest rate between 15% to 16% are secured against the pledge of company's shares held by holding company, current assets of a subsidiary company and corporate guarantee of holding company and subsidiary company.

Maturity profile of long term borrowing is set out below:-

| | As at 31 March 2019 | | |
| --- | --- | --- | --- |
| | Less than 1 year | 1-3 years | 3-5 years |
| **Secured** | | | |
| Term loan from banks | 5,014 | 4,707 | - |
| Car loan | 118 | 95 | - |
| Others | 68 | 106 | - |
| **Unsecured** | | | |
| Term loan from others | - | 3,287 | 600 |
| **Total** | **5,200** | **8,195** | **600** |

| | As at 31 March 2018 | | |
| --- | --- | --- | --- |
| | Less than 1 year | 1-3 years | 3-5 years |
| **Secured** | 6,322 | 8,386 | 1,053 |
| Term loan from banks | 155 | 209 | - |
| Car loan | | | |
| **Unsecured** | | | |
| Term loan from others | 740 | 3,220 | 2,280 |
| **Total** | **7,217** | **11,815** | **3,333** |

## 18  Trade payable - non current
Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
| --- | --- | --- |
| Payable to related parties (refer note 43) | 108 | 102 |
| **Total** | **108** | **102** |

## 19  Other financial liabilities
Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
| --- | --- | --- |
| Security deposits | 25 | - |
| **Total** | **25** | **-** |

## 20  Employee benefit obligations - non current
Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
| --- | --- | --- |
| Provision for gratuity (refer note 40) | 426 | 476 |
| Leave encashment | 9 | 11 |
| **Total** | **435** | **487** |

# Notes
**to the consolidated financial statements and other explanatory information**

**21    Deferred tax liabilities (net)**                                                            Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| **Deferred Tax Liability arising on account of** | | |
| Depreciation on tangible assets | 77 | 107 |
| Amortisation of intangible assets | 23,084 | 26,742 |
| **Total Deferred Tax Liability** | **23,161** | **26,849** |
| **Deferred Tax Asset arising on account of** | | |
| Depreciation on tangible assets | 52 | 54 |
| Disallowances under Income Tax Act, 1961 | 985 | 971 |
| Gratuity and leave encashment | 19 | 15 |
| Others | 4,085 | 797 |
| Minimum alternative tax credit recoverable | 62 | 511 |
| **Total Deferred Tax Assets** | **5,203** | **2,348** |
| **Total Deferred Tax Liabilities (net)** | **17,958** | **24,501** |

**Reconciliation of tax expense and the accounting profit multiplied by India's domestic tax rate:**

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| **Profit before tax** | **31,763** | **28,735** |
| Income tax expense | 5,115 | 5,613 |
| Tax rate as a % of profit before tax | 16.10% | 19.53% |
| | | |
| Effect of Income taxed at higher/ (lower) rates | 0.00% | 0.00% |
| Effect of Income taxes relating to prior years | 1.67% | -0.62% |
| Effect of change in deferred tax balances due to change in tax rates | -0.32% | -0.86% |
| Effect of unrecognised deferred tax assets | -0.44% | -2.32% |
| Effect of Items not deductible for tax purpose | -1.47% | -1.09% |
| Effect of MAT Credit | 0.00% | 0.00% |
| Others | -0.20% | 0.19% |
| **Average Income Tax Rate applicable to individual entities** | **15.35%** | **14.83%** |

**22    Other non-current liabilities**                                                            Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| Deferred revenue | 10,050 | 1,512 |
| **Total** | **10,050** | **1,512** |

# Notes
**to the consolidated financial statements and other explanatory information**

**23    Short-term borrowings**                                                                 Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Secured** | | |
| Secured from banks | 38,605 | 38,813 |
| **Unsecured** | | |
| Unsecured from other* | 6,135 | 7,515 |
| From related parties (refer note 43) | 528 | 480 |
| **Total** | **45,268** | **46,808** |

Secured short term borrowings include:

Cash credit, secured by way of hypothecation of inventories and receivables relating to domestic rights operations on pari passu basis.

Bills discounted, secured by document of title to goods and accepted hundies with first pari passu charge on current assets.

Drawee bills discounted secured by assignment of film processing laboratory letter conveying rights on the negative of the particular film being co-produced.

Packing credit, secured by hypothecation of films and film rights with first pari passu charge on current assets.

*Loan from others carry an interest rate between 14% - 15% , secured by security provided by holding company.

**24    Acceptances**                                                                           Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Payable under the film financing arrangements | 5,796 | 5,796 |
| **Total** | **5,796** | **5,796** |

Acceptances comprise of credit availed from banks for payment to film producers for film co-production arrangement entered by the group. The carrying value of acceptances are considered a reasonable approximation of fair value.

**25    Trade payables - current financials liabilities**                                       Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Trade payable | 11,017 | 11,780 |
| Payable to related parties (refer note 43) | 20,053 | 20,547 |
| **Total** | **31,070** | **32,327** |

**26    Other financial liabilities**                                                           Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Current maturities of long-term borrowings (refer note 17) | 5,200 | 7,217 |
| Interest accrued but not due on borrowings | 147 | 299 |
| Interest accrued and due on borrowings | 161 | - |
| Employee dues | 657 | 373 |
| Unclaimed dividend* | 1 | 1 |
| Other expenses payable | 792 | 902 |
| Forward contract liabilities | 430 | - |
| Other payable to related party (refer note 43) | 252 | 274 |
| **Total** | **7,640** | **9,066** |

* These figures do not includes any amount due and outstanding to be credited to Investor Education and Protection Fund.

## Notes
**to the consolidated financial statements and other explanatory information**

**27    Employee benefit obligations - current**                                            Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| Gratuity | 121 | 63 |
| Compensated Absences | 251 | 161 |
| **Total** | **372** | **224** |

**28    Current tax liabilites (net)**                                            Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| Provision for Corporate Taxes (net of advance tax) | 11,400 | 3,684 |
| **Total** | **11,400** | **3,684** |

**29    Other Current Liabilities**                                            Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---:|---:|
| Advance from customers- related parties (refer note 43) | 14,059 | 3,452 |
| Advances from customers- Others | 1,040 | 1,152 |
| Duties & Taxes Payable | 7,385 | 6,555 |
| Deferred income | 781 | 2,449 |
| Others | 222 | 29 |
| **Total** | **23,487** | **13,637** |

**30    Revenue from operations**                                            Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---:|---:|
| Sale/distribution/exhibition of films and other rights | 103,027 | 95,815 |
| Other operating revenues | 103 | 201 |
| **Total** | **103,130** | **96,016** |

**31    Other income**                                            Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---:|---:|
| Interest income : | | |
|    Bank deposits | 290 | 215 |
|    Others | 1,166 | 648 |
|    Income from Export Incentives | 1,618 | - |
| Sundry balances written back and Bad debts recovered | 74 | 98 |
| Provision written back for expected credit loss | 5,497 | 2,490 |
| Reversal of provision for diminishment in the value of investments | 452 | - |
| Gain on disposal of property, plant and eqipment (net) | - | 6 |
| Other non-operating income | 1,742 | 1,528 |
| **Total** | **10,839** | **4,985** |

**32    Purchases / Operating Expenses**                                            Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---:|---:|
| Film rights cost | 17,676 | 11,089 |
| Amortization of film rights (refer note 3) | 29,643 | 28,838 |
| **Total** | **47,319** | **39,927** |

# Notes
**to the consolidated financial statements and other explanatory information**

**33    Changes in Inventories**                                                    Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---:|---:|
| **Inventories at the end of the year of -** | | |
| VCD/ DVD/ Audio CDs | - | 9 |
| Stock-in-trade | 301 | 178 |
| | **301** | **187** |
| **Inventories at the beginning of the year** | | |
| VCD/ DVD/ Audio CDs | 9 | 38 |
| Film Rights | 178 | 8 |
| | **187** | **46** |
| **Total** | **(114)** | **(141)** |

**34    Employee benefit expenses**                                                  Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---:|---:|
| Salaries and wages | 3,841 | 4,333 |
| Contributions to provident and other funds (refer note 40) | 183 | 217 |
| Employee share based compensation (refer note 41) | 799 | 1,013 |
| Gratuity expenses (refer note 40) | 131 | 221 |
| Staff welfare expenses | 125 | 110 |
| **Total** | **5,079** | **5,894** |

**35    Finance costs**                                                             Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---:|---:|
| Interest expenses on loans taken from banks | 8,964 | 8,359 |
| Other interest expenses | 451 | 502 |
| Interest on delayed payment of taxes | 1,684 | 1,571 |
| | **11,099** | **10,432** |
| Less: Interest expenses capitalised to film rights* | (3,017) | (2,115) |
| Less : Interest received | (334) | (264) |
| **Total** | **7,748** | **8,053** |

*The capitalisation rate of interest was 12.12 % (31 March 2018 : 10.91 %)

**36    Depreciation and amortization expenses**                                     Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---:|---:|
| Depreciation on property, plants and equipments (refer note 2) | 643 | 718 |
| Amortization on intangible assets other than film rights (refer note 3) | 266 | 310 |
| **Total** | **909** | **1,028** |

# Notes
**to the consolidated financial statements and other explanatory information**

**37    Other expenses**                                                           Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| Print & digital distribution cost | 851 | 1,182 |
| Selling & distribution expenses | 2,565 | 3,491 |
| Processing and other direct cost | 200 | 208 |
| Home Entertainment products related cost | - | 23 |
| Shipping, Packing & Forwarding Expenses | 69 | 72 |
| Power and fuel | 65 | 81 |
| Rent including lease rentals | 453 | 443 |
| Repairs and maintenance | 137 | 147 |
| Insurance | 29 | 21 |
| Rates and taxes | 68 | 82 |
| Communication Expenses | 80 | 77 |
| Travelling and conveyance | 305 | 298 |
| Legal and professional expenses | 1,557 | 1,404 |
| Payments to auditors | 122 | 157 |
| Trade receivables written off | 1,917 | 5,541 |
| Content advance written off | 2,226 | 228 |
| Advances & deposits written off | 319 | 44 |
| Provision for expected credit loss on receivables | 8,023 | 1,652 |
| Provision for doubtful advances | 1,687 | 295 |
| Loss on disposal of propery, plan and equipment (net) | 2 | - |
| Provision for diminishment in the value of investments | - | 777 |
| Corporate social responsibility expenses | 30 | 18 |
| Loss on foreign exchange (net) | 44 | 693 |
| Miscellaneous expenses | 516 | 571 |
| **Total** | **21,265** | **17,505** |

**38    Earnings per share**

| | | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|---|
| a) | **Computation of net profit for the year** | | |
| | Profit after tax attributable to equity shareholders (₹ in lakhs) | 26,908 | 22,934 |
| b) | **Computation of number of shares for Basic Earnings per share** | | |
| | Weighted average number of equity shares | 95,205,870 | 94,524,136 |
| | **Total** | **95,205,870** | **94,524,136** |
| c) | **Computation of number of shares for Diluted Earnings per share** | | |
| | Weighted average number of equity shares used in the calculation of basic earning per share | 95,205,870 | 94,524,136 |
| | Add:- Effect of ESOPs | 828,067 | 1,342,648 |
| | **Total** | **96,033,937** | **95,866,784** |
| d) | **Nominal value of shares** | **10** | **10** |
| e) | **Computation** | | |
| | Basic (in ₹) | 28.26 | 24.26 |
| | Diluted (in ₹) | 28.02 | 23.92 |

# Notes
## to the consolidated financial statements and other explanatory information

**39    Contingent liabilities and commitments (to the extent not provided for)**

**a)    Contingent liabilities**                                                                 Amount ₹ in lakhs

|     |     | As at 31 March 2019 | As at 31 March 2018 |
| --- | --- | --- | --- |
| (i) | **Claims against the Company not acknowledged as debt** | | |
|     | Sales tax claims disputed by the Company | 2,088 | 3,195 |
|     | Service tax (refer note 1) | 43,828 | 39,757 |
|     | Income tax liability that may arise in respect of matters in appeal | 105 | 79 |
| (ii) | **Guarantees** | | |
|     | Guarantee given in favor of various government authorities | 35 | 25 |
|     | | **46,056** | **43,056** |

**Notes:**

1.a    During the year ended 31 March 2015, the Company received a show cause notice from the Commissioner of Service Tax to show cause why an amount aggregating to ₹ 15,675 lakhs for the period 1 April 2009 to 31 March 2014 should not be levied on and paid by the Company for service tax arising on temporary/perpetual transfer of copyright services and other matters.

