# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE EROS INTERNATIONAL PLC SECURITIES LITIGATION | Civil Action No. 19-cv-14125 (JMV)(JAD) <br><br> **ORAL ARGUMENT REQUESTED** <br><br> Motion Return Date: May 16, 2022 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS EROS INTERNATIONAL PLC, KISHORE LULLA, AND ANDREW WARREN'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

LEVINE LEE LLP

Kenneth E. Lee
Scott B. Klugman
Chad P. Albert
5 Columbus Circle, 11th Floor
New York, New York 10019
(212) 223-4400
klee@levinelee.com
sklugman@levinelee.com
calbert@levinelee.com

*Attorneys for Defendants Eros International Plc, Kishore Lulla, and Andrew Warren*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................1

SUMMARY OF ALLEGATIONS ......................................................................................3

      A.     The Parties ..............................................................................................3

      B.     Recent Company Events .........................................................................4

PROCEDURAL HISTORY ...............................................................................................6

      A.     The Opinion ...........................................................................................6

      B.     The Third Amended Complaint ..............................................................7

LEGAL STANDARD ........................................................................................................8

ARGUMENT ....................................................................................................................9

I.      PLAINTIFFS FAIL TO PLEAD MATERIAL MISREPRESENTATIONS OR OMISSIONS ..........................................................................................................9

      A.     The TAC Does Not Remedy The Defects In The Original Complaint ...................9

      B.     The TAC Fails To Plead New Material Misstatements Or Omissions...................11

II.      PLAINTIFFS FAIL TO PLEAD SCIENTER ...............................................16

      A.     The TAC Does Not Remedy The Defects In The Original Complaint .................17

      B.     The TAC Fails To Plead New Scienter Allegations ...............................19

      C.     Plaintiffs Do Not Plead Scienter For The Surviving Statements In The Original Complaint ................................................................................26

III.      PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ...................................27

IV.      PLAINTIFFS' SECTION 20(A) CLAIM MUST BE DISMISSED ...............................29

CONCLUSION ................................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bartesch v. Cook*,
    941 F. Supp. 2d 501 (D. Del. 2013) ........................................................................ 13

*Belmont v. MB Inv. Partners, Inc.*,
    708 F.3d 470 (3d Cir. 2013) ...................................................................... 8, 29, 30

*Buck v. Hampton Twp. Sch. Dist.*,
    452 F.3d 256 (3d Cir. 2006) ......................................................................... 3

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004) ......................................................................... 9

*Castlerock Mgmt. Ltd. v. Ultralife Batteries, Inc.*,
    114 F. Supp. 2d 316 (D.N.J. 2000) .............................................................. 10

*City of Edinburgh Council v. Pfizer, Inc.*,
    754 F.3d 159 (3d Cir. 2014) ............................................................... 9, 11, 15

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
    2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011) .......................................... 14

*De Vito v. Liquid Holdings Grp., Inc.*,
    2018 WL 6891832 (D.N.J. Dec. 31, 2018) ................................................ 27

*Ezra Charitable Tr. v. Tyco Int'l, Ltd.*,
    466 F.3d 1 (1st Cir. 2006) ........................................................................... 20

*Fan v. StoneMor Partners LP*,
    927 F.3d 710 (3d Cir. 2019) .................................................................. 8, 15

*GSC Partners CDO Fund v. Washington*,
    368 F.3d 228 (3d Cir. 2004) ....................................................................... 24

*Howard v. Arconic Inc.*,
    2021 WL 2561895 (W.D. Pa. June 23, 2021) ........................................... 29

*In re Advanta Sec. Litig.*,
    180 F.3d 525 (3d Cir. 1999) .................................................................. 16, 21

*In re Aetna, Inc. Sec. Litig.*,
    617 F.3d 272 (3d Cir. 2010) ............................................................ 16

*In re Alpharma Inc. Sec. Litig.*,
    372 F.3d 137 (3d Cir. 2004) ............................................................ 30

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) .......................................................... 21

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
    2018 WL 3772675 (D.N.J. Aug. 8, 2018) ................................. 11, 23

*In re DVI, Inc. Sec. Litig.*,
    2010 WL 3522090 (E.D. Pa. Sept. 3, 2010) ................................... 27

*In re Elecs. for Imaging, Inc. Sec. Litig.*,
    2019 WL 397981 (D.N.J. Jan. 31, 2019) ........................................ 16

*In re Exxon Mobil Corp. Sec. Litig.*,
    387 F. Supp. 2d 407 (D.N.J. 2005) ................................................. 19

*In re Federated Dep't Stores, Inc., Sec. Litig.*,
    2004 WL 444559 (S.D.N.Y. Mar. 11, 2004) ................................... 26

*In re Hansen Nat. Corp. Sec. Litig.*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007) .......................................... 28

*In re Hertz Glob. Holdings Inc.*,
    905 F.3d 106 (3d Cir. 2018) ..................................................... Passim

*In re ICN Pharm., Inc. Sec. Litig.*,
    299 F. Supp. 2d 1055 (C.D. Cal. 2004) .......................................... 19

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007) ..................................... 10, 17, 20

*In re Interpool, Inc. Sec. Litig.*,
    2005 WL 2000237 (D.N.J. Aug. 17, 2005) ..................................... 22

*In re Loral Space & Commc'ns, Ltd. Sec. Litig.*,
    2004 WL 376442 (S.D.N.Y. Feb. 27, 2004) .............................. 14, 19

*In re Maxwell Techs., Inc. Sec. Litig.*,
    18 F. Supp. 3d 1023 (S.D. Cal. 2014) ............................................ 23

*In re NAHC, Inc. Sec. Litig.*,
  306 F.3d 1314 (3d Cir. 2002) ............................................................. 13

*In re Omnicom Grp., Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010) ............................................................... 29

*In re Optionable Sec. Litig.*,
  577 F. Supp. 2d 681 (S.D.N.Y. 2008) ................................................ 24

*In re Radian Sec. Litig.*,
  612 F. Supp. 2d 594 (E.D. Pa. 2009) .................................................. 24

*Institutional Invs. Grp. v. Avaya*,
  564 F.3d 242 (3d Cir. 2009) ................................................ 16, 24, 29

*Janbay v. Canadian Solar*, Inc.,
  2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ................................... 28

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ............................................................. 28

*Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*,
  576 F.3d 172 (4th Cir. 2009) ............................................................. 20

*McCabe v. Ernst & Young, LLP*,
  494 F.3d 418 (3d Cir. 2007) .............................................................. 27

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp., Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010) ................................................ 2, 17

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) .............................................................. 12

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 ........................................................................ 9, 11, 15

*Oran v. Stafford*,
  226 F.3d 275 (3d. Cir. 2000) ............................................................. 21

*Poptech, L.P. v. Stewardship Credit Arbitrage Fund, LLC*,
  792 F. Supp. 2d 328 (D. Conn. 2011) ............................................... 29

*Rahman v. Kid Brands, Inc.*,
  736 F.3d 237 (3d Cir. 2013) ......................................................... 25, 29

*Roofer's Pension Fund v. Papa*,
   2018 WL 3601229 (D.N.J. July 27, 2018) ............................................................. 20

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016) ................................................................................... 11

*Williams v. Globus Med., Inc.*,
   869 F.3d 235 (3d Cir. 2017) ................................................................................. 8, 9

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ................................................................................. 23

**Rules**

Federal Rule of Civil Procedure 9(b) ..................................................................... Passim

Federal Rule of Civil Procedure 12(b) .................................................................... 1, 3

**Statutes**

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ................................... Passim

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) .............. Passim

Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) ............... Passim

Defendants Eros International Plc, Kishore Lulla, and Andrew Warren ("Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Third Amended Consolidated Class Action Complaint, dated November 5, 2021 (Dkt. No. 59, the "Third Amended Complaint" or "TAC"), pursuant to Federal Rules of Civil Procedure 9(b) and 12(b).

