## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE EROS INTERNATIONAL PLC SECURITIES LITIGATION | 1:19-cv-14125 (JMV) (JAD) **ORAL ARGUMENT REQUESTED** |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## DEFENDANT PREM PARAMESWARAN'S MOTION TO DISMISS

KASOWITZ BENSON TORRES LLP

Stephen W. Tountas
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel.: (973) 645-9462
Fax: (973) 643-2030

*Attorneys for Defendant Prem Parameswaran*

[Additional Counsel on Signature Page]

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT..................................................................................................................... 2

    I.     Plaintiffs' Opposition Confirms That The TAC Fails To Allege
        Parameswaran's Scienter ..................................................................... 2

        A.    Plaintiffs Do Not Rebut That Parameswaran Had No Involvement
             In The Accounting And Financial Reporting Of EIML............................ 2

        B.    Plaintiffs' Confidential Witnesses Must Once Again Be Discounted ........ 5

        C.    Plaintiffs Fail to Allege Scienter in Connection With
             Parameswaran's Impairment-Related Statements...................................... 6

        D.    Plaintiffs Also Have Not Alleged Scienter In Connection With
             Any Of The Other Alleged Misstatements .................................................. 9

    II.    Plaintiffs Have Failed To Allege Any Actionable Misstatements........................ 11

        A.    Statements Related To The Impairment of Eros's Assets ........................ 11

        B.    Statements Regarding CARE Ratings ...................................................... 12

        C.    Statements Regarding Eros's Financial Condition .................................. 13

    III.   Plaintiffs Fail To Allege A Claim For Control Person Liability
        Under Section 20(a) ........................................................................... 14

CONCLUSION................................................................................................................ 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aurora Cannabis, Inc. Sec. Litig.*,
  2021 WL 2821167 (D.N.J. July 6, 2021)...................................................................14

*Bldg. Trades Pension Fund of W. Pennsylvania v. Insperity, Inc.*,
  2022 WL 784017 (S.D.N.Y. Mar. 15, 2022) ............................................................13

*In re Campbell Soup Co. Secs. Litig.*,
  2020 WL 7022655 (D.N.J. Nov. 30, 2020) ................................................................3

*Christian v. BT Group Plc*,
  2020 WL 1969941 (D.N.J. Apr. 24, 2020),
  *aff'd sub nom. Pamcah-UA Loc. 675 Pension Fund v. BT Grp. Plc,*
  2021 WL 3415060 (3d Cir. Aug. 5, 2021)...............................................................4, 8

*City of Edinburgh Council v. Pfizer, Inc.*,
  754 F.3d 159 (3d Cir. 2014).....................................................................................11

*In re Cognizant Technology Solutions Corp. Securities Litigation*,
  2018 WL 3772675 (D.N.J. Aug. 8, 2018) ...............................................................13

*Dudley v. Haub*,
  2013 WL 1845519 (D.N.J. Apr. 30, 2013) ................................................................8

*In re Eros Int'l Plc Secs., Litig.*,
  2021 WL 1560728 (D.N.J. Apr. 20, 2021) ....................................................... *passim*

*In re Exxon Mobil Corp. Sec. Litig.*,
  387 F. Supp. 2d 407 (D.N.J. 2005) ............................................................................3

*Hampshire Cty. Council v. Newell Brands Inc.*,
  837 F. App'x 869 (3d Cir. 2020) .............................................................................12

*Hedick v. The Kraft Heinz Co.*,
  2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ............................................................8

*In re Hertz Global Holdings, Inc.*,
  2017 WL 1536223 (D.N.J. Apr. 27, 2017),
  *aff'd* 905 F.3d 106 (3d Cir. 2018) ...........................................................................13

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
  2021 WL 4191467 (D.N.J. Sept. 15, 2021) ...............................................................5

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007) ..................................................................................5

*In re Leapfrog Inc. Secs. Litig.*,
    237 F. Supp. 3d 943 (N.D. Cal. 2017) ...................................................................8

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
    720 F. Supp. 2d 517 (D.N.J. 2010) ..................................................................................8

*Oregon Laborers Emps Pension Tr. Fund v. Maxar Techs. Inc.*,
    2020 WL 5500458 (D. Colo. Sept. 11, 2020)........................................................8, 9

