**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

IN RE EROS INTERNATIONAL PLC
SECURITIES LITIGATION

---

Civil Action No. 19-cv-14125
(JMV)(JAD)


**ORAL ARGUMENT REQUESTED**

Motion Return Date: May 16, 2022

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS EROS
INTERNATIONAL PLC, KISHORE LULLA, AND ANDREW WARREN'S
<u>MOTION TO DISMISS THE THIRD AMENDED COMPLAINT</u>**

LEVINE LEE LLP

Kenneth E. Lee
Scott B. Klugman
Chad P. Albert
5 Columbus Circle, 11th Floor
New York, New York 10019
(212) 223-4400
klee@levinelee.com
sklugman@levinelee.com
calbert@levinelee.com

*Attorneys for Defendants Eros
International Plc, Kishore Lulla, and
Andrew Warren*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................... 2

I.  PLAINTIFFS' ALLEGATIONS DO NOT SUPPORT A STRONG INFERENCE OF
    SCIENTER ............................................................................................................ 2

    A.  Plaintiffs' Confidential Witness Allegations Remain Deficient ............................ 2

    B.  Plaintiffs' Impairment Allegations Remain Deficient ........................................... 4

    C.  Plaintiffs' Other Allegations Do Not Strongly Support Scienter ........................... 7

II.  PLAINTIFFS HAVE NOT ALLEGED MATERIAL MISREPRESENTATIONS ......... 10

    A.  Alleged Misstatements Concerning CARE ........................................................... 10

    B.  Alleged Misstatements Concerning Internal Controls And SOX Certifications .. 11

    C.  Alleged Misstatements Concerning Intangible Assets And Impairment Charges 12

    D.  Alleged Misstatements Concerning Eros's Financial Profile ............................... 13

    E.  Alleged Misstatements Concerning The Merger ................................................... 13

    F.  Alleged Misstatements Concerning Trade Receivables ....................................... 14

III.  PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION .................................................... 14

IV.  PLAINTIFFS' SECTION 20(A) CLAIMS MUST BE DISMISSED ............................. 15

CONCLUSION................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bartesch v. Cook*,
   941 F. Supp. 2d 501 (D. Del. 2013) ................................................................................. 5, 12

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004) ................................................................................................ 10

*Castlerock Mgmt. Ltd. v. Ultralife Batteries, Inc.*,
   68 F. Supp. 2d 480 (D.N.J. 1999)...................................................................................... 1, 7

*City of Omaha v. CBS Corp.*,
   2011 WL 2119734 (S.D.N.Y. May 24, 2011) ..................................................................... 5

*Derensis v. Coopers & Lybrand Chartered Accountants*,
   930 F. Supp. 1003 (D.N.J. 1996)........................................................................................ 15

*Duran v. Equifirst Corp.*,
   2010 WL 918444 (D.N.J. Mar. 12, 2010) ........................................................................ 12

*Fan v. StonMor Partners LP*,
   927 F.3d 710 (3d Cir. 2019) .............................................................................................. 13

*In re Advanta Sec. Litig.*,
   180 F.3d 525 (3d Cir. 1999) ................................................................................................ 9

*In re Aetna, Inc. Sec. Litig.*,
   617 F.3d 272 (3d Cir. 2010) .............................................................................................. 14

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   381 F. Supp. 2d 192 (S.D.N.Y. 2004) ................................................................................. 8

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
   324 F. Supp. 2d 474 (S.D.N.Y. 2004) ............................................................................... 14

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
   2018 WL 3772675 (D.N.J. Aug. 8, 2018) ......................................................................... 12

*In re Exxon Mobil Corp. Sec. Litig.*,
   387 F. Supp. 2d 407 (D.N.J. 2005)......................................................................... 1, 2, 4, 6

*In re Fleming Cos. Inc. Sec. & Derivative Litig.*,
   2004 WL 5278716 (E.D. Tex. June 16, 2004) .................................................................. 15

Case 2:19-cv-14125-ES-JSA   Document 72   Filed 04/29/22   Page 4 of 20 PageID: 3804

*In re Hertz Glob. Holdings Inc.*,
  905 F.3d 106 (3d Cir. 2018) .................................................................................. 2, 10

*In re ICN Pharm., Inc. Sec. Litig.*,
  299 F. Supp. 2d 1055 (C.D. Cal. 2004) ...................................................................... 6

*In re Leapfrog Enter., Inc. Sec. Litig.*,
  237 F. Supp. 3d 943 (N.D. Cal. 2017) ...................................................................... 13

