James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
Kevin G. Cooper
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY &
AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Email: jcecchi@carellabyrne.com

*Counsel for Plaintiffs and the proposed
Settlement Class*

Kara M. Wolke
Leanne H. Solish
Raymond D. Sulentic
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Counsel for Plaintiffs and the proposed
Settlement Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE EROS INTERNATIONAL PLC SECURITIES LITIGATION | C. A. No. 19-cv-14125 (JMV)(JAD)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR: (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF NOTICE OF SETTLEMENT** |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.    NATURE OF THE ACTION ...........................................................................6

III.    FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION ....................................................................................................6

    A.    Appointment Of Lead Plaintiffs And Plaintiffs' Counsel....................6

    B.    The FAC, Motion To Dismiss And Court's Opinion...........................7

    C.    The Further Amended Complaints And Subsequent Mediation Sessions ..................................................................................................9

IV.    THE SETTLEMENT..........................................................................................12

    A.    The Settlement Terms .........................................................................12

    B.    The Plan Of Allocation .......................................................................12

V.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..........13

    A.    Plaintiffs And Their Counsel Adequately Represented the Class ......16

    B.    The Settlement Resulted From Arm's-Length Negotiations ..............16

    C.    The Relief Provided To The Settlement Class Is Adequate................17

        1.    The Complexity, Expense, And Likely Duration Of The Litigation Support Settlement...................................................18

        2.    The Stage Of The Proceedings And The Amount Of Discovery Completed................................................................19

        3.    Plaintiffs Faced Risks On The Merits.....................................20

        4.    The Settlement Amount Is Within The Range Of Reasonableness In Light Of The Best Possible Recovery And Attendant Risks Of Litigation .........................................23

    D.    The Other Rule 23(e)(2)(C) Factors Are Met ....................................25

i

        1.    The Proposed Method for Distributing Relief Is Effective.......26

        2.    The Proposed Attorneys' Fees..................................................26

        3.    The Parties Have One Other Agreement ..................................27

        4.    All Settlement Class Members Are Treated Equitably.............28

VI.    THE COURT SHOULD CERTIFY THE CLASS TO PERMIT DISSEMINATION OF THE NOTICE .......................................................29

      A.    Rule 23(a)(1) – Numerosity ................................................30

      B.    Rule 23(a)(2) – Commonality ............................................30

      C.    Rule 23(a)(3) – Typicality...................................................31

      D.    Rule 23(a)(4) – Adequacy of Representation.......................31

      E.    The Class Should Be Certified Under 23(b)(3)...................33

VII.   NOTICE TO THE CLASS SHOULD BE APPROVED .............................35

VIII.  PROPOSED SCHEDULE.......................................................................37

IX.    CONCLUSION......................................................................................38

# TABLE OF AUTHORITIES

CASES

*Alves v. Main*,
  2012 WL 6043272 (D.N.J. Dec. 4, 2012) ...........................................................17

*Amchem Prods., Inc. v. Windsor*, ,
  521 U.S. 591 (1997). ...........................................................................................34

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) .............................................................................................34

*Barnes v. Am. Tobacco Co.*,
  161 F.3d 127 (3d Cir. 1998) .................................................................................32

*Bernhard v. TD Bank, N.A.*,
  2009 WL 3233541 (D.N.J. Oct. 5, 2009) .............................................................17

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......................................................28

*Dartell v. Tibet Pharms., Inc.*,
  2017 WL 2815073 (D.N.J. June 29, 2017) ...................................... 18, 19, 24, 27

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) .................................................................................13

*Eisner v. Eros Int'l plc*,
  735 F. App'x 15 (2d Cir. 2018) ............................................................................21

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ........................................................................ 16, 17

*In re Advanced Battery Tech., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) .........................................................................24

*In re Aetna Inc. Sec. Litig.*,
  2001 WL 20928 (E.D. Pa. Jan. 4, 2001) .............................................................29

iii

*In re AT&T Corp. Sec. Litig.*,
  455 F.3d 160 (3d Cir. 2006) ...............................................................................16

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...............................................................................31

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) ......................................................19

*In re Corel Corp. Inc. Sec. Litig.*,
  206 F.R.D. 533 (E.D. Pa. 2002) .........................................................................31

*In re Eros Int'l plc Sec. Litig.*,
  2021 WL 1560728 (D.N.J. Apr. 20, 2021) .................................................... *passim*

*In re Facebook, Inc. IPO Sec. and Derivative Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ........................................................23

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ..................................................................................13

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ...................................................... 18, 29, 30, 31

*In re Lucent Techs., Inc., Sec. Litig.*,
  307 F. Supp. 2d 633 (D.N.J. 2004) ............................................................... 21, 31

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................................................22

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) .........................................................................35

*In re Ocean Power Techs., Inc.*,
  2016 WL 6778218 (D.N.J. Nov. 15, 2016) ..................................................... 19, 21

*In re Par Pharm. Sec. Litig.,*
  2013 WL 3930091 (D.N.J. July 29, 2013) ..................................................... 22, 29

iv

*In re Prudential Insurance Co. of Am. Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997)..................................................................22

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001)..................................................................27

*In re Schering-Plough Corp.*,
2012 WL 4482032 (D.N.J. Sept. 25, 2012).........................................................32

*In re Schering-Plough/Merck Merger Litig.*,
2010 WL 1257722 (D.N.J. Mar. 26, 2010) .........................................................16

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ..................................................................13

*In re Wilmington Tr. Sec. Litig.*,
2018 WL 6046452 (D. Del. Nov. 19, 2018).........................................................19

*Jones v. Commerce Bancorp, Inc.*,
2007 WL 2085357 (D.N.J. July 16, 2007) .........................................................37

*Rabbi Jacob Joseph Sch. V. Allied Irish Banks, P.L.C.*,
2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) .....................................................18

*Inmates of Northumberland Co. Prison v. Reish*,
2009 WL 8670860 (M.D. Pa. March 17, 2009) ..................................................32

*Singleton v. First Student Mgmt. LLC*,
2014 WL 3865853 (D.N.J. Aug. 6, 2014)..........................................................16

*Smith v. Suprema Specialties, Inc.*,
2007 WL 1217980 (D.N.J. Apr. 23, 2007)..........................................................35

*Smith v. Merck & Co., Inc.*,
2019 WL 3281609 (D.N.J. July 19, 2019) .........................................................30

