James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Email: jcecchi@carellabyrne.com

*Counsel for Lead Plaintiffs and the Settlement Class*

Kara M. Wolke
Leanne H. Solish
Raymond D. Sulentic
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Counsel for Lead Plaintiffs and the Settlement Class*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE EROS INTERNATIONAL PLC SECURITIES LITIGATION | C. A. No. 19-cv-14125 (JMV)(JAD)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** |

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ........6

III.  THE SETTLEMENT WARRANTS FINAL APPROVAL ...........................6

      A.    Lead Plaintiffs And Their Counsel Adequately Represented The
            Settlement Class ......................................................................................9

      B.    The Settlement Resulted From Arm's-Length Negotiations .............12

      C.    The Relief Provided To The Settlement Class Is Adequate................13

            1.    The Complexity, Expense, And Likely Duration Of The
                  Litigation Support Final Approval Of The Settlement ............13

            2.    Lead Plaintiffs Faced Risks On The Merits..............................15

            3.    The Settlement Amount Is Within The Range Of
                  Reasonableness In Light Of The Best Possible Recovery
                  And Attendant Risks Of Litigation ..........................................18

      D.    The Other Rule 23(e)(2)(C) Factors Are Met ....................................20

            1.    The Proposed Method for Distributing Relief Is Effective.......20

            2.    The Proposed Attorneys' Fees..................................................22

            3.    The Parties Have One Other Agreement ..................................23

            4.    All Settlement Class Members Are Treated Equitably.............24

      E.    The Other *Girsh* Factors Support Final Approval ...........................25

            1.    The Reaction Of The Settlement Class Favors Approval.........25

            2.    The Stage Of The Proceedings And The Amount Of
                  Discovery Completed................................................................26

IV.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED ........28

i

V.      THE PLAN OF ALLOCATION SHOULD BE APPROVED ......................28

VI.     CONCLUSION.........................................................................................32

# TABLE OF AUTHORITIES

<u>CASES</u>

*Alves v. Main*,
2012 WL 6043272 (D.N.J. Dec. 4, 2012) ...........................................................12

*Barnes v. Am. Tobacco Co.*,
161 F.3d 127 (3d Cir. 1998) ...............................................................................10

*Becker v. Bank of New York Mellon Trust Co., N.A.*,
2018 WL 6727820 (E.D. Pa. Dec. 21, 2018) .....................................................22

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .....................................................24

*Dartell v. Tibet Pharms., Inc.*,
2017 WL 2815073 (D.N.J. June 29, 2017) ............................................. 13, 15, 18

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ..............................................................................6, 7

*Eisner v. Eros Int'l plc*,
735 F. App'x 15 (2d Cir. 2018) ..........................................................................15

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ..............................................................................9, 13

*Gross v. GFI Grp., Inc.*,
310 F. Supp. 3d 384 (S.D.N.Y. 2018) ................................................................3

*Harris v. U.S. Physical Therapy, Inc.*,
2012 WL 3277278 (D. Nev. July 18, 2012) .......................................................31

*Huffman v. Prudential Ins. Co. of Am.*,
2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) .........................................................8

*In re Advanced Battery Tech., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .......................................................................18

*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006) ....................................................................................9

*In re BHP Billiton Ltd. Sec. Litig.*,
   2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019) .......................................................23

*In re Eros Int'l plc Sec. Litig.*,
   2021 WL 1560728 (D.N.J. Apr. 20, 2021).................................................. 15, 19

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007).......................................................11

*In re Facebook, Inc. IPO Sec. and Derivative Litig.*,
   2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) .......................................................17

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) .....................................................................................7

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ...........................................................................13

*In re Innocoll Holdings Public Ltd. Co. Sec. Litig.*,
   2022 WL 16533571 (E.D. Pa. Oct. 28, 2022) .....................................................32

*In re Limelight Networks, Inc. Sec. Litig.*,
   2011 WL 13185749 (D. Ariz. Mar. 23, 2011) ....................................................23

*In re Lucent Techs., Inc., Sec. Litig.*,
   307 F. Supp. 2d 633 (D.N.J. 2004)............................................................. 16, 29

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).....................................................16

*In re Ocean Power Techs., Inc., Sec. Litig.*,
   2016 WL 6778218 (D.N.J. Nov. 15, 2016)................................................. 16, 26

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
   176 F.R.D. 158 (E.D. Pa. 1997) ...........................................................................25

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013) ............................................... 17, 28, 29

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F. App'x 760 (2d Cir. 2020) ..........................................................................10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997).............................................................................17

*In re Remeron Direct Purchaser Antitrust Litig.*,
2005 WL 3008808 (D.N.J. Nov. 9, 2005)..............................................................22

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001).....................................................................22

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
2013 WL 5505744 (D.N.J. Oct. 1, 2013) ..............................................................25

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
2012 WL 1964451 (D.N.J. May 31, 2012) ............................................................28

*In re Schering-Plough Corp. Sec. Litig.*,
2009 WL 5218066 (D.N.J. Dec. 31, 2009) ...........................................................31

*In re Schering-Plough Corp.*,
2012 WL 4482032 (D.N.J. Sept. 25, 2012)...........................................................10

*In re Schering-Plough/Merck Merger Litig.*,
2010 WL 1257722 (D.N.J. Mar. 26, 2010) .............................................................9

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
2020 WL 3166456 (D.N.J. June 15, 2020) ...........................................................12

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ........................................................31

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ...................................................................................6

*In re Wilmington Tr. Sec. Litig.*,
  2018 WL 6046452 (D. Del. Nov. 19, 2018)............................................................26

