**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

**CIVIL ACTION NUMBER:**

**IN RE:**

**2:19-cv-14125-ES**

**EROS INTERNATIONAL PLC**
**SECURITIES LITIGATION**        **FAIRNESS HEARING**

_____        **Pages 1 - 31**

    Martin Luther King Building & U.S. Courthouse
    50 Walnut Street
    Newark, New Jersey 07102
    Tuesday, November 28, 2023
    Commencing at 1:59 p.m.

**B E F O R E:**              **THE HONORABLE ESTHER SALAS,**
                         **UNITED STATES DISTRICT JUDGE**


**A P P E A R A N C E S:**

    CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, PC
    BY:  JAMES E. CECCHI, ESQUIRE
    5 Becker Farm Road
    Roseland, New Jersey 07068
    For the Plaintiffs, Opus Chartered Issuances, S.A.,
    Compartment 127 and AI Undertaking IV

    GLANCY PRONGAY & MURRAY LLP
    BY:  JOSEPH D. COHEN, ESQUIRE
         KARA M. WOLKE, ESQUIRE
         MICHAEL INNES, ESQUIRE
    1925 Century Park East, Suite 2100
    Los Angeles, California 90067
    For the Plaintiffs, Opus Chartered Issuances, S.A.,
    Compartment 127 and AI Undertaking IV

        Mary Jo Monteleone, Official Court Reporter
              maryjomonteleone@gmail.com
                   (973) 580-5262
        Proceedings recorded by stenographically;
  transcript produced by computer-aided transcription.

_United States District Court_
_District of New Jersey_

(Continuing)

**A P P E A R A N C E S:**

LEVINE LEE LLP
BY:  CHAD P. ALBERT, ESQUIRE
     SCOTT B. KLUGMAN, ESQUIRE
1500 Broadway, Suite 2501
New York, New York 10036
For the Defendants, Eros Media World PLC, Kishore Lulla
and Andrew Warren

KASOWITZ BENSON TORRES LLP
BY:  ANDREW W. BRELAND, ESQUIRE
1633 Broadway
New York, New York 10019
For the Defendant, Prem Parameswaran

(PROCEEDINGS held in open court before **The Honorable ESTHER SALAS**, United States District Judge, at 1:59 p.m.)

THE COURTROOM DEPUTY:  All rise.

THE COURT:  All right.  Good afternoon, everyone.

MR. CECCHI:  Good afternoon, Your Honor.

MR. ALBERT:  Good afternoon, Your Honor.

THE COURT:  Please be seated.  So we're on the record in the matter of *In re Eros International PLC Securities Litigation*, Civil Action Number 19-14125.

The Court is prepared to conduct a fairness hearing in anticipation of the final approval of the class action settlement.

Can I have appearances by counsel, starting with the plaintiff.

MR. CECCHI:  Good afternoon, Your Honor, James Cecchi, Carella Byrne, on behalf of the plaintiffs.  With me today I have my colleagues, Joe Cohen and Kara Wolke, from Glancy Prongay from California, and I also have with me two of my partners, Kevin Cooper and Michael Innes.

THE COURT:  Good to see all counsel.

And for the defense.

MR. ALBERT:  Your Honor, for the defense, my name is Chad Albert from Levine Lee LLP.  I'm here with my colleague Scott Klugman.  We represent the Defendants Eros International PLC, Kishore Lulla, and Andrew Warren.

MR. KLUGMAN:  Good afternoon, Your Honor.

MR. BRELAND:  And good afternoon, Your Honor, Andrew Breland from Kasowitz, Benson, Torres, on behalf of the Defendant, Prem Parameswaran.

THE COURT:  Good afternoon.  I'm glad we are able to start right on time.  We do have a jury that's deliberating and I wanted to get you all in, perhaps before any questions come in.

Lead Plaintiffs, Opus Chartered Issuances S.A., Compartment 127 ("Opus") and AI Undertaking IV -- I'm going to refer to it as "AI" -- brought this securities class action under Section 10(b) and Rule 10(b)5, as well as Section 20(a) of the Securities Exchange Act of 1934.  This action was first initiated on June 21, 2019.  (Docket Entry Number 1).

