James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Email: jcecchi@carellabyrne.com

*Counsel for Plaintiffs and the Settlement Class*

Joseph D. Cohen
Kara M. Wolke
Leanne H. Solish
Raymond D. Sulentic
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: info@glancylaw.com

*Counsel for Plaintiffs and the Settlement Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE EROS INTERNATIONAL PLC SECURITIES LITIGATION | C. A. No. 19-cv-14125 (ES) (JSA) <br><br> Honorable Esther Salas, U.S.D.J. |

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF <u>MOTION FOR CLASS DISTRIBUTION ORDER</u>

## **TABLE OF CONTENTS**

I.    BACKGROUND ........................................................................................1

II.   CLAIMS ADMINISTRATION .................................................................3

III.  LATE BUT OTHERWISE ELIGIBLE CLAIMS..........................................6

IV.   THE COURT SHOULD REJECT THE TWO DISPUTED CLAIMS..........8

V.    DISTRIBUTION OF NET SETTLEMENT FUND ......................................9

VI.   RELEASE OF CLAIMS ..........................................................................11

VII.  THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION RELATED FEES AND EXPENSES ...........................................................13

VIII. RECORDS RETENTION AND DESTRUCTION.......................................14

IX.   CONCLUSION.......................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Hartman v. Powell*,
   2001 WL 410461 (D.C. Cir. Mar. 15, 2001) ......................................................7

*In re Citigroup Inc. Sec. Litig.*,
   2014 WL 7399039 (S.D.N.Y. Dec. 29, 2014) ......................................................8

*In re Gypsum Antitrust Cases*,
   565 F.2d 1123 (9th Cir. 1977) ........................................................ 6, 7, 8

*In re Luckin Coffee Inc. Sec. Litig.*,
   2023 WL 3483762 (S.D.N.Y. April 21, 2023) ......................................................7

*In re Medicis Pharm. Corp. Sec. Litig.*,
   2013 WL 12149720 (D. Ariz. Mar. 8, 2013).......................................................13

*In re Nuvelo, Inc. Sec. Litig.*,
   2012 WL 12920613 (N.D. Cal. July 16, 2012) ......................................................13

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
   246 F.3d 315 (3d Cir. 2001).......................................................................6

*In re Signet Jewelers Limited Sec. Litig.*,
   2021 WL 5357468 (S.D.N.Y. Nov. 16, 2021).......................................................7

*In re Toyota Motor Corp. Sec. Litig.*,
   2014 WL 12586787 (C.D. Cal. Aug. 4, 2014).......................................................13

*Wilson v. LSB Indus., Inc.*,
   2020 WL 5628039 (S.D.N.Y. Sept. 21, 2020) ......................................................12

Court-appointed lead plaintiffs Opus Chartered Issuances S.A., Compartment 127 and AI Undertaking IV (collectively, "Lead Plaintiffs") respectfully submit this Memorandum of Law in support of their Motion for Class Distribution Order ("Motion") in the above-captioned action (the "Action").[1]  If entered by the Court, the Class Distribution Order will, among other things: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; and (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action.  The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Mahn Declaration.  *See* Mahn Decl., ¶42.

## I.    BACKGROUND

On April 4, 2023, the Parties entered into the Stipulation, the terms of which established a $25,000,000 Settlement Fund for the benefit of the Settlement Class.

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated April 4, 2023 (the "Stipulation," ECF No. 81-3), or the concurrently-filed Declaration of Jessie Mahn in Support of Lead Plaintiffs' Motion for Distribution Order ("Mahn Declaration" or "Mahn Decl."), submitted on behalf of the Court-approved Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq" or "Claims Administrator").

Subject to certain exclusions, the Settlement Class consists of all persons and entities who or which purchased or otherwise acquired Eros Securities between July 28, 2017 and August 3, 2021, inclusive (the "Settlement Class Period"), and were damaged thereby. *See* Stipulation, ¶1(ss).

The Court granted preliminary approval of the Settlement on July 12, 2023. *See* ECF No. 85 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Claims Administrator mailed 22,874 Notice Packets to potential members of the Settlement Class, published the Summary Notice in *Investor's Business Daily*, transmitted the Summary Notice over *PR Newswire* (a national newswire service), established a case-specific website dedicated to this Settlement (www.ErosSecuritiesSettlement.com (the "Settlement Website")), and set up a toll-free telephone helpline. *See* Mahn Decl., ¶¶2, 5-6. The Settlement Website and helpline enabled Settlement Class Members to obtain information about the Settlement, including deadlines for requesting exclusion, objecting, and filing Claims, as well as provided access to important documents relevant to the Settlement, including the Stipulation, Notice, and Claim Form. *Id.*, ¶2; *see also* ECF No. 91-4, ¶12.