In connection with the aforementioned matters, on 19 May 2015, the Company received an Order-in-original issued by the Principal Commissioner, Service Tax, wherein the department confirmed the demand of ₹ 15,675 lakhs along with interest and penalty amounting to ₹ 15,675 lakhs resulting into a total demand of ₹ 31,350 lakhs.

On 3 September 2015, the Company filed an appeal against the said order before the authorities. The Company has paid ₹ 1,000 lakhs under protest. Considering the facts and nature of levies and the ad-interim protection for the period 1 July 2010 to 30 June 2012 granted by the Honorable High Court of Mumbai, the Company expects that the final outcome of this matter will be favourable. Accordingly, based on the assessment made after taking appropriate legal advise, no additional liability has been recorded in the financial statements.

On 8 October 2018, the Company received a show cause notice from the Commissioner of Service Tax to show cause why an amount aggregating to ₹ 1347 lakhs and penalty of ₹ 1347 lakhs resulting to total demand of ₹ 2694 lakhs for the period 1 April 2014 to 31 March 2015 should not be levied on and paid by the Company for service tax arising on temporary/perpatual transfer of copyright services and other matters. Considering the facts and nature of levies and the ad-interim protection for the period 1 July 2010 to 30 June 2012 granted by the Honorable High Court of Mumbai, the Company expects that the final outcome of this matter will be favorable. Accordingly, based on the assessment made after taking appropriate legal advise, no additional liability has been recorded in the financial statements.

1.b    On 18 April 2016, a subsidiary of the Company- Eros International Films Private Limited, received a show cause notice from the Commissioner of Service Tax to show cause why an amount aggregating to ₹ 597 lakhs and penalty of 60 lakhs for the period 1 April 2014 to 31 March 2015 should not be levied on and paid by the Company for service tax arising on temporary/ Perpetual transfer of copyright services and other matters. Considering the facts and nature of levies and the ad-interim protection for the period 1 July 2010 to 30 June 2012 granted by the Honorable High Court of Mumbai, the Company expects that the final outcome of this matter will be favorable. Accordingly, based on the assessment made after taking appropriate legal advise, no additional liability has been recorded in the financial statements.

On 23 April 2018, a subsidiary of the Company- Eros International Films Private Limited, received a show cause notice from the Commissioner of Service Tax to show cause why an amount aggregating to ₹ 824 lakhs for the period 1 April 2015 to 31 March 2016 should not be levied on and paid by the Company for service tax arising on temporary/Perpetual transfer of copyright services and other matters. Considering the facts and nature of levies and the ad-interim protection for the period 1 July 2010 to 30 June 2012 granted by the Honorable High Court of Mumbai, the Company expects that the final outcome of this matter will be favorable. Accordingly, based on the assessment made after taking appropriate legal advise, no additional liability has been recorded in the financial statements.

1.c    On 28 February 2013, a subsidiary of the Company- Universal Power System Private Limited (acquired on 1 August 2015), received a service tax order with reference to the internal audit conducted by the service tax department. Based on the audit conducted, department has demanded tax amounting to ₹ 114 lakhs against which the subsidiary has paid ₹ 20 lakhs. The subsidiary has not made any provision in the books to give effect to this order and filed an appeal against the demand. The subsidiary expects that the final outcome will be favorable. Accordingly, based on the assessment made after appropriate legal advice, ₹ 94 lakhs has been considered as contingent liability and no liability has been recorded in the financial statements.

2    In addition, the Company is liable to pay service tax on use on temporary transfer of copyright in the period 1 July 2010 to 30 June 2012. The Company filed a writ petition in Mumbai High Court challenging the constitutionality and the legality of this entry and received ad-interim protection and accordingly, no amounts were provided for by the Company for the period 1 April 2011 to 30 June 2012.

3    It is not practicable for the Group to estimate the timing of cash outflows,if any, in respect of the above, pending resolution of the respective proceedings.

# Notes
**to the consolidated financial statements and other explanatory information**

4    From time to time, the Group is involved in legal proceedings arising in the ordinary course of its business, typically intellectual property litigation and infringement claims related to the Company's feature films and other commercial activities, which could cause the Company to incur expenses or prevent the Company from releasing a film. While the resolution of these matters cannot be predicted with certainty, the Company does not believe, based on current knowledge or information available, that any existing legal proceedings or claims are likely to have a material and adverse effect on its financial position, results of operations or cash flows.

5    The Company does not expect any reimbursements in respect of the above contingent liabilities.

**(b)    Commitments**

Amount ₹ in lakhs

| | As at 31 March 2018 | As at 31 March 2017 |
|---|---|---|
| Estimated amount of contracts remaining to be executed on capital account | 168,465 | 176,842 |
| | **168,465** | **176,842** |
| **Total** | **213,192** | **219,898** |

**40    Employment benefits**

**a)    Gratuity**

The following table set out the status of the gratuity plan as required under Indian Accounting Standard (Ind AS) - 19, Employee benefits, and the reconciliation of opening and closing balances of the present value of the defined benefit obligation:

Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **I    Change in projected benefit obligation** | | |
| Liability at the beginning of the year | 539 | 474 |
| Interest cost | 42 | 35 |
| Current service cost | 89 | 80 |
| Past service cost | 0 | 106 |
| Benefits paid | (63) | (45) |
| Actuarial loss on obligations | (61) | (111) |
| Liability at the end of the year | 547 | 539 |
| Current portion | 121 | 63 |
| Non-current portion | 426 | 476 |
| **II    Recognized in Balance Sheet** | | |
| Liability at the end of the year | 547 | 539 |
| Amount recognized in Balance Sheet | **547** | **539** |
| **III    Expense recognized in Statement of Profit and loss** | | |
| Current service cost | 89 | 80 |
| Interest cost | 42 | 35 |
| Past service cost | 0 | 106 |
| | **131** | **221** |
| **Actuarial (Gains) / losses** | | |
| Arising from changes in experience | (33) | (89) |
| Arising from changes in financial assumptions | 10 | (22) |
| Arising from changes in demographic assumptions | (43) | - |
| Expense/(income) recognized in Other comprehensive income | **(66)** | **(111)** |
| **IV    Assumptions used** | | |
| Discount rate | 6.76%- 7.22% | 7.35%- 7.85 |
| Long-term rate of compensation increase | 10.00% | 10.00% |
| Attrition Rate | 13%-23% | 2% -20% |
| Expected average remaining working life | 6 years | 4-17 years |

# Notes
**to the consolidated financial statements and other explanatory information**

**V**   **A quantitative sensitivity analysis for significant assumption as at 31 March 2019 is as shown below:**    Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Impact on defined benefit obligation** | | |
| Projected benefit obligation on current assumption | 547 | 539 |
| Discount rate | | |
|   1.00 % increase | (25) | (56) |
|   1.00 % decrease | 28 | 68 |
| **Rate of increase in salary** | | |
|   1.00 % increase | 22 | 45 |
|   1.00 % decrease | (21) | (40) |
| **Rate of increase in employee turnover** | | |
|   1.00 % increase | (4) | (7) |
|   1.00 % decrease | 4 | 8 |

**VI**   **Maturity profile of defined benefit obligation**    Amount ₹ in lakhs

| Year | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| Year 1 | 121 | 62 |
| Year 2 | 55 | 27 |
| Year 3 | 54 | 19 |
| Year 4 | 62 | 19 |
| Year 5 | 49 | 37 |
| Sum of Years 6-10 | 504 | 146 |

**VII**   **Interest rate risk :** A fall in the discount rate which is linked to the G.Sec. Rate will increase the present value of the liability requiring higher provision.

**VIII**   **Salary Risk :** The present value of the defined benefit plan liability is calculated by reference to the future salaries of members. As such, an increase in the salary of the members more than assumed level will increase the plan's liability.

**IX**   **Asset Liability Matching Risk :** The plan faces the ALM risk as to the matching cash flow. Company has to manage pay-out based on pay as you go basis from own funds.

**X**   **Mortality risk :** Since the benefits under the plan is not payable for life time and payable till retirement age only, plan does not have any longevity risk.

**b)**   **Compensated absences**

The Company incurred ₹ 118 lakhs (31 March 2018 ₹ 36 lakhs) towards accrual for compensated absences during the year.

**c)**   **Provident fund**

The Company contributed ₹ 172 lakhs (31 March 2018 ₹ 198 lakhs) to the provident fund plan, ₹ 6 lakhs (31 March 2018 ₹ 8 lakhs) to the Employee state insurance plan and ₹ 5 lakhs (31 March 2018 ₹ 11 lakhs) to the National Pension Scheme during the year.

# Notes
## to the consolidated financial statements and other explanatory information

### 41    Share Based Compensation

The Company has instituted Employees' Stock Option Plan "ESOP 2009" and "ESOS 2017" under which the stock options have been granted to employees. The scheme was approved by the shareholders at the Extra Ordinary General Meeting held on 17 December 2009 and Annual General Meeting held on 29 September 2017 respectively. The details of activity under the ESOP 2009 scheme are summarized below:

**The expense recognized for employee services received during the year is shown in the following table:**     Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| Expense arising from equity-settled share-based payment transactions | 799 | 1013 |
| There were no cancellations or modifications to the awards in 31 March 2019 and 31 March 2018 | | |

**Movements during the year**

The following table illustrates the number and weighted average exercise prices (WAEP) of, and movements in, share options during the year:

| | As at 31 March 2019 | | As at 31 March 2018 | |
|---|---|---|---|---|
| | Number | WAEP* | Number | WAEP* |
| Outstanding at 1 April | 1,624,034 | 29 | 2,108,063 | 36 |
| Granted during the year | - | - | 863,320 | 10 |
| Forfeited during the year | (329,886) | 52 | (234,189) | 10 |
| Exercised during the year | (536,263) | 10 | (1,113,160) | 32 |
| Outstanding at 31 March | **757,885** | **32** | **1,624,034** | **29** |
| Exercisable at 31 March | 289,002 | 68 | 501,122 | 71 |
| Range of exercise price of outstanding options (₹) | | ₹ 10-150 | | ₹ 10-175 |
| Weighted average remaining contractual life of option | | 2.96 Years | | 2.96 Years |

Black Scholes valuation model has been used for computing the weighted average fair value considering the following inputs:

| | Date of grant | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Particulars | 17-Dec-09 | 12-Aug-10 | 1-Jul-12 | 14-Oct-13 | 12-Nov-14 | 12-Feb-15 | 9-Feb-16 | 10-Feb-17 | 14-Nov-17 | 10-Feb-18 |
| Dividend yield (%) | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil | Nil |
| Expected volatility | 75.00% | 60.00% | 44.00% | 35.00% | 40.11% | 37.84% | 46.46% | 48.66% | 56.53% | 53.15% |
| Risk free interest rate | 6.30% | 6.50% | 8.36% | 8.57% | 8.50% | 7.74% | 7.49% | 6.51% | 6.90% | 7.38% |
| Exercise price | 75-175 | 75-135 | 75 | 150 | 10 | 10 | 10 | 10 | 10 | 10 |
| Expected life of options granted in years | 5.25 | 5.25 | 5.50 | 4.50 | As per Table 1.1 | | | 4.27 | 3.50 | 4.50 |

**Table 1.1**

**Expected life of options granted in years**

| Option Grant date | 9-Feb-16 | | 12-Feb-15 | | 12-Nov-14 | |
|---|---|---|---|---|---|---|
| | Old Employees | New Employees | Old Employees | New Employees | Old Employees | New Employees |
| Year I | 3.50 | 4.50 | 3.00 | 3.00 | 3.50 | 4.50 |
| Year II | 4.50 | 5.50 | 3.50 | 4.00 | 4.50 | 5.50 |
| Year III | 5.50 | 6.50 | 4.00 | 4.50 | 5.50 | 6.50 |

The expected life of options is based on historical data and current expectations and is not necessarily indicative of exercise patterns that may occur. The expected volatility reflects the assumption that the historical volatility over a period similar to the life of the options is indicative of future trends, which may differ from the actual.