## PRELIMINARY STATEMENT

Plaintiffs bring this baseless action for securities fraud in an effort to capitalize on Eros's business challenges.  Relying on anonymous sources, Plaintiffs' original complaint (Dkt. No. 34, the "Original Complaint") speculated that Eros "overpaid related parties for film rights and advancement for film co-production," which allegedly caused Eros to misrepresent its financials throughout the class period and culminated in the June 2019 rating downgrade from the Indian credit rating agency, Credit Analysis & Research Ltd ("CARE"), and a resulting stock drop.  Based on such speculation, Plaintiffs attempted to cast as securities fraud various statements that Eros made since 2017 concerning its financial profile, intangible assets, Sarbanes-Oxley Act of 2002 ("SOX") certifications, and interactions with credit rating agencies.

On April 21, 2021, this Court dismissed the vast majority of the Original Complaint, allowing only three alleged misstatements made immediately following the June 2019 CARE downgrade past the pleadings stage, and granted Plaintiffs leave to replead to "cure the deficiencies" identified in its opinion.  (Dkt. No. 43, the "Opinion" or "Op." at 35).  Plaintiffs have repleaded, going far beyond any attempt to "cure the deficiencies" identified in the Opinion.  Once again endeavoring to turn Eros's recent financial misfortunes—this time as a result of the global COVID pandemic and various challenges associated with a complex merger with STX Filmworks, Inc. ("STX")—into securities fraud, Plaintiffs have added *22 months* to the class period and

padded the complaint with a host of new alleged misstatements relating to Eros's financial well-being and accounting practices through March 2021.

Plaintiffs' kitchen-sink approach, a clear effort to distract from the core deficiencies of their Original Complaint, falls short in multiple ways. The TAC should be dismissed in its entirety and with prejudice, and Plaintiffs should be denied further leave to amend.

***No Material Misstatement.*** The TAC repeats the alleged misstatements already dismissed by the Court regarding (1) Eros's interactions with CARE and (2) Eros's internal controls and SOX certifications. Resting again on the impermissible strategies of pleading fraud by hindsight and nonactionable opinions, the TAC adds a glut of alleged misstatements concerning Eros's (1) accounting balances, (2) impairment charges, (3) financial profile, and (d) merger with STX, none of which plausibly meet the standard for a material misstatement.

***No Scienter***. The TAC fails to plead facts establishing a "strong inference" of scienter. Plaintiffs fail to remedy the deficiencies in their confidential witness allegations. Instead, Plaintiffs appear to believe that a multitude of new allegations concerning Defendants' "motivations" to meet revenue guidance and purported "reflexive denials," alleged turnover in upper management, and statements by unnamed sources in third party articles might together be sufficient. Not so. "Cobbling together a litany of inadequate allegations does not render those allegations particularized in accordance with Rule 9(b) or the PSLRA." *Nat'l Junior Baseball League v. Pharmanet Dev. Grp., Inc.*, 720 F. Supp. 2d 517, 554 (D.N.J. 2010). The TAC also reinforces the conclusion that Plaintiffs have failed to adequately allege scienter even for the three alleged misstatements that survived the initial motion to dismiss.

***No Loss Causation***.  The TAC similarly falls short on loss causation:  Plaintiffs have not pleaded that the announcement of an Audit Committee investigation resulted in the revelation of any earlier false or misleading statement that contributed to any drop in Eros's stock price.

***No Section 20(a) Violation***.  The Section 20(a) claims, which are derivative claims, cannot proceed where the Court finds the primary Section 10(b) claims lacking.  The TAC also fails to allege that Defendants Lulla or Warren were "culpable participants" in any alleged fraud.

## SUMMARY OF ALLEGATIONS[1]

### A.     The Parties

Eros is a leading global media company that co-produces, acquires, and distributes Indian language films worldwide.  (TAC ¶ 2.)  "Eros's business requires significant, upfront, capital spending" for the purchase of film rights and related content.  (*Id.* ¶ 6.)  As of 2019, Eros operated the largest digital entertainment service network of Indian content, Eros Now, which had digital rights to over 12,000 films.  (*Id.* ¶¶ 3, 64.)  Eros has been listed on the New York Stock Exchange since November 2013.  (Declaration of Scott B. Klugman ("Klugman Decl.") Ex. 1 at 103.)  On July 30, 2020, Eros announced that it had completed a merger with STX and changed its name to Eros STX Global Corporation ("ErosSTX") and its ticker symbol to ESGC.  (TAC ¶ 1 n.1.)

Defendant Kishore Lulla was Eros's Group Chief Executive Officer and Managing Director and the Chairman of its Board of Directors from April 1, 2018 through Eros's merger

---

[1]     The facts are drawn from the TAC, "documents that are attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case," all of which may be considered by the Court in deciding a motion to dismiss.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  For purposes of this motion, Defendants accept as true the TAC's well-pleaded allegations, but do not concede their truth and reserve the right to contest the accuracy of any of the facts alleged in the TAC.

with STX.  (TAC ¶ 51.)  As part of the merger, Lulla became ErosSTX's Executive Co-Chairman.  (*Id.*)  Defendant Andrew Warren has served as the CFO of ErosSTX since the merger.  (*Id.* ¶ 57.)

### B. Recent Company Events

During part of the class period, Eros International Media Limited ("EIML"), an Indian subsidiary of Eros, received credit ratings from CARE.  On June 5, 2019, CARE downgraded EIML's rating ten notches to "default" based on information that EIML was delayed in servicing certain term loans.  (TAC ¶ 8.)  At the start of trading on June 6, Eros issued a press release noting that the Company "retains the full faith and confidence of [its] lenders" and that it would "releas[e] [its] audited Fiscal year-end 2019 results on July 15, 2019."  (*Id.* ¶ 93; Klugman Decl. Ex. 2 at 1.)  This press release stated, "Eros International PLC and all of its subsidiaries have met and continue to meet all debt service commitments."  (Klugman Decl. Ex. 2 at 1.)  Later that day, before the close of trading, Eros supplemented its press release to echo an earlier release by EIML: "As previously communicated through our Indian subsidiary, EIML was late on two loan interest payments for April and May 2019.  These interest payments total less than $2 million and are currently in process of remittance."  (TAC ¶ 94; Klugman Decl. Ex. 3 at 1.)

While Eros rectified the missed payments that same day, the CARE downgrade caused a series of reactions.  For instance, on June 7, Hindenburg Research, a short seller with a profit motive to damage Eros's stock price, published an article surmising that the downgrade was evidence of the Company's "unraveling."  (Klugman Decl. Ex. 4 at 3.)  A few days later, on June 11, Moody's downgraded Eros's rating based on "delays in servicing the bank loans of its Indian subsidiary," noting that such delays suggested "poor financial management."  (TAC ¶¶ 107–08.)[2]

---

[2]      Moody's ultimately withdrew Eros's rating on June 26, 2019.  (TAC ¶ 19.)

Then, on July 15, 2019, Eros announced an impairment loss of $423.3 million, with $405.5 million representing intangible assets. (TAC ¶ 20.) Although Eros typically performs impairment reviews on an annual basis, per International Accounting Standards, it initiates additional impairment review for a variety of reasons, including reductions in market capitalization. (*See* Klugman Decl. Exs. 1 at F–13; 5 at 32.) Following such a review, Eros disclosed that the impairment loss was mainly due to: (1) a high discount rate, and (2) changes in market conditions on account of the recent credit downgrade. (TAC ¶ 116; Klugman Decl. Ex. 1 at 74.)