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013).............................................................................................5

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)...................................................................................................2, 11

*Witriol v. Conextant Sys., Inc.*,
    2006 WL 3511155 (D.N.J. Dec. 4, 2006).......................................................................4

*Zwick Partners, LP v. Quorum Health Corp.*,
    2018 WL 2933406 (M.D. Tenn. Apr. 19, 2018).............................................................8

Defendant Prem Parameswaran ("Parameswaran") respectfully submits this reply memorandum of law in further support of his motion to dismiss Plaintiffs' Third Amended Class Action Complaint ("TAC") (ECF No. 66, the "Motion"), pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

Last year, this Court dismissed the claims against Parameswaran based on all of his alleged misstatements except one. *In re Eros Int'l Plc Secs., Litig.*, 2021 WL 1560728, *16 (D.N.J. Apr. 20, 2021). The Court then granted Plaintiffs leave to cure the deficiencies it recognized in the previous complaint. Yet, even with the benefit of that second opportunity, as set out in the Motion, the TAC still falls woefully short of meeting the heightened pleading standards of Rule 9(b) and the PSLRA. Indeed, Plaintiffs' Opposition, which rehashes arguments the Court has already addressed and rejected—and arguments with no support in the law—confirms that Parameswaran's involvement in this case should come to an end.

Plaintiffs do not dispute the thrust of Parameswaran's arguments. As the Motion makes clear, *all* of the issues that give rise to Plaintiffs' alleged securities fraud claims arise from one or more subsidiaries of the Company, including Eros International Media Limited ("EIML"), which has an entirely different CFO and financial reporting team. Parameswaran never was an officer or employee of EIML or any other subsidiary, and never had any responsibility or day-to-day oversight over their financial reporting. And, Plaintiffs cannot allege scienter based on

---

[1] Capitalized terms not otherwise defined have the meaning set out in the Motion. Citations to "¶¶ __" refer to the corresponding paragraph numbers of Plaintiffs' TAC. Citations to "Opp. at __" refer to Plaintiffs' Omnibus Memorandum of Law in Opposition to the Motions to Dismiss, ECF. No. 7. Citations to Ex. __ refer to the exhibits attached to the Declaration of Stephen W. Tountas in Support of the Motion and the Supplemental Declaration filed herewith.

Parameswaran's accurate and correct incorporation of EIML's separately-audited financial statements into Eros's own.

Recognizing that their allegations fall well short of the PSLRA's heightened pleading standards, Plaintiffs ignore and misquote relevant documents in order to force-fit their speculative narrative that Parameswaran must have had knowledge or oversight of EIML's financial reporting. Plaintiffs further this charade by relying on unreliable confidential witnesses, mischaracterizing Company statements, and misconstruing the applicable accounting principles. As fully explained in the Motion, that type of slapdash pleading is not enough. Accordingly, the TAC's claims against Parameswaran should be dismissed with prejudice.

**ARGUMENT**

**I.     PLAINTIFFS' OPPOSITION CONFIRMS THAT THE TAC FAILS
        TO ALLEGE PARAMESWARAN'S SCIENTER**

The TAC fails to present a "cogent" and "compelling" inference of Parameswaran's scienter, especially when compared to the overwhelming inferences of nonfraudulent intent that must be drawn from the allegations. *Cf. Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). Plaintiffs do not rebut the core of Parameswaran's argument that he was not responsible for or involved in the day-to-day management of the subsidiary most closely associated with the claims in the TAC. Instead, the Opposition confirms that Plaintiffs cannot connect Parameswaran to the alleged misconduct without resorting to unreliable witness testimony and unwarranted leaps of logic about Parameswaran's actions at the Company.