*In re NAHC, Inc. Sec. Litig.*,
  306 F.3d 1314 (3d Cir. 2002) ...................................................................................... 7

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006) ........................................................................................ 9

*In re Toronto-Dominion Bank Sec. Litig.*,
  2018 WL 6381882 (D.N.J. Dec. 6, 2018) ................................................................. 15

*In re Urban Outfitters, Inc. Sec. Litig.*,
  103 F. Supp. 3d 635 (E.D. Pa. 2015) ....................................................................... 10

*In re Veeco Instruments, Inc. Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. 2006) ................................................................................ 9

*Kaltman v. Key Energy Servs., Inc.*,
  447 F. Supp. 2d 648 (W.D. Tex. 2006) .................................................................... 15

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp., Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010) ............................................................................ 4

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000) ........................................................................................ 9

*Tracinda Corp. v. DaimlerChrysler AG*,
  197 F. Supp. 2d 42 (D. Del. 2002) ............................................................................. 3

Defendants Eros International PLC, Kishore Lulla, and Andrew Warren respectfully submit this reply memorandum of law in support of their Motion to Dismiss (Dkt. No. 67).[1]

## PRELIMINARY STATEMENT

In the Opinion, this Court dismissed the vast majority of Plaintiffs' Original Complaint, while granting Plaintiffs an opportunity to replead to "cure[] the deficiencies" identified in its Opinion. (Op. at 35). As set forth in the MTD, the TAC suffers from the same fundamental deficiencies already identified by the Court. The central premise of Plaintiffs' Opposition (Dkt. No. 70 ("Opp.")) is that Eros's recent financial challenges and impairments "vindicated" Plaintiffs' speculative allegations regarding Eros's earlier wrongdoing. (Opp. at 1.) But such fraud-by-hindsight allegations are insufficient, and Plaintiffs continue to fail to allege with specificity any "contemporaneous" facts demonstrating that Defendants' statements were false or misleading or made with scienter "at the time of the challenged statements." *Castlerock Mgmt. Ltd. v. Ultralife Batteries, Inc.*, 68 F. Supp. 2d 480, 487–88 (D.N.J. 1999); (*see also* Op. at 20).

The Opposition cannot remedy the TAC's vague confidential witness allegations, which continue to lack the specificity and reliability needed to support a "strong inference" of scienter. Similarly, Plaintiffs' allegations concerning Eros's impairment decisions fall short because they provide no contemporaneous facts demonstrating the "egregious departure from the range of reasonable business decisions" necessary to allege scienter. *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 431 (D.N.J. 2005). Plaintiffs' remaining scattered allegations are likewise insufficient to create a cogent and compelling inference of scienter. Rather, Plaintiffs' allegations, at most, suggest nonactionable "corporate oversight or mismanagement." *Id.*

---

[1] Unless otherwise noted, capitalized terms have the same meaning as in Defendants' opening brief (Dkt. No. 67-1 (the "MTD")). Defendants maintain all positions set forth in the MTD, whether or not they are specifically addressed in reply.

The Opposition also provides no reason for the Court to alter its conclusion with respect to the categories of alleged misstatements, concerning Eros's interactions with CARE and its internal controls, that it already dismissed. With respect to the other categories of alleged misstatements added to the TAC—including those related to Eros's impairment charges and asset balances, financial profile, and merger with STX—the Opposition cannot avoid that those rest on hindsight or constitute nonactionable opinions, and do not meet the standard for a material misstatement.

The Opposition similarly falls short on loss causation: Plaintiffs have not pleaded that the announcement of an Audit Committee investigation resulted in the revelation of any earlier false or misleading statement that contributed to any drop in Eros's stock price. Lastly, the Opposition does not dispute that Plaintiffs' Section 20(a) claims, which are derivative claims, cannot proceed where the Court finds the primary Section 10(b) claims lacking.

The TAC should be dismissed in its entirety and with prejudice, and Plaintiffs should be denied further leave to amend.

## ARGUMENT

I.   **PLAINTIFFS' ALLEGATIONS DO NOT SUPPORT A STRONG INFERENCE OF SCIENTER**

"A complaint adequately pleads a strong inference of scienter 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 114 (3d Cir. 2018). Plaintiffs' scienter allegations, considered collectively, are insufficient.

### A.   **Plaintiffs' Confidential Witness Allegations Remain Deficient**

The Opinion steeply discounted Plaintiffs' vague confidential witness allegations because they lack the "substantial amount of detail" required to plead scienter under the securities laws.