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ..................................................................... 30, 31

v

*Swinton v. SquareTrade, Inc.*,
  2019 WL 617791 (S.D. Iowa Feb. 14, 2019) .......................................................15

*Vaccaro v. New Source Energy Partners L.P.*,
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017)......................................................20

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005) ...............................................................................31

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ..............................................................................................31

*Wilson v. LSB Indus., Inc.*,
  2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) ......................................................33

*Yedlowski v. Roka Bioscience, Inc.*,
  2016 WL 6661336 (D.N.J. Nov. 10, 2016).............................................................19

## STATUTES

15 U.S.C. § 78u-4...................................................................................................3

15 U.S.C. § 78u-4(a)(4) ........................................................................................28

15 U.S.C. § 78u-4(a)(7) ........................................................................................36

## RULES

Fed. R. Civ. P. 23 ........................................................................... *passim*

## OTHER AUTHORITIES

7 Conte & Newberg, *Newberg on Class Actions*
  §22.91 (4th ed. 2002)............................................................................................13

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*
  §1788 (3d ed. 1986)...............................................................................................34

Lead Plaintiffs Opus Chartered Issuances S.A., Compartment 127 and AI Undertaking IV (collectively, "Lead Plaintiffs" or "Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this memorandum in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated April 4, 2023 (the "Stipulation");[1] (ii) certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to Settlement Class Members; and (iv) the scheduling of a hearing date ("Settlement Hearing") at which the Court will consider (a) final approval of the proposed Settlement and entry of the proposed Final Judgment Approving Class Action Settlement, (b) the Plan of Allocation of settlement proceeds, and (c) Lead Counsel's application for an award of attorneys' fees and Litigation Expenses.

## I.   INTRODUCTION

The proposed Settlement will resolve all claims against Defendants[2] in

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, which is attached to the Declaration of James E. Cecchi in Support of Lead Plaintiffs' Unopposed Motion for: (I) Preliminary Approval of Class Action Settlement; (II) Certification of the Settlement Class; and (III) Approval of Notice of Settlement ("Cecchi Decl."), filed concurrently herewith. Citations and quotations are omitted and emphasis is added throughout, unless otherwise noted.

[2] Defendants are Eros Media World Plc, f/k/a ErosSTX Global Corporation, f/k/a Eros International Plc ("Eros"), and Kishore Lulla ("Lulla"), Prem Parameswaran ("Parameswaran"), and Andrew Warren ("Warren") (collectively, the "Individual

1

exchange for a non-reversionary, all cash payment of $25,000,000 (the "Settlement Amount") for the benefit of the Settlement Class. This is an excellent result for the Settlement Class and it is both substantively and procedurally fair. Accordingly, the Court should enter the Preliminary Approval Order.

Substantively, Lead Plaintiffs' damages expert estimates that if Plaintiffs overcame all obstacles to establishing liability and prevailed completely on all of their loss causation and damages theories, the $25 million Settlement would equate to approximately 6.4% of the total $389.2 million in *maximum* damages *potentially* available in this case. That was, however, Plaintiffs' best-case scenario, and the Court had already dismissed a substantial portion of the case. *See In re Eros Int'l plc Sec. Litig.*, 2021 WL 1560728 (D.N.J. Apr. 20, 2021). While Lead Plaintiffs had filed a Third Amended Complaint that they believed cured the pleading deficiencies identified in the Court's ruling, a fully briefed motion to dismiss was pending at the time of settlement. Had the Court stuck to its original ruling, Plaintiffs' damages would have been reduced to approximately $31.3 million, which equates to a recovery of about 80%. A recovery in the range of 6.4-80% is well above the median recovery of 2.4-5.2% in securities class actions settlements with similar potential damages. *See* § V.C.4, *infra*.

---

Defendants"; and together with Eros, the "Defendants"). Defendants consent to the relief sought, but do not adopt Plaintiffs' statements herein.

2

Procedurally, this Settlement follows two arm's-length mediations before highly experienced mediators, is the result of a mediator's recommendation, and was negotiated by counsel who possessed a thorough understanding of the strengths and weaknesses of the case based on more than three years of hard-fought litigation. Indeed, prior to reaching the Settlement, Plaintiffs' Counsel, among other things:

- drafted a motion for consolidation and appointment of lead plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA");

- conducted an extensive investigation of the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) Eros' U.S. Securities and Exchange Commission ("SEC") filings, (ii) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles related to Eros, (iii) investor call transcripts, (iv) EIML's[3] public filings and press releases; and (v) other litigation and publicly available material concerning Eros; (b) researching relevant IFRS and GAAP accounting standards; and (c) retaining and working with private investigators in India and the U.S. who conducted investigations in the two countries that involved, *inter alia*, numerous interviews of former

---

[3] EIML refers to Eros International Media Limited, a publicly traded subsidiary of Eros, which trades in India.

3

Eros employees and other sources of potentially relevant information;

- consulted extensively with experts in the fields of accounting, loss causation, and damages;

- utilized the comprehensive investigation and additional research to draft and file the 66-page Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("FAC"), which asserted violations of the Securities Exchange Act of 1934 (the "Exchange Act");

- researched, drafted, and filed an opposition to Defendants' motion to dismiss the FAC, which led to the Court partially sustaining the FAC;

- engaged in an unsuccessful mediation process overseen by a highly experienced third-party mediator, Jed Melnick, Esq., of JAMS, which involved an exchange of written submissions concerning the facts of the case, liability and damages, and a full-day formal mediation session;

- conducted substantial additional investigation and research and drafted the 88-page Amended Consolidated Class Action Complaint for Violations of the Federal Securities Law ("SAC") and the 146-page Third Amended Consolidated Class Action Complaint for Violations of the Federal Securities Law ("TAC");

- researched, drafted, and filed an omnibus opposition to the separate motions to dismiss the TAC filed by (i) defendant Parameswaran; and (ii)

4

defendants Eros, Warren and Lulla;

- engaged in numerous meet and confer discussions with Defendants' Counsel concerning, *inter alia*, the lifting of the PSLRA automatic stay of discovery as well as resolution of this Action;

- negotiated for Defendants to produce documents prior to a second mediation, reviewed and analyzed the approximately 16,516 pages of documents produced by Defendants, and engaged in a mediation process overseen by David Murphy, Esq. of Phillips ADR, which involved an exchange of written submissions concerning the facts of the case, liability and damages, a full-day formal mediation session, and weeks of further negotiations that culminated in a mediator's recommendation to resolve the Action for $25 million in cash;

- drafted and then negotiated the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Defendants' Counsel; and

- worked with a damages expert to craft a plan of allocation that treats Lead Plaintiffs and all other members of the proposed Settlement Class fairly.