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................29

*Inmates of Northumberland Co. Prison v. Reish*,
  2009 WL 8670860 (M.D. Pa. Mar.17, 2009).......................................................10

*McDermid v. Inovio Pharms., Inc.*,
  2023 WL 227355 (E.D. Pa. Jan. 18, 2023) .........................................................32

*Merck & Co., Inc. Vytorin ERISA Litig.*,
  2010 WL 547613 (D.N.J. Feb. 9, 2010)...............................................................22

*Milliron v. T-Mobile USA, Inc.*,
  2009 WL 3345762 (D.N.J. Sept. 10, 2009)..........................................................27

*Monsanto Intern. Sales Co., Inc. v. Hanjin Container Lines, Ltd.*,
  770 F. Supp. 832 (S.D.N.Y. 1991) ......................................................................14

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 226 (E.D. Mich. 2016)......................................................................24

*O'Hern v. Vida Longevity Fund, LP*,
  2023 WL 3204044 (D. Del. May 2, 2023) ............................................... 21, 24, 26

*Pearlstein v. BlackBerry Ltd.*,
  332 F.R.D. 117 (S.D.N.Y. 2019)..........................................................................14

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
  2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) .....................................................14

*Singleton v. First Student Mgmt. LLC*,
  2014 WL 3865853 (D.N.J. Aug. 6, 2014)..............................................................9

*Vaccaro v. New Source Energy Partners L.P.*,
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017).......................................................27

*Walsh v. Great Atl. & Pac. Tea Co. Inc.*,
   726 F.2d 956 (3d Cir. 1983) ...................................................................................29

*Yedlowski v. Roka Bioscience, Inc.*,
   2016 WL 6661336 (D.N.J. Nov. 10, 2016) ...........................................................26

STATUTES

15 U.S.C. §78u-4(a)(4) ..............................................................................................25

15 U.S.C. § 78u-4............................................................................................................4

RULES

Fed. R. Civ. P. 23 ................................................................................. *passim*

OTHER AUTHORITIES

7 Conte & Newberg, *Newberg on Class Actions* §22.91 at 386-387
   (4th ed. 2002)...............................................................................................................7

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed lead plaintiffs Opus Chartered Issuances S.A., Compartment 127 ("Opus") and AI Undertaking IV ("AI"; and together with Opus, "Lead Plaintiffs"), on behalf of themselves and all other members of the proposed Settlement Class, respectfully submit this memorandum of law in support of their unopposed motion for: (i) final approval of the proposed Settlement of the above-captioned class action (the "Action"); (ii) approval of the proposed plan of allocation for the proceeds of the Settlement (the "Plan of Allocation"); and (iii) final certification of the Settlement Class.[1]

## I.   **INTRODUCTION**

After nearly four and half years of hard-fought litigation, Lead Plaintiffs and Defendants[2] have agreed to settle all claims in the Action in exchange for an all cash,

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated April 4, 2023 ("Stipulation"; ECF No. 81-3), or in the concurrently filed Joint Declaration of James E. Cecchi and Kara M. Wolke in Support of: (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration"). Citations to "¶__" or "Ex. __" in this memorandum refer to paragraphs in, or exhibits to, the Joint Declaration.

[2] Defendants are Eros Media World Plc, f/k/a ErosSTX Global Corporation, f/k/a Eros International Plc ("Eros"), and Kishore Lulla ("Lulla"), Prem Parameswaran ("Parameswaran"), and Andrew Warren ("Warren") (collectively, the "Individual Defendants"; and together with Eros, the "Defendants"). Defendants consent to the relief sought, but do not adopt Lead Plaintiffs' statements herein.

1

non-reversionary payment of $25,000,000 (the "Settlement Amount") for the benefit of the Settlement Class.  The proposed Settlement represents approximately 6.4%-80% of the maximum recoverable damages in the Action.[3]  *See* § III.C.3., *infra*.  This recovery is: (i) above the 1.8% median recovery in securities class actions settled in 2022; (ii) higher than the 2.4-5.2% median recovery in securities cases with similar damages that settled between December 2011-December 2022; and (iii) a substantively fair, reasonable and adequate result when balanced against the many risks of continued litigation.  *See* Ex. 6 (Janeen McIntosh, Svetlana Starykh, and Edward Flores, Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review, at 18 (Fig. 19) (NERA Jan. 24, 2023) ("NERA Report") (median recovery in securities class actions in 2022 was approximately 1.8% of estimated damages); at 17, Fig. 18 (median recovery for securities class actions that settled between December 2011 and December 2022 was 2.4% for cases with estimated damages between $200-$399 million, and 5.2% for those with estimated damages of $20-$49 million)).

---

[3] If only the current claims were successful, maximum recoverable damages would be approximately $31.3 million, which equates to a recovery of about 80%.  If, however, Lead Plaintiffs had fully survived Defendants' pending motions to dismiss the Third Amended Consolidated Class Action Complaint for Violations of the Federal Securities Law ("TAC"), and fully prevailed, estimated maximum recoverable damages would be approximately $389.2 million, which equates to a recovery of approximately 6.4% of classwide damages.