On July 1, 2020, lead plaintiffs filed and served the first amended complaint.  (Docket Entry Number 34).

On June 4, 2021, lead plaintiffs filed and served the second amended complaint (Docket Entry Number 47) and on November 5, 2021, lead plaintiffs filed and served the third amended complaint (Docket Entry Number 59).

Their third amended complaint asserted claims against Defendants Eros Media World PLC, formerly known as Eros STX Global Corporation ("Eros STX"), formerly known as Eros International PLC ("Eros International") (now "Eros"), Kishore Lulla, Prem Parameswaran, Andrew Warren, and Jyoti Deshpande

for alleged misrepresentations and/or omissions of material facts made by defendants regarding Eros's financial health. (Docket Entry Number 59).

In the instant case, the parties have participated in mediation before David Murphy beginning on November 30, 2022. (Docket Entry Number 89-2 at 13).

In December 2022, settlement negotiations culminated with the parties' acceptance of Mr. Murphy's recommendation to resolve this action for $25 million in cash.

On April 4, 2023, the parties executed a stipulation and agreement of settlement, reflecting defendants' agreement to pay a settlement amount of $25 million in cash in exchange for release of certain claims as specified in the settlement agreement.  (Docket Entry Number 89-2 at 13; Docket Entry Number 81-3 (Stipulation and Agreement of Settlement) at 13).

The parties' settlement provides for an all-cash payment of $25 million, plus interest as it accrues. (Stipulation and Agreement of Settlement at 11 & 13; Docket Entry Number 89-2 at 30).

The parties intend to deduct the following costs from the settlement:  Taxes, attorneys' fees and litigation expenses, notice and administrative expenses, and award to lead plaintiffs.  (Stipulation and Agreement of Settlement at 11 and 13; Docket Entry Number 89-2 at 30).

The settlement will pay claims of all persons and

entities who or which purchased or otherwise acquired Eros Securities between July 28, 2017 and August 3, 2021, inclusive (the "Settlement Class Period").  (Stipulation and Agreement of Settlement at 13 to 14).  And the settlement is non-reversionary, which means that any money not paid to class members does not revert to defendants.  (Docket Entry Number 89-1 at 1-2).

Class counsel is seeking an award of attorneys' fees in the amount of 33 1/3% of the settlement fund ($8,333,333, plus interest earned thereon).  They also seek reimbursement of $194,323.49 in litigation expenses, consisting of $164,323.49 in out-of-pocket costs and an aggregate award of $30,000 to lead plaintiffs (or $15,000 each).  (Docket Entry Number 90-1 at 1-2).

On April 5, 2023, lead plaintiffs filed an unopposed motion for preliminary approval of settlement.  (Docket Entry Number 81).  And on July 12, 2023, this Court issued an order preliminarily approving the settlement.  (Docket Entry Number 85).  The Court's preliminary approval order also provisionally certified the settlement class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) *(Id.* at paragraph 1-3).

Among other things, the preliminary approval order set a deadline of November 7, 2023, (21 calendar days prior to the final fairness hearing) for settlement class members to

submit objections to the settlement, the plan of allocation and/or the fee memoranda, or to request exclusion from the settlement class.  (See Id. paragraph 13 and 17).

The Court also understands that as of November 9, 2023, there are no objections to the settlement, the plan of allocation, or lead counsel's application for attorneys' fees and reimbursement of litigation expenses.  (Docket Entry Number 91-4 at paragraph 17).

The Court also understands that as of November 9, 2023, there are two requests for exclusion.  (*Id.* at paragraph 15).

Counsel for lead plaintiffs, to your knowledge, are there any objections or additional requests for exclusion that were received before or after the deadline?

MR. CECCHI:  No, Your Honor.

THE COURT:  Of course, I'm just going to state there's no one present in the courtroom other than counsel involved in this case, but had there been someone here other than the counsel I recognize, I would ask if anyone wishes to object to the settlement.

Since the record reflects that no one other than counsel in this case are here, there are no objectors present during today's oral argument.

Pursuant to the preliminary approval order, class members who wish to participate in the settlement and to be

eligible to receive a distribution from the net settlement fund must complete and submit a claim form in accordance with the instructions contained therein, and all claim forms must be postmarked no later than 120 calendar days after the notice date.  (Docket Entry Number 85 at paragraph 10).