On November 28, 2023, the Court entered an order granting final approval of the Settlement ("Final Approval Order"), finding the Settlement fair, reasonable, and adequate. ECF No. 95. That same day, the Court also entered an order approving

the Plan of Allocation, which was explained in the Notice and also posted on the Settlement Website, as providing a fair and equitable basis upon which to allocate the proceeds of the Net Settlement Fund.  ECF No. 94.

Lead Counsel now respectfully requests that the Court authorize distribution of the Net Settlement Fund (after payment of the Claims Administrator's expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants.  Defendants do not oppose this motion and, to date, only two (2) claimants have disagreed with the Claims Administrator's administrative determination of deficiencies or ineligibility. [2]  Mahn Decl., ¶¶26-28, Ex. D.

## II.    CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms by mail or online, postmarked or received by no later than December 6, 2023.  *See* Preliminary Approval Order, ¶10.    The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency.  *See* Mahn Decl., ¶¶10-17; 21-25.

---

[2] While Defendants do not oppose the ultimate relief requested, Defendants take no position as to the arguments and factual representations made herein.

Of the 12,598 Claims submitted to, and fully processed by, the Claims Administrator, 1,144 were paper submissions or online submissions through the online filing component on the Settlement Website. *Id.*, ¶10. The remaining 11,454 Claims were Electronic Claims. Electronic Claims filers are typically banks, brokers, nominees and other-third party filers, who file claims on behalf of numerous claimants. *Id.*, ¶13. Because the Electronic Claim filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides Electronic Claim filers with the opportunity to either mail a computer disc or electronically submit a file containing all the transactions of the Claimants on whose behalf the Electronic Claim filer is submitting a Claim. *Id.* This process is designed to expedite the claims process.

If a Claim was deficient or defective, the Claims Administrator sent a Deficiency Notice, a sample of which is attached as Exhibit B to the Mahn Declaration. *Id.*, ¶22 and Ex. B. The Deficiency Notice advised the Claimant that he, she, or it had twenty (20) days to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.*, ¶22. Of the 1,144 paper and online Claims, the Claims Administrator sent Deficiency Notices for 831 Claims (or approximately 73%). *Id.*, ¶21.

Similarly, for deficient Electronic Claims, the Claims Administrator sent an

4

email with an attached Transaction Report, a sample of which is attached as Exhibit C to the Mahn Declaration. *Id.*, ¶24, Ex. C. The Transaction Report advised the Claimant that he, she, or it had twenty (20) days to submit additional information to cure the Claim, or else the Claims Administrator would recommend the Claim for rejection. *Id.* The Transaction Report also detailed the deficiencies related to individual transactions and/or entire Electronic Claims. *Id.* Of the 11,454 Electronic Claims, 7,030, or approximately 61%, were deficient or ineligible. *Id.*, ¶24. The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible and, as a result of this process, a number of Claimants with initially deficient Claims are now eligible to participate in the Settlement.

Ultimately, after the deficiency process was complete, the Claims Administrator determined that 4,335 Claims are acceptable, in whole or in part, and should receive a distribution. Mahn Decl., ¶¶35-37-38, Ex. E. This number includes 4,290 timely and acceptable or partially acceptable Claims, and 45 Late But Otherwise Eligible Claims (addressed in Section III below). *Id.*, ¶¶29, 35, 37-38 and Exs. E-1 and E-2. The total Stock Recognized Loss Amount is $123,441,142.99.[3] *Id.*, ¶38 and Exs. E-1 and E-2. The Claims Administrator also determined that 8,263 Claims are not eligible and should be rejected for the following reasons: (i) 4,636

---

[3] The Recognized Loss Amounts breakdown is $121,164,296.82 for timely valid Claims, and $2,276,846.17 for Late But Otherwise Eligible Claims. *Id.*, ¶38 and Exs. E-1 and E-2.

Claims did not result in a Recognized Loss Amount under the Plan of Allocation; (ii) 2,070 Claims were withdrawn or voided by request and replaced; (iii) 1,182 Claims had no eligible purchases during the Settlement Class Period; (iv) 240 Claims were deficient and the condition of ineligibility was never cured; and (v) 116 Claims were duplicates. *Id.*, ¶36, 37 and Ex. E-3.