# Notes
## to the consolidated financial statements and other explanatory information

**42    Segment Reporting**

**Description of segment and principal activities**

The Company acquires, co-produces and distributes Indian films in multiple formats worldwide. Film content is monitored and strategic decisions around the business operations are made based on the film content, whether it is new release or library. Hence, Management identifies only one operating segment in the business, film content. The Company distributes film content to the Indian population in India and worldwide and to non-Indian consumers who view Indian films that are subtitled or dubbed in local languages. As a result of these distribution activities, the management examines the performance of the business from a geographical market perspective.

Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| **Revenue by region of domicile of customer's location** | | |
| India | 67,164 | 61,824 |
| United Arab Emirates | 27,817 | 16,382 |
| Rest of the world | 8,149 | 17,809 |
| **Total revenue** | **103,130** | **96,016** |

**Non-current assets other than financial instruments, investments accounted for using equity method and deferred tax**    Amount ₹ in lakhs

| | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Non-current assets** | | |
| India | 225,740 | 226,721 |
| United Arab Emirates | 19,375 | 28,991 |
| Rest of the world | 25,694 | 18,492 |
| **Total non-current assets** | **270,809** | **274,204** |

**43    Related party disclosures**

**Parent entity**

| Relationship | Name |
|---|---|
| Ultimate holding company | **Eros International PLC** |
| Holding company | **Eros Worldwide FZ LLC** |

**List of Key management personnel (KMP)**

Mr. Sunil Lulla – Executive Vice Chairman & Managing Director

Mr. Kishore Lulla – Executive Director

Ms. Jyoti Deshpande – Executive Director (upto 31 March 2018)

Mr. Dinesh Modi -Group Chief Financial Officer (India) (upto 8 March 2018)

Mr. Farokh Gandhi - Chief Financial Officer (India) (w.e.f. 9 March 2018)

Ms. Dimple Mehta - Vice President Company Secretary and Compliance Officer (upto 14 December 2017)

Mr. Abhishekh Kanoi - Vice President Company Secretary and Compliance Officer (w.e.f. 15 December 2017)

| | |
|---|---|
| **Relatives of KMP with whom transactions exist** | Mrs. Manjula K Lulla (wife of Mr. Kishore Arjan Lulla) |
| | Mrs. Krishika Lulla (wife of Mr. Sunil Arjan Lulla) |
| **Entities over which KMP exercise significant influence** | Shivam Enterprises |
| | Eros Television India Private Limited |
| | M/s Eros International Distribution LLP |
| **Fellow subsidiary company** | Eros Digital Private Limited |
| | Eros International Limited, United Kingdom |
| | Eros Digital FZ LLC |
| | Eros Films Limited, Isle of Man |

CORPORATE OVERVIEW I MANAGEMENT REPORT I **FINANCIAL MANAGEMENT**

## Notes
to the consolidated financial statements and other explanatory information

c) Transactions with related parties

Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| **Sale of film rights** | | |
| Eros Worldwide FZ LLC | 17,897 | 10,592 |
| | **17,897** | **10,592** |
| **Revenue attributable to Eros Digital FZ LLC** | **(9,727)** | **(10,449)** |
| **Sale of prints/VCD/DVD** | | |
| Eros Worldwide FZ LLC | 2 | 6 |
| Total | **2** | **6** |
| **Re-imbursement of administrative expense** | | |
| Eros Worldwide FZ LLC | 337 | 609 |
| Eros Digital FZ LLC | 9,349 | 7,222 |
| Total | **9,686** | **7,831** |
| **Rent expenses** | | |
| Mr. Sunil Lulla | 384 | 276 |
| Mrs. Manjula K Lulla | 348 | 240 |
| Mr. Kishore Lulla | 36 | 36 |
| Total | **768** | **552** |
| **Interest income** | | |
| Eros International Limited | - | 645 |
| Eros Digital FZ LLC | 8 | - |
| Total | **8** | **645** |
| **Interest expenses** | | |
| Eros Digital Private Limited | 54 | 49 |
| Eros Television India Private Limited | - | 482 |
| Total | **54** | **531** |
| **Salary, commission and perquisites* to KMPs Total** | **826** | **1,657** |

* Perquisites to KMP have been valued as per Income Tax Act, 1961 and rules framed thereunder or at actuals as the case may be.
* Excludes ₹ 9 lakhs (31 March 2018 : ₹ 72 lakhs) charged to Statement of Profit and loss on account of stock compensation for awards granted.

d) Transactions with related parties

Amount ₹ in lakhs

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| **Content advances given** | | |
| Eros International Limited | - | 11,180 |
| Total | **-** | **11,180** |
| **Refund of content advances** | | |
| Eros International Limited | - | 18,709 |
| Total | **-** | **18,709** |
| **Trade advances/ loans given** | | |
| Eros Television India Private Limited | - | 65 |
| Eros Worldwide FZ LLC | 35,307 | 10,123 |
| Eros Films Limited | 13,937 | - |
| Total | **49,244** | **10,188** |
| **Recovery of trade advances/ loans given** | | |
| Eros Television India Private Limited | - | 62 |
| Eros International Limited | 281 | - |
| Eros Worldwide FZ LLC | 3,912 | - |
| Eros Films Limited | 13,937 | - |
| Total | **18,130** | **62** |

**EROS INTERNATIONAL MEDIA LIMITED**    135

# Notes
**to the consolidated financial statements and other explanatory information**

| | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---|---|
| **Trade advances/ loans taken** | | |
| Eros Worldwide FZ LLC | 10,596 | 3,257 |
| Eros International Limited | 1,112 | 354 |
| Eros Digital Private Limited | 75 | - |
| Eros Television India Private Limited | - | 610 |
| **Total** | **11,783** | **4,221** |
| **Repayment of advances/ loans** | | |
| Eros Worldwide FZ LLC | - | 18,416 |
| Eros International Limited | 1,102 | 354 |
| Eros Digital Private Limited | 81 | 23 |
| Eros Television India Private Limited | - | 5,254 |
| **Total** | **1,183** | **24,047** |
| **Refund of deposits** | | |
| Mr. Sunil Lulla | 35 | 33 |
| **Total** | **35** | **33** |

Amount ₹ in lakhs

| Balances with related parties | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Trade balances due from** | | |
| Eros Worldwide FZ LLC | 11,701 | 6,595 |
| Eros Digital FZ LLC | 5,989 | 2,453 |
| Eros International Limited | - | 88 |
| **Total** | **17,690** | **9,136** |
| **Trade balances due to** | | |
| Eros Worldwide FZ LLC | 9,340 | 13,303 |
| Eros International Limited | 108 | 102 |
| Eros Digital FZ LLC | 10,713 | 7,244 |
| **Total** | **20,161** | **20,649** |
| **Advances/Loan due to** | | |
| Eros Worldwide FZ LLC | 14,049 | 3,452 |
| Eros Digital Private Limited | 528 | 480 |
| Eros International Limited | 10 | - |
| | **14,587** | **3,932** |
| **Loans and advances due from** | | |
| Eros Worldwide FZ LLC | 42,983 | 10,123 |
| Shivam Enterprises | 57 | 57 |
| Eros Television India Private Limited | 4 | 3 |
| Eros Digital FZ LLC | 373 | - |
| Eros International Limited | 51 | 332 |
| **Total** | **43,468** | **10,515** |
| **Security Deposits/Amounts due from KMPs or their relatives** | | |
| Mr. Sunil Lulla | 267 | 302 |
| Mr. Kishore Lulla | 240 | 240 |
| Mrs. Manjula Lulla | 75 | 75 |
| Mrs. Krishika Lulla | 0 | - |
| **Total** | **582** | **617** |
| **Amounts due to KMPs or their relatives** | | |
| Mr. Sunil Lulla | 39 | 117 |
| Mr. Kishore Lulla | 149 | 115 |
| Mrs. Manjula Lulla | 64 | 42 |
| **Total** | **252** | **274** |

**2 (a)   Terms and conditions**

All outstanding balances are unsecured and repayable in cash.

# Notes
**to the consolidated financial statements and other explanatory information**

**44    Categories of financial assets and financial liabilities**

The carrying value and fair value of financial instruments by categories are as follows:                                   Amount ₹ in lakhs

| Particulars | Carrying value /Fair value | |
| --- | --- | --- |
| | As at 31 March 2019 | As at 31 March 2018 |
| **Financial assets** | | |
| **Measured at fair value through profit and loss** | | |
| Investments | 0 | 0 |
| | 0 | 0 |
| **Measured at amortised cost** | | |
| Loans | 46,311 | 13,029 |
| Restricted bank deposits | 6,505 | 4,492 |
| Other financial assets | 1,793 | 1,091 |
| Trade receivables | 79,352 | 69,857 |
| Cash and cash equivalents | 14,111 | 14,230 |
| | **148,072** | **102,699** |
| **Financial liabilities** | | |
| **Measured at fair value through profit and loss** | | |
| Forward contract liabilities | 430 | - |
| **Total** | **430** | **-** |
| **Measured at amortised cost** | | |
| Borrowings | 53,992 | 61,760 |
| Acceptance | 5,796 | 5,796 |
| Trade payables | 31,178 | 32,429 |
| Other financial liabilities | 7,235 | 9,066 |
| | **98,201** | **109,051** |

**45    Fair value measurement of financial instruments**

Financial assets and financial liabilities measured at fair value in the balance sheet are grouped into three Levels of a fair value hierarchy. The three Levels are defined based in the observability of significant inputs to the measurement, as follows:

Level 1: quoted prices (unadjusted) in active markets for identical assets or liabilities

Level 2: inputs other than quoted prices included within Level 1 that are observable for the asset or liability, either directly or indirectly
Level 3: unobservable inputs for the asset or liability

The following table shows the Levels within the hierarchy of financial assets and liabilities measured at fair value on a recurring basis:
                                                                                                          Amount ₹ in lakhs

| Particulars | Carrying value /Fair value | | | |
| --- | --- | --- | --- | --- |
| | As at 31 March 2019 | Level 1 | Level 2 | Level 3 |
| **Financial assets** | | | | |
| **Measured at fair value through Statement of Profit and Loss** | | | | |
| Investments | 0 | 0 | - | - |
| **Total** | **0** | **0** | **-** | **-** |

| Particulars | Carrying value /Fair value | | | |
| --- | --- | --- | --- | --- |
| | As at 31 March 2019 | Level 1 | Level 2 | Level 3 |
| **Measured at fair value through profit and loss** | | | | |
| Forward contract liabilities | 430 | - | 430 | - |
| **Total** | **430** | **-** | **430** | **-** |

# Notes
## to the consolidated financial statements and other explanatory information

The following table shows the financial assets and liabilities measured at amortised cost on a recurring basis:

Amount ₹ in lakhs

| Particulars | Carrying value /Fair value | | | |
|---|---|---|---|---|
| | As at 31 March 2018 | Level 1 | Level 2 | Level 3 |
| **Measured at amortised cost** | | | | |
| **Financial assets** | | | | |
| Loans | 46,311 | - | - | - |
| Restricted deposits | 6,505 | - | - | - |
| Other financial assets | 1,793 | - | 795 | - |
| Trade receivables | 79,352 | - | - | - |
| Cash and cash equivalents | 14,111 | - | - | - |
| | **148,072** | **-** | **795** | **-** |
| **Measured at amortised cost** | | | | **-** |
| **Financial liabilities** | | | | |
| Borrowings- Non-current | 8,724 | - | 8,724 | - |
| Borrowings- Current | 45,268 | - | - | - |
| Acceptance | 5,796 | - | - | - |
| Trade payables | 31,178 | - | - | - |
| Other financial liabilities | 7,235 | - | - | - |
| **Total** | **98,201** | **-** | **8,724** | **-** |

During the year ended 31 March 2019 there was no transfer between level 2 and level 3 fair value hierarchy.