A year later, on July 30, 2020, during the height of the global pandemic, Eros announced its financial results for the fourth quarter and fiscal year 2020. (TAC ¶ 126.) Eros also announced a second impairment loss of $431.2 million to its intangible content balances for fiscal year 2020. (*Id.*) In public filings and press releases addressing this second impairment, Eros explained that "[a]s in [the] prior fiscal year, the significant reduction in stock price and corresponding decline in market capitalization was the main driver for the impairment charge." (*Id.* ¶ 203 (first alteration in original).) Eros stated that "[t]his was also compounded by exogenous factors such as the COVID pandemic and changes in business conditions, including delayed theatrical distribution of some films and disruptions to content production schedules." (Klugman Decl. Ex. 6 at 85; TAC ¶ 129.) That same day, Eros announced the completion of the ErosSTX merger. (TAC ¶ 29.)

On August 3, 2021, ErosSTX announced that it would not timely file its annual report for fiscal year 2021 "primarily because [ErosSTX's] Audit Committee is currently conducting a formal internal review of certain accounting practices and internal controls related to Eros subsidiaries." (TAC ¶ 34.) ErosSTX was clear that it could not determine "when it will conclude the remaining work necessary to complete the preparation of the financial statements and assessment of its internal controls over financial reporting." (Klugman Decl. Ex. 7 at 2.) In

connection with the announcement of the internal review, ErosSTX further cautioned that "revenue from [some Eros] subsidiaries may not have been appropriately recognized during the fiscal year ended March 31, 2020," and that "substantially all of the intangible assets and goodwill reflected in the Form 6-K are likely to be impaired and that one or more material weaknesses in internal controls over financial reporting are likely to be reported."  (*Id.*)  The Audit Committee's internal review remains ongoing as of the date of this filing.

## PROCEDURAL HISTORY

### A.    The Opinion

The Original Complaint alleged that Defendants made a number of materially false and misleading statements from July 27, 2017 through Eros's first impairment charge on July 15, 2019. On April 20, 2021, following Eros's motion to dismiss the Original Complaint, the Court issued an Opinion dismissing most of Plaintiffs' case.

*Financial Profile Statements*:  The Court found that the Original Complaint failed to demonstrate scienter for all financial profile statements prior to the June 5, 2019 CARE downgrade.  The Court stated that Plaintiffs' allegations "come from confidential witnesses and pertain to missed loan payments and salaries," (Op. 26), and held that "none of [the] confidential witnesses' allegations (standing alone or in combination) [we]re sufficient to establish that any of the Individual Defendants had knowledge that contradicted the statements that Eros' financial profile was strong before the CARE credit rating downgrade."  (*Id.* at 27.)  The Court allowed allegations regarding only two statements following the CARE downgrade to survive.  (*Id.* at 27.)

*Intangible Asset Statements*:  The Court also found that Plaintiffs failed to establish scienter with respect to ***any*** of the statements pertaining to Eros's intangible asset balances, dismissing all allegations related thereto, explaining that Plaintiffs' nonspecific confidential witness allegations were insufficient.  (Op. 28–30.)  The Court also rejected as speculative Plaintiffs' argument that

"the circumstances surrounding Eros's impairment of its intangible assets on July 15, 2019 contribute to a strong inference of scienter," including "that an inference of scienter is warranted based on Defendants' vague explanation for the impairment (*i.e.*, market conditions) and the size of the impairment." (*Id.* at 28.)

*SOX Statements*:  The Court dismissed Plaintiffs' claims insofar as they were premised on statements concerning Eros's internal controls and SOX certifications, finding that Plaintiffs failed to plead that any of Eros's statements were false when made. (Op. 19–21.)

*CARE/Moody's Statements*:  With a single exception, the Court also dismissed Plaintiffs' claims to the extent they were based on the rating-agency statements.  The Court found that the "allegations about misrepresentations regarding Eros' cooperation with CARE [we]re not plead with particularity," (Op. 22), and that Plaintiffs "fail[ed] to allege loss causation" with respect to "Lulla's statements that the Moody's withdrawal occurred due to Eros' request," (*id.* at 33–34). The Court, however, allowed Plaintiffs' claim to survive to the degree it concerned Eros's June 6, 2019 press release relating to Eros's ability to meet all debt service commitments.

The Court ultimately found that, "only the allegations pertaining to the June 6 press release and the two post-CARE rating downgrade statements about Eros' strong financial profile survive the motion to dismiss." (Op. 34.)  The Court permitted Plaintiffs to replead to "cure the deficiencies" in the Original Complaint. (*Id.* at 35.)

### B.    The Third Amended Complaint

Plaintiffs filed the TAC on November 5, 2021.  The TAC retains the allegations from the Original Complaint and adds new alleged misstatements from June 10, 2019 through March 31, 2021, to what is now a 447-paragraph, 147-page pleading.  While some of these statements fit into the four buckets addressed in the Opinion, others concern Eros's reported trade receivables balances, the reasons for the two impairment charges, and Eros's merger with STX, most of which

are purportedly rendered false and misleading due to Eros's later announcement of an ongoing Audit Committee investigation.  The TAC also adds a plethora of new scienter allegations to (unsuccessfully) plead around the flaws identified in the Opinion.

## LEGAL STANDARD

To state a claim under Section 10(b), a plaintiff must allege "(1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation."  *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 114 (3d Cir. 2018) (citation omitted).  Section 20(a) requires that a plaintiff demonstrate (1) a primary violation of Section 10(b), (2) that the defendant had control over the primary violator, and (3) that the defendant was a "culpable participant" in the act or acts constituting the primary violation.  *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 (3d Cir. 2013).

A plaintiff alleging securities fraud must meet the heightened pleading standards of both Rule 9(b) and the Private Securities Litigation Reform Act (the "PSLRA").  *See, e.g.*, *Fan v. StoneMor Partners LP*, 927 F.3d 710, 714 (3d Cir. 2019).  Rule 9(b) "requires [a] plaintiff to state with particularity the circumstances constituting fraud or mistake."  *Williams v. Globus Med., Inc.*, 869 F.3d 235, 240 (3d Cir. 2017).  The PSLRA requires that plaintiffs "specify each allegedly misleading statement, why the statement was misleading, and if an allegation is made on information and belief, all facts supporting that belief with particularity."  *Id.* at 240 (citations omitted).  The PSLRA also requires that plaintiffs, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Id.* at 240–41.

## ARGUMENT

## I.   PLAINTIFFS FAIL TO PLEAD MATERIAL MISREPRESENTATIONS OR OMISSIONS

To adequately plead the existence of a material misstatement or omission under Rule 9(b) and the PSLRA, a plaintiff must "demonstrate *why* Defendants' various [statements] were materially false and misleading."  *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 147 (3d Cir. 2004).  The TAC fails to plead material misrepresentations in two significant respects. *First*, the TAC unsuccessfully attempts to repeat the alleged misstatements that have already been dismissed by the Court.  *Second*, the TAC's new alleged misstatements concerning Eros's (1) accounting balances, (2) impairment charges, (3) financial profile, and (4) merger with STX fail because they rest on the strategies of pleading fraud by hindsight, *Chubb*, 394 F.3d at 158, and nonactionable statements of opinion, *City of Edinburgh Council v. Pfizer,* 754 F.3d 159, 170 (3d Cir. 2014); *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185–86 (2015).

### A.   The TAC Does Not Remedy The Defects In The Original Complaint

#### 1.   *Eros's Interactions with CARE*

The Court found, based on the weakness of the confidential witness allegations (and particularly the allegations of CW5, a "ratings analyst/manager at CARE"), that Plaintiffs failed to plead with particularity the falsity of "Defendants' statements that they were working with CARE to restore Eros' credit rating after the downgrade."  (Op. 21–22.)  The TAC repeats these allegations, (*see* TAC ¶¶ 164, 283, 284, 289, 291), and adds new allegations regarding Defendants' interactions with CARE (*see id.* ¶¶ 308, 311, 315, 319).  Plaintiffs' allegations are still deficient.