**A.     Plaintiffs Do Not Rebut That Parameswaran Had No Involvement In The
         Accounting And Financial Reporting Of EIML**

Despite referencing the topic repeatedly in their Opposition, Plaintiffs do not contest the thrust of Parameswaran's Motion—that he was not involved whatsoever with the financial reporting of EIML nor any other Eros subsidiary. This is fatal to Plaintiffs' claims. As

explained in Parameswaran's Motion, EIML is a subsidiary responsible for acquiring film and content rights for Eros, which are then distributed to other subsidiaries for marketing and distribution globally. *See* Motion at 3-4. Plaintiffs do not contest that EIML has separately-prepared and separately-audited financial statements, signed by the CEO and CFO *of EIML*, that are consolidated into Eros's own financial statements. Motion at 3-4. Plaintiffs also do not dispute that Parameswaran (i) was never employed by EIML; (ii) never had any responsibility over EIML's financial reporting or day-to-day management; (iii) never had any involvement in preparing EIML's financial statements; and (iv) never had any role in the independent audits of EIML. These facts also are true for all of Eros's other operating subsidiaries.

Instead, Plaintiffs' Opposition resorts back to meritless and legally insufficient speculation that, solely by virtue of his position *at Eros*, Parameswaran must have been aware of financial difficulties at Eros's subsidiaries. Opp. at 18, 25-28, 41. This is not enough to plead scienter. *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 430 (D.N.J. 2005) ("[A]llegations that a defendant, by virtue of his position within a company, must have known about the alleged fraud have been deemed conclusory and inadequate to withstand Rule 9(b) scrutiny and the heightened pleading requirements of the PSLRA.").[2] Absent any well-pled facts

---

[2] Plaintiffs' Opposition implies that Parameswaran's SOX certifications admit he is responsible for EIML. *See* Opp. at 9, 48. This is incorrect. The SOX certifications are limited in scope and confirm only that Parameswaran was responsible for "establishing and maintaining disclosure controls and procedures and internal control[s] over [Eros's] financial reporting," and that "based on [his] knowledge" gained from those controls and reporting practices, the "information included in th[e] reports" were true. *E.g.*, TAC ¶¶ 226-27. Plaintiffs do not explain how Parameswaran would have known that EIML's, or any other subsidiary's, controls purportedly were deficient. Simply signing a SOX certification, absent specific allegations that the signer knew then that the controls were insufficient, is not evidence of scienter. *See In re Campbell Soup Co. Secs. Litig.*, 2020 WL 7022655, at *9 (D.N.J. Nov. 30, 2020).

that Parameswaran knew about the issues underlying Plaintiffs' claims, or specific information that Plaintiffs can demonstrate he reviewed, these allegations do not pass muster.

Tellingly, Plaintiffs do not address or contest Judge McNulty's decision in *BT Group*, which was affirmed by the Third Circuit. *See Christian v. BT Group Plc*, 2020 WL 1969941, at *6 (D.N.J. Apr. 24, 2020) (dismissing allegations that company executives must have been aware of misconduct at a foreign subsidiary based on their position, internal investigations, and public reporting about the misconduct), *aff'd sub nom. Pamcah-UA Loc. 675 Pension Fund v. BT Grp. Plc,* 2021 WL 3415060, at *2 (3d Cir. Aug. 5, 2021).[3]  Further, just as Plaintiffs attempt to do here with gossip articles and other unreliable sources of information that they do not allege Parameswaran ever saw or reviewed, simply pleading the existence of articles or other information "establish[es], at most, negligence—not scienter" if the plaintiffs are unable to "allege that Defendants ever accessed or reviewed the [] article[s] or the information cited in [them]. *Id.* at *6.

Nor do Plaintiffs make any argument to show that Parameswaran had a motive to commit fraud.  Plaintiffs do not attempt to show that Parameswaran participated in the alleged self-dealing scheme by the Lulla family or that Parameswaran had any financial motivation to commit fraud.  *See* Motion at 8.  In their Opposition, Plaintiffs raise for the first time that Parameswaran may have been motivated to facilitate the Eros-STX merger transaction. Opp. at 49-50.  But absent any specific allegations about how the transaction would benefit Parameswaran personally, which the TAC entirely lacks, this belated alleged motive does not establish scienter.  *Witriol v. Conextant Sys., Inc.*, 2006 WL 3511155, at *5-6 (D.N.J. Dec. 4,

---

[3] Plaintiffs appear to have abandoned their argument that scienter can be inferred based on Parameswaran's removal from the Eros website, and instead appear to accept his representation that he continues to work at Eros today.  *See* Motion at 18; Opp. at 8 n.5.

2006) ("[C]ompany managers commonly reap substantial personal gains from mergers, and this says nothing about scienter for fraud.").