2

(Op. at 26.)  Notwithstanding their arguments to the contrary (Opp. at 39–42), the minimal detail that Plaintiffs added to their confidential witness allegations is insufficient to alter this conclusion.

With respect to Eros's purportedly delayed salary and vendor payments, Plaintiffs' revised CW3 allegations and their allegations from two new confidential witnesses, CW9 and CW10, are insufficiently detailed.  Although CW3, CW 9, and CW 10 assert that employee salaries and vendor payments were often late (TAC ¶¶ 150, 152–55), they fail to aver that Defendants were aware of these delays, which the Court previously identified as the "[c]ritical[]" concern (Op. at 26).  Plaintiffs' attempt to bootstrap these flimsy confidential witness allegations by pointing to loans that Lulla made to the Company and reports in news articles is unsuccessful.  (Opp. at 40.)  Any connection between Lulla's loans and delayed salaries is pure conjecture, and the news articles that purportedly "bolster and confirm the former employee accounts" (*id.*), must themselves be steeply discounted for lack of particularity (*see* MTD at 24–25).[2]

Plaintiffs' confidential witness allegations concerning loan and credit problems fare no better.  As the Court has already recognized, CW6's bare assertions that EIML's impending downgrade was "evident" are plainly insufficient.  (*See* Op. at 26–27.)  Significantly, CW6 does not claim to have interacted with Lulla directly, and beyond citing to his generic "experience as an auditor," does not provide support for his contentions that Lulla was privy to certain information.

---

[2] Plaintiffs' reliance on *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42 (D. Del. 2002) is misplaced.  (Opp. at 40 n.43.)  Whereas the defendants in *Tracinda* took issue with the plaintiffs' reliance on articles from newspapers and periodicals as a general matter, Defendants here take issue with the specific articles relied on by Plaintiffs.  The *Tracinda* court did not (and was not asked to) parse specific articles to determine whether the "facts" stated therein were sufficiently particular and detailed.  For the reasons articulated previously, the third-party articles cited by Plaintiffs do not raise a strong inference of scienter because they are insufficiently detailed or supported.  (*See* MTD at 24–25.)

3

(TAC ¶ 167.)[3] Plaintiffs' allegations from CW7 and CW8 are similarly flawed, as neither witness provides detail sufficient to support their contentions. CW7 asserts, without supporting detail, that Defendants were aware of certain things, (*see id.* ¶ 170 (stating, without detail, that "Parameswaran and the Lullas were notified" of loan penalties); *id.* ¶ 171 (similar)), and CW8 merely recites information that he obtained secondhand from Eros insiders, (*see id.* ¶ 174).

### B. Plaintiffs' Impairment Allegations Remain Deficient

The Opinion also found that Plaintiffs' allegations concerning the "circumstances surrounding" Eros's first impairment charge were not indicative of scienter. (Op. at 28–30.) Plaintiffs' attempts to bolster those allegations continue to fall short because they fail to demonstrate that Eros's impairment decisions were an "egregious departure from the range of reasonable business decisions," *Exxon Mobil*, 387 F. Supp. 2d at 431, or any contemporaneous wrongdoing with respect to Eros's accounting judgments.

Plaintiffs' Opposition entirely ignores that, as communicated to investors in Eros's public filings, the decision of whether and when to take an impairment on its film content and other intangible assets involved complex accounting calculations, application of intricate accounting standards, and a great deal of discretion and nuance—all of which was guided and sanctioned by Eros's auditor. (*See, e.g.*, Klugman Supp. Decl. Ex. 1 at F-56 ("The Group is required to identify and assess the useful life of intangible assets . . . Judgment is required in determining this[.]"; "Accounting for the film content requires Management's judgment as it relates to total revenues to be received and costs to be incurred[.]"; "These [impairment] calculations require judgment and estimates to be made[.]"); Klugman Supp. Decl. Ex. 2 at F-58 (similar).) Recognizing this, courts

---

[3] CW6 also states that Lulla was "present" during the audit, "closely monitoring the balance sheets of EIML's subsidiaries," and "in touch" with Mr. Koria, one of CW6's managers. (TAC ¶ 166.) These allegations lack the requisite level of detail and must therefore be discounted. *See Nat'l Junior Baseball League v. Pharmanet Dev. Grp., Inc.*, 720 F. Supp. 2d 517, 538–39 (D.N.J. 2010).

routinely show deference to business judgments made in the application of those standards and are highly reluctant to impute knowledge of misconduct based on accounting decisions. *See, e.g.*, *City of Omaha v. CBS Corp.*, 2011 WL 2119734, at \*6 (S.D.N.Y. May 24, 2011) (stating that GAAP "tolerate[s] a range of reasonable treatments, leaving the choice among the alternatives to management") (quotation marks omitted). This is so even where the amount of the ultimate impairment is large. *See, e.g.*, *Bartesch v. Cook*, 941 F. Supp. 2d 501, 511–12 (D. Del. 2013) (rejecting claim about failure to take large impairment sooner because company's "impairment analysis inherently involved business judgment").