The Settlement is, therefore, the result of arm's-length negotiations, conducted by informed and experienced counsel, and does not favor Plaintiffs over other Settlement Class Members.  In short, it is procedurally fair.

5

As discussed in greater detail below, Lead Plaintiffs and their counsel believe the proposed Settlement meets the standards for preliminary approval and is in the best interests of the Settlement Class.  Consequently, Lead Plaintiffs respectfully request that the Court grant the Settlement preliminary approval.[4]

## II.    <u>NATURE OF THE ACTION</u>

This is a putative class action asserting claims under Sections 10(b) and 20(a) of the Exchange Act.  Lead Plaintiffs allege that Defendants made materially false and misleading statements regarding: (a) Eros's intangible content assets and the value thereof; (b) Eros's financial state; (c) Eros's revenues and receivables for its fiscal year 2020; (d) Eros's intangible asset and goodwill balances as reported in the March 31, 2021 Form 6-K; and (e) the adequacy of Eros's internal controls and compliance policies.  Lead Plaintiffs further alleged that the price of Eros Securities was artificially inflated as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed.

## III.    <u>FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION</u>

### A.    <u>Appointment Of Lead Plaintiffs And Plaintiffs' Counsel</u>

On June 21, 2019, two class action complaints were filed in the United States

---

[4] The Parties' proposed agreed-upon Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") is attached to the Stipulation as Exhibit A.

District Court for the District of New Jersey, styled *Montesano v. Eros International plc, et al.*, Case No. 2:19-cv-14125, and *Schraufnagel v. Eros International plc, et al.*, Case No. 2:19-cv-14445. ECF No. 1. On August 20, 2019, a class action complaint was filed in the United States District Court for the Central District of California, styled *Opus Chartered Issuances S.A., Compartment 127 v. Eros International plc, et al.* Case No. 2:19-cv-07242. On September 27, 2019, the Central District of California granted the parties request in the *Opus* action to be transferred to this Court, where it was assigned Case No. 2:19-cv-18547.

In an April 14, 2020 order, the Court consolidated the three cases and recaptioned them *In re Eros International plc Securities Litigation*, Civil Action No. 19-cv-14125; appointed Opus Chartered Issuances S.A., Compartment 127 and AI Undertaking IV as Lead Plaintiffs for the consolidated action; and approved Lead Plaintiffs' selection of Glancy Prongay & Murray LLP ("GPM") as Lead Counsel and Carella Byrne Cecchi Olstein Brody & Agnello, PC ("Carella Byrne"; and together with GPM, "Plaintiffs' Counsel") as liaison counsel for the putative class. ECF No. 21.

**B.      The FAC, Motion To Dismiss And Court's Opinion**

On July 1, 2020, Lead Plaintiffs filed and served the FAC. The FAC asserted claims against Eros and individual defendants Lulla, Parameswaran, and Jyoti Deshpande ("Deshpande") under Section 10(b) of the Exchange Act and Rule 10b-

5 promulgated thereunder, and against individual defendants Lulla, Parameswaran, and Deshpande under Section 20(a) of the Exchange Act.  ECF No. 34.

Among other things, the FAC alleged that defendants Eros, Lulla, Parameswaran, and Deshpande made materially false and misleading statements about Eros's financial profile, its assets, and its interaction with rating agencies.  The FAC further alleged that the price of Eros publicly-traded securities was artificially inflated as a result of these allegedly false and misleading statements, and declined when the truth was revealed.  Defendants Eros, Lulla, and Parameswaran moved to dismiss, and the motion was fully briefed.  ECF Nos. 37-42.

On April 20, 2021, the Court dismissed several of Plaintiffs' claims.  In so dismissing, the Court analyzed Plaintiffs' alleged misstatements in four categories: (a) statements about Eros's financial profile; (b) statements about Eros's intangible assets; (c) statements about Eros's internal controls & Sarbanes Oxley Act ("SOX") certifications; and (d) statements about Eros's interactions with credit rating agencies.  *See In re Eros*, 2021 WL 1560728 at *5-11.

With respect to the financial profile statements, the Court found that the FAC failed to adequately allege scienter for all statements before the June 5, 2019 CARE downgrade.  *Id*. at *12-14.  In making this finding, the Court discounted the confidential witness allegations in the FAC.  *Id*. at *12-13.  As to the intangible asset statements, the Court found that Plaintiffs failed to adequately allege scienter about

8

any of the statements pertaining to Eros's intangible asset balances. *Id*. at *13-14. The Court also rejected Plaintiffs' argument that "the circumstances surrounding Eros' impairment of its intangible assets on July 15, 2019 contribute to a strong inference of scienter," including "that an inference of scienter is warranted based on Defendants' vague explanation for the impairment (*i.e.*, market conditions) and the size of the impairment." *Id*. at *13. Regarding the SOX statements, the Court found that Plaintiffs had failed to allege that statements were false when made because Plaintiffs' allegations rested on subsequent developments. *Id*. at *10. As to the ratings agency statements, the Court found that—other than the June 6, 2019 press release about the Company's ability to service its debt—the statements were pled with insufficient particularity. *Id*. at *10-11. Ultimately, the Court found that "only the allegations pertaining to the June 6 press release and the two post-CARE downgrade statements about Eros's strong financial profile survive the motion to dismiss." *Id*. at *16.

## C.    The Further Amended Complaints And Subsequent Mediation Sessions

Following the Court's decision, Lead Plaintiffs amended and, on June 4, 2021, filed the SAC. ECF No. 47. The SAC added additional details, but the claims themselves were substantially similar to those in the FAC.