While Lead Plaintiffs and their counsel believe the claims are meritorious, they recognize the substantial challenges to establishing liability, proving damages, and achieving (and collecting upon) a greater recovery. For example, completing fact discovery would have been difficult and expensive given that key third-party witnesses were located outside the United States. ¶¶36-38. Furthermore, Defendants would have continued to contest each element of Lead Plaintiffs' claims, including liability, loss causation, and damages. In fact, even if Lead Plaintiffs succeeded at trial, there is a risk that collecting any judgment would require Lead Plaintiffs to separately enforce a judgment in one or more foreign jurisdictions because Defendants are based outside the United States. These risks are further exacerbated by Eros's delisting from the New York Stock Exchange ("NYSE"), and the wasting nature of Defendants' insurance coverage for the claims at issue in this litigation. In contrast, the Settlement removes the numerous significant risks that lay ahead at class certification, summary judgment, trial, and any eventual appeal(s). An adverse decision at any of these litigation milestones could result in zero—or a substantially reduced—recovery. *See* ¶¶39-53; *see also Gross v. GFI Grp., Inc.*, 310 F. Supp. 3d 384, 399 (S.D.N.Y. 2018) (granting summary judgment for defendants following four years of litigation), *aff'd on other grounds* 784 Fed. Appx. 27, 29 (2d

3

Cir. 2019).[4]

Class Counsel's substantial efforts and well-developed understanding of the strengths and weaknesses of the Action informed the decision to settle.  These efforts included, among other things:

- drafting a motion for consolidation and appointment of lead plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4  ("PSLRA");

- conducting an extensive investigation of the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) Eros' U.S. Securities and Exchange Commission ("SEC") filings, (ii) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles related to Eros, (iii) investor call transcripts, (iv) EIML's[5] public filings and press releases; and (v) other litigation and publicly available material concerning Eros; (b) researching relevant accounting rules and regulations, including International Financial Reporting Standards ("IFRS") and GAAP; and (c) retaining and working with private investigators in India and the U.S. who conducted investigations in the two countries that involved, *inter alia*, numerous interviews of former Eros employees and other sources of potentially relevant information;

- consulted extensively with experts in the fields of accounting, loss causation, and damages;

- utilized this comprehensive investigation and additional research to draft and file the 66-page Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("FAC"), which asserted violations of the Securities Exchange Act of 1934 (the "Exchange Act");

- researched, drafted, and filed an opposition to Defendants' motion to

---

[4] Unless otherwise noted, all emphasis is added and internal citations and quotation marks are omitted.

[5] EIML refers to Eros International Media Limited, a publicly traded subsidiary of Eros, which trades in India.

dismiss the FAC, which led to the Court partially sustaining the FAC;

- engaged in an unsuccessful mediation process overseen by a highly experienced third-party mediator, Jed Melnick, Esq., of JAMS, which involved an exchange of written submissions concerning the facts of the case, liability and damages, and a formal mediation session;

- conducted substantial additional investigation and research and drafted the 88-page Amended Consolidated Class Action Complaint for Violations of the Federal Securities Law ("SAC") and the 146-page TAC;

- researched, drafted, and filed an omnibus opposition to the separate motions to dismiss the TAC filed by (i) defendant Parameswaran; and (ii) defendants Eros, Warren and Lulla;

- engaged in numerous meet and confer discussions with Defendants' Counsel concerning, *inter alia*, the lifting of the PSLRA automatic stay of discovery, as well as resolution of this Action;

- negotiated for Defendants to produce documents prior to a second mediation, reviewed and analyzed the approximately 16,516 pages of documents produced by Defendants, and engaged in a mediation process overseen by David Murphy, Esq. of Phillips ADR Enterprises, which involved an exchange of written submissions concerning the facts of the case, liability and damages, a full-day formal mediation session, and weeks of further negotiations that culminated in a mediator's recommendation to resolve the Action for $25 million in cash.

The Settlement is, therefore, the result of arms-length negotiations, conducted by informed and experienced counsel, overseen by a well-respected mediator. In other words, there was no collusion, and the process by which the Settlement was reached was procedurally fair.

As discussed in greater detail below and in the Joint Declaration, Lead Plaintiffs and their counsel believe that the proposed Settlement meets the standards for final approval and is in the best interests of the Settlement Class. Accordingly, Lead Plaintiffs respectfully request the Court grant the Settlement final approval.

Lead Plaintiffs also move for approval of the proposed Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Lead Plaintiffs' consulting damages expert and is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members. No Settlement Class Member is favored over another under the proposed Plan; rather, all Settlement Class Members—including Lead Plaintiffs—are treated in the same manner. ¶¶69-73. The Plan of Allocation is, therefore, fair and reasonable and, as such, it too should be approved.

## II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the factual background and procedural history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation of the Net Settlement Fund. ¶¶12-76.

## III.    THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e) requires court approval for any settlement of a class action, and courts within this circuit have a "strong judicial policy in favor of class action settlement[.]" *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593-95 (3d Cir. 2010); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

6

"Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."  *Ehrheart*, 609 F.3d at 594.  This is particularly true for class actions involving complex litigation and securities matters.  7 Conte & Newberg, *Newberg on Class Actions* §22.91 at 386-387 (4th ed. 2002) ("Securities suits readily lend themselves to compromise, because of the notable unpredictability of result and the potential for litigation spanning  up to a decade or more"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement[s], particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

Rule 23(e) provides that the Court should grant final approval to a class action settlement if it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Rule 23(e)(2)—which governs final approval— requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

> (A)   have the class representatives and class counsel adequately represented the class;
> (B)   was the proposal negotiated at arm's-length;
> (C)   is the relief provided for the class adequate, taking into account:
>   > (i)    the costs, risks, and delay of trial and appeal;
>   > (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   > (iii)  the terms of any proposed award of attorneys' fees, including timing of payment; and

7

> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    does the proposal treat class members equitable relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expect to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919).