Nevertheless, the order also provided that lead counsel may, at its discretion, accept for processing late claims, provided such acceptance does not delay the distribution of the net settlement fund to the settlement class.

The Court understands that as of November 9, 2023, 550 claim forms have been received.  (Docket Entry Number 91-4 at paragraph 8).

Lead plaintiffs have informed the Court that the claims received, both before and after the claim filing deadline, will be subject to a comprehensive review by the court appointed claim administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), under Epiq's standard claims-processing procedures, which will identify any deficiencies in the claims received.

The Court understands that Epiq will then communicate with the claimants with deficient, but correctible, claims to advise them of the defect in their claim and how they can cure the defect to bring the claim into compliance.

Accordingly, the Court understands that Epiq is

unable to report on the number of valid claims submitted at this time -- and that's *Id.* at paragraph 9.

So counsel for lead plaintiffs, do you have any updates on the Proof of Claim results received to date?  If so, what are your updates?

MR. COHEN:  Yes, Your Honor.  Epiq -- let's see -- to date, there's 1,240 claims that have been filed with Epiq.  It processed a total of 603 claims, of which 231 are provisionally valid claims, with a total recognized loss of approximately $9.855 million.

These claims have not yet been validated.  They are subject to review against the supporting documents, but on their face they appear valid.

The review process is ongoing and subject to audit. We expect more claims, mostly from institutional investors on or at the filing deadline.

THE COURT:  Thank you, counsel.

MR. COHEN:  You're welcome, Your Honor.

THE COURT:  Do defendants have anything to place on the record with respect to the claims process?

MR. ALBERT:  No, Your Honor.

THE COURT:  Again, I'm noting that no one has arrived into the courtroom.  It's been open.  It's 2:10 now.  So there is no one present here who wishes to be heard on a claim they submitted to the claims administrator and that should be

noted.

Let's start with whether the proposed settlement class should be certified under the Federal Rule of Civil Procedure 23.

I'm going to look for counsel for lead plaintiffs to outline for the record how the proposed settlement class meets all the requirements of Rule 23(a) and (b).

MR. COHEN: Your Honor, we laid out in our opening papers all the elements and nothing has changed since then. We would respectfully refer you to that.

THE COURT: All right. We generally -- and I generally like to hear counsel sort of outline preliminarily for the record, but if counsel is relying on his papers, I'll accept that.

MR. COHEN: Thank you, Your Honor.

THE COURT: Do the defendants object to the certification of the Settlement Class at this point in time?

MR. ALBERT: No, Your Honor. No objections from the defendant.

MR. BRELAND: And none for Mr. Parameswaran, Your Honor.

THE COURT: The Court finds that, based on the parties' submissions -- and I'll rely on the submissions as opposed to any amplification on the record -- that certification of the settlement class is warranted. The

settlement class meets the requirements of 23(a).

As for numerosity, while the precise number of class members is unknown, according to the SEC filings, during the settlement class period Eros had at least 357,230,123 shares issued and outstanding. (*See* Docket Entry Number 59 at paragraph 420).

Further, as of November 9th of this year, a total of 22,864 notice packets have been mailed to potential settlement class members and nominees by first class mail. (Docket Entry Number 91-4 at paragraph 6). Thus, numerosity is met. (*See In re Ikon Office Solutions Securities Litigation*, that's 194 F.R.D. 166, 175 (E.D. Pa. 2000).

As of commonality, all members of the settlement class allegedly purchased or acquired Eros Securities during the class period -- between July 28, 2017 and August 3, 2021. Therefore, the alleged actionable misrepresentations and omissions made my defendant regarding Eros's financial health raise common issues of law and fact to all members of the settlement class. Indeed, this securities action asserts a common course of misconduct. *See Ikon*, 194 F.R.D. at 175-76. For the same reasons, lead plaintiffs' claims are typical of the claims of members of the settlement class. *Id.* at 176.