## III.    LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the December 6, 2023, claims filing deadline. *Id.*, ¶29. Although the Claims Administrator attempts to accept all eligible Claims submitted after the deadline, there must be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001). Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution. Accordingly, the Claims Administrator imposed a cut-off date of August 5, 2024.

Of all the 12,598 Claims submitted, 132 were received or postmarked after the December 6, 2023, deadline, but on or before the Claims Administrator's

6

imposed cut-off date of August 5, 2024.  Mahn Decl., ¶¶29-30.  Of these 132 Claims, 45 are otherwise eligible ("Late But Otherwise Eligible Claims").  *Id.*, ¶¶29, 37, Ex. E-2.  These Late But Otherwise Eligible Claims have been recommended for payment.  *Id.*, 29, Ex. E-2.  Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit Claim Forms, but while the Claims were still being processed.  *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *In re Signet Jewelers Limited Sec. Litig.*, 2021 WL 5357468, at *1 (S.D.N.Y. Nov. 16, 2021) (accepting "Late but Otherwise Eligible Claims"); *In re Luckin Coffee Inc. Sec. Litig.*, 2023 WL 3483762, at *1 (S.D.N.Y. April 21, 2023) (same).  Accordingly, it is respectfully requested that the Court permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan.  *See* Mahn Decl., ¶¶29, 37, and Ex. E-2.

Additionally, it is respectfully requested that the Court enter an Order directing that no Claim received after August 5, 2024, be eligible for payment, and that no adjustments to Claim Forms received after December 11, 2024, that would result in an increased Recognized Loss amount be accepted.  *Id.*, ¶¶30, 42(d).  "Drawing a line is essential to achieve certainty and finality in such a large class action."  *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see*

*also In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) ("at some point in the distribution of a large class action settlement, such as this one, 'a cutoff date is essential and ... the matter must be terminated.'" (quoting *In re Gypsum*, 565 F.2d at 1127)).

## IV.    <u>**THE COURT SHOULD REJECT THE TWO DISPUTED CLAIMS**</u>

Two Claimants (Claim Nos. 324 ("Disputed Claimant No. 1") and 1028 ("Disputed Claimant No. 2")) disagree with Epiq's determination of ineligibility and have requested Court review of the rejection of their Claims. *See* Mahn Decl., ¶28, Ex. D. As set forth in the Mahn Declaration, Disputed Claimant No. 1 did not have any eligible purchases or acquisitions of Eros class A ordinary shares or ErosSTX common stock during the Settlement Class Period and, accordingly, is not a member of the Settlement Class. *See* Mahn Decl., ¶28, Ex. D; *see also* Stipulation at ¶1(ss) (defining Settlement Class). The Court should, therefore, reject Claim Number 324.

The Court should also reject Claim Number 1028. As set forth in the Mahn Declaration, Disputed Claimant No. 2 did not hold his Settlement Class Period purchases of Eros Securities over a corrective disclosure date and, therefore, did not suffer compensable damages under the Plan of Allocation. *See* Mahn Decl., ¶28, Ex. D; *see also* ECF No. 94 (Order Approving Plan of Allocation of Net Settlement Fund). The Plan of Allocation specifically provides:

> Lead Plaintiffs allege that corrective disclosures removed the artificial inflation from the price of Eros Securities on June 6, 2019, June 7, 2019,

8

June 11, 2019, June 26, 2019, June 27, 2019, July 15, 2019, September 26, 2019, July 30, 2020, August 4, 2021, and August 5, 2021 (the "Corrective Disclosure Dates"). Accordingly, in order to have a Recognized Loss Amount, Eros Securities must have been purchased or acquired during the Settlement Class Period and held through at least one of these Corrective Disclosure Dates.

Mahn Decl., ¶5, Ex. A (Notice) at ¶52.

Because Disputed Claimant No. 2 sold all eligible shares prior to the initial corrective disclosure date of June 6, 2019, this Claim did not result in a Recognized Loss Amount under the Plan of Allocation.  *See* Mahn Decl., ¶28, Ex. D.

For these reasons, the Court should affirm Epiq's determination that Claim numbers 324 and 1028 should be rejected.