Fair value of cash and short term deposits, trade and other short term receivables, trade payables, other current liabilities and short term borrowings carried at amortised cost is not materially different from its carrying cost largely due to short term maturities of these financial assets and liabilities.

Fair value of the borrowing items fall within level 2 of the fair value hierarchy and is calculated on the basis of discounted future cash flows.

Non-listed shares and other securities fall within level 3 of the fair value hierarchy. Valuation is based on the net asset method.

Financial instruments with fixed and variable interest rate fall within level 2 of the fair value hierarchy and are evaluated by Company based on parameters such as interest rate, credit rating or assessed credit worthiness.

Amount ₹ in lakhs

| Particulars | Carrying value /Fair value | | | |
|---|---|---|---|---|
| | As at 31 March 2018 | Level 1 | Level 2 | Level 3 |
| **Financial assets** | | | | |
| **Measured at fair value through Statement of Profit and Loss** | | | | |
| Investments | 0 | 0 | - | - |
| **Total** | **0** | **0** | **-** | **-** |

# Notes
**to the consolidated financial statements and other explanatory information**

The following table shows the financial assets and liabilities measured at amortised cost on a recurring basis:                            Amount ₹ in lakhs

| Particulars | Carrying value /Fair value | | | |
|---|---|---|---|---|
| | As at<br>31 March 2018 | Level 1 | Level 2 | Level 3 |
| **Measured at amortised cost** | | | | |
| **Financial assets** | | | | |
| Loans | 13,029 | - | - | - |
| Restricted deposits | 4,492 | - | 789 | - |
| Other financial assets | 1,091 | - | - | - |
| Trade receivables | 69,857 | - | - | - |
| Cash and cash equivalents | 14,230 | - | - | - |
| | **102,699** | **-** | **789** | **-** |
| **Measured at amortised cost** | | | | **-** |
| **Financial liabilities** | | | | |
| Borrowings- Non-current | 14,952 | - | 14,952 | - |
| Borrowings- Current | 46,808 | - | - | - |
| Acceptance | 5,796 | - | - | - |
| Trade payables | 32,429 | - | - | - |
| Other financial liabilities | 9,066 | - | - | - |
| **Total** | **109,051** | **-** | **14,952** | **-** |

During the year ended 31 March 2018 there was no transfer between level 2 and level 3 fair value hierarchy.

Fair value of cash and short term deposits, trade and other short term receivables, trade payables, other current liabilities and short term borrowings carried at amortised cost  is not materially different from its carrying cost largely due to short term maturities of these financial assets and liabilities

**46    Financial instruments and Risk management**

The Company is exposed to various risks in relation to financial instruments. The Company's financial assets and liabilities by category are summarised in note. The main types of risks are market risk, credit risk and liquidity risk.

The Company's risk management is coordinated in close cooperation with the board of directors and audit committee meetings.

The Company has established objectives concerning the holding and use of financial instruments. The underlying basis of these objectives is to manage the financial risks faced by the Company.

**Management of Capital Risk and Financial Risk**

The Company manages its capital to ensure that it will be able to continue as a going concern while maximizing the return to shareholders through the optimization of the debt and equity balance. The Company monitors capital using a gearing ratio, which is net debt divided by total capital. For the purpose of the Company's capital management, capital includes issued capital and all other equity reserves attributable to the equity shareholders of the Company. Net debt is calculated as borrowing (refer note 18,23 and 26) less cash and cash equivalents.

The gearing ratio at the end of the reporting period was as follows:                            Amount ₹ in lakhs

| | As at<br>31 March 2019 | As at<br>31 March 2018 |
|---|---|---|
| Debt | 64,988 | 74,773 |
| Less: Cash and cash equivalents | (14,111) | (14,230) |
| **Net debt** | **50,877** | **60,543** |
| Equity | 258,239 | 225,588 |
| **Net debt to equity** | **19.70%** | **26.84%** |

# Notes
## to the consolidated financial statements and other explanatory information

### Financial risk management objectives

Based on the operations of the Company , Management considers that key financial risks that it faces are credit risk, currency risk, liquidity risk and interest rate risk. The objectives under each of these risks are as follows:

- credit risk: minimize the risk of default and concentration.
- currency risk: reduce exposure to foreign exchange movements principally between INR and USD.
- liquidity risk: ensure adequate funding to support working capital and future capital expenditure requirements.
- interest rate risk: mitigate risk of significant change in market rates on the cash flow of issued variable rate debt.

### Credit Risk

The Company's credit risk is principally attributable to its trade receivables, loans and bank balances. As a number of the Company's trading activities require third parties to report revenues due to the Company this risk is not limited to the initial agreed sale or advance amounts. The amounts shown within the Balance Sheet in respect of trade receivables and loans are net of allowances for doubtful debts based upon objective evidence that the Company will not be able to collect all amounts due.

Amount in ₹ lakhs

|  | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Ageing of Receivables** | | |
| Not due | 50,758 | 39,336 |
| Overdue less than 90 days | 10,939 | 14,023 |
| Overdue more than 90 days less than 180 days | 5,403 | 9,414 |
| Overdue more than 181 less than 270 days | 6,455 | 780 |
| Overdue more than 271 less than360 days | 2,346 | 1,778 |
| Overdue more than 360 days | 3,451 | 4,526 |
| **Closing balance** | **79,352** | **69,857** |

Amount in ₹ lakhs

|  | As at 31 March 2019 | As at 31 March 2018 |
|---|---|---|
| **Expected credit loss** | | |
| Opening balance | 5,188 | 6,008 |
| Provision made during the year | 12,184 | 3,662 |
| Reversal of provision during the year | (6,631) | (4,499) |
| Foreign currency translation rev erserve | 266 | 17 |
| Closing balance | **11,007** | **5,188** |

Trading credit risk is managed on a customer by customer basis by the use of credit checks on new clients and individual credit limits, where appropriate, together with regular updates on any changes in the trading partner's situation. In a number of cases trading partners will be required to make advance payments or minimum guarantee payments before delivery of any goods. The Company reviews reports received from third parties and in certain cases as a matter of course reserve the right within the contracts it enters into to request an independent third party audit of the revenue reporting.

The credit risk on bank balances is limited because the counterparties are banks with high credit ratings as signed by international credit rating agencies.

The Company from time to time will have significant concentration of credit risk in relation to individual theatrical releases, television syndication deals or digital licenses. This risk is mitigated by contractual terms which seek to stagger receipts and/or the release or airing of content. 31 March 2019 38% (31 March 2018: 37%) of trade account receivables were represented by the top 5 customer, out of which as at 31 March 2019 21% (31 March 2018: 9%) of trade account receivables were represented by the related parties. The maximum exposure to credit risk is that shown within the statement of financial position.

# Notes
**to the consolidated financial statements and other explanatory information**

### Currency Risk

The Company is exposed to foreign exchange risk from foreign currency transactions. As a result it faces both translation and transaction currency risks which are principally mitigated by matching foreign currency revenues and costs wherever possible.

The Company has identified that it will need to utilize hedge transactions to mitigate any risks in movements between the US Dollar and the Indian Rupee and has adopted an agreed set of principles that will be used when entering into any such transactions. No such transactions have been entered into to date and the Company has managed foreign currency exposure to date by seeking to match foreign currency inflows and outflows as much as possible such as packing credit repayment in USD is matched with remittances from UAE in USD. Details of the foreign currency borrowings that the Company uses to mitigate risk are shown within Interest Risk disclosures.

The Company adopts a policy of borrowing where appropriate in the local currency as a hedge against translation risk. The table below shows the Company's net foreign currency monetary assets and liabilities position in the main foreign currencies, translated to Indian Rupees (₹) equivalents, as at the year end:

Amount in lakhs

|  | Net balance receivables / (payables) | | | | |
|---|---|---|---|---|---|
|  | **INR** | **USD** | **SGD\*** | **GBP** | **EUR** |
| As at 31 March 2019 | (179) | (3) | 0 | - | - |
| As at 31 March 2018 | 1,363 | 26 | 0 | (3) | - |

\*amount represents less than one lakh

The above foreign currency arises when the Company holds monetary assets and liabilities denominated in a currency other than ₹.

A uniform decrease of 10% in exchange rates against all foreign currencies in position as of 31 March 2019 would have increased in the Company's net profit before tax by approximately ₹ 2 lakhs (2018: loss of ₹ 136 lakhs). An equal and opposite impact would be experienced in the event of an increase by a similar percentage

### Liquidity risk

The Company manages liquidity risk by maintaining adequate reserves and agreed committed banking facilities. Management of working capital takes account of film release dates and payment terms agreed with customers.

A maturity analysis for financial liabilities is provided below. The amounts disclosed are based on contractual undiscounted cash flows. The table includes both interest and principal cash flows. To the extent that interest flows are floating rate, the undiscounted amount is derived from interest rates as at 31 March, in each year.

Amount ₹ in lakhs

|  | **Total** | **Less than 1 year** | **1-3 years** | **3-5 years** | **More than 5 years** |
|---|---|---|---|---|---|
| **As at 31 March 2019** | | | | | |
| Borrowing principal payments | 59,263 | 50,468 | 8,195 | 600 | - |
| Borrowing interest payments | 7,199 | 5,987 | 1,194 | 18 | - |
| Acceptance | 5,796 | 5,796 | - | - | - |
| Trade and other payables | 31,203 | 31,095 | 108 | - | - |

Amount ₹ in lakhs

|  | **Total** | **Less than 1 year** | **1-3 years** | **3-5 years** | **More than 5 years** |
|---|---|---|---|---|---|
| **As at 31 March 2018** | | | | | |
| Borrowing principal payments | 69,173 | 53,899 | 11,939 | 3,335 | - |
| Borrowing interest payments | 9,917 | 7,225 | 2,418 | 274 | - |
| Acceptance | 5,796 | 5,796 | - | - | - |
| Trade and other payables | 32,429 | 32,327 | 102 | - | - |

At 31 March 2019, the Company had facilities available of ₹ 64,731 lakhs (31 March 2018: ₹ 74,780 lakhs) and had net undrawn amounts of ₹ 201 lakhs ( 31 March 2018: ₹ 414 lakhs) available.

### Interest rate risk

The Company is exposed to interest rate risk as the Company has borrowed funds at floating interest rates. The risk is managed as the loans are at flowting interest rates which is aligned to the market.

A uniform increase of 100 basis in interest rates against all borrowings in position as of 31 March 2019 would have decreased in the Company's net profit before tax by approximately ₹ 453 lakhs (31 March 2018: net profit before tax of ₹ 317 lakhs). An equal and opposite impact would be experienced in the event of a decrease by a similar basis.