The alleged misstatements regarding Eros's interactions with CARE continue to be based on insufficient confidential witness allegations, which remain unchanged in relevant part.  While

Plaintiffs allege that there have been "three different analysts/managers who have managed the Eros account," (TAC ¶ 162), Plaintiffs do not allege that CW5 was one of them.  Indeed, as the TAC makes clear, CW5 "was ***not*** the Eros analyst" and simply obtained the information regarding Eros's interactions with CARE from "general discussions among junior employees."   (*Id.* (emphasis added).)  These allegations remain insufficient on their face.  *See In re Intelligroup Sec. Litig.,* 527 F. Supp. 2d 262, 290-91 (D.N.J. 2007) (Plaintiffs are entitled to rely on confidential sources only where "the complaint sets forth other factual allegations, such as documentary evidence, which are sufficient alone to support a fraud allegation" or such confidential sources "are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the [confidential] source would possess the information alleged").

The TAC also alleges that CARE indicated in a September 25, 2020 press release, nearly a year after the alleged misstatements, that Eros was "not cooperating" with CARE.  (*See* TAC ¶ 131.)  But this allegation, even if true, has no bearing on whether Eros was cooperating with CARE nearly one year earlier in 2019, and, as such, fails to plead "contemporaneous facts" that "show that [Eros's] statements were false or misleading when made."  *Castlerock Mgmt. Ltd. v. Ultralife Batteries, Inc.*, 114 F. Supp. 2d 316, 320 (D.N.J. 2000).[3]

2. <u>*Eros's Internal Controls And SOX Certifications*</u>

The Court found that Plaintiffs failed to plead with particularity that statements concerning the effectiveness of Eros's internal controls and SOX certifications in 2017 and 2018 were

---

[3]     Moreover, prior to the September 25, 2020 press release, EIML withdrew its mandate to CARE to provide ratings, and another accredited rating agency, Acuité Ratings & Research, now covers EIML.  (Klugman Decl. Ex. 13 at 1.) Thus, to the extent Eros was "not cooperating" with CARE at that time, it was because CARE no longer covered EIML and responsibility for EIML was assigned to another agency.

fraudulent at the time they were made.  (Op. 19–21.)  The TAC repeats these alleged misstatements and adds similar ones from 2019 and 2020.  (*See* TAC ¶¶ 225–28, 255–58, 301–04, 336–39.)

Plaintiffs' new allegations suffer from the same fatal flaws as their original ones because these statements about internal controls are quintessential statements of opinion.  *See Omnicare,* 575 U.S. at 186 (finding statement of belief in legal compliance a statement of opinion);[4] *see also Pfizer*, 754 F.3d at 167.  Only where a plaintiff can plead facts showing that the speaker subjectively disbelieved a statement of opinion regarding legal compliance will the statement be actionable.  *Omnicare*, 575 U.S. at 186.  The mere fact that a statement of opinion may later turn out to be erroneous does not show that the opinion was not honestly held.  *Id.*

Here, Plaintiffs allege that Defendants' opinions about internal controls in 2017–2020 were not honestly held based on Eros's disclosures of certain material weaknesses (and the likelihood of additional weaknesses) years later in 2019–2021.  (*See* TAC ¶¶ 228, 258, 304, 339; Op. 20.) But where, as here, the TAC "does not allege that the disclosure[s] w[ere] based on something other than the recent evaluation of internal controls and does not allege that [Defendants] had any reason to believe that the statement[s] w[ere] misleading when made," dismissal is appropriate.  *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2018 WL 3772675, at *25 (D.N.J. Aug. 8, 2018).

## B.   The TAC Fails To Plead New Material Misstatements Or Omissions

### 1.   *Eros's Trade Receivables Balances*

Plaintiffs allege that Eros's statements in its 2020 quarterly financial results regarding the amount of its trade receivables balances were materially misleading based on Eros's later announcements relating to its Audit Committee internal review.  (*See* TAC ¶¶ 310, 318, 326, 334

---

[4]     In the Opinion, the Court referenced both *Pfizer* and *Omnicare*.  Though *Omnicare* involved claims arising under Section 11 of the Securities Act of 1933, certain circuits (although not, to date, the Third Circuit) have now applied it to Section 10(b) cases.  *See Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016).

("ErosSTX later admitted in its August 3, 2021 and August 25, 2021 press releases [that] 'approximately $85.5 million of Eros pre-merger revenue was not properly recognized in the fiscal year ended March 31, 2020' . . . and further that 'a significant portion of the receivables associated with such revenue was valued at zero'" for the six months ended September 30, 2020.).)  But the announcements involved the preliminary results of the ongoing Audit Committee investigation and did not represent Eros's findings at the conclusion of the review.  (*See* Klugman Decl. Ex. 7 at 2 (noting that "The Audit Committee has not yet completed the internal review"); Klugman Decl. Ex. 8 at 2 (same); TAC ¶¶ 140, 147.)  Plaintiffs cannot allege that Eros's prior statements are false based on what the Audit Committee "may" conclude in the future or on interim findings subject to future revision.  (*See* Klugman Decl. Ex. 7 at 2 (noting that revenue "may" not have been properly recognized).)[5]

Even assuming the preliminary findings are borne out by the investigation, Plaintiffs provide no satisfactory explanation for why Eros's later write-downs render its earlier statements about its trade receivables balances false when made.  Plaintiffs impermissibly rely on fraud by hindsight, arguing that because Eros later noted that a portion of its pre-merger revenue was not properly recognized, the Company's earlier statements regarding its trade receivables were fraudulent.  This is insufficient.  "To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002).[6]

---

[5]     Plaintiffs' allegations that Eros's trade receivables balances were improperly recorded is really an allegation that Eros violated certain accounting rules.  "[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).

[6]     For the same reasons, the March 31, 2021 statements concerning ErosSTX's intangible asset balances were not false or misleading when made.  (TAC ¶¶ 345–46.)

2.     *Eros's Impairment Charges*

Plaintiffs allege new material misstatements concerning Eros's 2019 and 2020 impairment charges.  (*See* TAC ¶¶ 296, 299–300, 331, 335.)  In particular, Plaintiffs highlight two new statements: (1) Lulla's July 15, 2019 statement that the 2019 impairment charge was "reversible" if Eros's market capitalization "[went] up" (and Parameswaran's agreement with this statement) (*id.* ¶ 296); and (2) a statement in Eros's 2020 20-F noting that "the significant reduction in stock price and corresponding decline in market capitalization was the main driver for the impairment charge[s]" (*id.* ¶ 331).  Plaintiffs contend that these statements gave the misleading impression that the impairment charges were due to the drop in Eros's market capitalization and could be reversed by a favorable change in a company's market capitalization under IAS guidance.

There is nothing false or misleading about the statement that the decline in market capitalization was the "main driver" for Eros's impairment charges.  Indeed, the declines in Eros's market capitalization that occurred following the CARE downgrade in 2019, and again in 2020 during the height of the global pandemic, were precipitous—and, as a result, Eros wisely conducted the impairment tests.

At base, Plaintiffs allege that Defendants' statements concerning the reasons for the impairments, and the circumstances under which the impairments can be reversed, are inconsistent with Plaintiffs' own interpretation of accounting rules and guidance.  (*See* TAC ¶¶ 177–88.)  Because "impairment analys[es] inherently involve[] business judgment," Plaintiffs' allegations about Defendants' impairment analyses "do not involve misstatements or omissions of material fact, but rather a misstatement regarding [Defendants'] opinion."  *Bartesch v. Cook*, 941 F. Supp. 2d 501, 512 (D. Del. 2013) (internal quotations and citations omitted); *see also In re Loral Space & Commc'ns, Ltd. Sec. Litig.*, 2004 WL 376442, at *17 (S.D.N.Y. Feb. 27, 2004) ("When . . . impairments [become] so severe as to require specific accounting charges, and

whether the requirements of the accounting principles were satisfied, necessarily involved issues of judgment.").  Plaintiffs provide insufficient detail even to allege that Eros committed some error in judgment in taking the impairments when it did for the reasons specified, and they have certainly not alleged that Defendants "deliberately misrepresented a truly held opinion" concerning the reasons for the impairment charges.  *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 2011 WL 4357368, at *13 (S.D.N.Y. Sept. 19. 2011).