### B.     Plaintiffs' Confidential Witnesses Must Once Again Be Discounted

Plaintiffs also imply that Parameswaran must have possessed knowledge of the falsity of his statements based on the testimony of unreliable confidential witnesses that the Court has already rejected once before. *In re Eros,* 2021 WL 1560728, at \*13.  But the TAC fails to rehabilitate their alleged witnesses by pleading additional facts and providing context for their purported knowledge.  Without more, the TAC again comes up short and fails to describe the witnesses "with sufficient particularity to support the probability that a person in the position occupied by the [confidential] source would possess the information alleged." *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 290 (D.N.J. 2007).

For example, even after the Court severely discounted CW 7's testimony in connection with the previous motion to dismiss, Plaintiffs still fail to allege facts detailing how CW 7, an alleged credit manager at Bank of Baroda and the only witness who mentions Parameswaran, learned the information he purports to testify about. *See In re Eros*, 2021 WL 1560728, at \*12-13.  And Plaintiffs ignore CW 7's facial unreliability when he says that Parameswaran received notices "at EIML," where he never worked.  *See* Motion at 2, 10; TAC ¶¶ 170-71.  Plaintiffs urge the Court to ignore its duty to independently evaluate the witnesses and instead to rely on Plaintiffs' say-so that CW 7's testimony "is all within the sphere of what a credit manager would know." *See* Opp. at 41 n.44.  Plaintiffs' Opposition thus compels the conclusion that CW 7 learned his purported information second- or third-hand.  This is not enough to satisfy the PSLRA's high pleading standard.  *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 245 (3d Cir. 2013) (discounting allegations of confidential witnesses who had no "personal knowledge").

Moreover, Plaintiffs continue to gloss over the fact that CW 7's testimony directly conflicts with CW 6, who claims that two different people at EIML—and not Parameswaran—received the loan delinquency notices on which Plaintiffs rely. *See* Motion at 10. These contradictions further undermine the witnesses' testimony and reliability. *See Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 2021 WL 4191467, at \*18 n.32 (D.N.J. Sept. 15, 2021) ("These obvious contradictions call into question the reliability of Plaintiff's witnesses." (citing *Tellabs*, 551 U.S. at 320-21)).

The other alleged witnesses suffer from the same deficiencies, as stated in the Motion. In short, Plaintiffs have done nothing to change the Court's previous conclusion that "[n]one of [Plaintiffs'] witnesses . . . provide sufficient details to support their allegations" and that "none of [the] confidential witnesses' allegations (standing alone or in combination) are sufficient to establish that any of the Individual Defendants had knowledge that contradicted the[ir] statements . . . ." *In re Eros,* 2021 WL 1560728, at \*12-13.

### C.   Plaintiffs Fail to Allege Scienter in Connection With Parameswaran's Impairment-Related Statements

Plaintiffs' Opposition also confirms that the TAC, like the previous complaint, does not adequately raise a strong inference of scienter in connection with Parameswaran's impairment-related statements. *See In re Eros*, 2021 WL1560728, at \*13. Plaintiffs' claims that Eros should have taken an impairment earlier rests exclusively on Plaintiffs' erroneous assertion that two "indicators" of impairment existed before and throughout the Class Period and mandated an earlier impairment charge. *See* Motion at 17. But, even if Plaintiffs were correct about the two indicators (which they are not), they have not alleged that their hypothetical analyses would have resulted in Eros *taking* an impairment to its intangible assets before 2019. Without that

6

information, Plaintiffs still have not established that Parameswaran intentionally or recklessly disregarded the purported need to impair Eros's assets years earlier.

Specifically, Plaintiffs still fail to establish that all of the relevant indicators of impairment existed before 2019 and that Parameswaran intentionally or recklessly disregarded them. *See* Motion at 16-17. As a result, Plaintiffs still have not shown that any impairment analysis was required before 2019.