Attempting nonetheless to challenge such judgments, Plaintiffs lean heavily on their own crude calculations that purportedly show that it was "obvious" that Eros should have recorded an impairment earlier than 2019 because, among other things, the carrying value of Eros's ***total net assets*** exceeded Eros's market capitalization in most quarters in 2017 and 2018. (*See* Opp. 23–24; TAC ¶ 189.) These bright-line calculations, while obfuscating the inherent judgment required in an impairment analysis as disclosed in Eros's filings,[4] are also overly simplistic and untethered to how Eros disclosed that it conducted its impairment calculations. (*See, e.g.*, Klugman Supp. Decl. Ex. 1 at F-13 ("The asset or Cash Generating Unit [] is impaired if its carrying amount exceeds its recoverable amount. The recoverable amount is defined as the higher of the 'fair value less cost of disposal' [] and the value in use'. . . Value in use was determined based on future cash flows after considering current economic conditions and trends, estimated future operating results, growth rates and anticipated future economic conditions."); Klugman Supp. Decl. Ex. 2 at F-14

---

[4] Although Defendants, at a high level, disclosed that the first impairment was motivated in part by a "significant decline" in market value and involved an analysis of the carrying value of net assets, the Company's market capitalization, expenditures for film and content rights, and positive cash flows (*see* TAC ¶ 117), such disclosure did not provide a bright-line test for impairment or supplant Eros's detailed disclosures on the complexity and subjectivity of an impairment analysis.

(similar).)[5]  At base, Plaintiffs have not pleaded that their own impairment calculations are an appropriate stand-in for Eros's impairment analyses, or that Eros's description of its impairment methodology in its public filings was false in any way (or disregarded by Eros).

But even if Plaintiffs sufficiently alleged that an impairment should have been recorded earlier, "Plaintiffs' allegations regarding Defendants' improper failure to record . . . impairments . . . would not demonstrate an 'extreme departure' from the standards of ordinary care" necessary for scienter, as opposed to "simple corporate oversight or mismanagement." *Exxon Mobil*, 387 F. Supp. 2d at 431.  Confronted with a lack of any "detailed evidence of the contemporaneous decision-making behind [any] alleged accounting errors that would . . . show the required scienter," *In re ICN Pharm., Inc. Sec. Litig.*, 299 F. Supp. 2d 1055, 1065 (C.D. Cal. 2004), Plaintiffs' primary response is that "scienter does not require a 'smoking gun'" (Opp. at 27), and that "[t]his level of impairment did not arise unexpectedly or virtually over-night" (*id.* at 4).  But Plaintiffs fail to provide, as they must, *any* "facts contemporaneous to the" accounting decisions or disclosures demonstrating scienter when those decisions or disclosures were made.  *Castlerock Mgmt.*, 68 F. Supp. 2d at 488.

Absent sufficient allegations demonstrating that Eros knowingly or recklessly failed to earlier record a proper impairment, Plaintiffs are left with a conclusory argument—which this Court already rejected (*see* Op. at 28–30)—that Eros took the impairment because the

---

[5] The data in Paragraph 189 is flawed for multiple other reasons.  For one, Plaintiffs' presentation of so-called "Indicator 2" is misleading.  Notably, because the figures presented are cumulative for each fiscal year (*see* TAC ¶ 189 n.39), Plaintiffs' data table double and triple counts revenue and expenses, which results in exaggerated quarterly operational deficits and suggests that Eros was in the red more frequently than it actually was.  For instance, whereas the table suggests that in Q3 2019, Eros generated less cash from operations than it spent on content and film rights, in reality, during that fiscal quarter, it appears to have generated roughly $5.6 million more than it spent.