Defendants were due to serve their motion to dismiss on August 9, 2021. However, on August 3, 2021, Eros disclosed that the company's Audit Committee

9

was conducting a formal internal review of certain accounting practices and internal controls related to its subsidiaries.  Thus, the Parties agreed to a temporary stay of the proceedings while: (a) Plaintiffs assessed whether to further amend; and (b) the Parties attempted to resolve the Action through a mediation process overseen by Jed Melnick, Esq. of JAMS (the "First Mediation").  In advance of the First Mediation, the Parties exchanged, and provided to Mr. Melnick, detailed mediation statements and exhibits that addressed the issues of liability and damages.  After a full day mediation session on August 24, 2021, the First Mediation ended with no agreement being reached.

After additional research and analysis, on November 5, 2021, Lead Plaintiffs filed the TAC, expanding the Class Period to end on August 3, 2021, and adding allegations of further false and misleading statements regarding Eros's revenue, receivables, and intangible asset value, as well as alleging additional corrective disclosures on July 30, 2020, and August 3, 2021.  ECF No. 59.

On March 3, 2022, Defendants Eros, Warren and Lulla collectively filed a motion to dismiss, and defendant Parameswaran filed a separate motion to dismiss. ECF Nos. 66, 67.  With the Court's permission, on April 15, 2022, Lead Plaintiffs filed an omnibus opposition.  ECF Nos. 68-70.  On April 29, 2022, Defendants filed their reply briefs.  ECF Nos. 71-72.

Prior to the Court deciding Defendants' motions, on October 6, 2022, the

Parties jointly requested that the Court defer ruling until after another attempt at mediation (the "Second Mediation"). ECF No. 73. In advance of the Second Mediation, Defendants agreed to, and did, produce certain documents to Lead Plaintiffs pursuant to Rule 408 of the Federal Rules of Evidence. These documents—totaling approximately 16,516 pages—consisted of a core set of documents requested by Plaintiffs. Lead Counsel reviewed and analyzed the documents.

On November 30, 2022, Plaintiffs' Counsel and Defendants' Counsel participated in a full-day mediation session before David M. Murphy, of Phillips ADR, an experienced mediator who has facilitated dozens of securities class actions settlements. In advance of that session, the Parties exchanged detailed mediation statements, including documents they deemed relevant, which addressed the issues of liability and damages. The session ended without an agreement to settle. Over the next several weeks, however, Mr. Murphy conducted further discussions with the Parties, which culminated in a mediator's recommendation to resolve the Action for $25,000,000. The Parties accepted Mr. Murphy's recommendation on December 12, 2022. The next day, counsel for Plaintiffs filed a letter advising the Court of settlement. ECF No. 75.

## IV.    THE SETTLEMENT

### A.    The Settlement Terms

The Settlement requires Defendants to pay, or cause to be paid, $25 million in cash into an interest-bearing Escrow Account for the benefit of the Settlement Class.[5]  The Net Settlement Fund is defined as the Settlement Amount, plus accrued interest, less: (i) Taxes; (ii) Notice and Administration Costs; (iii) Litigation Expenses awarded by the Court; and (iv) attorneys' fees awarded by the Court.  The Net Settlement Fund will be distributed among Settlement Class Members who submit valid Claim Forms ("Authorized Claimants") pursuant to the proposed Plan of Allocation.  If the Settlement is approved, the Settlement Amount is non-reversionary.

### B.    The Plan Of Allocation

The proposed Plan of Allocation is comparable to plans of allocation approved in numerous other securities class actions.  The Plan of Allocation allocates the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms on a *pro rata* basis based on the amount of each Authorized Claimant's Recognized Claim.  The formula for determining each Authorized Claimant's Recognized Claim is based on an out-of-pocket measure of damages consistent with the alleged

---

[5] In exchange for the Settlement Amount, Settlement Class Members will release the "Released Plaintiff's Claims."  *See* Stipulation at ¶¶ 5 (release) and 1(nn) (defining "Released Plaintiff's Claims").

violations of the federal securities laws as opposed to losses caused by market, industry, or other factors unrelated to the allegations.  The formula also takes into consideration when each Authorized Claimant purchased and/or sold Eros Securities, the transaction's price, and requires that the Eros Securities be held over an alleged corrective disclosure date in order for an Authorized Claimant to have a Recognized Claim.

## V.    **THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

Rule 23(e) requires court approval for any settlement of a class action, and courts within this circuit have a "strong judicial policy in favor  of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593-95 (3d Cir. 2010); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart*, 609 F.3d at 594.  This is particularly true for class actions involving complex litigation and securities matters.  7 Conte & Newberg, *Newberg on Class Actions* §22.91 at 386-387 (4th ed. 2002) ("Securities suits readily lend themselves to compromise, because of the notable unpredictability of result and the potential for litigation spanning  up to a decade or more" (citations  omitted)); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlements, particularly in class actions and other

complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." With respect to Rule 23(e)(2)—which governs final approval—courts now consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;

(B)    was the proposal negotiated at arm's-length;

(C)    is the relief provided for the class adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    does the proposal treat class members equitable relative to each other.

Factors (A) and (B) "identify matters . . .  described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expect to provide to class members").   Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919).

These factors are not, however, exclusive.  The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  *Id*. at 918; *see also Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) ("The specific consideration in Rule 23(e)(2)(A)–(D) were part of the 2018 Amendments.  However, they were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement.").  For this reason, the traditional factors that are utilized by courts in the Third Circuit—known as the "*Girsh* factors"—to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;[6] (3) stage of the proceedings and

---

[6] Because notice to the Settlement Class has not yet been issued, this factor cannot be assessed.  Lead Plaintiffs, however, support the Settlement.

15

the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (*citing Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164-65 (3d Cir. 2006) (same).[7]

In sum, although the specific factors by which a settlement is evaluated may have changed in some respects, what has not changed is that "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments (324 F.R.D. at 918).

### A.   **Plaintiffs And Their Counsel Adequately Represented the Class**

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Because this factor overlaps significantly with the class certification analysis on adequacy, to avoid duplicative briefing, it is discussed there. *See* § VI.D, *infra*.

### B.   **The Settlement Resulted From Arm's-Length Negotiations**

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated

---

[7] The *Girsh* factors "are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010).

at arm's-length."  Here, the Settlement was negotiated by counsel with extensive experience in securities litigation, who were well versed in the strengths and weaknesses of their respective positions, under the auspices of a highly respected mediator who ultimately made a mediator's recommendation that the Parties accepted.  *See* ECF No. 8-6 (GPM firm résumé); ECF No. 8-7 (Carella Byrne firm résumé).  Accordingly, this factor weighs in favor of preliminary approval.  *See Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties."); *Bernhard v. TD Bank, N.A.*, 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009) (preliminarily approving settlement and noting that the proposed settlement, which was achieved with the assistance of a mediator, appears to be the result of serious negotiation between the parties).