These factors are not, however, exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* at 918; *see also Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019) ("The 2018 Committee Notes to Rule 23 recognize that, prior to this amendment, each circuit had developed its own list of factors to be considered in determining whether a proposed class action was fair and explain that the goal of the amendment is not to displace any such factors, but rather to focus the parties the 'core concerns' that motivate the fairness determination."). For this reason, the traditional factors that are utilized by courts in the Third Circuit—known as the "*Girsh* factors"—to evaluate the propriety of a class action settlement (certain of

which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (*citing Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164-65 (3d Cir. 2006) (same).[6]

In sum, although the specific factors by which a settlement is evaluated may have changed in some respects, what has not changed is that "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments (324 F.R.D. at 918).

### A.   Lead Plaintiffs And Their Counsel Adequately Represented The Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." "The adequacy requirement entails two inquiries: (1) whether the attorneys retained by

---

[6] The *Girsh* factors "are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010).

the named Plaintiffs are qualified, experienced, and generally able to conduct the litigation; and (2) whether the named Plaintiffs themselves have interests that are antagonistic to or in conflict with those they seek to represent." *Inmates of Northumberland Co. Prison v. Reish*, 2009 WL 8670860, at *20 (M.D. Pa. Mar.17, 2009) (citing *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)).

Here, Lead Plaintiffs' claims are typical and coextensive with the claims of the Settlement Class, and they have no antagonistic interests. Lead Plaintiffs, like all other Settlement Class Members, are investors who purchased Eros Securities during the Settlement Class Period and allegedly suffered damages as a result of Defendants' allegedly wrongful conduct. Their interest in obtaining the largest possible recovery is, therefore, aligned with the other Settlement Class Members. *See In re Schering-Plough Corp.*, 2012 WL 4482032, at *6 (D.N.J. Sept. 25, 2012) ("[W]hen Lead Plaintiffs have a strong interest in establishing liability under federal securities law, and seek similar damages for similar injuries, the adequacy requirement can be met."); *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764 (2d Cir. 2020) (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member"). In addition, Lead Plaintiffs diligently oversaw the litigation, communicated with their counsel regularly, reviewed court filings and orders, and were fully engaged in the settlement process. *See* Ex. 4 ("Opus Decl.") at ¶¶4-6; Ex. 5 ("AI Decl.") at ¶¶4-6. Lead

Plaintiffs' active participation in the Action reinforces the reasonableness of the Settlement. *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("[U]nder the PSLRA, a settlement reached under the supervision of appropriately selected [L]ead [P]laintiffs is entitled to an even greater presumption of reasonableness.").

Lead Plaintiffs also retained counsel that have extensive experience and expertise litigating complex securities class actions throughout the United States, and they are qualified and able to conduct this litigation, as the Court recognized when appointing them to serve as lead and liaison counsel under the PSLRA. *See* ECF No. 20 at 24-25 ("both firms [Glancy Prongay & Murray LLP ("GPM") and Carella Byrne Cecchi Olstein Brody & Agnello, PC ("Carella Byrne")] have substantial experience litigating securities fraud class actions and are thus competent to fulfill the duties of lead counsel and liaison counsel."); *see also* Ex. 2-C (GPM firm resumé); Ex. 3-C (Carella Byrne firm resumé). Moreover, the firms have demonstrated their abilities and commitment to this litigation by, among other things, surviving Defendants' initial motion dismiss despite the PSLRA's heightened pleading standard and automatic stay of discovery, and refusing to settle at the first mediation in order to continue litigating with the goal of securing a better recovery for the Settlement Class. Based on these efforts, as well as a preliminary review of the results achieved, the Court has already found, for purposes of the

11

proposed Settlement, that Lead Plaintiffs "have and will fairly and adequately represent and protect the interests of the Settlement Class" (ECF No. 85 at ¶2); and that GPM and Carella Byrne are fit to serve as "Class Counsel for the Settlement Class" pursuant to Fed. R. Civ. P. 23(g). *Id*. at ¶3.

**B.     The Settlement Resulted From Arm's-Length Negotiations**

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's-length."  Here, the Settlement was negotiated by counsel with extensive experience in securities litigation, who were well versed in the strengths and weaknesses of their respective positions, under the auspices of a highly respected mediator who ultimately made a mediator's recommendation that the Parties accepted.  *See* Ex. No. 2-C (GPM firm resumé); Ex. No. 3-C (Carella Byrne firm resumé).  Accordingly, this factor weighs in favor of final approval.  *See Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's[-]length and without collusion between the parties."); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020) (where the settlement that was the result of a mediator's recommendation following two mediations, "[i]t is evident that the Settlement was conducted at arms-length").

12

### C.     The Relief Provided To The Settlement Class Is Adequate

Rule 23(e)(2)(C)(i) overlaps significantly with *Girsh* (*e.g.*, factors 1, 4-9), and both sets of factors advise the Court to consider the adequacy of the settlement relief given the costs, risks, and delay that trial and appeal would inevitably impose. *Compare* Fed. R. Civ. P. 23(e)(2)(C)(i) *with Girsh,* 521 F.2d at 157. Thus, the *Girsh* factors, analyzed below, inform the Rule 23(e)(2)(C)(i) inquiry.

### 1.     The Complexity, Expense, And Likely Duration Of The Litigation Support Final Approval Of The Settlement

The first *Girsh* factor, the complexity, expense, and likely duration of the litigation, militate in support of final approval of the Settlement. Indeed, as this Court has recognized, "[f]ederal securities class actions by definition involve complicated issues of fact and law." *Dartell v. Tibet Pharms., Inc.*, 2017 WL 2815073, at *4 (D.N.J. June 29, 2017); *see also In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000) ("[L]arge class actions alleging securities fraud" are "inherently complicated.").