As for adequacy of representation, lead plaintiffs have no conflicts with the other class members. Lead plaintiffs, like all settlement class members, purchased Eros

Securities at allegedly artificially inflated prices during the settlement class period as a result of the allege materially false and misleading statements and were alleged damaged thereby.  Accordingly, there are adequate class representatives.  *See In re Schering-Plough Corporation*, 2012 Westlaw 4482032, at 6 (D.N.J. September 25, 2012).

Further, lead plaintiffs have no conflicts with retained counsel, who have vast experience in prosecuting securities class actions.  (*See* Docket Entry Number 89-4, Exhibit 2-C and Docket Entry Number 89-5, Exhibit 3-C).  Their representations are adequate.

Finally, the class also meets the predominance and superiority requirements of Rule 23(b)(3).  Common questions predominate in that defendants' alleged omissions or misrepresentations provide the basis for liability as to all potential class members, and damages have been calculated on a class-wide basis.

Thus, as in many securities fraud class actions, the predominance requirement is readily met, particularly because the elements of the class claims are capable of class-wide proof by a preponderance of the evidence.  *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625 (1997).

And class-wide resolution is superior because (1) the controversy for each class member is identical; (2) adjudicating in one suit and one forum is the most economical

means of resolving this matter; and (3) it would not be feasible for most of the class members to pursue independent claims because their individual damages are relatively small in comparison to the substantial litigation costs.

Accordingly, the Court approves certification of the class under Rule 23 for purposes of the proposed class settlement.

Now, we're going to hear from counsel to the adequacy of notice.

Again, I turn to lead plaintiffs.  Can you outline how the class counsel followed the notice procedures approved by the Court's preliminary approval order?  That I'd like to hear you on, counsel.

MR. COHEN:  Yes, Your Honor.  Pursuant to the Court's order, we mailed notice, the notice packet, which consisted of the notice --

THE COURT:  Counsel, I'm having trouble hearing you. I'm sorry.

MR. COHEN:  I'm sorry.  Would you like me to --

THE COURT:  No, you can stay there, as long as you project and talk into that mic.  It's been a long four weeks, counsel.

MR. COHEN:  Fair enough, Your Honor.

Pursuant to the Court's preliminary approval order, we mailed the court-approved notice and the proof of claim to

all members of the settlement class that could be identified, first, from records provided from the defendants, and then to all nominees.

So the vast majority of records with respect to shareholders are held by banks, brokerage firms, and other third-party nominees.

Notice is mailed to those folks or those companies, and they are then instructed, per your order, to either provide the names and addresses to the claims administrator within one week, in which case the claims administrator then mailed the notice back to the various settlement class members, or they were required to request copies of the notice packet and they themselves mail it within seven days.

That has been done.  We've submitted the declaration of Jesse Mahn from Epiq which details that.  We also -- Epiq also published notice in the *Investor's Business Daily* as well as on the PR newswire.  So notice has been both published and mailed individually to class members.

We also established the settlement website which is dedicated to this settlement alone, which -- where class members can download information on the case, including the notice and proof of claim.  They can file claims online.  And it also contains documents, important documents filed in this case, such as the stipulation, the operative complaint, all our papers in support of final approval, the preliminary

approval order, and the fee motion.

THE COURT:  Thank you very much, counsel.

MR. COHEN:  You're welcome.

THE COURT:  Anything the defense wants to add?

MR. ALBERT:  No, Your Honor.

THE COURT:  In the Court's preliminary approval order, the Court approved the form, substance and requirements of (1) the Notice of Pendency and Proposed settlement of Securities Class Action ("Notice"); (2) the Proof of Claim and Release Form ("Claim Form"); and (3) the Summary Notice of Pendency and Proposed Securities Class Action settlement, ("Summary Notice") (Docket Entry Number 85, paragraph 8).

The approved notice procedure sought to reach the greatest number of class members possible and was the best notice practicable under the circumstances, meeting all the requirements of due process, Rule 23(c) and (e), and the Private Securities Litigation Reform Act.  (*Id.* at paragraph 8).

As outlined by lead plaintiffs' written submissions and on the record here today, the Court finds that the notice was provided to the settlement class in accordance with the process approved by the Court.  (*See* Docket Entry Number 89-3 paragraphs 4-13 and 17-19 and Exhibits A to B to Docket Entry Number 89-3).  Accordingly, the Court finds that potential members of the settlement class were adequately noticed.