## V.    **DISTRIBUTION OF NET SETTLEMENT FUND**

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an Initial Distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more.  *See* Mahn Decl., ¶42(a) and Ex. A (Notice) at ¶¶57, 66.  Based on the substantial experience of Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed, deposited, or negotiated promptly.   To encourage Authorized Claimants to promptly cash, deposit, or negotiate their distributions and to avoid or reduce future expenses relating to unpaid distributions, Lead Counsel proposes that all the distribution checks bear a notation

9

"DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE."  Mahn Decl., ¶42(a)(iv).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution checks.  However, if after six (6) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, Lead Counsel in consultation with the Claims Administrator will determine if it is cost-effective to have the Claims Administrator conduct a second distribution ("Second Distribution").  Mahn Decl., ¶42(b) and Ex. A (Notice) at ¶66. During the Second Distribution, any amounts remaining in the Net Settlement Fund, after payment of, or reserve for, Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), any Taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution.  Mahn Decl., ¶42(b). Following the Second Distribution, additional redistributions will occur following the same process as the Second Distribution until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines additional distributions are no longer economically

10

feasible.  *Id.*, ¶42(c).

At such time Lead Counsel, in consultation with the Claims Administrator, determines that further distribution of the funds remaining in the Net Settlement is not cost-effective, after payment of any further Notice and Administration Costs and Taxes, the remaining balance will be contributed—subject to Court approval—to Public Justice, a nonsectarian, not-for-profit 501(c)(3) organization.  *See id.*, ¶42(c)(i); *see also* Declaration of Sharon M. McGowan of the Public Justice Foundation, ¶¶2-10; and 11-12 (securities cases in which the Public Justice Foundation received court approval as the *cy pres* beneficiary).  The proposed Class Distribution Order filed herewith provides for the redistribution and disposition of any funds remaining in the Net Settlement Fund following the Initial Distribution.

## VI.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons and entities involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement.

Accordingly, Lead Plaintiffs respectfully request that the Court: (a) release

and discharge all persons and entities involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of that involvement; and (b) bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order.

Courts have repeatedly approved similar provisions in connection with the distribution of settlement proceeds. *See, e.g., Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from

12

any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *see also In re Nuvelo, Inc. Sec. Litig.*, 2012 WL 12920613, at *2 (N.D. Cal. July 16, 2012); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *3 (C.D. Cal. Aug. 4, 2014); *In re Medicis Pharm. Corp. Sec. Litig.*, 2013 WL 12149720, at *2 (D. Ariz. Mar. 8, 2013).

## VII.  THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION RELATED FEES AND EXPENSES

Based on the work performed by the Claims Administrator, the total fees and expenses charged by the Claims Administrator through September 30, 2024, totals $120,350.48, all of which has been paid.  Mahn Decl., ¶41.  The estimate to conduct the Initial Distribution is $18,480.63.  *Id.*, ¶41 and Ex. F.  Therefore, Lead Counsel respectfully requests that the Court authorize payment to the Claims Administrator from the Settlement Fund of $18,480.63 in anticipation of the work that will be performed for the Initial Distribution.[4]  *Id.*

---

[4] If the anticipated fees and expenses to conduct the Initial Distribution are greater than the actual cost to conduct the distribution, the excess will be returned to the Settlement Fund once the Initial Distribution is complete.  *Id.*

## VIII.  **RECORDS RETENTION AND DESTRUCTION**

Lead Plaintiffs respectfully request that the Court order that: (a) one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, one year after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claim Forms and all supporting documentation; and (b) in no less than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claim Forms and all supporting documentation. *Id.*, ¶42(e).

## IX.   **CONCLUSION**

For all of the above reasons, Lead Plaintiffs respectfully request that the Motion be granted.

Dated: January 10, 2025                 Respectfully Submitted

                                        **CARELLA, BYRNE, CECCHI,**
                                        **OLSTEIN, BRODY & AGNELLO,**
                                        **P.C.**

                                        By:   *s/ James E. Cecchi*
                                        James E. Cecchi
                                        Donald A. Ecklund
                                        Kevin G. Cooper
                                        5 Becker Farm Road
                                        Roseland, New Jersey 07068
                                        Telephone: (973) 994-1700
                                        Email: jcecchi@carellabyrne.com

14

**GLANCY PRONGAY & MURRAY LLP**
Joseph D. Cohen
Kara M. Wolke
Leanne Solish
Raymond Sulentic
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: jcohen@glancylaw.com

*Counsel for Lead Plaintiffs and the Settlement Class*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2025, I caused the foregoing to be filed electronically with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties.

Dated: January 10, 2025                    Respectfully submitted,


                                           */s/ James E. Cecchi*
                                           James E. Cecchi