**EROS INTERNATIONAL MEDIA LIMITED    141**

# Notes

**to the consolidated financial statements and other explanatory information**

**47     a.     Enterprises Consolidated as Subsidiary in accordance with Indian Accounting Standard 110- Consolidated Financial Statements**

| Sr. No. | Name of enterprises | Country of incorporation | Proportion of ownership interest |
|---|---|---|---|
| 1 | Eros International Films Private Limited | India | 100% |
| 2 | Big Screen Entertainment Private Limited | India | 64% |
| 3 | EyeQube Studios Private Limited | India | 100% |
| 4 | EM Publishing Private Limited | India | 100% |
| 5 | Eros Animation Private Limited | India | 100% |
| 6 | Copsale Limited | British Virigin Island | 100% |
| 7 | Digicine PTE Limited | Singapore | 100% |
| 8 | Colour Yellow Productions Private Limited | India | 50% |
| 9 | Universal Power Systems Private Limited | India | 100% |
| 10 | Eros International Distribution LLP | India | 100% |
| 11 | Reliance Eros Production LLP | India | 50% |

**47     b.     Additional information, as required under Schedule III to the Companies Act, 2013, of enterprises consolidated as Subsidiary/ Associates/Joint Ventures**

| Name of Enterprises | Net Assets, i.e., total assets minus total liabilities | | Share in profit or loss | | Share in other comprehensive income | | Share in total comprehensive income | |
|---|---|---|---|---|---|---|---|---|
| | As % of consolidated net assets | ₹ in lakhs | As % of consolidated profit or loss | ₹ in lakhs | As % of consolidated other comprehensive income | ₹ in lakhs | As % of consolidated total comprehensive income | ₹ in lakhs |
| **Parent** | | | | | | | | |
| Eros International Media Limited | 59.6% | 153,843 | 32.8% | 8,734 | 1% | 40 | 27.6% | 8,774 |
| **Subsidiaries** | | | | | | | | |
| **Indian** | | | | | | | | |
| Eros International Films Private Limited | 0.8% | 2,049 | 1.3% | 341 | - | - | 1.1% | 341 |
| Big Screen Entertainment Private Limited | 0.0% | 78 | 0.0% | (1) | - | - | 0.0% | (1) |
| EyeQube Studios Private Limited | 0.0% | 40 | 0.0% | 1 | - | - | 0.0% | 1 |
| EM Publishing Private Limited | 0.0% | (18) | 0.0% | 2 | - | - | 0.0% | 2 |
| Eros Animation Private Limited | 0.0% | (2) | 0.0% | (1) | - | - | 0.0% | (1) |
| Colour Yellow Productions Private Limited | 0.7% | 1,870 | -2.0% | (520) | - | - | -1.6% | (520) |
| Universal Power Systems Private Limited | 0.1% | 186 | -0.9% | (229) | 0% | 4 | -0.7% | (225) |
| Eros International Distribution LLP | - | - | - | - | - | - | - | - |
| **Foreign** | | | | | | | | |
| Digicine PTE Limited | 0.2% | 594 | 4.9% | 1,304 | 0% | 19 | 4.2% | 1,325 |
| Copsale Limited | 38.7% | 100,031 | 62.8% | 16,748 | 99% | 5,075 | 68.7% | 21,822 |
| **Non controlling interests** | 0.4% | 1,028 | -1.0% | (260) | | | -0.8% | (260) |

# Notes
**to the consolidated financial statements and other explanatory information**

**48**  **Auditors' remuneration**                                                        Amount ₹ in lakhs

|  | Year ended 31 March 2019 | Year ended 31 March 2018 |
|---|---:|---:|
| **As auditor** | | |
| Statutory audit | 96 | 97 |
| Limited review | 15 | 25 |
| Tax audit | 9 | 10 |
| | **120** | **132** |
| In other capacity | | |
| Other services (certification fees) | 2 | 15 |
| | **2** | **15** |
| Reimbursement of expenses | - | 10 |
| **Total** | **122** | **157** |

**49**  Based on the information available with the Company, there are no dues payable as at the year end to micro, small and medium enterprises as defined in The Micro, Small & Medium Enterprises Development Act, 2006. This information has been relied upon by the statutory auditors of the Company.

**50**  **Post reporting date events**

No adjusting or significant non-adjusting events have occurred between 31 March 2019 and the date of authorisation of these consolidated financial statements

**51**  **Authorisation of financial statements**

The financial statement for the year ended 31 March 2019 (including comparatives) were approved by the board of directors on 23 May 2019.

As per our report of even date

For **Chaturvedi & Shah LLP**                      **For and on behalf of Board of Directors**
Chartered Accountants
Firm Registration No.: 101720W/W100355

**Amit Chaturvedi**                **Sunil Arjan Lulla**              **Sunil Srivastav**                  **Subramaniam Lakshminarayanan**
Partner                            Executive Vice Chairman &         Non Executive Independent            Non Executive Independent
Membership No: 103141              Managing Director                 Director                             Director
                                   (DIN: 00243191)                   (DIN: 00237561)                      (DIN: 07972480)

                                                                     **Farokh P. Gandhi**                 **Abhishekh Kanoi**
                                                                     Chief Financial Officer              Vice President - Company Secretary
                                                                                                          and Compliance Officer

Place: Mumbai                                                        Place: Mumbai
Date : 23 May 2019                                                   Date : 23 May 2019

NOTICE

# NOTICE OF THE 25TH ANNUAL GENERAL MEETING

**Regd. Office:** 201, Kailash Plaza, Opp. Laxmi Industrial Estate, Off. Andheri Link Road, Andheri West, Mumbai 400 053, Maharashtra (India).
**Corporate Office:** 901/ 902, Supreme Chambers, Off. Veera Desai Road, Andheri West, Mumbai 400 053, Maharashtra (India).
Phone: +91 22 66021500 | Fax: +91 22 66021540 | Email: compliance.officer@erosintl.com | Website: www.erosplc.com
**CIN:** L99999MH1994PLC080502

**NOTICE** is hereby given that the 25th Annual General Meeting (AGM) of the Members of Eros International Media Limited will be held on Wednesday, the 25th day of September, 2019 at "The Classic Club", New Link Road, Behind Infinity Mall, Andheri West, Mumbai – 400 053, Maharashtra (India) at 2:00 P.M., to transact the following business:

**ORDINARY BUSINESS:**

1. To receive, consider and adopt:

   a. the Audited Financial Statements of the Company for the financial year ended 31 March 2019, together with the Report of the Directors' and Auditors thereon; and

   b. the Audited Consolidated Financial Statements of the Company for the financial year ended 31 March 2019, together with the Report of the Auditors thereon.

2. **To appoint a Director in place of Mr. Kishore Arjan Lulla (DIN: 02303295), who retires by rotation, and being eligible, offers himself for re-appointment.**

**SPECIAL BUSINESS:**

3. **Re-appointment of Mr. Dhirendra Swarup (DIN: 02878434) as an Independent Director of the Company.**

   To consider and if thought fit, to pass with or without modification(s), the following resolution as a **Special Resolution:**

   "**RESOLVED THAT** pursuant to the provisions of Sections 149, 150 and 152 and other applicable provisions, if any, of the Companies Act, 2013 ("the Act") and the Companies (Appointment and Qualification of Directors) Rules, 2014 (including any statutory modification(s) or re-enactment thereof for the time being in force) and the applicable provisions of the Securities and Exchange Board of India (Listing Obligations and Disclosure Requirements) Regulations, 2015 ("SEBI Listing Regulations"), Mr. Dhirendra Swarup (DIN: 02878434), Independent Director of the Company whose period of office would expire on 25 September 2019, on completion of the first Five (5) consecutive years of appointment within the meaning of Section 149(10) of the Act, who has submitted a declaration that he meets the criteria of independence as provided in Section 149(6) of the Act and Regulation 16 of the SEBI Listing Regulations, as amended from time to time and who is eligible for re-appointment for a second term, be and is hereby re-appointed as an Independent Director of the Company to hold office for a second term of Five (5) consecutive years from the conclusion of this Annual General Meeting to the conclusion of the Annual General Meeting of the Company to be held in the Calendar Year 2024 and whose office shall not be liable to retire by rotation.

   **RESOLVED FURTHER THAT** pursuant to Regulation 17(1A) of SEBI Listing Regulations and other applicable provisions, if any, of the Act and the applicable Rules framed thereunder, consent of Members be and is hereby accorded to Mr. Dhirendra Swarup (DIN: 02878434) Director of the Company, to continue to hold office of an Independent Director of the Company not with standing that Mr. Dhirendra Swarup will be attaining the age of Seventy Five (75) years on 5 December 2019.

   **RESOLVED FURTHER THAT** any Director and/or the Company Secretary of the Company be and is hereby authorised to do all acts, deeds and things including filings with the appropriate authorities and take steps as may be deemed necessary, proper or expedient to give effect to this Resolution and matters incidental thereto."

4. **Material Related Party Transactions with Colour Yellow Productions Private Limited**

   To consider and if thought fit, to pass with or without modification(s), the following resolution as an **Ordinary Resolution**:

   "**RESOLVED THAT** pursuant to the provisions of Section 188 and any other applicable provisions of the Companies Act, 2013 and applicable Rules made thereto (including any statutory modification(s) or re-enactment thereof for the time being in force) and Regulation 23 of SEBI (Listing Obligations and Disclosure Requirements) Regulations, 2015 as amended from time to time and applicable provisions of the Foreign Exchange Management Act; 1999 and rules, regulations and guidelines made there under, and subject to such approvals, consents, sanctions and permissions as may be necessary from appropriate authorities, consent of the Members of the Company be and is hereby accorded to the Board of Directors of the Company (hereinafter referred to as the "Board", which term shall include any Committee constituted by the Board of Directors of the Company or any person(s) authorized by the Board to exercise the powers conferred on the Board of Directors of the Company by this Resolution) to enter into material contracts/ arrangements/ transactions in the normal course of business and at arm's length basis with Colour Yellow Productions Private Limited, a subsidiary company and a Related Party under Section 2(76) of the Companies Act, 2013 for production of cinematograph films (in Hindi and other regional and foreign languages) and original television and digital programmes for an estimated amount of ₹ 300 crores in each financial year on such terms and conditions as may be determined by the Board of Directors from time to time.

   **RESOLVED FURTHER THAT** the Board of Directors of the Company be and are hereby authorized to decide upon the nature and the value of transactions to be entered into with Colour Yellow Productions Private Limited for production of cinematograph films (in Hindi and other regional and foreign languages) and original television and digital programmes within the maximum aforesaid limits.

   **RESOLVED FURTHER THAT** the Board of Directors of the Company be and are hereby authorized to alter/vary the terms and conditions entered by the Company with Colour Yellow Productions Private Limited for such period as may be determined by the Board from time to time.

   **RESOLVED FURTHER THAT** the Board of Directors of the Company be and are hereby authorized to sign and execute all such deeds, applications, documents and writings that may be required, on behalf of the Company and generally to do all such acts, matters and things that may be necessary, proper, expedient or incidental thereto for the purpose of giving effect to the aforesaid resolutions."

By Order of the Board of Directors
For **Eros International Media Limited**

**Abhishekh Kanoi**
Vice President- Company Secretary
and Compliance Officer
Membership No. – FCS-9530

Place: Mumbai
Date : 23 May 2019

**NOTES**

1.  The Explanatory Statement pursuant to Section 102 of the Companies Act, 2013 ("the Act") in respect of the special business set out at Item Nos. 3 and 4 of this notice is annexed as **Annexure-I**. The relevant details as required under Regulation 36 of the Securities and Exchange Board of India (Listing Obligations and Disclosure Requirements) Regulations, 2015 ("SEBI Listing Regulations") and Secretarial Standard-2 (SS-2), of person seeking appointment/re-appointment/fixation of remuneration of Director under Item Nos. 2 and 3 of this Notice are annexed as **Annexure II**.

2.  The requirement to place the matter relating to appointment of Auditors for ratification by members at every AGM is done away vide notification dated 7 May 2018 issued by the Ministry of Corporate Affairs. Accordingly, no resolution is proposed for ratification of appointment of Auditors, who were appointed for the period of Five (5) years in the 23rd AGM held on 28 September 2017.

3.  **A MEMBER ENTITLED TO ATTEND AND VOTE AT THE AGM IS ENTITLED TO APPOINT A PROXY TO ATTEND AND VOTE INSTEAD OF HIMSELF/HERSELF AND SUCH PROXY NEED NOT BE A MEMBER OF THE COMPANY.** A person shall not act as Proxy for more than Fifty (50) members and holding in the aggregate not more than Ten (10) percent of the total share capital of the Company carrying voting rights. A person holding more than Ten (10) percent of the total share capital of the Company carrying voting rights may appoint a single person as a proxy and such person shall not act as proxy for any other person or shareholder. Proxies submitted on behalf of limited companies, societies etc., must be supported by appropriate resolutions / authority, as applicable.