### 3.    *Eros's Financial Profile*

The TAC adds new alleged misstatements from 2019 and 2020 regarding Eros's financial well-being, "solid" financial results, "conservative balance sheet," "intangible content balances," and level of capitalization.  (TAC ¶¶ 287–88, 294–98, 305–06, 309, 313, 317, 322, 324–25, 328–30, 333–34.)  Plaintiffs allege that these statements about Eros's financial well-being must have been misleading when made because:  Eros announced two impairment losses; Eros's liquidity profile was "materially weaker" than represented; and Eros had trouble paying its obligations, including because of EIML's missed loan payments.  (*See, e.g.*, *id.* ¶ 333.)

As with similar earlier alleged misrepresentations, each of these statements included accompanying financial information that was disclosed to Eros's investors with discussions, facts, and figures explaining the reasoning for the statements.  (Klugman Decl. Exs. 1, 5, 6, 9–12.)  Plaintiffs do not plead facts that challenge the accuracy of any of these statements at the time they were disclosed.  Because "Defendants sufficiently disclosed facts and information that would render the alleged misrepresentations not misleading," Plaintiffs' claims based on the above-referenced statements are inadequate and should be dismissed.  *Fan*, 927 F.3d at 717 ("Overall, for each category of StoneMor's alleged misstatements, clear and consistent disclosures were made

available to investors throughout the Class Period.  As a result, we hold that StoneMor sufficiently

disclosed facts and information that render its alleged misrepresentations not misleading.").[7]

### 4.   *The ErosSTX Merger*

The TAC adds new alleged misstatements relating to and following the July 30, 2020

ErosSTX merger.   (TAC ¶¶ 340, 342.)  Plaintiffs allege that various statements touting the value

of ErosSTX's content libraries and expected earnings were materially false or misleading because

ErosSTX's June 30, 2020 write-down of content suggests that its library was actually less valuable

than it led investors to believe.  (*See id.* ¶ 341 (referring to a July 30, 2020 press release, which

stated that ErosSTX "will continue to have a leading box office presence and one of the largest

and one most valuable libraries of Indian language films"); *id.* ¶¶ 343–44 (referring to Warren's

statements on a November 4, 2020 ErosSTX special earnings call discussing some "very high-

level guidance metrics" for fiscal year 2022 ($800 million in revenue) and ErosSTX's "true

library," with "high cash flow, high-margin flow-through.").)

These statements are not material misstatements; they are statements of opinion, which are

"only actionable under the securities laws if they are not honestly believed and lack a reasonable

basis."  *Pfizer*, 754 F.3d 159 at 170; *see also Omnicare*, 575 U.S. at 185–86.  Plaintiffs have not

alleged that Defendants did not have a reasonable basis for the subjective statements concerning

"high-level" revenue guidance metrics, or that ErosSTX had one of the "most valuable libraries of

Indian language films" and had developed a "true library" with "high cash flow, high-margin flow

through."  (TAC ¶¶ 341, 43–44.)

---

[7]     Plaintiffs allege that Lulla was reported in a June 10, 2019 article, days after the disclosures
of the CARE downgrade, as saying that "the banks have not served us any notice on any loans."
(TAC ¶¶287–88.)  Clearly, having already disclosed the relevant missed payments days earlier,
Lulla could only have been referring to additional notices or additional escalation with respect to
those payments.  The TAC therefore fails to plead with particularity that this statement was false
when made.

Moreover, the statements about ErosSTX's "valuable" and "true" library as compared to its competitors are precisely the sort of subjective opinions that courts consider immaterial and nonactionable puffery.  *See In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 283–84 (3d Cir. 2010); *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 537–39 (3d Cir. 1999) (finding that statements like "superior cost structure," "excellent" credit quality, and "excellent growth and returns" were puffery and holding:  "We are skeptical that plaintiffs or any other reasonable investors would make investment decisions based on the positive portrayals"), *abrogated on other grounds by Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308 (2007).

## II.        PLAINTIFFS FAIL TO PLEAD SCIENTER

The scienter requirement for a securities fraud claim requires a plaintiff to "allege facts giving rise to a 'strong inference' of 'either reckless or conscious behavior.'"  *Institutional Invs. Grp. v. Avaya*, 564 F.3d 242, 267 (3d Cir. 2009).  "A plaintiff alleging conscious misbehavior must 'stat[e] with particularity facts giving rise to a strong inference of conscious wrongdoing, such as intentional fraud or other deliberate illegal behavior.'"  *In re Elecs. for Imaging, Inc. Sec. Litig.*, 2019 WL 397981, at *6 (D.N.J. Jan. 31, 2019).  To demonstrate recklessness, a plaintiff must plead facts showing "an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."  *Avaya*, 564 F.3d at 267 n.42.

Plaintiffs have not alleged scienter.  *First*, the Court found the majority of Plaintiffs' original scienter allegations inadequate, including their broad confidential witness allegations and allegations concerning the reasons behind Eros's 2019 impairment charge.  (Op. 26–31.)  Plaintiffs fail to correct the errors in the Original Complaint.  *Second*, Plaintiffs' new and voluminous—but vague and conclusory—allegations in the TAC are inadequate to support the "strong inference" of scienter that is necessary to survive a motion to dismiss.  (*See* TAC ¶¶ 372–415.)  *Third*, in view

of the allegations in the TAC, the Court should dismiss the three statements that survived the original motion to dismiss for lack of scienter.

## A.     The TAC Does Not Remedy The Defects In The Original Complaint

### 1.    *Confidential Witness Allegations*

The TAC, like the Original Complaint, impermissibly grounds itself in vague confidential witness allegations.  Plaintiffs are entitled to rely on confidential sources only where such sources "are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the [confidential] source would possess the information alleged," *Intelligroup*, 527 F. Supp. 2d at 290, and "allegations attributed to the information obtained from a confidential source must contain specific details regarding the basis for the source's personal knowledge and describe supporting events in detail," *Nat'l Junior Baseball League*, 720 F. Supp. 2d at 538-39.  Significantly, "[f]ailure to meet these requirements with respect to each and every confidential source the plaintiff relies upon, renders that source irrelevant for the purposes of plaintiff's allegations." *Intelligroup*, 527 F. Supp. 2d at 290.

The Original Complaint's confidential witness allegations were insufficiently specific to reach the high bar of pleading scienter—a conclusion with which the Court unreservedly agreed. The Opinion held, *inter alia*, that the allegations suffered from a "lack of specificity," leading the Court to "steeply discount" them.  (Op. 26.)  Like the Original Complaint, the TAC attempts to extrapolate scienter from vague confidential witness allegations that "pertain to missed loan payments and salaries," (*id.*), and points to non-particularized allegations from the same confidential employees that certain employee salaries were "at times" delayed (TAC ¶¶ 148–51).

While the TAC adds two confidential witnesses, CW9 and CW10, these witnesses echo these same points concerning delayed salaries.  (TAC ¶¶ 152–55.)  "Critically, these confidential witnesses fail to allege that any Defendant was aware of these occasional delays," as the Court

found with respect to the Original Complaint.  (Op. 26.)  The allegations with respect to CW1 through CW8 are materially unchanged, and at most allege that defendants were "informed about . . . financial concerns" at an unspecified time from unspecified members of "the EIML team." (TAC ¶ 168.)  Plaintiffs continue to fail to make any confidential witness allegations with the requisite particularity, and none of these allegations demonstrate firsthand knowledge of any alleged misstatements on behalf of, or regarding any actions of, Defendants.