But even if indicators of impairment existed and prompted a full analysis, Plaintiffs fail to link those indicators to the need to actually write down the value of any of Eros's assets. Plaintiffs' exclusive focus on only two indicators is a strawman that ignores the public statements describing the real reasons Eros took impairment charges in 2019 and 2020.[4] Specifically, the Company stated that the impairments were caused in 2019 by a "high discount rate . . . and changes in the market conditions, including lower projected volume when compared to prior year/s," and in 2020 by "changes in the market conditions, including lower projected volume when compared to prior year/s on account of ongoing global pandemic." *See* Ex. 2 at F-13; Ex. 1 at F-15. Plaintiffs make no effort in the TAC or Opposition to show that these factors, or any others, would have militated an impairment charge before 2019. Thus, Plaintiffs fail to identify exactly what Parameswaran is alleged to have intentionally or recklessly misrepresented to the public because they cannot show that an impairment needed to be taken earlier.

---

[4] The two indicators upon which Plaintiffs rest their claims are "carrying the value of net assets of the group exceeding our market capitalization and expenditure towards the purchase of content and film rights exceeding the positive cash flow from operations." Opp. at 6, 11-12, 22. Even if the Court holds that Plaintiffs could, in theory, allege that an impairment should have been taken before 2019 based only on these indicators, Plaintiffs' allegations are insufficient. Parameswaran incorporates the arguments in Section I.B of the Company's Reply on this point.

At bottom, Plaintiffs' Opposition rests on the flimsy assertion that, in hindsight, Parameswaran should have done something differently. That is not enough to allege fraud. For one, Plaintiffs ignore that Eros's financial statements confirm that an impairment analysis is performed every year, that the decision whether to take an impairment charge is part of the audit process, and that 2019 and 2020 impairments (and decisions not to take impairments earlier) were evaluated and approved by Eros's independent external auditors at Grant Thornton. *See, e.g.*, Ex. 1 at 24, 34, F-2. The law is clear that these types of securities fraud claims are nonactionable fraud-by-hindsight unless the plaintiff can point to "more" contemporaneous specific information the speaker had which contradicts his statements. *See, e.g.*, *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.,* 720 F. Supp. 2d 517, 558 (D.N.J. 2010).[5] Indeed, even the case law cited by Plaintiffs confirms that a plaintiff must show "specific facts" to illustrate that a defendant's assets should have been impaired earlier. *Oregon Laborers Emps Pension Tr. Fund v. Maxar Techs. Inc.*, 2020 WL 5500458, at *12 (D. Colo. Sept. 11, 2020) (cited at Opp. at 23, 28, 32) (requiring "specific facts concerning [the defendant's] underlying financial conditions"); *Dudley v. Haub*, 2013 WL 1845519, at *12 (D.N.J. Apr. 30, 2013) (cited at Opp. at 32) (requiring "contemporaneous circumstances in each relevant quarter showing that Pathmark's goodwill was impaired").[6]

---

[5] Plaintiffs' argument that these cases deal with impairments to goodwill and not to other kinds of assets is of no moment. *See* Opp. at 28. Indeed, several of the cases Plaintiffs cite, including the three cases they cite most often in connection with the impairment charge, concern goodwill impairments, which are analyzed like impairments to other classes of assets. *See Hedick v. The Kraft Heinz Co.*, 2021 WL 3566602, at *9, 22 (N.D. Ill. Aug. 11, 2021) (impairment to goodwill and intangible asset impairments analyzed together); *Zwick Partners, LP v. Quorum Health Corp.*, 2018 WL 2933406, at *6 (M.D. Tenn. Apr. 19, 2018) (analyzing goodwill and "long-lived assets" together); *Dudley*, 2013 WL 1845519, at *12 (goodwill impairment).

[6] Plaintiffs cite *In re Leapfrog Inc. Securities Litigation* for the proposition that the existence of indicators of impairment earlier are sufficient to allege scienter in relation to impairment-related claims. 237 F. Supp. 3d 943, 953 (N.D. Cal. 2017). However, *Leapfrog* actually supports

At best, Plaintiffs rely on a short seller's opportunistic and unreliable report and several articles from Bollywood-focused gossip websites, and do not allege that Parameswaran ever saw or reviewed either. *See* Motion at 11-12. Without allegations that Parameswaran "ever accessed or reviewed" these sources or the information cited in them, "these speculative claims establish, at most, negligence—not scienter." *BT Group Plc*, 2020 WL 1969941, at *6, *aff'd,* 2021 WL 3415060.[7] Thus, despite a second attempt to substantiate their claims, Plaintiffs have still failed to raise a strong inference of scienter with respect to Parameswaran's impairment statements.[8]

## D.   Plaintiffs Also Have Not Alleged Scienter In Connection With Any Of The Other Alleged Misstatements

Plaintiffs' Opposition also confirms that the TAC lacks a single piece of contemporaneous information from which the Court can infer Parameswaran's scienter based on his knowledge of contrary facts.