"Hindenburg Report" "spotlighted the issues with Eros's balance sheet" and "public scrutiny on Eros reached a tipping point." (Opp. at 28–29.) But such argument is pure speculation, and this Court has already found that the "allegations from the Hindenburg report . . . do not address the Individual Defendants' knowledge" of "misrepresentations regarding Eros' intangible assets." (Op. at 28.) Plaintiffs have not raised an inference of scienter at least as compelling as the opposing inference that the decline in market value itself—not the bad press—drove the impairment testing.

### C.    Plaintiffs' Other Allegations Do Not Strongly Support Scienter

Plaintiffs' remaining scienter allegations, taken individually or in combination, are insufficient to create a cogent and compelling inference of scienter.[6] First, to the extent Plaintiffs seek to rely on the fact that the Company has announced, preliminarily, that FY 2020 revenue may have been improperly recognized (*see* Opp. at 48), they cannot because to do so would be to engage in impermissible fraud-by-hindsight. "To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002). A subsequent statement concerning potentially improper revenue recognition does not move the needle because it fails to suggest that Defendants knew (or recklessly disregarded the fact) that revenue was being improperly recognized *when the allegedly misleading statements were made.*

Second, equally misguided are Plaintiffs' efforts to allege scienter based on (1) Defendants' acknowledgment that the Eros was having difficulties with customer due diligence,[7]

---

[6] Plaintiffs appear to have abandoned their argument that the resignations of members of Eros's management team and its auditor are indicative of scienter as Defendants' arguments are not addressed in Plaintiffs' Opposition. In any event, for the reasons discussed in the MTD, Plaintiffs' allegations concerning resignations are insufficient to support scienter. (MTD at 22–23.)

[7] Plaintiffs contend that in light of this less-than-ideal customer due diligence, "it was, at minimum, extremely reckless to recognize $85.5 million in revenue substantially based on admittedly worthless receivables." (Opp. at 48–49.) But the fact that Defendants may have *subsequently*

(2) Defendants' subsequent disclosures concerning internal control weaknesses, and (3) the Audit Committee investigation itself. (Opp. at 48, 51.) Far from suggesting scienter, candid disclosure regarding difficulties and internal control weaknesses, and the initiation of voluntary internal investigations, weighs *against* an inference of scienter. (*See* MTD at 20–21.) And Plaintiffs' attempts to distinguish the cases that Defendants cite for this proposition are unavailing. (*See* Opp. at 51.) Plaintiffs cannot dispute that these cases stand for the proposition that transparency and disclosure regarding internal control weaknesses can (and here, do) cut against scienter.

Third, Plaintiffs' attempt to infer scienter based on Defendants' routine desire to meet revenue projections also falls flat. As noted in the MTD, all companies strive to meet revenue forecasts. (MTD at 24.) The cases that Plaintiffs cite concerning revenue recognition involve allegations suggesting intentional accounting manipulation, which are entirely absent here. (*See* Opp. at 49 (citing *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 381 F. Supp. 2d 192, 240 (S.D.N.Y. 2004) (allegations that "material amounts of advertising revenue came in at the end of each quarter just in time to permit AOL and AOLTW to hit its advertising revenue targets") and *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 231 (S.D.N.Y. 2006) (allegations that defendants directed confidential witness to book certain accounting adjustments in a particular month "so as to push them into the fourth quarter and 'bury' them with other adjustments").)

Fourth, Plaintiffs seek to infer scienter based on (1) Lulla's and his family's connection to the Company and (2) his disposition of stock. (Opp. at 52.) These arguments miss the mark. That "[t]he Lulla family's success was inextricably intertwined with Eros's success" (*id.*), is an

---

concluded that the receivables were of limited (or no) value in no way suggests that they were aware of this conclusion when the alleged misstatements were made. Further, sub-par customer due diligence is a far cry from a significant revenue recognition problem. Knowledge (or reckless disregard) of the former does not imply knowledge (or reckless disregard) of the latter.

unremarkable proposition that contributes nothing meaningful to the scienter equation. As to Lulla's stock sales, stock sales may support an inference of scienter only if such sales were "unusual in scope or timing." *Oran v. Stafford*, 226 F.3d 275, 290 (3d Cir. 2000) (quoting *In re Advanta Sec. Litig.*, 180 F.3d 525, 540 (3d Cir. 1999)). Here, the stock sales are alleged to have taken place on unknown dates between July 2018 and July 2019 and are untied to any specific events in the TAC.[8] Significantly, Plaintiffs make no allegations concerning Lulla's past practice of selling shares, how much he sold the shares for, what percentage of his compensation stock sales accounted for, or anything else that would shed light on whether these stock sales were "unusual in scope or timing." *Id.*