### C.   <u>The Relief Provided To The Settlement Class Is Adequate</u>

Rule 23(e)(2)(C)(i) overlaps significantly with *Girsh* (*e.g.*, factors 1, 4-9), and both sets of factors advise the Court to consider the adequacy of the settlement relief given the costs, risks, and delay that trial and appeal would inevitably impose. *Compare* Fed. R. Civ. P. 23(e)(2)(C)(i) *with Girsh,* 521 F.2d at 157.  Thus, the *Girsh* factors, analyzed below, inform the Rule 23(e)(2)(C)(i) inquiry.

17

### 1.  The Complexity, Expense, And Likely Duration Of The Litigation Support Settlement

The first *Girsh* factor, the complexity, expense, and likely duration of the litigation, supports approval of the Settlement.  Indeed, as this Court has recognized, "[f]ederal securities class actions by definition involve complicated issues of fact and law."  *Dartell v. Tibet Pharms., Inc.*, 2017 WL 2815073, at *4 (D.N.J. June 29, 2017); *see also In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000) ("Large class actions alleging securities fraud" are "inherently complicated.").

This case is no different.  If this litigation were to continue, Plaintiffs would have to retain experts to opine on several topics such as accounting standards, market efficiency, loss causation, and damages.  This would have substantially increased the cost of litigation.

Moreover, many of the Defendants and witnesses reside in India and elsewhere internationally, and Eros had subsidiaries based all over the world, including in India, Dubai and London.  The global nature of the alleged fraud adds another layer of risk, complexity and expense to the prosecution of the case.  For instance, to obtain documents and take depositions outside the United States, Plaintiffs would have to follow appropriate international conventions and/or apply to this Court for letters rogatory.  This would be an extremely time consuming process, and there is no guarantee it would be successful.  *See Rabbi Jacob Joseph Sch. V. Allied Irish Banks, P.L.C.*, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27,

18

2012) ("Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient."); *cf. In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("[T]he Company's location in China would have posed a barrier that would have increased the difficulty and expense of discovery, and might have made it impossible to collect some of the evidence or take depositions necessary to prove Plaintiffs' claims."). Similarly, documents and testimony obtained may have been in languages other than English, which would have required having multiple interpreters at the depositions, and the retention of bilingual attorneys to facilitate the review of documents. As a result, the complexity, expense, and likely duration of these proceedings favor approval of the Settlement. *See Dartell*, 2017 WL 2815073, at *6.

> ### 2. The Stage Of The Proceedings And The Amount Of Discovery Completed

"Courts in this Circuit frequently approve class action settlement despite the absence of formal discovery." *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *17 (D.N.J. Nov. 15, 2016) (citing cases); *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *13 (D.N.J. Nov. 10, 2016) (same). This is because the relevant inquiry under the third *Girsh* factor is "whether Plaintiffs had an 'adequate appreciation of the merits of the case before negotiating' settlement." *In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *5 (D. Del. Nov. 19, 2018).

19

Here, discovery was stayed due to the PSLRA. Plaintiffs were, nevertheless adequately informed of the relative strengths and weaknesses of their case. In addition to conducting an extensive investigation, responding to three motions to dismiss, filing three amended complaints, working with investigators in the U.S. and India, consulting with accounting, loss causation and damages experts, and participating in two full day mediations during which the Parties debated the merits of the Action, Defendants produced approximately 16,516 pages of documents prior to the Second Mediation. These steps, among others, gave Plaintiffs a clear and realistic understanding of the value of the case. *See supra* at pp. 3-5; *see also Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at \*5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the . . . industry. The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

### 3. Plaintiffs Faced Risks On The Merits

The fourth, fifth, and sixth *Girsh* factors—the risks of establishing liability, establishing damages, and maintaining the class action through the trial—also support approval. While Plaintiffs believe their claims to be meritorious, they also recognize that Defendants have potentially viable defenses, including arguments

20

cutting against falsity and scienter. Indeed, Defendants had previously achieved dismissal of most of Plaintiffs' case before this Court (*see In re Eros*, 2021 WL 1560728 at *16), as well as the complete dismissal of a different securities case where Eros was the defendant, which was affirmed by the Second Circuit. *See Eisner v. Eros Int'l plc*, 735 F. App'x 15, 16 (2d Cir. 2018) ("After reviewing the whole record, we affirm the District Court's judgment for substantially the same reasons as those given by the District Court") (citing *Eisner v. Eros Int'l plc*, No. 1:15-cv-08956-AJN (S.D.N.Y. Sept. 22, 2017)). And while the legal theories differed between here and there, the fact that those Defendants ***completely*** defeated a securities fraud case—and the dismissal was affirmed by the Second Circuit— demonstrates that Defendants can aggressively defend a securities fraud class action (even through appeal), and that the instant Action was not without risk.

Here, too, Plaintiffs might not have been able to defeat Defendants' pending motion to dismiss, let alone prevail at summary judgment and trial. *See In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 645 (D.N.J. 2004) (proving liability, particularly scienter, "would have been very difficult" and based on risks and contingencies, settlement is reasonable given risks involved in establishing liability); *Ocean Power*, 2016 WL 6778218, at *19-20 (recognizing the difficulty of establishing liability in securities class action and the added risk of establishing damages). A further indica of the difficulty that Plaintiffs faced in establishing

21

liability is that the SEC had at least *twice* before investigated Eros but had not brought enforcement proceedings.

Plaintiffs also faced hurdles in obtaining class certification, as Defendants would most likely argue that the market for the Eros Securities was not efficient. While Plaintiffs believe they had the better argument on this issue, they also know that Eros's shares are poised to be delisted, and that late in the Settlement Class Period analysts began dropping coverage as Eros's market capitalization continued to decline. In short, class certification was not a forgone conclusion. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at \*6 (S.D.N.Y. Dec. 23, 2009) ("the uncertainty surrounding class certification supports approval of the Settlement").