This case is no different. If this litigation were to continue, Lead Plaintiffs would have to retain experts to opine on several topics such as accounting standards, market efficiency, loss causation, and damages. This would have substantially increased the cost of litigation, and the testimony on these issues would be incredibly complex.

Moreover, many Defendants and witnesses reside in India and elsewhere

13

internationally, and Eros had subsidiaries based all over the world, including in India, Dubai, and London.  The global nature of the alleged fraud adds another layer of risk, complexity, and expense to the prosecution of the case.  For instance, to obtain documents and take depositions outside the United States, Lead Plaintiffs would have to follow appropriate international conventions and/or apply to this Court for letters rogatory.  This would be an extremely time-consuming process, and there is no guarantee it would succeed.  *See Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012) ("Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient."); *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117 (S.D.N.Y. 2019), on reconsideration in part, 2019 WL 5287931, at *120-121 (S.D.N.Y. Sept. 20, 2019) ("The Court notes that the UK has "reserved its rights to impose stricter pretrial discovery standards when evaluating letters rogatory received from foreign nations.").  Similarly, documents and testimony obtained may have been in languages other than English, which would have required having multiple interpreters at the depositions, and the retention of bilingual attorneys to facilitate the review of documents.  *See Monsanto Intern. Sales Co., Inc. v. Hanjin Container Lines, Ltd.*, 770 F. Supp. 832, 836 (S.D.N.Y. 1991) (describing the necessary but "significant cost" associated with translating foreign language records,

14

"[b]ecause English-speaking lawyers would try the case . . . [and] the parties would have to translate far more documents and deposition testimony in order for trial attorneys to ascertain what they should or should not offer at trial").  As a result, the complexity, expense, and likely duration of these proceedings favor approval of the Settlement.  *See Dartell*, 2017 WL 2815073, at \*6.

### 2.     Lead Plaintiffs Faced Risks On The Merits

The fourth, fifth, and sixth *Girsh* factors—the risks of establishing liability, establishing damages, and maintaining the class action through the trial—also support approval.  While Lead Plaintiffs believe their claims to be meritorious, they also recognize that Defendants, who deny all liability, have potentially viable defenses, including arguments cutting against falsity and scienter.  Indeed, Defendants had previously achieved dismissal of most of Lead Plaintiffs' case before this Court (*see In re Eros Int'l plc Sec. Litig.*, 2021 WL 1560728, at \*16 (D.N.J. Apr. 20, 2021)), as well as the complete dismissal of a different securities case, involving some of the same counsel, where Eros was the defendant, which was affirmed by the Second Circuit.  *See Eisner v. Eros Int'l plc*, 735 F. App'x 15, 16 (2d Cir. 2018) ("After reviewing the whole record, we affirm the District Court's judgment for substantially the same reasons as those given by the District Court") (citing *Eisner v. Eros Int'l plc*, No. 1:15-cv-08956-AJN (S.D.N.Y. Sept. 22, 2017)).  And while the legal theories differed between this case and the previous Eros

15

securities action, the fact that those defendants ***completely*** defeated a securities fraud case—and the dismissal was affirmed by the Second Circuit—demonstrates that Defendants can aggressively defend a securities fraud class action (including through appeal), and that the instant Action was not without risk.

Here, too, Plaintiffs might not have been able to defeat Defendants' pending motion to dismiss, let alone prevail at summary judgment and trial. *See In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 645 (D.N.J. 2004) (proving liability, particularly scienter, "would have been very difficult" and based on risks and contingencies, settlement is reasonable given risks involved in establishing liability); *In re Ocean Power Techs., Inc.*, *Sec. Litig.* 2016 WL 6778218, at \*19-\*20 (D.N.J. Nov. 15, 2016) (recognizing the difficulty of establishing liability in securities class action and the added risk of establishing damages).

Lead Plaintiffs also faced hurdles in obtaining class certification. Among other things, Defendants would likely argue that the market for Eros Securities was not efficient. While Lead Plaintiffs believe they had the better argument on this issue, Lead Plaintiffs are aware that late in the Settlement Class Period analysts began dropping coverage as Eros's market capitalization continued to decline.[7] In short, class certification was not a forgone conclusion. *See In re Marsh &*

---

[7] Eros's securities were subsequently delisted from the NYSE. ¶53.

16

*McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at \*6 (S.D.N.Y. Dec. 23, 2009) ("the uncertainty surrounding class certification supports approval of the Settlement").

Defendants would also contest that Lead Plaintiffs suffered damages. Indeed, in securities class actions the issue of damages often turns into a "battle of the experts," with no guarantee who will prevail. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 539 (D.N.J. 1997) (a "jury's acceptance of expert testimony is far from certain, regardless of the expert's credentials. And, divergent expert testimony leads inevitably to a battle of the experts."), *aff'd,* 148 F.3d 283 (3d Cir. 1998). Such a battle would also increase the expense and thereby further deplete insurance, and a jury might credit Defendants' experts and, accordingly, reject Lead Plaintiffs' claims. *See In re Par Pharm. Sec. Litig.,* 2013 WL 3930091, at \*6 (D.N.J. July 29, 2013) (noting "the inherent unpredictability and risk associated with damage assessments in the securities fraud class-action context"). In contrast, the Settlement provides a favorable and immediate result for the Settlement Class while avoiding the significant risks of establishing liability and damages. *See In re Facebook, Inc. IPO Sec. and Derivative Litig.*, 2015 WL 6971424, at \*5 (S.D.N.Y. Nov. 9, 2015) ("[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount Plaintiffs' losses.

17

Under such circumstances, a settlement is generally favored over continued litigation.").