Next, we're going to hear from counsel on why the settlement should be approved.

I start with counsel for the lead plaintiffs.  Can you first outline how the settlement here is entitled to an initial presumption of fairness, counsel?

MR. COHEN:  Yes, Your Honor.  It's entitled to an initial presumption of fairness because it was negotiated at arm's length by informed counsel.

The settlement followed extensive litigation on the pleadings, including a decision on the motion to dismiss, wherein the Court granted the vast majority of the defendants' motion.

We followed that up by submitting a second amended complaint, as well as a third amended complaint, which was subject to further motions to dismiss.  Those were pending at the time we reached settlement.

But in-between, we also went to mediation.  And during the first mediation, plaintiffs refused to settle because they didn't think that they had an adequate -- there wasn't an adequate offer on the table.  So I think that demonstrates that we didn't just take whatever was given.

Before going to the second mediation, we requested the defendants produce a core set of documents, which they did.  They produced 16,000 -- approximately 16,500 pages of documents.  Those were reviewed and, again, we went to

mediation, this time before a second mediator, a different one; both of whom were highly sophisticated and specialized in these types of cases.

Again, we were unable to reach a resolution. Nevertheless, discussions continued over the next several weeks, and ultimately, the mediator made a recommendation of $25 million, which both parties accepted.

I would submit that the settlement is the result of hard-fought litigation.

THE COURT:  Four and a half years.

MR. COHEN:  Yes, ma'am.

THE COURT:  And you outlined in your papers, on pages 4 and 5, really, an extensive amount of litigation that went under way, and I think that you definitely took advantage of both mediators, and ultimately, were able to reach very hard-fought negotiations and settlement in this case.

Thank you so much, counsel.

MR. COHEN:  Thank you.

THE COURT:  Actually, before you sit down, counsel, can you just, if you will, tell me why the proposed settlement is fair and reasonable and adequate under 23?

And also, just cover the *Girsh* factors and *Prudential* factors in response to the Court.  I just want the record to also reflect those.

MR. COHEN:  Sure, Your Honor.

I think both of those, both the Rule 23 and the *Girsh* factors, look at two things:  They look at procedural fairness, which we've just covered, and then they also cover substantive fairness.

And many of the factors overlap, but going through *Girsh:*  Complexity -- the first *Girsh* factor is complexity, expense, and likely duration of the litigation.

As you're order in *Par Pharmaceuticals* acknowledges, securities cases are inherently complex.  More so here because of the international dimensions of the case.  Many of defendants and witnesses reside in India and elsewhere internationally, and Eros has subsidiaries based all over the world, including India, Dubai, and London.

Our investigation required us to hire investigators in both the U.S. and in India, so that made it harder.

It was also -- some of the wrongdoing took place as early as 2017, so witnesses were very hard to locate, especially for the allegations relating to the earlier time period.

Absent settlement, the case would have continued for many more years.

In terms of risk, the fourth, fifth and sixth *Girsh* factors -- risk maintaining liability, establishing damages, and maintaining the class action through trial -- this case was litigated under the PSLRA.  As a result, it was a

heightened pleading standard.  There is also an automatic stay of discovery, both of which hamper plaintiffs.

We've cited to the Maier report in our papers, which explains how a substantial number of these cases are dismissed at the outset.  In fact, this case was substantially dismissed at the outset.  We were only allowed to proceed on three of our statements.

At the time the settlement was reached, two more motions to dismiss were pending.  There's no guarantee the result would have been different.

Defendants would have argued, among other things, that accounting rules are inherently subjective, that they relied upon experts, and they disclosed bad news in a timely manner thereby demonstrating a lack of scienter.

Damages are always an issue in a securities case. They are subject to the inevitable battle of experts and there are just tremendous risks there.  There is no way of knowing who the jury is going to believe.

There was also a collection risk here.  Eros has been de-listed.  It is -- the vast majority of the settlement is being paid by insurance.  Insurance proceeds waste.  Had it continued, there's no guarantee there would have been more money left at the end of the day.