4.  The instrument appointing the proxy (as per the format provided with), in order to be effective, should be duly stamped, completed and signed and deposited at the Corporate Office of the Company not less than Forty Eight (48) hours before the commencement of the Meeting.

5.  MEMBER/PROXY SHOULD BRING THE ATTENDANCE SLIP SENT HEREWITH, DULY FILLED IN, FOR ATTENDING THE MEETING.

6.  Corporate Members intending to send their Authorized Representatives to attend the Meeting pursuant to Section 113 of the Act are requested to send a certified copy of the relevant Board Resolution together with their respective specimen signatures authorizing their representatives to attend and vote on their behalf at the Meeting.

7.  The Register of Members and Share Transfer Books of the Company will remain closed from Wednesday, 18 September 2019 till Wednesday, 25 September 2019 (both days inclusive).

8.  Members holding shares in electronic form are requested to intimate immediately any change in their address or bank mandates to their Depository Participants with whom they are maintaining their demat accounts. Members holding shares in physical form are requested to advise any change of address immediately to the Company/Registrar and Transfer Agent, Link Intime India Private Limited.

9.  Members must quote their Folio No./Demat Account No. and contact details such as e-mail address, contact no. etc. in all their correspondence with the Company/Registrar and Transfer Agent.

10. The Securities and Exchange Board of India (SEBI) has mandated the submission of Permanent Account Number (PAN) by every participant in securities market. Members holding shares in electronic form are, therefore, requested to submit PAN to their Depository Participants with whom they are maintaining their demat accounts. Members holding shares in physical form can submit their PAN details to the Company/Registrar and Transfer Agent.

11. Relevant documents referred to in this Notice and the Explanatory Statement pursuant to Section 102 of the Act shall be open for inspection at the Corporate Office of the Company during business hours on all days except Saturdays, Sundays and Public Holidays between 11:00 A.M. to 1:00 P.M. up to the date of the AGM. The Register of Directors and Key Managerial Personnel and their shareholding maintained under Section 170 of the Act and the Register of Contracts and Arrangements in which the Directors are interested, maintained under Section 189 of the Act will be available for inspection by the Members at the AGM.

12. Every Member entitled to vote at the AGM of the Company can inspect the proxies lodged at the Company at any time during the business hours of the Company during the period beginning Twenty-Four (24) hours before the time fixed for the commencement of the AGM. However, a prior notice of not less than Three (3) days in writing of the intentions to inspect the proxies lodged shall be required to be provided to the Company.

13. The Company has designated an exclusive Email ID compliance.officer@erosintl.com for redressal of shareholders complaints/grievances. For any investor related queries, you are requested to please write to us at the above Email ID.

14. Members who are yet to encash their earlier dividend warrants for the interim dividend in FY 2012-13 are requested to contact the office of the Company Secretary & Compliance Officer/Link Intime India Private Limited, Registrar and Transfer Agent (RTA) of the Company for revalidation of the dividend warrants/issue of fresh demand drafts. The Company has uploaded the details of unpaid and unclaimed amounts lying with the Company as on 27 September 2018 (date of the last AGM) on the website of the Company at www.erosplc.com and also on the website of the Ministry of Corporate Affairs.

15. Members are requested to bring their Attendance Slip alongwith copy of the Annual Report to the AGM.

16. Members who wish to obtain any information on the Company or view the financial statements for the financial year ended 31 March 2019 may visit the Company's website at www.erosplc.com or send their queries to the Company Secretary at the Corporate Office of the Company atleast Ten (10) days before the AGM.

17. In terms of the applicable provisions of the Act and Rules thereto, the Company has obtained email addresses of its Members and have given an advance opportunity to every Member to register their email address and changes therein from time to time with the Company for service of communications/documents (including Notice of General Meetings, Audited Financial Statements, Directors' Report, Auditors' Report and all other documents) through electronic mode.

18. In case of joint holders attending the AGM, the Member whose name appears as the first holder in the order of names as per the Register of Members of the Company will be entitled to vote.

Although, the Company has given opportunity for registration of email addresses and has already obtained email addresses from some of its Members, the Company once again requests its Members, who have so far not registered, to register their e-mail address(es) and changes therein from time to time, through any of the following manner:

i.  **Email Intimation**: By sending an email mentioning the Name(s) and Folio Number/Client ID and DP ID to the Registrar and Transfer Agent at rnt.helpdesk@linkintime.co.in or to the Company at compliance.officer@erosintl.com

ii. **Written Communication:** By sending written communication addressed to the Company Secretary and Compliance Officer at the Corporate Office of the Company or to the Registrar and Transfer Agent of the Company at Link Intime India Private Limited, Unit – Eros International Media Limited, C-101, 247 Park, L.B.S Marg, Vikhroli (West), Mumbai 400 083.

**NOTICE**

19. Details as stipulated under SEBI Listing Regulations and Secretarial Standards on General Meeting (SS-2), in respect of the Directors seeking appointment/re-appointment at the AGM, forms integral part of the Notice. The Director have furnished the requisite declarations for his re-appointment.

20. Electronic copy of the Notice convening the 25th AGM of the Company, the Annual Report alongwith the process of e-voting and the Attendance Slip, Proxy Form are being sent to all the Members whose email Ids are registered with the Company/Depository Participants for communication purposes unless any member has requested for a physical copy of the same. For Members who have not registered their E-mail addresses, physical copies of the Notice convening the 25th AGM of the Company, the Annual Report alongwith the process of e-voting and the Attendance Slip, Proxy Form are sent in the permitted mode.

21. Members may also note that the Notice convening the 25th AGM and the Annual Report 2018-19 will also be available on the Company's website at www.erosplc.com and on the website of Central Depository Services (India) Limited (CDSL) at www.evotingindia.com for download. Even after registering for e-communication, members are entitled to receive such communication in physical form, upon making a request for the same, free of cost. For any communication, the Members may also send request to compliance.officer@erosintl.com.

22. The Certificate from Statutory Auditors of the Company certifying that the Company's Employee Stock Options Schemes are being implemented in accordance with the SEBI (Share Based Employee Benefits) Regulations, 2014, as amended, will be available for inspection at the AGM.

23. The route map showing directions to reach the venue of the 25th AGM is annexed hereto.

24. Securities of listed companies would be transferred in dematerialised form only w.e.f. 1 April 2019. In view of the same, Members holding shares in physical form are requested to convert their holdings to dematerialized form to eliminate all risks associated with physical shares and for ease of portfolio management. Members can contact the Company's RTA for assistance in this regard.

**25. Voting**

I. In compliance with provisions of Section 108 of the Act, read with Rule 20 of the Companies (Management and Administration) Rules, 2014 as amended by the Companies (Management and Administration) Amendment Rules, 2015 and Regulation 44 of the SEBI Listing Regulations, the Company is pleased to provide its Members the facility to cast their votes either for or against each resolutions set forth in the Notice of the AGM using electronic voting system from a place other than the venue of the AGM ('remote e-voting'), provided by Central Depository Services (India) Limited ("CDSL") and the business may be transacted through such voting.

II. Any person, who acquires shares of the Company and becomes a Member of the Company after dispatch of the Notice of AGM and holds shares as of the cut-off date i.e. Wednesday, 18 September 2019, may obtain the login ID and password by sending a request at helpdesk.evoting@cdslindia.com. However, if a Member is already registered with CDSL for e-voting, then he/she can use existing user id and password/PIN for casting the vote.

The instructions for e-voting are as follows:

i. The voting period begins on Saturday, 21 September 2019 (9:00 A.M.) and ends on Tuesday, 24 September 2019 (5:00 P.M.). During this period Members of the Company, holding shares either in physical form or in dematerialized form, as on, Wednesday, 18 September 2019 i.e. cut off date may cast their vote electronically.

A person who is not a Member as on the cutoff date should treat this Notice for information purpose only. The e-voting module shall be disabled by CDSL for voting thereafter.

ii. The Members should log on to the e-voting website www.evotingindia.com.

iii. Click on Shareholders / Members Tab

iv. Now Enter your User ID

a. For CDSL: 16 digits beneficiary ID,

b. For NSDL: 8 Character DP ID followed by 8 Digits Client ID,

c. Members holding shares in Physical Form should enter Folio Number registered with the Company.

v. Next enter the Image Verification as displayed and Click on Login.

vi. If you are holding shares in demat form and had logged on to www.evotingindia.com and voted on an earlier voting of any company, then your existing password is to be used.

vii. If you are a first time user follow the steps given below:

| | **For Members holding shares in Demat Form and Physical Form** |
|---|---|
| PAN | Enter your 10 digit alpha-numeric PAN issued by Income Tax Department (Applicable for both demat shareholders as well as physical shareholders) |
| | • Members who have not updated their PAN with the Company/Depository Participant are requested to use the sequence number which is printed on Postal Ballot / Attendance Slip indicated in the PAN field. |
| Dividend Bank Details **OR** Date of Birth (DOB) | Enter the Dividend Bank Details or Date of Birth (in dd/mm/yyyy format) as recorded in your demat account or in the Company records in order to login. |
| | • If both the details are not recorded with the depository or Company, please enter the Member id / folio number in the Dividend Bank details field as mentioned in instruction (iv). |

viii. After entering these details appropriately, click on "SUBMIT" tab.

ix. Members holding shares in physical form will then directly reach the Company selection screen. However, Members holding shares in demat form will now reach 'Password Creation' menu wherein they are required to mandatorily enter their login password in the new password field. Kindly note that this password is also to be used by the demat holders for voting on resolutions of any other company on which they are eligible to vote, provided that Company opts for e-voting through CDSL platform. It is strongly recommended not to share your password with any other person and take utmost care to keep your password confidential.

x. For Members holding shares in physical form, the details can be used only for e-voting on the resolutions contained in this Notice.

xi. Click on the EVSN for "Eros International Media Limited" on which you choose to vote.

xii. On the voting page, you will see "RESOLUTION DESCRIPTION" and against the same the option "YES/NO" for voting. Select the option YES or NO as desired. The option YES implies that you assent to the Resolution and option NO implies that you dissent to the Resolution.

xiii. Click on the "RESOLUTIONS FILE LINK" if you wish to view the entire Resolution details.

xiv. After selecting the resolution you have decided to vote on, click on "SUBMIT". A confirmation box will be displayed. If you wish to confirm your vote, click on "OK", else to change your vote, click on "CANCEL" and accordingly modify your vote.

xv. Once you "CONFIRM" your vote on the resolution, you will not be allowed to modify your vote.

xvi. You can also take a print of the votes cast by clicking on "Click here to print" option on the Voting page.

xvii. If a demat account holder has forgotten the login password then Enter the User ID and the image verification code and click on Forgot Password & enter the details as prompted by the system.

xviii. Members can also cast their vote using CDSL's mobile app m-Voting available for android based mobiles. The m-Voting app can be downloaded from Google Play Store. Apple and Windows phone. Please follow the instructions as prompted by the mobile app while voting on your mobile.

xix. Note for Non – Individual Members and Custodians

- Non-Individual Members (i.e. other than Individuals, HUF, NRI etc.) and Custodian are required to log on to www.evotingindia.com and register themselves as Corporates.

- A scanned copy of the Registration Form bearing the stamp and sign of the entity should be emailed to helpdesk.evoting@cdslindia.com.

- After receiving the login details a Compliance User should be created using the admin login and password. The Compliance User would be able to link the account(s) for which they wish to vote on.

- The list of accounts linked in the login should be mailed to helpdesk.evoting@cdslindia.com and on approval of the accounts they would be able to cast their vote.

- A scanned copy of the Board Resolution and Power of Attorney (POA) which they have issued in favour of the Custodian, if any, should be uploaded in PDF format in the system for the scrutinizer to verify the same.

xx. In case you have any queries or issues regarding e-voting, you may refer the Frequently Asked Questions ("FAQs") and e-voting manual available at www.evotingindia.com, under help section or write an email to helpdesk.evoting@cdslindia.com.