### 2.    *Eros's Impairment Charges*

Many of Plaintiffs' new allegations concern Eros's two impairment charges and "the circumstances surrounding" those impairments.  (*See* TAC ¶¶ 177–205).  With respect to Eros's July 15, 2019 impairment loss, the Court has already rejected Plaintiffs' arguments that "the circumstances surrounding Eros' [2019] impairment of its intangible assets . . .  contribute to a strong inference of scienter" and that "an inference of scienter is warranted based on Defendants' vague explanation for the impairment." (Op. 28–30.)  The TAC sets forth allegations similar to those in the Original Complaint:  because Eros cited (1) the carrying value of its net assets exceeding its market capitalization and (2) its content expenditures exceeding positive cash flow as relevant to its impairment analysis, and because those factors allegedly existed at some earlier points, Plaintiffs allege that Eros's "vague" explanations must be wrong and Eros's failure to take the impairments earlier is evidence of Defendants' conscious wrongdoing.  (*See* TAC ¶¶ 189–205.)

Although acknowledging that Eros cited the unprecedented, "significant decline in market value" that it experienced in 2019 as motivating the impairment analysis, (TAC ¶ 192), and "provide[d] some explanation of how [it] determined" the impairment, including pointing to a "high discount rate . . . and changes in market conditions," (*id.* ¶ 193), Plaintiffs continue to fault that explanation, arguing that the explanation was "vague," "impossible to understand,"

"muddied," and amounted to a "glaring failure to explain." (*Id*. ¶¶ 199–201.) The TAC also adds similar allegations concerning the second impairment loss announced by Eros on July 30, 2020. (*See id.* ¶ 206). As Plaintiffs acknowledge, Defendants explained that the 2020 impairment loss was "mainly due to changes in the market conditions" because of the global pandemic and was a result of "the significant reduction in the stock price and corresponding decline in market capitalization." (*Id.* ¶ 207.) As with the first impairment, the TAC similarly acknowledges Eros's stated reasons for the 2020 impairment, but continues to fault the explanation as "vague," "seemingly contradictory," and "muddied." (*Id.* ¶¶ 206, 213.) Plaintiffs take issue with Eros's allegedly "vague" and "muddied" impairment explanations—but a "vague" explanation does not amount to securities fraud.

"None of the facts in Plaintiffs' [TAC] indicates that Defendants' position on [the impairments] was an egregious departure from the range of reasonable business decisions" necessary for a showing of scienter. *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 431 (D.N.J. 2005). The TAC continues to lack the key hook between any alleged impairment error and "detailed evidence of the contemporaneous decision-making behind [any] alleged accounting errors that would . . . show the required scienter," *In re ICN Pharm., Inc. Sec. Litig.*, 299 F. Supp. 2d 1055, 1065 (C.D. Cal. 2004), such as allegations that the Defendants ignored contrary reports, *see In re Loral Space & Commc'ns*, 2004 WL 376442, at *17 ("There are no allegations that there were any internal reports that suggested that the failure to take an impairment charge earlier was an incorrect application of accounting principles . . . [and] rose to the level of fraud.").

## B.     The TAC Fails to Plead New Scienter Allegations

### 1.     *Eros's Internal Controls And SOX Certifications*

The TAC alleges that Defendants' voluntary disclosures of weaknesses in certain of its internal controls and its efforts to remediate those weaknesses detailed in Defendants' 2019 and

2020 20-F filings, as well as in its August 3, 2021 announcement of the Audit Committee's internal review, suggests a strong inference of scienter.  (TAC ¶¶ 401–10.)  But Plaintiffs do not plead with particularity that Defendants knew about these weaknesses at the time of the earlier disclosures, or that they "consciously avoided any meaningful exposure to the information" that could render their SOX certifications misleading.  *Intelligroup*, 527 F. Supp. 2d at 290.

Without such facts, Defendants' later voluntary disclosures of internal control weaknesses do not support a finding of scienter.  *See Hertz*, 905 F.3d at 118 ("An allegation that a defendant signed a SOX certification attesting to the accuracy of an SEC filing that turned out to be materially false does not add to the scienter puzzle in the absence of any allegation that the defendant knew he was signing a false SEC filing or recklessly disregarded inaccuracies contained in an SEC filing."); *Roofer's Pension Fund v. Papa*, No. 16-cv-02805, 2018 WL 3601229, at *19 n.20 (D.N.J. July 27, 2018) (noting that an admission of material weaknesses in internal controls was not indicative of scienter because plaintiffs failed to allege facts demonstrating knowledge of purportedly lackluster internal controls at the time of the alleged misstatements).

These later disclosures of internal control weaknesses and the Audit Committee's investigation strongly weigh ***against*** an inference of scienter.  "A disclosure that meaningfully alerts investors to the risk that financial information is not accurate may suggest that the individuals responsible for the disclosure did not knowingly (or perhaps even recklessly) misstate the underlying financial information."  *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 187 (4th Cir. 2009) ("Later disclosures that timely raised questions about the reliability of financial information . . . lend weight to an inference that contemporaneous financial statements were made in good faith."); *Ezra Charitable Tr. v. Tyco Int'l, Ltd.*, 466 F.3d 1, 8–9 (1st Cir. 2006)

(quoting from the defendant's Form 8-Ks and 10-Ks and observing that such "attempts to provide investors with warnings of risks generally weaken the inference of scienter").

> ### 2.   *Lulla's Stock Sales*

The TAC alleges that certain stock dispositions by Lulla demonstrate scienter.  (TAC ¶¶ 372–81.)  The "mere fact that an insider sold corporate stock . . . is not enough to give rise of an inference of scienter."  *Hertz*, 905 F. 3d at 119.  Stock sales may support an inference of scienter only if such sales were "unusual in scope or timing."  *Oran v. Stafford*, 226 F.3d 275, 209 (3d Cir. 2000) (quoting *Advanta*, 180 F.3d at 540).  This is because a "large number of today's executives are compensated in terms of stock and stock options.  It follows that these individuals will trade those securities in the normal course of events.  [Courts] will not infer fraudulent intent from the mere fact that some officers sold some stock."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424 (3d Cir. 1997).

Here, Plaintiffs allege that Lulla received and sold stock during the year-long period between July 2018 and July 2019, untied to any of the events in the complaint.  (TAC ¶¶ 372–74.)  These allegations are insufficient.  Moreover, Plaintiffs ignore that Lulla owned a significant number of shares of Eros stock towards the end of the putative class period.[8]  Large retained aggregate holdings during the class period negate an inference of scienter.  *See, e.g., Advanta*, 180 F. 3d at 540–541 (reasoning that where individual defendants retained a sizeable amount of the company's stock, "[f]ar from supporting a 'strong inference' that defendants had a motive to

---

[8]      As of July 27, 2020, Lulla was the beneficial owner of 1,041,404 'A' Ordinary shares (0.6% of that class of stock) and 17,723,085 'B' Ordinary shares (81.7% of that class of stock).  (*See* Klugman Decl. Ex. 6 at 113.)  In addition, between July 30, 2019 and July 27, 2020, Lulla's aggregate ownership of A and B ordinary shares, through both direct and indirect ownership, increased by 1,149,493 shares.  (*Id.* at 115.)

capitalize on artificially inflated stock prices, these facts suggest that they had every incentive to keep [the company] profitable").

Plaintiffs also allege that Lulla gifted company stock to various members of his family, including his daughters, during the class period.  (TAC ¶ 375.)  Contrary to Plaintiffs' allegations, gifts of stock show confidence in a company's strength.  The suggestion that anyone would try to sell company stock to take advantage of an inflated stock price by gifting shares to family members is illogical.  Further, Plaintiffs' allegations concerning non-stock compensation, (*id.* ¶¶ 376–81), add nothing to the scienter inference.

### 3.     *Eros's Management And Auditor Resignations*

The TAC also points to the alleged resignations of the CFOs of Eros and EIML respectively, Prem Parameswaran and Farokh Ghandi, as well an EVP, Corporate Finance, Chris O'Connell, as evidence of Defendants' scienter.  (TAC ¶¶ 392–97.)  Resignations of senior executives do not give rise to an inference of scienter absent allegations demonstrating that the resignations were connected to the events described in the complaint.  *Hertz*, 905 F.3d at 119 ("[P]leading scienter requires more than pleading a link between bad news and an executive's resignation. . . . Corporate resignations do not strengthen an inference of scienter when, as here, the allegations do not cogently suggest that the resignations resulted from the relevant executives' knowing or reckless involvement in a fraud.").