First, as to Parameswaran's statements about Eros's financial condition, scienter is foreclosed because Parameswaran was not involved in the management or financial reporting of EIML. Indeed, Plaintiffs' claims focus on Eros's content library, which they have already

---

Parameswaran's point. The *Leapfrog* court refused to find that the impairment in that case should have taken place on an earlier date because the existence of a triggering event, "does not mean that it was obvious that those triggering events would more likely than not reduce the fair value of a reporting unit below its carrying amount." *Id*. at 951. Here, Plaintiffs have made no showing that such a reduction would have occurred.

[7] Plaintiffs' response that the need to take an impairment was "obvious" fails for the same reasons. *See* Opp. at 25-28. Namely, it still does not provide "specific facts" regarding the need for an impairment that are required for liability. *Maxar Techs.*, 2020 WL 5500458, at *12.

[8] Plaintiffs also attempt to throw Parameswaran's lack of scienter into doubt by claiming that the impairment charge in 2019 was not mirrored at EIML. *See* Opp. at 4. Not so. As Eros's 2019 Annual Report makes clear, the impairment charge was largely reflected in the intangible assets held by Eros's UAE subsidiary Eros Worldwide FZ-LLC, the consolidated subsidiary under Eros that holds Eros's interest in EIML and other content acquisition and development subsidiaries. *See* Ex. 2 at 59, F-24.

9

admitted in the TAC are the responsibility of EIML. *See* TAC ¶ 63. Plaintiffs cannot point to any other source of information to which Parameswaran had access. As noted above, the articles and short seller report to which Plaintiffs point are in no way connected with Parameswaran and Plaintiffs do not attempt to draw that link.

Second, as to Eros's allegedly false revenue figures from the consolidation of its separately-audited subsidiaries, Plaintiffs have failed to allege a strong inference of scienter since Parameswaran was never employed by EIML (or any other Eros subsidiary), and had no responsibility over their financial reporting or day-to-day management. In the public filings describing the investigation into Eros's revenue, the Company makes clear that the investigation is concerned with accounting practices and controls at "Eros subsidiaries." *See* Ex. 13 at 5; Ex. 14 at 4. Plaintiffs misconstrue this language and instead imply that the investigation concerns Eros's conduct directly. *See* Opp. at 49. The plain language of the relevant disclosures says otherwise.[9] And because Parameswaran was never an officer or employee of EIML or any other subsidiary, never had any responsibility or day-to-day oversight of their financial reporting, and never participated in EIML's separate financial audit, Plaintiffs cannot and do not allege facts to link Parameswaran to any Eros subsidiaries.

Third, as to Parameswaran's statements concerning Eros's cooperation with CARE, Plaintiffs point to no contemporaneous information that provides any basis that Parameswaran misrepresented Eros's cooperation with CARE. Indeed, as stated in the Motion and below,

---

[9] Plaintiffs also conduct a tortured reading of the filings to make their point. *See* Opp. at 5. Specifically, Plaintiffs read Eros's reference to "its Eros subsidiaries" following Eros's merger with STX to mean "Eros and its subsidiaries." This ignores that the Eros-STX merger was structured such that STX was merged into a subsidiary of Eros, *see* Ex. 1 at 5, and was structured as a "merger of equals." *See* Exs. 16, 17. Thus, any reading that implies pre-merger Eros was somehow "acquired" by STX or that insists Eros was a subsidiary to STX in the combined company ignores the plain language of the merger documents and the nature of the transaction.

Plaintiffs' only purported contrary information—a statement by CARE more than a year later—does nothing to rebut Parameswaran's accurate statements about CARE a year earlier, and certainly does not suggest that Parameswaran deliberately or recklessly ignored the information. *See infra* at Section II.B; Motion at 23.