Moreover, the cases on which Plaintiffs rely involved significant red flags that are not alleged in the TAC. (*See* Opp. at 52 (citing *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 277–78 (3d Cir. 2006) (noting that stock sales were unusual because, among other reasons, (1) defendants had infrequently sold stock in the past, (2) profits from the trades "were substantial in comparison to their overall compensation," and (3) sales occurred shortly before two defendants resigned) and *In re Urban Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 654–55 (E.D. Pa. 2015) (finding stock sales unusual where (1) defendants had not sold shares during the preceding eighteen months, (2) profits from stock sales were "likely excessive compared to [one defendant's] ordinary compensation," and (3) timing of one defendant's sale was "particularly suspicious")).)

---

[8] The best Plaintiffs can muster is to argue that "the [stock] sales took place during the *year* just before the June 2019 credit downgrades and Eros's first massive content impairment." (Opp. at 52 (emphasis added).)

Lastly, Plaintiffs maintain that "SOX certifications of financial statements that contain false or misleading information are indicia of scienter." (Opp. at 50.)[9] But certifications can be probative of scienter only "*when in conjunction with other evidence of* [scienter]." *Urban Outfitters*, 103 F. Supp. 3d at 653 (emphasis added). Here, Plaintiffs have failed to allege that any defendant "knew he was signing a false SEC filing or recklessly disregarded inaccuracies contained in an SEC filing." *Hertz*, 905 F.3d at 118.[10]

## II.    PLAINTIFFS HAVE NOT ALLEGED MATERIAL MISREPRESENTATIONS

To adequately plead the existence of a material misstatement, a plaintiff must "demonstrate *why* Defendants' various [statements] were materially false and misleading." *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 145 (3d Cir. 2004). Despite Plaintiffs' arguments to the contrary, the TAC unsuccessfully repleads the alleged misstatements that have already been dismissed by the Court and fails to plead any new actionable alleged misstatement.

### A.    Alleged Misstatements Concerning CARE

In the Opinion, the Court found that Plaintiffs failed to plead with particularity the falsity of Defendants' statements in 2019 that Eros was working with CARE to restore Eros's credit rating post-downgrade. (Op. at 21–22.) In the TAC, Plaintiffs recycle their old allegations and add new ones. (*See* TAC ¶¶ 164, 283, 284, 289, 291, 308, 311, 315, 319.) But neither their new allegations nor their arguments in opposition to Defendants' motion to dismiss remedy the deficiencies highlighted by the Court. (*See* MTD at 9–10.)

---

[9] In passing, Plaintiffs reference the "serious allegations of evidence spoliation [arising] in response to the Audit Committee investigation." (Opp. at 51 (citing TAC ¶¶ 391–92, 398–400).) These allegations, which appear in a third-party article, must be steeply discounted. (*See* MTD at 24–25.)

[10] As set forth in the MTD, Plaintiffs have also failed to adequately allege scienter even for the three alleged misstatements that survived the initial motion to dismiss. (*See* MTD at 26–27.)

10

First, Plaintiffs attempt to rehabilitate CW5 (Opp. at 37), a "ratings analyst/manager at CARE" (TAC ¶ 162), but that attempt fails.  Because CW5 provides no detail concerning the "couple of times" that Eros came up during his "general discussions among junior employees" even though those discussions are the sole source of his purported knowledge concerning Eros (TAC ¶ 162), his allegations must be discounted.  Second, Plaintiffs try to explain away a clear timing issue by positing that when CARE announced in September 2020 that Eros was "not cooperating," what it really meant was that Eros had not been cooperating in 2019.  (Opp. at 38.) This tortured reading of CARE's statement should be rejected.  Finally, Plaintiffs point to subsequent financial developments and speculate that had Eros actually cooperated with CARE, "the picture would not have looked good and it is not likely that CARE would have restored Eros's rating" and therefore Eros's statements concerning working with CARE must have been false. (*Id.*)  The Court should disregard this as mere speculation.