Defendants would also contest that Plaintiffs suffered damages. Indeed, in securities class actions the issue of damages often turns into a "battle of the experts," with no guarantee who will prevail. *In re Prudential Insurance Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 539 (D.N.J. 1997) (a "jury's acceptance of expert testimony is far from certain, regardless of the expert's credentials. And, divergent expert testimony leads inevitably to a battle of the experts."), *aff'd,* 148 F.3d 283 (3d Cir. 1998). Such a battle would also increase the expense and thereby further deplete insurance, and a jury might credit Defendants' experts and accordingly reject Lead Plaintiffs' claims. *See In re Par*

*Pharm. Sec. Litig.,* 2013 WL 3930091, at *6 (D.N.J. July 29, 2013) (noting "the inherent unpredictability and risk associated with damage assessments in the securities fraud class-action context"). In contrast, the Settlement provides a favorable and immediate result for the Settlement Class while avoiding the significant risks of establishing liability and damages. *See In re Facebook, Inc. IPO Sec. and Derivative Litig.*, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015) ("[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount Plaintiffs' losses. Under such circumstances, a settlement is generally favored over continued litigation.").

### 4. The Settlement Amount Is Within The Range Of Reasonableness In Light Of The Best Possible Recovery And Attendant Risks Of Litigation

The seventh, eighth, and ninth *Girsh* factors—the ability of the defendants to withstand a greater judgment, and the range of reasonableness of the settlement fund given the best possible recovery and considering all the attendant risks of litigation—strongly support approval. This is especially true given potential collection issues. Eros is incorporated in the Isle of Man, it is facing imminent delisting from the NYSE, and the company's insurance policies, which are the source of the settlement, are wasting. Thus, even if Plaintiffs secured a judgment greater than the Settlement Amount—an occurrence that would be many years

23

from now given the relatively early procedural posture of the case—there is no guarantee that they would be able to collect on it. *See Dartell*, 2017 WL 2815073, at *6 ("If the parties did not settle and instead continued with discovery and motions for summary judgment, the insurance funds available for any potential settlement would be quickly diminished and perhaps exhausted."); *see also In re Advanced Battery Tech., Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014) ("settlement amount is sufficient when limited insurance coverage, minimal domestic assets, and significant risk of being unable to collect any judgment against the [] Defendants are taken into account").

Despite these serious limitations, and others, the proposed Settlement recovers $25 million in cash for the Settlement Class. This is an excellent result. Lead Plaintiffs' damages expert estimates that *if* Lead Plaintiffs had fully survived Defendants' motions to dismiss, prevailed on their claims at both summary judgment and after a jury trial, *if* the Court certified the same class period as the Settlement Class Period, *and if* the Court and jury accepted Lead Plaintiffs' damages theory, including proof of loss causation as to each of the stock price drop dates alleged in this case—*i.e.*, Lead Plaintiffs' best-case scenario—estimated total *maximum* class wide damages would be approximately $389.2 million. Under this scenario, the recovery is approximately 6.4% of classwide damages.

This case was not, however, risk free and there were meaningful barriers to

24

recovery, including, but certainly not limited to, the PSLRA's heightened pleading standard and automatic stay of discovery. For example, the Court had already dismissed the majority of Plaintiffs' claims and could do so again. *See In re Eros*, 2021 WL 1560728. If only the current claims were successful, maximum recoverable damages were only approximately $31.3 million, which equates to a recovery of about 80%. A recovery in the range of 6.4-80% is well above the median recovery of 2.4-5.2% in securities class actions settlements with similar potential damages. *See* Cecchi Decl., Ex. 2 (Janeen McIntosh, Svetlana Starykh, and Edward Flores, Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review, at 17, Fig. 18 (NERA Jan. 24, 2023) (median recovery for securities class actions that settled between December 2011 and December 2022 was 2.4% for cases with estimated damages between $200-$399 million, and 5.2% for those with estimated damages of $20-$49 million). Given the range of possible results in this litigation, there can be no question that the Settlement constitutes a considerable achievement and weighs heavily in favor of preliminary approval.

## D.   The Other Rule 23(e)(2)(C) Factors Are Met

Rule 23(e)(2)(C) provides three more factors to consider in approving a settlement: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees; and (iii) the existence of any other "agreements." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports

25

approval of the Settlement or is neutral and thus does not suggest any basis to conclude the Settlement is inadequate.

### 1.    The Proposed Method for Distributing Relief Is Effective

The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for accomplishing both tasks.  Here, Epiq Class Action & Claims Solutions, Inc., the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims under Lead Counsel's guidance, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval. Claims processing like the method proposed here is standard in securities class action settlements as it has long been found to be effective, as well as necessary insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[8]

### 2.    The Proposed Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  The Settlement provides that Lead

---

[8] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement Amount based on the number or value of the claims submitted.  *See* Stipulation ¶15.

Counsel will apply to this Court for an award of attorneys' fees not to exceed 33⅓% of the Settlement Fund, which is consistent with attorneys' fees regularly approved in securities class action settlements. *See, e.g.*, *Dartell*, 2017 WL 2815073, at *10 ("The one-third fee is within the range of fees typically awarded within the Third Circuit through the percentage-of-recovery method; the Circuit has observed that fee awards generally range from 19% to 45% of the settlement fund. For smaller securities fraud class actions, courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses."); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 settlements demonstrates "average attorney's fee percentage [of] 31.71%" with a median value that "turns out to be one-third").

### 3. The Parties Have One Other Agreement

Rule 23(e)(2)(C)(iv) calls for disclosure of any other agreements entered into in connection with the settlement of a class action. The Parties have entered into one confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a specific number of shares of the Eros Securities eligible to participate in the Settlement request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."

27

*Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at \*15 (S.D.N.Y. Oct. 16, 2019).