### 3. The Settlement Amount Is Within The Range Of Reasonableness In Light Of The Best Possible Recovery And Attendant Risks Of Litigation

The seventh, eighth, and ninth *Girsh* factors—the ability of the defendants to withstand a greater judgment, and the range of reasonableness of the settlement fund given the best possible recovery and considering all the attendant risks of litigation—strongly support final approval. This is especially true given Lead Plaintiffs' concerns about potential collection issues. Eros is incorporated in the Isle of Man, has been delisted from the NYSE, and the company's insurance policies, which are the source of the settlement, are wasting. Thus, even if Lead Plaintiffs secured a judgment greater than the Settlement Amount—an occurrence that would be many years from now given the relatively early procedural posture of the case—there is no guarantee that they would be able to collect on it. *See Dartell*, 2017 WL 2815073, at *6 ("If the parties did not settle and instead continued with discovery and motions for summary judgment, the insurance funds available for any potential settlement would be quickly diminished and perhaps exhausted."); *see also In re Advanced Battery Tech., Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014) ("settlement amount is sufficient when limited insurance coverage, minimal domestic assets, and significant risk of being unable

18

to collect any judgment against the [] Defendants are taken into account").

Despite these serious limitations, and others, the proposed Settlement recovers $25 million in cash for the Settlement Class. This is an excellent result. Lead Plaintiffs' damages expert estimates that *if* Lead Plaintiffs had fully survived Defendants' motions to dismiss, prevailed on their claims at both summary judgment and after a jury trial, *if* the Court certified the same class period as the Settlement Class Period, *and if* the Court and jury accepted Lead Plaintiffs' damages theory, including proof of loss causation as to each of the stock price drop dates alleged in this case—*i.e.*, Lead Plaintiffs' best-case scenario—estimated total *maximum* class wide damages would be approximately $389.2 million. Under this scenario, the recovery is approximately 6.4% of maximum classwide damages.

This case was not, however, risk free, and there were meaningful barriers to recovery, including, but certainly not limited to, the PSLRA's heightened pleading standard and automatic stay of discovery. For example, the Court had already dismissed the majority of Plaintiffs' claims and could do so again. *See In re Eros*, 2021 WL 1560728. If only the current claims were successful, maximum recoverable damages were only approximately $31.3 million—for which the proposed Settlement represents roughly an 80% recovery. A recovery in the range of 6.4%-80% is well above the 1.8% median recovery in securities class actions settled in 2022, and significantly higher than the 2.4%-5.2% median recovery in

19

securities cases with similar damages that settled between December 2011-December 2022. *See* Ex. 6 (NERA Report), at 18 (Fig. 19) (median recovery in securities class actions in 2022 was approximately 1.8% of estimated damages); at 17 (Fig. 18) (median recovery for securities class actions that settled between December 2011 and December 2022 was 2.4% for cases with estimated damages between $200-$399 million, and 5.2% for those with estimated damages of $20-$49 million). Given the range of possible results in this litigation, there can be no question that the Settlement constitutes a fair result and weighs heavily in favor of final approval.

### D.    The Other Rule 23(e)(2)(C) Factors Are Met

Rule 23(e)(2)(C) provides three more factors to consider in approving a settlement: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees; and (iii) the existence of any other "agreements." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports approval of the Settlement or is neutral and thus does not suggest any basis to conclude the Settlement is inadequate.

### 1.    The Proposed Method for Distributing Relief Is Effective

The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for accomplishing both tasks. Here, as required by the Preliminary

20

Approval Order, the Court-approved Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), mailed the Notice and Claim Form to approximately 22,860 potential Settlement Class Members, caused the Summary Notice to be published in *Investor's Business Daily* and transmitted over the *PR Newswire*, and made the Notice, Claim Form, and other important documents available on a settlement specific website (www.ErosSecuritiesSettlement.com).  Ex. 1 ("Mahn Mailing Decl."), ¶¶10, 13, & 17-19.  Settlement Class Members could mail their Claims to Epiq, or file Claims online.  *Id*. at ¶17 & Ex. A.

Upon receipt of Settlement Class Members' Claims, Epiq will process claims under Lead Counsel's guidance, allow claimants an opportunity to cure any deficiencies in their claims or request the Court review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval.  *See* Stipulation, ¶¶22 & 26. Claims processing like the method proposed here is standard in securities class action settlements as it has long been found to be effective, as well as necessary insofar as neither Lead Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[8] *See  O'Hern v. Vida Longevity Fund, LP*, 2023 WL 3204044, at *7 (D. Del. May 2,

---

[8] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement Amount based on the number or value of the claims submitted.  *See* Stipulation, ¶15.

2023) (finding nearly identical "method[] of distributing relief to class members is adequate and not overly burdensome."); *see also Becker v. Bank of New York Mellon Trust Co., N.A.*, 2018 WL 6727820, at *7 (E.D. Pa. Dec. 21, 2018) (holding that "[t]he requirement that class members submit documentation to substantiate their holdings of the bonds as of the record date will facilitate the filing of legitimate claims, yet is not overly demanding given the range of permissible documentation.").

## 2. The Proposed Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." The Settlement provides that Lead Counsel will apply to this Court for an award of attorneys' fees not to exceed 33⅓% of the Settlement Fund, which is consistent with attorneys' fees regularly approved in similar complex litigation. *See, e.g.*, *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 settlements demonstrates "average attorney's fee percentage . . . [of] 31.71%" with a median value that "turns out to be one-third"); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *12 (D.N.J. Nov. 9, 2005) (awarding one-third of $75 million); *Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) (awarding 33⅓% and noting that "awards in similar common fund cases appear analogous" and award was "consistent with other similar cases").