Eros is also incorporated in the Isle of Man and the defendants are located throughout the world, so the chances of

collecting were slim if we didn't get the insurance proceeds.

Class certification was also an issue. It was not guaranteed. As Eros's market cap diminished, fewer and fewer analysts were covering it. As a result, defendants would argue that it was not an efficient market, especially towards the end of the class period.

The seventh, eighth and ninth *Girsh* factors relate to the ability -- I'm sorry, the ability of the defendants to withstand the greater judgment, the reasonableness of the settlement given the best possible recovery, and considering the attendant risks of litigation.

We would submit this is an outstanding result. The $25 million recovery equates to approximately 6.4 percent, that 80 percent of the settlement class's maximum recoverable damages.

The 6.4 percent figure assumes plaintiffs had completely prevailed against the pending motions to dismiss and on appeal with respect to liability, loss causation, and damages. If that had been the case, damages would have been $389 million. The median recovery for security cases with similar damages is 2.4 percent.

Our recovery for, assuming $389 million damages figure, is 6.4 percent, which is two and a half -- 2.7 times higher.

Of course, at the time we settled we hadn't even

prevailed against the current motion to dismiss.

Based on the outstanding statements that we were proceeding on, damages were only $31 million.  So the $25 million recovery equates to a recovery of about 80 percent damages.  That's outstanding.

The average recovery for a case that size is 5.7 percent.  So we've recovered over 15 times more than the average.

In terms of the reaction of the settlement class, there have been no objections and only two opt-outs.

We covered, you covered the stage of the litigation. And the other Rule 23(c) factors are also met.

We've discussed the method of distributing relief.

The terms of the proposed attorneys' fees, we're asking for a third.  There have been no objections.

THE COURT:  We're going to get to that.

MR. COHEN:  And the existence of any other agreements.  There is a supplemental agreement in which the defendants have the right to blow the settlement if a certain number or certain percentage of shares opted out of the settlement.  That did not occur.  So that does not come into play.

THE COURT:  Thank you, counsel.

MR. COHEN:  You're welcome.

THE COURT:  I do want to confirm with the defendants

that, specifically, are you objecting in any way to the approval of the settlement?

MR. ALBERT:  No, Your Honor.  On behalf of the company, Mr. Lulla and Mr. Warren, plaintiffs' counsel has accurately described the procedural posture of the case, the extensive arm's length negotiations between the parties, and we have no objection to approval, so.

MR. BRELAND:  On behalf of Mr. Parameswaran, Your Honor, no objection to approval.

THE COURT:  Thank you so much, counsel.

Based on lead plaintiffs' submissions and arguments on the record, the Court finds that the settlement merits final approval.

First, for the reasons set forth on the record and in the parties' submission, the Court finds that the settlement is entitled to an initial presumption of fairness.

Lead plaintiffs' brief addresses how the proposed settlement is fair, reasonable, and adequate under the Federal Rule of Civil Procedure 23, and addresses each of the *Girsh* factors in detail and the relevant *Prudential* factors. (Docket Entry Number 89-1 at pages 13 to 28).

In addition to those well-reasoned arguments and counsel's statements on the record, the Court finds that the following facts weigh heavily in favor of approving the settlement:  (1) no potential class members objected to the

settlement; (2) only two class members requested to be excluded from the settlement; (3) the attorneys involved are of a high skill level and are experienced in this type of litigation; (4) the parties engaged in formal mediation sessions at arm's length; and (5) continued litigation of this matter will likely involve additional costs and delays.

Considering Rule 23, the *Girsh* and *Prudential* factors, and the fact that settlements in complex class action cases are to be favored, this Court finds that this settlement merits final approval.

We'll now hear counsel on whether the Court should approve the plan of allocation.

As we have been starting, we turn to our lead plaintiff.

How does the plan calculate how much each class member will receive?  You went over it, but just, again, tell me that, and also what steps do the class members need to take to get paid?

MR. COHEN:  In order to get paid, the class members have to submit a proof of claim, along with supporting documentation.  That can be transaction slips from their trades, it can be a monthly statement.