III. The facility for voting through ballot paper shall be made available at the AGM and the Members attending the AGM who have not cast their vote by remote e-voting shall be able to exercise their right at the AGM through ballot paper.

IV. A Member may participate in the AGM even after exercising his right to vote through remote e-voting but shall not be allowed to vote again at the AGM.

V. A person, whose name is recorded in the Register of Members or in the Register of Beneficial Owners maintained by the depositories as on the cut-off date shall only be entitled to avail the facility of remote e-voting as well as voting at the AGM through ballot paper.

VI. Mr. Suhas Ganpule, Practicing Company Secretary, (Membership No. 12122, CP No: 5722) proprietor of S G. & Associates has been appointed as the Scrutinizer for providing facility to the Members of the Company to scrutinize the remote e-voting process and voting through Ballot at the AGM in a fair and transparent manner.

VII. At the AGM, at the end of the discussion on the resolutions on which voting is to be held, the Chairman shall, with the assistance of the Scrutinizer, order voting through ballot paper for all those Members who are present but have not cast their votes electronically using remote e-voting facility.

VIII. The Scrutinizer shall immediately after the conclusion of voting at the AGM, count the votes cast at the AGM and thereafter unblock the votes cast through remote e-voting in the presence of atleast Two (2) witnesses not in the employment of the Company. The Scrutinizer shall submit a consolidated Scrutinizers Report of the total votes cast in favour of or against, if any, and the results of the voting shall be declared not later than Forty Eight (48) hours from the conclusion of the AGM of the Company. The Chairman, or any other person authorised by the Chairman, shall declare the result of voting forthwith.

IX. The Results declared alongwith the report of the Scrutinizer shall be placed on the website of the Company at www.erosplc.com and on the website of CDSL immediately after the declaration of result by the Chairman or any person authorized by him in writing and the same shall be communicated to BSE Limited and National Stock Exchange of India Limited. The result will also be displayed on the Notice Board of the Company at its Corporate Office and Registered Office.

**Notes and instructions for voting through Ballot Paper**

i. Members desiring to cast their vote in Ballot Paper are requested to execute the Ballot Paper as per the instructions stated therein and send the same in the enclosed self-addressed postage prepaid envelope.

ii. The vote can be cast by recording the assent in the Column FOR and dissent in the Column AGAINST by placing a tick mark (√) in the appropriate column.

iii. The Member may not use all the votes nor needs to cast all the votes in the same way. Members have their sole discretion as to voting.

iv. Members can download the Ballot Paper from the link www.erosplc.com or seek a duplicate Ballot Paper from Link Intime India Private Limited, the Registrar and Transfer Agent from their office at C-101, 247 Park, L.B.S Marg, Vikhroli (West), Mumbai - 400 083, fill in the details and send the same to the Scrutinizer.

v. Kindly note that the Members can opt only one mode of voting i.e. either by Ballot Paper or e-voting. If you are opting for e-voting, then do not vote by Ballot Paper and vice versa. However, in case a Member has voted both in Ballot Paper as well as e-voting, then voting done through e-voting shall prevail and voting done through Ballot Paper will be treated as invalid.

vi. You are requested to carefully read the instructions printed on the Ballot Paper and return the paper duly completed, in the enclosed self-addressed postage prepaid envelope, so as to reach the Scrutinizer at C-101, 247 Park, L.B.S Marg, Vikhroli (West), Mumbai – 400 083 on or before the close of working hours (5.00 P.M.) on Tuesday, 24 September 2019. No other request/details furnished in the Self-Addressed envelope will be entertained.

vii. The Ballot Papers received after close of working hours (5.00 P.M.), Tuesday, 24 September 2019 will be treated as if the same has not been received from the Member.

By Order of the Board of Directors
For **Eros International Media Limited**

**Abhishekh Kanoi**
Vice President- Company Secretary
and Compliance Officer
Membership No. – FCS-9530

Place : Mumbai
Date : 23 May 2019

**EROS INTERNATIONAL MEDIA LIMITED**   **147**

NOTICE

## Annexure-I to the Notice

### EXPLANATORY STATEMENT
#### (PURSUANT TO SECTION 102 OF THE COMPANIES ACT, 2013)

As required by Section 102 of the Companies Act, 2013 ("the Act"), the following explanatory statement sets out all material facts relating to the business mentioned under Item Nos. 3 and 4 of the accompanying Notice dated 23 May 2019:

**Item No. 3:**

Mr. Dhirendra Swarup (DIN: 02878434) was appointed as an Independent Director on the Board of the Company by the Members at the 20th AGM of the Company held on 25 September 2014 for a period of Five (5) consecutive years till the conclusion of the AGM to be held in the calendar year 2019.

As per Section 149(10) of the Act, an Independent Director shall hold office for a term of upto five consecutive years on the Board of a Company but shall be eligible for re-appointment on passing a Special Resolution by the Company for another term of upto five consecutive years on the Board of a Company.

The Board, based on the performance evaluation of Independent Directors and based on recommendation of Nomination and Remuneration Committee and in terms of the provisions of Sections 149, 150, 152 read with Schedule IV and any other applicable provisions of the Act and SEBI (Listing Obligations and Disclosure Requirements) Regulations, 2015 ("SEBI Listing Regulations"), Mr. Dhirendra Swarup, being eligible for re-appointment as an Independent Director and offering himself for re-appointment, is proposed to be re-appointed as an Independent Director for second term of Five (5) consecutive years till the conclusion of the AGM to be held in the calendar year 2024.

The Company has received declaration from Mr. Dhirendra Swarup stating that he meets the criteria of Independence as prescribed under sub-section (6) of Section 149 of the Act and Regulation 16(1)(b) of the SEBI Listing Regulations. He has also given his consent to continue to act as Director of the Company, if so appointed by the Members of the Company.

In the opinion of the Board, Mr. Dhirendra Swarup fulfils the conditions specified under Section 149(6) of the Act, the Companies (Appointment and Qualification of Directors) Rules, 2014 and Regulation 16(1)(b) of the SEBI Listing Regulations for his re-appointment as an Independent Director of the Company and is independent of the management. Copy of the draft letter for appointment of Mr. Dhirendra Swarup as an Independent Director setting out terms and conditions would be available for inspection without any fee by the Members at the Registered Office of the Company during normal business hours (11:00 A.M. to 1:00 P.M.) on all days except Saturdays, Sundays and Public Holidays up to the date of the AGM.

The Board considers that his continued association would be of immense benefit to the Company and it is desirable to continue to avail services of Mr. Dhirendra Swarup as an Independent Director.

Accordingly, the Board recommends passing of the Special Resolution in relation to re-appointment of Mr. Dhirendra Swarup as an Independent Director for another term of Five (5) consecutive years till the conclusion of the AGM to be held in the calendar year 2024, for the approval by the Members of the Company since Mr. Dhirendra Swarup will be attaining the age of Seventy Five (75) years this year pursuant to Regulation 17(1A) of the SEBI Listing Regulations.

Except Mr. Dhirendra Swarup, being an appointee and his relatives, none of the Directors and Key Managerial Personnel of the Company and their relatives are concerned or interested, financially or otherwise, in the resolution set out at Item No. 3 of the accompanying Notice of the AGM. Mr. Dhirendra Swarup is not related to any Director of the Company.

**Item No. 4:**

Pursuant to the provisions of Section 188 and any other applicable provisions of the Act and applicable Rules made thereto, Regulation 23 of SEBI (Listing Obligations and Disclosure Requirements) Regulations, 2015 ("SEBI Listing Regulations"), all material transactions with related party requires approval of the Members of the Company through Ordinary Resolution and the related parties shall abstain from voting on such resolutions. The Company's transactions with its subsidiary company viz. Colour Yellow Productions Private Limited falls under the term "Material Transaction" i.e. any transaction entered either individually or taken together with previous transactions during a financial year, exceeds Ten (10) percent of the annual consolidated turnover of the Company. Colour Yellow Productions Private Limited is also a related party in terms of Section 2(76) of the Act. Particulars of the Contracts/ arrangements/ transactions as envisaged under Companies (Meetings of Board and its powers) Rules, 2014, as amended, are as under:

**(a)    Name of the Related Party:** Colour Yellow Productions Private Limited

**(b)    Nature of Relationship:** Subsidiary Company

**(c)    Name of the Director or Key Managerial Personnel who is related, if any:** Mr. Sunil Lulla is also a Director of Colour Yellow Productions Private Limited and he is brother of Mr. Kishore Lulla.

**(d)    Nature, material terms, monetary value and particulars of the contract or arrangement:** For production of cinematograph films (in Hindi and other regional and foreign languages) and original television and digital programmes for an estimated amount of ₹ 300 crores in each financial year on such terms and conditions as determined by the Board of Directors of the Company and Colour Yellow Productions Private Limited from time to time. The transactions with Colour Yellow Productions Private Limited are made in ordinary course of business and at arm's length basis.

**(e)    Any other information relevant or important for the Members to take a decision on the proposed resolution :** The proposed related party transaction are in accordance with the Related Party Transactions Policy of the Company and approved and recommended by the Audit Committee and Board of Directors of the Company.

As per Regulation 23 of the SEBI Listing Regulations, all entities falling under the definition of related parties shall abstain from voting irrespective of whether the entity is a party to the particular transaction or not, wherein approval of material related party transactions is sought from the Members. Accordingly, the Key Managerial Personnel of the Company as stated hereinabove are concerned or interested in the said resolution set out at Item No. 4 of the Notice.

The Board recommends the Ordinary Resolution as set out at Item No. 4 of the Notice for approval by the Members.

By Order of the Board of Directors
For **Eros International Media Limited**

**Abhishekh Kanoi**
Vice President- Company Secretary
and Compliance Officer
Membership No. – FCS-9530

Place : Mumbai
Date : 23 May 2019

**Registered Office:**
201, Kailash Plaza,
Plot No. A-12,
Opp. Laxmi Industrial Estate,
Off. Andheri Link Road, Andheri West,
Mumbai 400 053

**Corporate Office:**
901/902, Supreme Chambers,
Off. Veera Desai Road, Andheri West,
Mumbai 400 053, Maharashtra (India).
Tel: +91 22 66021500
Fax No.: +91 22 66021540
Email: compliance.officer@erosintl.com

**Registrar and Transfer Agent:**
Link Intime India Private limited
Unit: Eros International Media Limited
C-101, 247 Park, L.B.S Marg, Vikhroli (West),
Mumbai 400 083
Tel: +91 22 49186270
Fax No.: +91 22 49186060
Email: rnt.helpdesk@linkintime.co.in

## Annexure II to the Notice

Details of Directors seeking appointment/ re-appointment/ fixation of remuneration of Director furnished pursuant to Regulation 36 of the Securities and Exchange Board of India (Listing Obligations and Disclosure Requirements) Regulations, 2015 and Clause 1.2.5 of the Secretarial Standard-2.