Plaintiffs do not connect the alleged resignations of the three employees to the events in the TAC.  Rather, Plaintiffs allege that the three employees resigned in 2021, more than a year after the ErosSTX merger, for unexplained reasons.  (TAC ¶¶ 393–97.)  A corporation may choose to terminate employees for any number of reasons—for errors, oversights, or because of a leadership transition—none of which show that those employees acted with scienter.  *In re Interpool, Inc. Sec. Litig.*, 2005 WL 2000237, at *17 (D.N.J. Aug. 17, 2005) ("[T]he Third Circuit

[] and other courts have found resignations [by] key officers [are] insufficient to show that they acted with the requisite scienter to commit the alleged fraud").  Moreover, although the Court must at this stage accept Plaintiffs' allegations as true, it is important to note that Plaintiffs are outright incorrect that Defendant Parameswaran separated from the company.[9]

Plaintiffs infer that the alleged resignations are related to Eros's allegedly fraudulent accounting practices because of the "proximity" of the departures to the Audit Committee internal review announcement.  (TAC ¶ 397.)  But "the inference that the defendant corporation forced certain employees to resign because of its knowledge of the employee's role in the fraudulent representations will never be as cogent or compelling as the inference that the employees resigned or were terminated for unrelated personal or business reasons."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009); s*ee also Cognizant Tech. Sols.*, 2018 WL 3772675, at *30 ("[R]esignation of corporate officers around the time of an internal investigation or the announcement of corporate misconduct alone is not sufficient to give rise to a strong inference of scienter.").

The same is true for Plaintiffs' allegations that ErosSTX's decision to replace Eros's former auditor, Grant Thornton India LLP, with Ernst & Young LLP "just months before" ErosSTX announced its Audit Committee internal review is indicative of Defendants' knowledge of the allegedly fraudulent conduct.  (TAC ¶¶ 411–15.)  The TAC is devoid of factual allegations that link Grant Thornton's replacement to any allegedly improper conduct.  *See, e.g., In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1039–40 (S.D. Cal. 2014) (finding that "the 'noisy' resignation of [the defendant's] auditor," alone, did not support a strong inference of scienter).

---

[9]     As set forth in Defendant Parameswaran's motion to dismiss, Parameswaran did not resign from ErosSTX and is still with the company.

4.      *Defendants' Motivation To Meet Fiscal Year 2020 Revenue Guidance*

Plaintiffs allege that Lulla's and Parameswaran's public statements regarding Eros's revenue forecasts of between $200 and $220 million for fiscal year 2020 shows motive to commit fraud because Eros did not meet its projection.  (TAC ¶¶ 382–86.)  For allegations of motive to support scienter, Plaintiffs must adequately allege a personal and concrete benefit to Defendants. *Avaya*, 564 F.3d at 278.  General business motives common to all officers and directors—like a desire to meet revenue forecasts—are insufficient.  *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004) ("Motives that are generally possessed by most corporate directors and officers do not suffice.") (citation omitted); *see also In re Radian Sec. Litig.*, 612 F. Supp. 2d 594, 609 (E.D. Pa. 2009) (allegations that defendants "were motivated to complete the merger and to artificially inflate the price of [defendant company's] stock" were insufficient to raise an inference of scienter because, among other reasons, "these goals [are] generally possessed by most corporate directors").  If such allegations could support an inference of scienter, every company would be susceptible to baseless securities fraud claims, because every company has the goal of meeting revenue forecasts.

5.      *Third-Party Articles*

The new third-party articles referenced in the TAC—including the July 26, 2021 article from the Indian news outlet Daily2Daily, and the June 17, 2021 article from a Bollywood news outlet, Bollywood Hungama—do not raise a strong inference of scienter.  (*See* TAC ¶¶ 156–61, 391, 398–400.)  Allegations in "articles should be credited only to the extent that . . . they are sufficiently particular and detailed to indicate their reliability."  *In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 690 (S.D.N.Y. 2008) (citation omitted).

Plaintiffs rely on the vague statements from anonymous sources in the Daily2Daily article to allege that Eros "destroyed its mail servers," "laptops of employees have been seized to delete

24

emails," and "senior employees in the finance and commercial team are being interrogated by the legal team of STX . . . [and] many employees, who could be questioned, were sent on a leave of absence." (TAC ¶¶ 398–400.) The Bollywood Hungama article similarly relies on unnamed sources for the proposition that Eros's salary payments were delayed to some of its employees and that some employees may have resigned as a result. (*Id.* ¶¶ 156–157.)[10]

Allegations like these from articles which come from unnamed sources must be "steeply" discounted where there is insufficient particularity regarding "the detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 244 (3d Cir. 2013) (quotations omitted). Plaintiffs' allegations suffer from just such a lack of particularity. Not only are they based almost exclusively on unnamed sources, but they also lack detail to support the unnamed sources' reliability, such as their positions with the company, dates of employment, basis of knowledge, or concrete facts corroborating their allegations.

### 6. *Defendants' Allegedly "Reflexive Denials"*

Plaintiffs attempt to sidestep the PSLRA's requirement to plead with particularity "each allegedly misleading statement" *as well as* "facts giving rise to a strong inference that the defendant acted with the required state of mind," by arguing that Defendants' allegedly false or misleading statements concerning their response to the CARE and Moody downgrades, trade receivables balances, and employee resignations are "reflexive denials" that themselves create a strong inference of scienter. (TAC ¶¶ 387–92). If courts gave this argument credence, however,

---

[10]     The TAC references two other Bollywood articles and blogs that also quote from unnamed sources about delayed salary payments and employee resignations without meaningful substantiation or corroboration. (*See* TAC ¶¶ 158–60.)

it would obviate the scienter element.  *In re Federated Dep't Stores, Inc., Sec. Litig.*, 2004 WL 444559, at \*7 (S.D.N.Y. Mar. 11, 2004) (characterizing the suggestion that "scienter can be inferred merely from the allegedly fraudulent statements themselves" as "doubtful" and noting that "[s]uch a result would eliminate the need to plead scienter").  Plaintiffs cannot rely on Defendants' alleged misstatements to bolster otherwise insufficient scienter allegations.

## C. Plaintiffs Do Not Plead Scienter For The Surviving Statements In The Original Complaint

The allegations in the TAC demonstrate that no scienter exists for the three post-CARE downgrade statements identified in the Opinion, and Defendants respectfully request that the Court revisit its decision with respect to those three statements.  The Court found scienter alleged with respect to Eros's June 6, 2019 statement that Eros and its subsidiaries "have met and continue to meet all debt service commitments," and that "[t]he Company retains the full faith and confidence of its lenders" in the wake of the CARE downgrade.  (TAC ¶ 93; Op. 31.)  As set forth in the TAC, Eros issued a press release on the same day, hours later, to clarify that it was late on the two loan payments, totaling less than $2 million dollars.  (TAC ¶ 94.)  Eros's first June 6, 2019 statement is suggestive of an innocent mistake, not scienter, made plain by the fact that Eros issued a clarifying press release hours later.  At most, Eros's mistake demonstrates negligence, and that is not enough to plead scienter.  *See, e.g.*, *Hertz*, 905 F.3d at 121 (noting that allegations leading to the inference of corporate negligence are insufficient to plead scienter).

The Court also found scienter for the two statements by Lulla and Parameswaran on June 9, 2019 relating to the strength of Eros's liquidity profile and financial and operating position. (Op. 27; TAC ¶¶ 283, 385.)  The Court pointed to the timing of the statements as sufficient to infer recklessness, "given [Lulla and Parameswaran's] position[s] in the Company and because of the public nature of the [CARE] downgrade."  (Op. at 27.)  But, as Plaintiffs acknowledge in the TAC,

Macquarie Research, an independent third party, reported on the day of Eros's statement that it understood that EIML's missed loan payments that resulted in the CARE downgrade were "due to a clerical error," and not indicative of any true financial problems at the company.  (TAC ¶ 96.)