## II.   PLAINTIFFS HAVE FAILED TO ALLEGE ANY ACTIONABLE MISSTATEMENTS

While the Court can dispose of this case on scienter grounds, if necessary, the Court should also reject Plaintiffs' arguments regarding falsity, as the Opposition does nothing to show that Parameswaran made any actionable misstatements.

### A.   Statements Related To The Impairment of Eros's Assets

As discussed above, Plaintiffs do not show that an impairment to Eros's intangible assets should have been taken before 2019.  This Court has already ruled that Parameswaran's statements about the impairments only would be actionable if they "are not honestly believed and lack a reasonable basis."  *In re Eros*, 2021 WL 1560728, at \*8 (citing *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014)).  Because Plaintiffs failed to allege any facts to show that Eros's assets actually should have been impaired before 2019, they cannot establish that Parameswaran, at that time, did not honestly believe his public statements or that he lacked a reasonable basis for them.

Recognizing the futility of this argument, Plaintiffs baldly assert that it is ***Defendants'*** burden to provide information to refute Plaintiffs' assertion that an earlier impairment charge was required and that, absent that proof, the case must proceed to discovery.  *See* Opp. at 11 n.10, 24 n.12.  To the contrary, it is Plaintiffs who must plead "with particularity both the facts

constituting the alleged violation, and the facts evidencing scienter." *Tellabs*, 551 U.S. at 313.

Their failure to do so requires the dismissal of these claims.[10]

### B.    Statements Regarding CARE Ratings

Similarly, Plaintiffs' Opposition provides no basis to find that Parameswaran's statements related to CARE were false.  Plaintiffs first attempt to allege falsity by pointing to CW 5 who, as described above and in the Motion, is unreliable and should not be credited.  Then, Plaintiffs incredibly point to a statement by CARE more than a year after Parameswaran's last relevant statement as the supposed proof that Parameswaran's statements were false.  *See* Motion at 23; Opp. at 38.  This Court already has ruled that "statements and events that occurred a year later fail to demonstrate that earlier statements were false when made." *In re Eros,* 2021 WL 1560728, at *10; *see also Hampshire Cty. Council v. Newell Brands Inc.*, 837 F. App'x 869, 875 (3d Cir. 2020) ("In alleging falsity, a plaintiff cannot rely on 'conjecture based on subsequent events,' but should instead cite contemporaneous sources" (quoting *Williams v. Globus Med., Inc.*, 869 F.3d 235, 244 (3d Cir. 2017)).

---

[10] Even if the Court finds that some of the impairment statements are actionable, at least two statements must be dismissed.  In their Opposition, Plaintiffs also stand by their allegation that Parameswaran made the statements in ¶ 296 (specifically, the second "That's right") and ¶ 308 (specifically the "question and answer" statement) of the TAC.  Indeed, despite Parameswaran noting that these statements were misattributed in his Motion, *see* Motion at 24, n.21, Plaintiffs repeatedly reference the first statement as evidence that Parameswaran agreed with an analyst's remarks that the "value" of Eros's intangible film content was "still there," and that Parameswaran was acknowledging that the Company did not follow standard accounting principles.  *See* Opp. at 19-20.  But, Parameswaran did not make that statement—a different participant did—and a review of the audio of the July 15, 2019 earnings call in question confirms that.  The same is true of the statements in Paragraph 308 from the October 8, 2019 earnings call.  Copies of the recordings of these calls are attached as Exhibits 18 and 19 to the Tountas Declaration, respectively.  The relevant exchanges begin at approximately 15:30 in Exhibit 18 and 13:30 in Exhibit 19.  Because Plaintiffs have incorrectly pleaded these statements against Parameswaran, the claims based on them must be dismissed.

C.    **Statements Regarding Eros's Financial Condition**

Plaintiffs also fail to adequately respond to Parameswaran's arguments regarding his statements about Eros's financial condition (*e.g.*, describing Eros's balance sheet as "conservative," "healthy," and "strong," and noting that the company was "well-capitalized"). Despite the litany of new authorities Parameswaran provided which hold that such statements are non-actionable puffery, Plaintiffs offer only a half-hearted response. *See* Motion at 19-21, Opp. at 35-36.  Their only attempted rejoinder—relegated to a single footnote—misreads the cases Parameswaran cites.