## B.     Alleged Misstatements Concerning Internal Controls And SOX Certifications

In the Opinion, the Court dismissed Plaintiffs' claim to the extent it rested on alleged misrepresentations concerning Eros's internal controls and SOX certifications.  (Op. at 19–20.) The TAC re-pleads those same alleged misrepresentations and adds similar ones from later dates. (*See* TAC ¶¶ 225–28, 255–58, 301–04, 336–39.)  Plaintiffs do not address these misstatements in their Opposition and thus appear to concede that these standalone misrepresentations are not actionable.[11]  *See Duran v. Equifirst Corp.*, 2010 WL 918444, at *3 (D.N.J. Mar. 12, 2010) ("The absence of argument on this and other issues constitutes waiver, and that waives the individual

---

[11] Notably, the Opposition states that "Defendants actionable false and misleading statements fall into three main categories," and internal controls and SOX certifications are not listed.  (Opp. at 16.)  Moreover, the most detailed discussion of SOX certifications appears in a section labeled "The Individual Defendants' SOX Certifications *Support Scienter*."  (*Id.* at 50 (emphasis added).)

counts themselves."). In any event, these allegations should be dismissed as non-actionable for the reasons set forth in the MTD. (*See* MTD at 10–11); *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2018 WL 3772675, at *25 (D.N.J. Aug. 8, 2018) (dismissal is appropriate where the complaint "does not allege that the disclosure[s] w[ere] based on something other than the recent evaluation of internal controls, and does not allege that [Defendants] had any reason to believe that the statement[s] w[ere] misleading when made").

### C.    Alleged Misstatements Concerning Intangible Assets And Impairment Charges

The TAC's new alleged misstatements concerning Eros's July 2019 and July 2020 impairment charges and purportedly inflated content balances are similarly deficient. In the Opposition, Plaintiffs argue that their allegations that Eros failed to impair its intangible assets earlier than 2019 renders Defendants' statements about their intangible content balances false when made. (Opp. at 18–19.) Plaintiffs continue to base their arguments on their own interpretation of accounting rules and guidance, and, in so doing, ignore that "impairment analys[es] . . . do not involve misstatements or omissions of material fact, but rather a misstatement regarding [Defendants'] opinion," *Bartesch*, 941 F. Supp. 2d at 512 (citation omitted), and that courts routinely dismiss securities fraud claims arising from the determination and timing of when assets should be impaired (*see* MTD at 13–14; *supra* § I.B). This case should be no exception as there are no particularized allegations of undisclosed, company-specific catastrophic financial events or conditions that should have triggered an impairment analysis earlier.[12]

---

[12] For instance, Plaintiffs cite the (out-of-circuit) case *In re Leapfrog Enter., Inc. Sec. Litig.*, 237 F. Supp. 3d 943 (N.D. Cal. 2017) for the proposition that they have alleged falsity as a result of Eros's failure to take an impairment earlier. (Opp. at 19.) But there, the court found that plaintiffs had adequately pleaded that a significant stock decline that was obvious to the defendants had primarily taken place at least a quarter earlier than when defendants took the impairment. *Id.* at 955. Plaintiffs make no similar, non-speculative allegations here. (*See supra* § I.B.)

12

### D.      Alleged Misstatements Concerning Eros's Financial Profile

The TAC's new alleged misstatements concerning Eros's financial profile and financial well-being (*e.g.*, that Eros was "well-capitalized," and that its financials were "strong" and "conservative") are not actionable.  (*See* MTD at 14.)   In the Opposition, Plaintiffs fail to specifically identify why these statements about Eros's financial condition were false or misleading when made notwithstanding the facts, figures, and discussion accompanying them. *Fan v. StonMor Partners LP*, 927 F.3d 710, 717 (3d Cir. 2019) ("Overall, for each category of StoneMor's alleged misstatements, clear and consistent disclosures were made available to investors throughout the Class Period.  As a result, we hold that StoneMor sufficiently disclosed facts and information that render its alleged misrepresentations not misleading.").   Instead, Plaintiffs lament, as a general matter, that Eros's public filings did not disclose (1) late salary and vendor payments, (2) "inflation of Eros's content balances," and (3) "inflated receivables."  (Opp. at 35.)  But this does not render Defendants' financial profile statements—fully supported by facts and figures that Plaintiffs do not (and cannot) allege are false—misleading.

### E.      Alleged Misstatements Concerning The Merger

The TAC's new allegations concerning Defendants' statements about the Eros-STX merger are not actionable.  These statements about ErosSTX's "valuable" library and "leading box office presence" are precisely the sort of statements that courts routinely reject as immaterial and nonactionable.  (*See* MTD at 16); *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 283–84 (3d Cir. 2010). Moreover, the support that Plaintiffs marshal for the proposition that Warren's statements were false falls flat.  Plaintiffs argue that Warren's August 4, 2020 statement about Eros's valuable library was misleading because Eros had recently announced a significant impairment and would announce an intangible content write-down four months later.  (Opp. at 21.)  But a library still has "value" notwithstanding an impairment, and a subsequent write-down, without more, does not

13

render a previous statement misleading when made.  Plaintiffs' argument concerning Warren's November 4, 2020 statements is similarly flawed.  (*See id.* at 22.)  Once again, the December 6, 2020 announcement of a write-down in Eros's content does not suggest that Warren's earlier statements concerning Eros's "high cash flow, high-margin flow-through" library or projected revenue of $800 million for FY 2022 were misleading when made.