### 4.   All Settlement Class Members Are Treated Equitably

The Settlement does not provide preferential treatment to the Plaintiffs or any other segment of the Class.[9]  The proposed Plan of Allocation, which was developed by Plaintiffs' damages expert in consultation with Lead Counsel, is set forth in the Notice and provides a fair and reasonable method to allocate the Net Settlement Fund among Class Members who submit valid Claim Forms.  *See* Cecchi Decl., Ex. 1 at A-1 (Notice) at ¶¶50-68.  Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss amount for each Class Member's purchases of Eros Securities during the Settlement Class Period for which adequate documentation is provided.  *Id.*

The calculation of each Class Member's Recognized Loss under the Plan of Allocation is explained in detail in the Notice and will be based on several factors, including when the Eros Securities were purchased and sold, the purchase and sale price, and the estimated artificial inflation in the respective prices of the Eros Securities at the time of purchase and at the time of sale as determined by Plaintiffs' damages expert.  The Net Settlement Fund will be allocated to Authorized Claimants

---

[9] Pursuant to the PSLRA, Plaintiffs may separately seek reimbursement of costs (including lost wages) incurred as a result of their representation of the Class.  *See* 15 U.S.C. § 78u-4(a)(4).

on a *pro rata* basis based on the relative size of their Recognized Loss.  Similar plans

have repeatedly been approved by courts in this District.  *See, e.g.*, *In re Aetna Inc.*

*Sec. Litig.*, 2001 WL 20928, at \*12 (E.D. Pa. Jan. 4, 2001) *citing In re Ikon*, 194

F.R.D. at 184 ("Courts [] generally consider plans of allocation that reimburse class

members based on the type and extent of their injuries to be reasonable."); *In re Par*

*Pharm. Sec. Litig.*, 2013 WL 3930091, at \*8 (D.N.J. July 29, 2013) (approving a

similar plan of allocation).

In sum, the Rule 23(e)(2) and *Girsh* factors support preliminary approval of

the Settlement.

## VI.    **THE COURT SHOULD CERTIFY THE CLASS TO PERMIT DISSEMINATION OF THE NOTICE**

In accordance with the Stipulation, Plaintiffs respectfully request that the

Court certify the following Settlement Class for the purposes of settlement:

> All persons and entities who or which purchased or otherwise acquired
> Eros Securities between July 28, 2017 and August 3, 2021, inclusive
> (the "Settlement Class Period"), and were damaged thereby.

Stipulation, ¶1(ss).[10]

Rule 23(a) establishes four prerequisites to class certification: (1) numerosity;

(2) commonality; (3) typicality; and (4) adequacy of representation.  In addition, the

class must meet one of the three requirements of Rule 23(b).  Fed. R. Civ. P. 23.

---

[10] *See id*. (setting forth exclusions to the Settlement Class).

29

### A.    <u>Rule 23(a)(1) – Numerosity</u>

Rule 23(a)(1) requires a class to be so large that joinder of all its members would be "impracticable." Fed. R. Civ. P. 23(a)(1). The prerequisite of numerosity is discharged "where a class is likely to exceed forty members." *Smith v. Merck & Co., Inc.*, 2019 WL 3281609, at *2 (D.N.J. July 19, 2019). Although the exact size of the Settlement Class is not yet known, the numerosity requirement is generally satisfied in a securities class action where—as here—a corporation has millions of shares trading on a national exchange. *See In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. at 175 (settlement class easily met the numerosity requirement where millions of shares of common stock traded on a national exchange).  According to SEC filings, during the Settlement Class Period, Eros had at least 357,230,123 shares issued and outstanding; thus, the numerosity requirement is met.  *See* TAC ¶420 (as reported in Eros's Form F-3/A filed with the SEC on December 28, 2020).

### B.    <u>Rule 23(a)(2) – Commonality</u>

Rule 23(a)(2) requires "that questions of law or fact exist that are common to the class." Fed. R. Civ. P. 23(a)(2).  "Like numerosity, this requirement has been applied liberally in securities fraud litigation . . .." *Ikon Off. Sols.*, 194 F.R.D. at 176.  A finding of commonality does not require that the Class's claims are identical. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 301 (3d Cir. 2011).  Rather, "commonality is satisfied where common questions generate common answers 'apt to drive the

resolution of the litigation.'" *Sullivan*, 667 F.3d at 299 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). As such, the commonality requirement here is easily met because plaintiffs allege a common course of misconduct and the alleged misrepresentations were presented within the company's public filings and statements. *See Ikon Off. Sols.*, at 176 (finding commonality easily satisfied where the basis of the action was that the defendants issued false and misleading statements under the securities laws); *Lucent Techs.* 307 F. Supp. 2d at 640 (same).

### C.      Rule 23(a)(3) – Typicality

Putative class representatives' claims must also be typical of those of the class. Fed. R. Civ. P. 23(a)(3). Typicality is satisfied if the "'claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 244 n.25 (3d Cir. 2001). Typicality does not require identicality. *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 232 (D.N.J. 2005). Lead Plaintiffs' claims are typical of the Settlement Class: Lead Plaintiffs bought Eros Securities during the Settlement Class Period (ECF No. 8-4), were allegedly damaged by the same conduct as all other Settlement Class Members, and seek relief under the same legal theories. Nothing more is required. *See In re Corel Corp. Inc. Sec. Litig.*, 206 F.R.D. 533, 542 (E.D. Pa. 2002).

### D.      Rule 23(a)(4) – Adequacy of Representation

Rule 23(a)(4) requires that the class representative "fairly and adequately

31

represent the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement entails two inquiries: (1) whether the attorneys retained by the named Plaintiffs are qualified, experienced, and generally able to conduct the litigation; and (2) whether the named Plaintiffs themselves have interests that are antagonistic to or in conflict with those they seek to represent." *Inmates of Northumberland Co. Prison v. Reish*, 2009 WL 8670860, at *20 (M.D. Pa. March 17, 2009) (citing *Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 141 (3d Cir. 1998)).

Here, as described above, Lead Plaintiffs—the proposed class representatives—have claims that are typical of and coextensive with those of the Settlement Class. Lead Plaintiffs, like all Settlement Class Members, purchased Eros Securities at allegedly artificially inflated prices during the Settlement Class Period as a result of the alleged materially false and misleading statements, and were allegedly damaged thereby. They are, therefore, adequate class representatives. *See In re Schering-Plough Corp.*, 2012 WL 4482032, at *6 (D.N.J. Sept. 25, 2012) ("[W]hen Lead Plaintiffs have a strong interest in establishing liability under federal securities law, and seek similar damages for similar injuries, the adequacy requirement can be met.").