In terms of timing, courts routinely order that "[t]he awarded attorneys fees and expenses shall be paid immediately to Lead Counsel subject to the terms, conditions, and obligations of the Stipulation." *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019); *In re Limelight Networks, Inc. Sec. Litig.*, 2011 WL 13185749, at *2 (D. Ariz. Mar. 23, 2011). This prevents objectors from attempting to "hold up" plaintiffs' counsel by delaying payment through frivolous appeals.

Finally, it is important to note that approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation, ¶18.

### 3. The Parties Have One Other Agreement

Rule 23(e)(2)(C)(iv) calls for disclosure of any other agreements entered into in connection with the settlement of a class action. The Parties have entered into one confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a specific percentage of shares of the Eros Securities eligible to participate in the Settlement request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."

23

*Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *see also O'Hern* , 2023 WL 3204044, at *7  (characterizing "agreement allowing Defendants to terminate the settlement if the exclusion requests exceed a specific threshold" as "standard").

### 4.    All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Here, the Plan of Allocation does not grant preferential treatment to Lead Plaintiffs or any Settlement Class Member. Under the proposed Plan of Allocation,[9] each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  The Plan of Allocation was formulated by Lead Counsel and its consulting damages expert based on Lead Plaintiffs' theory of liability, thereby ensuring its fairness and reliability.  *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34, 240 (E.D. Mich. 2016) (denying objection where the "Plan of Allocation was developed based on its expert's careful damages analysis").  Because the proposed Plan of Allocation does not provide preferential treatment to any Settlement Class Member, segment of the Settlement Class, or to Lead Plaintiffs, this factor supports final approval of the proposed Settlement.  *See O'Hern*, 2023 WL 3204044, at *7 (finding

---

[9] The proposed Plan of Allocation is set forth in paragraphs 50-68 of the Notice.  Ex. 1 (Mahn Mailing Declaration), at Exhibit A (Notice).

24

plan of allocation where each class member would receive their *pro rata* share of the funds based on calculation of recognized losses "treats all class members equitably").[10]

### E.    The Other *Girsh* Factors Support Final Approval

The final two *Girsh* factors—the reaction of the settlement class and stage of the proceedings/amount of discovery completed—also militate in favor of final approval.

### 1.    The Reaction Of The Settlement Class Favors Approval

"This factor requires the Court to evaluate whether the number of objectors, in proportion to the total class, indicates that the reaction of the class to the settlement is favorable." *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at \*2 (D.N.J. Oct. 1, 2013), appeal dismissed (Apr. 17, 2014).  It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the settlement are favorable to the class members.  *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 185 (E.D. Pa. 1997) (stating that a "relatively low objection rate militates strongly in favor of approval of the settlement").

---

[10] Pursuant to the PSLRA, Lead Plaintiffs may separately seek reimbursement of costs (including lost wages) incurred as a result of their representation of the Settlement Class.  *See* 15 U.S.C. §78u-4(a)(4).

Here, the Court's Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") established a detailed plan to provide notice to the Settlement Class, which Lead Plaintiffs and the Claims Administrator followed. *See* Ex. 1 (Mahn Mailing Declaration), ¶¶4-13, 17-18. While the time to object to the Settlement has not passed, no Settlement Class Member has objected to, nor requested exclusion from, the Settlement.[11] *Id*. at ¶¶20-23. The lack of objections and opt outs further supports the conclusion that the Settlement merits final approval. *See O'Hern*, 2023 WL 3204044, at *7 ("When there are many class members and few objectors, there is a strong presumption in favor of approving the class action settlement under the second *Girsh* factor.").

### 2. The Stage Of The Proceedings And The Amount Of Discovery Completed

"Courts in this Circuit frequently approve class action settlement despite the absence of formal discovery." *In re Ocean Power*, 2016 WL 6778218, at *17 (citing cases); *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *13 (D.N.J. Nov. 10, 2016) (same). This is because the relevant inquiry under the third *Girsh* factor is "whether Plaintiffs had an adequate appreciation of the merits of the case before negotiating settlement." *In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *5

---

[11] The deadline to request exclusion from, or to object to any aspect of, the Settlement is November 7, 2023. If objections or requests for exclusions are received after the date of this filing, they will be addressed on reply.

26

(D. Del. Nov. 19, 2018).

Here, discovery was stayed due to the PSLRA. Lead Plaintiffs and their counsel were, nevertheless, adequately informed of the relative strengths and weaknesses of their case. In addition to conducting an extensive investigation, responding to three motions to dismiss, filing three amended complaints, working with investigators in the U.S. and India, consulting with accounting, loss causation and damages experts, and participating in two full day mediations during which the Parties debated the merits of the Action, Defendants produced approximately 16,516 pages of documents prior to the second mediation. These steps, among others, gave Lead Plaintiffs and their counsel a clear and realistic understanding of the facts, legal issues, and risks of continued litigation, as well as the value of the case. *See* ¶¶12-30. Consequently, this factor weighs in favor of final approval. *See Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *7 (D.N.J. Sept. 10, 2009), as amended (Sept. 14, 2009) ("Thus, even though the action settled at a relatively early stage [after the denial of the motion to dismiss but before discovery] in the proceedings, the Court finds that counsel on both sides of the table are experienced and able litigators, and that the parties have sufficiently apprised themselves of the relevant facts and law to make a knowledgeable decision as to settlement."), *aff'd*, 423 F. App'x 131 (3d Cir. 2011); *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to

27

formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the . . . industry.  The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

In sum, the Rule 23(e)(2) and *Girsh* factors overwhelmingly support final approval of the Settlement.