Larger -- oftentimes, larger firms retain a third party which will submit on their behalf, so there are third-party aggregators.  They will submit, typically, an

Excel spreadsheet detailing all the trades for larger companies as well as the backup information. So that is all submitted to Epiq.

Individual class members can either mail their claim forms and supporting documentation or they can submit it online at the settlement website.

In terms of the plan of allocation, it's based on each class member's recognized loss, which is determined by when they purchased the stock, the amount of stock they purchased, and the price inflation at the time they purchased, and whether they held over disclosure or not.

Everyone is then -- everyone's recognized loss is compared to each other and the net settlement fund is distributed on a pro-rata basis. That is standard in securities class actions.

THE COURT: All right, thank you, counsel.

MR. COHEN: You're welcome, Your Honor.

THE COURT: Again, I ask the defendants, do you object to the plan of allocation?

MR. ALBERT: Again, on behalf of the company, Mr. Lulla and Mr. Warren, we have no objection.

MR. BRELAND: No objection, Your Honor.

THE COURT: Based on the motion papers and counsel's arguments here today, the Court finds that the plan of allocation is fair, reasonable, and adequate. Particularly,

the Court highlights that the plan was formulated by lead counsel in consultation with a damages expert and was tailored to reimburse the losses of the class members in a fair and reasonable manner.  (*See* Docket Entry Number 89-1 at 28 through 32; Docket Entry Number 89-3, Exhibit A at paragraphs 50 through 68).

Additionally, the absence of any objections and the minimal number of requests for exclusions further supports the finding that the plan is fair, reasonable, and adequate.

Accordingly, the Court approves the plan of allocation.

Now, we need to evaluate the request for attorneys' fees and expenses.

Here, I do want counsel for lead plaintiff -- you're seeking an award of attorneys' fees in the amount of 33 1/3 percent of the settlement fund, which equals $8,333,333, plus interest earned thereon, as well as reimbursement of $194,323.49 in litigation expenses, which consists of $164,323.49 in out-of-pocket costs incurred by class counsel while prosecuting the action, and an aggregate of $30,000 (or $15,000 each) to lead plaintiffs Opus and AI.  (Docket Entry Number 90-1 at 1-2).

I would ask counsel, recognizing -- you kind of outlined it for me on the record.  It was a four-and-a-half-year litigation.  Quite a bit was done

reviewing numerous documents. And again, I ask you to briefly outline for the record how each of the *Gunter* and *Prudential* factors apply in terms of the amount being requested, reasonableness, and just anything else that you think you need to outline on the record.

MR. CECCHI:  Thank you, Judge.

I think the most important factors we would look at in terms of the reasonableness of the request, obviously, these cases are always taken on a fully contingent basis. The risk of recovering nothing is very real, both in security cases, consumers cases, and the vast majority of contingent cases. Even cases that have substantive merit don't get to this stage or ultimately trial. So the risks that counsel take are always very real.

Here, that risk was even more to the forefront for some of the reasons Mr. Cohen pointed out, the delisting of the defendants, the wasting insurance policy.

So when we look at our fee request in relation to the recovery, I think it's an outstanding result.

Your Honor is well familiar with the case law in this circuit. It's a percentage of the fund, which I always like to refer to as a light cross-check.

This fee request has a multiplier which not -- we don't often come to the Court with a multiplier. And the case law and the literature supports the idea of a lodestar, a

multiplier, because it incentivizes counsel to take on risky cases, bring them on behalf of clients who couldn't bring these cases on their own, and bring them to fruition and justice.

So the multiplier is within the heartland of multipliers. Sometimes we come with negative multipliers, sometimes we lose and don't get anything. This one we have a multiplier. And we think the outstanding result that Mr. Cohen has articulated fully supports, and the case law in this district in particular supports a multiplier of three in a situation like this, when you have a percentage of the fund, as in this case.

I do want to note, Mr. Cohen noted, obviously, this isn't a case where we have a converter, no red flags that you get in settlements.

All of these dollars that are going to be distributed are going to go to the class members. There's no coupons here. This is real cash, hard cash, for people who we allege were victimized by the defendants' conduct.

So we are proud of the result we achieved here. And as Mr. Cohen noted, the result, given the claims we actually had remaining, is about 80 percent of absolute recovery, which we would have seen four years from now, five years from now, if, in fact, the defendant was still able to pay such a judgment, which, obviously, there's a question about.