| Name | Mr. Kishore Arjan Lulla | Mr. Dhirendra Swarup |
|---|---|---|
| DIN | 02303295 | 02878434 |
| Designation | Executive Director | Independent Non-Executive Director |
| Date of Birth | 4 September 1961 | 5 December 1944 |
| Age | 57 Years | 74 Years |
| Date of First Appointment on the Board | 28 September 2009 | 10 February 2010 |
| Qualifications | Bachelor of Arts, University of Mumbai | • Fellow Member of Institute of Public Auditors of India<br>• Post Graduate Degree in Humanities |
| Profile | Mr. Kishore Lulla received a bachelor's degree in arts from the Mumbai University. He has over 36 years of experience in the media and film industry. He is a member of the British Academy of Film and Television Arts and Young Presidents' Organization and is also a board member of the School of Film at the University of California, Los Angeles. He has been honored at the Asian Business Awards 2007 and the Indian Film Academy Awards 2007 for his contribution in taking Indian cinema global. In 2010, Mr. Lulla was awarded the "Entrepreneur of the Year" at the GG2 Leadership and Diversity Awards and in 2014, Forbes Asia featured Mr. Lulla in the list of 'Best under a Billion'. He was also honored with the 2014 Global Citizenship Award by the American Jewish Committee, a leading global Jewish advocacy organization. Mr. Lulla also received the Entertainment Visionary award at the 2015 Annual Gala Dinner from the Asia Society Southern California. In 2015, he was invited to attend the "billionaires' summer camp" in Sun Valley, an annual gathering of the world's most powerful entrepreneurs and business executives. He has been instrumental in expanding our presence in the United Kingdom, the United States, Dubai, Australia, Fiji and other international markets. In 2018, he was featured in the Variety 500 list of "influential business leaders shaping the global $2 trillion entertainment industry". | Mr. Dhirendra Swarup is a government-certified accountant and a member of the Institute of Public Auditors of India, Mr. Swarup holds a postgraduate degree in humanities. A career bureaucrat, he retired as secretary of Ministry of Finance, Government of India in 2005. He possesses a vast experience of 45 years in the finance sector and has also worked in UK, Turkey and Georgia. He served as the Chairman of Financial Sector Redress Agency Task Force appointed by Government of India, he is also on the Board of several listed companies besides acting as a member and the Chairman of several committees. In the past, he has held many key positions and responsibilities like being a member of the Board of the SEBI, a member of the Permanent High-level Committee on Financial Markets, chairman of the Pension Funds Regulatory Authority, Chief of the Budget Bureau of the Government of India, a member secretary of the Financial Sector Reforms Commission, chairman of Public Debt Management Authority Task Force, vice-Chairman of the International Network on Financial Education of OECD. |
| Terms and conditions of Re-appointment | **Retire by rotation:**<br>• Liable to retire by rotation.<br>**Duties:**<br>• To adhere as provided under Section 166 of the Act.<br>**Code of Conduct:**<br>• Abide by the Code of Conduct devised by the Company | **Appointment:**<br>• Second term for Five (5) years w.e.f. 25 September 2019 to the conclusion of the Annual General Meeting of the Company to be held in the Calendar Year 2024.<br>• Not liable to retire by rotation<br>**Termination:**<br>• Terminated by either side in terms of Section 168 or Section 169 of the Companies Act, 2013 ('the Act').<br>**Duties:**<br>• To adhere as provided under Section 166 of the Act in addition to duties mandated under Schedule IV of the Act.<br>**Code of Conduct:**<br>• Abide by the Code of Conduct devised by the Company. |

**NOTICE**

| Name | Mr. Kishore Arjan Lulla | Mr. Dhirendra Swarup |
|---|---|---|
| Directorships held in other companies (as on 31 March 2019) | • Eros International PLC (Isle of Man)<br>• Eros International USA Inc<br>• Eros Digital Limited (Isle of Man) | • Berger Paints India Limited (subsequently resigned)<br>• Eros International Films Private Limited<br>• PTC Energy Limited |
| Last remuneration drawn | ₹ 1,40,70,372/- | Nil |
| Remuneration to be paid | Nil | Nil |
| Memberships/Chairmanships of Committees of other companies | Nil | **Berger Paints India Limited**<br>Audit Committee - Chairman (subsequently resigned)<br><br>**PTC Energy Limited**<br>Audit Committee - Chairman<br>Nomination and Remuneration Committee – Chairman<br><br>**Eros International Films Pvt. Ltd.**<br>Audit Committee - Member |
| Number of Board Meetings attended during FY 2018-19 | One (1) | Four (4) |
| Relationship with other Directors, Key Managerial Personnel | Brother of Mr. Sunil Lulla and not related to any Director/Key Managerial Personnel. | Not related to any Director/Key Managerial Personnel. |
| Number of shares held in the Company | Nil | Nil |
| Number of Stock Options | Nil | Nil |

**ROUTE MAP FOR VENUE OF ANNUAL GENERAL MEETING OF EROS INTERNATIONAL MEDIA LIMITED**





**Eros International Media Limited**
CIN: L99999MH1994PLC080502
**Registered Office Address:** 201, Kailash Plaza, , Plot No. A-12 ,Opp. Laxmi Industrial Estate,
Off. Andheri Link Road, Andheri West, Mumbai-400 053, Maharashtra (India)
**Corporate Office:** 901/ 902, Supreme Chambers, Off Veera Desai Road, Andheri West, Mumbai 400 053
Phone: +91 22 66021500 | Fax: +91 22 66021540
Email: compliance.officer@erosintl.com | Website: www.erosplc.com

## ATTENDANCE SLIP
*(To be presented at the entrance of the meeting hall)*
25th Annual General Meeting on Wednesday, 25 September 2019 at 2.00 P.M.
at '"The Classic Club", New Link Road, Behind Infinity Mall, Andheri West, Mumbai - 400 053.

Folio No. ................................................. DP ID No........................................................ Client ID No.......................................................................

Name of the Member ........................................................................................................ Signature...............................................

Name of the Proxyholder.................................................................................................... Signature...............................................

1.    Only Member/Proxyholder can attend the Meeting.
2.    Member/Proxyholder should bring his/her copy of the Annual Report for reference at the Meeting.



## Proxy Form – Form MGT- 11
[Pursuant to Section 105(6) of the Companies Act, 2013 and Rule 19(3) of the Companies
(Management and Administration) Rules, 2014]

| | | |
|---|---|---|
| **CIN** | : | L99999MH1994PLC080502 |
| **Name of the Company** | : | EROS INTERNATIONAL MEDIA LIMITED |
| **Registered Office** | : | 201, Kailash Plaza, Plot No. A-12, Opp. Laxmi Industrial Estate, Off. Andheri Link Road, Andheri West, Mumbai - 400 053, Maharashtra (India) |
| Name of the member (s) | : | |
| Registered Address | : | |
| E-mail ID | : | |
| Folio No/ Client ID | : | |
| DP ID | : | |

I/We, being the Member(s) of .................... shares of Eros International Media Limited, hereby appoint:-

1. ...………...............…………. of …......................................................….…………… having email id …...............……………… or failing him

2. ...………...............…………. of …......................................................….…………… having email id …...............……………… or failing him

3. ...………...............…………. of …......................................................….…………… having email id …...............……………… or failing him

And whose signature(s) are appended below as my/our proxy to attend and vote (on a poll) for me/us and on my/our behalf at the 25th Annual General Meeting of the Company, to be held on Wednesday, 25 September 2019 at 2:00 P.M. at "The Classic Club", New Link Road, Behind Infinity Mall, Andheri West, Mumbai – 400 053, and at any adjournment thereof in respect of such resolutions as are indicated below:

**\*\*I wish my above proxy to vote in the manner as indicated in the box below:**

| Sr. No. | Resolutions | Optional | |
|---|---|---|---|
| | | **For** | **Against** |
| | **ORDINARY BUSINESS** | | |
| 1 | To receive, consider and adopt (a) audited financial statements of the Company for the year ended 31 March 2019 together with Directors Report and Auditors Report thereon & (b) audited consolidated financial statements for the year ended 31 March 2019 together with the auditor's report thereon. | | |
| 2 | Appointment of Director in place of Mr. Kishore Arjan Lulla (DIN: 02303295), who retires by rotation, and being eligible, offers himself for re-appointment. | | |
| | **SPECIAL BUSINESS** | | |
| 3 | Re-appointment of Mr. Dhirendra Swarup (DIN 02878434), as an Independent Director not liable to retire by rotation, to hold office for second term of Five (5) consecutive years from the date of this 25th Annual General Meeting. | | |
| 4 | Approval of Material Related Party Transactions between the Company and Colour Yellow Productions Private Limited. | | |

Notwithstanding the above, the proxies can vote on such other items which may be tabled at the Meeting by the Members present.

Affix Revenue Stamp

Signed this................................. day of .................... 2019

..................................................
Signature of Member

..................................................
Signature of First Proxy Holder

..................................................
Signature of Second Proxy Holder

..................................................
Signature of Third Proxy Holder

Note:

1) This form of proxy in order to be effective should be duly completed and deposited at the Corporate Office of the Company, not less than Forty Eight (48) hours before the commencement of the Meeting.
2) A Proxy need not be a Member of the Company.
3) A person can act as a proxy on behalf of Members not exceeding fifty and holding in the aggregate not more than 10% of the total share capital of the Company carrying voting rights. A Member holding more than 10% of the total share capital of the Company carrying voting rights may appoint a single person as proxy and such person shall not act as a proxy for any other person or Member.
4) \*\*This is optional. Please put a (√) in the appropriate column against the resolutions indicated in the Box. If you leave the 'For' or 'Against' column blank against any or all the resolutions, your Proxy will be entitled to vote in the manner as he/she thinks appropriate.
5) Appointing a proxy does not prevent a Member from attending the Meeting in person if he so wishes.
6) In the case of joint holders, the signature of any one holder will be sufficient, but names of all the joint holders should be stated.

# CORPORATE INFORMATION

**Board of Directors**

**Mr. Dhirendra Swarup**
Non-Executive Chairman & Independent Director
DIN: 02878434

**Mr. Sunil Arjan Lulla**
Executive Vice Chairman & Managing Director
DIN: 00243191

**Mr. Kishore Arjan Lulla**
Executive Director
DIN: 02303295

**Mr. Rakesh Sood**
Non-Executive Independent Director
DIN: 07170411

**Mr. S. Lakshminarayanan**
Non-Executive Independent Director
DIN: 07972480

**Mr. Sunil Srivastav**
Non-Executive Independent Director
DIN: 00237561

**Mrs. Jyoti Deshpande** (up to 28 June 2019)
Non-Executive Non-Independent Director
DIN: 02303283

**Group Chief Financial Officer (India)**
Mr. Farokh P. Gandhi

**Vice President – Company Secretary & Compliance Officer**
Mr. Vijay Thaker (w.e.f. 13 August 2019)
Mr. Abhishekh Kanoi (up to 12 August 2019)

**Statutory Auditors**
Chaturvedi and Shah LLP
(Erstwhile known as Chaturvedi & Shah)
Chartered Accountants
(Firm Registration No. 101720W/W100355)

**Corporate Identification Number (CIN)**
L99999MH1994PLC080502

**Bankers**
State Bank of India (Lead Bank)
IDBI Bank Limited
Indian Overseas Bank
Punjab National Bank
Oriental Bank of Commerce
Union Bank of India
Bank of Baroda
Dena Bank (Now Bank of Baroda)

**Corporate Office**
901/902, Supreme Chambers,
Off. Veera Desai Road,
Andheri West,
Mumbai - 400 053
Maharashtra (India)
Tel: +91 22 66021500; Fax: +91 22 66021540
Email: compliance.officer@erosintl.com
Website: www.erosplc.com

**Registered Office**
201, Kailash Plaza,
Opp Laxmi Industrial Estate,
Off Andheri Link Road,
Andheri West, Mumbai 400053
Maharashtra (India)

**Registrar and Share Transfer Agent**
Link Intime India Private Limited
Unit: Eros International Media Limited
C 101, 247 Park,
LBS Marg, Vikhroli West,
Mumbai 400 083
Maharashtra (India)
CIN: U67190MH1999PTC118368
Tel: +91 22 4918 6270; Fax: +91 22 4918 6060
E-mail: rnt.helpdesk@linkintime.co.in,
mumbai@linkintime.co.in
Website: www.linkintime.co.in



**EROS INTERNATIONAL MEDIA LIMITED**
CIN: L99999MH1994PLC080502
201, Kailash Plaza, Opp. Laxmi Industrial Estate,
Off. Andheri Link Road, Andheri West,
Mumbai 400 053, Maharashtra (India).
Tel: + (91 22) 66021500, Fax: + (91 22) 66021540
Email: compliance.officer@erosintl.com
Website: www.erosplc.com