## III.        PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

To satisfy the loss causation requirement, Plaintiffs must show that their losses are related specifically to the market's discovery of the alleged misrepresentation and the corresponding decrease in share price due to the disclosure of that alleged misrepresentation.  *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425 (3d Cir. 2007).  The TAC adds new allegations regarding two alleged corrective disclosures on July 30, 2020 and August 3, 2021.  (*See* TAC ¶¶ 347, 365–69.)[11] Plaintiffs' new allegations are insufficient to support a showing of loss causation.

Plaintiffs allege that Eros's July 30, 2020 press release in which Eros reported earnings for the fiscal year ended March 31, 2020 and its second impairment loss is a disclosure that establishes the loss causation element.  (TAC ¶¶ 365–66.)  Not so.  "[D]isclosure of disappointing earnings or other indications of the 'true financial condition' of the company, without any evidence of a link between the disclosure and the fraud, is not a corrective disclosure."  *In re DVI, Inc. Sec. Litig.*, 2010 WL 3522090, at *6 (E.D. Pa. Sept. 3, 2010).

Plaintiffs also allege that loss causation is established by the disclosures in Eros's August 3, 2021 press release that:  ErosSTX could not timely file its annual report; the Audit Committee

---

[11]        In the Opinion, the Court found that Plaintiffs failed to plead loss causation with respect to certain "statements that the Moody's withdrawal occurred due to Eros' request," as "Plaintiffs . . . failed to plead allegations demonstrating that there was any corrective statement on the market after" the relevant statements.  (Op. 33–34).  Although the TAC adds an allegation that this statement, among others, "gave the materially misleading impression that Eros's financial position and liquidity were in a better shape than they were" (*id*. ¶ 233), the TAC continues to fail to plead that any subsequent disclosure "reveal[ed] the falsity of the alleged misrepresentation."  *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *39 (D.N.J. Dec. 31, 2018).  For the reasons set forth in the Opinion, Plaintiffs continue to fail to allege loss causation with respect to those statements relating to the Moody's withdrawal.  (Op. 33–34.)

would be reviewing the Company's internal controls and accounting practices; and "substantially all of the intangible assets and goodwill reflected in the Form 6-K are likely to be impaired and that one or more material weaknesses in internal controls over financial reporting are likely to be reported" as a result of the Audit Committee investigation.  (TAC ¶ 367.)

None of these disclosures are sufficiently corrective of any alleged fraud to plead loss causation.  The announcement of a delay in the reporting of financials does not reveal the truth that Eros has engaged in any of the purported wrongdoing outlined in the TAC.  *See In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007) (disclosure that company "would not be able to file its 10-Q for the third quarter of 2006 on time due to the Special Committee's investigation" was not corrective).  Moreover, the announcement of the Audit Committee investigation is itself insufficient to plead loss causation, particularly where, as here, the Committee has not completed its investigation.  *See Janbay v. Canadian Solar*, Inc. 2012 WL 1080306, at *15 (S.D.N.Y. Mar. 30, 2012).  "A disclosure must reveal more than just the existence of a subpoena or investigation.  It must link the subpoena or investigation to the actual fraudulent conduct alleged in the complaint."  *Id.; Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014) ("While the disclosure of an investigation is certainly an ominous event, it simply puts investors on notice of a *potential* future disclosure of fraudulent conduct. Consequently, any decline in a corporation's share price following the announcement of an investigation can only be attributed to market speculation about whether fraud has occurred.").  The August 3, 2021 press release speculated as to what the Audit Committee's internal review would conclude, but did not reveal to the market that any alleged fraud had occurred.  *See In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010) (loss causation is established where fraud underlying alleged false statements is revealed).

IV.        **PLAINTIFFS' SECTION 20(A) CLAIM MUST BE DISMISSED**

Section 20(a) creates a cause of action against one who controls a violator of Section 10(b). 15 U.S.C. § 78t(a).  Therefore, liability under Section 20(a) is derivative of an underlying violation of Section 10(b) by the controlled person.  *Avaya*, 564 F.3d at 252.  Here, Plaintiffs allege that Lulla and Warren are liable under Section 20(a) for the purportedly misleading statements and omissions made by Eros during the Class Period.  (TAC ¶¶ 445–47.)  Because Plaintiffs have failed to adequately plead a predicate Section 10(b) violation, the Section 20(a) claim also must be dismissed.  *See, e.g.*, *Rahman*, 736 F.3d at 247 (affirming dismissal of Section 20(a) claim where the plaintiff failed to properly plead a predicate claim under Section 10(b)).

Even if Plaintiffs stated a Section 10(b) claim, their Section 20(a) claim should still fail because their allegations concerning "culpable participation," *see Belmont*, 708 F.3d at 484–85, fall short.[12]  "Culpable participation requires knowledge because, '[i]n order to be a participant, the defendant must have some actual knowledge of the fraudulent activity taking place or knowledge must be imputed to him or her.'"  *Id.* at 485 (alteration in original) (quoting *Poptech, L.P. v. Stewardship Credit Arbitrage Fund, LLC*, 792 F. Supp. 2d 328, 341 (D. Conn. 2011)).  Here, for essentially the same reasons discussed above in connection with scienter, Plaintiffs have failed to allege that either Warren or Lulla had knowledge of any fraudulent activity.  Moreover, the misconduct that Warren and Lulla purportedly engaged in—primarily signing SEC filings and SOX certifications, (*see, e.g.*, TAC ¶¶ 256–57, 340, 345), and discussing

---

[12]        While district courts within the Third Circuit are divided on whether a plaintiff must plead culpable participation to survive a motion to dismiss, *see Belmont*, 708 F.3d at 484 n.20 ("[A] difference of opinion has emerged among district courts of this Circuit as to the pleading requirements for a § 20(a) claim."), this Court should "follow the lead of the recent decisions of other courts in this Circuit that require a plaintiff to plead all elements of a § 20(a) claim, including culpable participation."  *Howard v. Arconic Inc.*, 2021 WL 2561895, at *29 (W.D. Pa. June 23, 2021); *see also id.* (collecting cases).

the company's outlook, typically in broad terms, via earnings calls, press releases, and interviews, (*see, e.g.*, *id.* ¶¶ 202, 212, 220, 250, 263, 342)—is a far cry from that upon which Section 20(a) liability is typically premised. *See Belmont*, 708 F.3d at 485 (noting, as an example of culpable participation, "an executive's transfer of assets to himself so that the brokerage firm he controlled would be unable to pay a penalty to the SEC" (citing *SEC v. J.W. Barclay & Co., Inc.*, 442 F.3d 834, 841 n.8 (3d Cir. 2006))).  Indeed, with respect to Warren, he was not even affiliated with Eros when most of the allegedly false statements were made because they pre-date the ErosSTX merger. As such, once the Court dismisses Plaintiffs' claim to the extent it relies on post-merger statements, Warren should be dismissed from the case.

## CONCLUSION

For the reasons stated above, Plaintiffs' Third Amended Complaint should be dismissed with prejudice, as amendment would be futile.

Dated: March 4, 2022

Respectfully submitted,

LEVINE LEE LLP

By:   /s/ Scott B. Klugman
   Scott B. Klugman
   Kenneth E. Lee (*pro hac vice*)
   Chad P. Albert (*pro hac vice*)
   5 Columbus Circle, 11th Floor
   New York, New York 10019
   (212) 223-4400
   sklugman@levinelee.com
   klee@levinelee.com
   calbert@levinelee.com

   *Attorneys for Defendants Eros*
   *International Plc, Kishore Lulla, and*
   *Andrew Warren*