Specifically, Plaintiffs claim that in all of the cases Parameswaran cites, the plaintiffs do not challenge the financial figures and statements underlying the non-actionable puffery statements.  This simply is not true.  For example, in *In re Hertz Global Holdings, Inc.*, the plaintiffs attempted to challenge both the financial statements of the defendant company and a multitude of statements where executives described "strong" and "record" financial results. 2017 WL 1536223, at *10 (D.N.J. Apr. 27, 2017).  The court nevertheless dismissed claims based on those statements as puffery, despite the challenge to the underlying financial statements, and the Third Circuit affirmed the decision in a published, precedential decision.  *Id.* at *11, *aff'd* 905 F.3d 106 (3d Cir. 2018).  Similarly, Plaintiffs misread or ignore the details of *In re Cognizant Technology Solutions Corp. Securities Litigation*, 2018 WL 3772675 (D.N.J. Aug. 8, 2018) (cited at Opp. at 36 n. 38).  There, while the court held that certain puffery statements made by one defendant were unrelated to the misconduct alleged in the plaintiff's complaint, statements by other defendants were directly related it, and the claims based on them were nonetheless dismissed.  *Id.* at *24.

These cases, and the others cited in the Motion, are not the outliers Plaintiffs would like them to be.  In fact, since Parameswaran's Motion was filed less than two months ago, yet

13

another court has ruled that an executive's statements about "strong financial performance" were non-actionable puffery despite the plaintiff's challenge to the financial figures underlying those statements. *See Bldg. Trades Pension Fund of W. Pennsylvania v. Insperity, Inc.*, 2022 WL 784017, at \*12 (S.D.N.Y. Mar. 15, 2022). And this Court, just last year, dismissed alleged misstatements that were simply optimistic executive-speak that did not require an executive to disclose anything further about undisclosed risks. *In re Aurora Cannabis, Inc. Sec. Litig.*, 2021 WL 2821167, at \*11-13 (D.N.J. July 6, 2021) (Vasquez, J.).[11]

## III.   PLAINTIFFS FAIL TO ALLEGE A CLAIM FOR CONTROL PERSON LIABILITY UNDER SECTION 20(a)

As set forth in Parameswaran's Motion, Plaintiffs have not established that Parameswaran "culpably participated" in the alleged fraud at Eros, especially since Plaintiffs do not meaningfully contest that Parameswaran 1) never was an officer or employee of EIML or any other Eros subsidiary, 2) never had any responsibility or day-to-day oversight of EIML's financial reporting, and 3) never contributed to the Lulla family's alleged self-dealing scheme. Plaintiffs' Opposition does not contest those facts or explain why Parameswaran otherwise had any control over the alleged fraud at Eros.[12]

---

[11] In their Opposition, Plaintiffs appear to abandon their claim that Parameswaran's signing of certifications pursuant to the Sarbanes-Oxley Act is itself an actionable misstatement. *Compare, e.g.*, TAC ¶¶ 227-29 *with* Opp. at 50-51. Yet, any such argument would be futile for the reasons expressed in Parameswaran's Motion and in the Court's previous dismissal order, namely that Plaintiffs still have failed to allege facts showing that Parameswaran "consciously avoided any meaningful exposure to the information that was rendering their Sarbanes-Oxley certification erroneous." *In re Eros,* 2021 WL 1560728, at \*9 (quoting *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.,* 686 F. Supp. 2d 404, 417-18 (D. Del. 2009)).

[12] Parameswaran adopts the loss causation arguments in the Company's Reply.

14

## CONCLUSION

For these reasons and those set out in the Motion, Parameswaran respectfully requests that the Court dismiss, with prejudice, each of the claims asserted against him.

Dated:    April 29, 2022                    Respectfully submitted,


_/s/ Stephen W. Tountas_
Stephen W. Tountas
**KASOWITZ BENSON TORRES LLP**
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel.: (973) 645-9462
Fax: (973) 643-2030
stountas@kasowitz.com

-and-

Andrew L. Schwartz
Claiborne R. Hane
Andrew W. Breland
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1969
Fax: (212) 500-3469
aschwartz@kasowitz.com
chane@kasowitz.com
abreland@kasowitz.com

*Counsel for Defendant Prem Parameswaran*

15