### F.      Alleged Misstatements Concerning Trade Receivables

Plaintiffs' allegations concerning Eros's trade receivables balances are likewise deficient. Although Plaintiffs argue that they are entitled to rely on the Audit Committee's preliminary findings to demonstrate falsity because "it is implausible that [the write down and impairments] will not be substantial or that the Audit Committee will change its mind" (Opp. at 46), they ignore the cautionary language in the press release noting that "revenue . . . *may* not have been appropriately recognized" and that the committee "had not yet completed the internal review" (Dkt. No. 67-9 at 3 (emphasis added)).  The Audit Committee's preliminary findings fall short of the unequivocal admissions of inaccurate financials in the (out-of-circuit) cases upon which Plaintiffs rely.  (Opp. at 47.)  The company in *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 487 (S.D.N.Y. 2004), "unambiguously stated that its financial statements . . . were inaccurate" and warned investors that those statements should not be relied upon.  *See also Kaltman v. Key Energy Servs., Inc.*, 447 F. Supp. 2d 648, 658 (W.D. Tex. 2006) (similar); *In re Fleming Cos. Inc. Sec. & Derivative Litig.*, 2004 WL 5278716, at *25 (E.D. Tex. June 16, 2004) (similar).

## III.      PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

In the Opinion, the Court found that Plaintiffs failed to allege loss causation for misrepresentations concerning the reasons for Moody's withdrawal because Plaintiffs failed to identify any corrective disclosure.  (Op. at 33–34.)  Despite Plaintiffs' mischaracterization of

Defendants' position (*see* Opp. at 55), Defendants clearly maintain that Plaintiffs' new allegations have failed to remedy that deficiency (*see* MTD at 27 n.11). And Plaintiffs' argument that subsequent announcements "served as partial corrective disclosures and/or materializations of the previously concealed risks" (Opp. at 54), misses the mark because Plaintiffs have still not identified a subsequent disclosure that suggests that the statements concerning Moody's withdrawal were false or misleading. Plaintiffs' arguments with respect to the two new disclosures, on July 30, 2020 and August 2, 2021, are similarly unavailing. (*See* MTD at 27–28.)

## IV.        PLAINTIFFS' SECTION 20(A) CLAIMS MUST BE DISMISSED

Plaintiffs do not dispute (nor could they) that if the Court finds their § 10(b) claims inadequately pled, it must dismiss their § 20(a) claims as well. (*See* Opp. at 56–57.) Plaintiffs have failed to plead a predicate § 10(b) violation, and their § 20(a) claims against Lulla and Warren must therefore be dismissed. With respect to culpable participation, Plaintiffs acknowledge the divide among district courts as to the pleading requirements but maintain that their culpable participation allegations are sufficient in any event. (*Id.* at 57.) Not so. Assuming the Court finds that culpable participation is a discrete element that must be plead, Plaintiffs' reliance on *Derensis v. Coopers & Lybrand Chartered Accountants*, 930 F. Supp. 1003 (D.N.J. 1996) and *In re Toronto-Dominion Bank Sec. Litig.*, 2018 WL 6381882 (D.N.J. Dec. 6, 2018) is misplaced as those courts conflated the elements of culpable participation and control.

## CONCLUSION

For the reasons stated above and in the MTD, Plaintiffs' Third Amended Complaint should be dismissed with prejudice, as amendment would be futile.

15

Dated: April 29, 2022

Respectfully submitted,

LEVINE LEE LLP

By:   /s/ Scott B. Klugman
          Scott B. Klugman
          Kenneth E. Lee (*pro hac vice*)
          Chad P. Albert (*pro hac vice*)
          5 Columbus Circle, 11th Floor
          New York, New York 10019
          (212) 223-4400
          sklugman@levinelee.com
          klee@levinelee.com
          calbert@levinelee.com

          *Attorneys for Defendants Eros International Plc, Kishore Lulla, and Andrew Warren*

16