In addition, Lead Plaintiffs respectfully request that the Court appoint GPM and Carella Byrne to serve as Class Counsel for the Settlement Class. GPM and Carella Byrne have extensive experience and expertise litigating complex securities

32

class actions throughout the United States, and they are qualified and able to conduct this litigation, as the Court recognized when appointing them to serve as lead and liaison counsel under the PSLRA. *See* ECF No. 20 at 24-25 ("both firms [GPM and Carella Byrne] have substantial experience litigating securities fraud class actions and are thus competent to fulfill the duties of lead counsel and liaison counsel."); *see also* ECF No. 8-6 (GPM firm résumé); ECF No. 8-7 (Carella Byrne firm résumé). Moreover, the firms have demonstrated their abilities and commitment to this litigation by, among other things, surviving Defendants' initial motion dismiss despite the PSLRA's heightened pleading standard, and refusing to settle at the First Mediation in order continue litigating with the goal of securing a better recovery for the Settlement Class. Thus, Lead Plaintiffs are adequate representatives of the Settlement Class, and their counsel are qualified, experienced and capable of prosecuting this Action. *See Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *18 (S.D.N.Y. Aug. 13, 2018) (appointing GPM as class counsel and noting that "GPM has had extensive experience serving as lead or co-lead counsel in class action securities litigation.")

### E.   The Class Should Be Certified Under 23(b)(3)

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

33

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy the predominance and superiority criteria.

**Common Questions Predominate.** The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). When common questions are a significant aspect of a case and can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788 at 528 (3d ed. 1986).

Here, common questions exist relating to Defendants' alleged conduct, such as whether their statements and omissions were materially false or misleading, and whether their conduct caused damages to Plaintiffs and the Settlement Class. If each class member were to bring an individual action, each would need to demonstrate the same misrepresentations and/or omissions to prove liability. Since the evidence needed to prove such claims would be the same for all, a finding of predominance is appropriate. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466-67 (2013); *see also Amchem*, 521 U.S. at 625 ("[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

**Class Action Is Superior.** Rule 23(b)(3) lists non-exhaustive factors for determining whether class certification is the superior method of litigation. *See* Fed.

34

R. Civ. P. 23(b)(3). Securities suits easily satisfy the superiority requirement of Rule 23(b)(3), because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015); *see also Smith v. Suprema Specialties, Inc.*, No. 02–168, 2007 WL 1217980, at \*10 (D.N.J. Apr. 23, 2007) ("Class actions are favored in the securities litigation context because they are necessary to meaningfully enforce the securities laws.").

Lead Plaintiffs have satisfied all the requirements of Rules 23(a) and (b)(3). The Court should, therefore, certify the Settlement Class for settlement purposes, appoint Lead Plaintiffs to serve as the Class Representatives, and appoint GPM and Carella Byrne to serve as Class Counsel for the Settlement Class.

## VII.   <u>NOTICE TO THE CLASS SHOULD BE APPROVED</u>

As outlined in the proposed Preliminary Approval Order, Lead Plaintiffs will notify Settlement Class Members of the Settlement by mailing the Notice Packet to all Settlement Class Members who can be identified with reasonable effort. The proposed Notice has been carefully drafted to advise recipients of their legal rights, including that they can object to any portion of the Settlement, exclude themselves from the Settlement, and/or submit a Claim Form and the supporting documentation that will allow them to obtain their *pro rata* portion of the Settlement.

The Notice also satisfies the PSLRA's disclosure requirements by, *inter alia*, stating the amount of the Settlement on both an aggregate and average per share basis; providing a brief statement explaining the reasons why the Parties are proposing the Settlement; stating the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and providing the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Settlement Class Members. *See* 15 U.S.C. § 78u-4(a)(7).

In addition to mailed notice, the proposed Preliminary Approval Order further requires the Claims Administrator to cause the Summary Notice to be published once in *Investor's Business Daily* and to be transmitted once over the *PR Newswire*. The Claims Administrator will also create a settlement specific website (www.ErosSecuritiesSettlement.com), from which copies of important documents like the Stipulation, Notice and Claim Form can be downloaded, and that will allow Settlement Class Members to file claims online.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). Settlement Class Members are "provide[d] all the required information concerning the class members' rights and obligations under the settlement" (*Prudential*, 148

F.3d at 328), and the manner of providing notice, which includes the dissemination of the Notice by mail to all Settlement Class Members who can be reasonably identified, represents the best notice practicable under the circumstances. *See Jones v. Commerce Bancorp, Inc.*, 2007 WL 2085357, at *5 (D.N.J. July 16, 2007) ("[T]he proposed distribution of notice to class members by first class mail is reasonable because no alternative method of distribution is more likely to notify class members[.]").

## VIII. **PROPOSED SCHEDULE**

In connection with preliminary approval of the Settlement, the Parties are requesting that the Court establish dates by which notice of the Settlement will be distributed to Settlement Class members, dates by which Settlement Class Members may comment on the Settlement, and a date on which the Court will hold the Settlement Fairness Hearing. The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| **Event** | **Deadline for Compliance** |
|---|---|
| Date for Settlement Fairness Hearing | At least 120 days after the Court preliminarily approves the settlement |
| Mailing of Notice and Proof of Claim and Release. | No later than 20 business days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶7(b)) (the "Notice Date") |
| Publication of Summary Notice. | No later than 30 business days after entry of the Preliminary Approval Order. (Preliminary Approval Order ¶7(d)) |

37

| Deadline for filing Proofs of Claim. | No later than 120 calendar days after the Notice Date. (Preliminary Approval Order ¶10) |
| --- | --- |
| Filing deadline for requests for exclusion. | Received no later than 21 calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶13) |
| Date for Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | 35 calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶26) |
| Filing deadline for objections. | 21 calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶16) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | 7 calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶26) |

## IX.    CONCLUSION

For all of the above reasons, Lead Plaintiffs respectfully request that the Court grant the motion for preliminary approval of the proposed Settlement and enter the [Proposed] Order Preliminarily Approving Settlement, Providing for Notice, and Certifying Class.

///

///

///

///

38

Dated: April 5, 2023

Respectfully Submitted

**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**

By:  *s/ James E. Cecchi*
James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
Kevin G. Cooper
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Email: jcecchi@carellabyrne.com

**GLANCY PRONGAY & MURRAY LLP**
Kara M. Wolke
Leanne Solish
Raymond Sulentic
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: kwolke@glancylaw.com

*Counsel for Lead Plaintiffs*
*and the proposed Settlement Class*