## IV.    <u>THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED</u>

The Court's July 11, 2023, Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 85 at ¶1.  There have been no changes to alter the propriety of class certification for settlement purposes.  Thus, for the reasons stated in Lead Plaintiffs' Preliminary Approval Brief (*see* ECF No. 81-1 at pp. 29-35), Lead Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## V.    <u>THE PLAN OF ALLOCATION SHOULD BE APPROVED</u>

Approval of a "plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate."  *Par Pharm.*, 2013 WL 3930091, at *3; *see also Schering-Plough ERISA*, 2012 WL 1964451, at

*2 (same); *Walsh v. Great Atl. & Pac. Tea Co. Inc.*, 726 F.2d 956, 964 (3d Cir. 1983) ("The [C]ourt's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the Fund"). To meet this standard, a plan of allocation recommended by experienced and competent class counsel "need only have a reasonable and rational basis." *Par Pharm.*, 2013 WL 3930091, at *8; *see In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). Further, "[a] plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Lucent Techs.*, 307 F. Supp. 2d at 649.

The proposed Plan of Allocation here is contained in the Notice that was mailed to potential Settlement Class Members and published on the case website. *See* Ex. 1 (Mahn Mailing Declaration), Exhibit A at ¶¶50-68. The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among those Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing. The computations under the Plan of Allocation are a method to weigh the Claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund. *Id.* at ¶¶50-52.

Under the Plan of Allocation, a Claimant's Recognized Claim is calculated based on the estimated alleged artificial inflation in the price of Eros Securities

during the Settlement Class Period, as determined by Lead Plaintiffs' damages consulting expert. Lead Plaintiffs' damages consulting expert reviewed publicly available information regarding Eros, and performed statistical analyses of the price movements of Eros Securities relative to the price performance of market and peer indices during the Settlement Class Period. From this data, she calculated the alleged artificial inflation by isolating the losses in Eros Securities that resulted from the alleged violations of the federal securities laws, eliminating losses attributable to market factors, industry factors, or Company-specific factors unrelated to the alleged violations of law. The amount of artificial inflation in Eros Securities on each day of the Settlement Class Period is set forth in Table 1 in the Notice. *See* Notice at 7.

Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase or other acquisition of Eros Securities during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided. The calculation of Recognized Loss Amounts will depend upon several factors, including when each Authorized Claimant purchased and/or sold Eros Securities, the transactions prices, and requires that the Eros Securities be held over an alleged corrective disclosure date in order for an Authorized Claimant to have a Recognized Claim. In general, the Recognized Loss Amount will be the difference between the estimated artificial inflation on the date of purchase and the estimated artificial inflation on the date of sale, or the difference between the actual purchase

30

price and sale price, whichever is less. The Recognized Loss Amount also incorporates the "90-day look back" provision of the PSLRA. *See* Notice at ¶56. The sum of a Claimant's Recognized Loss Amounts is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *See* Notice at ¶¶59-60.

Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as result of the conduct alleged in the Action and should be approved by the Court. *See In re Schering-Plough Corp. Sec. Litig.*, 2009 WL 5218066, at *5 (D.N.J. Dec. 31, 2009) (approving plan of allocation in part because "it was fashioned by experienced class counsel"); *Harris v. U.S. Physical Therapy, Inc.*, 2012 WL 3277278, at *7 (D. Nev. July 18, 2012) ("Based on counsels' knowledge of the specific facts of this action, experience in settlements such as this, and opinion that the settlement [is fair, reasonable, and adequate," this factor weighs in favor of granting approval of the settlement.). Moreover, to date, no Settlement Class Members have objected to the Plan of Allocation, further supporting approval of the Plan of Allocation.[12] The Court should, therefore,

---

[12] *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *14 (S.D.N.Y. Nov. 7, 2007).

approve the Plan of Allocation. *See McDermid v. Inovio Pharms., Inc.*, 2023 WL 227355, at *9 (E.D. Pa. Jan. 18, 2023) (approving substantially similar plan of allocation); *In re Innocoll Holdings Public Ltd. Co. Sec. Litig.*, 2022 WL 16533571, at *8 (E.D. Pa. Oct. 28, 2022) (finding the plan of allocation fair, reasonable, and adequate where the claim for each "class member's recognized loss is based on when the securities were purchased and sold" and where the "Settlement fund is then allocated *pro rata* based on the adjusted recognized loss.").

## VI.    CONCLUSION

For the reasons stated herein and in the Joint Declaration, Lead Plaintiffs respectfully request that the Court approve of the proposed Settlement and proposed Plan of Allocation as fair, reasonable, and adequate.[13]

Dated: October 23, 2023              Respectfully Submitted

                                     **CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**

                                     By:  *s/ James E. Cecchi*
                                     James E. Cecchi
                                     Donald A. Ecklund
                                     Kevin G. Cooper
                                     5 Becker Farm Road
                                     Roseland, New Jersey 07068
                                     Telephone: (973) 994-1700
                                     Email: jcecchi@carellabyrne.com

---

[13] Proposed orders will be submitted with Lead Plaintiffs' reply papers, after the deadlines for objections and seeking exclusion have passed.

**GLANCY PRONGAY & MURRAY LLP**
Kara M. Wolke
Leanne Solish
Raymond Sulentic
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: kwolke@glancylaw.com

*Counsel for Lead Plaintiffs*
*and the proposed Settlement Class*

33

# CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2023, I caused the foregoing to be filed electronically with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties.

Respectfully submitted,

October 23, 2023

*/s/ James E. Cecchi*
James E. Cecchi

34