So when you blend it all together, Judge, I think the work we did, time we invested, the fully contingent risk, fully supports the request.

Thank you.

THE COURT:  Thank you for amplifying the record Mr. Cecchi.

MR. CECCHI:  Thank you.

THE COURT:  Do the defendants have anything to place on the record with respect to the attorneys' fees and costs?

MR. ALBERT:  Our defendants have nothing to place on the record, Your Honor.

MR. BRELAND:  No, Your Honor.

THE COURT:  Based on the parties' submissions and the arguments on the record, the Court approves lead counsel's request for attorneys' fees in the amount of 33 1/3 percent of the settlement fund, which equals $8,333,333, plus interest earned thereon, and counsel's request for $194,323.49 in litigation expenses, which consist of $164,323.49 in out-of-pocket costs incurred by class counsel while prosecuting the action, and an aggregate of $30,000 (or $15,000 each) for Lead Plaintiffs Opus and AI.

Counsel's motion addresses each of the relevant *Gunter* and *Prudential* factors in detail.  (Docket Entry Number 95-1 at pages 12 to 30).

In addition to those well-reasoned argument and

counsel's statements on the record today, the Court finds that the following facts weigh heavily in favor of approving requested attorneys' fees:  First, no proposed class members objected to the attorneys' fees and expenses request; second, the attorneys involved are highly skilled and experienced in securities litigation and worked efficiently to settle this case; and third, the requested attorneys' represents one-third of the total settlement amount, which is comparable to fees awarded in similar litigation, since "courts in this circuit have typically awarded attorneys' fees of 30 to 35 percent of recovery, plus expenses.  *See, e.g., In re Ravisent Technologies, Inc.,* 2005 Westlaw 906361, at 11 (Eastern District of Pennsylvania April 18, 2005).

Moreover, the requested attorneys' fees represent a lodestar multiplier of approximately 3.04, which is consistent and within the range of multipliers approved as reasonable by courts within this Circuit.  (*See* Docket Entry Number 90-1 at 32 to 33 (collecting cases)).

The Court additionally finds that lead plaintiffs' request for $30,000 as an award to lead plaintiffs, which is subsumed in the award of the $194,323.49 in litigation expenses, is reasonable.  This award is in line with other awards granted in this Circuit.  (*See* Docket Entry Number 90-1 at 37, note 19).

Counsel, is there anything else that needs to be

addressed at this time?

MR. CECCHI:  No, Your Honor, not from the plaintiffs.

MR. ALBERT:  No, Your Honor.

MR. BRELAND:  No, Your Honor.

THE COURT:  I do want to thank the parties for their work on behalf of the class and in reaching this settlement.

The Court will docket the following proposed orders shortly:  (1) the order approving the plan of allocation (that's Docket Entry Number 91-1); (2) the order awarding attorneys' fees and reimbursement of litigation expenses (Docket Entry Number 91-2); (3) the judgment approving the class action settlement (Docket Entry Number 91-3).

Mr. Cecchi, I did see you stand.  Was there something --

MR. CECCHI:  Yes, Judge.  If Your Honor was finished, I want to thank you for taking the time to do this today.  I know you have a jury out.

THE COURT:  I told my law clerks that I was not going to be pushing this case off, no matter what.

And I did see -- I'm hoping that isn't a question, Elisaveta, is it?

THE COURTROOM DEPUTY:  Yes.

MR. CECCHI:  We greatly appreciate that.  I know my colleagues do so thank you for doing that.

THE COURT:  Thank you, everyone.  Thank you for

travelling to lovely Newark, New Jersey.  I appreciate seeing everyone.  Always a pleasure seeing you, Mr. Innes.

If there's nothing further, we're in recess.

THE COURTROOM DEPUTY:  All rise.

(Proceedings concluded at 2:43 p.m.)

- - - - - - - - - - - - - - - - - -

FEDERAL COURT REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/S/ Mary Jo Monteleone, RMR, CCR, CRCR          12/19/2023
Official Court Reporter                            Date

*United States District Court*
*District of New Jersey*